UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:25-CV-24505-MOORE/ELFENBEIN
(Consolidated with Case No. 1:25-cv-24505-Williams/Lett)

IVAN GRANT,
ALEX LAFFITA ORTIZ,
HENRY PINTO SUMOZA,
EYONNY PRADO DURAN,
LUIS RODRIGUEZ CERUTO,
and LUIS SAME GONZALO,

Plaintiffs,

vs.

STRATAIR AVIATION
SERVICES, LLC,

Defendants.

________________________________/

**DEFENDANT'S RESPONSE TO PLAINTIFF IVAN GRANT'S FIRST SET OF INTERROGATORIES TO DEFENDANT**

Defendant, STRATAIR AVIATION SERVICES, LLC. ("StratAir"), by and through its undersigned counsel, hereby responds to Plaintiff IVAN GRANT's First Set of Interrogatories to Defendant under Certificate of Service dated March 18, 2026, by responding as follows:

**INTERROGATORIES**

1) Please identify each person answering or assisting in answering these interrogatories, and his/her relationship to StratAir, as well as his/her full name, date of birth, social security number, current residential address, and all positions and job titles each such person has held with StratAir during the past five years.

**ANSWER:** **Andres Gonzalez, Manager & Vice President of Cargo**
**c/o Roger W. Feicht, Esq.**
**Gunster, Yoakley & Stewart, P.A.**
**777 S. Flagler Drive, Suite 500 East**
**West Palm Beach, Florida 33401**
**561-655-1980**

**To the extent this request seeks additional information, StratAir objects to the request as seeking sensitive personal information (social security numbers, dates of birth, and home residential addresses) that is not relevant to any claim or defense in this action.**

2) State the date Defendant first determined that a layoff or reduction in force would occur at the Miami warehouse location, identify all persons who participated in or were consulted about this decision, describe the specific business need(s) or reason(s) for the decision, and identify all documents reflecting this decision.

**ANSWER: In January 2024, a major customer of StratAir informed StratAir that it had decided to reduce the number of future cargo delivery flights that it would hire StratAir to unload. This was a major blow to StratAir's work in the near future and resulted in an immediate and significant decline in anticipated revenue. As a direct result of its customer's decision, StratAir had too many employees for the projected demand for its services. Given the significant reduction in work to be performed and the associate drop in revenue, StratAir made the reasonable business decision to reduce its workforce in January 2024. StratAir ultimately laid off twenty-eight (28) employees, including Plaintiff. When management considered employees to be included in the necessary layoff, it evaluated the warehouse and cargo handling workforce based on multiple factors, including relative job performance, seniority, and the operational needs of the business. These factors were weighed holistically. As part of this process, Plaintiff was among those selected for inclusion in the reduction in force.**

3) Describe in complete detail the process used to determine which positions would be eliminated and which employees would be selected for termination in the January 2024 layoff, identify who established and who applied any selection criteria, and identify all documents reflecting this process.

**ANSWER: In January 2024, a major customer of StratAir informed StratAir that it had decided to reduce the number of future cargo delivery flights that it would hire StratAir to unload. This was a major blow to StratAir's work in the near future and resulted in an immediate and significant decline in anticipated revenue. As a direct result of its customer's decision, StratAir had too many employees for the projected demand for its services. Given the significant reduction in work to be performed and the associate drop in revenue, StratAir made the reasonable business decision to reduce its workforce in January 2024. StratAir ultimately laid off twenty-eight (28) employees, including Plaintiff. When management considered employees to be included in the necessary layoff, it evaluated the warehouse and cargo handling workforce based on multiple factors, including relative job performance, seniority, and the operational needs of the business. These factors were weighed holistically.**

4) Identify all criteria, factors, or considerations used to select employees for the January 2024 layoff, state the weight or importance given to each criterion, state whether age or any age-correlated factor (including years of service, seniority, length of employment, proximity to retirement, compensation level, salary, or wage rate) was considered directly or indirectly, and identify all documents reflecting the application of each criterion to any employee.

**ANSWER: See response to No. 3 above. StratAir's management considered multiple factors in the January 2024 reduction in force selection process, including relative job performance, seniority, and the operational needs of the business. These factors were weighed holistically; no single criterion was determinative. In addition, age was not considered directly or indirectly. StratAir objects to the characterization of "age-correlated factors" as argumentative and also false (factors such as "years of service, "seniority," "length of employment," "compensation level," "salary," or "wage rate" are not connected to or impacted by age).**

5) State the specific reason(s) why Plaintiff was selected for termination, state all facts supporting each reason, identify who identified or raised each reason, state whether performance or attendance issues were cited as reasons and if so identify all specific incidents with dates, and identify all documents evidencing each reason.

**ANSWER: During his short employment (approximately 18 months), Plaintiff Grant received negative feedback on his work performance and was subject to a written warning. On April 7, 2023, Plaintiff Grant received an Employee Warning Notice. Plaintiff Grant left his work area without first obtaining the necessary approval from his supervisor. Plaintiff Grant requested vacation time in November 2023, after StratAir's management had notified all employees that vacation/personal time off would not be approved because of peak season. Plaintiff Grant spoke to multiple supervisors to request time off. Plaintiff Grant took time off without approval. StratAir terminated his employment and subsequently re-hired him approximately seven days later. Additionally, when management considered employees to be included in the necessary layoff, Plaintiff Grant was selected because of his unsatisfactory performance in consistently and efficiently unloading cargo.**

6) Identify all persons who participated in the decision to terminate Plaintiff, state each person's specific role in the decision, state the date(s) they participated, describe what information they considered, and identify all documents they reviewed or created in connection with the decision.

**ANSWER: Gisela Barrera and Armando Portales Viera, in consultation with warehouse supervisors and their own observations, made the decision to recommend the termination of Plaintiff to Jorge Corral.**

7) State Plaintiff's official job title(s) and position classification(s) during his employment with Defendant, including: (a) each job title held; (b) the dates during which he held each title; (c) the department or division to which he was assigned; and (d) the shift(s) he regularly worked; and (e) identify all individuals who held a supervisory or managerial position over Plaintiff at any time during his employment, and for each such individual, state their full name, job title, and the dates during which they supervised Plaintiff.

**ANSWER:** **Plaintiff Grant was hired by StratAir in July 2022 as a Warehouse Handler. Plaintiff's job duties involved unloading cargo containers from aircraft, unloading packages from cargo containers, sorting unloaded packages into gaylord boxes, loading gaylord boxes into trucks for subsequent delivery, along with the reverse process for unloading delivery trucks, sorting the cargo into containers for loading onto aircraft, and loading the cargo containers onto the aircraft. Plaintiff worked the night shift. Gisela Barrera was the operations manager for the night shift.**

8) State whether Defendant contends that Plaintiff's position was eliminated and not refilled, and if so, state whether the job duties and functions previously performed by Plaintiff were reassigned to other employees or independent contractors and to whom, state whether any employee or contractor was hired or engaged to perform the same or substantially similar work after January 2024 and if so identify each such person with their age, race, national origin, and start date, and state whether the total headcount of persons (employees plus contractors) performing warehouse or cargo handling work at the Miami location decreased, remained the same, or increased following the January 2024 layoff.

**ANSWER:** **As a result of the significant reduction in anticipated cargo volume and associated revenue, StratAir reduced the number of employees assigned to warehouse and cargo handling functions. The reduction was a headcount reduction driven by decreased workload and revenue, not an elimination of job classifications. The reduced volume of work no longer required the same staffing levels that had previously been necessary.**

9) For each employee or independent contractor who was retained and held the same or similar position as Plaintiff, state their name, age, race, national origin, position, employment status (employee or contractor), supervisor(s), and the reason they were retained instead of terminated.

**ANSWER:** **Aggregate data regarding the age and tenure of employees from prior to the RIF in January 2024 will be produced. As it relates to employees, the request seeks detailed personal information of non-party employees who are not involved in this litigation. The names of employees at StratAir are not relevant to any claim or defense in this action. To the extent the request seeks information regarding the national origins of employees, StratAir does not track this information. It would be unduly burdensome for StratAir to research the race of the hundreds of employees who worked for StratAir at the time of the January 2024. StratAir will provide information regarding the races/ethnicities of employees terminated in the January 2024 reduction in force. As it relates to independent contractors, StratAir did not engage any independent contractors. To the extent this request seeks further information, StratAir objects.**

10) Identify all independent contractors, temporary workers, or staffing agency workers who performed warehouse or cargo handling work at the Miami warehouse location from October 1, 2023 through March 31, 2024; state for each person their name, age, race, national origin, position, start date, whether they were working as of January 13, 2024, whether they continued working after January 2024, and whether they were considered for termination as part of the January 2024 reduction in force.

**ANSWER:** **Objection. The Interrogatory seeks information that is not relevant to any claim or defense in this action. Plaintiffs' Amended Complaint does not mention independent contractors, temporary workers, or staffing agency workers. In addition, Plaintiffs' claims are not based on StratAir allegedly engaging non-employees after January 2024. Plaintiffs allege that "Defendant fired Plaintiffs and other older employees with more seniority, and retained younger employees with less seniority, to perform the same or similar jobs." *See* Amended Complaint, Paragraphs 51, 86. Therefore, whether contractors, temporary workers, or staffing agency workers were engaged either before or after the Plaintiffs were terminated have no bearing on Plaintiff's claims or any related defenses. Notwithstanding the foregoing objection, StratAir did not engage independent contractors. StratAir does not have records related to any temporary workers or staffing agency workers in its possession, custody, or control.**

11) State the specific reasons why Mr. Grant was terminated in November 2023, state all facts supporting each reason, identify who made the decision and when, identify all documents supporting the reasons, and explain why Mr. Grant was later reinstated.

**ANSWER:** **See response to No. 5 above.**

12) State the specific reasons why Mr. Grant was reinstated in November or December 2023, state all facts supporting the decision, identify who made the reinstatement decision, describe what circumstances changed between his termination and reinstatement, and identify all documents relating to the reinstatement.

**ANSWER: StratAir provided Plaintiff Grant another opportunity following his termination in November 2023 despite the fact that he took time off without approval. No circumstances changed between Plaintiff Grant's termination and reinstatement.**

13) State whether Mr. Grant's November 2023 termination and subsequent reinstatement were considered or discussed in connection with the decision to terminate him in January 2024, and if so, identify who discussed or considered this, state when it was discussed, describe what was said or considered, state how it affected the January 2024 termination decision, and identify all documents reflecting such discussions.

**ANSWER: Plaintiff Grant's November 2023 termination and subsequent reinstatement were considered in the connection with the decision to terminate him in January 2024. Plaintiff Grant's behavior of taking vacation/time off without approval was one of the reasons that he was selected for the RIF, in addition to his poor performance and the written disciplinary warning that he had received in April 2023.**

14) Identify all Black employees who held warehouse handler, cargo handler, or similar positions at the Miami warehouse location from November 2023 through January 2024, and for each state their name, age, position, hire date, whether they were selected for termination in the January 2024 layoff, and if terminated the stated reason for selection or if retained the stated reason for retention.

**ANSWER: Aggregate data regarding the age, position, and hire date/tenure of employees from January 2024 (prior to the RIF) will be produced. The request seeks detailed personal information of non-party employees who are not involved in this litigation. The names of employees at StratAir are not relevant to any claim or defense in this action. To the extent the request seeks further information, StratAir objects. Information regarding employees prior to the time period of the RIF decision is not relevant to any claim or defense in this action.**

15) Identify all employees from the Virgin Islands or Puerto Rico who held warehouse handler, cargo handler, or similar positions at the Miami warehouse location from November 2023 through January 2024, and for each state their name, age, national origin, position, hire date, whether they were selected for termination in the January 2024 layoff, and if terminated the stated reason for selection or if retained the stated reason for retention.

**ANSWER: StratAir does not track the national origin of its employees and, therefore, has no responsive information. However, to the extent this request seeks personal/identifying information regarding employees that is not relevant to any claim or defense in this action, StratAir objects.**

16) State the specific reasons why Mr. Grant received a written warning in April 2023, state who made the decision to issue the warning, state all facts supporting the warning, state whether the warning was considered in the January 2024 termination decision, and identify all documents relating to the April 2023 warning.

**ANSWER: See response to No. 5 above.**

17) Identify all employees who received written warnings or discipline for the same or similar conduct or performance issues as Mr. Grant's April 2023 warning but were NOT terminated in the January 2024 layoff, and for each state their name, age, race, national origin, the nature of their conduct or performance issues, the date(s) of their warnings or discipline, and why they were retained despite documented issues.

**<u>ANSWER:</u> Objection. This Interrogatory is overly broad and unduly burdensome in that it seeks detailed personal and employment information for potentially hundreds of employees across the entire company who may have received any form of written warning or discipline at any point during their employment. StratAir employed hundreds of individuals at the time of the January 2024 reduction in force, and the Interrogatory imposes no reasonable limitations on the time frame of the disciplinary history sought, the departments or business units to which it applies, or the types of "similar" conduct or performance issues at issue. Compiling the requested information would require StratAir to undertake an exhaustive, manual review of personnel files for the entire workforce, impose significant burden on StratAir's human resources department, and generate a response disproportionate to any legitimate discovery need in this matter. StratAir further objects on the ground that the Interrogatory is impermissibly vague and ambiguous. The phrase "same or similar conduct or performance issues as Mr. Grant's April 2023 warning" lacks sufficient specificity to enable StratAir to identify the universe of employees whose records must be searched. Without a clear and agreed-upon definition of what constitutes "similar" conduct or performance issues, the Interrogatory calls for StratAir to exercise subjective judgment and speculation. StratAir objects on the ground that this Interrogatory is not proportional to the needs of the case, as required by Rule 26(b)(1) of the Federal Rules of Civil Procedure. The January 2024 reduction in force was driven by legitimate business considerations, including operational restructuring, cost reduction, and strategic realignment, and the selection of employees for separation was based on a multifactor analysis that extended well beyond any single disciplinary event. Whether an employee received a written warning at some point during their tenure was only one of numerous factors considered in the selection process, and the existence of a prior warning, standing alone, did not determine whether any individual was selected for or retained following the reduction in force. The Interrogatory rests on the flawed premise that the receipt of a written warning and selection for the reduction in force are directly and causally linked, when in fact the decision-making process involved a comprehensive evaluation of business needs, job function, skills, performance history, and other legitimate, nondiscriminatory criteria. Requiring StratAir to identify and provide granular detail on every employee who received any arguably similar discipline but was retained would yield information of marginal relevance at best, while imposing substantial burden and intruding upon the privacy interests of nonparty employees. StratAir objects to the extent this Interrogatory seeks personally identifiable information, including names, ages, races, and national origins, of nonparty employees who are not parties to this litigation and who have a reasonable expectation of privacy in their personnel records. Disclosure of such information implicates significant privacy concerns and should not be compelled absent a showing of direct relevance and a suitable protective order.**

18) State whether Armando Portales Viera participated in both the decision to hire Mr. Grant in 2022 and the decision to terminate Mr. Grant in January 2024, and if so, describe his specific role in each decision, state what changed between 2022 and January 2024 regarding Mr. Grant's qualifications or performance, and identify all documents reflecting Armando's participation in both decisions.

**ANSWER: See response to Nos. 5 and 6 above.**

19) State all facts supporting Defendant's denial that Mr. Grant was discriminated against based on his race (Black) or national origin (Virgin Islands), including all evidence Defendant contends demonstrates non-discriminatory reasons for his termination.

**ANSWER: Objection. This Interrogatory is overly broad and premature in that it effectively asks StratAir to marshal and present the entirety of its factual case in chief in response to a single discovery request. The Interrogatory calls upon Defendant to identify "all facts" and "all evidence" supporting its position that Mr. Grant's termination was not motivated by race or national origin, which is tantamount to requiring StratAir to prepare and disclose a comprehensive trial brief at this stage of the litigation. Courts have routinely recognized that contention interrogatories of this nature are more appropriately deferred until the close of fact discovery, after the parties have had a full and fair opportunity to conduct depositions, obtain and review documents, and develop the factual record. Requiring a premature response at this juncture risks incomplete or misleading disclosures, may prejudice StratAir's ability to develop its defense as discovery unfolds, and would impose a burden disproportionate to the needs of the case at this stage. The phrases "all facts" and "all evidence" are inherently boundless and provide no meaningful limitation, making it impossible for StratAir to determine with reasonable certainty when a complete response has been provided. Moreover, the Interrogatory conflates Defendant's factual contentions with its legal positions and theories, rendering the request ambiguous as to whether it seeks purely factual information, legal conclusions, or both.**

20) State whether any person involved in the decision to terminate Mr. Grant had any financial incentive, bonus structure, or compensation arrangement that would benefit from reducing employee headcount or reducing payroll costs, and if so, identify each such person, describe the financial incentive, and state whether such incentives were considered or discussed in connection with the January 2024 layoff.

**ANSWER: No person involved in the decision to terminate Plaintiff Grant had any financial incentive, bonus structure, or compensation arrangement that would benefit from reducing employee headcount or reducing payroll costs.**

21) Identify all complaints, charges, or allegations of race discrimination or national origin discrimination made by any employee or former employee against StratAir from January 2022 through the present, and for each state the complainant's name, the date, the allegations, the outcome, and what corrective action (if any) was taken.

