DocuSign Envelope ID: 9291A850-4F5D-8E0B-8230-9A20C04A87D3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:25-CV-24505-MOORE/ELFENBEIN

IVAN GRANT,
ALEX LAFFITA ORTIZ,
HENRY PINTO SUMOZA,
EYONNY PRADO DURAN,
LUIS RODRIGUEZ CERUTO,
AND LUIS SAME GONZALO,

Plaintiffs,

vs.

STRATAIR AVIATION
SERVICES, LLC,

Defendant.
_______________________________/

**DEFENDANT'S AMENDED RESPONSES TO PLAINTIFF ALEX LAFFITA ORTIZ'S FIRST SET OF INTERROGATORIES TO DEFENDANT**

Defendant, STRATAIR AVIATION SERVICES, LLC. ("StratAir"), by and through its undersigned counsel, hereby responds to Plaintiff ALEX LAFFITA ORTIZ's First Set of Interrogatories to Defendant under Certificate of Service dated March 18, 2026, by responding as follows:

Docusign Envelope ID: 9291A850-4F5D-8E9B-8230-9A26C04A87D3

## INTERROGATORIES

1. Please identify each person answering or assisting in answering these interrogatories, and his/her relationship to StratAir, as well as his/her full name, date of birth, social security number, current residential address, and all positions and job titles each such person has held with StratAir during the past five years.

ANSWER: **Andres Gonzalez, Manager & Vice President of Cargo**
**c/o Roger W. Feicht, Esq.**
**Gunster, Yoakley & Stewart, P.A.**
**777 S. Flagler Drive, Suite 500 East**
**West Palm Beach, Florida 33401**
**561-655-1980**

**To the extent this request seeks additional information, StratAir objects to the request as seeking sensitive personal information (social security numbers, dates of birth, and home residential addresses) that is not relevant to any claim or defense in this action.**

2. State the specific reason(s) why Plaintiff was selected for termination, state all facts supporting each reason, identify who identified or raised each reason, state whether performance or attendance issues were cited as reasons and if so identify all specific incidents with dates, and identify all documents evidencing eachreason.

ANSWER: **In January 2024, a major customer of StratAir informed StratAir that it had decided to reduce the number of future cargo delivery flights that it would hire StratAir to unload. This was a major impact on StratAir's work in the near future and resulted in an immediate and significant decline in anticipated revenue. As a direct result of its customer's decision, StratAir had too many employees for the projected demand for its services. Given the significant reduction in work to be performed and the associated drop in revenue, StratAir made the reasonable business decision to reduce its workforce in January 2024. StratAir ultimately laid off twenty-eight (28) employees, including Plaintiff. When management considered employees to be included in the necessary layoff, it evaluated the warehouse and cargo handling workforce based on multiple factors, including relative job performance, disciplinary and attendance history, and the operational needs of the business. These factors were weighed holistically. As part of this process, Plaintiff was among those selected for inclusion in the reduction in force.**

3. Identify all persons who participated in the decision to terminate Plaintiff, state each person's specific role in the decision, state the date(s) they participated, describe what information they considered, and identify all documents they reviewed or created in connection with the decision.

**ANSWER: Gisela Barrera and Armando Portales Viera, in consultation with warehouse supervisors and their own observations, made the decision to recommend the termination of Plaintiff to Jorge Corral. Jorge Corral made the final termination decision. StratAir's selection process involved multiple levels of review: supervisors provided performance observations based on direct knowledge of employees' work; Gisela Barrera and Armando Portales Viera reviewed this information along with their own observations and made recommendations; and Jorge Corral made the final termination decisions. StratAir made its layoff decisions based on legitimate, non-discriminatory business considerations, including assessments of employees' job performance, skills, and qualifications as observed in the ordinary course of business.**

4. State Plaintiff's official job title(s) and position classification(s) during his employment with Defendant, including: (a) each job title held; (b) the dates during which he held each title; (c) the department or division to which he was assigned; and (d) the shift(s) he regularly worked; and (e) identify all individuals who held a supervisory or managerial position over Plaintiff at any time during his employment, and for each such individual, state their full name, job title, and the dates during which they supervised Plaintiff.

**ANSWER: Plaintiff worked for StratAir as a Warehouse Handler from March 2023 until January 2024. Plaintiff's job duties involved unloading cargo containers from aircraft, unloading packages from cargo containers, sorting unloaded packages into gaylord boxes, loading gaylord boxes into trucks for subsequent delivery, along with the reverse process for unloading delivery trucks, sorting the cargo into containers for loading onto aircraft, and loading the cargo containers onto the aircraft. Plaintiff worked the night shift. Gisela Barrera was the operations manager for the night shift and supervised Plaintiff.**

5. State whether Defendant contends that Plaintiff's position was eliminated and not refilled, and if so, state whether the job duties and functions previously performed by Plaintiff were reassigned to other employees or independent contractors and to whom, state whether any employee or contractor was hired or engaged to perform the same or substantially similar work after January 2024 and if so identify each such person with their age and start date, and state whether the total headcount of persons (employees plus contractors) performing warehouse, cargo, or security work at the Miami location decreased, remained the same, or increased following the January 2024 layoff.

**ANSWER: As a result of the significant reduction in anticipated cargo volume and associated revenue, StratAir reduced the number of employees assigned to warehouse and cargo handling functions. The reduction was a headcount reduction driven by decreased workload and revenue, not an elimination of job classifications. The reduced volume of work no longer required the same staffing levels that had previously been necessary. StratAir does**

Docusign Envelope ID: 9291A850-4F5D-8E9B-8230-9A26C04A87D3

**not employ individual independent contractors; any non-employee personnel performing work at the Miami location were employed by third-party staffing agencies, not StratAir. Staffing agency engagements were also reduced during that time period.**

6. For each employee or independent contractor who was retained and held the same or similar position as Plaintiff, state their name, age, position, employment status (employee or contractor), supervisor(s), and the reason they were retained instead of terminated.

<u>ANSWER:</u> **Within three days of entry of a Confidentiality Order by the Court, StratAir will produce employee detail records from the relevant time period, which include both terminated and retained employees and contain each employee's name, position, age, race/ethnicity, and date of hire; for terminated employees, the records also include date of discharge. As it relates to employees who were retained, StratAir made its layoff decisions based on legitimate, non-discriminatory business considerations, including assessments of employees' job performance, skills, and qualifications as observed in the ordinary course of business. These factors were weighed holistically; no single criterion was determinative. Employees who were retained were those whom StratAir determined, based on this holistic evaluation, best met the company's operational needs following the reduction in anticipated cargo volume. Articulating individualized retention reasons for each of hundreds of retained employees would not be proportional to the needs of the case, as the same legitimate, non-discriminatory selection criteria applied across the workforce. To the extent the request seeks information regarding the national origins of employees, StratAir does not track this information. As it relates to independent contractors, StratAir does not employ individual independent contractors; any non-employee personnel performing work at the Miami location were employed by third-party staffing agencies, not StratAir. StratAir does not control the ages of workers assigned by staffing agencies.**

7. State whether any supervisor, manager, or other person employed by or acting on behalf of StratAir made any statement(s) regarding employees' ages, older employees, replacing older employees with younger employees, needing "new blood," bringing in younger workers from agencies, or similar age-related statements from January 2023 through February 2024, and if so, for each statement identify the person who made it, state the exact words used, state the date and location, identify all witnesses, and state Defendant's position regarding whether each statement was made.

<u>ANSWER:</u> **StratAir denies that any supervisor, manager, or other person employed by or acting on behalf of StratAir made any age-related statement(s) of the kind described in this interrogatory during the time period of January 2023 through February 2024.**

**Because no such statements were made, the remaining subparts of this Interrogatory are inapplicable.**

8. Identify all complaints, charges, or allegations of age discrimination made by any employee or former employee against StratAir or any of its supervisors or managers from January 2022 through the present, and for each state the complainant's name, the date, the accused individual(s), the allegations, the outcome or resolution, and what corrective action (if any) was taken.

**ANSWER: Objection. This Interrogatory seeks information about discrimination complaints by other employees involving different decision-makers, different supervisors, different departments, and wholly distinct factual circumstances from the January 2024 reduction in force at issue. The marginal relevance of unrelated complaints is substantially outweighed by the burden of compiling this information for a three-year period across all locations.**

9. Identify all complaints, charges, or allegations of age discrimination made by any employee or former employee against StratAir or any of its supervisors or managers from January 2022 through the present, and for each state the complainant's name, the date, the accused individual(s), the allegations, the outcome or resolution, and what corrective action (if any) was taken.

**ANSWER: StratAir objects to this interrogatory as duplicative of Request No. 8 above.**

10. State the specific reasons why Mr. Laffita Ortiz was transferred from inside warehouse work to outside cargo work in or around 2023, identify who made the decision, state when the decision was made, state all facts supporting the decision, state whether the transfer resulted in any change in pay, benefits, or working conditions, and identify all documents relating to this transfer.

**ANSWER: Plaintiff Laffita Ortiz testified that he requested to work on the cargo ramp. StratAir objects to the characterization of "inside warehouse" and "outside cargo work" as vague and ambiguous.**

11. State the specific reasons why Mr. Laffita Ortiz was later transferred back to inside warehouse work from outside cargo work, identify who made the decision, state when the decision was made, state whether this transfer was at Mr. Laffita's request, state whether the transfer resulted in any change in pay, benefits, or working conditions, and identify all documents relating to this transfer.

**<u>ANSWER:</u> Plaintiff Laffita requested to work on the cargo ramp. Plaintiff was not "transferred," as the Interrogatory assumes. StratAir objects to the characterization of "inside warehouse" and "outside cargo work" as vague and ambiguous.**

12. State whether Mr. Laffita Ortiz's hourly wage or pay rate changed at any time between his hire date and his termination in January 2024, and if so, state each change in pay rate with the date of each change, the reason for each change, whether each change was an increase or decrease, who authorized each change, and identify all documents reflecting each pay change.

**<u>ANSWER:</u> Plaintiff received one additional dollar per hour for the brief period of weeks that he worked on the cargo ramp. Plaintiff's pay rate did not change any other time during his employment.**

13. State the date Mr. Laffita Ortiz sent an email to StratAir's President following his termination, identify the President to whom the email was sent, state whether the President or anyone else at StratAir responded, state the date and substance of any response, state whether any investigation was conducted as a result of Mr. Laffita's email, state whether any action was taken in response to the email, and identify all documents relating to Mr. Laffita's email and any response.

**<u>ANSWER:</u> Plaintiff Laffita Ortiz sent an email to me on January 23, 2024. StratAir did not respond to Plaintiff's email. StratAir objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege or work product doctrine.**

14. State whether Mr. Laffita Ortiz was subjected to increased scrutiny, micromanagement, or closer supervision following the hiring or engagement of younger employees or independent contractors in late 2023, and if so, describe the increased scrutiny or micromanagement, identify who subjected him to such treatment, state when it began, state the reason for the increased scrutiny, identify all employees who were subjected to similar treatment, and identify all documents evidencing such treatment.

**<u>ANSWER:</u> StratAir denies that Plaintiff Laffita Ortiz was subjected to increased scrutiny, micromanagement or closer supervision following the hiring or engagement of younger employees in late 2023. Because no such "increased scrutiny, micromanagement, or closer supervision" occurred, the remaining subparts of this interrogatory are inapplicable. StratAir objects to the characterization of "hiring or engagement of younger employees" as argumentative and vague. In addition, StratAir does not employ individual independent**

Docusign Envelope ID: 9291A850-4F5D-8E9B-8230-9A26C04A87D3

**contractors; any non-employee personnel performing work at the Miami location were employed by third-party staffing agencies, not StratAir.**

15. Identify all employees or independent contractors who performed warehouse work at the Miami location and were under age 40 as of January 2024, and for each state their name, age, position, hire or engagement date, employment status (employee or contractor), whether they were retained following the January 2024 layoff, and if retained the stated reason for retention.

**ANSWER:** **Within three days of entry of a Confidentiality Order by the Court, StratAir will produce employee detail records from the relevant time period, which include both terminated and retained employees and contain each employee's name, position, age, race/ethnicity, and date of hire; for terminated employees, the records also include date of discharge. The request seeks detailed personal information of non-party employees who are not involved in this litigation. To the extent the request seeks further information, StratAir objects. Information regarding employees prior to the time period of the RIF decision is not relevant to any claim or defense in this action. As it relates to independent contractors, StratAir does not employ individual independent contractors; any non-employee personnel performing work at the Miami location were employed by third-party staffing agencies, not StratAir. StratAir does not control the ages of workers assigned by staffing agencies.**

16. State whether Mr. Laffita Ortiz provided training, mentoring, or assistance to any younger or newly hired employees or contractors during 2023, and if so, identify each person he trained or assisted, state their age, state the dates of training, describe what training or assistance he provided, state whether this was at the direction of supervisors or management, state whether any of the persons he trained were retained following the January 2024 layoff while Mr. Laffita was terminated, and identify all documents relating to Mr. Laffita's training activities.

**ANSWER:** **Plaintiff was not assigned to provide training, mentoring, or assistance to any employees at StratAir at any time during his employment.**

17. Identify all employees at the Miami location who had documented performance problems, attendance issues, or disciplinary issues similar to or more serious than any alleged issues regarding Mr. Laffita but were NOT selected for termination in the January 2024 layoff, and for each state their name, age, the nature of their issues, the date(s) of the issues, whether the issues were documented, and the reason they were not selected for termination.

**ANSWER:** **Hundreds of employees were retained across multiple departments and positions. StratAir does not maintain a centralized, searchable database of disciplinary history; accordingly, responding to this Interrogatory would require a manual review of hundreds of individual personnel files to identify whether any employee received any form of written warning, and then an individualized assessment of whether that warning involved conduct or performance issues that**

**could be characterized as "same or similar" to the issues underlying Mr. Laffita Ortiz's inclusion in the reduction in force—an inherently subjective determination. The burden of this undertaking is disproportionate to its probative value. StratAir made its layoff decisions based on legitimate, non-discriminatory business considerations, including assessments of employees' job performance, skills, and qualifications as observed in the ordinary course of business. The existence of a prior written warning was only one of numerous factors considered in the selection process, and the receipt of a warning, standing alone, did not determine whether any individual was selected for or retained following the reduction in force. The Interrogatory rests on the flawed premise that the receipt of a written warning and selection for the reduction in force are directly and causally linked, when in fact the decision-making process involved a comprehensive, holistic evaluation of business needs, job function, skills, performance history, and other legitimate, nondiscriminatory criteria. Accordingly, requiring StratAir to conduct a manual review of hundreds of personnel files to identify employees who received any arguably similar discipline but were retained would impose significant burden while yielding information of limited probative value. StratAir will supplement this response as required by Rule 26(e) of the Federal Rules of Civil Procedure.**

18. State all facts supporting Defendant's denial that Mr. Laffita Ortiz was discriminated against based on his age, including all evidence Defendant contends demonstrates non-discriminatory reasons for his termination.

