UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:25-CV-24505-MOORE/ELFENBEIN

IVAN GRANT,
ALEX LAFFITA ORTIZ,
HENRY PINTO SUMOZA,
EYONNY PRADO DURAN,
LUIS RODRIGUEZ CERUTO,
and LUIS SAME GONZALO,

Plaintiffs,

vs.

STRATAIR AVIATION
SERVICES, LLC,

Defendant.
_______________________________/

**DEFENDANT'S AMENDED RESPONSES TO PLAINTIFFS' FIRST REQUESTS FOR PRODUCTION TO DEFENDANT**

Defendant, STRATAIR AVIATION SERVICES, LLC. ("StratAir"), by and through its undersigned counsel, hereby responds to Plaintiffs' IVAN GRANT, ALEX LAFFITA ORTIZ, HENRY PINTO SUMOZA, EYONNY PRADO DURAN, LUIS RODRIGUEZ CERUTO, and LUIS SAME GONZALO (collectively, "Plaintiffs") First Requests for Production to Defendant under Certificate of Service dated March 18, 2026, by responding as follows:

**RESPONSES TO INDIVIDUAL REQUESTS**

**REQUESTS FOR PRODUCTION**

1) All documents relating to StratAir's decision to conduct a layoff or reduction in force in or about January 2024, including but not limited to: meeting agendas, meeting minutes, notes, memoranda, emails, text messages, presentations, proposals, and decision-making documents.

**ANSWER: StratAir has produced responsive documents including emails and decision-making documents. *See* SAS-0001 through SAS-0009.**

2) All documents supporting Defendant's contention that a "business need" required elimination of Plaintiffs' positions or a reduction in workforce.

**ANSWER: Objection. Plaintiffs' Amended Complaint does not challenge the legitimacy or business necessity of the RIF itself; rather Plaintiffs challenge their selection for termination. To the extent the request seeks documents that are confidential or proprietary information belonging to StratAir's customer, StratAir objects. StratAir objects to this Request as overly broad and unduly burdensome to the extent it seeks "all documents" without reasonable limitation.**

3) All of StratAir's financial statements, profit and loss statements, revenue reports, income statements, balance sheets, budgets, forecasts, projections, and operational reports from January 1, 2023, through March 31, 2024.

**ANSWER: This Request seeks the entirety of StratAir's financial records over a fifteen-month period without any limitation to the Miami warehouse location or the subject matter of Plaintiffs' claims. Therefore, StratAir objects. Defendant further objects to the extent this Request seeks confidential, proprietary, and competitively sensitive financial information absent an appropriate protective order and demonstrated relevance. Plaintiffs' Amended Complaint does not challenge the legitimacy or business necessity of the RIF itself; rather Plaintiffs challenge their selection for termination. To the extent the request seeks documents that are confidential or proprietary information belonging to StratAir's customer, StratAir objects.**

4) All documents reflecting communications between Defendant and Amazon.com or any other client concerning staffing levels, workload, cargo volume, flight schedules, contract modifications, or service requirements at the Miami warehouse location from October 1, 2023, through March 31, 2024.

**ANSWER: Defendant objects to this Request to the extent it seeks confidential, proprietary, and competitively sensitive business information, including information that may be subject to contractual confidentiality obligations with third-party clients. In addition, the requested documents are not relevant. Plaintiffs' Amended Complaint does not challenge the legitimacy or business necessity of the RIF itself; rather Plaintiffs challenge their selection for termination. StratAir objects to this Request as overly broad and unduly burdensome to the extent it seeks "all documents" without reasonable limitation.**

5) All documents identifying StratAir's employees selected for termination between January 1, 2023, and February 1, 2024, including termination lists, layoff lists, and separation notices.

**ANSWER: StratAir has produced documents identifying StratAir's employees selected for the January 2024 reduction in force, including a termination report. *See* SAS-0010 through SAS-0012. StratAir objects to the temporal scope of this Request as overbroad to the extent it seeks information about employee terminations unrelated to the January 2024 reduction in force. StratAir did not have any other reductions in force in the time period stated in the request. To the extent this request seeks further documents, StratAir did not**

**maintain such documents and is not required to create documents to satisfy a document request.**

6) All documents reflecting the criteria, factors, or considerations used to select employees for termination in StratAir's January 2024 layoff or reduction in force.

**ANSWER: StratAir has produced email correspondence and selection/decision-making documents related to the January 2024 reduction in force, including SAS-0001 through SAS-0012.**

7) All spreadsheets, matrices, scoring sheets, rankings, comparison documents, or evaluation tools used in selecting or comparing StratAir's employees for retention or termination in the January 2024 layoff or reduction in force.

**ANSWER: See response to No. 6 above. To the extent this request seeks further documents, StratAir did not maintain such documents and is not required to create documents to satisfy a document request.**

8) All documents reflecting the ages, hire dates, job titles, positions, departments, shifts, race, national origin, and length of service of all employees terminated between January 1, 2023, and February 1, 2024.

**ANSWER: StratAir has produced its Terminated Employees report that includes the terminated employees' name, employee number, birth date, employment status, termination date, and termination reason. *See* SAS-0010 through SAS-0012. StratAir does not track the national origin of its employees. To the extent this request seeks further documents, StratAir did not maintain such documents and is not required to create documents to satisfy a document request.**

9) All documents reflecting the ages, hire dates, job titles, positions, departments, shifts, race, national origin, and length of service of all employees or independent contractors of StratAir retained in warehouse, cargo handling, cargo loading, or security positions following the January 2024 layoff.

**ANSWER: StratAir has produced documents reflecting the job assignments and shifts of employees prior to the January 2024 reduction in force. To the extent this request seeks further documents, StratAir did not maintain such documents and is not required to create documents to satisfy a document request. StratAir does not track the national origins of its employees. StratAir does not engage individual independent contractors.**

10) All organizational charts for StratAir's Miami warehouse location from January 1, 2023, through March 31, 2024.

**ANSWER: None.**

11) All documents reflecting StratAir's hiring, recruiting, onboarding, or engagement of workers (whether as employees, independent contractors, or through staffing agencies) at the Miami warehouse location in 2023 and 2024 to perform warehouse operations, cargo handling, cargo loading, package sorting, forklift operations, ramp services, security services, or any other work involving the receipt, unloading, sorting, loading, or distribution of freight or cargo, including but not limited to: job requisitions, position authorizations, job postings, employment advertisements, recruiting materials, applications, offer letters, onboarding documents, background checks, I-9 forms, W-4 forms, staffing agency agreements, contractor agreements, start dates, and orientation materials.

**ANSWER: StratAir has produced onboarding and personnel files related to Plaintiffs. To the extent this request seeks further documents, StratAir objects. This Request seeks an extraordinarily broad range of documents across two full calendar years for all categories of workers without reasonable limitation. Defendant further objects to this Request to the extent it seeks documents regarding independent contractors, temporary workers, or staffing agency workers. Plaintiffs' Amended Complaint does not mention independent contractors, temporary workers, or staffing agency workers, and Plaintiffs' claims are based on the allegation that Defendant terminated Plaintiffs and retained younger employees with less seniority to perform the same or similar jobs. *See* Amended Complaint, Paragraphs 51, 86. Whether contractors, temporary workers, or staffing agency workers were engaged after Plaintiffs' terminations has no bearing on Plaintiffs' claims or any related defenses. The broad time period of "2023 and 2024" is overly broad in that it encompasses time periods that are not relevant to the January 2024 RIF at issue. The Amended Complaint does not raise allegations regarding the "hiring, recruiting, onboarding, or engagement of workers" so the request seeks information that is not relevant to any claim or defense in this action. In addition, StratAir objects to the request for confidential information of non-party employees.**

12) All of StratAir's job postings, employment advertisements, or recruiting materials for warehouse, cargo, or security positions from January 1, 2023, through the present.

**ANSWER: This Request is duplicative of Request 11. Request 11 already seeks all hiring, recruiting, and onboarding documents, StratAir incorporates its response to Request 11, as if fully set forth herein. StratAir objects to the temporal scope of this Request as overbroad and disproportionate to the needs of the case to the extent it seeks documents "through the present," more than two years after the events at issue and a year prior to the January 2024 RIF. The Amended Complaint does not raise allegations regarding "job, employment advertisements, or recruitment materials" postings, employment advertisements, or recruiting materials for warehouse, cargo, or security positions."**

13) All documents reflecting StratAir's use of temporary workers, independent contractors, staffing agencies, leased employees, contract workers, or any other non-employee workers to perform warehouse, cargo handling, cargo loading, security, or any other work at the Miami location from January 1, 2023, through the present, including: (a) contracts or agreements with staffing agencies or individual contractors; (b) work orders or job assignments; (c) invoices or payment records; (d) the names, ages, and dates of birth of all such workers; (e) the dates of their engagement and termination; (f) their job duties and work locations; (g) the positions or departments they worked in; and (h) the employees, if any, they replaced.

**ANSWER: StratAir has produced documents reflecting temporary or staffing agency workers who performed work at StratAir from the time period prior to the January 2024 reduction in force including work assignments. *See* SAS-0005 through SAS-0008. StratAir does not employ individual independent contractors; any independent contractors, temporary workers, or staffing agency workers performing work at the Miami location were employed by third-party staffing agencies, not StratAir. StratAir does not engage individual independent contractors. To the extent this Request seeks further documents, StratAir objects as seeking information that is not relevant to any party's claim or defense and not proportional to the needs of this case. Plaintiffs' claims are based on the allegation that Defendant terminated Plaintiffs and retained younger employees with less seniority to perform the same or similar jobs. *See* Amended Complaint, Paragraphs 51, 86. Whether contractors, temporary workers, or staffing agency workers were engaged has no bearing on Plaintiffs' claims or any related defenses.**

14) The complete personnel file for each of the Plaintiffs, including but not limited to: employment applications, offer letters, onboarding documents, tax forms, benefit elections, performance evaluations, disciplinary records, attendance records, time records, pay records, and all other documents maintained in each Plaintiff's personnel file.

**ANSWER: StratAir has produced the complete personnel files for each Plaintiff.**

15) All performance evaluations, reviews, or assessments of each of the Plaintiffs from the date of hire through termination.

**ANSWER: StratAir has produced the complete personnel files for each Plaintiff. Daily supervisor tracking sheets for employee performance/time were discarded on a daily basis. This request is duplicative of the subcategory specified in Request 14 above.**

16) All disciplinary records, warnings, counseling documents, corrective action plans, or write- ups for each of the Plaintiffs from their date of hire through termination.

**ANSWER: See response to No. 14 above. This request is duplicative of the subcategories specified in Request 14 above.**

17) All attendance records, time-off requests, leave requests, and absence records for each of the Plaintiffs from January 1, 2023, through termination.

**ANSWER: StratAir has produced the complete personnel file for each Plaintiff. This request is duplicative. Attendance records are a subset of documents that were**

**requested above in Request 14, therefore this request is duplicative. In addition, the "attendance records, time-off requests, leave requests, and absence records for each of the Plaintiffs from January 1, 2023 through termination" are not relevant to the claims for each Plaintiff and is overbroad.**

18) All documents reflecting each of the Plaintiffs' compensation, including wages, hourly rates, salary adjustments, bonuses, overtime pay, and benefits from the date of hire through termination.

**ANSWER: StratAir has produced the complete personnel files for each Plaintiff. The request is duplicative. Compensation documents are a subset of complete personnel files sought in Request 14 above.**

19) All documents relating to the decision to terminate each of the Plaintiffs' employment, including termination recommendations, approvals, and notifications.