**ANSWER:** **Objection. This Interrogatory is not proportional to the needs of the case as required by Rule 26(b)(1) of the Federal Rules of Civil Procedure. Mr. Grant's claims arise from his inclusion in the January 2024 reduction in force, and the relevant inquiry is whether StratAir's decision with respect to Mr. Grant was motivated by discriminatory animus based on his race or national origin. The existence or nonexistence of unrelated discrimination complaints by other employees in different departments, holding different positions, under different supervisors, and involving wholly distinct factual circumstances has little, if any, bearing on whether StratAir discriminated against Mr. Grant in connection with the reduction in force. The Interrogatory appears designed to conduct a fishing expedition into StratAir's broader employment practices rather than to develop evidence directly relevant to the claims and defenses at issue. The marginal relevance of complaints involving different employees, different decision-makers, and different circumstances is substantially outweighed by the burden of compiling such information and the intrusion upon the privacy interests of the individuals involved. StratAir further objects on the ground that the Interrogatory is impermissibly vague and ambiguous. The terms "complaints," "charges," and "allegations" are not defined and could encompass a virtually unlimited range of communications, from formal EEOC charges to informal verbal statements made in the course of routine workplace interactions. Similarly, the term "corrective action" is undefined and ambiguous as to whether it refers to formal disciplinary measures, policy changes, remedial training, or other responsive steps. Without clear definitions, StratAir cannot reasonably determine the scope of the information sought, and any response would necessarily reflect StratAir's subjective interpretation of these undefined terms.**

22) State whether Mr. Grant's race or national origin were considered, discussed, or mentioned by any decision-maker in connection with his January 2024 termination, and if so, identify who considered, discussed, or mentioned it, state when and in what context, and identify all documents reflecting such consideration, discussion, or mention.

**ANSWER:** **Neither Plaintiff Grant's race or national origin were considered, discussed, or mentioned by any decision-maker in connection with his January 2024 termination.**

23) Identify all employees or independent contractors hired or engaged to perform warehouse handling or cargo handling work at the Miami location from September 2023 through March 2024, and for each state their name, age, race, national origin, position, employment status (employee or contractor), start date, and the stated reason for the hire or engagement.

**<u>ANSWER:</u> StratAir did not engage independent contractors during or after Plaintiff's employment. To the extent the Interrogatory seeks information regarding independent contractors, it calls for the identification of a category of individuals that does not exist, and no response is possible or required. The Interrogatory is further overly broad in that it seeks detailed personal and employment information for every individual hired to perform warehouse handling or cargo handling work at the Miami location over a seven-month period, without any limitation as to job function, shift, supervisor, or connection to Mr. Grant, the January 2024 reduction in force, or the claims at issue in this case. The request sweeps in every hire at an entire facility across multiple operational functions and departments, regardless of whether those individuals had any relationship to the circumstances underlying Mr. Grant's claims. StratAir objects on the ground that this Interrogatory is not proportional to the needs of the case as required by Rule 26(b)(1) of the Federal Rules of Civil Procedure. Mr. Grant's claims arise from his inclusion in the January 2024 reduction in force, which was a company-wide operational restructuring driven by legitimate business considerations. The burden of compiling the requested information for every hire at the Miami facility over a seven-month window substantially outweighs the marginal relevance, if any, of such information to Mr. Grant's individual claims. StratAir objects to the extent this Interrogatory seeks personally identifiable information, including names, ages, races, and national origins, of nonparty employees who are not parties to this litigation and who have a reasonable expectation of privacy in their personal and employment information. Disclosure of such information for potentially dozens of individuals implicates significant privacy concerns and should not be compelled absent a particularized showing of direct relevance to Mr. Grant's claims and an appropriate protective order governing the use and dissemination of confidential employee information.**

Dated: May 1, 2026

**Nalani Alesia Gordon**
Roger W. Feicht (Florida Bar No. 84982)
rfeicht@gunster.com
lhagan@gunster.com
Nalani Alesia Gordon (Florida Bar No. 1010976)
ngordon@gunster.com
lmusco@gunster.com
GUNSTER YOAKLEY & STEWART, P.A.
777 S. Flagler Drive, Suite 500 East
West Palm Beach, FL 33401
Telephone: 561-655-1980
Counsel for Defendant

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 1, 2026, a true and correct copy of the foregoing has been furnished by electronic mail to all parties on the Service List below.

**BRIAN H. POLLOCK, ESQ.**
brian@fairlawattorney.com
**P. BROOKS LAROU, ESQ.**
brooks@fairlawattorney.com
FAIRLAW FIRM
135 San Lorenzo Avenue
Suite 770
Coral Gables, Florida 33146
Counsel for Plaintiffs

/s/ *Nalani Alesia Gordon*
Nalani Alesia Gordon

# VERIFICATION

**I declare under penalty of perjury that the foregoing is true and correct. Executed on** 4/30/2026 **, 2026.**

STRATAIR AVIATION SERVICES LLC

Andres Gonzalez

(Signature)

By: Andres Gonzalez

As Its: Manager & Vice President of Cargo

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:25-CV-24505-MOORE/ELFENBEIN

IVAN GRANT,
ALEX LAFFITA ORTIZ,
HENRY PINTO SUMOZA,
EYONNY PRADO DURAN,
LUIS RODRIGUEZ CERUTO,
AND LUIS SAME GONZALO,

Plaintiffs,

vs.

STRATAIR AVIATION
SERVICES, LLC,

Defendant.
_______________________________/

**DEFENDANT'S REPONSE TO PLAINTIFF ALEX LAFFITA ORTIZ'S FIRST SET OF INTERROGATORIES TO DEFENDANT**

Defendant, STRATAIR AVIATION SERVICES, LLC. ("StratAir"), by and through its undersigned counsel, hereby responds to Plaintiff ALEX LAFFITA ORTIZ's First Set of Interrogatories to Defendant under Certificate of Service dated March 18, 2026, by responding as follows:

## INTERROGATORIES

1. Please identify each person answering or assisting in answering these interrogatories, and his/her relationship to StratAir, as well as his/her full name, date of birth, social security number, current residential address, and all positions and job titles each such person has held with StratAir during the past five years.

**ANSWER:** **Andres Gonzalez, Manager & Vice President of Cargo**
**c/o Roger W. Feicht, Esq.**
**Gunster, Yoakley & Stewart, P.A.**
**777 S. Flagler Drive, Suite 500 East**
**West Palm Beach, Florida 33401**
**561-655-1980**

**To the extent this request seeks additional information, StratAir objects to the request as seeking sensitive personal information (social security numbers, dates of birth, and home residential addresses) that is not relevant to any claim or defense in this action.**

2. State the specific reason(s) why Plaintiff was selected for termination, state all facts supporting each reason, identify who identified or raised each reason, state whether performance or attendance issues were cited as reasons and if so identify all specific incidents with dates, and identify all documents evidencing each reason.

**ANSWER:** **In January 2024, a major customer of StratAir informed StratAir that it had decided to reduce the number of future cargo delivery flights that it would hire StratAir to unload. This was a major blow to StratAir's work in the near future and resulted in an immediate and significant decline in anticipated revenue. As a direct result of its customer's decision, StratAir had too many employees for the projected demand for its services. Given the significant reduction in work to be performed and the associated drop in revenue, StratAir made the reasonable business decision to reduce its workforce in January 2024. StratAir ultimately laid off twenty-eight (28) employees, including Plaintiff. When management considered employees to be included in the necessary layoff, it evaluated the warehouse and cargo handling workforce based on multiple factors, including relative job performance, seniority, and the operational needs of the business. These factors were weighed holistically. As part of this process, Plaintiff was among those selected for inclusion in the reduction in force.**

3. Identify all persons who participated in the decision to terminate Plaintiff, state each person's specific role in the decision, state the date(s) they participated, describe what information they considered, and identify all documents they reviewed or created in connection with the decision.

**ANSWER: Gisela Barrera and Armando Portales Viera, in consultation with warehouse supervisors and their own observations, made the decision to recommend the termination of Plaintiff to Jorge Corral.**

4. State Plaintiff's official job title(s) and position classification(s) during his employment with Defendant, including: (a) each job title held; (b) the dates during which he held each title; (c) the department or division to which he was assigned; and (d) the shift(s) he regularly worked; and (e) identify all individuals who held a supervisory or managerial position over Plaintiff at any time during his employment, and for each such individual, state their full name, job title, and the dates during which they supervised Plaintiff.

**ANSWER: Plaintiff worked for StratAir as a Warehouse Handler from March 2023 until January 2024. Plaintiff's job duties involved unloading cargo containers from aircraft, unloading packages from cargo containers, sorting unloaded packages into gaylord boxes, loading gaylord boxes into trucks for subsequent delivery, along with the reverse process for unloading delivery trucks, sorting the cargo into containers for loading onto aircraft, and loading the cargo containers onto the aircraft. Plaintiff worked the night shift. Gisela Barrera was the operations manager for the night shift and supervised Plaintiff.**

5. State whether Defendant contends that Plaintiff's position was eliminated and not refilled, and if so, state whether the job duties and functions previously performed by Plaintiff were reassigned to other employees or independent contractors and to whom, state whether any employee or contractor was hired or engaged to perform the same or substantially similar work after January 2024 and if so identify each such person with their age and start date, and state whether the total headcount of persons (employees plus contractors) performing warehouse, cargo, or security work at the Miami location decreased, remained the same, or increased following the January 2024 layoff.

**ANSWER: As a result of the significant reduction in anticipated cargo volume and associated revenue, StratAir reduced the number of employees assigned to warehouse and cargo handling functions. The reduction was a headcount reduction driven by decreased workload and revenue, not an elimination of job classifications. The reduced volume of work no longer required the same staffing levels that had previously been necessary.**

6. For each employee or independent contractor who was retained and held the same or similar position as Plaintiff, state their name, age, position, employment status (employee or contractor), supervisor(s), and the reason they were retained instead of terminated.

**<u>ANSWER:</u> Aggregate data regarding the age, position, and tenure of employees from prior to the RIF in January 2024 will be produced. As it relates to employees, the request seeks detailed personal information of non-party employees who are not involved in this litigation. The names of employees at StratAir are not relevant to any claim or defense in this action. As it relates to independent contractors, StratAir did not engage any independent contractors. To the extent this request seeks further information, StratAir objects.**

7. State whether any supervisor, manager, or other person employed by or acting on behalf of StratAir made any statement(s) regarding employees' ages, older employees, replacing older employees with younger employees, needing "new blood," bringing in younger workers from agencies, or similar age-related statements from January 2023 through February 2024, and if so, for each statement identify the person who made it, state the exact words used, state the date and location, identify all witnesses, and state Defendant's position regarding whether each statement was made.

**<u>ANSWER:</u> StratAir denies that any supervisor, manager, or other person employed by or acting on behalf of StratAir made any age-related statement(s) of the kind described in this interrogatory during the time period of January 2023 through February 2024. Because no such statements were made, the remaining subparts of this Interrogatory are inapplicable.**

8. Identify all complaints, charges, or allegations of age discrimination made by any employee or former employee against StratAir or any of its supervisors or managers from January 2022 through the present, and for each state the complainant's name, the date, the accused individual(s), the allegations, the outcome or resolution, and what corrective action (if any) was taken.

**<u>ANSWER:</u> Objection. This Interrogatory is not proportional to the needs of the case as required by Rule 26(b)(1) of the Federal Rules of Civil Procedure. Plaintiff's claims arise from his inclusion in the January 2024 reduction in force, and the relevant inquiry is whether StratAir's decision with respect to Plaintiff was motivated by discriminatory animus based on his age. The existence or nonexistence of unrelated discrimination complaints by other employees in different departments, holding different positions, under different supervisors, and involving wholly distinct factual circumstances has little, if any, bearing on whether StratAir discriminated against Plaintiff in connection with the reduction in force. The Interrogatory appears designed to conduct a fishing expedition into StratAir's broader employment practices rather than to develop evidence directly relevant to the claims and defenses at issue. The marginal relevance of complaints involving different employees, different decision-makers, and different circumstances is substantially outweighed by the burden of compiling such information and the intrusion upon the privacy interests**

**of the individuals involved. StratAir further objects on the ground that the Interrogatory is impermissibly vague and ambiguous. The terms "complaints," "charges," and "allegations" are not defined and could encompass a virtually unlimited range of communications, from formal EEOC charges to informal verbal statements made in the course of routine workplace interactions. Similarly, the term "corrective action" is undefined and ambiguous as to whether it refers to formal disciplinary measures, policy changes, remedial training, or other responsive steps. Without clear definitions, StratAir cannot reasonably determine the scope of the information sought, and any response would necessarily reflect StratAir's subjective interpretation of these undefined terms.**

9. Identify all complaints, charges, or allegations of age discrimination made by any employee or former employee against StratAir or any of its supervisors or managers from January 2022 through the present, and for each state the complainant's name, the date, the accused individual(s), the allegations, the outcome or resolution, and what corrective action (if any) was taken.

**ANSWER: StratAir objects to this interrogatory as duplicative of Request No. 8 above.**

10. State the specific reasons why Mr. Laffita Ortiz was transferred from inside warehouse work to outside cargo work in or around 2023, identify who made the decision, state when the decision was made, state all facts supporting the decision, state whether the transfer resulted in any change in pay, benefits, or working conditions, and identify all documents relating to this transfer.

**ANSWER: Objection. The Interrogatory assumes facts. Plaintiff Laffita requested to work on the cargo ramp. Plaintiff was not "transferred," as the Interrogatory assumes. StratAir also objects to the characterization of "inside warehouse" and "outside cargo work" as vague and ambiguous.**

11. State the specific reasons why Mr. Laffita Ortiz was later transferred back to inside warehouse work from outside cargo work, identify who made the decision, state when the decision was made, state whether this transfer was at Mr. Laffita's request, state whether the transfer resulted in any change in pay, benefits, or working conditions, and identify all documents relating to this transfer.

**ANSWER: Objection. The Interrogatory assumes facts. Plaintiff Laffita requested to work on the cargo ramp. Plaintiff was not "transferred," as the Interrogatory assumes. StratAir also objects to the characterization of "inside warehouse" and "outside cargo work" as vague and ambiguous.**

12. State whether Mr. Laffita Ortiz's hourly wage or pay rate changed at any time between his hire date and his termination in January 2024, and if so, state each change in pay rate with the date of each change, the reason for each change, whether each change was an increase or decrease, who authorized each change, and identify all documents reflecting each pay change.

**ANSWER:** **Plaintiff received one additional dollar per hour for the brief period of weeks that he worked on the cargo ramp. Plaintiff's pay rate did not change any other time during his employment.**

13. State the date Mr. Laffita Ortiz sent an email to StratAir's President following his termination, identify the President to whom the email was sent, state whether the President or anyone else at StratAir responded, state the date and substance of any response, state whether any investigation was conducted as a result of Mr. Laffita's email, state whether any action was taken in response to the email, and identify all documents relating to Mr. Laffita's email and any response.

**ANSWER:** **Plaintiff Laffita Ortiz sent an email to me on January 23, 2024. StratAir did not respond to Plaintiff's email. StratAir objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege or work product doctrine.**

14. State whether Mr. Laffita Ortiz was subjected to increased scrutiny, micromanagement, or closer supervision following the hiring or engagement of younger employees or independent contractors in late 2023, and if so, describe the increased scrutiny or micromanagement, identify who subjected him to such treatment, state when it began, state the reason for the increased scrutiny, identify all employees who were subjected to similar treatment, and identify all documents evidencing such treatment.

**ANSWER:** **StratAir denies that Plaintiff Laffita Ortiz was subjected to increased scrutiny, micromanagement or closer supervision following the hiring or engagement of younger employees or independent contractors in late 2023. Because no such "increased scrutiny, micromanagement, or closer supervision" occurred, the remaining subparts of this interrogatory are inapplicable. StratAir objects to the characterization of "hiring or engagement of younger employees" as argumentative and vague. In addition, StratAir did not engage independent contractors.**

15. Identify all employees or independent contractors who performed warehouse work at the Miami location and were under age 40 as of January 2024, and for each state their name, age, position, hire or engagement date, employment status (employee or contractor), whether they were retained following the January 2024 layoff, and if retained the stated reason for retention.

**ANSWER:** **StratAir did not engage independent contractors during or after Plaintiff's employment. To the extent the Interrogatory seeks information regarding**

**independent contractors, it calls for the identification of a category of individuals that does not exist, and no response is possible or required. StratAir objects to the extent this Interrogatory seeks personally identifiable information, including names of nonparty employees who are not parties to this litigation and who have a reasonable expectation of privacy in their personal and employment information. Disclosure of such information for potentially dozens of individuals implicates significant privacy concerns and should not be compelled absent a particularized showing of direct relevance to Plaintiff's claims and an appropriate protective order governing the use and dissemination of confidential employee information. Aggregate data regarding the age, position, and tenure of employees from prior to the RIF in January 2024 will be produced.**

16. State whether Mr. Laffita Ortiz provided training, mentoring, or assistance to any younger or newly hired employees or contractors during 2023, and if so, identify each person he trained or assisted, state their age, state the dates of training, describe what training or assistance he provided, state whether this was at the direction of supervisors or management, state whether any of the persons he trained were retained following the January 2024 layoff while Mr. Laffita was terminated, and identify all documents relating to Mr. Laffita's training activities.