<u>**ANSWER:**</u> **See response to No. 2 above.**

19. State whether any independent contractors, temporary workers, or staffing agency workers were assigned to perform warehouse or cargo handling work at the Miami warehouse location after his termination in January 2024, and if so, identify each such person, state their age, state their start date, and describe the work they performed.

<u>**ANSWER:**</u> **StratAir does not employ individual independent contractors; any non-employee personnel performing work at the Miami location were employed by third-party staffing agencies, not StratAir. StratAir does not control the ages of workers assigned by staffing agencies and did not direct staffing agencies to assign workers of any particular age. Staffing agency engagements were also reduced during that time period. StratAir does not**

**have employment records related to any temporary workers or staffing agency workers in its possession, custody, or control.**

20. State whether the transfers Mr. Laffita experienced between inside and outside work in 2023 were considered or discussed in connection with the decision to terminate him in January 2024, and if so, identify who considered or discussed this, state when it was considered or discussed, describe what was said, and identify all documents reflecting such consideration or discussion.

**ANSWER: Plaintiff Laffita requested to work on the cargo ramp. Plaintiff was not "transferred," as the Interrogatory assumes. StratAir objects to the vague and ambiguous characterizations of "inside and outside work" in the Interrogatory.**

21. State the specific reasons why Defendant contends that Mr. Laffita Ortiz's "performance was unsatisfactory," that Mr. Laffita "showed a negative attitude," was "unwilling to listen to feedback and exhibited careless behavior"; state all facts supporting this contention, identify all specific incidents with dates and witnesses, state whether these alleged performance issues were documented in Mr. Pinto's personnel file before the January 2024 layoff decision, state who observed or reported these alleged issues, state whether Mr. Pinto was ever counseled or warned about these alleged issues before his termination, and identify all documents supporting this contention.

**ANSWER: See response to No. 3 above. StratAir reserves the right to supplement this response in accordance with Federal Rule of Civil Procedure 26(e). StratAir also notes**

**that the latter portion of the Interrogatory references "Mr. Pinto," but StratAir's answer refers to Plaintiff Laffita Ortiz only.**

Dated: July 2, 2026

**Nalani Alesia Gordon**
Roger W. Feicht (Florida Bar No. 84982)
rfeicht@gunster.com
lhagan@gunster.com
Nalani Alesia Gordon (Florida Bar No. 1010976)
ngordon@gunster.com
lmusco@gunster.com
GUNSTER YOAKLEY & STEWART, P.A.
777 S. Flagler Drive, Suite 500 East
West Palm Beach, FL 33401
Telephone: 561-655-1980
Counsel for Defendant

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 2, 2026, a true and correct copy of the foregoing has been furnished by electronic mail to all parties on the Service List below.

**BRIAN H. POLLOCK, ESQ.**
brian@fairlawattorney.com
**P. BROOKS LAROU, ESQ.**
brooks@fairlawattorney.com
FAIRLAW FIRM
135 San Lorenzo Avenue
Suite 770
Coral Gables, Florida 33146
Counsel for Plaintiffs

*/s/ Nalani Alesia Gordon*
Nalani Alesia Gordon

ACTIVE:39942295.1

Docusign Envelope ID: 9291A830-4F5D-8E9B-8230-9A26C04A67D3

# VERIFICATION

**I declare under penalty of perjury that the foregoing is true and correct. Executed on** 7/2/2026 **, 2026.**

STRATAIR AVIATION SERVICES LLC

Signed by:

Andres Gonzalez

318FAD89932445B...

(Signature)

By: Andres Gonzalez

As Its: _Manager & Vice President of Cargo

Docusign Envelope ID: 1314FE11-E6A5-8213-832A-90FC3E132685

UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 1:25-CV-24505-MOORE/ELFENBEIN

IVAN GRANT,
ALEX LAFFITA ORTIZ,
HENRY PINTO SUMOZA,
EYONNY PRADO DURAN,
LUIS RODRIGUEZ CERUTO,
and LUIS SAME GONZALO,

Plaintiffs,

vs.

STRATAIR AVIATION
SERVICES, LLC,

Defendants.
_______________________________/

**DEFENDANT'S AMENDED RESPONSES TO PLAINTIFF EYONNY PRADO DURAN'S FIRST SET OF INTERROGATORIES TO DEFENDANT**

Defendant, STRATAIR AVIATION SERVICES, LLC. ("StratAir"), by and through its undersigned counsel, hereby responds to Plaintiff EYONNY PRADO DURAN's First Set of Interrogatories to Defendant under Certificate of Service dated March 18, 2026, by responding as follows:

**INTERROGATORIES**

1) Please identify each person answering or assisting in answering these interrogatories, and his/her relationship to StratAir, as well as his/her full name, date of birth, social security number, current residential address, and all positions and job titles each such person has held with StratAir during the past five years.

**ANSWER: Andres Gonzalez, Manager & Vice President of Cargo**

**c/o Roger W. Feicht, Esq.**
**Gunster, Yoakley & Stewart, P.A.**
**777 S. Flagler Drive, Suite 500 East**
**West Palm Beach, Florida 33401**
**561-655-1980**

**To the extent this request seeks additional information, StratAir objects to the request as seeking sensitive personal information (social security numbers, dates of birth, and home residential addresses) that is not relevant to any claim or defense in this action.**

2) State the specific reason(s) why Plaintiff was selected for termination, state all facts supporting each reason, identify who identified or raised each reason, state whether performance or attendance issues were cited as reasons and if so identify all specific incidents with dates, and identify all documents evidencing eachreason.

ANSWER: **In January 2024, a major customer of StratAir informed StratAir that it had decided to reduce the number of future cargo delivery flights that it would hire StratAir to unload. This was a major impact on StratAir's work in the near future and resulted in an immediate and significant decline in anticipated revenue. As a direct result of its customer's decision, StratAir had too many employees for the projected demand for its services. Given the significant reduction in work to be performed and the associated drop in revenue, StratAir made the reasonable business decision to reduce its workforce in January 2024. StratAir ultimately laid off twenty-eight (28) employees, including Plaintiff. When management considered employees to be included in the necessary layoff, it evaluated the warehouse and cargo handling workforce based on multiple factors, including relative job performance, disciplinary and attendance history, and the operational needs of the business. These factors were weighed holistically. As part of this process, Plaintiff was among those selected for inclusion in the reduction in force. Plaintiff was a problematic employee with poor performance. When Mr. Prado was given instructions to perform a task, he commonly had an excuse not to do it. StratAir reserves the right to supplement this response in accordance with Federal Rule of Civil Procedure 26(e).**

3) Identify all persons who participated in the decision to terminate Plaintiff, state each person's specific role in the decision, state the date(s) they participated, describe what information they considered, and identify all documents they reviewed or created in connection with the decision.

ANSWER: **Gisela Barrera and Armando Portales Viera, in consultation with warehouse supervisors and their own observations, made the decision to recommend the termination of Plaintiff to Jorge Corral. Jorge Corral made the final termination decision. StratAir's selection process involved multiple levels of review: supervisors provided performance observations based on direct knowledge of employees' work; Gisela Barrera and Armando Portales Viera reviewed this information along with their own observations and made recommendations; and Jorge Corral made the final termination decisions. StratAir made its layoff decisions based on legitimate, non-discriminatory business**

**considerations, including assessments of employees' job performance, skills, and qualifications as observed in the ordinary course of business.**

4) State Plaintiff's official job title(s) and position classification(s) during his employment with Defendant, including: (a) each job title held; (b) the dates during which he held each title; (c) the department or division to which he was assigned; and (d) the shift(s) he regularly worked; and (e) identify all individuals who held a supervisory or managerial position over Plaintiff at any time during his employment, and for each such individual, state their full name, job title, and the dates during which they supervised Plaintiff.

**ANSWER: Plaintiff was hired by StratAir in late June 2023 as a Warehouse Handler. Plaintiff's job duties involved unloading cargo containers from aircraft, unloading packages from cargo containers, sorting unloaded packages into gaylord boxes, loading gaylord boxes into trucks for subsequent delivery, along with the reverse process for unloading delivery trucks, sorting the cargo into containers for loading onto aircraft, and loading the cargo containers onto the aircraft. Plaintiff worked the day shift, and his supervisor was Jose Alverio.**

5) State whether Defendant contends that Plaintiff's position was eliminated and not refilled, and if so, state whether the job duties and functions previously performed by Plaintiff were reassigned to other employees or independent contractors and to whom, state whether any employee or contractor was hired or engaged to perform the same or substantially similar work after January 2024 and if so identify each such person with their age and start date, and state whether the total headcount of persons (employees plus contractors) performing warehouse, cargo, or security work at the Miami location decreased, remained the same, or increased following the January 2024 layoff.

**ANSWER: As a result of the significant reduction in anticipated cargo volume and associated revenue, StratAir reduced the number of employees assigned to warehouse and cargo handling functions. The reduction was a headcount reduction driven by decreased workload and revenue, not an elimination of job classifications. The reduced volume of work no longer required the same staffing levels that had previously been necessary. StratAir does not employ individual independent contractors; any non-employee personnel performing work at the Miami location are engaged and employed by third-party staffing agencies. Staffing agency engagements were also reduced during that time period.**

6) For each employee or independent contractor who was retained and held the same or similar position as Plaintiff, state their name, age, position, employment status (employee or contractor), supervisor(s), and the reason they were retained instead of terminated.

**ANSWER: Within three days of entry of a Confidentiality Order by the Court, StratAir will produce employee detail records from the relevant time period, which include both terminated and retained employees and contain each employee's name, position, age, race/ethnicity, and date of hire; for terminated employees, the records also include date of discharge. As it relates to employees who were retained, StratAir made its layoff decisions based on legitimate, non-discriminatory business considerations, including assessments of employees' job performance, skills, and qualifications as observed in the ordinary course of**

**business. These factors were weighed holistically; no single criterion was determinative. Employees who were retained were those whom StratAir determined, based on this holistic evaluation, best met the company's operational needs following the reduction in anticipated cargo volume. Articulating individualized retention reasons for hundreds of retained employees would not be proportional to the needs of the case, as the same legitimate, non-discriminatory selection criteria applied across the workforce. To the extent the request seeks information regarding the national origins of employees, StratAir does not track this information. As it relates to independent contractors, StratAir does not employ individual independent contractors; any non-employee personnel performing work at the Miami location were employed by third-party staffing agencies, not StratAir. StratAir does not control the ages of workers assigned by staffing agencies.**

7) State the specific reasons why Defendant contends Mr. Prado Duran was a "problematic employee with poor performance," state all facts supporting this contention, identify all specific incidents with dates and witnesses, state whether these alleged issues were documented in Mr. Prado's personnel file before the January 2024 layoff decision, state whether Mr. Prado was ever counseled, warned, or disciplined about these alleged issues before his termination, and identify all documents supporting this contention.

**ANSWER: See response to No. 2 above.**

8) State the specific reasons why Defendant contends Mr. Prado Duran "commonly had an excuse not to" perform work as instructed, state all facts supporting this contention, identify all specific incidents with dates, describe what "excuses" Mr. Prado allegedly made when instructed to perform tasks at work, state whether Defendant contends the explanations were false or unacceptable, state whether these alleged incidents were documented before the January 2024 layoff decision, and identify all documents supporting this contention.

**ANSWER: See response to No. 2 above.**

9) State whether Mr. Prado Duran trained, mentored, or assisted in training any younger or newly hired employees or independent contractors of Defendant during 2023, and if so, identify each individual he trained or assisted, state their age, state the dates of training or assistance, describe what training or assistance he provided, state whether this was at the direction of supervisors or management, state whether any of the individuals he trained were retained following the January 2024 layoff while Mr. Prado was terminated, and identify all documents relating to Mr. Prado's training activities.

**ANSWER: Plaintiff did not train, mentor, or assist in training any "younger or newly hired employees." StratAir did not engage independent contractors. Because Plaintiff did not provide any such training, mentoring, or assistance, no response to the remaining subparts of the interrogatory is possible or required.**

10) State whether Mr. Prado Duran complained to his supervisor Lidier or any other supervisor or manager on or about January 14, 2024 (after learning of his termination) that StratAir appeared to be targeting older employees for termination, and if so, identify to whom he complained, state the date and time, describe what Mr. Prado said, identify all witnesses, state who responded and what was said, state whether any investigation was conducted in response, state what corrective action (if any) was taken, and identify all documents relating to this complaint.

**ANSWER: Plaintiff Prado Duran did not complain to StratAir's management after learning of his termination. Because StratAir did not receive any such complaint, no response is possible or required for the remaining subparts of this Interrogatory.**

11) State whether any investigation, review, or corrective action was taken in response to Mr. Prado Duran's complaint to his supervisor Lidier regarding older workers being targeted during the January 2024 layoff (if you contend that such a complaint was made), and if so, describe the investigation or review, identify who conducted it, state the findings, state what action was taken, and identify all documents relating to such investigation, review, or action.

**ANSWER: Plaintiff Prado Duran did not complain to StratAir's management during or after the January 2024 layoff. StratAir objects to this request because it falsely assumes that Plaintiff made a complaint to his supervisor regarding alleged discrimination.**

12) Identify all employees who performed the same or similar work as Mr. Prado Duran and had documented attendance or performance issues but were NOT selected for termination in the January 2024 layoff, and for each state their name, age, the nature of their issues, whether the issues were documented, and why they were retained despite documented issues.