**ANSWER: StratAir has produced responsive documents relating to the decision to terminate each of the Plaintiffs' employment. *See* SAS-0001 through SAS-0012.**

20) The complete personnel files of all StratAir employees terminated during the January 2024 layoff or reduction in force.

**ANSWER: StratAir has produced the complete personnel files for each Plaintiff. To the extent this request seeks further documents, StratAir objects. Producing complete personnel files of every employee terminated during the January 2024 reduction in force would impose an unreasonable burden and implicate the privacy interests of non-party employees.**

21) The complete personnel files of all StratAir employees retained in the same or similar positions as each of the Plaintiffs following the January 2024 layoff or reduction in force, and all documents reflecting the engagement, qualifications, work history, and performance of any independent contractors, temporary workers, or staffing agency workers retained to perform the same or similar work.

**ANSWER: StratAir objects to this Request as overly broad, unduly burdensome, and disproportionate to the needs of this case to the extent it seeks complete personnel files and implicates the privacy interests of non-party employees. StratAir retained hundreds of employees following the January 2024 reduction in force. These documents are not relevant to any claim or defense in this action. This is an attempted fishing expedition. Defendant further objects to this Request to the extent it seeks documents regarding independent contractors, temporary workers, or staffing agency workers. Plaintiffs' Amended Complaint does not mention independent contractors, temporary workers, or staffing agency workers, and Plaintiffs' claims are based on the allegation that Defendant terminated Plaintiffs and retained younger employees with less seniority to perform the same or similar jobs. *See* Amended Complaint, Paragraphs 51, 86. Whether contractors, temporary workers, or staffing agency workers were retained has no bearing on Plaintiffs' claims or any related defenses. Notwithstanding the foregoing, StratAir does not have records related to any**

**temporary workers or staffing agency workers in its possession, custody, or control. StratAir does not engage independent contractors.**

22) All performance evaluations of StratAir's employees and independent contractors under the age of 40 who were retained in warehouse, cargo handling, cargo loading, package sorting, forklift operations, ramp services, or security positions at StratAir's Miami location following the January 2024 layoff or reduction in force.

**ANSWER: This Request is overly broad, unduly burdensome, and disproportionate to the needs of this case to the extent it seeks complete personnel files that are not relevant to any claim or defense and implicates the privacy interests of hundreds of non-party employees. Defendant further objects to this Request to the extent it seeks documents regarding independent contractors, temporary workers, or staffing agency workers. Plaintiffs' Amended Complaint does not mention independent contractors, temporary workers, or staffing agency workers, and Plaintiffs' claims are based on the allegation that Defendant terminated Plaintiffs and retained younger employees with less seniority to perform the same or similar jobs. See Amended Complaint, Paragraphs 51, 86. Whether contractors, temporary workers, or staffing agency workers were engaged has no bearing on Plaintiffs' claims or any related defenses. Notwithstanding the foregoing, StratAir does not have records related to any temporary workers or staffing agency workers in its possession, custody, or control. StratAir does not engage independent contractors.**

23) All disciplinary records, warnings, or write-ups for StratAir's employees and independent contractors under age 40 who were retained in warehouse, cargo handling, cargo loading, package sorting, forklift operations, ramp services, or security positions from January 1, 2023, through February 29, 2024.

**ANSWER: Defendant objects to this Request as overly broad, unduly burdensome, and disproportionate to the needs of this case to the extent it seeks confidential personnel records that are not relevant to any claim or defense and implicates the privacy interests of non-party employees. StratAir retained hundreds of employees during the time period stated in the request. The request is an attempted fishing expedition because Plaintiffs cannot identify younger employees who had similar discipline records (for the Plaintiffs had disciplinary records) that were retained after the January 2024 RIF. Because discipline was not the only factor/criteria considered in the selection process for the January 2024 RIF, the probative value of such broad categories of documents across employees under 40 who were retained is low. However, the burden for compiling such documents (which would essentially require StratAir to audit the employee records for all employees under 40 who were retained) is great. In addition, the time period exceeds that relevant to the January 2024 RIF. Defendant further objects to this Request to the extent it seeks documents regarding independent contractors. Plaintiffs' Amended Complaint does not mention independent contractors, and Plaintiffs' claims are based on the allegation that Defendant terminated Plaintiffs and retained younger employees with less seniority to perform the same or similar jobs. See Amended Complaint, Paragraphs 51, 86. Whether contractors, temporary workers, or staffing agency workers were engaged has no bearing on Plaintiffs' claims or any related defenses. Notwithstanding the foregoing, StratAir does not engage individuals as independent contractors.**

24) All disciplinary records, warnings, or write-ups for non-Black employees and independent contractors who were retained in Mr. Grant's department or position following the January 2024 layoff or reduction in force.

**ANSWER: StratAir has produced the complete personnel file for Plaintiff Grant. Defendant objects to this Request as overly broad, unduly burdensome, and disproportionate to the needs of this case to the extent it seeks confidential personnel records that are not relevant to any claim or defense and implicates the privacy interests of non-party employees. Personnel records after the January 2024 RIF are not relevant to Plaintiff Grant's allegations that he was selected for the January 2024 RIF based on his age, race, and national origin. The request is an attempted fishing expedition because Plaintiff Grant cannot identify non-Black employees who had similar discipline records that were retained after the January 2024 RIF and has based his claim on false speculation. Because discipline was not the only factor/criteria considered in the selection process for the January 2024 RIF, the probative value of such broad categories of documents across employees under 40 who were retained is low. However, the burden for compiling such documents (which would essentially require StratAir to audit the employee records for all "non-Black" employees who were retained) is great. StratAir does not engage individual independent contractors.**

25) All attendance records for StratAir's employees and independent contractors under age 40 who were retained in warehouse, cargo, or security positions from January 1, 2023, through February 29, 2024.

**ANSWER: StratAir does not engage individual independent contractors. Defendant objects to this Request as overly broad, unduly burdensome, and disproportionate to the needs of this case to the extent it seeks confidential personnel records that are not relevant to any claim or defense and implicate the privacy interests of non-party employees. StratAir retained hundreds of employees during the time period stated in the request. The request is an attempted fishing expedition because Plaintiffs cannot identify younger employees who had similar attendance records (for the Plaintiffs had attendance issues) that were retained after the January 2024 RIF. Because attendance was not the only factor/criteria considered in the selection process for the January 2024 RIF, the probative value of such a broad category of documents across employees under 40 who were retained is low. However, the burden for compiling such documents is great. The phrase "attendance records" is broad and could include every time entry and time off records for all employees for the over thirteen-month period identified. The time period exceeds that relevant to the January 2024 RIF. In addition, Plaintiffs' Amended Complaint does not mention independent contractors, and Plaintiffs' claims are based on the allegation that Defendant terminated Plaintiffs and retained younger employees with less seniority to perform the same or similar jobs. See Amended Complaint, Paragraphs 51, 86.**

26) All performance evaluations, performance reviews, performance assessments, or performance ratings for all of StratAir's employees and independent contractors age 40 or over who worked at its Miami location in warehouse, cargo handling, cargo loading, package sorting, forklift operations, ramp services, or security positions from January 1, 2023, through February 29, 2024, whether terminated or retained.

**ANSWER: StratAir has produced the complete personnel files for each Plaintiff. Defendant objects to this Request as overly broad, unduly burdensome, and disproportionate to the needs of this case to the extent it seeks broad categories of confidential personnel records that are not relevant to any claims or defenses and implicates the privacy interests of hundreds of non-party employees. The time period exceeds that relevant to the January 2024 RIF. Defendant further objects to this Request to the extent it seeks documents regarding independent contractors. Plaintiffs' Amended Complaint does not mention independent contractors, and Plaintiffs' claims are based on the allegation that Defendant terminated Plaintiffs and retained younger employees with less seniority to perform the same or similar jobs. *See* Amended Complaint, Paragraphs 51, 86. Whether contractors, temporary workers, or staffing agency workers were engaged has no bearing on Plaintiffs' claims or any related defenses. Notwithstanding the foregoing, StratAir does not engage individuals as independent contractors.**

27) All disciplinary records, warnings, counseling documents, corrective action plans, write- ups, or reprimands for all of StratAir's employees and independent contractors age 40 or over who worked at its Miami location in warehouse, cargo handling, cargo loading, package sorting, forklift operations, ramp services, or security positions from January 1, 2023, through February 29, 2024, whether terminated or retained.

**ANSWER: Defendant objects to this Request as overly broad, unduly burdensome, and disproportionate to the needs of this case to the extent it seeks broad categories of confidential personnel records that are not relevant to any claims or defenses and implicates the privacy interests of non-party employees. StratAir employed hundreds of employees during the time period stated in the request. The request is an attempted fishing expedition because Plaintiffs cannot identify younger employees who had similar discipline records (for the Plaintiffs had disciplinary records) that were retained after the January 2024 RIF. Because discipline was not the only factor/criteria considered in the selection process for the January 2024 RIF, the probative value of such broad categories of documents across employees under 40 who were retained is low. However, the burden for compiling such documents for hundreds of employees (which would essentially require StratAir to audit the employee records for all employees under 40 who were retained) is great. The time period exceeds that relevant to the January 2024 RIF. To the extent the request relates to independent contractors, StratAir does not engage individuals as independent contractors. In addition, Plaintiffs' Amended Complaint does not mention independent contractors, and Plaintiffs' claims are based on the allegation that Defendant terminated Plaintiffs and retained younger employees with less seniority to perform the same or similar jobs. *See* Amended Complaint, Paragraphs 51, 86. Whether contractors, temporary workers, or staffing agency workers were engaged or retained has no bearing on Plaintiffs' claims or any related defenses.**

28) All attendance records, tardiness records, or absenteeism documentation for all of StratAir's employees and independent contractors age 40 or over who worked at its Miami location in warehouse, cargo handling, cargo loading, package sorting, forklift operations, ramp services, or security positions from January 1, 2023, through February 29, 2024, whether terminated or retained.

**ANSWER: StratAir has produced the complete personnel file for each Plaintiff. StratAir does not engage individuals as independent contractors. Defendant objects to this Request as overly broad, unduly burdensome, and disproportionate to the needs of this case to the extent it seeks broad categories of confidential personnel records that are not relevant to any claims or defenses and implicates the privacy interests of hundreds of non-party employees. The phrases "attendance records, tardiness records, or absenteeism documentation" is so broad that it could encompass every time entry or record for more than a thirteen-month period across employees and virtually all of the hundreds of employees at the Miami location based on the broad categories of workers identified ("warehouse, cargo handling, cargo loading, package sorting, forklift operations, ramp services, or security positions"). The time period exceeds that relevant to the January 2024 RIF. Defendant further objects to this Request to the extent it seeks documents regarding independent contractors. Plaintiffs' Amended Complaint does not mention independent contractors, and Plaintiffs' claims are based on the allegation that Defendant terminated Plaintiffs and retained younger employees with less seniority to perform the same or similar jobs. *See* Amended Complaint, Paragraphs 51, 86. Whether contractors were terminated or retained has no bearing on Plaintiffs' claims or any related defenses.**

29) All documents reflecting supervisor observations, manager assessments, or informal performance notes regarding any of StratAir's employees or independent contractors age 40 or over in warehouse, cargo, or security positions from January 1, 2023, through February 29, 2024, including emails, text messages, WhatsApp messages, notes, or memoranda discussing employee performance.