**<u>ANSWER:</u> Plaintiff was not assigned to provide training, mentoring, or assistance to any employees at StratAir at any time during his employment.**

17. Identify all employees at the Miami location who had documented performance problems, attendance issues, or disciplinary issues similar to or more serious than any alleged issues regarding Mr. Laffita but were NOT selected for termination in the January 2024 layoff, and for each state their name, age, the nature of their issues, the date(s) of the issues, whether the issues were documented, and the reason they were not selected for termination.

**<u>ANSWER:</u> Objection. This Interrogatory is overly broad and unduly burdensome in that it seeks detailed personal and employment information for potentially hundreds of employees across the entire company who may have any form of "documented performance problems, attendance issues, or disciplinary issues similar to or more serious than any alleged issues regarding Mr. Laffita" at any point during their employment. StratAir employed hundreds of individuals at the time of the January 2024 reduction in force, and the Interrogatory imposes no reasonable limitations on the time frame of the disciplinary history sought, the departments or business units to which it applies, or the types of "similar" conduct or performance issues at issue. Compiling the requested information would require StratAir to undertake an exhaustive, manual review of personnel files for the entire workforce, impose significant burden on StratAir's human resources department, and generate a response disproportionate to any legitimate discovery need in this matter. StratAir further objects on the ground that the Interrogatory is impermissibly vague and ambiguous. The phrases "performance problems," "attendance issues," and "disciplinary issues" are vague and StratAir has no way to meaningfully search for**

**this information or ensure that all responsive categories of information are produced. The phrase "similar to or more serious than any alleged issues regarding Mr. Laffita" lacks sufficient specificity to enable StratAir to identify the universe of employees whose records must be searched. Without a clear and agreed-upon definition of what constitutes "similar" attendance, disciplinary or performance issues, the Interrogatory calls for StratAir to exercise subjective judgment and speculation. StratAir objects on the ground that this Interrogatory is not proportional to the needs of the case, as required by Rule 26(b)(1) of the Federal Rules of Civil Procedure. The January 2024 reduction in force was driven by legitimate business considerations, including operational restructuring, cost reduction, and strategic realignment, and the selection of employees for separation was based on a multifactor analysis that extended well beyond any single disciplinary event. StratAir objects to the extent this Interrogatory seeks personally identifiable information, including names of nonparty employees who are not parties to this litigation and who have a reasonable expectation of privacy in their personnel records. Disclosure of such information implicates significant privacy concerns and should not be compelled absent a showing of direct relevance and a suitable protective order.**

18. State all facts supporting Defendant's denial that Mr. Laffita Ortiz was discriminated against based on his age, including all evidence Defendant contends demonstrates non-discriminatory reasons for his termination.

**<u>ANSWER:</u> Objection. This Interrogatory is overly broad and premature in that it effectively asks StratAir to marshal and present the entirety of its factual case in chief in response to a single discovery request. The Interrogatory calls upon Defendant to identify "all facts" supporting its position that Plaintiff's termination was not motivated by age, which is tantamount to requiring StratAir to prepare and disclose a comprehensive trial brief at this stage of the litigation. Courts have routinely recognized that contention interrogatories of this nature are more appropriately deferred until the close of fact discovery, after the parties have had a full and fair opportunity to conduct depositions, obtain and review documents, and develop the factual record. Requiring a premature response at this juncture risks incomplete or misleading disclosures, may prejudice StratAir's ability to develop its defense as discovery unfolds, and would impose a burden disproportionate to the needs of the case at this stage. The phrase "all facts" is inherently boundless and provides no meaningful limitation, making it impossible for StratAir to determine with reasonable certainty when a complete response has been provided. Moreover, the Interrogatory conflates Defendant's factual contentions with its legal positions and theories, rendering the request ambiguous as to whether it seeks purely factual information, legal conclusions, or both.**

19. State whether any independent contractors, temporary workers, or staffing agency workers were assigned to perform warehouse or cargo handling work at the Miami warehouse location after his termination in January 2024, and if so, identify each such person, state their age, state their start date, and describe the work they performed.

**ANSWER:** **StratAir did not engage independent contractors. To the extent the Interrogatory seeks information regarding independent contractors, it calls for the identification of a category of individuals that does not exist, and no response is possible or required. To the extent the Interrogatory seeks information regarding temporary and/or staffing agency workers, StratAir objects. Plaintiffs' Amended Complaint does not mention independent contractors, temporary workers, or staffing agency workers. Plaintiffs' claims are not based on StratAir allegedly engaging non-employees after January 2024. Plaintiffs allege that "Defendant fired Plaintiffs and other older employees with more seniority, and retained younger employees with less seniority, to perform the same or similar jobs."** ***See*** **Amended Complaint, Paragraphs 51, 86. Therefore, whether contractors, temporary workers, or staffing agency workers were engaged after the Plaintiffs were terminated have no bearing on Plaintiff's claims or any related defenses. Notwithstanding the foregoing objection, StratAir does not have records related to any temporary workers or staffing agency workers in its possession, custody, or control.**

20. State whether the transfers Mr. Laffita experienced between inside and outside work in 2023 were considered or discussed in connection with the decision to terminate him in January 2024, and if so, identify who considered or discussed this, state when it was considered or discussed, describe what was said, and identify all documents reflecting such consideration or discussion.

**ANSWER:** **Objection. The Interrogatory assumes facts. Plaintiff Laffita requested to work on the cargo ramp. Plaintiff was not "transferred," as the Interrogatory assumes. StratAir also objects to the characterization of "inside warehouse" and "outside cargo work" as vague and ambiguous.**

21. State the specific reasons why Defendant contends that Mr. Laffita Ortiz's "performance was unsatisfactory," that Mr. Laffita "showed a negative attitude," was "unwilling to listen to feedback and exhibited careless behavior"; state all facts supporting this contention, identify all specific incidents with dates and witnesses, state whether these alleged performance issues were documented in Mr. Pinto's personnel file before the January 2024 layoff decision, state who observed or reported these alleged issues, state whether Mr. Pinto was ever counseled or warned about these alleged issues before his termination, and identify all documents supporting this contention.

**ANSWER:** **Objection. This Interrogatory is overly broad and premature in that it effectively asks StratAir to marshal and present the entirety of its factual case in chief in response to a single discovery request. StratAir also notes that the latter portion of the**

**Interrogatory references "Mr. Pinto," but StratAir's answer refers to Plaintiff Laffita Ortiz only.**

Dated: May 1, 2026

**Nalani Alesia Gordon**
Roger W. Feicht (Florida Bar No. 84982)
rfeicht@gunster.com
lhagan@gunster.com
Nalani Alesia Gordon (Florida Bar No. 1010976)
ngordon@gunster.com
lmusco@gunster.com
GUNSTER YOAKLEY & STEWART, P.A.
777 S. Flagler Drive, Suite 500 East
West Palm Beach, FL 33401
Telephone: 561-655-1980
Counsel for Defendant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 1, 2026, a true and correct copy of the foregoing has been furnished by electronic mail to all parties on the Service List below.

**BRIAN H. POLLOCK, ESQ.**
brian@fairlawattorney.com
**P. BROOKS LAROU, ESQ.**
brooks@fairlawattorney.com
FAIRLAW FIRM
135 San Lorenzo Avenue
Suite 770
Coral Gables, Florida 33146
Counsel for Plaintiffs

/s/ Nalani Alesia Gordon
Nalani Alesia Gordon

# VERIFICATION

**I declare under penalty of perjury that the foregoing is true and correct. Executed on** 4/30/2026**, 2026.**

STRATAIR AVIATION SERVICES LLC

Andres Gonzalez

(Signature)

By: Andres Gonzalez

As Its: Manager & Vice President of Cargo

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:25-CV-24505-MOORE/ELFENBEIN
(Consolidated with Case No. 1:25-cv-24505-Williams/Lett)

IVAN GRANT,
ALEX LAFFITA ORTIZ,
HENRY PINTO SUMOZA,
EYONNY PRADO DURAN,
LUIS RODRIGUEZ CERUTO, and
LUIS SAME GONZALO,

Plaintiffs,

vs.

STRATAIR AVIATION
SERVICES, LLC,

Defendants.
_______________________________/

**DEFENDANT'S RESPONSE TO PLAINTIFF HENRY PINTO SUMOZA'S FIRST SET OF INTERROGATORIES TO DEFENDANT**

Defendant, STRATAIR AVIATION SERVICES, LLC. ("StratAir"), by and through its undersigned counsel, hereby responds to Plaintiff HENRY PINTO SUMOZA's First Set of Interrogatories to Defendant under Certificate of Service dated March 18, 2026, by responding as follows:

## INTERROGATORIES

1) Please identify each person answering or assisting in answering these interrogatories, and his/her relationship to StratAir, as well as his/her full name, date of birth, social security number, current residential address, and all positions and job titles each such person has held with StratAir during the past five years.

**ANSWER: Andres Gonzalez, Manager & Vice President of Cargo**

**c/o Roger W. Feicht, Esq.**
**Gunster, Yoakley & Stewart, P.A.**
**777 S. Flagler Drive, Suite 500 East**
**West Palm Beach, Florida 33401**
**561-655-1980**

**To the extent this request seeks additional information, StratAir objects to the request as seeking sensitive personal information (social security numbers, dates of birth, and home residential addresses) that is not relevant to any claim or defense in this action.**

2) State the specific reason(s) why Plaintiff was selected for termination, state all facts supporting each reason, identify who identified or raised each reason, state whether performance or attendance issues were cited as reasons and if so identify all specific incidents with dates, and identify all documents evidencing eachreason.

**ANSWER: In January 2024, a major customer of StratAir informed StratAir that it had decided to reduce the number of future cargo delivery flights that it would hire StratAir to unload. This was a major blow to StratAir's work in the near future and resulted in an immediate and significant decline in anticipated revenue. As a direct result of its customer's decision, StratAir had too many employees for the projected demand for its services. Given the significant reduction in work to be performed and the associated drop in revenue, StratAir made the reasonable business decision to reduce its workforce in January 2024. StratAir ultimately laid off twenty-eight (28) employees, including Plaintiff. When management considered employees to be included in the necessary layoff, it evaluated the warehouse and cargo handling workforce based on multiple factors, including relative job performance, seniority, and the operational needs of the business. These factors were weighed holistically. As part of this process, Plaintiff was among those selected for inclusion in the reduction in force.**

3) Identify all persons who participated in the decision to terminate Plaintiff, state each person's specific role in the decision, state the date(s) they participated, describe what information they considered, and identify all documents they reviewed or created in connection with the decision.

**ANSWER: Gisela Barrera and Armando Portales Viera, in consultation with warehouse supervisors and their own observations, made the decision to recommend the termination of Plaintiff to Jorge Corral.**

4) State Plaintiff's official job title(s) and position classification(s) during his employment with Defendant, including: (a) each job title held; (b) the dates during which he held each title; (c) the department or division to which he was assigned; and (d) the shift(s) he regularly worked; and (e) identify all individuals who held a supervisory or managerial position over Plaintiff at any time during his employment, and for each such individual, state their full name, job title, and the dates during which they supervised Plaintiff.

**ANSWER: Plaintiff Pinto was hired by StratAir in July 2019 as a Warehouse Handler. Plaintiff's job duties involved unloading cargo containers from aircraft, unloading packages from cargo containers, sorting unloaded packages into gaylord boxes, loading gaylord boxes into trucks for subsequent delivery, along with the reverse process for unloading delivery trucks, sorting the cargo into containers for loading onto aircraft, and loading the cargo containers onto the aircraft. When StratAir's security guard was absent from work, Plaintiff would also fill in and work as a security guard watching a particular entrance. Plaintiff worked the day shift. Jose Alverio supervised Plaintiff.**

5) State whether Defendant contends that Plaintiff's position was eliminated and not refilled, and if so, state whether the job duties and functions previously performed by Plaintiff were reassigned to other employees or independent contractors and to whom, state whether any employee or contractor was hired or engaged to perform the same or substantially similar work after January 2024 and if so identify each such person with their age and start date, and state whether the total headcount of persons (employees plus contractors) performing warehouse, cargo, or security work at the Miami location decreased, remained the same, or increased following the January 2024 layoff.

**ANSWER: As a result of the significant reduction in anticipated cargo volume and associated revenue, StratAir reduced the number of employees assigned to warehouse and cargo handling functions. The reduction was a headcount reduction driven by decreased workload and revenue, not an elimination of job classifications. The reduced volume of work no longer required the same staffing levels that had previously been necessary.**

6) For each employee or independent contractor who was retained and held the same or similar position as Plaintiff, state their name, age, position, employment status (employee or contractor), supervisor(s), and the reason they were retained instead of terminated.

**ANSWER: Aggregate data regarding the age and tenure of employees from prior to the RIF in January 2024 will be produced. As it relates to employees, the request seeks detailed personal information of non-party employees who are not involved in this litigation. The names of employees at StratAir are not relevant to any claim or defense in this action. As it relates to independent contractors, StratAir did not engage any independent contractors. To the extent this request seeks further information, StratAir objects.**

7) Identify all independent contractors, temporary workers, or staffing agency workers who performed warehouse work, cargo handling work, or security work at the Miami warehouse location from October 1, 2023 through March 31, 2024, state for each person their age (if known), start date, whether they were working as of January 13, 2024, whether they continued working after January 2024, and whether they were considered for termination as part of the January 2024 reduction in force.

**ANSWER: Objection. The Interrogatory seeks information that is not relevant to any claim or defense in this action. Plaintiffs' Amended Complaint does not mention independent contractors, temporary workers, or staffing agency workers. In addition, Plaintiffs' claims are not based on StratAir allegedly engaging non-employees after January 2024. Plaintiffs allege that "Defendant fired Plaintiffs and other older employees with more seniority, and retained younger employees with less seniority, to perform the same or similar jobs."** ***See*** **Amended Complaint, Paragraphs 51, 86. Therefore, whether contractors, temporary workers, or staffing agency workers were engaged either before or after the Plaintiffs were terminated have no bearing on Plaintiff's claims or any related defenses. Notwithstanding the foregoing objection, StratAir did not engage independent contractors. StratAir does not have records related to any temporary workers or staffing agency workers in its possession, custody, or control.**

8) State the specific reasons why Defendant contends Mr. Pinto Sumoza "worked unapproved" or was unable to perform cargo unloading work, state all facts supporting this contention, identify all specific incidents with dates and witnesses, state whether these alleged performance issues were documented in Mr. Pinto's personnel file before the January 2024 layoff decision, state who observed or reported these alleged issues, state whether Mr. Pinto was ever counseled or warned about these alleged issues before his termination, and identify all documents supporting this contention.

**ANSWER: Objection. This Interrogatory is overly broad and premature in that it effectively asks StratAir to marshal and present the entirety of its factual case in chief in response to a single discovery request. Notwithstanding the foregoing objection, Plaintiff received negative feedback on his work performance. Specifically, Plaintiff received a verbal warning for working overtime shifts without approval, which was a major violation of StratAir's policies. Additionally, Plaintiff was considered by management to be a lower performing Warehouse Handler because of his poor performance and inefficiency with respect to unloading cargo in the time frames expected by management.**

9) State the specific reasons why Defendant contends Mr. Pinto Sumoza "left his post while covering for security," state all facts supporting this contention, identify all specific incidents with dates and witnesses, state whether these alleged performance issues were documented in Mr. Pinto's personnel file before the January 2024 layoff decision, state who observed or reported these alleged issues, state whether Mr. Pinto was ever counseled or warned about these alleged issues before his termination, and identify all documents supporting this contention.

**ANSWER: Objection. This Interrogatory is overly broad and premature in its requests for "all facts" given that discovery is ongoing. Notwithstanding the foregoing objection, Plaintiff received a verbal warning for leaving his post to chat with his coworkers during a shift that he filled in for the security guard.**

10) State the specific reasons why Defendant contends Mr. Pinto Sumoza "was not considered to be a strong performer," state all facts supporting this contention, identify all specific incidents with dates and witnesses, state whether these alleged performance issues were documented in Mr. Pinto's personnel file before the January 2024 layoff decision, state who observed or reported these alleged issues, state whether Mr. Pinto was ever counseled or warned about these alleged issues before his termination, and identify all documents supporting this contention.

**ANSWER: See response to Interrogatory 8 above.**

11) State whether Mr. Pinto Sumoza complained to StratAir's human resources department, his supervisors Mike, Jose (also known as "Bori"), or any other supervisor or manager on or about January 16, 2024 (after learning of his termination) that he believed he was being terminated because of his age, and if so, identify to whom he complained, state the date and time of each complaint, describe what Mr. Pinto said, identify all witnesses, state who responded to the complaint and what was said, state whether any investigation was conducted, state what action (if any) was taken in response, and identify all documents relating to such complaints.