ANSWER: **Hundreds of employees were retained across multiple departments and positions. StratAir does not maintain a centralized, searchable database of disciplinary history; accordingly, responding to this Interrogatory would require a manual review of hundreds of individual personnel files to identify whether any employee received any form of written warning, and then an individualized assessment of whether that warning involved conduct or performance issues that could be characterized as "same or similar" to the issues underlying Mr. Prado Duran's inclusion in the reduction in force—an inherently subjective determination. The burden of this undertaking is disproportionate to its probative value. StratAir made its layoff decisions based on legitimate, non-discriminatory business considerations, including assessments of employees' job performance, skills, and qualifications as observed in the ordinary course of business. The existence of a prior written warning was only one of numerous factors considered in the selection process, and the receipt of a warning, standing alone, did not determine whether any individual was selected for or retained following the reduction in force. The Interrogatory rests on the flawed premise that the receipt of a written warning and**

**selection for the reduction in force are directly and causally linked, when in fact the decision-making process involved a comprehensive, holistic evaluation of business needs, job function, skills, performance history, and other legitimate, nondiscriminatory criteria. Accordingly, requiring StratAir to conduct a manual review of hundreds of personnel files to identify employees who received any arguably similar discipline but were retained would impose significant burden while yielding information of limited probative value.**

13) State whether Plaintiff's supervisors Jose (also known as "Bori") and/or Wilson participated in the decision to terminate Mr. Prado, and if so, describe each person's specific role in the decision, state when each person participated, describe what each person said or recommended regarding Mr. Prado, state what information each person considered, and identify all documents reflecting their participation.

**ANSWER: Jose Alverio provided feedback regarding employees' performance to Armando Portales Viera and Gisela Barrera prior to the January 2024 layoff. Wilson Dorada was not involved in the selection process for the January 2024 layoff decision.**

14) State all facts supporting Defendant's denial that Mr. Prado was discriminated against based on his age, including all evidence Defendant contends demonstrates non-discriminatory reasons for his termination.

**ANSWER: See response to No. 2 above.**

15) State whether the fact that Mr. Prado trained younger or newly hired employees was considered a positive or negative factor in the decision to terminate him, and if so, identify who considered this, state when it was considered, describe how it was characterized (positive or negative), explain why it was considered positive or negative, and identify all documents reflecting such consideration.

**ANSWER: Mr. Prado did not train, mentor, or assist in training any younger or newly hired employees. Because no such training occurred, the fact described in this Interrogatory was not considered as a factor—positive or negative—in the decision to include Plaintiff in the January 2024 reduction in force.**

16) Identify all employees and independent contractors of StratAir who performed warehouse or cargo handling work at the Miami location from October 2023 through January 2024, and for each state their name, age, whether they were selected for termination in the January 2024 layoff, and if terminated the stated reason for selection or if retained the stated reason for retention.

**ANSWER: Within three days of entry of a Confidentiality Order by the Court, StratAir will produce employee detail records from the relevant time period, which include both terminated and retained employees and contain each employee's name, position, age, race/ethnicity, and date of hire; for terminated employees, the records also include date of discharge. The request seeks detailed personal information of non-party employees who are**

DocuSign Envelope ID: 1314FE11-E6A5-8213-832A-90FC3E132685

**not involved in this litigation. To the extent the request seeks further information, StratAir objects. Information regarding employees prior to the time period of the RIF decision is not relevant to any claim or defense in this action. As it relates to independent contractors, StratAir does not employ individual independent contractors; any non-employee personnel performing work at the Miami location were employed by third-party staffing agencies, not StratAir. StratAir does not have employment records related to any temporary workers or staffing agency workers in its possession, custody, or control.**

17) State whether any independent contractors, temporary workers, or staffing agency workers were assigned to perform warehouse or cargo handling work on the same shift Mr. Prado worked after his termination in January 2024, and if so, identify each such person, state their age, state their start date, and describe the work they performed.

ANSWER: **StratAir does not employ individual independent contractors; any non-employee personnel performing work at the Miami location were employed by third-party staffing agencies, not StratAir. StratAir does not control the ages of workers assigned by staffing agencies and did not direct staffing agencies to assign workers of any particular age. Staffing agency engagements were also reduced during that time period. StratAir does not have employment records related to any temporary workers or staffing agency workers in its possession, custody, or control.**

18) State whether StratAir's supervisor Lidier participated in the decision to terminate Mr. Prado or was consulted about the decision, and if so, describe Lidier's role, state when Lidier participated or was consulted, describe what Lidier said or recommended, state what action (if any) Lidier took in response to Mr. Prado's complaint, and identify all documents reflecting Lidier's role or participation.

ANSWER: **StratAir's supervisors, including Lidier Leon, provided feedback to Armando Portales Viera and Gisela Barrera to assist with Viera and Barrera's selection for the January 2024 layoff. StratAir's selection process involved multiple levels of review: supervisors provided performance observations based on direct knowledge of employees' work; Gisela Barrera and Armando Portales Viera reviewed this information along with their own observations and made recommendations; and Jorge Corral made the final termination decisions. StratAir made its layoff decisions based on legitimate, non-discriminatory business considerations, including assessments of employees' job performance, skills, and qualifications as observed in the ordinary course of business.**

Docusign Envelope ID: 1314FE11-E6A5-8215-832A-90FC3E132685

Dated: May 1, 2026

**Nalani Alesia Gordon**
Roger W. Feicht (Florida Bar No. 84982)
rfeicht@gunster.com
lhagan@gunster.com
Nalani Alesia Gordon (Florida Bar No. 1010976)
ngordon@gunster.com
lmusco@gunster.com
GUNSTER YOAKLEY & STEWART, P.A.
777 S. Flagler Drive, Suite 500 East
West Palm Beach, FL 33401
Telephone: 561-655-1980
Counsel for Defendant

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 1, 2026, a true and correct copy of the foregoing has been furnished by electronic mail to all parties on the Service List below.

**BRIAN H. POLLOCK, ESQ.**
brian@fairlawattorney.com
**P. BROOKS LAROU, ESQ.**
brooks@fairlawattorney.com
FAIRLAW FIRM
135 San Lorenzo Avenue
Suite 770
Coral Gables, Florida 33146
Counsel for Plaintiffs

*/s/ Nalani Alesia Gordon*
Nalani Alesia Gordon

ACTIVE:39942391.1

Docusign Envelope ID: 1314FE11-E6A5-8215-832A-90FC3E132685

**VERIFICATION**

**I declare under penalty of perjury that the foregoing is true and correct. Executed on 7/2/2026, 2026.**

STRATAIR AVIATION SERVICES LLC

Signed by:

Andres Gonzalez

(Signature) 2185AD8993445B...

By: Andres Gonzalez

As Its: _Manager & Vice President of Cargo

DocuSign Envelope ID: 6C7F643B-2F64-8E76-81AE-7CC7E561FBC6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:25-CV-24505-MOORE/ELFENBEIN

IVAN GRANT,
ALEX LAFFITA ORTIZ,
HENRY PINTO SUMOZA,
EYONNY PRADO DURAN,
LUIS RODRIGUEZ CERUTO,
and LUIS SAME GONZALO,

Plaintiffs,

vs.

STRATAIR AVIATION
SERVICES, LLC,

Defendants.
_______________________________/

**DEFENDANT'S RESPONSE TO PLAINTIFF EYONNY PRADO DURAN'S SECOND SET OF INTERROGATORIES TO DEFENDANT**

Defendant, STRATAIR AVIATION SERVICES, LLC. ("StratAir"), by and through its undersigned counsel, hereby responds to Plaintiff EYONNY PRADO DURAN's Second Set of Interrogatories to Defendant under Certificate of Service dated March 18, 2026, by responding as follows:

## INTERROGATORIES

1) Identify all persons, other than Plaintiffs' attorneys and Defendant's attorneys, who have knowledge of facts relevant to any claim or defense in this litigation, including but not limited to the January 2024 layoff, the decision to terminate any plaintiff in this action, statements by supervisors regarding age, the hiring of contractors or temporary workers, complaints about discrimination, or any of the Plaintiffs' work performance. For each person state: (a) their full name, current employer, job title, and contact information; (b) a summary of the facts about which they have knowledge; (c) whether Defendant has interviewed them or obtained a statement from them, and if so the date and who conducted the interview; (d) whether Defendant expects to call them as a trial witness; and (e) all documents in their possession, custody, or control that are relevant to this litigation.

**ANSWER: The individuals with the most direct knowledge of facts relevant to Plaintiff Prado Duran's claims are Gisela Barrera, Operations Manager for the night shift; Armando Portales Viera; and Jorge Corral, who made the final termination decisions. StratAir's selection process involved multiple levels of review: supervisors provided performance observations based on direct knowledge of employees' work; Gisela Barrera and Armando Portales Viera reviewed this information along with their own observations and made recommendations; and Jorge Corral made the final termination decisions. StratAir made its layoff decisions based on legitimate, non-discriminatory business considerations, including assessments of employees' job performance, skills, and qualifications as observed in the ordinary course of business. Contact information for StratAir personnel may be obtained through counsel. StratAir will supplement this response as required by Rule 26(e) of the Federal Rules of Civil Procedure and will provide additional witness information in accordance with the Court's scheduling order and Federal Rule of Civil Procedure 26.**

2) Identify all expert witnesses Defendant has retained, consulted, or expects to call at trial in connection with this litigation. For each expert state: (a) their full name, business address, telephone number, and email address; (b) their area of expertise; (c) the subject matter on which they have been retained to provide opinions; (d) whether Defendant expects to call them as a witness at trial; (e) a summary of the opinions they are expected to provide and the factual basis for each opinion; (f) their hourly rate and total compensation for work on this case; (g) all documents, data, and information they have reviewed or relied upon in forming their opinions; and (h) all cases in which they have testified as an expert witness within the past four years, including case name, case number, and court.

**ANSWER: StratAir has not retained any expert witnesses at this time. StratAir will supplement this response as required by Federal Rule of Civil Procedure 26.**

Docusign Envelope ID: 6C7F643B-2F64-8E76-81AE-7CC7E561FBC8

Dated: July 2, 2026

**Nalani Alesia Gordon**
Roger W. Feicht (Florida Bar No. 84982)
rfeicht@gunster.com
lhagan@gunster.com
Nalani Alesia Gordon (Florida Bar No. 1010976)
ngordon@gunster.com
lmusco@gunster.com
GUNSTER YOAKLEY & STEWART, P.A.
777 S. Flagler Drive, Suite 500 East
West Palm Beach, FL 33401
Telephone: 561-655-1980
Counsel for Defendant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 2, 2026, a true and correct copy of the foregoing has been furnished by electronic mail to all parties on the Service List below.

**BRIAN H. POLLOCK, ESQ.**
brian@fairlawattorney.com
**P. BROOKS LAROU, ESQ.**
brooks@fairlawattorney.com
FAIRLAW FIRM
135 San Lorenzo Avenue
Suite 770
Coral Gables, Florida 33146
Counsel for Plaintiffs

/s/ Nalani Alesia Gordon
Nalani Alesia Gordon

ACTIVE:39942420.1

Docusign Envelope ID: 6C7F643B-2F64-8E76-81AE-7CC7E961FBC6

# VERIFICATION

**I declare under penalty of perjury that the foregoing is true and correct. Executed on 7/2/2026 ____________, 2026.**

STRATAIR AVIATION SERVICES LLC

Signed by:
Andres Gonzalez
318FAD89932445B...
(Signature)

By: Andres Gonzalez

As Its: _Manager & Vice President of Cargo

Docusign Envelope ID: 7360757E-1BAF-8CF4-82A7-EE928AB5E0B9

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:25-CV-24505-MOORE/ELFENBEIN

IVAN GRANT,
ALEX LAFFITA ORTIZ,
HENRY PINTO SUMOZA,
EYONNY PRADO DURAN,
LUIS RODRIGUEZ CERUTO, and
LUIS SAME GONZALO,

Plaintiffs,

vs.

STRATAIR AVIATION
SERVICES, LLC,

Defendants.
_________________________________/

**DEFENDANT'S AMENDED RESPONSES TO PLAINTIFF HENRY PINTO SUMOZA'S FIRST SET OF INTERROGATORIES TO DEFENDANT**

Defendant, STRATAIR AVIATION SERVICES, LLC. ("StratAir"), by and through its undersigned counsel, hereby responds to Plaintiff HENRY PINTO SUMOZA's First Set of Interrogatories to Defendant under Certificate of Service dated March 18, 2026, by responding as follows:

## INTERROGATORIES

1) Please identify each person answering or assisting in answering these interrogatories, and his/her relationship to StratAir, as well as his/her full name, date of birth, social security number, current residential address, and all positions and job titles each such person has held with StratAir during the past five years.

**ANSWER: Andres Gonzalez, Manager & Vice President of Cargo**

**c/o Roger W. Feicht, Esq.**
**Gunster, Yoakley & Stewart, P.A.**
**777 S. Flagler Drive, Suite 500 East**
**West Palm Beach, Florida 33401**
**561-655-1980**

**To the extent this request seeks additional information, StratAir objects to the request as seeking sensitive personal information (social security numbers, dates of birth, and home residential addresses) that is not relevant to any claim or defense in this action.**

2) State the specific reason(s) why Plaintiff was selected for termination, state all facts supporting each reason, identify who identified or raised each reason, state whether performance or attendance issues were cited as reasons and if so identify all specific incidents with dates, and identify all documents evidencing eachreason.

**ANSWER: In January 2024, a major customer of StratAir informed StratAir that it had decided to reduce the number of future cargo delivery flights that it would hire StratAir to unload. This was a major impact on StratAir's work in the near future and resulted in an immediate and significant decline in anticipated revenue. As a direct result of its customer's decision, StratAir had too many employees for the projected demand for its services. Given the significant reduction in work to be performed and the associated drop in revenue, StratAir made the reasonable business decision to reduce its workforce in January 2024. StratAir ultimately laid off twenty-eight (28) employees, including Plaintiff. When management considered employees to be included in the necessary layoff, it evaluated the warehouse and cargo handling workforce based on multiple factors, including relative job performance, disciplinary and attendance history, and the operational needs of the business. These factors were weighed holistically. As part of this process, Plaintiff was among those selected for inclusion in the reduction in force.**

3) Identify all persons who participated in the decision to terminate Plaintiff, state each person's specific role in the decision, state the date(s) they participated, describe what information they considered, and identify all documents they reviewed or created in connection with the decision.

**ANSWER: Gisela Barrera and Armando Portales Viera, in consultation with warehouse supervisors and their own observations, made the decision to recommend the termination of Plaintiff to Jorge Corral. StratAir's selection process involved multiple levels of review: supervisors provided performance observations based on direct knowledge of employees' work; Gisela Barrera and Armando Portales Viera reviewed this information along with their own observations and made recommendations; and Jorge Corral made the final termination decisions. StratAir made its layoff decisions based on legitimate, non-discriminatory business considerations, including assessments of employees' job performance, skills, and qualifications as observed in the ordinary course of business.**

4) State Plaintiff's official job title(s) and position classification(s) during his employment with Defendant, including: (a) each job title held; (b) the dates during which he held each title; (c) the department or division to which he was assigned; and (d) the shift(s) he regularly worked; and (e) identify all individuals who held a supervisory or managerial position over Plaintiff at any time during his employment, and for each such individual, state their full name, job title, and the dates during which they supervised Plaintiff.