**ANSWER: Defendant objects to this Request as overly broad and unduly burdensome to the extent it seeks "all documents" reflecting informal observations across multiple communication platforms without reasonable limitation. StratAir employed hundreds of employees during the time period stated in the request. Defendant objects to this Request as overly broad, unduly burdensome, and disproportionate to the needs of this case to the extent it seeks broad categories of confidential personnel records that are not relevant to any claims or defenses and implicates the privacy interests of non-party employees. StratAir has no way to meaningfully search for such vague and broad categories of documents as documents *reflecting* "supervisor observations," "manager assessments," or "informal performance notes." The time period exceeds that relevant to the January 2024 RIF. To the extent the request seeks employees' personal text messages or WhatsApp messages, StratAir does not have possession, custody, or control of such documents. StratAir does not engage individuals as independent contractors.**

30) All documents reflecting performance rankings, performance comparisons, or relative performance assessments of StratAir's employees and independent contractors in the decisional unit for the January 2024 layoff or reduction in force, including any rankings, scores, or classifications of employees and independent contractors as "strong performers," "satisfactory," "unsatisfactory," "lower performing," or similar categories.

**ANSWER: StratAir has produced documents reflecting relative performance assessments of StratAir's employees considered for the January 2024 reduction in force. *See* SAS-0001 through SAS-0008.**

31) All documents reflecting the performance evaluation criteria, performance standards, or performance metrics used to assess employees in warehouse, cargo, or security positions from 2022 through 2024, including any written standards, productivity goals, efficiency requirements, or quality benchmarks.

**ANSWER: StratAir has produced responsive documents. *See* SAS-0001 through SAS-0012. StratAir has also produced its 2024 Employee Handbook and the complete personnel files for each Plaintiff.**

32) All documents identifying which of StratAir's employees or independent contractors age 40 or over in the decisional unit Defendant contends were "strong performers," "satisfactory performers," or "unsatisfactory performers" as of January 13, 2024, including the factual basis for each categorization.

**ANSWER: StratAir has produced documents reflecting StratAir's decision-making for the January 2024 reduction in force. *See* SAS-0001 through SAS-0012.**

33) All documents reflecting the race, national origin, ethnicity, age, and date of birth of all employees and independent contractors performing warehouse operations, cargo handling, cargo loading, package sorting, forklift operations, ramp services, security services, or any other work involving the receipt, unloading, sorting, loading, or distribution of freight or cargo at the Miami location as of: (a) January 1, 2023; (b) July 1, 2023; (c) October 1, 2023; (d) December 15, 2023 (pre-layoff); (e) January 13, 2024; (f) January 31, 2024; (g) March 1, 2024; (h) June 1, 2024; (i) September 1, 2024; (j) January 1, 2025; (k) June 1, 2025; (l) January 1, 2026; and (m) the date of Defendant's response to these Requests for Production.

**ANSWER: StratAir has produced employee roster documents that identify the work assignment and schedules of employees. *See* SAS-0001 through SAS-0008. StratAir has produced the Terminated Employee reports which include the date of birth for all employees terminated in the January 2024 reduction in force. *See* SAS-0010 through SAS-0012. StratAir does not have access to files containing the personal or demographic information for employees assigned by a staffing agency to work for StratAir. StratAir does not engage individuals as independent contractors.**

34) All communications (including emails, text messages, WhatsApp messages, Slack messages, instant messages, or other electronic communications) in StratAir's possession, custody, or control referencing any of the Plaintiffs by name from November 1, 2023, through February 29, 2024.

**ANSWER: StratAir has produced communications (including emails) related to Plaintiff's selection for the January 2024 reduction in force. *See* SAS-0001 through SAS-0012. StratAir objects to the request for "all communications" referencing any of the six individual Plaintiffs by name – without any relevance to a claim or defense in this action -- is overbroad and would potentially encompass many irrelevant communications. The requested time period is also overly broad and includes time that is not relevant to the January 2024 RIF.**

35) All communications between or among persons who participated in the decision to conduct StratAir's January 2024 layoff or reduction in force, or who participated in selecting employees for termination, from July 1, 2023 through February 29, 2024, concerning: (a) the decision to conduct a layoff; (b) the business justification for the layoff; (c) the timing of the layoff; (d) the number of positions to be eliminated; (e) the financial or operational reasons for the layoff; or (f) workforce planning, headcount reductions, or staffing levels.

**ANSWER: StratAir has produced documents relating to its selection of workers to separate in the January 2024 reduction in force. *See* SAS-0001 through SAS-0012. StratAir objects to this request as overbroad and not proportional to the needs of the case to the extent it seeks documents relating to the business justification for the January 2024 RIF. Plaintiff's Complaint does not challenge the legitimacy or business necessity of the RIF itself; rather, Plaintiffs challenge their selection for the RIF and allege that it was based on protected characteristics. The time period is overly broad and not limited to the time relevant to the January 2024 RIF. StratAir also objects to the extent the request seeks documents that are confidential or proprietary.**

36) All communications between or among persons who participated in selecting employees for termination in the January 2024 layoff or reduction in force, from July 1, 2023 through February 29, 2024, concerning: (a) the criteria or factors to be used in selecting employees; (b) the process or methodology for selecting employees; (c) performance evaluations or assessments of employees; (d) comparisons between or among employees; (e) age, years of service, or seniority of employees; (f) the identification of specific employees to be terminated or retained; or (g) hiring of temporary workers, independent contractors, or younger employees.

**ANSWER: StratAir has produced responsive documents. *See* SAS-0001 through SAS-0012. The requested time period is overly broad and extends beyond the time frame of the January 2024 RIF. To the extent the request references temporary workers and independent contractors, StratAir has no responsive documents. This request is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. StratAir did not engage individuals as independent contractors. Plaintiffs' Complaint does not mention independent contractors, temporary workers, or staffing agency workers, and Plaintiffs' claims are not based on StratAir allegedly engaging non-employees. Whether contractors,**

**temporary workers, or staffing agency workers were terminated or retained either before or after Plaintiffs were terminated has no bearing on Plaintiff's claims or any related defenses.**

37) All communications referencing any of the Plaintiffs by name from September 1, 2023, through February 29, 2024, between or among any supervisor, manager, decision-maker, or human resources personnel of StratAir.

**ANSWER: StratAir has produced documents reflecting the decision-making process for the January 2024 reduction in force, including references to Plaintiff. *See* SAS-0001 through SAS-0012. This request is duplicative of Request 34 above. StratAir objects to the request for "all communications" referencing any of the six individual Plaintiffs by name is overbroad and would potentially encompass irrelevant communications. Not every communication referencing a Plaintiff's name is relevant to a claim or defense in this action. The requested time period is also overly broad and includes time that is not relevant to the action.**

38) All communications between or among any supervisor, manager, decision-maker, or human resources personnel of StratAir from July 1, 2023, through February 29, 2024, that reference, discuss, or mention: (a) age of employees and independent contractors; (b) "older employees," "old people," "new blood," "younger workers," or similar language; (c) race, national origin, or ethnicity of employees; (d) replacing employees with independent contractors or temporary workers; (e) cost savings from terminating higher-paid employees; (f) bringing in workers from staffing agencies; or (g) hiring for the 2023 holiday season.

**ANSWER: After a reasonably diligent search, StratAir has no communications received or sent by Jorge Corral, Gisela Barrera, Armando Portales Viera in its custody, possession, or control that contain the phrases "older employees," "old people," "new blood," "younger workers," "black employees," "Virgin Islands," or "non-Hispanic employees." The phrase "or similar language" is vague and ambiguous and StratAir has no meaningful way to search for such documents. Subparts (d) through (g) are vague. "Higher-paid employees," for example, is vague and ambiguous, and Plaintiffs were not the highest paid employees at StratAir so "higher-paid employees" are not relevant. To the extent the request seeks further documents, it seeks documents that are not relevant to any claim or defense in this action. All communications during the requested time period referencing "hiring for the 2023 holiday season" is overbroad and seeks information that is not relevant to any claim or defense. StratAir objects to the request as overly broad and unduly burdensome to the extent it seeks "all communications" across a seven-month period across the entire organization. The requested time period is not relevant to the January 2024 RIF. Defendant further objects to subsections (d) and (f) to the extent they seek documents regarding replacing employees with independent contractors or temporary workers. To the extent the request references temporary workers and independent contractors, StratAir objects. This request is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. StratAir did not engage independent contractors. Plaintiffs' Complaint does not mention independent contractors, temporary workers, or staffing agency workers, and Plaintiffs' claims are not based on StratAir allegedly engaging non-employees. Whether contractors, temporary workers, or staffing agency workers were engaged either before or after Plaintiffs were terminated has no bearing on Plaintiff's claims or any related defenses.**

39) All communications between StratAir and any consultant, human resources advisor, staffing agency, or other third party regarding StratAir's January 2024 layoff, workforce reductions, hiring of temporary or contract workers, or use of staffing agencies from July 1, 2023, through March 31, 2024, including communications concerning legal risks, discrimination issues, selection methodology, or demographic impact.

**ANSWER: StratAir has produced responsive documents at SAS-0001 through SAS-0012. The phrase "or other third party" is vague. The request is overbroad because it encompasses time periods that are not relevant to the January 2024 reduction in force.**

40) All communications referencing any of the Plaintiffs' age from their date of hire through February 29, 2024.

**ANSWER: Objection. The request is overbroad. Not every communication referencing Plaintiff's age from the date of their respective hire through February 29, 2024 is relevant to any claim or defense in this action. The request is so broad that StratAir has no meaningful way to search for such information. The requested time period is overbroad and extends beyond the time frame relevant to the January 2024 RIF.**

41) All communications in StratAir's possession, custody, or control referencing "older employees," "old people," "new blood," "young employees," "younger workers," "age," or similar language from January 1, 2023, through February 29, 2024.

**ANSWER: No responsive documents exist. StratAir has produced the decision-making documents from the January 2024 reduction in force at SAS-0001 through SAS-0012.**

42) All communications in StratAir's possession, custody, or control referencing Mr. Grant's race, color, or national origin from the date of hire through February 29, 2024.

**ANSWER: None. StratAir has produced Plaintiff Grant's complete personnel file.**

43) All communications in StratAir's possession, custody, or control referencing Black employees, employees from the Virgin Islands, employees from Puerto Rico, or non-Hispanic employees from January 1, 2023, through February 29, 2024.

**ANSWER: None. In addition, StratAir does not track the national origin of its employees.**

44) All communications between Plaintiffs' supervisors including, but not limited to, Armando Portales Viera, Jose (also known as "Bori"), Jorge, Gisela Barrera, Wilson Dorado, Michael, Javier, Lidier, or any other supervisor regarding any of the Plaintiffs from October 1, 2023, through February 29, 2024.

**ANSWER: This Request is largely duplicative of Requests 34 and 37 and StratAir incorporates its responses to those requests as if fully set forth herein.**

45) All documents and communications concerning statements made by Plaintiffs' supervisors Armando Portales Viera, Jose (also known as "Bori"), Jorge, or any other supervisor about older employees, age, race, national origin, or the need to hire younger or different workers from January 1, 2023, through February 29, 2024.