**ANSWER: Plaintiff did not complain to StratAir's human resources department, his supervisors, or any other manager that he believed he was being terminated because of his age. Because no such complaints were made, the remaining subparts of this Interrogatory are inapplicable.**

12) Identify all security guards, warehouse workers, or cargo handlers at the Miami location who had documented performance issues similar to those alleged regarding Mr. Pinto but were NOT selected for termination in the January 2024 layoff, and for each state their name, age, the nature of their performance issues, whether the issues were documented, and why they were retained despite documented issues.

**ANSWER: Objection. This Interrogatory is overly broad and unduly burdensome in that it seeks detailed personal and employment information for all security guards, warehouse workers, and cargo handlers at the Miami location who may have had any form of "documented performance issues similar to those alleged regarding Mr. Pinto" at any point during their employment. StratAir employed a significant number of individuals in these positions at its Miami location at the time of the January 2024 layoff, and the Interrogatory imposes no reasonable limitations on the time frame of the performance history sought or the types of "similar" performance issues at issue. Compiling the requested information would require StratAir to undertake an exhaustive, manual review of personnel files for all security guards, warehouse workers, and cargo handlers at the Miami location, impose significant burden on StratAir's human resources department, and generate a response disproportionate to any legitimate discovery need in this matter. StratAir further objects on the ground that the Interrogatory is impermissibly vague and ambiguous. The phrase "documented performance issues" is vague, and StratAir has no way to meaningfully search for this information or ensure that all responsive categories of information are produced. The phrase "similar to those alleged regarding Mr. Pinto" lacks sufficient specificity to enable StratAir to identify the universe of employees whose records must be searched. Without a clear and agreed-upon definition of what constitutes "similar" performance issues, the Interrogatory calls for StratAir to exercise subjective judgment and speculation. The retention of employees during a reduction in force involves a multifactor analysis implicating business strategy, operational needs, and legal considerations, and compelling StratAir to articulate individualized justifications for each**

**retention decision is unduly burdensome and invades privileged deliberative processes. StratAir objects on the ground that this Interrogatory is not proportional to the needs of the case, as required by Rule 26(b)(1) of the Federal Rules of Civil Procedure. The January 2024 layoff was driven by legitimate business considerations, including operational restructuring, cost reduction, and strategic realignment, and the selection of employees for separation was based on a multifactor analysis that extended well beyond any single performance issue. StratAir objects to the extent this Interrogatory seeks personally identifiable information, including names of nonparty employees who are not parties to this litigation and who have a reasonable expectation of privacy in their personnel records. Disclosure of such information implicates significant privacy concerns and should not be compelled absent a showing of direct relevance and a suitable protective order.**

13) State whether Armando Portales Viera participated in both the decision to hire Mr. Pinto in 2022 and the decision to terminate Mr. Pinto in January 2024, and if so, describe his role in each decision, state what changed between 2022 (when he hired Mr. Pinto) and January 2024 (when he participated in terminating Mr. Pinto), state whether Armando raised any concerns about Mr. Pinto's age (75 years old) in connection with either decision, and identify all documents reflecting Armando's participation in both decisions.

**ANSWER: Armando Portales Viera may have participated in the decision to hire Plaintiff. Armando Portales participated in the selection of employees for the January 2024 layoff, which included Plaintiff. Neither Plaintiff's age nor the ages of any other employees were raised or considered in connection with either decision.**

14) State whether Mr. Pinto's supervisor Jose (also known as "Bori") participated in both the decision to hire Mr. Pinto in 2022 and the decision to terminate Mr. Pinto in January 2024, and if so, describe his role in each decision, state what changed between 2022 (when he hired Mr. Pinto) and January 2024 (when he participated in terminating Mr. Pinto), state whether Armando raised any concerns about Mr. Pinto's age (75 years old) in connection with either decision, and identify all documents reflecting Armando's participation in both decisions.

**ANSWER: StratAir supervisors, including Jose Alverio, provided feedback regarding employees' job performance in the selection process for the January 2024 layoff. However, Mr. Alverio was not a decision-maker. StratAir notes that the latter portion of the Interrogatory references "Armando" and not Jose Alverio. However, StratAir states that concerns regarding Plaintiff Pinto's age were not raised in connection with either his hiring or inclusion in the layoff. Because Jose Alverio was not involved in the**

**decision for the January 2024 layoff, the remaining subparts of this Interrogatory do not require a response.**

15) State all facts supporting Defendant's denial that Mr. Pinto was discriminated against based on his age (75 years old at termination), including all evidence Defendant contends demonstrates non-discriminatory reasons for his termination.

**ANSWER: Objection. This Interrogatory is overly broad and premature in that it effectively asks StratAir to marshal and present the entirety of its factual case in chief in response to a single discovery request. The Interrogatory calls upon StratAir to identify "all facts" supporting its position that Plaintiff's termination was not motivated by age, which is tantamount to requiring StratAir to prepare and disclose a comprehensive trial brief at this stage of the litigation. Courts have routinely recognized that contention interrogatories of this nature are more appropriately deferred until the close of fact discovery, after the parties have had a full and fair opportunity to conduct depositions, obtain and review documents, and develop the factual record. Requiring a premature response at this juncture risks incomplete or misleading disclosures, may prejudice StratAir's ability to develop its defense as discovery unfolds, and would impose a burden disproportionate to the needs of the case at this stage. The phrase "all facts" is inherently boundless and provide no meaningful limitation, making it impossible for StratAir to determine with reasonable certainty when a complete response has been provided. Moreover, the Interrogatory conflates StratAir's factual contentions with its legal positions and theories, rendering the request ambiguous as to whether it seeks purely factual information, legal conclusions, or both.**

16) State whether Mr. Pinto's age (75 years old) was considered, discussed, or mentioned by any decision-maker in connection with his January 2024 termination, and if so, identify who considered, discussed, or mentioned it, state when and in what context, describe what was said, and identify all documents reflecting such consideration, discussion, or mention.

**ANSWER: Plaintiff's age was not considered, discussed, or mentioned by any decision-maker in connection with his January 2024 termination. Because no such statements were made, the remaining subparts of this Interrogatory do not require a response.**

17) Identify all security guards, warehouse workers, and cargo handlers employed or engaged at the Miami location from October 2023 through February 2024, and for each state their name, age, employment status (employee or contractor), whether they were selected for termination in the January 2024 layoff, and if terminated the stated reason for selection or if retained the stated reason for retention.

**ANSWER: Objection. This Interrogatory is overbroad and disproportionate to the needs of the case. The layoff at issue occurred in January 2024, yet the Interrogatory demands identification of every security guard, warehouse worker, and cargo handler at the Miami location over a five-month window extending three months before and one month after that event. This sweeps in individuals with no connection to the claims or defenses in this litigation. The Interrogatory demands multi-part responses—name, age, employment status, termination selection, and stated reasons—for every worker in three job categories over five months. The burden of compiling this granular detail substantially outweighs any likely benefit to the resolution of the claims at issue. *See* Fed. R. Civ. P. 26(b)(1), (b)(2)(C). StratAir objects to the extent this Interrogatory seeks the names of non-party employees. Disclosure of such personally identifiable information implicates significant privacy interests, and any marginal relevance is outweighed by the privacy concerns of the affected individuals. StratAir objects to the extent this Interrogatory presupposes that StratAir "engaged" independent contractors at its Miami location. StratAir did not engage independent contractors at this location, and the Interrogatory's references to individuals' "employment status (employee or contractor)" therefore does not require a response. This Interrogatory is impermissibly compound. Although styled as a single interrogatory, it contains multiple discrete subparts—identification across three job categories, name, age, employment status, termination selection, and reasons for selection or retention—each calling for a separate investigation. StratAir reserves the right to treat each discrete subpart as a separate interrogatory under the presumptive limit of Federal Rule of Civil Procedure 33(a)(1). Notwithstanding the foregoing objection, aggregate data regarding the age, position, and tenure of employees from prior to the RIF in January 2024 will be produced.**

18) State whether any independent contractors, temporary workers, or staffing agency workers were assigned to perform security, warehouse, or cargo handling work at the Miami location after Mr. Pinto's termination in January 2024, and if so, identify each such person, state their age, state their start date, and describe the work they performed.

**ANSWER: StratAir did not engage independent contractors. To the extent the Interrogatory seeks information regarding independent contractors, it calls for the identification of a category of individuals that does not exist, and no response is possible or required. To the extent the Interrogatory seeks information regarding temporary and/or staffing agency workers, StratAir**

**objects. Plaintiffs' Amended Complaint does not mention independent contractors, temporary workers, or staffing agency workers. Plaintiffs' claims are not based on StratAir allegedly engaging non-employees after January 2024. Plaintiffs allege that "Defendant fired Plaintiffs and other older employees with more seniority, and retained younger employees with less seniority, to perform the same or similar jobs."** ***See*** **Amended Complaint, Paragraphs 51, 86. Therefore, whether contractors, temporary workers, or staffing agency workers were engaged after the Plaintiffs were terminated have no bearing on Plaintiff's claims or any related defenses. Notwithstanding the foregoing objection, StratAir does not have records related to any temporary workers or staffing agency workers in its possession, custody, or control.**

19) State whether the physical demands of Mr. Pinto's position(s) or his ability to meet those demands were considered or discussed in connection with the decision to terminate him in January 2024, and if so, identify who considered or discussed this, state when it was considered or discussed, describe what was said, state whether Mr. Pinto's age was mentioned in connection with physical demands, and identify all documents reflecting such consideration or discussion.

**ANSWER: Neither the "physical demands of Mr. Pinto's position(s)" nor "his ability to meet those demands were considered or discussed in connection with the decision to terminate Plaintiff. Plaintiff's job performance was discussed. When management considered employees to be included in the necessary layoff, it evaluated the warehouse and cargo handling workforce based on multiple factors, including relative job performance, seniority, and the operational needs of the business. These factors were weighed holistically.**

20) Identify all training provided to supervisors or managers at the Miami location from January 2022 through January 2024 regarding age discrimination, the Age Discrimination in Employment Act (ADEA), how to conduct a reduction in force in compliance with employment laws, or documentation requirements for employment decisions, and for each training state the date, trainer, attendees, and identify all training materials.

**ANSWER: Objection. This Interrogatory is overly broad and unduly burdensome in that it seeks identification of "all training" across multiple distinct subject matters over a two-year period, without any limitation as to the relevance of such training to the claims or defenses at issue in this litigation. The Interrogatory effectively encompasses any training that touched upon age discrimination, the Age Discrimination in Employment Act, reductions in force, or documentation requirements for employment decisions, regardless of whether such training bears any reasonable connection to the specific employment actions or decisions at issue in this case. Responding to this request as drafted would require StratAir to**

**undertake an exhaustive review of all training records, schedules, sign-in sheets, and related materials across multiple departments and functional areas at the Miami location, imposing a burden disproportionate to the needs of this case. To the extent the Interrogatory seeks information regarding training provided to supervisors or managers who were not involved in the employment decisions at issue, it is not reasonably calculated to lead to the discovery of admissible evidence and seeks information that is neither relevant nor proportional to the needs of the case under Federal Rule of Civil Procedure 26(b)(1). StratAir further objects to this Interrogatory as improperly compound. The Interrogatory purports to be a single question but in fact contains multiple discrete subparts, each of which constitutes a separate interrogatory. Specifically, the Interrogatory asks StratAir to identify (1) all training regarding age discrimination; (2) all training regarding the ADEA; (3) all training regarding how to conduct a reduction in force in compliance with employment laws; and (4) all training regarding documentation requirements for employment decisions. Each of these categories represents a distinct subject matter requiring independent investigation and response. Moreover, for each such training, the Interrogatory further demands identification of the date, trainer, attendees, and all training materials, compounding the burden. StratAir objects that this Interrogatory should be counted as multiple interrogatories for purposes of the applicable interrogatory limits. Defendant objects that the Interrogatory is vague and ambiguous in several respects. The phrase "training provided to supervisors or managers" is undefined and fails to specify whether it encompasses only formal, structured training sessions or also includes informal guidance, coaching, one-on-one discussions, email communications, distribution of written policies, or other forms of instruction or communication. The phrase "documentation requirements for employment decisions" is similarly vague, as it could encompass virtually any internal guidance regarding record-keeping, performance management, or human resources processes, subjects that extend well beyond the scope of the claims in this action. Additionally, the phrase "all training materials" is overbroad and undefined, as it could be construed to include not only formal presentation materials but also handouts, notes, outlines, drafts, emails, and any other documents tangentially associated with a training session.**

Dated: May 1, 2026

**Nalani Alesia Gordon**
Roger W. Feicht (Florida Bar No. 84982)
rfeicht@gunster.com
lhagan@gunster.com
Nalani Alesia Gordon (Florida Bar No. 1010976)
ngordon@gunster.com
lmusco@gunster.com
GUNSTER YOAKLEY & STEWART, P.A.
777 S. Flagler Drive, Suite 500 East
West Palm Beach, FL 33401
Telephone: 561-655-1980
Counsel for Defendant

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 1, 2026, a true and correct copy of the foregoing has been furnished by electronic mail to all parties on the Service List below.

**BRIAN H. POLLOCK, ESQ.**
brian@fairlawattorney.com
**P. BROOKS LAROU, ESQ.**
brooks@fairlawattorney.com
FAIRLAW FIRM
135 San Lorenzo Avenue
Suite 770
Coral Gables, Florida 33146
Counsel for Plaintiffs

/s/ Nalani Alesia Gordon
Nalani Alesia Gordon

Docusign Envelope ID: EFC6CC4F-4EDC-89C2-8114-2D67202AD626


# VERIFICATION

**I declare under penalty of perjury that the foregoing is true and correct. Executed on** 4/30/2026**.**

STRATAIR AVIATION SERVICES LLC

Signed by:

Andres Gonzalez

318FAD89932445B...

(Signature)

By: Andres Gonzalez

As Its: Manager & Vice President of Cargo

UNITED STATES DISTRICT COURT SOUTHERN
DISTRICT OF FLORIDA

CASE NO.: 1:25-CV-24505-MOORE/ELFENBEIN
(Consolidated with Case No. 1:25-cv-24505-Williams/Lett)

IVAN GRANT,
ALEX LAFFITA ORTIZ,
HENRY PINTO SUMOZA,
EYONNY PRADO DURAN,
LUIS RODRIGUEZ CERUTO,
and LUIS SAME GONZALO,

Plaintiffs,

vs.

STRATAIR AVIATION
SERVICES, LLC,

Defendants.

_________________________________/

**DEFENDANT'S RESPONSE TO PLAINTIFF LUIS RODRIGUEZ CERUTO'S FIRST SET OF INTERROGATORIES TO DEFENDANT**

Defendant, STRATAIR AVIATION SERVICES, LLC. ("StratAir"), by and through its undersigned counsel, hereby responds to Plaintiff LUIS RODRIGUEZ CERUTO's First Set of Interrogatories to Defendant under Certificate of Service dated March 18, 2026, by responding as follows:

## INTERROGATORIES

1) Please identify each person answering or assisting in answering these interrogatories, and his/her relationship to StratAir, as well as his/her full name, date of birth, social security number, current residential address, and all positions and job titles each such person has held with StratAir during the past five years.

**ANSWER: Andres Gonzalez, Manager & Vice President of Cargo**

**c/o Roger W. Feicht, Esq.**
**Gunster, Yoakley & Stewart, P.A.**
**777 S. Flagler Drive, Suite 500 East**
**West Palm Beach, Florida 33401**
**561-655-1980**

**To the extent this request seeks additional information, StratAir objects to the request as seeking sensitive personal information (social security numbers, dates of birth, and home residential addresses) that is not relevant to any claim or defense in this action.**

2) State the specific reason(s) why Plaintiff was selected for termination, state all facts supporting each reason, identify who identified or raised each reason, state whether performance or attendance issues were cited as reasons and if so identify all specific incidents with dates, and identify all documents evidencing each reason.

ANSWER: **In January 2024, a major customer of StratAir informed StratAir that it had decided to reduce the number of future cargo delivery flights that it would hire StratAir to unload. This was a major blow to StratAir's work in the near future and resulted in an immediate and significant decline in anticipated revenue. As a direct result of its customer's decision, StratAir had too many employees for the projected demand for its services. Given the significant reduction in work to be performed and the associated drop in revenue, StratAir made the reasonable business decision to reduce its workforce in January 2024. StratAir ultimately laid off twenty-eight (28) employees, including Plaintiff. When management considered employees to be included in the necessary layoff, it evaluated the warehouse and cargo handling workforce based on multiple factors, including relative job performance, seniority, and the operational needs of the business. These factors were weighed holistically. As part of this process, Plaintiff was among those selected for inclusion in the reduction in force.**

3) Identify all persons who participated in the decision to terminate Plaintiff, state each person's specific role in the decision, state the date(s) they participated, describe what information they considered, and identify all documents they reviewed or created in connection with the decision.