**ANSWER: Plaintiff Pinto was hired by StratAir in July 2019 as a Warehouse Handler. Plaintiff's job duties involved unloading cargo containers from aircraft, unloading packages from cargo containers, sorting unloaded packages into gaylord boxes, loading gaylord boxes into trucks for subsequent delivery, along with the reverse process for unloading delivery trucks, sorting the cargo into containers for loading onto aircraft, and loading the cargo containers onto the aircraft. When StratAir's security guard was absent from work, Plaintiff would also fill in and work as a security guard watching a particular entrance. Plaintiff worked the day shift. Jose Alverio supervised Plaintiff.**

Docusign Envelope ID: 7360757E-1BAF-8CF4-82A7-EE928AB5E0B9

5) State whether Defendant contends that Plaintiff's position was eliminated and not refilled, and if so, state whether the job duties and functions previously performed by Plaintiff were reassigned to other employees or independent contractors and to whom, state whether any employee or contractor was hired or engaged to perform the same or substantially similar work after January 2024 and if so identify each such person with their age and start date, and state whether the total headcount of persons (employees plus contractors) performing warehouse, cargo, or security work at the Miami location decreased, remained the same, or increased following the January 2024 layoff.

**ANSWER: As a result of the significant reduction in anticipated cargo volume and associated revenue, StratAir reduced the number of employees assigned to warehouse and cargo handling functions. The reduction was a headcount reduction driven by decreased workload and revenue, not an elimination of job classifications. The reduced volume of work no longer required the same staffing levels that had previously been necessary. StratAir does not employ individual independent contractors; any non-employee personnel performing work at the Miami location were employed by third-party staffing agencies, not StratAir. Staffing agency engagements were also reduced during that time period.**

6) For each employee or independent contractor who was retained and held the same or similar position as Plaintiff, state their name, age, position, employment status (employee or contractor), supervisor(s), and the reason they were retained instead of terminated.

**ANSWER: Within three days of entry of a Confidentiality Order by the Court, StratAir will produce employee detail records from the relevant time period, which include both terminated and retained employees and contain each employee's name, position, age, race/ethnicity, and date of hire; for terminated employees, the records also include date of discharge. As it relates to employees who were retained, StratAir made its layoff decisions based on legitimate, non-discriminatory business considerations, including assessments of employees' job performance, skills, and qualifications as observed in the ordinary course of business. These factors were weighed holistically; no single criterion was determinative. Employees who were retained were those whom StratAir determined, based on this holistic evaluation, best met the company's operational needs following the reduction in anticipated cargo volume. Articulating individualized retention reasons for each of hundreds of retained employees would not be proportional to the needs of the case, as the same legitimate, non-discriminatory selection criteria applied across the workforce. As it relates to independent contractors, StratAir does not employ individual independent contractors; any non-employee personnel performing work at the Miami location were**

**employed by third-party staffing agencies, not StratAir. StratAir does not control the ages of workers assigned by staffing agencies.**

7) Identify all independent contractors, temporary workers, or staffing agency workers who performed warehouse work, cargo handling work, or security work at the Miami warehouse location from October 1, 2023 through March 31, 2024, state for each person their age (if known), start date, whether they were working as of January 13, 2024, whether they continued working after January 2024, and whether they were considered for termination as part of the January 2024 reduction in force.

**ANSWER: Objection. The Interrogatory seeks information that is not relevant to any claim or defense in this action. Plaintiffs' Amended Complaint does not mention independent contractors, temporary workers, or staffing agency workers. In addition, Plaintiffs' claims are not based on StratAir allegedly engaging non-employees after January 2024. Plaintiffs allege that "Defendant fired Plaintiffs and other older employees with more seniority, and retained younger employees with less seniority, to perform the same or similar jobs."** ***See*** **Amended Complaint, Paragraphs 51, 86. Therefore, whether contractors, temporary workers, or staffing agency workers were engaged either before or after the Plaintiffs were terminated have no bearing on Plaintiff's claims or any related defenses. Notwithstanding the foregoing objection, StratAir does not employ individual independent contractors; any independent contractors, temporary workers, or staffing agency workers performing work at the Miami location were employed by third-party staffing agencies, not StratAir. StratAir does not have employment records related to any temporary workers or staffing agency workers in its possession, custody, or control.**

8) State the specific reasons why Defendant contends Mr. Pinto Sumoza "worked unapproved" or was unable to perform cargo unloading work, state all facts supporting this contention, identify all specific incidents with dates and witnesses, state whether these alleged performance issues were documented in Mr. Pinto's personnel file before the January 2024 layoff decision, state who observed or reported these alleged issues, state whether Mr. Pinto was ever counseled or warned about these alleged issues before his termination, and identify all documents supporting this contention.

**ANSWER: Plaintiff received negative feedback on his work performance. Specifically, Plaintiff received a verbal warning for working overtime shifts without approval, which was a major violation of StratAir's policies. Additionally, Plaintiff was considered by management to be a lower performing Warehouse Handler because of his poor performance and inefficiency with respect to unloading cargo in the time frames expected by**

**management. StratAir reserves the right to supplement this response in accordance with Federal Rule of Civil Procedure 26(e).**

9) State the specific reasons why Defendant contends Mr. Pinto Sumoza "left his post while covering for security," state all facts supporting this contention, identify all specific incidents with dates and witnesses, state whether these alleged performance issues were documented in Mr. Pinto's personnel file before the January 2024 layoff decision, state who observed or reported these alleged issues, state whether Mr. Pinto was ever counseled or warned about these alleged issues before his termination, and identify all documents supporting this contention.

**ANSWER: Plaintiff received a verbal warning for leaving his post to chat with his coworkers during a shift that he filled in for the security guard. Given that his primary job duty during that shift was to stay at his post, this was considered a significant failure in Plaintiff's performance. StratAir reserves the right to supplement this response in accordance with Federal Rule of Civil Procedure 26(e).**

10) State the specific reasons why Defendant contends Mr. Pinto Sumoza "was not considered to be a strong performer," state all facts supporting this contention, identify all specific incidents with dates and witnesses, state whether these alleged performance issues were documented in Mr. Pinto's personnel file before the January 2024 layoff decision, state who observed or reported these alleged issues, state whether Mr. Pinto was ever counseled or warned about these alleged issues before his termination, and identify all documents supporting this contention.

**ANSWER: See response to Interrogatory 8 above.**

11) State whether Mr. Pinto Sumoza complained to StratAir's human resources department, his supervisors Mike, Jose (also known as "Bori"), or any other supervisor or manager on or about January 16, 2024 (after learning of his termination) that he believed he was being terminated because of his age, and if so, identify to whom he complained, state the date and time of each complaint, describe what Mr. Pinto said, identify all witnesses, state who responded to the complaint and what was said, state whether any investigation was conducted, state what action (if any) was taken in response, and identify all documents relating to such complaints.

**ANSWER: Plaintiff did not complain to StratAir's human resources department, his supervisors, or any other manager that he believed he was being**

**terminated because of his age. Because no such complaints were made, the remaining subparts of this Interrogatory are inapplicable.**

12) Identify all security guards, warehouse workers, or cargo handlers at the Miami location who had documented performance issues similar to those alleged regarding Mr. Pinto but were NOT selected for termination in the January 2024 layoff, and for each state their name, age, the nature of their performance issues, whether the issues were documented, and why they were retained despite documented issues.

ANSWER: **Hundreds of employees were retained across multiple departments and positions. StratAir does not maintain a centralized, searchable database of disciplinary history; accordingly, responding to this Interrogatory would require a manual review of hundreds of individual personnel files to identify whether any employee received any form of written warning, and then an individualized assessment of whether that warning involved conduct or performance issues that could be characterized as "same or similar" to the issues underlying Mr. Pinto's inclusion in the reduction in force—an inherently subjective determination. The burden of this undertaking is disproportionate to its probative value. StratAir made its layoff decisions based on legitimate, non-discriminatory business considerations, including assessments of employees' job performance, skills, and qualifications as observed in the ordinary course of business. The existence of a prior written warning was only one of numerous factors considered in the selection process, and the receipt of a warning, standing alone, did not determine whether any individual was selected for or retained following the reduction in force. The Interrogatory rests on the flawed premise that the receipt of a written warning and selection for the reduction in force are directly and causally linked, when in fact the decision-making process involved a comprehensive, holistic evaluation of business needs, job function, skills, performance history, and other legitimate, nondiscriminatory criteria. Accordingly, requiring StratAir to conduct a manual review of hundreds of personnel files to identify employees who received any arguably similar discipline but were retained would impose significant burden while yielding information of limited probative value. StratAir will supplement this response as required by Rule 26(e) of the Federal Rules of Civil Procedure.**

13) State whether Armando Portales Viera participated in both the decision to hire Mr. Pinto in 2022 and the decision to terminate Mr. Pinto in January 2024, and if so, describe his role in each decision, state what changed between 2022 (when he hired Mr. Pinto) and January 2024 (when he participated in terminating Mr. Pinto), state whether Armando raised any concerns about Mr. Pinto's age (75 years old) in connection with either decision, and identify all documents reflecting Armando's participation in both decisions.

ANSWER: **Armando Portales Viera may have participated in the decision to hire Plaintiff. Armando Portales participated in the selection of employees for the January 2024 layoff, which included Plaintiff. Neither Plaintiff's age nor the**

**ages of any other employees were raised or considered in connection with either decision.**

14) State whether Mr. Pinto's supervisor Jose (also known as "Bori") participated in both the decision to hire Mr. Pinto in 2022 and the decision to terminate Mr. Pinto in January 2024, and if so, describe his role in each decision, state what changed between 2022 (when he hired Mr. Pinto) and January 2024 (when he participated in terminating Mr. Pinto), state whether Armando raised any concerns about Mr. Pinto's age (75 years old) in connection with either decision, and identify all documents reflecting Armando's participation in both decisions.

ANSWER: **StratAir supervisors, including Jose Alverio, provided feedback regarding employees' job performance in the selection process for the January 2024 layoff. However, Mr. Alverio was not a decision-maker. StratAir notes that the latter portion of the Interrogatory references "Armando" and not Jose Alverio. However, StratAir states that concerns regarding Plaintiff Pinto's age were not raised in connection with either his hiring or inclusion in the layoff. Because Jose Alverio was not involved in the decision for the January 2024 layoff, the remaining subparts of this Interrogatory do not require a response.**

15) State all facts supporting Defendant's denial that Mr. Pinto was discriminated against based on his age (75 years old at termination), including all evidence Defendant contends demonstrates non-discriminatory reasons for his termination.

ANSWER: **See responses to Nos. 2 and 3 above.**

16) State whether Mr. Pinto's age (75 years old) was considered, discussed, or mentioned by any decision-maker in connection with his January 2024 termination, and if so, identify who considered, discussed, or mentioned it, state when and in what context, describe what was said, and identify all documents reflecting such consideration, discussion, or mention.

ANSWER: **Plaintiff's age was not considered, discussed, or mentioned by any decision-maker in connection with his January 2024 termination. Because no such statements were made, the remaining subparts of this Interrogatory do not require a response.**

17) Identify all security guards, warehouse workers, and cargo handlers employed or engaged at the Miami location from October 2023 through February 2024, and for each state their name, age, employment status (employee or contractor), whether they were selected for termination in the January 2024 layoff, and if terminated the stated reason for selection or if retained the stated reason for retention.

**ANSWER: Within three days of entry of a Confidentiality Order by the Court, StratAir will produce employee detail records from the relevant time period, which include both terminated and retained employees and contain each employee's name, position, age, race/ethnicity, and date of hire; for terminated employees, the records also include date of discharge. Articulating individualized selection or retention reasons for each employee is not proportional to the needs of the case; StratAir made its layoff decisions based on legitimate, non-discriminatory business considerations as described in response to No. 2 above, and the same selection criteria applied across the workforce. StratAir does not employ individual independent contractors; any non-employee personnel performing work at the Miami location were employed by third-party staffing agencies, not StratAir.**

18) State whether any independent contractors, temporary workers, or staffing agency workers were assigned to perform security, warehouse, or cargo handling work at the Miami location after Mr. Pinto's termination in January 2024, and if so, identify each such person, state their age, state their start date, and describe the work they performed.

**ANSWER: StratAir does not employ individual independent contractors; any non-employee personnel performing work at the Miami location were employed by third-party staffing agencies, not StratAir. StratAir does not control the ages of workers assigned by staffing agencies and did not direct staffing agencies to assign workers of any particular age. Staffing agency engagements were also reduced during that time period. StratAir does not have employment records related to any temporary workers or staffing agency workers in its possession, custody, or control.**

19) State whether the physical demands of Mr. Pinto's position(s) or his ability to meet those demands were considered or discussed in connection with the decision to terminate him in January 2024, and if so, identify who considered or discussed this, state when it was considered or discussed, describe what was said, state whether Mr. Pinto's age was mentioned in connection with physical demands, and identify all documents reflecting such consideration or discussion.

**ANSWER: Neither the "physical demands of Mr. Pinto's position(s)" nor "his ability to meet those demands" were considered or discussed in connection with the decision to terminate Plaintiff. Plaintiff's job performance was discussed. When management considered employees to be included in the necessary layoff, it evaluated the warehouse and cargo handling workforce**

**based on multiple factors, including relative job performance, disciplinary and attendance history, and the operational needs of the business. These factors were weighed holistically.**

20) Identify all training provided to supervisors or managers at the Miami location from January 2022 through January 2024 regarding age discrimination, the Age Discrimination in Employment Act (ADEA), how to conduct a reduction in force in compliance with employment laws, or documentation requirements for employment decisions, and for each training state the date, trainer, attendees, and identify all training materials.