**ANSWER: StratAir has not identified any documents responsive to this request. For purposes of this request, StratAir interpreted the request as seeking non-privileged documents reflecting statements by Armando Portales Viera, Jose Alverio, Jorge Corral, or Gisela Barrera directly referencing Plaintiffs' ages, races, Puerto Rico, Virgin Islands, or the need to hire younger workers during the period relevant to the January 2024 reduction in force. To the extent this request seeks further documents, StratAir objects because the phrases "concerning statements," "any other supervisor," and "different workers" are vague and ambiguous, and because the request is overbroad and disproportionate to the needs of the case insofar as it is not limited to identified custodians, decision-makers, or supervisors of Plaintiffs, seeks documents beyond the time period relevant to the January 2024 reduction in force, or seeks documents concerning non-employees who are not placed at issue by Plaintiffs' Amended Complaint.**

46) All documents and communications concerning statements made by or to Plaintiffs' supervisor Jose (also known as "Bori") referencing: (a) bringing in workers from staffing agencies; (b) hiring younger workers; (c) agency workers or temporary workers; or (d) replacing employees with contractors or agency workers.

**ANSWER: StratAir incorporates its response to Request 45 above as if fully set forth herein. To the extent the requests are duplicative, StratAir objects.**

47) All StratAir employee and/or personnel handbooks in effect from 2022 through the present.

**ANSWER: StratAir has produced the Employee Handbook in effect at the time of the January 2024 RIF. Defendant objects to the temporal scope of this Request to the extent it seeks documents "from 2022 through the present," which is beyond the relevant time period.**

48) All of StratAir's anti-discrimination, anti-harassment, and anti-retaliation policies in effect during Plaintiffs' employment.

**ANSWER: StratAir has produced anti-discrimination, anti-harassment, and anti-retaliation policies in effect at the time of the January 2024 RIF that is the subject of this lawsuit.**

49) All of StratAir's policies or procedures regarding reductions in force, layoffs, or workforce reductions in effect from 2022 through the present.

**ANSWER: StratAir has produced policies or procedures regarding reductions in force, layoffs, or workforce or reductions in effect at the time of the January 2024 RIF, including the Employment Terms and Conditions document Plaintiffs signed at the beginning of their employment.**

50) All training materials provided to StratAir's supervisors, managers, or decision-makers regarding age discrimination, race discrimination, national origin discrimination, or the ADEA from 2022 through the present.

**ANSWER: Training materials regarding the types of discrimination requested are not relevant to the issue of whether StratAir discriminated against Plaintiffs by selecting them for the January 2024 RIF (which StratAir denies). Defendant further objects to the temporal scope of this Request to the extent it seeks documents "from 2022 through the present" which extends beyond the relevant time period.**

51) All training materials provided to StratAir's supervisors, managers, or decision-makers regarding proper layoff procedures, selection criteria, or workforce reductions from 2022 through the present.

**ANSWER: Training materials regarding "proper layoff procedures, selection criteria, or workforce reductions" are not relevant to the issue of whether StratAir discriminated against Plaintiffs by selecting them for the January 2024 RIF (which StratAir denies). Defendant further objects to the temporal scope of this Request to the extent it seeks documents "from 2022 through the present" which extends beyond the relevant time period.**

52) All documents and communications reflecting training received by Armando Portales Viera, Jose (also known as "Bori"), Jorge, Gisela Barrera, Wilson Dorado, or any other employee of StratAir involved in the decision to terminate Plaintiffs regarding discrimination, harassment, or employment law from 2022 through the present.

**ANSWER: This Request is largely duplicative of Request 50, which seeks all discrimination training materials provided to supervisors, managers, and decision-makers. StratAir incorporates its response to Request 50 herein. Defendant further objects to the temporal scope of this Request to the extent it seeks documents "through the present" beyond the relevant time period.**

53) All complaints, grievances, or internal reports of age discrimination made to Defendant from January 1, 2022, through the present.

**ANSWER: The Plaintiffs made no complaints, grievances, or internal reports of age discrimination to StratAir during the requested time period. To the extent the request relates to employees other than the Plaintiffs, the request is overbroad and seeks documents that have no bearing on any claim in this action. The phrases "complaints, grievances, or internal reports" are also vague and ambiguous, as these phrases may or may not be limited to formal complaints or grievances. Defendant further objects to the temporal scope of this Request as overbroad and disproportionate to the needs of the case to the extent it seeks complaints "from January 1, 2022, through the present."**

54) All complaints, grievances, or internal reports of race discrimination or national origin discrimination made to Defendant from January 1, 2022, through the present.

**ANSWER: The Plaintiffs made no complaints, grievances, or internal reports of race discrimination or national origin discrimination to StratAir during the requested time**

**period. To the extent the request seeks documents related to employees other than Plaintiffs, the request is overbroad and seeks documents that have no bearing on any claim in this action. The phrases "complaints, grievances, or internal reports" are also vague and ambiguous, as these phrases may or may not be limited to formal complaints or grievances. Defendant further objects to the temporal scope of this Request as overbroad and disproportionate to the needs of the case to the extent it seeks complaints "through the present."**

55) All documents and communications reflecting complaints made by any of the Plaintiffs to StratAir's human resources personnel, supervisors, managers, or any other person regarding discrimination, unfair treatment, or retaliation from their date of hire through February 29, 2024.

**ANSWER: StratAir has produced the email that Plaintiff Laffita Ortiz sent to StratAir's President in January 2024 following his termination. No other responsive documents exist.**

56) All documents and communications reflecting Plaintiff Ivan Grant's November 2023 complaint of discrimination and harassment to StratAir's human resources department, including any investigation conducted, findings reached, or corrective action taken.

**ANSWER: None. Plaintiff Grant did not make any such complaint, so no responsive documents exist.**

57) All documents and communications reflecting Plaintiff Henry Pinto Sumoza's complaints of age discrimination made on or about January 16, 2024, including complaints to StratAir's human resources department, Mike, Jose (also known as "Bori"), or any other supervisor.

**ANSWER: None.**

58) All documents and communications reflecting Plaintiff Eyonny Prado Duran's complaint to supervisor Lidier on or about January 14, 2024, regarding StratAir's targeting of older workers.

**ANSWER: None.**

59) All documents and communications reflecting Plaintiff Alex Laffita Ortiz's post-termination email complaint to Defendant's President or any other company official.

**ANSWER: StratAir has produced the email that Plaintiff Laffita sent to StratAir's president in January 2024 following Plaintiff's termination.**

60) All documents and communications reflecting any investigation conducted by Defendant, at Defendant's direction, or on Defendant's behalf (whether by employees, managers, human resources personnel, outside counsel, third-party investigators, consultants, or any other person or entity) in response to or concerning any complaint, grievance, or allegation made by any of the Plaintiffs or other third-persons regarding discrimination, unfair treatment, harassment, retaliation, accommodation requests, leave requests, or working conditions, including: (a) investigation plans or protocols; (b) investigation notes; (c) interview summaries or transcripts; (d) witness statements; (e) documents reviewed during the investigation; (f) findings, conclusions, or reports; (g) recommendations for corrective action; (h) communications with or instructions to investigators; (i) investigator credentials or qualifications; and (j) any final investigation report or summary, whether in draft or final form.

**ANSWER: None of the Plaintiffs complained of any discrimination during their employment, therefore no responsive documents exist.**

61) All documents and communications reflecting complaints or concerns raised by any StratAir employee regarding ageist comments made by Plaintiffs' supervisors including, but not limited to, Armando Portales Viera, Jose (also known as "Bori"), or Jorge from 2022 through the present.

**ANSWER: The request seeks documents that are not relevant to the Plaintiffs and are thus not relevant to the claims or defenses in this action. StratAir has no responsive documents reflecting complaints or "concerns" raised by any of the Plaintiffs regarding "ageist comments made by Plaintiffs' supervisors." The temporal scope is also overbroad because it extends beyond the January 2024 RIF.**

62) All documents and communications relating to Plaintiff Ivan Grant's first termination by StratAir in November 2023, and his subsequent reinstatement.

**ANSWER: StratAir has produced the complete personnel file for Plaintiff Grant.**

63) All documents and communications reflecting Plaintiff Ivan Grant's vacation request to attend his daughter's wedding in Germany, including the request submission, approval or denial, and any communications regarding the request.

**ANSWER: No responsive documents exist.**

64) All documents and communications reflecting the alleged basis for Plaintiff Ivan Grant's November 2023 termination for "unapproved time off."

**ANSWER: StratAir objects to this request as duplicative of Request 62. Request 62 already seeks all documents relating to Plaintiff Grant's first termination and reinstatement. StratAir incorporates its response to Request 62.**

65) All documents and communications reflecting StratAir's decision to reinstate Plaintiff Ivan Grant following his complaint to StratAir's human resources department in November 2023.

**ANSWER: StratAir objects to this request as duplicative of Request 62. Documents regarding Plaintiff Grant's reinstatement is already encompassed by Request 62. StratAir incorporates its response to Request 62.**

66) All documents reflecting wages lost by Plaintiff Ivan Grant as a result of his November 2023 termination and whether he was paid for those lost wages upon reinstatement.

**ANSWER: StratAir objects to the characterization of "wages lost by Plaintiff." In response to the latter half of the request, Plaintiff was not paid for time he did not work.**

67) All documents and communications reflecting any investigation or review conducted in response to Plaintiff Ivan Grant's November 2023 complaint of discrimination and harassment.

**ANSWER: This request is duplicative of Request 56, which already seeks Plaintiff Grant's November 2023 complaint "including any investigation conducted, findings reached, or corrective action taken." StratAir incorporates its response to Request 56.**

68) All documents and communications reflecting StratAir's consideration of Plaintiff Ivan Grant's prior discrimination complaint when selecting him for the January 2024 layoff or reduction in force.

**ANSWER: Because no such complaint was made, no responsive documents exist.**

69) All documents reflecting the race, national origin, and ethnicity of employees working on each shift (day shift and night shift) at StratAir's Miami warehouse location as of: (a) December 15, 2023 (pre-layoff); (b) January 13, 2024 (immediately before layoff); and (c) the date of Defendant's response to these Requests for Production.

**ANSWER: StratAir has produced documents reflecting the name and the employees' shifts/schedules (pre-layoff) as well as the employee roster that included everyone who worked at the warehouse. To the extent the request seeks further documents, StratAir objects. This Request is overbroad and unduly burdensome to the extent it seeks documents reflecting the race, national origin, and ethnicity of all employees working on each shift at the Miami warehouse location without limitation to the job titles, departments, or positions relevant to Plaintiff Grant's claims. The Request as drafted would encompass employees in roles wholly unrelated to those held by Plaintiff, imposing a disproportionate burden relative to the likely benefit of such discovery. StratAir does not track the national origin of its employees. The temporal scope of the request is overbroad and extends beyond the time period relevant to the January 2024 RIF. The request for "all documents" reflecting race, national origin, and ethnicity (without suggesting any documents exist) seeks documents that would be irrelevant to Plaintiffs' claims.**

70) All documents and communications reflecting any written disciplinary notice issued to Mr. Grant in April 2023, or at any other time, including the factual basis, witnesses, and any similar conduct by other employees.

**ANSWER: StratAir has produced the written disciplinary notice issued to Plaintiff Grant in April 2023. To the extent the request seeks "any similar conduct by other employees" the request is vague, ambiguous, and seeks documents that are not relevant to Plaintiff Grant's claims. StratAir has no way to meaningfully search for such documents.**

71) All documents and communications reflecting Defendant's knowledge of Plaintiff Luis Rodriguez Ceruto's wife's cancer diagnosis, including when Defendant learned of the diagnosis and how Defendant learned of it.

**ANSWER: StratAir was not aware of Plaintiff's wife's cancer diagnosis until after his termination. Therefore, no responsive documents exist.**

72) All documents and communications concerning Plaintiff Luis Rodriguez Ceruto's requests for time off work or scheduling adjustments throughout the course of his employment with StratAir.