**ANSWER: Gisela Barrera and Armando Portales Viera, in consultation with warehouse supervisors and their own observations, made the decision to recommend the termination of Plaintiff to Jorge Corral.**

4) State Plaintiff's official job title(s) and position classification(s) during his employment with Defendant, including: (a) each job title held; (b) the dates during which he held each title; (c) the department or division to which he was assigned; and (d) the shift(s) he regularly worked; and (e) identify all individuals who held a supervisory or managerial position over Plaintiff at any time during his employment, and for each such individual, state their full name, job title, and the dates during which they supervised Plaintiff.

**ANSWER: Plaintiff was hired by StratAir in June 2022 as a Warehouse Handler. Plaintiff's job duties involved unloading cargo containers from aircraft, unloading packages from cargo containers, sorting unloaded packages into gaylord boxes, loading gaylord boxes into trucks for subsequent delivery, along with the reverse process for unloading delivery trucks, sorting the cargo into containers for loading onto aircraft, and loading the cargo containers onto the aircraft. Plaintiff worked the day shift, and his supervisor was Jose Alverio.**

5) State whether Defendant contends that Plaintiff's position was eliminated and not refilled, and if so, state whether the job duties and functions previously performed by Plaintiff were reassigned to other employees or independent contractors and to whom, state whether any employee or contractor was hired or engaged to perform the same or substantially similar work after January 2024 and if so identify each such person with their age and start date, and state whether the total headcount of persons (employees plus contractors) performing warehouse, cargo, or security work at the Miami location decreased, remained the same, or increased following the January 2024 layoff.

**ANSWER: As a result of the significant reduction in anticipated cargo volume and associated revenue, StratAir reduced the number of employees assigned to warehouse and cargo handling functions. The reduction was a headcount reduction driven by decreased workload and revenue, not an elimination of job classifications. The reduced volume of work no longer required the same staffing levels that had previously been necessary.**

6) For each employee or independent contractor who was retained and held the same or similar position as Plaintiff, state their name, age, position, employment status (employee or contractor), supervisor(s), and the reason they were retained instead of terminated.

**ANSWER: Aggregate data regarding the age, position, and tenure of employees from prior to the RIF in January 2024 will be produced. As it relates to employees, the request seeks detailed personal information of non-party employees who are not involved in this litigation. The names of employees at StratAir are not relevant to any claim or defense in this action. As it relates to independent contractors, StratAir did not engage any independent contractors. To the extent this request seeks further information, StratAir objects.**

7) State when Defendant first became aware that Mr. Rodriguez Ceruto's wife had been diagnosed with cancer or a serious health condition requiring medical treatment, state the specific date Defendant learned of the diagnosis, identify who at StratAir first learned of it, describe how Defendant became aware, identify who else at StratAir was informed and when each person was informed, and identify all documents reflecting Defendant's knowledge of his wife's condition.

**ANSWER: StratAir was not aware that Plaintiff Rodriguez Ceruto's wife had been diagnosed with cancer or a serious health condition requiring medical treatment. Plaintiff did disclose that his wife was sick, but StratAir was not aware of any details or seriousness of her condition. StratAir did not become aware of Plaintiff's wife's cancer diagnosis until after Plaintiff's termination. Because StratAir was not aware of the diagnosis, the remaining subparts of this Interrogatory do not require a response.**

8) Identify all requests for time off, schedule changes, or flexibility that Mr. Rodriguez Ceruto made from January 2023 through January 2024 to assist his wife with medical appointments or treatment, and for each request state the date of the request, to whom the request was made, the reason given for the request, whether the request was granted or denied, if denied the reason for denial, who made the decision to grant or deny the request, and identify all documents relating to each request.

**ANSWER: StratAir does not have records of Plaintiff requesting time off for his wife's medical condition. However, Plaintiff's PTO requests were granted. Pursuant to Federal Rule of Civil Procedure 33(d), StratAir will produce Plaintiff's relevant time records.**

9) State whether Defendant required Mr. Rodriguez Ceruto to provide a doctor's note or medical documentation for his time-off requests related to his wife's medical condition, and if so, state when this requirement was imposed, identify who imposed the requirement, state the reason for imposing this requirement, state whether Mr. Ceruto complied with the requirement, state Defendant's policy regarding when doctor's notes are required for time-off requests, and identify all documents reflecting this requirement.

**ANSWER: Plaintiff did not notify StratAir of any serious health condition of his wife. Therefore, the remaining subparts of this Interrogatory do not require a response. StratAir does not have records of Plaintiff requesting time off for his wife's medical condition. As it relates to medical documentation, StratAir's Leaves of Absence policies, including Personal Leave and Family and Medical Leave policies require employees to submit medical certifications. StratAir objects to the extent this Interrogatory assumes that StratAir maintained a practice of selectively requiring or waiving medical documentation for employee time-off requests, or that any such practice was applied in a manner related to age, disability, or the exercise of FMLA rights. StratAir does not, by responding or objecting to this Interrogatory, concede any such facts.**

10) Identify all employees at the Miami warehouse location from January 2023 through January 2024 who requested time off for personal or family medical reasons and were NOT required to provide a doctor's note or medical documentation, and for each state their name, age, position, the reason for their time-off request (if known), whether they were under age 40, whether they were selected for termination in the January 2024 layoff, and the reason they were not required to provide medical documentation.

**ANSWER: Objection. This Interrogatory is objectionable as overly broad and unduly burdensome in that it seeks the identification of all employees at the Miami warehouse location who requested time off for personal or family medical reasons over a twelve-month period, without any limitation as to department, job title, reporting structure, or relationship to Plaintiff or the claims and defenses at issue in this action. The Interrogatory effectively demands that StratAir conduct a comprehensive, employee-by-employee audit of its entire Miami warehouse workforce over a full calendar year, cross-referencing time-off requests, documentation requirements, age data, layoff selections, and the individualized reasons underlying each documentation decision. The burden and expense of assembling this information substantially outweighs any likely benefit to the resolution of this matter, particularly given the availability of less burdensome means of obtaining relevant information. Fed. R. Civ. P. 26(b)(1), 26(b)(2)(C). StratAir further objects on the ground that this Interrogatory seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of the case. To the extent Plaintiff seeks to identify comparators for purposes of his**

**ADA association, accommodation, or retaliation claims, or his FMLA interference and retaliation claims, the request is not reasonably tailored to elicit information about similarly situated employees. The Interrogatory sweeps in all employees who requested medical-related time off regardless of whether those employees shared Plaintiff's job duties, supervisory chain, or circumstances, and regardless of whether the time-off requests at issue implicated the FMLA or the ADA at all. Casual or short-duration absences for personal illness, for example, are not meaningfully comparable to Plaintiff's claimed need for FMLA-qualifying leave or ADA-related accommodation. Fed. R. Civ. P. 26(b)(1). StratAir objects to the extent this Interrogatory calls for the disclosure of confidential medical information and reasons for time-off requests of non-party employees. StratAir objects to the extent the Interrogatory is vague and ambiguous. The phrase "personal or family medical reasons" is undefined and susceptible to multiple interpretations, as it could encompass FMLA-qualifying serious health conditions, short-term illness, routine medical appointments, or any number of other categories of absence. Similarly, the phrase "required to provide a doctor's note or medical documentation" is ambiguous as to whether it refers to a formal company policy requirement, an informal supervisory request, or the absence of any request whatsoever. This ambiguity renders the Interrogatory incapable of a reasonably certain response. StratAir objects to the extent this Interrogatory assumes that StratAir maintained a practice of selectively requiring or waiving medical documentation for employee time-off requests, or that any such practice was applied in a manner related to age, disability, or the exercise of FMLA rights. StratAir does not, by responding or objecting to this Interrogatory, concede any such facts.**

11) State whether any supervisor or manager employed by StratAir told Mr. Rodriguez Ceruto that his requests for time off or his absences created "too much work" for others or imposed a burden on operations, and if so, identify who made each statement, state when each statement was made, state the exact words used, identify all witnesses, state Defendant's position regarding whether such statements were made, and identify all documents relating to such statements.

**ANSWER: No supervisor or manager employed by StratAir told Plaintiff that "his requests for time off or his absences created 'too much work' for others or imposed a burden on operations." Because no such statements were made, no response is required or possible for the remaining subparts of this Interrogatory.**

12) State whether Defendant determined that Mr. Rodriguez Ceruto was eligible for leave under the Family and Medical Leave Act (FMLA) based on his wife's serious health condition, and if so, state when this determination was made, identify who made the determination, state whether Mr. Ceruto was notified of his FMLA eligibility, state when and how he was notified if he was notified or explain why not if he was not notified, state whether any of his absences were designated as FMLA leave, and identify all documents relating to FMLA eligibility determinations for Mr. Ceruto.

**ANSWER: Plaintiff did not disclose any cancer diagnosis or serious health condition of his wife to StratAir. Because no such disclosure was made, no response is possible or required for the remaining subparts of this Interrogatory.**

13) State whether Defendant provided Mr. Rodriguez Ceruto with written notice of his rights under the FMLA, and if so, state when the notice was provided, describe the form of notice, identify who provided the notice, and identify all documents constituting or reflecting the notice provided, or if no notice was provided explain why not and state Defendant's policy regarding when and how FMLA notices must be provided.

**ANSWER: See response to Interrogatory 12 above.**

14) State whether Mr. Rodriguez Ceruto's requests for time off, his absences, or his wife's medical condition were considered, discussed, or mentioned in connection with the decision to terminate him in January 2024, and if so, identify who considered, discussed, or mentioned it, state when it was considered, discussed, or mentioned, describe what was said, state how it affected the termination decision, and identify all documents reflecting such consideration, discussion, or mention.

**ANSWER: StratAir was not aware of his wife's medical condition prior to Plaintiff's termination. To the extent that Plaintiff's absences, which were not for his wife's medical condition according to Plaintiff's own text messages to his supervisor, resulted in Plaintiff receiving a written warning for excessive absenteeism, this documented attendance deficiency was considered in StratAir's evaluation of Plaintiff's overall performance.**

15) State whether Defendant considered designating any of Mr. Rodriguez Ceruto's absences in 2023 or 2024 as FMLA-qualifying leave, and if so, state when this was considered, identify who considered it, state what decision was made, state the reasons for the decision, state whether Mr. Ceruto was notified of the decision, and identify all documents relating to this consideration.

**ANSWER: See response to Interrogatory No. 12 above.**

16) Identify all employees at the Miami warehouse location who were granted FMLA leave, had leave designated as FMLA leave, or requested time off for family medical reasons from January 2023 through January 2024, and for each state their name, age, position, the nature of the medical situation (if known), whether FMLA leave was granted, whether they were selected for termination in the January 2024 layoff, and if terminated the stated reason for selection.

**ANSWER: Objection. This Interrogatory is objectionable as overly broad and unduly burdensome in that it seeks the identification of all employees at the Miami warehouse location who were granted FMLA leave, had leave designated as FMLA leave, or requested time off for family medical reasons over a twelve-month period, without any limitation as to department, job title, reporting structure, or relationship to Plaintiff or the claims and defenses at issue in this action. The Interrogatory effectively demands that Defendant conduct a comprehensive, facility-wide audit of its entire Miami warehouse workforce over a full calendar year, cross-referencing FMLA leave designations, time-off requests for family medical reasons, medical details, layoff selections, and the individualized reasons underlying each termination decision. The burden and expense of compiling, reviewing, and verifying this information across potentially hundreds of employees substantially outweighs any likely benefit to the resolution of this matter, particularly given the availability of less burdensome means of obtaining relevant information. Fed. R. Civ. P. 26(b)(1), 26(b)(2)(C). Defendant further objects on the ground that this Interrogatory seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of the case. To the extent Plaintiff seeks to identify comparators for purposes of his FMLA interference, failure-to-notify, and retaliation claims, or his ADA association, accommodation, or retaliation claims, the request is not reasonably tailored to elicit information about similarly situated employees. The Interrogatory sweeps in all employees who were granted FMLA leave, had leave designated as FMLA leave, or requested time off for family medical reasons, regardless of whether those employees shared Plaintiff's job duties, supervisory chain, employment circumstances, or the particular basis for Plaintiff's claims. An employee who took FMLA leave for the birth of a child, for example, is not meaningfully comparable to Plaintiff for purposes of evaluating whether Defendant interfered with Plaintiff's FMLA rights, failed to notify Plaintiff of his FMLA rights, or retaliated against Plaintiff for exercising or attempting to exercise those rights. Fed. R. Civ. P. 26(b)(1). Defendant objects to the extent this Interrogatory calls for the disclosure of confidential medical information of non-party employees, including the "nature of the medical situation" underlying each employee's**

**FMLA leave or time-off request. The FMLA and its regulations impose specific obligations on employers to maintain the confidentiality of medical information obtained in connection with FMLA leave requests, and compelled disclosure of such information in discovery—without the consent of the affected employees and absent a properly tailored protective order and a showing of substantial need—raises significant privacy concerns that weigh against production. Defendant objects to the extent the Interrogatory is vague and ambiguous. The phrase "requested time off for family medical reasons" is undefined and susceptible to multiple interpretations, as it could encompass FMLA-qualifying serious health conditions, short-term family illness, routine medical appointments for family members, or any number of other categories of absence that may or may not implicate the FMLA. Similarly, the distinction between employees who "were granted FMLA leave" and those who "had leave designated as FMLA leave" is unclear, as FMLA leave designation and the granting of FMLA leave are overlapping and often concurrent employer actions. The phrase "nature of the medical situation" is also ambiguous as to the level of specificity required, ranging from a general category of condition to a detailed medical diagnosis. This ambiguity renders the Interrogatory incapable of a reasonably certain response. Defendant objects to the extent this Interrogatory assumes that Defendant's FMLA leave practices, leave designation decisions, or January 2024 layoff selections were related to employees' exercise or attempted exercise of FMLA rights, or were otherwise motivated by considerations related to Plaintiff's claims under the ADA or the FMLA. Defendant does not, by responding or objecting to this Interrogatory, concede any such facts or any connection between FMLA leave activity and the January 2024 reduction in force.**

17) State all facts supporting Defendant's denial that Mr. Rodriguez Ceruto was discriminated against based on his association with a person with a disability (his wife's cancer), including all evidence Defendant contends demonstrates non-discriminatory reasons for his termination.

**ANSWER: Objection. This Interrogatory is overly broad and premature in that it effectively asks StratAir to marshal and present the entirety of its factual case in chief in response to a single discovery request. The Interrogatory calls upon Defendant to identify "all facts" supporting its position that Plaintiff's termination was not motivated by Plaintiff's "association with a person with a disability (his wife's cancer)," which is tantamount to requiring StratAir to prepare and disclose a comprehensive trial brief at this stage of the litigation. Courts have routinely recognized that contention interrogatories of this nature are more appropriately deferred until the close of fact discovery, after the parties have had a full and fair opportunity to conduct depositions, obtain and review documents, and develop the factual record. Requiring a premature response at this juncture risks incomplete or misleading disclosures, may prejudice StratAir's ability to develop its defense as discovery unfolds, and would impose a burden disproportionate to the needs of the case at this stage. The phrases "all facts" and "all evidence" are inherently boundless and provide no meaningful limitation, making it impossible for StratAir**

**to determine with reasonable certainty when a complete response has been provided. Moreover, the Interrogatory conflates Defendant's factual contentions with its legal positions and theories, rendering the request ambiguous as to whether it seeks purely factual information, legal conclusions, or both.**

18) State all facts supporting Defendant's denial that Mr. Rodriguez Ceruto's termination violated the Family and Medical Leave Act, including all facts supporting any contention that Mr. Ceruto was not FMLA-eligible, all facts supporting any contention that his wife's condition did not qualify as a serious health condition, all facts supporting any contention that his termination was unrelated to his FMLA requests or his wife's condition, and all evidence Defendant contends demonstrates the termination would have occurred regardless of his FMLA activity.

**ANSWER: Objection. This Interrogatory is overly broad and premature in that it effectively asks StratAir to marshal and present the entirety of its factual case in chief in response to a single discovery request. The Interrogatory calls upon Defendant to identify "all facts" supporting its position that Plaintiff's termination did not violate the Family and Medical Leave Act, which is tantamount to requiring StratAir to prepare and disclose a comprehensive trial brief at this stage of the litigation. Courts have routinely recognized that contention interrogatories of this nature are more appropriately deferred until the close of fact discovery, after the parties have had a full and fair opportunity to conduct depositions, obtain and review documents, and develop the factual record. Requiring a premature response at this juncture risks incomplete or misleading disclosures, may prejudice StratAir's ability to develop its defense as discovery unfolds, and would impose a burden disproportionate to the needs of the case at this stage. The phrase "all facts" is inherently boundless and provides no meaningful limitation, making it impossible for StratAir to determine with reasonable certainty when a complete response has been provided. Moreover, the Interrogatory conflates Defendant's factual**

**contentions with its legal positions and theories, rendering the request ambiguous as to whether it seeks purely factual information, legal conclusions, or both.**

19) State whether Mr. Rodriguez Ceruto requested any accommodation or assistance from StratAir related to his wife's serious health condition, and if so, describe each request, state when each request was made and to whom, state whether each request was granted or denied, if denied state the reason for denial, identify who made each decision, and identify all documents relating to such requests.