ANSWER: **The Interrogatory is not proportional to the needs of this case. Neither the ADEA nor any other applicable law requires employers to provide specialized training on age discrimination or reductions in force as a prerequisite to making lawful employment decisions. The existence or nonexistence of such training is therefore not probative of whether StratAir's decision to include Plaintiff in the January 2024 reduction in force was motivated by discriminatory intent. The Interrogatory further seeks training records for supervisors and managers who had no involvement in the employment decisions at issue, over a two-year period that extends well beyond the time frame relevant to the January 2024 layoff. None of the decision-makers identified in this case—Gisela Barrera, Armando Portales Viera, or Jorge Corral—received formal training specific to age discrimination or reductions in force during the relevant period.**

Docusign Envelope ID: 7360757E-1BAF-8CF4-82A7-EE928AB5E0B9

Dated: July 2, 2026

**Nalani Alesia Gordon**
Roger W. Feicht (Florida Bar No. 84982)
rfeicht@gunster.com
lhagan@gunster.com
Nalani Alesia Gordon (Florida Bar No. 1010976)
ngordon@gunster.com
lmusco@gunster.com
GUNSTER YOAKLEY & STEWART, P.A.
777 S. Flagler Drive, Suite 500 East
West Palm Beach, FL 33401
Telephone: 561-655-1980
Counsel for Defendant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 2, 2026, a true and correct copy of the foregoing has been furnished by electronic mail to all parties on the Service List below.

**BRIAN H. POLLOCK, ESQ.**
brian@fairlawattorney.com
**P. BROOKS LAROU, ESQ.**
brooks@fairlawattorney.com
FAIRLAW FIRM
135 San Lorenzo Avenue
Suite 770
Coral Gables, Florida 33146
Counsel for Plaintiffs

/s/ Nalani Alesia Gordon
Nalani Alesia Gordon

ACTIVE:39942314.1

Docusign Envelope ID: 7360757E-1BAF-8CF4-82A7-EE928AB5E0B9

**VERIFICATION**

**I declare under penalty of perjury that the foregoing is true and correct. Executed on 7/2/2026_______________, 2026.**

STRATAIR AVIATION SERVICES LLC

Signed by:

Andres Gonzalez

(Signature)

By: Andres Gonzalez

As Its: _Manager & Vice President of Cargo

DocuSign Envelope ID: 2048B38A-2460-8D0C-8296-3998BEAEA787

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:25-CV-24505-MOORE/ELFENBEIN

IVAN GRANT,
ALEX LAFFITA ORTIZ,
HENRY PINTO SUMOZA,
EYONNY PRADO DURAN,
LUIS RODRIGUEZ CERUTO,
and LUIS SAME GONZALO,

Plaintiffs,

vs.

STRATAIR AVIATION
SERVICES, LLC,

Defendants.

_______________________________/

**DEFENDANT'S AMENDED RESPONSES TO PLAINTIFF IVAN GRANT'S FIRST SET OF INTERROGATORIES TO DEFENDANT**

Defendant, STRATAIR AVIATION SERVICES, LLC. ("StratAir"), by and through its undersigned counsel, hereby responds to Plaintiff IVAN GRANT's First Set of Interrogatories to Defendant under Certificate of Service dated March 18, 2026, by responding as follows:

**INTERROGATORIES**

1) Please identify each person answering or assisting in answering these interrogatories, and his/her relationship to StratAir, as well as his/her full name, date of birth, social security number, current residential address, and all positions and job titles each such person has held with StratAir during the past five years.

**ANSWER:** **Andres Gonzalez, Manager & Vice President of Cargo**
**c/o Roger W. Feicht, Esq.**
**Gunster, Yoakley & Stewart, P.A.**
**777 S. Flagler Drive, Suite 500 East**
**West Palm Beach, Florida 33401**
**561-655-1980**

**To the extent this request seeks additional information, StratAir objects to the request as seeking sensitive personal information (social security numbers, dates of birth, and home residential addresses) that is not relevant to any claim or defense in this action.**

2) State the date Defendant first determined that a layoff or reduction in force would occur at the Miami warehouse location, identify all persons who participated in or were consulted about this decision, describe the specific business need(s) or reason(s) for the decision, and identify all documents reflecting this decision.

**ANSWER:** **In January 2024, a major customer of StratAir informed StratAir that it had decided to reduce the number of future cargo delivery flights that it would hire StratAir to unload. This was a major impact on StratAir's work in the near future and resulted in an immediate and significant decline in anticipated revenue. As a direct result of its customer's decision, StratAir had too many employees for the projected demand for its services. Given the significant reduction in work to be performed and the associated drop in revenue, StratAir made the reasonable business decision to reduce its workforce in January 2024. StratAir ultimately laid off twenty-eight (28) employees, including Plaintiff. When management considered employees to be included in the necessary layoff, it evaluated the warehouse and cargo handling workforce based on multiple factors, including relative job performance, disciplinary and attendance history, and the operational needs of the business. These factors were weighed holistically. As part of this process, Plaintiff was among those selected for inclusion in the reduction in force.**

3) Describe in complete detail the process used to determine which positions would be eliminated and which employees would be selected for termination in the January 2024 layoff, identify who established and who applied any selection criteria, and identify all documents reflecting this process.

**ANSWER:** **In January 2024, a major customer of StratAir informed StratAir that it had decided to reduce the number of future cargo delivery flights that it would hire StratAir to unload. This was a major impact on StratAir's work in the near future and resulted in an immediate and significant decline in anticipated revenue. As a direct result of its customer's decision, StratAir had too many employees for the projected demand for its services. Given the significant reduction in work to be performed and the associated drop in revenue, StratAir made the reasonable business decision to reduce its workforce in January 2024. StratAir ultimately laid off twenty-eight (28) employees, including Plaintiff. StratAir's selection process involved multiple levels of review: supervisors provided performance observations based on direct knowledge of employees' work; Gisela Barrera and Armando Portales Viera reviewed this information along with their own observations and made recommendations; and Jorge Corral made the final termination decisions. StratAir made its layoff decisions based on legitimate, non-discriminatory business considerations, including assessments of employees' job performance, skills, and qualifications as observed in the ordinary course of business. When management considered employees to be included in the necessary layoff, it evaluated the warehouse and cargo handling workforce based on multiple factors, including relative job performance, disciplinary and attendance history, and the operational needs of the business. These factors were weighed holistically.**

4) Identify all criteria, factors, or considerations used to select employees for the January 2024 layoff, state the weight or importance given to each criterion, state whether age or any age-correlated factor (including years of service, seniority, length of employment, proximity to retirement, compensation level, salary, or wage rate) was considered directly or indirectly, and identify all documents reflecting the application of each criterion to any employee.

**ANSWER:** **See response to No. 3 above. StratAir's management considered multiple factors in the January 2024 reduction in force selection process, including relative job performance, disciplinary and attendance history, and the operational needs of the business. These factors were weighed holistically; no single criterion was determinative. In addition, age was not considered directly or indirectly. StratAir objects to the characterization of "age-correlated factors" as argumentative and also false (factors such as "years of service," "seniority," "length of employment," "compensation level," "salary," or "wage rate" are not connected to or impacted by age).**

DocuSign Envelope ID: 2048B38A-2460-8D6C-8296-3998BEAEA787

5) State the specific reason(s) why Plaintiff was selected for termination, state all facts supporting each reason, identify who identified or raised each reason, state whether performance or attendance issues were cited as reasons and if so identify all specific incidents with dates, and identify all documents evidencing each reason.

ANSWER: **During his short employment (approximately 18 months), Plaintiff Grant received negative feedback on his work performance and was subject to a written warning. On April 7, 2023, Plaintiff Grant received an Employee Warning Notice. Plaintiff Grant left his work area without first obtaining the necessary approval from his supervisor. Plaintiff Grant requested vacation time in November 2023, after StratAir's management had notified all employees that vacation/personal time off would not be approved because of peak season. Plaintiff Grant spoke to multiple supervisors to request time off. Plaintiff Grant took time off without approval. StratAir terminated his employment and subsequently re-hired him approximately seven days later. Additionally, when management considered employees to be included in the necessary layoff, Plaintiff Grant was selected because of his unsatisfactory performance in consistently and efficiently unloading cargo. StratAir will supplement this response as required by Rule 26(e) of the Federal Rules of Civil Procedure.**

6) Identify all persons who participated in the decision to terminate Plaintiff, state each person's specific role in the decision, state the date(s) they participated, describe what information they considered, and identify all documents they reviewed or created in connection with the decision.

ANSWER: **Gisela Barrera and Armando Portales Viera, in consultation with warehouse supervisors and their own observations, made the decision to recommend the termination of Plaintiff to Jorge Corral. Jorge Corral made the final termination decision. StratAir's selection process involved multiple levels of review: supervisors provided performance observations based on direct knowledge of employees' work; Gisela Barrera and Armando Portales Viera reviewed this information along with their own observations and made recommendations; and Jorge Corral made the final termination decisions. StratAir made its layoff decisions based on legitimate, non-discriminatory business considerations, including assessments of employees' job performance, skills, and qualifications as observed in the ordinary course of business.**

Docusign Envelope ID: 2048B38A-2460-8D6C-8296-3998BEAEA787

7) State Plaintiff's official job title(s) and position classification(s) during his employment with Defendant, including: (a) each job title held; (b) the dates during which he held each title; (c) the department or division to which he was assigned; and (d) the shift(s) he regularly worked; and (e) identify all individuals who held a supervisory or managerial position over Plaintiff at any time during his employment, and for each such individual, state their full name, job title, and the dates during which they supervised Plaintiff.

<u>ANSWER:</u> **Plaintiff Grant was hired by StratAir in July 2022 as a Warehouse Handler. Plaintiff's job duties involved unloading cargo containers from aircraft, unloading packages from cargo containers, sorting unloaded packages into gaylord boxes, loading gaylord boxes into trucks for subsequent delivery, along with the reverse process for unloading delivery trucks, sorting the cargo into containers for loading onto aircraft, and loading the cargo containers onto the aircraft. Armando Portales Viera was the operations manager for the day shift; Gisela Barrera was the operations manager for the night shift.**

8) State whether Defendant contends that Plaintiff's position was eliminated and not refilled, and if so, state whether the job duties and functions previously performed by Plaintiff were reassigned to other employees or independent contractors and to whom, state whether any employee or contractor was hired or engaged to perform the same or substantially similar work after January 2024 and if so identify each such person with their age, race, national origin, and start date, and state whether the total headcount of persons (employees plus contractors) performing warehouse or cargo handling work at the Miami location decreased, remained the same, or increased following the January 2024 layoff.

<u>ANSWER:</u> **As a result of the significant reduction in anticipated cargo volume and associated revenue, StratAir reduced the number of employees assigned to warehouse and cargo handling functions. The reduction was a headcount reduction driven by decreased workload and revenue, not an elimination of job classifications. The reduced volume of work no longer required the same staffing levels that had previously been necessary. StratAir does not employ individual independent contractors; any non-employee personnel performing work at the Miami location are engaged and employed by third-party staffing agencies. Staffing agency engagements were also reduced during that time period.**

9) For each employee or independent contractor who was retained and held the same or similar position as Plaintiff, state their name, age, race, national origin, position, employment status (employee or contractor), supervisor(s), and the reason they were retained instead of terminated.

**ANSWER:** **Within three days of entry of a Confidentiality Order by the Court, StratAir will produce employee detail records from the relevant time period, which include both terminated and retained employees and contain each employee's name, position, age, race/ethnicity, and date of hire; for terminated employees, the records also include date of discharge. As it relates to employees who were retained, StratAir made its layoff decisions based on legitimate, non-discriminatory business considerations, including assessments of employees' job performance, skills, and qualifications as observed in the ordinary course of business. These factors were weighed holistically; no single criterion was determinative. Employees who were retained were those whom StratAir determined, based on this holistic evaluation, best met the company's operational needs following the reduction in anticipated cargo volume. Articulating individualized retention reasons for hundreds of retained employees would not be proportional to the needs of the case, as the same legitimate, non-discriminatory selection criteria applied across the workforce. To the extent the request seeks information regarding the national origins of employees, StratAir does not track this information. As it relates to independent contractors, StratAir does not employ individual independent contractors; any non-employee personnel performing work at the Miami location were employed by third-party staffing agencies, not StratAir. StratAir does not control the ages of workers assigned by staffing agencies.**

10) Identify all independent contractors, temporary workers, or staffing agency workers who performed warehouse or cargo handling work at the Miami warehouse location from October 1, 2023 through March 31, 2024; state for each person their name, age, race, national origin, position, start date, whether they were working as of January 13, 2024, whether they continued working after January 2024, and whether they were considered for termination as part of the January 2024 reduction in force.

**ANSWER:** **StratAir does not employ individual independent contractors; any non-employee personnel performing work at the Miami location were employed by third-party staffing agencies, not StratAir. StratAir does not control the ages of workers assigned by staffing agencies and did not direct staffing agencies to assign workers of any particular age. Staffing agency engagements were also reduced during that time period. StratAir does not have employment records related to any temporary workers or staffing agency workers in its possession, custody, or control.**

11) State the specific reasons why Mr. Grant was terminated in November 2023, state all facts supporting each reason, identify who made the decision and when, identify all documents supporting the reasons, and explain why Mr. Grant was later reinstated.

**ANSWER: See response to No. 5 above.**

12) State the specific reasons why Mr. Grant was reinstated in November or December 2023, state all facts supporting the decision, identify who made the reinstatement decision, describe what circumstances changed between his termination and reinstatement, and identify all documents relating to the reinstatement.

**ANSWER: StratAir provided Plaintiff Grant another opportunity following his termination in November 2023 despite the fact that he took time off without approval. No circumstances changed between Plaintiff Grant's termination and reinstatement; StratAir elected to give him another chance. However, his prior conduct—including the unauthorized time off and the April 2023 written warning—remained part of his employment history and was considered in the January 2024 reduction in force decision.**

13) State whether Mr. Grant's November 2023 termination and subsequent reinstatement were considered or discussed in connection with the decision to terminate him in January 2024, and if so, identify who discussed or considered this, state when it was discussed, describe what was said or considered, state how it affected the January 2024 termination decision, and identify all documents reflecting such discussions.

**ANSWER: Plaintiff Grant's November 2023 termination and subsequent reinstatement were considered in connection with the decision to terminate him in January 2024. Plaintiff Grant's behavior of taking vacation/time off without approval was one of the reasons that he was selected for the RIF, in addition to his poor performance and the written disciplinary warning that he had received in April 2023.**

DocuSign Envelope ID: 2048B38A-2460-8D6C-8296-3998BEAEA787

14) Identify all Black employees who held warehouse handler, cargo handler, or similar positions at the Miami warehouse location from November 2023 through January 2024, and for each state their name, age, position, hire date, whether they were selected for termination in the January 2024 layoff, and if terminated the stated reason for selection or if retained the stated reason for retention.