**ANSWER: StratAir has produced the complete personnel file for Plaintiff Rodriguez Ceruto.**

73) All documents and communications concerning any accommodation requests made by Plaintiff Luis Rodriguez Ceruto related to his wife's medical condition.

**ANSWER: Plaintiff Rodriguez did not request any accommodations related to his wife's medical condition, therefore no responsive documents exist. StratAir has produced the complete personnel file for Plaintiff Rodriguez Ceruto.**

74) All documents and communications concerning Defendant's response to any accommodation requests made by Plaintiff Luis Rodriguez Ceruto, including approvals, denials, or alternative accommodations offered.

**ANSWER: StratAir incorporates its response to Request 73 as if set forth herein.**

75) All documents and communications reflecting requirements imposed on Plaintiff Luis Rodriguez Ceruto to provide doctor's notes or other medical documentation to take time off.

**ANSWER: StratAir incorporates its response to Request 73 as if set forth herein.**

76) All communications in which any StratAir supervisor told Plaintiff Luis Rodriguez Ceruto that he could not miss work because there was "too much work" or similar statements.

**ANSWER: No responsive documents exist.**

77) All documents and communications concerning StratAir's consideration of Plaintiff Luis Rodriguez Ceruto's absences or time-off requests in the decision to terminate his employment.

**ANSWER: No responsive documents exist.**

78) All documents and communications supporting Defendant's contention that Plaintiff Luis Rodriguez Ceruto was not eligible for FMLA leave at any time during 2023-2024, including hours worked calculations and worksite employee counts.

**ANSWER: StratAir has produced its Family and Medical Leave policy. StratAir reserves the right to supplement its production as discovery in this case is ongoing.**

79) Defendant's FMLA policy or policies in effect from 2022 through the present.

**ANSWER: StratAir has produced the Employee Handbook in effect at the time of Plaintiff Rodriguez Ceruto's termination.**

80) All FMLA notices, rights notices, eligibility notices, designation notices, certification forms, or related FMLA documents provided by StratAir to Mr. Rodriguez Ceruto.

**ANSWER: StratAir has produced its Family and Medical Leave Policy and the complete personnel file of Plaintiff Rodriguez Ceruto. StratAir reserves the right to supplement its production as discovery in this case is ongoing.**

81) All documents reflecting other StratAir employees at the Miami warehouse location who were granted FMLA leave in 2023-2024, including the reasons for leave and whether the leave was designated as FMLA.

**ANSWER: Defendant objects to this Request to the extent it implicates the privacy interests and confidential medical information of non-party employees which has no bearing on any claim or defense in this action. In addition the request would require great burden and expense to search the files for all employees at the Miami warehouse over the requested two-year period.**

82) All documents and communications reflecting whether Defendant considered designating Mr. Rodriguez Ceruto's absences or requested time off as FMLA leave.

**ANSWER: StratAir has produced the WhatsApp messages containing Plaintiff Rodriguez Ceruto's time off requests and the complete personnel file for Plaintiff Rodriguez Ceruto.**

83) All training materials provided to supervisors and managers of StratAir regarding FMLA requirements, FMLA eligibility, FMLA designation procedures, or FMLA notice requirements from 2022 through the present.

**ANSWER: Training materials provided to supervisors regarding FMLA are not relevant to the issue of whether StratAir discriminated against Plaintiffs by selecting them**

**for the January 2024 RIF (which StratAir denies). Defendant further objects to the temporal scope of this Request to the extent it seeks documents "from 2022 through the present" which extends beyond the relevant time period. To the request encompasses documents for supervisors or managers that did not supervise Plaintiff Rodriguez Ceruto, the request is overbroad and not relevant to the Plaintiff's claims.**

84) Defendant's ADA policy or policies in effect from 2022 through the present, including policies regarding associational disability discrimination and reasonable accommodations.

**ANSWER: StratAir has produced the Employee Handbook in effect at the time of Plaintiffs' terminations.**

85) All training materials provided to StratAir's supervisors and managers regarding ADA requirements, associational disability discrimination, or reasonable accommodation obligations from 2022 through the present.

**ANSWER: Training materials provided to supervisors regarding ADA or accommodation requests are not relevant to the issue of whether StratAir discriminated against Plaintiffs by selecting them for the January 2024 RIF (which StratAir denies). Defendant further objects to the temporal scope of this Request to the extent it seeks documents "from 2022 through the present" which extends beyond the relevant time period. To the request encompasses documents for supervisors or managers that did not supervise Plaintiff Rodriguez Ceruto, the request is overbroad and not relevant to the Plaintiff's claims.**

86) All documents and communications reflecting factual determinations, decisions, or actions taken by Defendant regarding Plaintiff Luis Rodriguez Ceruto's FMLA eligibility or accommodation requests, including: (a) calculations of hours worked or months employed; (b) determinations of worksite employee count; (c) approvals or denials of time-off requests; (d) communications between non-attorney human resources personnel and supervisors regarding his requests; (e) any forms, notices, or designations related to FMLA; (f) medical documentation received from or regarding Mr. Rodriguez Ceruto or his wife; and (g) the identity of persons who made decisions regarding his eligibility or requests, excluding attorney-client privileged communications and opinion work product.

**ANSWER: StratAir incorporates its response to Request 82 as if set forth herein.**

87) All documents and communications concerning time-off requests, sick leave requests, or attendance-related absences by StratAir employees and independent contractors under age 40 at the Miami warehouse location from January 2023 through January 2024, including: (a) whether medical documentation or doctor's notes were required; (b) which individuals were required to provide medical documentation and which were not; (c) any policy or practice regarding when medical documentation is required; (d) communications between supervisors and human resources regarding whether to require medical documentation from specific employees; and (e) any differential treatment in how time-off requests were handled based on employee age, disability status, or association with disabled family members.

**ANSWER: Defendant objects to this Request as overly broad, unduly burdensome, and disproportionate to the needs of this case. This Request seeks all time-off and attendance documentation for all employees under age 40 over a one-year period along with five detailed subcategories of analysis. The request seeks confidential personnel information, which implicates the privacy rights of non-parties and StratAir's obligation to maintain such information as confidential. The request is an attempted fishing expedition. The requested categories of documents (e.g., "attendance-related absences") are vague and ambiguous and encompass documents not relevant to any claim or defense in this action. In addition, the request would impose a great burden by requiring StratAir to essentially audit all time records and leave requests requested for hundreds of employees without any showing of relevance. Defendant further objects to this Request as irrelevant to the extent it seeks documents regarding independent contractors, as contractors are not mentioned in Plaintiffs' Amended Complaint and StratAir did not engage individuals as independent contractors.**

88) All documents and communications reflecting Plaintiff Henry Pinto Sumoza's transfer between Security Guard and Warehouse Handler positions, including the dates, reasons, and approvals for each transfer.

**ANSWER: No responsive documents exist, as Plaintiff Pinto was not transferred. Plaintiff would fill in as security guard when the security guard was absent.**

89) All documents and communications supporting Defendant's contention that Plaintiff Henry Pinto Sumoza had "unsatisfactory performance in consistently and efficiently unloading cargo," including specific dates, witnesses, and performance metrics.

**ANSWER: StratAir has produced responsive documents including SAS-0001 through SAS-0012, Plaintiff Pinto Sumoza's complete personnel file, and StratAir's EEOC Position Statement regarding Plaintiff Pinto Sumoza.**

90) All documents and communications supporting Defendant's contention that Plaintiff Henry Pinto Sumoza "worked unapproved overtime," including dates, amounts, and whether he was paid for such overtime.

**ANSWER: StratAir has produced Plaintiff Pinto Sumoza's complete personnel file, and StratAir's EEOC Position Statement regarding Plaintiff Pinto Sumoza.**

91) All documents and communications supporting Defendant's contention that Plaintiff Henry Pinto Sumoza "left his post while covering for security," including the date, duration, witnesses, and any investigation.

**ANSWER: The contention is based on visual observations by StratAir. Therefore no written documents or communications exist.**

92) All documents and communications reflecting Plaintiff Alex Laffita Ortiz's transfer from inside the warehouse to outside work in November 2023, including the request, approval, and reason for transfer.

**ANSWER: Plaintiff Laffita Ortiz was not transferred. However, Plaintiff Laffita Ortiz's complete personnel file has been produced.**

93) All documents and communications reflecting Plaintiff Alex Laffita Ortiz's transfer from outside work back inside the warehouse in December 2023, including the reason and who made the decision.

**ANSWER: Objection. The request is nearly identical to Request 92. StratAir incorporates its answer to Request 92 herein.**

94) All documents and communications reflecting any reduction in Plaintiff Alex Laffita Ortiz's pay rate as a result of his December 2023 transfer from outside work to inside work.

**ANSWER: Plaintiff Laffita Ortiz was not transferred. In addition, the terms "outside work" and "inside work" are vague and ambiguous. Notwithstanding the foregoing objection, StratAir has produced Plaintiff Laffita Ortiz's complete personnel file.**

95) All documents and communications concerning statements by StratAir supervisor Armando Portales Viera that "all of the older StratAir employees needed to be replaced with new, younger workers" or similar statements.

**ANSWER: Objection. This request is duplicative Request 45. Request 45 already seeks all statements by supervisors, including Portales Viera, about age, older employees, and the need to hire younger workers.**

96) All documents and communications concerning Plaintiff Alex Laffita Ortiz's post- termination email to Defendant's President, including any response provided or investigation conducted.

**ANSWER: StratAir has produced the email that Plaintiff Laffita sent to StratAir's President in January 2024 following Plaintiff's termination. No response or investigation was necessary so there are no documents concerning "any response provided or investigation conducted."**

97) All documents and communications supporting Defendant's contention that Plaintiff Eyonny Prado Duran was a "problematic employee with poor performance," including specific instances, dates, and witnesses.

**ANSWER: StratAir has produced its Position Statement regarding Plaintiff Prado Duran and the selection/decision-making documents for the January 2024 reduction in force.**

98) All documents and communications supporting Defendant's contention that Plaintiff Eyonny Prado Duran "commonly had an excuse not to" perform tasks when given instructions, including specific examples and dates.

**ANSWER: This specific contention was based on personal and visual observation of StratAir during the course of job performance. Therefore, no responsive written documents exist.**

99) All documents and communications concerning Plaintiff Eyonny Prado Duran's transfer from night shift to day shift in October 2023, including the reason and approval.

**ANSWER: StratAir produced Plaintiff Prado Duran's complete personnel file.**

100) All documents reflecting Mr. Prado Duran's conversation with supervisor Lidier on or about January 14, 2024, regarding targeting of older workers.

**ANSWER: None.**

101) All documents and communications concerning Plaintiff Luis Same Gonzalo's transition from Security Guard to Warehouse Handler or Cargo Handler, including when the transition occurred and the reason.

**ANSWER: No responsive documents exist. Plaintiff Same Gonzalo testified that he requested to transfer from Security Guard to Warehouse/Cargo Handler.**

102) All documents and communications concerning any alleged investigation conducted by or at the direction of StratAir when Plaintiff Luis Same Gonzalo was terminated, including who conducted it, what was investigated, findings, and conclusions.

**ANSWER: No responsive documents exist.**

103) All documents reflecting communications from StratAir's manager Gisela to supervisor Javier that she "didn't want [Plaintiff Luis Same Gonzalo] to come to work anymore" or similar statements.