**ANSWER: See response to Interrogatory No. 12 above.**

Dated: May 1, 2026

**Nalani Alesia Gordon**
Roger W. Feicht (Florida Bar No. 84982)
rfeicht@gunster.com
lhagan@gunster.com
Nalani Alesia Gordon (Florida Bar No. 1010976)
ngordon@gunster.com
lmusco@gunster.com
GUNSTER YOAKLEY & STEWART, P.A.
777 S. Flagler Drive, Suite 500 East
West Palm Beach, FL 33401
Telephone: 561-655-1980
Counsel for Defendant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 1, 2026, a true and correct copy of the foregoing has been furnished by electronic mail to all parties on the Service List below.

**BRIAN H. POLLOCK, ESQ.**
brian@fairlawattorney.com
**P. BROOKS LAROU, ESQ.**
brooks@fairlawattorney.com
FAIRLAW FIRM
135 San Lorenzo Avenue
Suite 770
Coral Gables, Florida 33146
Counsel for Plaintiffs

/s/ Nalani Alesia Gordon

Nalani Alesia Gordon

**VERIFICATION**

**I declare under penalty of perjury that the foregoing is true and correct. Executed on** 4/30/2026 **.**

STRATAIR AVIATION SERVICES LLC

Signed by:
Andres Gonzalez
318FAD89932445B...

(Signature)

By: Andres Gonzalez

As Its: Manager & Vice President of Cargo

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:25-CV-24505-MOORE/ELFENBEIN
(Consolidated with Case No. 1:25-cv-24505-Williams/Lett)

IVAN GRANT,
ALEX LAFFITA ORTIZ,
HENRY PINTO SUMOZA,
EYONNY PRADO DURAN,
LUIS RODRIGUEZ CERUTO,
and LUIS SAME GONZALO,

Plaintiffs,

vs.

STRATAIR AVIATION
SERVICES, LLC,

Defendants.
_________________________________/

**DEFENDANT'S RESPONSE TO PLAINTIFF LUIS SAME GONZALO'S FIRST SET OF INTERROGATORIES TO DEFENDANT**

Defendant, STRATAIR AVIATION SERVICES, LLC. ("StratAir"), by and through its undersigned counsel, hereby responds to Plaintiff LUIS SAME GONZALO's First Set of Interrogatories to Defendant under Certificate of Service dated March 18, 2026, by responding as follows:

## INTERROGATORIES

1) Please identify each person answering or assisting in answering these interrogatories, and his/her relationship to StratAir, as well as his/her full name, date of birth, social security number, current residential address, and all positions and job titles each such person has held with StratAir during the past five years.

**ANSWER: Andres Gonzalez, Manager & Vice President of Cargo**

**c/o Roger W. Feicht, Esq.**
**Gunster, Yoakley & Stewart, P.A.**
**777 S. Flagler Drive, Suite 500 East**
**West Palm Beach, Florida 33401**
**561-655-1980**

**To the extent this request seeks additional information, StratAir objects to the request as seeking sensitive personal information (social security numbers, dates of birth, and home residential addresses) that is not relevant to any claim or defense in this action.**

2) State the specific reason(s) why Plaintiff was selected for termination, state all facts supporting each reason, identify who identified or raised each reason, state whether performance or attendance issues were cited as reasons and if so identify all specific incidents with dates, and identify all documents evidencing each reason.

**ANSWER: In January 2024, a major customer of StratAir informed StratAir that it had decided to reduce the number of future cargo delivery flights that it would hire StratAir to unload. This was a major blow to StratAir's work in the near future and resulted in an immediate and significant decline in anticipated revenue. As a direct result of its customer's decision, StratAir had too many employees for the projected demand for its services. Given the significant reduction in work to be performed and the associated drop in revenue, StratAir made the reasonable business decision to reduce its workforce in January 2024. StratAir ultimately laid off twenty-eight (28) employees, including Plaintiff. When management considered employees to be included in the necessary layoff, it evaluated the warehouse and cargo handling workforce based on multiple factors, including relative job performance, seniority, and the operational needs of the business. These factors were weighed holistically. As part of this process, Plaintiff was among those selected for inclusion in the reduction in force.**

3) State Plaintiff's official job title(s) and position classification(s) during his employment with Defendant, including: (a) each job title held; (b) the dates during which he held each title; (c) the department or division to which he was assigned; and (d) the shift(s) he regularly worked; and (e) identify all individuals who held a supervisory or managerial position over Plaintiff at any time during his employment, and for each such individual, state their full name, job title, and the dates during which they supervised Plaintiff.

**ANSWER: Plaintiff was hired by StratAir in September 2022 initially as a security guard. However, Plaintiff was quickly transitioned to work as a Warehouse Handler. Plaintiff's job duties involved unloading cargo containers from aircraft, unloading packages from cargo containers, sorting unloaded packages into gaylord boxes, loading gaylord boxes into trucks for subsequent delivery, along with the reverse process for unloading delivery trucks, sorting the cargo into containers for loading onto aircraft, and loading the cargo containers onto the aircraft.**

4) Identify all persons who participated in the decision to terminate Plaintiff, state each person's specific role in the decision, state the date(s) they participated, describe what information they considered, and identify all documents they reviewed or created in connection with the decision.

**ANSWER: Gisela Barrera and Armando Portales Viera, in consultation with warehouse supervisors and their own observations, made the decision to recommend the termination of Plaintiff to Jorge Corral.**

5) State whether Defendant contends that Plaintiff's position was eliminated and not refilled, and if so, state whether the job duties and functions previously performed by Plaintiff were reassigned to other employees or independent contractors and to whom, state whether any employee or contractor was hired or engaged to perform the same or substantially similar work after January 2024 and if so identify each such person with their age and start date, and state whether the total headcount of persons (employees plus contractors) performing warehouse, cargo, or security work at the Miami location decreased, remained the same, or increased following the January 2024 layoff.

**ANSWER: As a result of the significant reduction in anticipated cargo volume and associated revenue, StratAir reduced the number of employees assigned to warehouse and cargo handling functions. The reduction was a headcount reduction driven by decreased workload and revenue, not an elimination of job classifications. The reduced volume of work no longer required the same staffing levels that had previously been necessary.**

6) For each employee or independent contractor who was retained and held the same or similar position as Plaintiff, state their name, age, position, employment status (employee or contractor), supervisor(s), and the reason they were retained instead of terminated.

**ANSWER: Aggregate data regarding the age, position, and tenure of employees from prior to the RIF in January 2024 will be produced. As it relates to employees, the request seeks detailed personal information of non-party employees who are not involved in this litigation. The names of employees at StratAir are not relevant to any claim or defense in this action. As it relates to independent contractors, StratAir did not engage any independent contractors. To the extent this request seeks further information, StratAir objects.**

7) State the specific reasons why Mr. Same Gonzalo was transferred from a Security Guard position to a Warehouse Handler position, identify who made the decision, state when the decision was made, state all facts supporting the decision, state whether the transfer was at Mr. Same's request, state whether the transfer resulted in any change in pay, benefits, or working conditions, and identify all documents relating to this transfer.

**ANSWER: Plaintiff Same testified at his deposition as follows: "Well, I was there for about five months, approximately, and then an employee, a female employee from Miami-Dade County told me in Spanish to be careful because people were stealing things, they were stealing packages and other things. So I got scared and I spoke with the supervisor to see if he can move me to a regular working in [sic] -- as production worker, not security." To the extent the Interrogatory incorrectly assumes that Plaintiff was involuntarily transferred from a Security Guard position to a Warehouse Handler position, StratAir objects. Because Plaintiff was not transferred, no response is possible or required for the remaining subparts of this Interrogatory.**

8) State the specific reasons why Defendant contends Mr. Same Gonzalo had "unsatisfactory job performance," state all facts supporting this contention, identify all specific incidents with dates and witnesses, state whether these alleged performance issues were documented in Mr. Same Gonzalo's personnel file before the January 2024 layoff decision, state who observed or reported these alleged issues, state whether Mr. Pinto was ever counseled or warned about these alleged issues before his termination, and identify all documents supporting this contention.

**ANSWER: Objection. This Interrogatory is overly broad and premature in that it effectively asks StratAir to marshal and present the entirety of its factual case in chief in response to a single discovery request. The Interrogatory calls upon Defendant to identify "all facts" supporting its position that Plaintiff's performance was unsatisfactory, which is tantamount to requiring StratAir to prepare and disclose a comprehensive trial brief at this stage of the litigation. Courts have routinely recognized that contention interrogatories of this nature**

**are more appropriately deferred until the close of fact discovery, after the parties have had a full and fair opportunity to conduct depositions, obtain and review documents, and develop the factual record. Requiring a premature response at this juncture risks incomplete or misleading disclosures, may prejudice StratAir's ability to develop its defense as discovery unfolds, and would impose a burden disproportionate to the needs of the case at this stage. The phrase "all facts" is inherently boundless and provides no meaningful limitation, making it impossible for StratAir to determine with reasonable certainty when a complete response has been provided. Moreover, the Interrogatory conflates Defendant's factual contentions with its legal positions and theories, rendering the request ambiguous as to whether it seeks purely factual information, legal conclusions, or both.**

9) State whether Defendant conducted any "investigation" into Mr. Same Gonzalo's work performance, conduct, or suitability for continued employment, and if so, state when the investigation occurred, describe the scope and nature of the investigation, state what prompted the investigation, state the findings of the investigation, state what action was taken based on the findings, state whether the investigation results were considered in the January 2024 termination decision, and identify all documents relating to the investigation.

**ANSWER: StratAir's supervisors continuously monitored all employees' performance on a daily basis, including Plaintiff's, to ensure efficiency of operations. Plaintiff had only been employed with StratAir for about fourteen months when the January 2024 layoff occurred. During his short employment, Plaintiff's performance in consistently and efficiently unloading cargo was unsatisfactory. Because Plaintiff was not considered a strong performer, he was selected by StratAir's management as one of the employees subject to the layoff.**

10) Describe in detail all interactions between Mr. Same Gonzalo and Defendant's human resources personnel following his termination notification, state the date(s) of the interaction, identify who from HR spoke with Mr. Same, describe what was discussed, state whether Mr. Same raised any concerns about age discrimination, state what response was provided if concerns were raised, state whether any investigation was conducted as a result, and identify all documents relating to this interaction.

**ANSWER: Plaintiff did not speak with human resources personnel following his termination. Because no such "interactions" occurred, no response is possible or required for the remaining subparts of this Interrogatory.**

11) State the specific role Gisela Barrera played (if any) in the decision to terminate Mr. Same Gonzalo, state whether she recommended his termination, state whether she participated in evaluating him for the layoff, state whether she was consulted about the decision, describe what information she provided about Mr. Same to decision-makers, state whether she raised any concerns about his age, and identify all documents reflecting her role.

**ANSWER: Gisela Barrera and Armando Portales Viera, in consultation with warehouse supervisors and their own observations, made the decision to recommend the termination of Plaintiff to Jorge Corral.**

12) Identify all warehouse handlers or security guards who had performance or conduct issues similar to or more serious than any alleged issues regarding Mr. Same but were NOT selected for termination in the January 2024 layoff, and for each state their name, age, the nature of their issues, whether the issues were documented, and why they were retained despite documented issues.

**ANSWER: Objection. This Interrogatory is overly broad and unduly burdensome in that it seeks detailed personal and employment information for potentially hundreds of employees across the entire company who may have any form of "performance or conduct issues similar to or more serious than any alleged issues regarding Mr. Same" at any point during their employment. StratAir employed hundreds of individuals at the time of the January 2024 reduction in force, and the Interrogatory imposes no reasonable limitations on the time frame of the disciplinary or performance history sought, the departments or business units to which it applies, or the types of "similar" conduct or performance issues at issue. Compiling the requested information would require StratAir to undertake an exhaustive, manual review of personnel files for the entire workforce, impose significant burden on StratAir's human resources department, and generate a response disproportionate to any legitimate discovery need in this matter. StratAir further objects on the ground that the Interrogatory is impermissibly vague and ambiguous. The phrase "performance or conduct issues" is vague, and StratAir has no way to meaningfully search for this information or ensure that all responsive categories of information are produced. The phrase "similar to or more serious than any alleged issues regarding Mr. Same" lacks sufficient specificity to enable StratAir to identify the universe of employees whose records must be**

**searched. Without a clear and agreed-upon definition of what constitutes "similar" conduct or performance issues, the Interrogatory calls for StratAir to exercise subjective judgment and speculation. StratAir objects on the ground that this Interrogatory is not proportional to the needs of the case, as required by Rule 26(b)(1) of the Federal Rules of Civil Procedure. The January 2024 reduction in force was driven by legitimate business considerations, including operational restructuring, cost reduction, and strategic realignment, and the selection of employees for separation was based on a multifactor analysis that extended well beyond any single disciplinary event. StratAir objects to the extent this Interrogatory seeks personally identifiable information, including names of nonparty employees who are not parties to this litigation and who have a reasonable expectation of privacy in their personnel records. Disclosure of such information implicates significant privacy concerns and should not be compelled absent a showing of direct relevance and a suitable protective order.**

13) State all facts supporting Defendant's denial that Mr. Same was discriminated against based on his age, including all evidence Defendant contends demonstrates non-discriminatory reasons for his termination.

**ANSWER: Objection. This Interrogatory is overly broad and premature in that it effectively asks StratAir to marshal and present the entirety of its factual case in chief in response to a single discovery request. The Interrogatory calls upon Defendant to identify "all facts" supporting its position that Plaintiff's termination was not motivated by age, which is tantamount to requiring StratAir to prepare and disclose a comprehensive trial brief at this stage of the litigation. Courts have routinely recognized that contention interrogatories of this nature are more appropriately deferred until the close of fact discovery, after the parties have had a full and fair opportunity to conduct depositions, obtain and review documents, and develop the factual record. Requiring a premature response at this juncture risks incomplete or misleading disclosures, may prejudice StratAir's ability to develop its defense as discovery unfolds, and would impose a burden disproportionate to the needs of the case at this stage. The phrase "all facts" is inherently boundless and provides no meaningful limitation, making it impossible for StratAir to determine with reasonable certainty when a complete response has been provided. Moreover, the Interrogatory conflates Defendant's factual contentions with its legal**

**positions and theories, rendering the request ambiguous as to whether it seeks purely factual information, legal conclusions, or both.**

14) State whether Mr. Same's transfer from Security Guard to Warehouse Handler in 2023 was considered or discussed in connection with the decision to terminate him in January 2024, and if so, identify who considered or discussed this, state when it was considered or discussed, describe what was said, explain how the prior transfer affected the termination decision, and identify all documents reflecting such consideration or discussion.

**ANSWER: StratAir objects to this request because it assumes facts; specifically, that Plaintiff was transferred from Security Guard to Warehouse Handler in 2023. Plaintiff testified that he requested to change positions from Security Guard to Warehouse Handler. To the extent that the Interrogatory is based on this incorrect premise, no response is possible or required for the remaining subparts of this Interrogatory.**

15) State whether Mr. Same Gonzalo's transfer from Security Guard to Warehouse Handler was undertaken as preparation for or in anticipation of Mr. Same's eventual termination, and if so, state all facts supporting this, identify who made the decision to transfer him and whether termination was discussed at that time, and identify all documents reflecting the purpose or rationale for the transfer.

**ANSWER: See response to Interrogatory 7 above.**

16) Identify all security guards employed or engaged at the Miami location from November 2023 through January 2024, and for each state their name, age, employment status (employee or contractor), whether they were selected for termination in the January 2024 layoff, and if terminated the stated reason for selection or if retained the stated reason for retention.

**ANSWER: Aggregate data regarding the age, position, and tenure of employees from prior to the RIF in January 2024 will be produced. As it relates to employees, the request seeks detailed personal information of non-party employees who are not involved in this litigation. The names of employees at StratAir are not relevant to any claim or defense in this action. As it relates to independent contractors, StratAir did not engage any independent contractors. Therefore, to the extent this Interrogatory seeks further information, StratAir objects.**

17) State whether any independent contractors, temporary workers, or staffing agency workers were assigned to perform warehouse, cargo handling, or security work after his termination in January 2024, and if so, identify each such person, state their age, state their start date, state which type of work they performed (warehouse or security), and describe their job duties.

**ANSWER: StratAir did not engage independent contractors. To the extent the Interrogatory seeks information regarding independent contractors, it calls for the identification of a category of individuals that does not exist, and no response is possible or required. To the extent the Interrogatory seeks information regarding temporary and/or staffing agency workers, StratAir objects. Plaintiffs' Amended Complaint does not mention independent contractors, temporary workers, or staffing agency workers. Plaintiffs' claims are not based on StratAir allegedly engaging non-employees after January 2024. Plaintiffs allege that "Defendant fired Plaintiffs and other older employees with more seniority, and retained younger employees with less seniority, to perform the same or similar jobs."** ***See*** **Amended Complaint, Paragraphs 51, 86. Therefore, whether contractors, temporary workers, or staffing agency workers were engaged after the Plaintiffs were terminated have no bearing on Plaintiff's claims or any related defenses. Notwithstanding the foregoing objection, StratAir does not have records related to any temporary workers or staffing agency workers in its possession, custody, or control.**

18) State whether Mr. Same Gonzalo's supervisor Javier reported to Gisela Barrera about Mr. Same Gonzalo, and if so, describe what Javier reported, state when such reports were made, state whether Javier's reports influenced the decision to terminate Mr. Same, and identify all documents reflecting Javier's reports or communications about Mr. Same.