**ANSWER:** **Within three days of entry of a Confidentiality Order by the Court, StratAir will produce employee detail records from the relevant time period, which include both terminated and retained employees and contain each employee's name, position, age, race/ethnicity, and date of hire; for terminated employees, the records also include date of discharge. The request seeks detailed personal information of non-party employees who are not involved in this litigation. To the extent the request seeks further information, StratAir objects. Information regarding employees prior to the time period of the RIF decision is not relevant to any claim or defense in this action.**

15) Identify all employees from the Virgin Islands or Puerto Rico who held warehouse handler, cargo handler, or similar positions at the Miami warehouse location from November 2023 through January 2024, and for each state their name, age, national origin, position, hire date, whether they were selected for termination in the January 2024 layoff, and if terminated the stated reason for selection or if retained the stated reason for retention.

**ANSWER:** **StratAir does not track the national origin of its employees and, therefore, has no responsive information.**

16) State the specific reasons why Mr. Grant received a written warning in April 2023, state who made the decision to issue the warning, state all facts supporting the warning, state whether the warning was considered in the January 2024 termination decision, and identify all documents relating to the April 2023 warning.

**ANSWER:** **See response to No. 5 above.**

DocuSign Envelope ID: 2048B38A-2460-8D6C-8296-3998BEAEA787

17) Identify all employees who received written warnings or discipline for the same or similar conduct or performance issues as Mr. Grant's April 2023 warning but were NOT terminated in the January 2024 layoff, and for each state their name, age, race, national origin, the nature of their conduct or performance issues, the date(s) of their warnings or discipline, and why they were retained despite documented issues.

**ANSWER: Hundreds of employees were retained across multiple departments and positions. StratAir does not maintain a centralized, searchable database of disciplinary history; accordingly, responding to this Interrogatory would require a manual review of hundreds of individual personnel files to identify whether any employee received any form of written warning, and then an individualized assessment of whether that warning involved conduct or performance issues that could be characterized as "same or similar" to the issues underlying Mr. Grant's April 2023 warning—an inherently subjective determination. The burden of this undertaking is disproportionate to its probative value. StratAir made its layoff decisions based on legitimate, non-discriminatory business considerations, including assessments of employees' job performance, skills, and qualifications as observed in the ordinary course of business. The existence of a prior written warning was only one of numerous factors considered in the selection process, and the receipt of a warning, standing alone, did not determine whether any individual was selected for or retained following the reduction in force. The Interrogatory rests on the flawed premise that the receipt of a written warning and selection for the reduction in force are directly and causally linked, when in fact the decision-making process involved a comprehensive, holistic evaluation of business needs, job function, skills, performance history, and other legitimate, nondiscriminatory criteria. Accordingly, requiring StratAir to conduct a manual review of hundreds of personnel files to identify employees who received any arguably similar discipline but were retained would impose significant burden while yielding information of limited probative value. StratAir will supplement this response as required by Rule 26(e) of the Federal Rules of Civil Procedure.**

18) State whether Armando Portales Viera participated in both the decision to hire Mr. Grant in 2022 and the decision to terminate Mr. Grant in January 2024, and if so, describe his specific role in each decision, state what changed between 2022 and January 2024 regarding Mr. Grant's qualifications or performance, and identify all documents reflecting Armando's participation in both decisions.

**ANSWER: See response to Nos. 5 and 6 above.**

19) State all facts supporting Defendant's denial that Mr. Grant was discriminated against based on his race (Black) or national origin (Virgin Islands), including all evidence Defendant contends demonstrates non-discriminatory reasons for his termination.

**ANSWER: See response to No. 5 above.**

DocuSign Envelope ID: 2048B38A-2460-8D6C-8296-3998BEAEA787

20) State whether any person involved in the decision to terminate Mr. Grant had any financial incentive, bonus structure, or compensation arrangement that would benefit from reducing employee headcount or reducing payroll costs, and if so, identify each such person, describe the financial incentive, and state whether such incentives were considered or discussed in connection with the January 2024 layoff.

**<u>ANSWER:</u> No person involved in the decision to terminate Plaintiff Grant had any financial incentive, bonus structure, or compensation arrangement that would benefit from reducing employee headcount or reducing payroll costs.**

21) Identify all complaints, charges, or allegations of race discrimination or national origin discrimination made by any employee or former employee against StratAir from January 2022 through the present, and for each state the complainant's name, the date, the allegations, the outcome, and what corrective action (if any) was taken.

**<u>ANSWER:</u> Objection. This Interrogatory seeks information about discrimination complaints by other employees involving different decision-makers, different supervisors, different departments, and wholly distinct factual circumstances from the January 2024 reduction in force at issue. The marginal relevance of unrelated complaints is substantially outweighed by the burden of compiling this information for a three-year period across all locations.**

22) State whether Mr. Grant's race or national origin were considered, discussed, or mentioned by any decision-maker in connection with his January 2024 termination, and if so, identify who considered, discussed, or mentioned it, state when and in what context, and identify all documents reflecting such consideration, discussion, or mention.

**<u>ANSWER:</u> Neither Plaintiff Grant's race nor national origin was considered, discussed, or mentioned by any decision-maker in connection with his January 2024 termination.**

23) Identify all employees or independent contractors hired or engaged to perform warehouse handling or cargo handling work at the Miami location from September 2023 through March 2024, and for each state their name, age, race, national origin, position, employment status (employee or contractor), start date, and the stated reason for the hire or engagement.

**ANSWER: Within three days of entry of a Confidentiality Order by the Court, StratAir will produce employee detail records from the relevant time period, which include each employee's name, position, age, race/ethnicity, and date of hire. To the extent the request seeks information regarding the national origins of employees, StratAir does not track this information. As it relates to independent contractors, StratAir does not employ individual independent contractors; any non-employee personnel performing work at the Miami location were employed by third-party staffing agencies, not StratAir. StratAir does not have employment records related to any temporary workers or staffing agency workers in its possession, custody, or control.**

Docusign Envelope ID: 2048B38A-2460-8D6C-8296-3998BEAEA787

Dated: July 2, 2026

**Nalani Alesia Gordon**
Roger W. Feicht (Florida Bar No. 84982)
rfeicht@gunster.com
lhagan@gunster.com
Nalani Alesia Gordon (Florida Bar No. 1010976)
ngordon@gunster.com
lmusco@gunster.com
GUNSTER YOAKLEY & STEWART, P.A.
777 S. Flagler Drive, Suite 500 East
West Palm Beach, FL 33401
Telephone: 561-655-1980
Counsel for Defendant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 2, 2026, a true and correct copy of the foregoing has been furnished by electronic mail to all parties on the Service List below.

**BRIAN H. POLLOCK, ESQ.**
brian@fairlawattorney.com
**P. BROOKS LAROU, ESQ.**
brooks@fairlawattorney.com
FAIRLAW FIRM
135 San Lorenzo Avenue
Suite 770
Coral Gables, Florida 33146
Counsel for Plaintiffs

*/s/ Nalani Alesia Gordon*
Nalani Alesia Gordon

ACTIVE:39938681.1

Docusign Envelope ID: 2048B38A-2460-8D6C-8296-3998BEAEA787

## VERIFICATION

**I declare under penalty of perjury that the foregoing is true and correct. Executed on 7/2/2026, 2026.**

STRATAIR AVIATION SERVICES LLC

Signed by:

Andres Gonzalez

318FAD89932445B...

(Signature)

By: Andres Gonzalez

As Its: _Manager & Vice President of Cargo

UNITED STATES DISTRICT COURT SOUTHERN
DISTRICT OF FLORIDA

CASE NO.: 1:25-CV-24505-MOORE/ELFENBEIN

IVAN GRANT,
ALEX LAFFITA ORTIZ,
HENRY PINTO SUMOZA,
EYONNY PRADO DURAN,
LUIS RODRIGUEZ CERUTO,
and LUIS SAME GONZALO,

Plaintiffs,

vs.

STRATAIR AVIATION
SERVICES, LLC,

Defendant.
_________________________________/

**DEFENDANT'S AMENDED RESPONSES TO PLAINTIFF LUIS RODRIGUEZ CERUTO'S FIRST SET OF INTERROGATORIES TO DEFENDANT**

Defendant, STRATAIR AVIATION SERVICES, LLC. ("StratAir"), by and through its undersigned counsel, hereby responds to Plaintiff LUIS RODRIGUEZ CERUTO's First Set of Interrogatories to Defendant under Certificate of Service dated March 18, 2026, by responding as follows:

# INTERROGATORIES

1) Please identify each person answering or assisting in answering these interrogatories, and his/her relationship to StratAir, as well as his/her full name, date of birth, social security number, current residential address, and all positions and job titles each such person has held with StratAir during the past five years.

**ANSWER: Andres Gonzalez, Manager & Vice President of Cargo**

**c/o Roger W. Feicht, Esq.
Gunster, Yoakley & Stewart, P.A.
777 S. Flagler Drive, Suite 500 East
West Palm Beach, Florida 33401
561-655-1980**

**To the extent this request seeks additional information, StratAir objects to the request as seeking sensitive personal information (social security numbers, dates of birth, and home residential addresses) that is not relevant to any claim or defense in this action.**

2) State the specific reason(s) why Plaintiff was selected for termination, state all facts supporting each reason, identify who identified or raised each reason, state whether performance or attendance issues were cited as reasons and if so identify all specific incidents with dates, and identify all documents evidencing each reason.

**ANSWER: In January 2024, a major customer of StratAir informed StratAir that it had decided to reduce the number of future cargo delivery flights that it would hire StratAir to unload. This was a major impact on StratAir's work in the near future and resulted in an immediate and significant decline in anticipated revenue. As a direct result of its customer's decision, StratAir had too many employees for the projected demand for its services. Given the significant reduction in work to be performed and the associated drop in revenue, StratAir made the reasonable business decision to reduce its workforce in January 2024. StratAir ultimately laid off twenty-eight (28) employees, including Plaintiff. When management considered employees to be included in the necessary layoff, it evaluated the warehouse and cargo handling workforce based on multiple factors, including relative job performance, disciplinary and attendance history, and the operational needs of the business. These factors were weighed holistically. As part of this process, Plaintiff was among those selected for inclusion in the reduction in force.**

3) Identify all persons who participated in the decision to terminate Plaintiff, state each person's specific role in the decision, state the date(s) they participated, describe what information they considered, and identify all documents they reviewed or created in connection with the decision.

**ANSWER: Gisela Barrera and Armando Portales Viera, in consultation with warehouse supervisors and their own observations, made the decision to recommend the termination of Plaintiff to Jorge Corral. Jorge Corral made the final termination decision. StratAir's selection process involved multiple levels of review: supervisors provided performance observations based on direct knowledge of employees' work; Gisela Barrera and Armando Portales Viera reviewed this information along with their own observations and made recommendations; and Jorge Corral made the final termination decisions. StratAir made its layoff decisions based on legitimate, non-discriminatory business considerations, including assessments of employees' job performance, skills, and qualifications as observed in the ordinary course of business.**

4) State Plaintiff's official job title(s) and position classification(s) during his employment with Defendant, including: (a) each job title held; (b) the dates during which he held each title; (c) the department or division to which he was assigned; and (d) the shift(s) he regularly worked; and (e) identify all individuals who held a supervisory or managerial position over Plaintiff at any time during his employment, and for each such individual, state their full name, job title, and the dates during which they supervised Plaintiff.

**ANSWER: Plaintiff was hired by StratAir in June 2022 as a Warehouse Handler. Plaintiff's job duties involved unloading cargo containers from aircraft, unloading packages from cargo containers, sorting unloaded packages into gaylord boxes, loading gaylord boxes into trucks for subsequent delivery, along with the reverse process for unloading delivery trucks, sorting the cargo into containers for loading onto aircraft, and loading the cargo containers onto the aircraft. Plaintiff worked the day shift, and his supervisor was Jose Alverio.**

5) State whether Defendant contends that Plaintiff's position was eliminated and not refilled, and if so, state whether the job duties and functions previously performed by Plaintiff were reassigned to other employees or independent contractors and to whom, state whether any employee or contractor was hired or engaged to perform the same or substantially similar work after January 2024 and if so identify each such person with their age and start date, and state whether the total headcount of persons (employees plus contractors) performing warehouse, cargo, or security work at the Miami location decreased, remained the same, or increased following the January 2024 layoff.

**ANSWER: As a result of the significant reduction in anticipated cargo volume and associated revenue, StratAir reduced the number of employees assigned to warehouse and cargo handling functions. The reduction was a headcount reduction driven by decreased workload and revenue, not an elimination of job classifications. The reduced**

**volume of work no longer required the same staffing levels that had previously been necessary. StratAir does not employ individual independent contractors; any non-employee personnel performing work at the Miami location are engaged and employed by third-party staffing agencies. Staffing agency engagements were also reduced during that time period.**

6) For each employee or independent contractor who was retained and held the same or similar position as Plaintiff, state their name, age, position, employment status (employee or contractor), supervisor(s), and the reason they were retained instead of terminated.

ANSWER: **Within three days of entry of a Confidentiality Order by the Court, StratAir will produce employee detail records from the relevant time period, which include both terminated and retained employees and contain each employee's name, position, age, race/ethnicity, and date of hire; for terminated employees, the records also include date of discharge. As it relates to employees who were retained, StratAir made its layoff decisions based on legitimate, non-discriminatory business considerations, including assessments of employees' job performance, skills, and qualifications as observed in the ordinary course of business. These factors were weighed holistically; no single criterion was determinative. Employees who were retained were those whom StratAir determined, based on this holistic evaluation, best met the company's operational needs following the reduction in anticipated cargo volume. Articulating individualized retention reasons for each of hundreds of retained employees would not be proportional to the needs of the case, as the same legitimate, non-discriminatory selection criteria applied across the workforce. As it relates to independent contractors, StratAir does not employ individual independent contractors; any non-employee personnel performing work at the Miami location were employed by third-party staffing agencies, not StratAir. StratAir does not control the ages of workers assigned by staffing agencies.**

7) State when Defendant first became aware that Mr. Rodriguez Ceruto's wife had been diagnosed with cancer or a serious health condition requiring medical treatment, state the specific date Defendant learned of the diagnosis, identify who at StratAir first learned of it, describe how Defendant became aware, identify who else at StratAir was informed and when each person was informed, and identify all documents reflecting Defendant's knowledge of his wife's condition.