**ANSWER: No responsive documents exist, and Ms. Barrera has denied making any such statement.**

104) All documents and communications reflecting Plaintiff Luis Same Gonzalo's conversation with StratAir's human resources personnel following supervisor Javier's communication that Mr. Same Gonzalo should not return to work.

**ANSWER: None.**

105) All documents and communications concerning StratAir's determination that Plaintiff Luis Same Gonzalo "was not good for the company."

**ANSWER: The request is vague in that it does not identify who allegedly stated or determined Plaintiff Same Gonzalo was "not good for the company." StratAir has produced the documents related to the reduction in force as well as its EEOC Position Statement regarding Plaintiff Same Gonzalo.**

106) All documents and communications supporting Defendant's after-acquired evidence defense.

**ANSWER: StratAir has produced documents and reserves the right to supplement its production.**

107) All documents and communications supporting Defendant's mitigation defense or contention that Plaintiffs failed to mitigate damages.

**ANSWER: *See* Plaintiffs' interrogatory responses. StratAir reserves the right to supplement its production.**

108) All documents supporting Defendant's contention that Plaintiffs failed to exhaust administrative remedies.

**ANSWER: StratAir has produced EEOC documents and reserves the right to supplement its production.**

109) All documents supporting Defendant's assertion that Plaintiffs were not replaced by individuals outside their protected classes.

**ANSWER: StratAir has produced documents and reserves the right to supplement its production.**

110) All documents supporting Defendant's defense that it would have terminated Plaintiffs absent any impermissible motivating factor (same-decision defense).

**ANSWER: StratAir has produced documents and reserves the right to supplement its production.**

111) All documents and communications supporting Defendant's claim that Plaintiffs' positions were eliminated and not refilled, including: (a) documents showing that the job duties, functions, or work previously performed by Plaintiffs were not reassigned, redistributed, or performed by any other person after Plaintiffs' termination; (b) documents showing whether any employee, independent contractor, temporary worker, or staffing agency worker was hired, engaged, or assigned to perform the same or substantially similar work as any Plaintiffs between October 2023 and the present; (c) documents reflecting headcount, staffing levels, or workforce composition (including both employees and independent contractors) before and after the January 2024 layoff; (d) communications regarding use of independent contractors, temporary workers, or staffing agency workers to perform warehouse, cargo, or security work from October 2023 through the present; and (e) documents showing whether the volume or type of work performed at StratAir's Miami warehouse location decreased, remained the same, or increased after the January 2024 layoff.

**ANSWER: Objection. StratAir has not contended that "positions were eliminated and not refilled." As a result of the significant reduction in anticipated cargo volume and associated revenue, StratAir reduced the number of employees assigned to warehouse and cargo handling functions. The reduction was a headcount reduction driven by decreased workload and revenue, not an elimination of job classifications. The reduced volume of work no longer required the same staffing levels that had previously been necessary. Defendant objects to this Request as overly broad, unduly burdensome, and disproportionate to the needs of this case. StratAir does not engage individuals as independent contractors. Temporary workers or staffing agency workers are not employees of StratAir and are not relevant to any of Plaintiffs' claims alleged in the Amended Complaint.**

112) All documents and communications reflecting StratAir's backfill hiring, replacement hiring, position refilling, or the use of temporary workers, independent contractors, or staffing agency personnel to perform the work previously performed by any of the Plaintiffs from January 1, 2024, through the present, including: (a) the name and age of each worker; (b) their employment status (employee, independent contractor, temp, etc.); (c) their hire or engagement date; (d) their job duties; (e) whether they perform or performed the same or substantially similar work as any of the Plaintiffs; and (f) all documents reflecting the decision to hire or engage such workers.

**ANSWER: StratAir did not engage individuals as independent contractors. StratAir produced documents related to the reduction of staffing agency workers at SAS-0001 through SAS-0012. Defendant objects to this Request as overly broad, unduly burdensome, and disproportionate to the needs of this case to the extent it extends "through the present," more than two years after the events at issue, which is not relevant. Defendant further objects to this Request to the extent it seeks documents regarding independent contractors, temporary workers, or staffing agency workers, as such workers are not relevant to any claim in this action. Personal information related to employees is confidential and not relevant to any claim or defense in this action. Plaintiffs' Amended Complaint does not allege that employees (or other workers) were hired after the January 2024 RIF, so the request seeks documents that are not relevant to any claim.**

113) All documents and communications showing the dates when each independent contractor, temporary worker, or staffing agency worker began performing warehouse, cargo, or security work at the Miami location from October 1, 2023 through March 31, 2024, including start dates, onboarding dates, and first day of work.

**ANSWER: Other than names and schedules of workers (which StratAir has produced), StratAir does not have records related to any temporary workers or staffing agency workers in its possession, custody, or control. This request is duplicative of Requests 13(e) and 112. Request 13(e) already seeks "the dates of their engagement," and Request 112 seeks hire/engagement dates for all backfill workers. StratAir has produced the documents showing the staffing agency workers. Defendant objects because Plaintiffs' Amended Complaint does not mention independent contractors, temporary workers, or staffing agency workers. Plaintiffs' claims are based on the allegation that Defendant terminated Plaintiffs and retained younger employees with less seniority to perform the same or similar jobs. See Amended Complaint, Paragraphs 51, 86. Whether contractors, temporary workers, or staffing agency workers were engaged has no bearing on Plaintiffs' claims or any related defenses.**

114) All documents and communications reflecting severance offers, separation agreements, or settlement proposals made to any of the Plaintiffs.

**ANSWER: No responsive documents exist.**

115) All insurance policies that may provide coverage for Plaintiffs' claims, including employment practices liability insurance (EPLI) policies in effect from 2023 through the present.

**ANSWER: StratAir will produce the declarations page of the applicable employment practices liability insurance that relates to this action.**

116) Documents sufficient to show Defendant's net worth, gross revenues, profits, and financial condition for purposes of punitive damages, including tax returns, financial statements, and balance sheets for 2023, 2024, and 2025.

**ANSWER: Defendant objects to this Request as premature, overly broad, unduly burdensome, and disproportionate to the needs of the case. Discovery regarding Defendant's financial condition for purposes of punitive damages is premature at this stage of the litigation. Defendant further objects to the extent this Request seeks confidential, proprietary, and competitively sensitive financial information, including tax returns. The Plaintiffs' claims are regarding their selection for the January 2024 RIF, therefore the requested documents are not relevant to any claim in this action.**

117) All documents reflecting Defendant's net worth as of the date of Plaintiffs' terminations and as of the present.

**ANSWER: Defendant objects to this Request as premature, overly broad, and disproportionate to the needs of the case. Discovery regarding Defendant's net worth for purposes of punitive damages is premature at this stage of the litigation. To the extent this request is duplicative of Request 116, StratAir objects. To the extent the request's temporal**

**scope is "as of the present," the request is not relevant. It has been over two years since the January 2024 RIF.**

118) All EEOC charges filed against Defendant from January 1, 2022, through the present.

**ANSWER: StratAir has produced the EEOC charges filed by Plaintiffs. To the extent the request seeks EEOC charges of non-parties (without suggesting any such documents exist), StratAir objects to the request as seeking documents that are not relevant to any claim or defense in this action. Defendant further objects to the temporal scope of this Request to the extent it seeks EEOC charges "through the present" that are unrelated to Plaintiffs' claims. Defendant further objects to the extent this Request implicates the privacy interests of non-party employees.**

119) All position statements, responses, rebuttals, or submissions made by Defendant to the EEOC regarding any of the Plaintiffs' charges of discrimination.

**ANSWER: StratAir has produced responsive documents.**

120) All documents produced by Defendant to the EEOC in connection with any investigation of Plaintiffs' charges of discrimination.

**ANSWER: Defendant objects to this Request on the grounds that it is overbroad in scope. The Request seeks "all documents produced by Defendant to the EEOC in connection with any investigation of Plaintiffs' charges of discrimination," without any limitation as to time period, subject matter, or relevance to the specific claims at issue in this litigation. The EEOC's investigative files may encompass a wide range of materials, many of which may bear no relevance to the matters presently in dispute. The Request, as drafted, would impose an undue burden on Defendant by requiring the identification, review, and production of potentially voluminous documents without regard to whether such documents are reasonably calculated to lead to the discovery of admissible evidence or are proportional to the needs of the case.**

121) All correspondence between Defendant and the EEOC regarding Plaintiffs' charges from 2024 through the present.

**ANSWER: StratAir has produced the EEOC position statements and related documents for each Plaintiff.**

122) All written, recorded, or otherwise memorialized statements (including but not limited to signed statements, affidavits, declarations, recorded interviews, transcripts, summaries, notes, or reports) obtained from any witness, including any party, employee, agent, or third party, concerning the facts, allegations, or events described in the Complaint or otherwise related to the claims and defenses in this action, that are in the possession, custody, or control of Defendant, its attorneys, agents, or representatives.

**ANSWER: StratAir has produced the sworn declaration of Armando Portales Viera. No other responsive documents (other than work product notes created by StratAir's counsel) exist.**

123) All documents and communications reflecting training, orientation, job instruction, or onboarding provided by any of the Plaintiffs to any employee, independent contractor, or temporary worker of StratAir from July 1, 2023, through January 31, 2024, including: (a) training schedules or assignments showing which employees were assigned to train new hires; (b) training logs, sign-in sheets, or attendance records; (c) communications between supervisors and Plaintiffs regarding training responsibilities; (d) the names, ages, dates of birth, race, color, national origin, and employment status (employee vs. contractor) of persons trained by each Plaintiff; (e) the dates training occurred; (f) the specific job duties or tasks for which training was provided; and (g) whether the persons trained by any of the Plaintiffs were retained in the January 2024 layoff or remained employed thereafter.

**ANSWER: Defendant objects to this Request as overly broad and unduly burdensome in the breadth of subcategories of information sought. The request seeks documents that are not relevant to any claim or defense in this action. Defendant further objects to this Request to the extent it seeks documents regarding independent contractors or temporary workers, which are not the subject of Plaintiffs' Amended Complaint, and StratAir did not engage independent contractors.**

124) All documents and communications reflecting any investigation conducted by Defendant regarding the allegations in this lawsuit, excluding attorney-client privileged communications and attorney work product created after the filing of this lawsuit.

**ANSWER: No responsive documents exist.**

125) All documents identified, referenced, or described in Defendant's Rule 26(a) Initial Disclosures or any supplemental disclosures served in this matter.

**ANSWER: StratAir has produced the documents identified in its Rule 26(a) Initial Disclosures.**

126) All documents reviewed, consulted, relied upon, or referenced by Defendant or any person acting on Defendant's behalf in preparing, drafting, or formulating responses to any interrogatory propounded by Plaintiffs in this action.

**ANSWER: Objection. The selection and compilation of documents in preparation for responding to discovery constitutes protected attorney work product. In addition,**

**Plaintiffs served 7 separate sets of interrogatories, thus this request is vague, overbroad, and would be unduly burdensome for StratAir.**

127) All documents that StratAir intends to rely upon in support of its defenses or affirmative defenses in this case.

**ANSWER: StratAir has produced responsive documents and reserves the right to supplement its production.**

128) All documents that StratAir intends to introduce as exhibits at trial.

**ANSWER: StratAir has produced responsive documents and reserves the right to supplement its production.**

129) All documents and communications defining, identifying, or describing the decisional unit for StratAir's January 2024 layoff or reduction in force, including all positions, departments, locations, shifts, or job classifications from which employees were considered or selected for termination. Additionally, for the same time periods (pre-layoff and post- layoff), provide the same information for all independent contractors, temporary workers, and staffing agency personnel performing warehouse, cargo, security, or related work at StratAir's Miami location.