**ANSWER: Supervisor Javier, as with the other StratAir supervisors, provided input regarding employees' performance prior to the January 2024 layoff decision. Supervisors observed the daily performance (i.e., consistency and efficiency in unloading cargo) daily to ensure efficient operations.**

19) Identify all employees who were transferred from one position to another (such as from Security Guard to Warehouse Handler or vice versa) in 2023 at the Miami location, and for each state their name, age, the positions they transferred from and to, the date of transfer, the reason for the transfer, whether they were selected for termination in the January 2024 layoff, and if terminated the stated reason for selection or if retained the stated reason for retention.

**ANSWER: Objection. Given Plaintiff's testimony (see response to Interrogatory No. 7 above) information regarding employees "who were transferred from one position to another" has no bearing on any claim or defense in this action. Plaintiff requested to be moved from Security Guard to Warehouse Handler. In addition, the request is overbroad and unduly burdensome in that it seeks detailed personal and employment information for potentially hundreds of**

**employees across the entire company. StratAir would be required to do a manual check of all records, which would impose a significant burden on StratAir's human resources department and would yield irrelevant information. To the extent the request seeks personal and confidential information regarding non-party employees, including names, StratAir objects. Also, the phrase "from one position to another" is so broad that it potentially covers positions that have nothing to do with the positions held (voluntarily) by Plaintiff.**

Dated: May 1, 2026

**Nalani Alesia Gordon**
Roger W. Feicht (Florida Bar No. 84982)
rfeicht@gunster.com and lhagan@gunster.com
Nalani Alesia Gordon (Florida Bar No. 1010976)
ngordon@gunster.com and lmusco@gunster.com
GUNSTER YOAKLEY & STEWART, P.A.
777 S. Flagler Drive, Suite 500 East
West Palm Beach, FL 33401
Telephone: 561-655-1980
*Counsel for Defendant*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 1, 2026, a true and correct copy of the foregoing has been furnished by electronic mail to all parties on the Service List below.

**BRIAN H. POLLOCK, ESQ.**
brian@fairlawattorney.com
**P. BROOKS LAROU, ESQ.**
brooks@fairlawattorney.com
FAIRLAW FIRM
135 San Lorenzo Avenue
Suite 770
Coral Gables, Florida 33146
*Counsel for Plaintiffs*

*/s/ Nalani Alesia Gordon*
Nalani Alesia Gordon

**VERIFICATION**

**I declare under penalty of perjury that the foregoing is true and correct. Executed on** 4/30/26 **.**

STRATAIR AVIATION SERVICES LLC

Signed by:

Andres Gonzalez

318FAD89932445B...

(Signature)

By: Andres Gonzalez

As Its: Manager & Vice President of Cargo

UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:25-CV-24505-MOORE/ELFENBEIN
(Consolidated with Case No. 1:25-cv-24505-Williams/Lett)

IVAN GRANT,
ALEX LAFFITA ORTIZ,
HENRY PINTO SUMOZA,
EYONNY PRADO DURAN,
LUIS RODRIGUEZ CERUTO,
and LUIS SAME GONZALO,

Plaintiffs,

vs.

STRATAIR AVIATION
SERVICES, LLC,

Defendants.
_______________________________/

**DEFENDANT'S RESPONSE TO PLAINTIFF EYONNY PRADO DURAN'S FIRST SET OF INTERROGATORIES TO DEFENDANT**

Defendant, STRATAIR AVIATION SERVICES, LLC. ("StratAir"), by and through its undersigned counsel, hereby responds to Plaintiff EYONNY PRADA DURAN's First Set of Interrogatories to Defendant under Certificate of Service dated March 18, 2026, by responding as follows:

## INTERROGATORIES

1) Please identify each person answering or assisting in answering these interrogatories, and his/her relationship to StratAir, as well as his/her full name, date of birth, social security number, current residential address, and all positions and job titles each such person has held with StratAir during the past five years.

**ANSWER: Andres Gonzalez, Manager & Vice President of Cargo**

**c/o Roger W. Feicht, Esq.**
**Gunster, Yoakley & Stewart, P.A.**
**777 S. Flagler Drive, Suite 500 East**
**West Palm Beach, Florida 33401**
**561-655-1980**

**To the extent this request seeks additional information, StratAir objects to the request as seeking sensitive personal information (social security numbers, dates of birth, and home residential addresses) that is not relevant to any claim or defense in this action.**

2) State the specific reason(s) why Plaintiff was selected for termination, state all facts supporting each reason, identify who identified or raised each reason, state whether performance or attendance issues were cited as reasons and if so identify all specific incidents with dates, and identify all documents evidencing eachreason.

**ANSWER: In January 2024, a major customer of StratAir informed StratAir that it had decided to reduce the number of future cargo delivery flights that it would hire StratAir to unload. This was a major blow to StratAir's work in the near future and resulted in an immediate and significant decline in anticipated revenue. As a direct result of its customer's decision, StratAir had too many employees for the projected demand for its services. Given the significant reduction in work to be performed and the associated drop in revenue, StratAir made the reasonable business decision to reduce its workforce in January 2024. StratAir ultimately laid off twenty-eight (28) employees, including Plaintiff. When management considered employees to be included in the necessary layoff, it evaluated the warehouse and cargo handling workforce based on multiple factors, including relative job performance, seniority, and the operational needs of the business. These factors were weighed holistically. As part of this process, Plaintiff was among those selected for inclusion in the reduction in force.**

3) Identify all persons who participated in the decision to terminate Plaintiff, state each person's specific role in the decision, state the date(s) they participated, describe what information they considered, and identify all documents they reviewed or created in connection with the decision.

**ANSWER: Gisela Barrera and Armando Portales Viera, in consultation with warehouse supervisors and their own observations, made the decision to recommend the termination of Plaintiff to Jorge Corral.**

4) State Plaintiff's official job title(s) and position classification(s) during his employment with Defendant, including: (a) each job title held; (b) the dates during which he held each title; (c) the department or division to which he was assigned; and (d) the shift(s) he regularly worked; and (e) identify all individuals who held a supervisory or managerial position over Plaintiff at any time during his employment, and for each such individual, state their full name, job title, and the dates during which they supervised Plaintiff.

**ANSWER: Plaintiff was hired by StratAir in late June 2023 as a Warehouse Handler. Plaintiff's job duties involved unloading cargo containers from aircraft, unloading packages from cargo containers, sorting unloaded packages into gaylord boxes, loading**

**gaylord boxes into trucks for subsequent delivery, along with the reverse process for unloading delivery trucks, sorting the cargo into containers for loading onto aircraft, and loading the cargo containers onto the aircraft. Plaintiff worked the day shift, and his supervisor was Jose Alverio.**

5) State whether Defendant contends that Plaintiff's position was eliminated and not refilled, and if so, state whether the job duties and functions previously performed by Plaintiff were reassigned to other employees or independent contractors and to whom, state whether any employee or contractor was hired or engaged to perform the same or substantially similar work after January 2024 and if so identify each such person with their age and start date, and state whether the total headcount of persons (employees plus contractors) performing warehouse, cargo, or security work at the Miami location decreased, remained the same, or increased following the January 2024 layoff.

**ANSWER: As a result of the significant reduction in anticipated cargo volume and associated revenue, StratAir reduced the number of employees assigned to warehouse and cargo handling functions. The reduction was a headcount reduction driven by decreased workload and revenue, not an elimination of job classifications. The reduced volume of work no longer required the same staffing levels that had previously been necessary.**

6) For each employee or independent contractor who was retained and held the same or similar position as Plaintiff, state their name, age, position, employment status (employee or contractor), supervisor(s), and the reason they were retained instead of terminated.

**ANSWER: Aggregate data regarding the age, position, and tenure of employees from prior to the RIF in January 2024 will be produced. As it relates to employees, the request seeks detailed personal information of non-party employees who are not involved in this litigation. The names of employees at StratAir are not relevant to any claim or defense in this action. As it relates to independent contractors, StratAir did not engage any independent contractors. To the extent this request seeks further information, StratAir objects.**

7) State the specific reasons why Defendant contends Mr. Prado Duran was a "problematic employee with poor performance," state all facts supporting this contention, identify all specific incidents with dates and witnesses, state whether these alleged issues were documented in Mr. Prado's personnel file before the January 2024 layoff decision, state whether Mr. Prado was ever counseled, warned, or disciplined about these alleged issues before his termination, and identify all documents supporting this contention.

**ANSWER: Objection. This Interrogatory is overly broad and premature in that it effectively asks StratAir to marshal and present the entirety of its factual case in chief in response to a single discovery request. The Interrogatory calls upon Defendant to identify "all facts" supporting its position that Plaintiff was a "problematic employee with poor performance," which is tantamount to requiring StratAir to prepare and disclose a comprehensive trial brief at this stage of the litigation. Courts have routinely recognized that contention interrogatories of this nature are more appropriately deferred until the close of fact discovery, after the parties have had a full and fair opportunity to conduct depositions,**

**obtain and review documents, and develop the factual record. Requiring a premature response at this juncture risks incomplete or misleading disclosures, may prejudice StratAir's ability to develop its defense as discovery unfolds, and would impose a burden disproportionate to the needs of the case at this stage. The phrase "all facts" is inherently boundless and provides no meaningful limitation, making it impossible for StratAir to determine with reasonable certainty when a complete response has been provided. Moreover, the Interrogatory conflates Defendant's factual contentions with its legal positions and theories, rendering the request ambiguous as to whether it seeks purely factual information, legal conclusions, or both.**

8) State the specific reasons why Defendant contends Mr. Prado Duran "commonly had an excuse not to" perform work as instructed, state all facts supporting this contention, identify all specific incidents with dates, describe what "excuses" Mr. Prado allegedly made when instructed to perform tasks at work, state whether Defendant contends the explanations were false or unacceptable, state whether these alleged incidents were documented before the January 2024 layoff decision, and identify all documents supporting this contention.

ANSWER: **Objection. This Interrogatory is overly broad and premature in that it effectively asks StratAir to marshal and present the entirety of its factual case in chief in response to a single discovery request. The Interrogatory calls upon Defendant to identify "all facts" supporting its position that Plaintiff " 'commonly had an excuse not to' perform work as instructed," which is tantamount to requiring StratAir to prepare and disclose a comprehensive trial brief at this stage of the litigation. Courts have routinely recognized that contention interrogatories of this nature are more appropriately deferred until the close of fact discovery, after the parties have had a full and fair opportunity to conduct depositions, obtain and review documents, and develop the factual record. Requiring a premature response at this juncture risks incomplete or misleading disclosures, may prejudice StratAir's ability to develop its defense as discovery unfolds, and would impose a burden disproportionate to the needs of the case at this stage. The phrase "all facts" is inherently boundless and provides no meaningful limitation, making it impossible for StratAir to determine with reasonable certainty when a complete response has been provided. Moreover, the Interrogatory conflates Defendant's factual contentions with its legal positions and theories, rendering the request ambiguous as to whether it seeks purely factual information, legal conclusions, or both.**

9) State whether Mr. Prado Duran trained, mentored, or assisted in training any younger or newly hired employees or independent contractors of Defendant during 2023, and if so, identify each individual he trained or assisted, state their age, state the dates of training or assistance, describe what training or assistance he provided, state whether this was at the direction of supervisors or management, state whether any of the individuals he trained were retained following the January 2024 layoff while Mr. Prado was terminated, and identify all documents relating to Mr. Prado's training activities.

**ANSWER: Plaintiff did not train, mentor, or assist in training any "younger or newly hired employees." StratAir did not engage independent contractors. Because Plaintiff did not provide any such training, mentoring, or assistance, no response to the remaining subparts of the interrogatory is possible or required.**

10) State whether Mr. Prado Duran complained to his supervisor Lidier or any other supervisor or manager on or about January 14, 2024 (after learning of his termination) that StratAir appeared to be targeting older employees for termination, and if so, identify to whom he complained, state the date and time, describe what Mr. Prado said, identify all witnesses, state who responded and what was said, state whether any investigation was conducted in response, state what corrective action (if any) was taken, and identify all documents relating to this complaint.

**ANSWER: Plaintiff Prado Duran did not complain to StratAir's management after learning of his termination. Because StratAir did not receive any such complaint, no response is possible or required for the remaining subparts of this Interrogatory.**

11) State whether any investigation, review, or corrective action was taken in response to Mr. Prado Duran's complaint to his supervisor Lidier regarding older workers being targeted during the January 2024 layoff (if you contend that such a complaint was made), and if so, describe the investigation or review, identify who conducted it, state the findings, state what action was taken, and identify all documents relating to such investigation, review, or action.

**ANSWER: Plaintiff Prado Duran did not complain to StratAir's management during or after the January 2024 layoff. StratAir objects to this request because it falsely assumes that Plaintiff made a complaint to his supervisor regarding alleged discrimination.**

12) Identify all employees who performed the same or similar work as Mr. Prado Duran and had documented attendance or performance issues but were NOT selected for termination in the January 2024 layoff, and for each state their name, age, the nature of their issues, whether the issues were documented, and why they were retained despite documented issues.

**ANSWER: Objection. This Interrogatory is objectionable as overly broad and unduly burdensome. The request that StratAir identify "all employees who performed the same or similar work as Mr. Prado Duran" is vague and overbroad because it fails to define what constitutes "the same or similar work," potentially sweeping in employees**

**across multiple departments, job classifications, and geographic locations whose roles may share only superficial similarities with that of Plaintiff. Compiling information responsive to a request of this scope would impose a significant and disproportionate burden on StratAir relative to any probative value the information might have in this litigation. StratAir further objects on the ground that this Interrogatory is impermissibly vague and ambiguous. The terms "same or similar work," "documented attendance or performance issues," and "documented issues" are undefined and susceptible to multiple reasonable interpretations. Without clear parameters, StratAir cannot reasonably determine the scope of employees, conduct, or records implicated by the request. Similarly, the phrase "selected for termination" is ambiguous insofar as it conflates the business decision to eliminate positions in a reduction in force with an individualized termination decision, thereby assuming facts not in evidence regarding the nature and process of the January 2024 layoff. StratAir objects to the extent this Interrogatory seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of the case pursuant to Federal Rule of Civil Procedure 26(b)(1). The Interrogatory presupposes that the retention of employees with attendance or performance issues is probative of discriminatory or retaliatory motive in connection with Plaintiff's separation. However, comparator evidence is only relevant where the individuals identified are similarly situated in all material respects, and this request makes no effort to limit its scope to such individuals. This Interrogatory fails to satisfy the proportionality requirements of Rule 26(b)(1). The burden and expense of identifying every employee who performed arguably similar work across the organization, reviewing their personnel files for any documented attendance or performance issues, and then explaining the individualized business reasons for their retention vastly outweighs the likely benefit of such information to the resolution of any claim or defense in this matter. The request effectively asks StratAir to audit the personnel records of a potentially large and undefined class of employees and to provide a narrative justification for each retention decision, which is neither a proportional nor an appropriate use of the discovery process. StratAir objects on the ground that this Interrogatory is improperly compound. It seeks multiple discrete categories of information — the identity of employees, their ages, the nature of their attendance or performance issues, whether those issues were documented, and the business rationale for their retention — each of which constitutes a separate interrogatory. To the extent applicable rules limit the number of interrogatories a party may serve, this request should be counted as multiple interrogatories. StratAir objects to the extent this Interrogatory seeks disclosure of confidential personnel information, including but not limited to the names, ages, and disciplinary or performance records of non-party employees. Disclosure of such information implicates the privacy rights of individuals who are not parties to this litigation and should not be compelled absent an appropriate protective order and a demonstration that the information is directly relevant and not obtainable from less intrusive sources. To the extent this Interrogatory calls upon Defendant to state "why" certain employees "were retained**

**despite documented issues," it improperly seeks contention information and mental impressions regarding Defendant's decision-making processes.**

13) State whether Plaintiff's supervisors Jose (also known as "Bori") and/or Wilson participated in the decision to terminate Mr. Prado, and if so, describe each person's specific role in the decision, state when each person participated, describe what each person said or recommended regarding Mr. Prado, state what information each person considered, and identify all documents reflecting their participation.

**ANSWER: Jose Alverio provided feedback regarding employees' performance to Armando Portales Viera and Gisela Barrera prior to the January 2024 layoff. Wilson Dorada was not involved in the selection process for the January 2024 layoff decision.**

14) State all facts supporting Defendant's denial that Mr. Prado was discriminated against based on his age, including all evidence Defendant contends demonstrates non-discriminatory reasons for his termination.