ANSWER: **StratAir was not aware that Plaintiff Rodriguez Ceruto's wife had been diagnosed with cancer or a serious health condition requiring medical treatment. Plaintiff did disclose that his wife was sick, but StratAir was not aware of any details or seriousness of her condition. StratAir did not become aware of Plaintiff's wife's cancer diagnosis until after Plaintiff's termination. Because StratAir was not aware of the diagnosis, the remaining subparts of this Interrogatory do not require a response.**

8) Identify all requests for time off, schedule changes, or flexibility that Mr. Rodriguez Ceruto made from January 2023 through January 2024 to assist his wife with medical appointments or treatment, and for each request state the date of the request, to whom the request was made, the reason given for the request, whether the request was granted or denied, if denied the reason for denial, who made the decision to grant or deny the request, and identify all documents relating to each request.

**ANSWER: StratAir does not have records of Plaintiff requesting time off for his wife's medical condition, appointments or treatment. However, Plaintiff's time-off requests were granted.**

9) State whether Defendant required Mr. Rodriguez Ceruto to provide a doctor's note or medical documentation for his time-off requests related to his wife's medical condition, and if so, state when this requirement was imposed, identify who imposed the requirement, state the reason for imposing this requirement, state whether Mr. Ceruto complied with the requirement, state Defendant's policy regarding when doctor's notes are required for time-off requests, and identify all documents reflecting this requirement.

**ANSWER: Plaintiff did not notify StratAir of any serious health condition of his wife. Therefore, the remaining subparts of this Interrogatory do not require a response. StratAir does not have records of Plaintiff requesting time off for his wife's medical condition. As it relates to medical documentation, StratAir's Leaves of Absence policies, including Personal Leave and Family and Medical Leave policies require employees to submit medical certifications. StratAir objects to the extent this Interrogatory assumes that StratAir maintained a practice of selectively requiring or waiving medical documentation for employee time-off requests, or that any such practice was applied in a manner related to age, disability, or the exercise of FMLA rights. StratAir does not, by responding or objecting to this Interrogatory, concede any such facts.**

10) Identify all employees at the Miami warehouse location from January 2023 through January 2024 who requested time off for personal or family medical reasons and were NOT required to provide a doctor's note or medical documentation, and for each state their name, age, position, the reason for their time-off request (if known), whether they were under age 40, whether they were selected for termination in the January 2024 layoff, and the reason they were not required to provide medical documentation.

ANSWER: **Hundreds of employees were retained across multiple departments and positions. StratAir does not maintain a centralized, searchable database of time-off requests or medical documentation requirements; accordingly, responding to this Interrogatory would require a manual review of all employee time records and personnel files to identify whether any employee requested time off for personal or family medical reasons, and whether documentation was required or provided. The**

**burden of this undertaking is disproportionate to its probative value. StratAir applied its Leaves of Absence policies, including its Personal Leave and Family and Medical Leave policies, uniformly to all employees. Whether medical documentation was required for any given time-off request depended on the nature, duration, and circumstances of the absence as evaluated under applicable company policies, not on any employee's age, disability status, or association with a person with a disability. StratAir objects to the extent the Interrogatory rests on the flawed premise that the requirement (or non-requirement) of medical documentation and selection for the reduction in force are directly and causally linked, when in fact the decision-making process for the January 2024 reduction in force involved a comprehensive, holistic evaluation of business needs, job function, skills, performance history, and other legitimate, nondiscriminatory criteria. StratAir will supplement this response as required by Rule 26(e) of the Federal Rules of Civil Procedure.**

11) State whether any supervisor or manager employed by StratAir told Mr. Rodriguez Ceruto that his requests for time off or his absences created "too much work" for others or imposed a burden on operations, and if so, identify who made each statement, state when each statement was made, state the exact words used, identify all witnesses, state Defendant's position regarding whether such statements were made, and identify all documents relating to such statements.

**ANSWER: No supervisor or manager employed by StratAir told Plaintiff that "his requests for time off or his absences created 'too much work' for others or imposed a burden on operations." Because no such statements were made, no response is required or possible for the remaining subparts of this Interrogatory.**

12) State whether Defendant determined that Mr. Rodriguez Ceruto was eligible for leave under the Family and Medical Leave Act (FMLA) based on his wife's serious health condition, and if so, state when this determination was made, identify who made the determination, state whether Mr. Ceruto was notified of his FMLA eligibility, state when and how he was notified if he was notified or explain why not if he was not notified, state whether any of his absences were designated as FMLA leave, and identify all documents relating to FMLA eligibility determinations for Mr. Ceruto.

**ANSWER: Plaintiff did not disclose any cancer diagnosis or serious health condition of his wife to StratAir. Because no such disclosure was made, no response is possible or required for the remaining subparts of this Interrogatory.**

DocuSign Envelope ID: 5E75509F-AF42-896B-8351-0F761D8BE012

13) State whether Defendant provided Mr. Rodriguez Ceruto with written notice of his rights under the FMLA, and if so, state when the notice was provided, describe the form of notice, identify who provided the notice, and identify all documents constituting or reflecting the notice provided, or if no notice was provided explain why not and state Defendant's policy regarding when and how FMLA notices must be provided.

**ANSWER: See response to Interrogatory No. 12 above.**

14) State whether Mr. Rodriguez Ceruto's requests for time off, his absences, or his wife's medical condition were considered, discussed, or mentioned in connection with the decision to terminate him in January 2024, and if so, identify who considered, discussed, or mentioned it, state when it was considered, discussed, or mentioned, describe what was said, state how it affected the termination decision, and identify all documents reflecting such consideration, discussion, or mention.

**ANSWER: StratAir was not aware of Plaintiff's wife's medical condition prior to Plaintiff's termination. To the extent that Plaintiff's absences, which were not for his wife's medical condition according to Plaintiff's own text messages to his supervisor, resulted in Plaintiff receiving a written warning for excessive absenteeism, this documented attendance deficiency was considered in StratAir's evaluation of Plaintiff's overall performance.**

15) State whether Defendant considered designating any of Mr. Rodriguez Ceruto's absences in 2023 or 2024 as FMLA-qualifying leave, and if so, state when this was considered, identify who considered it, state what decision was made, state the reasons for the decision, state whether Mr. Ceruto was notified of the decision, and identify all documents relating to this consideration.

**ANSWER: See response to Interrogatory No. 12 above.**

16) Identify all employees at the Miami warehouse location who were granted FMLA leave, had leave designated as FMLA leave, or requested time off for family medical reasons from January 2023 through January 2024, and for each state their name, age, position, the nature of the medical situation (if known), whether FMLA leave was granted, whether they were selected for termination in the January 2024 layoff, and if terminated the stated reason for selection.

**ANSWER: Hundreds of employees were retained across multiple departments and positions. StratAir does not maintain a centralized, searchable database of FMLA leave requests or designations; accordingly, responding to this Interrogatory would require a manual review of personnel files and leave records for the entire Miami warehouse workforce to identify whether any employee was granted FMLA leave, had leave designated as FMLA leave, or requested time off for family medical reasons. The**

Docusign Envelope ID: 5E75509F-AF42-896B-8351-0F761D8BE012

**burden of this undertaking is disproportionate to its probative value. StratAir made its layoff decisions based on legitimate, non-discriminatory business considerations, including assessments of employees' job performance, skills, and qualifications as observed in the ordinary course of business. The decision-making process for the January 2024 reduction in force involved a comprehensive, holistic evaluation of business needs, job function, skills, performance history, and other legitimate, nondiscriminatory criteria—not any**

**employee's FMLA leave activity or family medical circumstances. StratAir will supplement this response as required by Rule 26(e) of the Federal Rules of Civil Procedure.**

17) State all facts supporting Defendant's denial that Mr. Rodriguez Ceruto was discriminated against based on his association with a person with a disability (his wife's cancer), including all evidence Defendant contends demonstrates non-discriminatory reasons for his termination.

**ANSWER: See response to No. 2 above. StratAir will supplement its response in accordance with Federal Rule of Civil Procedure 26.**

18) State all facts supporting Defendant's denial that Mr. Rodriguez Ceruto's termination violated the Family and Medical Leave Act, including all facts supporting any contention that Mr. Ceruto was not FMLA-eligible, all facts supporting any contention that his wife's condition did not qualify as a serious health condition, all facts supporting any contention that his termination was unrelated to his FMLA requests or his wife's condition, and all evidence Defendant contends demonstrates the termination would have occurred regardless of his FMLA activity.

**ANSWER: See response to No. 2 above. StratAir will supplement its response in accordance with Federal Rule of Civil Procedure 26.**

19) State whether Mr. Rodriguez Ceruto requested any accommodation or assistance from StratAir related to his wife's serious health condition, and if so, describe each request, state when each request was made and to whom, state whether each request was granted or denied, if denied state the reason for denial, identify who made each decision, and identify all documents relating to such requests.

**ANSWER: See response to Interrogatory No. 12 above.**

Dated: July 2, 2026

**Nalani Alesia Gordon**
Roger W. Feicht (Florida Bar No. 84982)
rfeicht@gunster.com
lhagan@gunster.com
Nalani Alesia Gordon (Florida Bar No. 1010976)
ngordon@gunster.com
lmusco@gunster.com
GUNSTER YOAKLEY & STEWART, P.A.
777 S. Flagler Drive, Suite 500 East
West Palm Beach, FL 33401
Telephone: 561-655-1980
Counsel for Defendant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 2, 2026, a true and correct copy of the foregoing has been furnished by electronic mail to all parties on the Service List below.

**BRIAN H. POLLOCK, ESQ.**
brian@fairlawattorney.com
**P. BROOKS LAROU, ESQ.**
brooks@fairlawattorney.com
FAIRLAW FIRM
135 San Lorenzo Avenue
Suite 770
Coral Gables, Florida 33146
Counsel for Plaintiffs

/s/ Nalani Alesia Gordon
Nalani Alesia Gordon

ACTIVE:39942442.1

Docusign Envelope ID: 5E75509F-AF42-896B-8351-0F761D8BE012

# VERIFICATION

**I declare under penalty of perjury that the foregoing is true and correct. Executed on 7/2/2026 ________________, 2026.**

STRATAIR AVIATION SERVICES LLC

Signed by:

Andres Gonzalez

(Signature) 8185D8983445B...

By: Andres Gonzalez

As Its: _Manager & Vice President of Cargo

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:25-CV-24505-MOORE/ELFENBEIN

IVAN GRANT,
ALEX LAFFITA ORTIZ,
HENRY PINTO SUMOZA,
EYONNY PRADO DURAN,
LUIS RODRIGUEZ CERUTO,
and LUIS SAME GONZALO,

Plaintiffs,

vs.

STRATAIR AVIATION
SERVICES, LLC,

Defendants.

_______________________________/

**DEFENDANT'S AMENDED RESPONSES TO PLAINTIFF LUIS SAME GONZALO'S FIRST SET OF INTERROGATORIES TO DEFENDANT**

Defendant, STRATAIR AVIATION SERVICES, LLC. ("StratAir"), by and through its undersigned counsel, hereby responds to Plaintiff LUIS SAME GONZALO's First Set of Interrogatories to Defendant under Certificate of Service dated March 18, 2026, by responding as follows:

## INTERROGATORIES

1) Please identify each person answering or assisting in answering these interrogatories, and his/her relationship to StratAir, as well as his/her full name, date of birth, social security number, current residential address, and all positions and job titles each such person has held with StratAir during the past five years.

ANSWER: **Andres Gonzalez, Manager & Vice President of Cargo**

**c/o Roger W. Feicht, Esq.**
**Gunster, Yoakley & Stewart, P.A.**
**777 S. Flagler Drive, Suite 500 East**
**West Palm Beach, Florida 33401**
**561-655-1980**

**To the extent this request seeks additional information, StratAir objects to the request as seeking sensitive personal information (social security numbers, dates of birth, and home residential addresses) that is not relevant to any claim or defense in this action.**

2) State the specific reason(s) why Plaintiff was selected for termination, state all facts supporting each reason, identify who identified or raised each reason, state whether performance or attendance issues were cited as reasons and if so identify all specific incidents with dates, and identify all documents evidencing each reason.

ANSWER: **In January 2024, a major customer of StratAir informed StratAir that it had decided to reduce the number of future cargo delivery flights that it would hire StratAir to unload. This was a major impact on StratAir's work in the near future and resulted in an immediate and significant decline in anticipated revenue. As a direct result of its customer's decision, StratAir had too many employees for the projected demand for its services. Given the significant reduction in work to be performed and the associated drop in revenue, StratAir made the reasonable business decision to reduce its workforce in January 2024. StratAir ultimately laid off twenty-eight (28) employees, including Plaintiff. When management considered employees to be included in the necessary layoff, it evaluated the warehouse and cargo handling workforce based on multiple factors, including relative job performance, disciplinary and attendance history, and the operational needs of the business. These factors were weighed holistically. As part of this process, Plaintiff was among those selected for inclusion in the reduction in force.**

Docusign Envelope ID: 3781A4CA-A6DA-8CA5-8354-7CC62DEFEA91

3) State Plaintiff's official job title(s) and position classification(s) during his employment with Defendant, including: (a) each job title held; (b) the dates during which he held each title; (c) the department or division to which he was assigned; and (d) the shift(s) he regularly worked; and (e) identify all individuals who held a supervisory or managerial position over Plaintiff at any time during his employment, and for each such individual, state their full name, job title, and the dates during which they supervised Plaintiff.

ANSWER: **Plaintiff was hired by StratAir in September 2022 initially as a security guard. However, Plaintiff was quickly transitioned to work as a Warehouse Handler. Plaintiff's job duties involved unloading cargo containers from aircraft, unloading packages from cargo containers, sorting unloaded packages into gaylord boxes, loading gaylord boxes into trucks for subsequent delivery, along with the reverse process for unloading delivery trucks, sorting the cargo into containers for loading onto aircraft, and loading the cargo containers onto the aircraft.**

4) Identify all persons who participated in the decision to terminate Plaintiff, state each person's specific role in the decision, state the date(s) they participated, describe what information they considered, and identify all documents they reviewed or created in connection with the decision.