**ANSWER: StratAir has produced responsive documents. *See* SAS-0001 through SAS-0012. StratAir did not engage individuals as independent contractors.**

130) A comprehensive list or spreadsheet of every employee in the decisional unit for the January 2024 layoff, whether terminated or retained, showing for each employee: (a) full name; (b) date of birth or age as of January 13, 2024; (c) job title; (d) department; (e) location; (f) shift; (g) hire date; (h) length of service in years and months; (i) race/ethnicity; (j) national origin; (k) gender; (l) salary or hourly rate as of January 2024; (m) whether selected for termination or retained; (n) if selected for termination, all stated reason(s) for selection; and (o) if retained, all stated reason(s) for retention.

**ANSWER: StratAir has produced responsive documents. *See* SAS-0001 through SAS-0012. To the extent the request seeks further documents, none exist. StratAir is not required to create documents it does not already maintain to comply with Request 130 and therefore objects.**

131) All documents reflecting total headcount of all persons performing work at StratAir's Miami warehouse location (including employees, independent contractors, temporary workers, and staffing agency workers) broken down by age group (persons under age 40 and persons age 40 or over) as of: (a) January 1, 2023; (b) July 1, 2023; (c) October 1, 2023; (d) December 15, 2023 (pre-layoff); (e) January 13, 2024 (immediately before layoff); (f) January 31, 2024 (immediately after layoff); (g) March 1, 2024; (h) June 1, 2024; (i) September 1, 2024; (j) January 1, 2025; (k) June 1, 2025; (l) January 1, 2026; and (m) the date of Defendant's response to these Requests for Production, further broken down by: (i) employment status (employee vs. independent contractor/temporary worker/staffing agency worker); (ii) position type or job classification; (iii) department; and (iv) shift.

**ANSWER: This request is duplicative of Request 33, which seeks demographic at the same 13 dates for the same workforce. StratAir incorporates its response and objections to Request 33 herein.**

132) All documents and communications showing or concerning how selection criteria were applied to individual employees or independent contractors in, considered for, or excluded from the decisional unit for StratAir's January 2024 layoff or reduction in force, including:

(a) Any scores, ratings, rankings, performance metrics, attendance data, productivity measurements, efficiency ratings, or evaluations used to compare or assess any person for purposes of selecting individuals for termination, retention, or continued engagement;

(b) Any age-related or age-correlated factor considered in the selection process, including but not limited to years of service, length of employment, seniority, proximity to retirement eligibility, tenure, compensation level, salary, hourly wage rate, benefit accrual, or cost to StratAir;

(c) Documents identifying which persons or categories of persons were included in or excluded from the decisional unit or from evaluation under the selection criteria, and the stated reasons for each inclusion or exclusion;

(d) Documents showing whether independent contractors, temporary workers, or staffing agency workers performing warehouse, cargo, or security work were: (i) evaluated using the same criteria as employees; (ii) evaluated using different criteria than employees; or (iii) excluded from evaluation entirely; and

(e) Documents showing whether any specific independent contractor, temporary worker, or staffing agency worker performing the same or similar work as any terminated employee was individually considered for termination of their contract or engagement.

**ANSWER: The following documents were produced on July 15, 2026, following entry of the Confidentiality Order, and are responsive to this Request to the extent they concern the January 2024 reduction in force, the employees considered for or selected in that reduction in force, the criteria or reasons reflected in the produced materials, and related personnel, roster, demographic, policy, and EEOC materials: Email re: "List for Possible Termination" (SAS-0001 through SAS-0002); Email re: "Roster con Posibles Bajas por Dep"**

**(SAS-0003); ROSTER WH DICIEMBRE 13.xlsx / Employee Rosters and Schedules (SAS-0005 through SAS-0011); Employee Information/Demographic Summary for Separated Employees (SAS-0012); Personnel Files and Employee Information (SAS-0013 through SAS-0155); 2024 Employee Handbook (SAS-0291 through SAS-0349); EEOC Position Statement re: Ivan Grant, Charge No. 510-2024-10746 (SAS-0395 through SAS-0400); EEOC Position Statement re: Henry A. Pinto Sumoza, Charge No. 510-2024-10344 (SAS-0401 through SAS-0409); EEOC Position Statement re: Luis Same Gonzalo, Charge No. 510-2024-10352 (SAS-0410 through SAS-0417); EEOC Position Statement re: Luis R. Rodriguez Ceruto, Charge No. 510-2024-10351 (SAS-0418 through SAS-0433); EEOC Position Statement re: Raisyl Cepero Garcia, Charge No. 510-2024-10345 (SAS-0434 through SAS-0441); EEOC Position Statement re: Eyonny Prado, Charge No. 510-2025-00949 (SAS-0442 through SAS-0449); and EEOC Position Statement re: Alex Laffita Ortiz, Charge No. 510-2025-00772 (SAS-0450 through SAS-0458).**

133) All aggregate statistical analyses, demographic reports, headcount summaries, workforce planning documents, cost-benefit analyses, or summary data compilations created or used by Defendant's management or human resources personnel from October 2023 through January 31, 2024 showing or analyzing:

(a) The age distribution of the workforce (including employees, independent contractors, temporary workers, and staffing agency workers) at the Miami warehouse location;

(b) The age composition of persons selected for termination or contract non-renewal versus persons retained or newly engaged;

(c) Demographic breakdowns (by age, race, or national origin) of the workforce (including both employees and independent contractors) before and after the January 2024 layoff;

(d) Any summary or aggregate comparison of the ages, tenure, compensation, or cost to Defendant of employees selected for layoff versus employees retained or versus independent contractors engaged or retained;

(e) Any analysis of whether the layoff selection would have disparate impact on employees age 40 or over;

(f) Any analysis, comparison, or evaluation of the cost, benefits, or workforce implications of using independent contractors, temporary workers, or staffing agency workers versus retaining employees;

(g) Any analysis of the demographic composition (including age distribution) of independent contractors, temporary workers, or staffing agency workers performing work at StratAir's Miami warehouse location;

(h) Any workforce planning documents analyzing staffing needs, headcount projections, or decisions to utilize contractors versus employees; or

(i) Any explanation, memorandum, or management decision document regarding why certain categories of workers (employees vs. independent contractors) were or were not subject to the reduction in force, excluding any documents created by or at the direction of legal counsel and any documents containing legal advice, legal opinions, or litigation strategy.

**ANSWER: The following documents were produced on July 15, 2026, following entry of the Confidentiality Order, and are responsive to this Request to the extent they concern the January 2024 reduction in force, the employees considered for or selected in that reduction in force, the criteria or reasons reflected in the produced materials, and related personnel, roster, demographic, policy, and EEOC materials: Email re: "List for Possible Termination" (SAS-0001 through SAS-0002); Email re: "Roster con Posibles Bajas por Dep" (SAS-0003); ROSTER WH DICIEMBRE 13.xlsx / Employee Rosters and Schedules (SAS-0005 through SAS-0011); Employee Information/Demographic Summary for Separated Employees (SAS-0012).**

134) All documents reflecting any other reductions in force, layoffs, workforce reductions, or mass terminations conducted by Defendant at the Miami location or any other location from January 1, 2020, through the present, including: (a) the number of employees or independent contractors affected; (b) demographic breakdowns by age, race, and national origin; (c) positions affected; (d) stated business reasons; and (e) any analyses conducted regarding the demographic impact.

**ANSWER: See response to No. 132 above as if set forth herein. In addition, StratAir did not conduct any other reductions in force during the time period requested.**

135) Documents sufficient to calculate the selection rate (percentage or proportion selected for termination, layoff, or contract non-renewal) for persons under age 40 compared to persons age 40 and over in connection with StratAir's January 2024 reduction in force, including:

(a) The total number of employees in each age group (under 40 and 40+) in the decisional unit as of January 13, 2024, and the number of employees in each age group selected for termination;

(b) The total number of independent contractors, temporary workers, and staffing agency workers performing warehouse, cargo, or security work at the Miami location in each age group (under 40 and 40+) as of January 13, 2024;

(c) The number of independent contractors, temporary workers, or staffing agency workers in each age group (under 40 and 40+) whose contracts, assignments, or engagements were terminated or not renewed in connection with the January 2024 workforce reduction;

(d) The total number of persons (employees plus independent contractors, temporary workers, and staffing agency workers combined) in each age group (under 40 and 40+) performing warehouse, cargo, or security work at StratAir's Miami location as of January 13, 2024;

(e) The total number of persons in each age group (under 40 and 40+) whose employment, contract, assignment, or engagement ended (whether through termination, layoff, or contract non-renewal) in connection with the January 2024 workforce reduction;

(f) The number of independent contractors, temporary workers, or staffing agency workers in each age group (under 40 and 40+) newly engaged or hired to perform warehouse, cargo, or security work at the Miami location from October 1, 2023 through March 31, 2024; and

(g) Documents showing Defendant's definition of the "decisional unit" for the January 2024 layoff and the criteria used to determine which persons or categories of workers were included in or excluded from that unit.

**ANSWER: The following documents were produced on July 15, 2026, following entry of the Confidentiality Order, and are responsive to this Request to the extent they concern the January 2024 reduction in force, the employees considered for or selected in that reduction in force, the criteria or reasons reflected in the produced materials, and related personnel, roster, demographic, policy, and EEOC materials: Email re: "List for Possible Termination" (SAS-0001 through SAS-0002); Email re: "Roster con Posibles Bajas por Dep" (SAS-0003); ROSTER WH DICIEMBRE 13.xlsx / Employee Rosters and Schedules (SAS-0005 through SAS-0011); Employee Information/Demographic Summary for Separated Employees (SAS-0012); Personnel Files and Employee Information (SAS-0013 through SAS-0155); 2024 Employee Handbook (SAS-0291 through SAS-0349); EEOC Position Statement re: Ivan Grant, Charge No. 510-2024-10746 (SAS-0395 through SAS-0400); EEOC Position Statement re: Henry A. Pinto Sumoza, Charge No. 510-2024-10344 (SAS-0401 through SAS-0409); EEOC Position Statement re: Luis Same Gonzalo, Charge No. 510-2024-10352 (SAS-0410 through SAS-0417); EEOC Position Statement re: Luis R. Rodriguez Ceruto, Charge No. 510-2024-10351 (SAS-0418 through SAS-0433); EEOC Position Statement re: Raisyl Cepero Garcia, Charge No. 510-2024-10345 (SAS-0434 through SAS-0441); EEOC Position Statement re: Eyonny Prado, Charge No. 510-2025-00949 (SAS-0442 through SAS-0449); and EEOC Position Statement re: Alex Laffita Ortiz, Charge No. 510-2025-00772 (SAS-0450 through SAS-0458).**

136) Documents sufficient to calculate the selection rate (percentage or proportion selected for termination, layoff, or contract non-renewal) for Black employees compared to non-Black employees, and for employees from the Virgin Islands or Puerto Rico compared to employees from other national origins, in connection with StratAir's January 2024 layoff or reduction in force, including:

(a) The total number of employees in each racial group (Black vs. non-Black) in the decisional unit as of January 13, 2024, and the number of employees in each group selected for termination;

(b) The total number of employees by national origin (Virgin Islands, Puerto Rico, Cuba, Colombia, other Hispanic countries, and other) in the decisional unit as of January 13, 2024, and the number in each group selected for termination;

(c) The total number of independent contractors, temporary workers, and staffing agency workers performing warehouse, cargo, or security work at the Miami location by race (Black vs. non-Black) as of January 13, 2024;

(d) The total number of independent contractors, temporary workers, and staffing agency workers performing warehouse, cargo, or security work at the Miami location by national origin (Virgin Islands, Puerto Rico, Cuba, Colombia, other Hispanic countries, and other) as of January 13, 2024;

(e) The number of independent contractors, temporary workers, or staffing agency workers in each racial group whose contracts, assignments, or engagements were terminated or not renewed in connection with the January 2024 layoff or workforce reduction;

(f) The total number of persons (employees plus contractors) in each racial group performing warehouse, cargo, or security work at the Miami location as of January 13, 2024;

(g) The total number of persons (employees plus contractors) by national origin performing warehouse, cargo, or security work at the Miami location as of January 13, 2024;

(h) The total number of persons in each racial group whose employment, contract, or engagement ended in connection with the January 2024 workforce reduction; and

(i) The number of contractors in each racial group and national origin category newly engaged from October 1, 2023 through March 31, 2024."