**ANSWER: Objection. This Interrogatory is overly broad and premature in that it effectively asks StratAir to marshal and present the entirety of its factual case in chief in response to a single discovery request. The Interrogatory calls upon Defendant to identify "all facts" supporting its position that Plaintiff was discriminated against based on his age, which is tantamount to requiring StratAir to prepare and disclose a comprehensive trial brief at this stage of the litigation. Courts have routinely recognized that contention interrogatories of this nature are more appropriately deferred until the close of fact discovery, after the parties have had a full and fair opportunity to conduct depositions, obtain and review documents, and develop the factual record. Requiring a premature response at this juncture risks incomplete or misleading disclosures, may prejudice StratAir's ability to develop its defense as discovery unfolds, and would impose a burden disproportionate to the needs of the case at this stage. The phrase "all facts" is inherently boundless and provides no meaningful limitation, making it impossible for StratAir to determine with reasonable certainty when a complete response has been provided. Moreover, the Interrogatory conflates Defendant's factual contentions with its legal positions and theories, rendering the request ambiguous as to whether it seeks purely factual information, legal conclusions, or both.**

15) State whether the fact that Mr. Prado trained younger or newly hired employees was considered a positive or negative factor in the decision to terminate him, and if so, identify who considered this, state when it was considered, describe how it was characterized (positive or negative), explain why it was considered positive or negative, and identify all documents reflecting such consideration.

**ANSWER: Objection. This Interrogatory falsely assumes that Plaintiff trained "younger or newly hired employees." He did not. Because no such training occurred, no response is possible or required.**

16) Identify all employees and independent contractors of StratAir who performed warehouse or cargo handling work at the Miami location from October 2023 through January 2024, and for each state their name, age, whether they were selected for termination in the January 2024 layoff, and if terminated the stated reason for selection or if retained the stated reason for retention.

**ANSWER: StratAir did not engage independent contractors during or after Plaintiff's employment. To the extent the Interrogatory seeks information regarding independent contractors, it calls for the identification of a category of individuals that does not exist, and no response is possible or required. StratAir objects to the extent this Interrogatory seeks personally identifiable information, including names of nonparty employees who are not parties to this litigation and who have a reasonable expectation of privacy in their personal and employment information. Disclosure of such information for potentially dozens of individuals implicates significant privacy concerns and should not be compelled absent a particularized showing of direct relevance to Plaintiff's claims and an appropriate protective order governing the use and dissemination of confidential employee information. Aggregate data regarding the age, position, and tenure of employees from prior to the RIF in January 2024 will be produced.**

17) State whether any independent contractors, temporary workers, or staffing agency workers were assigned to perform warehouse or cargo handling work on the same shift Mr. Prado worked after his termination in January 2024, and if so, identify each such person, state their age, state their start date, and describe the work they performed.

**ANSWER: StratAir did not engage independent contractors. To the extent the Interrogatory seeks information regarding independent contractors, it calls for the identification of a category of individuals that does not exist, and no response is possible or required. To the extent the Interrogatory seeks information regarding temporary and/or staffing agency workers, StratAir objects. Plaintiffs' Amended Complaint does not mention independent contractors, temporary workers, or staffing agency workers. Plaintiffs' claims are not based on StratAir allegedly engaging non-employees after January 2024. Plaintiffs allege that "Defendant fired Plaintiffs and other older employees with more seniority, and retained younger employees with less seniority, to perform the same or similar jobs."** ***See*** **Amended Complaint, Paragraphs 51, 86. Therefore, whether contractors, temporary workers, or staffing agency workers were engaged after the Plaintiffs were terminated have no bearing on Plaintiff's claims or any related defenses. Notwithstanding the foregoing objection, StratAir does not have records related to any temporary workers or staffing agency workers in its possession, custody, or control.**

18) State whether StratAir's supervisor Lidier participated in the decision to terminate Mr. Prado or was consulted about the decision, and if so, describe Lidier's role, state when Lidier participated or was consulted, describe what Lidier said or recommended, state what action (if any) Lidier took in response to Mr. Prado's complaint, and identify all documents reflecting Lidier's role or participation.

**ANSWER: StratAir's supervisors, including Lidier Leon, provided feedback to Armando Portales Viera and Gisela Barrera to assist with Viera and Barrera's selection for the January 2024 layoff.**

Dated: May 1, 2026

**Nalani Alesia Gordon**
Roger W. Feicht (Florida Bar No. 84982)
rfeicht@gunster.com
lhagan@gunster.com
Nalani Alesia Gordon (Florida Bar No. 1010976)
ngordon@gunster.com
lmusco@gunster.com
GUNSTER YOAKLEY & STEWART, P.A.
777 S. Flagler Drive, Suite 500 East
West Palm Beach, FL 33401
Telephone: 561-655-1980
Counsel for Defendant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 1, 2026, a true and correct copy of the foregoing has been furnished by electronic mail to all parties on the Service List below.

**BRIAN H. POLLOCK, ESQ.**
brian@fairlawattorney.com
**P. BROOKS LAROU, ESQ.**
brooks@fairlawattorney.com
FAIRLAW FIRM
135 San Lorenzo Avenue
Suite 770
Coral Gables, Florida 33146
Counsel for Plaintiffs

/s/ Nalani Alesia Gordon
Nalani Alesia Gordon

## VERIFICATION

**I declare under penalty of perjury that the foregoing is true and correct. Executed on** 4/30/2026**.**

STRATAIR AVIATION SERVICES LLC

Signed by:
Andres Gonzalez
318FAD89932445B...
(Signature)

By: Andres Gonzalez

As Its: Manager & Vice President of Cargo

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:25-CV-24505-MOORE/ELFENBEIN
(Consolidated with Case No. 1:25-cv-24505-Williams/Lett)

IVAN GRANT,
ALEX LAFFITA ORTIZ,
HENRY PINTO SUMOZA,
EYONNY PRADO DURAN,
LUIS RODRIGUEZ CERUTO,
and LUIS SAME GONZALO,

Plaintiffs,

vs.

STRATAIR AVIATION
SERVICES, LLC,

Defendants.
______________________________/

**DEFENDANT'S RESPONSE TO PLAINTIFF EYONNY PRADO DURAN'S SECOND SET OF INTERROGATORIES TO DEFENDANT**

Defendant, STRATAIR AVIATION SERVICES, LLC. ("StratAir"), by and through its undersigned counsel, hereby responds to Plaintiff EYONNY PRADO DURAN's Second Set of Interrogatories to Defendant under Certificate of Service dated March 18, 2026, by responding as follows:

## INTERROGATORIES

1) Identify all persons, other than Plaintiffs' attorneys and Defendant's attorneys, who have knowledge of facts relevant to any claim or defense in this litigation, including but not limited to the January 2024 layoff, the decision to terminate any plaintiff in this action, statements by supervisors regarding age, the hiring of contractors or temporary workers, complaints about discrimination, or any of the Plaintiffs' work performance. For each person state: (a) their full name, current employer, job title, and contact information; (b) a summary of the facts about which they have knowledge; (c) whether Defendant has interviewed them or obtained a statement from them, and if so the date and who conducted the interview; (d) whether Defendant expects to call them as a trial witness; and (e) all documents in their possession, custody, or control that are relevant to this litigation.

**ANSWER: Objection. This Interrogatory is objectionable as overly broad and unduly burdensome. The request that StratAir identify "all persons" who "have knowledge of facts relevant to any claim or defense in this litigation" is virtually unlimited in scope. Taken at face value, this request encompasses any individual within or outside of StratAir's organization who may possess even tangential knowledge of any fact that could conceivably bear on any claim or defense in this multi-plaintiff action. The burden of canvassing the entirety of StratAir's workforce and beyond to identify every such individual, ascertain the scope of their knowledge, compile their contact information, summarize the facts known to each, and catalogue all relevant documents in their possession is grossly disproportionate to the needs of this case. This is particularly true given that the Interrogatory spans at least six broad subject-matter categories — the January 2024 layoff, the decision to terminate any plaintiff, statements by supervisors regarding age, the hiring of contractors or temporary workers, complaints about discrimination, and any plaintiff's work performance — each of which could implicate dozens or even hundreds of individuals across the organization. StratAir further objects on the ground that this Interrogatory is impermissibly vague and ambiguous. The phrase "knowledge of facts relevant to any claim or defense" is not meaningfully bounded because relevance in this context is a legal determination that depends on the claims and defenses as they develop through the course of litigation. Moreover, the phrase "including but not limited to" renders the six enumerated subject-matter categories merely illustrative rather than exhaustive, leaving StratAir to speculate as to the full scope of responsive information sought. The term "statements by supervisors regarding age" is similarly vague insofar as it does not specify a time frame, a context, or whether it encompasses only statements alleged to be discriminatory or any reference to age whatsoever. StratAir objects on the ground that this Interrogatory is improperly compound. For each person identified, it seeks five discrete categories of information: (a) biographical and contact information, (b) a summary of the facts within their knowledge, (c) whether and when Defendant interviewed them**

**or obtained a statement, (d) whether StratAir expects to call them as a trial witness, and (e) all relevant documents in their possession, custody, or control. Each of these subparts constitutes a separate interrogatory. When multiplied across the potentially large number of individuals implicated by the request, the true interrogatory burden far exceeds what is reflected by a single numbered interrogatory. To the extent applicable rules limit the number of interrogatories a party may serve, this request should be counted as multiple interrogatories. StratAir objects to the extent this Interrogatory seeks information protected by the attorney-client privilege and the work product doctrine. Subpart (b), which demands a "summary of the facts about which they have knowledge," necessarily calls upon counsel to disclose the substance of witness interviews, investigative findings, and counsel's assessment of the relevance and significance of particular individuals' knowledge — all of which reflect attorney mental impressions, conclusions, and litigation strategy. Subpart (c), which asks whether StratAir has “interviewed” identified persons or “obtained a statement from them,” directly targets the fruits of counsel’s litigation preparation and investigation. Subpart (d), which asks whether Defendant “expects to call them as a trial witness,” seeks disclosure of StratAir’s trial strategy and counsel's evaluation of which witnesses to present at trial. StratAir will not disclose information protected by these privileges. StratAir specifically objects to subpart (d) as premature. The identification of trial witnesses is governed by the Court’s Scheduling Order and the applicable rules regarding pretrial disclosures. Requiring StratAir to identify expected trial witnesses at this stage of litigation, before the completion of discovery and dispositive motion practice, is premature and seeks information that is not yet ripe for disclosure. This Interrogatory fails to satisfy the proportionality requirements of Federal Rule of Civil Procedure 26(b)(1). The request effectively asks StratAir to prepare a comprehensive witness directory — complete with contact information, fact summaries, interview histories, trial designations, and document inventories — for every person with any knowledge relevant to any aspect of this litigation. The extraordinary burden and expense of compiling such a directory vastly outweighs the likely benefit of such information, particularly where the Federal Rules already provide mechanisms for the orderly exchange of witness information through initial disclosures under Rule 26(a)(1) and pretrial disclosures under Rule 26(a)(3). StratAir objects to the extent this Interrogatory is duplicative of the parties' initial disclosure obligations under Rule 26(a)(1)(A), which already require disclosure of the name and, if known, the address and telephone number of each individual likely to have discoverable information, along with the subjects of that information, that the disclosing party may use to support its claims or defenses. To the extent this Interrogatory seeks information beyond what is required by Rule 26(a)(1), the incremental burden of providing such information is not justified by any corresponding incremental benefit. StratAir objects to the extent this Interrogatory seeks disclosure of personal contact information and**

**employment details of non-party individuals, the disclosure of which implicates their privacy interests. Such information should not be compelled absent an appropriate protective order and a showing that the information is directly relevant and not obtainable through less intrusive means.**

2) Identify all expert witnesses Defendant has retained, consulted, or expects to call at trial in connection with this litigation. For each expert state: (a) their full name, business address, telephone number, and email address; (b) their area of expertise; (c) the subject matter on which they have been retained to provide opinions; (d) whether Defendant expects to call them as a witness at trial; (e) a summary of the opinions they are expected to provide and the factual basis for each opinion; (f) their hourly rate and total compensation for work on this case; (g) all documents, data, and information they have reviewed or relied upon in forming their opinions; and (h) all cases in which they have testified as an expert witness within the past four years, including case name, case number, and court.

**ANSWER: Objection. StratAir objects to this Interrogatory in its entirety as premature and duplicative of the expert disclosure requirements set forth in Federal Rule of Civil Procedure 26(a)(2). Rule 26(a)(2) establishes a comprehensive framework for the disclosure of expert witness information, including the identity of expert witnesses, written reports containing a complete statement of all opinions and the basis and reasons for them, the facts and data considered, exhibits to be used, the witness's qualifications, a list of all cases in which the witness has testified in the preceding four years, and a statement of the compensation to be paid for the study and testimony. The timing and scope of these disclosures are governed by the Court's scheduling order. This Interrogatory improperly seeks to circumvent that framework by demanding expert-related information outside the schedule established by the Court for expert disclosures. StratAir will provide expert disclosures in accordance with Rule 26(a)(2) and the Court's scheduling order at the appropriate time. StratAir objects to the extent this Interrogatory seeks information protected by the attorney-client privilege and the work product doctrine. The request that StratAir identify all experts it has "retained" or "consulted" — as distinguished from those it "expects to call at trial" — improperly seeks disclosure of consulting experts whose opinions and work product are protected from discovery under Rule 26(b)(4)(D). The identity, opinions, and work of non-testifying consulting experts are shielded from discovery absent exceptional circumstances, and this Interrogatory makes no showing of such circumstances. Furthermore, subpart (c), which asks StratAir to identify "the subject matter on which they have been retained to provide opinions," and subpart (e), which demands "a summary of the opinions they are expected to provide and the factual basis for each opinion," call upon StratAir to disclose attorney mental impressions, litigation strategy, and the substance of communications between counsel and retained experts in advance of the deadlines established for such disclosures. Subpart (g), which seeks**

**identification of "all documents, data, and information they have reviewed or relied upon in forming their opinions," similarly implicates work product protections to the extent it encompasses materials selected and provided to experts by counsel, reflecting counsel's legal theories and case strategy. This Interrogatory is objectionable as overly broad and unduly burdensome. The request that StratAir identify not only experts it "expects to call at trial" but also all experts it has merely "retained" or "consulted" sweeps far beyond the scope of permissible discovery into expert witnesses. The inclusion of consulting experts — who may have been engaged for preliminary evaluations, background research, or strategic guidance — imposes a burden that is wholly disproportionate to the needs of the case. Moreover, the demand that StratAir compile and produce "all documents, data, and information" reviewed by each expert, together with a comprehensive litigation history spanning four years, constitutes an extraordinary undertaking that is more appropriately addressed through the structured expert disclosure process contemplated by Rule 26(a)(2). StratAir objects on the ground that this Interrogatory is improperly compound. It seeks eight discrete categories of information for each expert identified: (a) contact and identifying information, (b) area of expertise, (c) subject matter of retention, (d) trial witness designation, (e) a summary of opinions and their factual bases, (f) compensation information, (g) all documents, data, and information reviewed, and (h) a four-year testimonial history with case names, numbers, and courts. Each of these subparts constitutes a separate interrogatory. To the extent applicable rules limit the number of interrogatories a party may serve, this request should be counted as multiple interrogatories. This Interrogatory fails to satisfy the proportionality requirements of Rule 26(b)(1). The Federal Rules already mandate comprehensive expert disclosures through Rule 26(a)(2), which are specifically designed to provide the opposing party with the information it needs to prepare for depositions and trial. Requiring StratAir to respond to this Interrogatory in addition to its Rule 26(a)(2) obligations would result in duplicative and wasteful discovery that serves no incremental purpose. The burden and expense of compiling the requested information at this stage — particularly the comprehensive summaries of opinions, catalogues of reviewed materials, and multi-year testimonial histories — vastly outweighs any marginal benefit, given that the same or substantially similar information will be provided through the expert disclosure process at the time designated by the Court. StratAir objects to the extent this Interrogatory seeks disclosure of personal contact information, including email addresses and telephone numbers, of non-party expert witnesses, as well as their compensation arrangements. Disclosure of such information outside the framework established by Rule 26(a)(2) implicates the privacy interests of these individuals and the confidentiality of their business arrangements. Such information should not be compelled absent a showing that it is not obtainable through the ordinary expert disclosure process.**

Dated: May 1, 2026

**Nalani Alesia Gordon**
Roger W. Feicht (Florida Bar No. 84982)
rfeicht@gunster.com
lhagan@gunster.com
Nalani Alesia Gordon (Florida Bar No. 1010976)
ngordon@gunster.com
lmusco@gunster.com
GUNSTER YOAKLEY & STEWART, P.A.
777 S. Flagler Drive, Suite 500 East
West Palm Beach, FL 33401
Telephone: 561-655-1980
Counsel for Defendant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 1, 2026, a true and correct copy of the foregoing has been furnished by electronic mail to all parties on the Service List below.

**BRIAN H. POLLOCK, ESQ.**
brian@fairlawattorney.com
**P. BROOKS LAROU, ESQ.**
brooks@fairlawattorney.com
FAIRLAW FIRM
135 San Lorenzo Avenue
Suite 770
Coral Gables, Florida 33146
Counsel for Plaintiffs

/s/ Nalani Alesia Gordon
Nalani Alesia Gordon