ANSWER: **Gisela Barrera and Armando Portales Viera, in consultation with warehouse supervisors and their own observations, made the decision to recommend the termination of Plaintiff to Jorge Corral. Jorge Corral made the final termination decision. StratAir's selection process involved multiple levels of review: supervisors provided performance observations based on direct knowledge of employees' work; Gisela Barrera and Armando Portales Viera reviewed this information along with their own observations and made recommendations; and Jorge Corral made the final termination decisions. StratAir made its layoff decisions based on legitimate, non-discriminatory business considerations, including assessments of employees' job performance, skills, and qualifications as observed in the ordinary course of business.**

5) State whether Defendant contends that Plaintiff's position was eliminated and not refilled, and if so, state whether the job duties and functions previously performed by Plaintiff were reassigned to other employees or independent contractors and to whom, state whether any employee or contractor was hired or engaged to perform the same or substantially similar work after January 2024 and if so identify each such person with their age and start date, and state whether the total headcount of persons (employees plus contractors) performing warehouse, cargo, or security work at the Miami location decreased, remained the same, or increased following the January 2024 layoff.

ANSWER: **As a result of the significant reduction in anticipated cargo volume and associated revenue, StratAir reduced the number of employees assigned to**

**warehouse and cargo handling functions. The reduction was a headcount reduction driven by decreased workload and revenue, not an elimination of job classifications. The reduced volume of work no longer required the same staffing levels that had previously been necessary. StratAir does not employ individual independent contractors; any independent contractors, temporary workers, or staffing agency workers performing work at the Miami location were employed by third-party staffing agencies, not StratAir. Staffing agency engagements were also reduced during that time period.**

6) For each employee or independent contractor who was retained and held the same or similar position as Plaintiff, state their name, age, position, employment status (employee or contractor), supervisor(s), and the reason they were retained instead of terminated.

ANSWER: **Within three days of entry of a Confidentiality Order by the Court, StratAir will produce employee detail records from the relevant time period, which include both terminated and retained employees and contain each employee's name, position, age, race/ethnicity, and date of hire; for terminated employees, the records also include date of discharge. As it relates to employees who were retained, StratAir made its layoff decisions based on legitimate, non-discriminatory business considerations, including assessments of employees' job performance, skills, and qualifications as observed in the ordinary course of business. These factors were weighed holistically; no single criterion was determinative. Employees who were retained were those whom StratAir determined, based on this holistic evaluation, best met the company's operational needs following the reduction in anticipated cargo volume. Articulating individualized retention reasons for hundreds of retained employees would not be proportional to the needs of the case, as the same legitimate, non-discriminatory selection criteria applied across the workforce. To the extent the request seeks information regarding the national origins of employees, StratAir does not track this information. As it relates to independent contractors, StratAir does not employ individual independent contractors; any independent contractors, temporary workers, or staffing agency workers performing work at the Miami location were employed by third-party staffing agencies, not StratAir. StratAir does not control the ages of workers assigned by staffing agencies.**

7) State the specific reasons why Mr. Same Gonzalo was transferred from a Security Guard position to a Warehouse Handler position, identify who made the decision, state when the decision was made, state all facts supporting the decision, state whether the transfer was at Mr. Same's request, state whether the transfer resulted in any change in pay, benefits, or working conditions, and identify all documents relating to this transfer.

ANSWER: **Plaintiff Same testified at his deposition as follows: "Well, I was there for about five months, approximately, and then an employee, a female employee from Miami-Dade County told me in Spanish to be careful because**

Docusign Envelope ID: 3781A4CA-A6DA-8CA5-8354-7CC62DEFEA91

**people were stealing things, they were stealing packages and other things. So I got scared and I spoke with the supervisor to see if he can move me to a regular working in [sic] -- as production worker, not security." To the extent the Interrogatory incorrectly assumes that Plaintiff was involuntarily transferred from a Security Guard position to a Warehouse Handler position, StratAir objects. Because Plaintiff was not transferred, no response is possible or required for the remaining subparts of this Interrogatory.**

8) State the specific reasons why Defendant contends Mr. Same Gonzalo had "unsatisfactory job performance," state all facts supporting this contention, identify all specific incidents with dates and witnesses, state whether these alleged performance issues were documented in Mr. Same Gonzalo's personnel file before the January 2024 layoff decision, state who observed or reported these alleged issues, state whether Mr. Pinto was ever counseled or warned about these alleged issues before his termination, and identify all documents supporting this contention.

**ANSWER: See response to Interrogatory No. 4 above. StratAir reserves the right to supplement this response in accordance with Federal Rule of Civil Procedure 26(e). StratAir also notes that the Interrogatory references "Mr. Pinto," but StratAir's answer refers to Plaintiff Same Gonzalo only.**

9) State whether Defendant conducted any "investigation" into Mr. Same Gonzalo's work performance, conduct, or suitability for continued employment, and if so, state when the investigation occurred, describe the scope and nature of the investigation, state what prompted the investigation, state the findings of the investigation, state what action was taken based on the findings, state whether the investigation results were considered in the January 2024 termination decision, and identify all documents relating to the investigation.

**ANSWER: StratAir's supervisors continuously monitored all employees' performance on a daily basis, including Plaintiff's, to ensure efficiency of operations. Plaintiff had only been employed with StratAir for about fourteen months when the January 2024 layoff occurred. During his short employment, Plaintiff's performance in consistently and efficiently unloading cargo was unsatisfactory. Because Plaintiff was not considered a strong performer, he was selected by StratAir's management as one of the employees subject to the layoff.**

Docusign Envelope ID: 3781A4CA-A6DA-8CA5-8354-7CC62DEFEA91

10) Describe in detail all interactions between Mr. Same Gonzalo and Defendant's human resources personnel following his termination notification, state the date(s) of the interaction, identify who from HR spoke with Mr. Same, describe what was discussed, state whether Mr. Same raised any concerns about age discrimination, state what response was provided if concerns were raised, state whether any investigation was conducted as a result, and identify all documents relating to this interaction.

**ANSWER: Plaintiff did not speak with human resources personnel following his termination. Because no such "interactions" occurred, no response is possible or required for the remaining subparts of this Interrogatory.**

11) State the specific role Gisela Barrera played (if any) in the decision to terminate Mr. Same Gonzalo, state whether she recommended his termination, state whether she participated in evaluating him for the layoff, state whether she was consulted about the decision, describe what information she provided about Mr. Same to decision-makers, state whether she raised any concerns about his age, and identify all documents reflecting her role.

**ANSWER: Gisela Barrera, as operations manager, participated in evaluating Plaintiff for the layoff and recommended his termination. Together with Armando Portales Viera, in consultation with warehouse supervisors and based on their own observations, Ms. Barrera made the decision to recommend the termination of Plaintiff to Jorge Corral. Ms. Barrera provided performance observations regarding Plaintiff to the decision-makers. Ms. Barrera did not raise any concerns about Plaintiff's age. StratAir made its layoff decisions based on legitimate, non-discriminatory business considerations, including assessments of employees' job performance, skills, and qualifications as observed in the ordinary course of business.**

12) Identify all warehouse handlers or security guards who had performance or conduct issues similar to or more serious than any alleged issues regarding Mr. Same but were NOT selected for termination in the January 2024 layoff, and for each state their name, age, the nature of their issues, whether the issues were documented, and why they were retained despite documented issues.

**ANSWER: Hundreds of employees were retained across multiple departments and positions. StratAir does not maintain a centralized, searchable database of disciplinary history; accordingly, responding to this Interrogatory would require a manual review of hundreds of individual personnel files to identify whether any employee received any form of written warning, and then an individualized assessment of whether that warning involved conduct or performance issues that could be characterized as "similar to or more serious" than the issues underlying Mr. Same Gonzalo's inclusion in the reduction in force—an inherently subjective determination. The burden of this undertaking is disproportionate to its probative value. StratAir made its layoff decisions based on legitimate, non-discriminatory business considerations, including assessments of employees' job performance, skills, and qualifications as observed in the ordinary course of business. The existence of a**

Docusign Envelope ID: 3781A4CA-A6DA-8CA5-8354-7CC62DEFEA91

**prior written warning was only one of numerous factors considered in the selection process, and the receipt of a warning, standing alone, did not determine whether any individual was selected for or retained following the reduction in force. The Interrogatory rests on the flawed premise that the receipt of a written warning and selection for the reduction in force are directly and causally linked, when in fact the decision-making process involved a comprehensive, holistic evaluation of business needs, job function, skills, performance history, and other legitimate, nondiscriminatory criteria. Accordingly, requiring StratAir to conduct a manual review of hundreds of personnel files to identify employees who received any arguably similar discipline but were retained would impose significant burden while yielding information of limited probative value.**

13) State all facts supporting Defendant's denial that Mr. Same was discriminated against based on his age, including all evidence Defendant contends demonstrates non-discriminatory reasons for his termination.

**ANSWER: See response to Interrogatory No. 2 above.**

14) State whether Mr. Same's transfer from Security Guard to Warehouse Handler in 2023 was considered or discussed in connection with the decision to terminate him in January 2024, and if so, identify who considered or discussed this, state when it was considered or discussed, describe what was said, explain how the prior transfer affected the termination decision, and identify all documents reflecting such consideration or discussion.

**ANSWER: StratAir objects to this request because it assumes facts; specifically, that Plaintiff was transferred from Security Guard to Warehouse Handler in 2023. Plaintiff testified that he requested to change positions from Security Guard to Warehouse Handler. To the extent that the Interrogatory is based**

**on this incorrect premise, no response is possible or required for the remaining subparts of this Interrogatory.**

15) State whether Mr. Same Gonzalo's transfer from Security Guard to Warehouse Handler was undertaken as preparation for or in anticipation of Mr. Same's eventual termination, and if so, state all facts supporting this, identify who made the decision to transfer him and whether termination was discussed at that time, and identify all documents reflecting the purpose or rationale for the transfer.

**ANSWER: See response to No. 7 above.**

16) Identify all security guards employed or engaged at the Miami location from November 2023 through January 2024, and for each state their name, age, employment status (employee or contractor), whether they were selected for termination in the January 2024 layoff, and if terminated the stated reason for selection or if retained the stated reason for retention.

**ANSWER: Within three days of entry of a Confidentiality Order by the Court, StratAir will produce employee detail records from the relevant time period, which include both terminated and retained employees and contain each employee's name, position, age, race/ethnicity, and date of hire; for terminated employees, the records also include date of discharge. The request seeks detailed personal information of non-party employees who are not involved in this litigation. To the extent the request seeks further information, StratAir objects. Information regarding employees prior to the time period of the RIF decision is not relevant to any claim or defense in this action. As it relates to independent contractors, StratAir does not employ individual independent contractors; any independent contractors, temporary workers, or staffing agency workers performing work at the Miami location were employed by third-party staffing agencies, not StratAir. StratAir does not control the ages of workers assigned by staffing agencies.**

17) State whether any independent contractors, temporary workers, or staffing agency workers were assigned to perform warehouse, cargo handling, or security work after his termination in January 2024, and if so, identify each such person, state their age, state their start date, state which type of work they performed (warehouse or security), and describe their job duties.

**ANSWER: StratAir does not employ individual independent contractors; any independent contractors, temporary workers, or staffing agency workers performing work at the Miami location were employed by third-party staffing agencies, not StratAir. StratAir does not control the ages of workers assigned by staffing agencies and did not direct staffing agencies to assign workers of any particular age. Staffing agency engagements were also reduced during that time period. StratAir does not have employment records related to any**

Docusign Envelope ID: 3781A4CA-A6DA-8CA5-8354-7CC62DEFEA91

**temporary workers or staffing agency workers in its possession, custody, or control.**

18) State whether Mr. Same Gonzalo's supervisor Javier reported to Gisela Barrera about Mr. Same Gonzalo, and if so, describe what Javier reported, state when such reports were made, state whether Javier's reports influenced the decision to terminate Mr. Same, and identify all documents reflecting Javier's reports or communications about Mr. Same.

ANSWER: **Supervisor Javier, as with the other StratAir supervisors, provided input regarding employees' performance prior to the January 2024 layoff decision. Supervisors observed the daily performance (i.e., consistency and efficiency in unloading cargo) daily to ensure efficient operations.**

19) Identify all employees who were transferred from one position to another (such as from Security Guard to Warehouse Handler or vice versa) in 2023 at the Miami location, and for each state their name, age, the positions they transferred from and to, the date of transfer, the reason for the transfer, whether they were selected for termination in the January 2024 layoff, and if terminated the stated reason for selection or if retained the stated reason for retention.

ANSWER: **Given Plaintiff's testimony (see response to Interrogatory No. 7 above), information regarding employees "who were transferred from one position to another" has no bearing on any claim or defense in this action. Plaintiff requested to be moved from Security Guard to Warehouse Handler. In addition, the request is overbroad and unduly burdensome in that it seeks detailed personal and employment information for potentially hundreds of employees across the entire company. StratAir would be required to do a manual check of all records, which would impose a significant burden on StratAir's human resources department and would yield irrelevant information. To the extent the request seeks personal and confidential information regarding non-party employees, including names, StratAir objects. Also, the phrase "from one position to another" is so broad that it potentially covers positions that have nothing to do with the positions held (voluntarily) by Plaintiff.**

Dated: July 2, 2026

**Nalani Alesia Gordon**
Roger W. Feicht (Florida Bar No. 84982)
rfeicht@gunster.com and lhagan@gunster.com
Nalani Alesia Gordon (Florida Bar No. 1010976)
ngordon@gunster.com and lmusco@gunster.com
GUNSTER YOAKLEY & STEWART, P.A.
777 S. Flagler Drive, Suite 500 East
West Palm Beach, FL 33401
Telephone: 561-655-1980
*Counsel for Defendant*

Docusign Envelope ID: 3781A4CA-A6DA-8CA5-8354-7CC62DEFEA91

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 2, 2026, a true and correct copy of the foregoing has been furnished by electronic mail to all parties on the Service List below.

**BRIAN H. POLLOCK, ESQ.**
brian@fairlawattorney.com
**P. BROOKS LAROU, ESQ.**
brooks@fairlawattorney.com
FAIRLAW FIRM
135 San Lorenzo Avenue
Suite 770
Coral Gables, Florida 33146
*Counsel for Plaintiffs*

*/s/ Nalani Alesia Gordon*
Nalani Alesia Gordon

ACTIVE:39942453.1

Docusign Envelope ID: 3781A4CA-A6DA-8CA5-8354-7CC62DEFEA91

**VERIFICATION**

**I declare under penalty of perjury that the foregoing is true and correct. Executed on 7/2/2026________________, 2026.**

STRATAIR AVIATION SERVICES LLC

Signed by:

Andres Gonzalez

318FAD89932445B...

(Signature)

By: Andres Gonzalez

As Its: _Manager & Vice President of Cargo