**ANSWER: StratAir did not track the national origins of its employees. No responsive documents related to race exist and StratAir is not required to create a document to satisfy a request for production.**

137) All contracts, agreements, statements of work, or arrangements between Defendant and any staffing agency, temporary employment agency, professional employer organization (PEO), or labor contractor for the provision of workers to the Miami warehouse location from January 1, 2023, through the present.

**ANSWER: Defendant objects to this Request in its entirety as seeking information that is not relevant to any party's claim or defense and not proportional to the needs of this case. Plaintiffs' Amended Complaint does not mention staffing agencies, temporary employment agencies, professional employer organizations, or labor contractors. Plaintiffs' claims are based on the allegation that Defendant terminated Plaintiffs and retained younger employees with less seniority to perform the same or similar jobs. See Amended Complaint, Paragraphs 51, 86. Whether contractors, temporary workers, or staffing agency workers were engaged has no bearing on Plaintiffs' claims or any related defenses. This request is also duplicative of Request 13(a), which seeks "contracts or agreements with staffing agencies or individual contractors." Notwithstanding the foregoing, StratAir does not have records related to any temporary workers or staffing agency workers in its possession, custody, or control and does not engage independent contractors.**

138) All invoices, billing statements, or payment records from any staffing agency, temporary employment agency, or independent contractor for services provided at the Miami warehouse location from January 1, 2024, through the present.

**ANSWER: Defendant objects to this Request in its entirety as seeking information that is not relevant to any party's claim or defense and not proportional to the needs of this case. This Request is also duplicative of Request 13(c), which already seeks names, ages, dates of birth, engagement dates, job duties, work locations, and positions of all non-employee workers. Notwithstanding the foregoing, StratAir does not have records related to any temporary workers or staffing agency workers in its possession, custody, or control and does not engage independent contractors.**

139) All documents identifying by name, age, date of birth, race, national origin, and job duties every independent contractor, temporary worker, staffing agency worker, leased employee, or other non-employee worker who performed warehouse, cargo handling, cargo loading, or security work at the Miami location from January 1, 2024, through the present.

**ANSWER: No responsive documents exist, as StratAir does not have access to the employee files or personal information of the temporary or staffing agency workers. The time period after the January 2024 reduction in force is not relevant to any claim or defense in this action. StratAir does not engage individuals as independent contractors.**

140) All work orders, job assignments, task assignments, or shift schedules for independent contractors, temporary workers, or staffing agency personnel working at the Miami location from January 1, 2024, through the present.

**ANSWER: The following documents were produced on July 15, 2026, following entry of the Confidentiality Order, and are responsive to this Request to the extent they concern the January 2024 reduction in force and the work assignments and schedules for workers: Email re: "List for Possible Termination" (SAS-0001 through SAS-0002); Email re: "Roster con Posibles Bajas por Dep" (SAS-0003); ROSTER WH DICIEMBRE 13.xlsx / Employee Rosters and Schedules (SAS-0005 through SAS-0011); Employee Information/Demographic Summary for Separated Employees (SAS-0012); Personnel Files and Employee Information (SAS-0013 through SAS-0155); 2024 Employee Handbook (SAS-0291 through SAS-0349). StratAir does not engage individuals as independent contractors.**

141) All documents reflecting the total number of workers (combining both direct employees and independent contractors/temporary workers) performing warehouse, cargo handling, cargo loading, or security functions at StratAir's Miami location as of: (a) January 1, 2024; (b) February 1, 2024; (c) March 1, 2024; (d) June 1, 2024; (e) January 1, 2025; and (f) the present, broken down by age (under 40 vs. 40 and over), race (Black vs. non-Black), national origin, and employment status (employee vs. contractor/temp).

**ANSWER: The following documents were produced on July 15, 2026, following entry of the Confidentiality Order, and are responsive to this Request to the extent they concern the January 2024 reduction in force, the employees considered for or selected in that reduction in force, the criteria or reasons reflected in the produced materials, and related**

**personnel, roster, demographic, policy, and EEOC materials: Email re: "List for Possible Termination" (SAS-0001 through SAS-0002); Email re: "Roster con Posibles Bajas por Dep" (SAS-0003); ROSTER WH DICIEMBRE 13.xlsx / Employee Rosters and Schedules (SAS-0005 through SAS-0011); Employee Information/Demographic Summary for Separated Employees (SAS-0012). StratAir did not engage individuals as independent contractors.**

142) All documents reflecting the job duties, work assignments, or responsibilities of any independent contractor, temporary worker, or staffing agency employee working at StratAir's Miami location from January 1, 2024, through the present, including documents sufficient to determine whether such workers performed the same or substantially similar work as any Plaintiff.

**ANSWER: StratAir produced the following documents on July 15, 2026, following entry of the Confidentiality Order, which are responsive to this Request to the extent they concern the January 2024 reduction in force, the related work assignments: Email re: "List for Possible Termination" (SAS-0001 through SAS-0002); Email re: "Roster con Posibles Bajas por Dep" (SAS-0003); ROSTER WH DICIEMBRE 13.xlsx / Employee Rosters and Schedules (SAS-0005 through SAS-0011). StratAir does not engage individuals as independent contractors.**

143) All documents reflecting any decision, consideration, or discussion regarding whether to use independent contractors, temporary workers, or staffing agency personnel instead of retaining employees (including Plaintiffs) during or after the January 2024 layoff.

**ANSWER: The following documents were produced on July 15, 2026, following entry of the Confidentiality Order, and are responsive to this Request to the extent they concern the January 2024 reduction in force, the employees considered for or selected in that reduction in force, the criteria or reasons reflected in the produced materials, and related personnel, roster, demographic, policy, and EEOC materials: Email re: "List for Possible Termination" (SAS-0001 through SAS-0002); Email re: "Roster con Posibles Bajas por Dep" (SAS-0003); ROSTER WH DICIEMBRE 13.xlsx / Employee Rosters and Schedules (SAS-0005 through SAS-0011); Employee Information/Demographic Summary for Separated Employees (SAS-0012); Personnel Files and Employee Information (SAS-0013 through SAS-0155); 2024 Employee Handbook (SAS-0291 through SAS-0349); EEOC Position Statement re: Ivan Grant, Charge No. 510-2024-10746 (SAS-0395 through SAS-0400); EEOC Position Statement re: Henry A. Pinto Sumoza, Charge No. 510-2024-10344 (SAS-0401 through SAS-0409); EEOC Position Statement re: Luis Same Gonzalo, Charge No. 510-2024-10352 (SAS-0410 through SAS-0417); EEOC Position Statement re: Luis R. Rodriguez Ceruto, Charge No. 510-2024-10351 (SAS-0418 through SAS-0433); EEOC Position Statement re: Raisyl Cepero Garcia, Charge No. 510-2024-10345 (SAS-0434 through SAS-0441); EEOC Position Statement re: Eyonny Prado, Charge No. 510-2025-00949 (SAS-0442 through SAS-0449); and EEOC Position Statement re: Alex Laffita Ortiz, Charge No. 510-2025-00772 (SAS-0450 through SAS-0458).**

144) All communications between Defendant and any staffing agency, labor contractor, or independent contractor regarding the provision of workers to replace, supplement, or perform the work of employees terminated in the January 2024 layoff.

**ANSWER: Defendant objects to this Request in its entirety as seeking information that is not relevant to any party's claim or defense and not proportional to the needs of this case. This request is also duplicative of Requests 13 and 111(d). Request 13 broadly covers staffing agency engagement, and Request 111(d) already seeks "communications regarding use of independent contractors, temporary workers, or staffing agency workers." StratAir incorporates its responses to Requests 13 and 111 herein.**

145) All documents reflecting cost comparisons, budgetary analyses, or financial considerations regarding the use of independent contractors or temporary workers versus retaining direct employees in warehouse, cargo, or security positions from November 1, 2023, through the present.

**ANSWER: StratAir produced documents regarding the reduction of temporary workers. *See* SAS-0001 through SAS-0012. Defendant objects to this Request to the extent it seeks documents regarding independent contractors or temporary workers. Defendant further objects to the extent this Request seeks confidential, proprietary, and competitively sensitive financial information. This Request is also duplicative of Request 143. Request 143 already seeks all documents reflecting decisions about whether to use contractors instead of retaining employees; cost comparisons are a subset of that decision-making.**

146) All documents sufficient to identify which specific work tasks, job duties, or responsibilities previously performed by each Plaintiff were reassigned to: (a) retained employees; (b) newly hired employees; (c) independent contractors; (d) temporary workers; or (e) staffing agency personnel following each Plaintiff's termination.

**ANSWER: StratAir produced documents showing the full roster of employees and the employees terminated as part of the January 2024 reduction in force. This Request is duplicative Requests 111 and 112. Request 111(a) asks whether Plaintiffs' duties were reassigned, and Request 112 asks about backfill hiring and whether workers performed the same work as Plaintiffs.**

147) All Form 1099s, Form 1099-NECs, Form 1099-MISCs, or other tax documents issued to any independent contractor who performed warehouse, cargo, security, or related work at the Miami location for tax years 2023, 2024, and 2025.

**ANSWER: None, as StratAir does not engage individuals as independent contractors.**

148) All documents reflecting Defendant's policies, practices, or criteria for determining whether to classify workers as employees versus independent contractors for warehouse, cargo, or security positions.

**ANSWER: Defendant objects to this Request as seeking information that is not relevant to any party's claim or defense and not proportional to the needs of this case.**

**StratAir's classification of employees is not at issue in this case. StratAir does not engage individuals as independent contractors.**

Dated: July 21, 2026

**Nalani Alesia Gordon**
Roger W. Feicht (Florida Bar No. 84982)
rfeicht@gunster.com and lhagan@gunster.com
Nalani Alesia Gordon (Florida Bar No. 1010976)
ngordon@gunster.com and lmusco@gunster.com
GUNSTER YOAKLEY & STEWART, P.A.
777 S. Flagler Drive, Suite 500 East
West Palm Beach, FL 33401
Telephone: 561-655-1980
*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 21, 2026, a true and correct copy of the foregoing has been furnished by electronic mail to all parties on the Service List below.

**BRIAN H. POLLOCK, ESQ.**
brian@fairlawattorney.com
**P. BROOKS LAROU, ESQ.**
brooks@fairlawattorney.com
FAIRLAW FIRM
135 San Lorenzo Avenue
Suite 770
Coral Gables, Florida 33146
*Counsel for Plaintiffs*

*/s/ Nalani Alesia Gordon*
Nalani Alesia Gordon

ACTIVE:39934780.1