FairLaw Firm

135 San Lorenzo Avenue, Suite 770
Coral Gables, Florida 33146

TEL 305.230.4884 FAX 305.230.4844

www.fairlawattorney.com

May 7, 2026

Via Email Only
Roger W. Feicht, Esq.
Nalani Alesia Gordon, Esq.
Gunster, Yoakley & Stewart, P.A.
777 S. Flagler Drive, Suite 500 E.
West Palm Beach, FL 33401
rfeicht@gunster.com
ngordon@gunster.com

**Re:** ***Raisyl Cepero Garcia v. StratAir Aviation Services, LLC***
**Case No. 1:25-cv-24471-KMW**
***Ivan Grant, et al. v. StratAir Aviation Services, LLC***
**Case No.: 1:25-cv-24505-KMM**
**Conferral Regarding Discovery Responses**

Dear Roger and Nalani:

Please allow this letter to serve as Plaintiffs' conferral regarding StratAir's Responses and Objections to Plaintiffs' Interrogatories ("INTs"), Requests for Admission ("RFAs"), and Requests for Production ("RFPs") served on May 1, 2026, in the above consolidated actions. The discovery responses served by StratAir repeatedly rely on boilerplate objections, unsupported relevance objections, improper assertions of prematurity, blanket "assumes facts" objections, and wholesale refusals to produce plainly discoverable information central to Plaintiffs' claims and StratAir's defenses. We write in a good-faith effort to resolve these issues without Court intervention and request that StratAir withdraw the objections identified below and provide complete amended responses by **May 13, 2026**.

## I. Complete Failure to Produce Documents

We begin with the most fundamental deficiency: StratAir has not produced a single document in response to Plaintiffs' First Requests for Production in either consolidated matter, despite promising in its responses to produce documents in response to numerous individual requests.

In the *Grant* matter, StratAir pledged to produce, among other things: personnel files for each Plaintiff (RFP 14); communications between Corral, Portales Viera, and Barrera regarding the termination decisions (RFP 19); the organizational chart applicable to January 2024 (RFP 10); documents regarding the RIF selection criteria (RFPs 1 and 6); Plaintiff Grant's disciplinary warning (RFP 70); the applicable employee handbook (RFPs 47, 48, 79, and 84); EEOC position

statements (RFP 119); insurance declarations (RFP 115); and documents referenced in its Rule 26(a) initial disclosures (RFP 125).

In the *Cepero Garcia* matter, StratAir similarly pledged to produce: Plaintiff's complete personnel file (RFP No. 1); documents related to the decision to terminate Plaintiff's employment (RFP Nos. 2 and 3); leave request forms and communications from January 2024 (RFP No. 4); FMLA-related documents from January 2024 (RFP No. 5); Plaintiff's WhatsApp communications to management regarding his medical condition (RFP No. 6); documents regarding RIF selection criteria (RFP No. 7); all written policies and procedures governing FMLA administration, disability accommodations, and RIF procedures (RFP Nos. 15 and 16); employee handbooks and policy manuals in effect at the time of Plaintiff's termination (RFP No. 17); documents relating to allegations of Plaintiff's performance deficiencies (RFP No. 22); Plaintiffs' complete personnel files and aggregate RIF demographic data (RFP No. 23); documents supporting affirmative defenses (RFP No. 28); documents sufficient to identify positions affected by the RIF (RFP No. 50); and documents regarding positions considered in connection with the January 2024 RIF (RFP No. 51). Not a single one of these commitments has been fulfilled.

Rule 34(b)(2)(B) requires that an objecting party state whether it is withholding responsive materials; it does not permit a party to promise production and then produce nothing. StratAir's failure to produce a single document despite its array of commitments is independently improper and raises serious questions about whether StratAir has undertaken any meaningful search for responsive materials whatsoever. StratAir must produce all documents it has pledged to produce simultaneously with its supplemental responses. A continued failure to produce any documents will leave Plaintiffs no choice but to seek judicial intervention, including sanctions under Rule 37(b).

**II. <u>Complete Failure to Respond to Plaintiff Same Gonzalo's Interrogatories</u>**

A separate and independently sanctionable deficiency exists as to Plaintiff Luis Same Gonzalo: StratAir was served with Mr. Same Gonzalo's First Set of Interrogatories on March 18, 2026, comprising nineteen interrogatories directed to the specific facts of his termination, his transfer from a Security Guard position to Warehouse Handler, the alleged performance issues StratAir has cited, the decision-makers involved, comparator employees who were retained, post-RIF staffing with non-employee workers, and all facts supporting StratAir's denial of age discrimination. Responses were due thirty days after service — on or about April 17, 2026 — pursuant to Rule 33(b)(2). As of the date of this letter, StratAir has served no response whatsoever: no answers, no objections, and no verified response of any kind.

This is not a deficient response — it is a complete non-response. The consequences are significant. Rule 33(b)(4) provides that "[a]ny ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." Because StratAir served no response at all, it has waived every objection it might otherwise have raised — including privilege — to each of the nineteen

interrogatories. StratAir must serve complete, verified answers to all nineteen of Mr. Same Gonzalo's interrogatories — without objection, all objections having been waived by operation of Rule 33(b)(4) — by May 13, 2026.

## III. <u>Boilerplate General Objections</u>

StratAir incorporates broad "General Objections" into virtually every RFP response "as though fully set forth therein," including objections based on privilege, overbreadth, duplicativeness, and purported obligations beyond the Federal Rules. Courts in the Southern District of Florida routinely reject this practice. General objections untethered to specific requests fail to satisfy Rule 34 and do not preserve objections. If StratAir contends a specific objection applies to a particular request, it must explain with specificity how and why. Blanket incorporation by reference is improper and should be withdrawn.

## IV. <u>"Premature" Objections to Contention Interrogatories and Affirmative Defense Documents</u>

StratAir repeatedly objects that interrogatories and document requests are "premature" because discovery is ongoing or because contention discovery supposedly should await the close of fact discovery. These objections are improper. Rule 33(a)(2) expressly permits contention interrogatories, and courts routinely require parties to disclose the factual bases for their claims and defenses during fact discovery. StratAir has asserted affirmative defenses and substantive defenses to Plaintiffs' claims; it must therefore disclose the facts, witnesses, and documents supporting those positions.

This objection infects numerous interrogatories and document requests across both cases, including, without limitation:

- ***Grant* matter Interrogatories**: Grant INT Nos. 17 and 19; Laffita INT Nos. 18, 19, and 21; Pinto INT Nos. 8, 9, 15, and 20; Prado Duran INT Nos. 7 and 8; Rodriguez Ceruto INT Nos. 17 and 18; and INT2-Prado Nos. 1 and 2.

- ***Grant* matter RFPs**: Nos. 78, 106, 107, 108, 109, and 110.

- ***Cepero Garcia* matter**: INT Nos. 13 and 20; and RFP No. 28.

These requests seek, among other things, the factual basis for StratAir's denial of discrimination, the reasons Plaintiffs were selected for the January 2024 RIF, the factual basis for affirmative defenses, facts supporting StratAir's contentions regarding alleged performance deficiencies, and — with respect to RFP No. 78 specifically — documents supporting StratAir's contention that Plaintiff Rodriguez Ceruto was not eligible for FMLA leave, including hours-worked calculations

and worksite employee counts. By asserting affirmative defenses — including after-acquired evidence, failure to mitigate, failure to exhaust administrative remedies, the same-decision defense, and the "not replaced by outside-protected-class" defense — StratAir placed each of them directly at issue. Discovery is already well underway, and StratAir's own responses demonstrate that it possesses responsive facts. StratAir must withdraw its "premature" objections to these requests and provide substantive responses.

## V. <u>Relevance Objections to Comparator, Non-Party, and Workforce Information</u>

One of the most pervasive categories of objections concerns comparator employees, retained employees, staffing agency workers, temporary workers, and independent contractors. Across both consolidated matters, StratAir objects that such information is irrelevant because Plaintiffs allegedly assert only "individual" claims, do not plead "pattern-or-practice" claims, or do not expressly reference staffing agencies or contractors in the pleadings. These objections are legally incorrect.

StratAir's relevance objections to discovery concerning staffing agency workers, temporary workers, and purported independent contractors should be withdrawn because, under controlling federal law, an individual may have more than one employer for purposes of federal employment discrimination statutes, and entities that share or co-determine the essential terms and conditions of work may be treated as joint employers. *See, e.g., Peppers v. Cobb Cty.*, 835 F.3d 1289 (11th Cir. 2016)

The joint employer test is "relatively straightforward" and turns on whether one entity, while contracting in good faith with another company, "has retained for itself sufficient control of the terms and conditions of employment" of the other company's workers such that the entities "share or co-determine those matters governing the essential terms and conditions of employment." *Id.* Under this framework, discovery into staffing-agency and contractor workers who performed work at StratAir's facility, under StratAir's supervision, or subject to StratAir's work rules is directly relevant because it bears on whether StratAir exercised the requisite control to be deemed a joint employer and, in turn, whether those workers are part of the relevant workforce for comparator and pretext analysis.

Courts applying the joint employer doctrine in the Title VII context identify the right to terminate the work relationship as the most important indicator of control, and also consider additional indicia of control such as the ability to promulgate work rules and assignments, set conditions of employment (including compensation, benefits, and hours), day-to-day supervision and discipline, and control of employee records (including payroll, insurance, and taxes). *Knitter v. Corvias Military Living, LLC*, 758 F.3d 1214 (10th Cir. 2014). These are factual issues that cannot be resolved by pleading labels (e.g., "contractor" or "staffing agency worker") and instead require discovery into how StratAir actually structured and controlled the work.

Accordingly, where Plaintiffs seek discovery about staffing agency workers and purported contractors who performed similar work, were supervised by the same StratAir managers, were subject to the same work rules, or performed Plaintiffs' duties before and after the January 2024 reduction in force, that discovery is relevant to (1) whether StratAir was a joint employer of those workers and (2) whether StratAir's asserted nondiscriminatory explanations are credible or pretextual in light of how it staffed the work before and after Plaintiffs' terminations. Because joint employment turns on control over essential terms and conditions of work, StratAir cannot defeat relevance by asserting that these individuals were "not employees" as a categorical matter; the governing test requires a fact-intensive inquiry into StratAir's retained control, and Plaintiffs are entitled to discovery targeted to those control factors. *Peppers v. Cobb Cty.*, 835 F.3d 1289 (11th Cir. 2016); *Knitter v. Corvias Military Living, LLC*, 758 F.3d 1214 (10th Cir. 2014).

Finally, StratAir's attempt to wall off staffing-agency and contractor workforce information is also inconsistent with the comparator framework applied in this Circuit, which focuses on whether individuals are "similarly situated in all material respects" based on objective similarities such as the same basic conduct, the same employment policy, the same supervisor, and similar employment or disciplinary history. *Woods v. Waste Pro of Fla., Inc.*, No. 21-12610, 2022 U.S. App. LEXIS 17392 (11th Cir. June 24, 2022). Where staffing-agency workers or purported contractors performed the same work at the same site under StratAir's supervision and rules, evidence about their treatment, retention, discipline, and post-reduction-in-force utilization is probative of whether StratAir applied its asserted criteria consistently and whether its stated reasons for Plaintiffs' selection are pretextual.

StratAir acknowledged in certain responses that staffing agency workers performed duties previously performed by Plaintiffs — having done so, StratAir cannot plausibly maintain that discovery regarding those workers is irrelevant. The Federal Rules do not limit discoverable information to categories expressly mentioned in a complaint; Rule 26(b)(1) broadly permits discovery relevant to any claim or defense. To the extent StratAir invokes privacy concerns regarding non-party employees, the proper remedy is a reasonable protective order, not wholesale refusal. Plaintiffs are willing to negotiate an appropriate confidentiality arrangement or stipulated protective order.

These objections should be withdrawn from, at minimum:

- ***Grant* matter Interrogatories**: Grant INT No. 10; Laffita INT Nos. 15 and 19; Pinto INT Nos. 7 and 18; Prado INT No. 17; Rodriguez Ceruto INT No. 10; and Prado INT2 No. 1.

- ***Grant* matter RFPs**: Nos. 9, 10, 11, 12, 13, 21, 22, 23, 25, 26, 27, 28, 29, 30, 32, 33, 36, 38, 39, 87, 109, 111, 112, 113, 123, 129, and 132 through 148.

- ***Grant* matter RFAs**: Nos. 8, 10, 11, 13, 63, 71, 76, 87, 98, 103, and 112.

- ***Cepero Garcia* matter Interrogatories**: INT Nos. 7, 8, 12, 17, 18, and 24.

- ***Cepero Garcia* matter RFPs**: Nos. 8, 9, 11, 12, 13, 18, 19, 23, 24, 26, 30, 31, 32, 33, 34, 35, 36, and 37 through 49.

- ***Cepero Garcia* matter RFAs**: Nos. 26, 28, 29, 31, 34, 35, and 36.

## VI. Refusal to Identify Comparator Employees

Across both consolidated matters, StratAir refuses to identify by name the employees retained after the January 2024 RIF who held the same or similar positions as Plaintiffs or who allegedly had comparable or worse performance records. Instead, StratAir offers only unspecified "aggregate data," conditioning even that production on execution of a confidentiality agreement. This is insufficient. Plaintiffs are entitled to identify and investigate comparator employees, including through depositions and document discovery. Aggregated anonymous data is not an adequate substitute for responsive discovery.

These objections should be withdrawn from, at minimum:

- ***Grant* matter**: Grant INT Nos. 10 and 17; Laffita INT Nos. 15 and 19; Pinto INT Nos. 7 and 18; Prado Duran INT No. 17; Rodriguez Ceruto INT No. 10; RFP Nos. 9, 21, 22, 23, 25, 26, 27, 28, 29, 30, 32, 33, 36, 38, 39, 87, 111, 112, 113, 123, 129, and 132 through 148; and RFA Nos. 8, 10, 11, 13, 63, 71, 76, 87, 98, 103, and 112.

- ***Cepero Garcia* matter**: INT Nos. 7, 12, and 24; RFA Nos. 26, 34, 35, and 36; and RFP Nos. 8, 9, 23, 33, 34, 35, 36, and 38 through 40.

StratAir must identify comparator employees by name and provide responsive demographic and employment information — including age, race, national origin, disability status where applicable, position, disciplinary history, and the reasons for retention or termination — subject to any reasonable protective order.

## VII. Evasive Non-Answer to Interrogatories Through Contested Characterization

StratAir gave substantively identical non-answers to a multi-part interrogatory served by Plaintiff Cepero Garcia and by five of the six *Grant* Plaintiffs, each of which asked StratAir to state whether it contends that the Plaintiff's position was eliminated and not refilled; whether the duties previously performed by the Plaintiff were reassigned to other employees or contractors and to whom; whether any employee or contractor was hired or engaged to perform the same or

substantially similar work after January 2024 and if so, to identify each such person with their age and start date; and whether the total headcount of persons performing warehouse, cargo, or security work at the Miami location decreased, remained the same, or increased following the January 2024 layoff.

In response to Cepero Garcia INT No. 8, StratAir's entire response is: "As a result of the significant reduction in anticipated cargo volume and associated revenue, StratAir reduced the number of employees assigned to warehouse and cargo handling functions. The reduction was a headcount reduction driven by decreased workload and revenue, not an elimination of job classifications. The reduced volume of work no longer required the same staffing levels that had previously been necessary." StratAir provided word-for-word the same response to Grant INT No. 8, Laffita INT No. 5, Pinto INT No. 5, Prado INT No. 5, and Rodriguez Ceruto INT No. 5.

This recycled non-answer fails every Plaintiff equally and for the same reasons. It is not a response to the interrogatory — it is a litigation position statement dressed up as one. StratAir uses its preferred characterization of the January 2024 workforce reduction as a "headcount reduction" rather than a "position elimination" to sidestep all four prongs of the question entirely, without identifying a single position, a single job function, a single person who performed any of that work after January 2024, or the net change in total headcount.

That maneuver fails on its own terms. The first prong — whether StratAir contends the Plaintiff's position was eliminated — remains answerable even under StratAir's own framing. If the reduction eliminated no positions, StratAir must say so expressly. Instead, it substitutes a characterization for an answer, leaving each Plaintiff unable to evaluate whether the stated characterization is accurate or self-serving.

The second and third prongs are even more clearly unanswered. Whether the duties of each terminated Plaintiff were subsequently performed by any worker — and if so, by whom, at what age, and starting when — are freestanding factual questions that do not depend on whether one calls the reduction a "headcount cut" or a "position elimination." StratAir either knows who performed those duties after January 2024 or it does not, and it is obligated to say so directly for each Plaintiff. StratAir's own admission in response to Cepero RFA No. 30 — that "staffing agency workers performed some of the job duties previously performed by Plaintiff at various times from the date of Plaintiff's termination to the present" — confirms that responsive facts exist and have not been disclosed. StratAir's admission in response to Grant RFA No. 9, denying that no independent contractor, temporary worker, or staffing agency worker had their contract or engagement terminated as part of the January 2024 RIF, is similarly inconsistent with a complete absence of responsive information.

The fourth prong — the net change in total headcount — is entirely ignored by the boilerplate response. Whether the total number of persons performing warehouse, cargo, and security work at the Miami location (employees plus contractors) went up, down, or stayed flat after the January

2024 layoff is a straightforward factual question StratAir is capable of answering and must answer for each Plaintiff.

StratAir must provide complete supplemental responses to Cepero INT No. 8, Grant INT No. 8, Laffita INT No. 5, Pinto INT No. 5, Prado INT No. 5, and Rodriguez Ceruto INT No. 5, addressing each prong of the interrogatory directly: (1) whether it contends each Plaintiff's position was eliminated and not refilled; (2) whether the duties previously performed by each Plaintiff were reassigned and to whom; (3) the identity, age, and start date of any person hired or engaged to perform the same or substantially similar work after January 2024; and (4) whether the total headcount of persons performing warehouse, cargo, or security work at the Miami location decreased, remained the same, or increased following the January 2024 layoff.

**VIII. Relevance Objections to Training, Compliance, and RIF Procedure Materials**

StratAir objects to requests seeking training materials concerning the ADA, FMLA, ADEA, discrimination prevention, lawful reduction-in-force procedures, accommodations, and HR compliance on the ground that such materials are "not relevant." These objections are meritless. Whether StratAir trained its managers and HR personnel regarding anti-discrimination laws, FMLA obligations, ADA obligations, and lawful RIF procedures is directly relevant to intent, willfulness, notice, and whether StratAir took reasonable measures to comply with federal law. This issue is particularly significant given StratAir's admissions that it did not utilize written scoring criteria, did not create written evaluations or scoring sheets for any employee selected for the RIF, and did not conduct a statistical or adverse impact analysis in connection with the January 2024 layoff.

These objections should be withdrawn from, at minimum:

- ***Grant* matter**: RFP Nos. 50, 51, 52, 83, and 85; Pinto INT No. 20; and RFA No. 7.
- ***Cepero Garcia* matter**: INT No. 16; RFP No. 20; and RFAs Nos. 7 and 16.

**IX. Relevance Objections to Financial, Business Justification, and RIF Documents**

StratAir objects to requests seeking financial records, revenue information, staffing analyses, budget documents, client communications, and other materials supporting the January 2024 RIF on the ground that Plaintiffs challenge only their individual selection for termination and not the RIF itself. That objection misstates the law. Financial and business justification documents are directly relevant to whether StratAir's stated reasons for the RIF and Plaintiffs' selection are credible or pretextual. Courts routinely permit discovery into financial and operational records in RIF discrimination cases. In addition, because Plaintiffs seek punitive damages where available, financial condition discovery is relevant and proportional.

These objections should be withdrawn from, at minimum:

- ***Grant* matter**: RFP Nos. 2, 3, 4, 35, 116, and 117.
- ***Cepero Garcia* matter**: RFP Nos. 7 and 14.

StratAir must produce responsive financial statements, business analyses, revenue projections, staffing analyses, client communications, and documents sufficient to establish its net worth, revenues, profits, and financial condition for tax years 2023, 2024, and 2025.

### X. Objections to ADA/FMLA Coverage, Eligibility, and Interactive Process

In the *Cepero Garcia* matter, StratAir objects that requests asking it to admit ADA coverage, FMLA coverage, FMLA eligibility, and participation in the ADA interactive process improperly call for "legal conclusions." These objections are improper. Rule 36 expressly permits requests applying law to fact. Whether an employer meets statutory coverage thresholds or whether an employee was eligible for FMLA leave are classic applications of law to fact.

These objections should be withdrawn from, at minimum, Cepero RFAs Nos. 5, 6, 7, and 16, and Cepero INT No. 13. StratAir must withdraw these objections and provide substantive amended responses.

### XI. Relevance Objections to Prior EEOC Charges, Discrimination Complaints, and Similar Claims

StratAir objects to requests concerning prior EEOC charges, discrimination complaints, FMLA complaints, ADA complaints, and related litigation involving StratAir — in both the *Grant* and *Cepero Garcia* matters — on relevance and proportionality grounds, contending that complaints by other employees have "little, if any, bearing" on Plaintiffs' individual claims. This objection is incorrect. Prior complaints alleging similar statutory violations are plainly relevant to notice, intent, willfulness, and whether StratAir maintained discriminatory practices or failed to remedy known compliance deficiencies. The requested temporal scopes are reasonable and proportional.

These objections should be withdrawn from, at minimum:

- ***Grant* matter**: Grant INT No. 21; Laffita INT Nos. 8 and 9; and RFP Nos. 53, 54, and 61.
- ***Cepero Garcia* matter**: INT No. 19; RFAs Nos. 39, 40, and 41; and RFPs Nos. 25 and 26.

**XII. Improper "Assumes Facts" Objections**

StratAir deploys "assumes facts" objections not only in response to Requests for Admission, but also in response to Interrogatories and Requests for Production, where they are equally improper.

In the *Cepero Garcia* matter, StratAir objects to Interrogatory No. 14 — which asks whether StratAir provided Plaintiff with any FMLA notices and, if so, the type and date of each — on the ground that the interrogatory "assumes facts not in evidence regarding the nature and content of Plaintiff's communications." This objection does not excuse a substantive response. Whether or not StratAir believes that Plaintiff's communications triggered FMLA notice obligations, Interrogatory No. 14 asks a simple factual question: what FMLA notices, if any, did StratAir provide? That question stands independent of any characterization of Plaintiff's communications. StratAir's response — pointing generally to Rule 33(d) documents reflecting its standard FMLA policies — does not answer whether specific statutory notices (eligibility notices, rights and responsibilities notices, or designation notices) were actually issued to Plaintiff individually. StratAir must provide a complete, direct response to Interrogatory No. 14 without the "assumes facts" qualifier.

In the *Cepero Garcia* matter, StratAir objects to RFP No. 4 — which requests all documents relating to Plaintiff's requests for medical leave in January 2024, including request forms, emails, text messages, and communications with supervisors and HR — on the ground that the request "assumes facts, specifically that Plaintiff requested medical leave in January 2024." This objection does not excuse production. The request asks for documents that exist regardless of how the underlying communications are legally characterized. StratAir itself acknowledged in its Answer that Plaintiff communicated with StratAir about a need for time off in January 2024. Whether those communications constitute a legally cognizable FMLA leave request is a merits question; it does not determine whether documents reflecting those communications are producible. StratAir must produce all responsive documents without qualification.

StratAir similarly objects to Cepero RFP No. 10 — which requests all documents showing the job duties of each position eliminated in the January 2024 RIF and whether those duties were subsequently performed by other workers — on the ground that the request "assumes facts, specifically that positions were eliminated in the January 2024 RIF." StratAir then uses this semantic position — that the RIF was a "headcount reduction" rather than a position "elimination" — to assert that no responsive documents exist at all. This argument elevates wordplay over substance. Whether StratAir characterizes the workforce reduction as a headcount reduction or a position elimination, RFP No. 10 plainly seeks documents showing what work the terminated employees performed and whether anyone subsequently performed that same work. StratAir's own admission in response to RFA No. 30 — that staffing agency workers performed some of the job duties previously performed by Plaintiff after his termination — confirms that the underlying facts are genuinely in dispute and that responsive documents either exist or must be

affirmatively accounted for. StratAir must provide a complete response to RFP No. 10 regardless of how it characterizes the nature of the January 2024 workforce reduction.

The following *Grant* matter RFA is also infected by the same "assumes facts" deficiency and require amendment:

- **RFA No. 121**: "Admit that StratAir did not provide Plaintiff Luis Rodriguez Ceruto with written notice of his eligibility for FMLA leave in 2023 or early 2024." StratAir objected that the request "assumes facts" regarding Ceruto's eligibility for or request of FMLA leave.

Whether the predicate facts underlying any of these requests are disputed does not excuse a failure to respond. Rule 36 permits a responding party to qualify an admission or denial based on disputed predicates; it does not permit substituting an "assumes facts" objection for any substantive response at all. StratAir must supplement Cepero INT No. 14, Cepero RFP Nos. 4 and 10, Grant RFA No. 121, and Laffita INT Nos. 10, 11, and 20 with proper responses.

## XIII. Compound and Argumentative Objections to RFAs

Rule 36 does not permit a party to refuse to answer, or to provide only a qualified answer, on the grounds that a request is "compound" or "argumentative." To the extent a request contains multiple factual propositions, the proper response is to admit one, deny another, and explain any qualification — not to use the compound nature of the request as a shield against any substantive response. Similarly, characterizing a request as "argumentative" is not a recognized basis for objection under Rule 36.

StratAir responded to RFA No. 3 — which asks StratAir to admit that decisions about which employees to select for the January 2024 layoff were made based on subjective evaluations by supervisors rather than objective, quantifiable performance metrics — with the objection that the request is "argumentative" and "presents a false and forced dichotomy between 'subjective evaluations' and 'objective, quantifiable performance metrics.'" StratAir then denies, subject to that objection. While StratAir may deny the request, it may not condition or qualify its denial by characterizing the request as argumentative. The denial stands on its own. StratAir must withdraw the argumentative objection and provide a clean, unqualified response to RFA No. 3.

StratAir responded to RFA No. 25 — which asks StratAir to admit that Gisela Barrera did not have personal, first-hand knowledge of the day-to-day performance of day shift employees and relied on day shift supervisors in selecting them for termination — by objecting that the request is "compound," because the first clause asks about Barrera's personal knowledge and the second asks about her reliance on supervisors' input. StratAir likewise objected to RFA No. 60 — which asks StratAir to admit that Barrera's decision to select Plaintiff Grant for termination was based in part on input or evaluations provided by supervisors Jose or Portales Viera — as "compound" because

it combines multiple discrete factual inquiries into a single request. StratAir raised the same compound objection to RFA No. 73, which asks whether an employee whom Plaintiff Laffita trained in late 2023 was retained following the January 2024 layoff, and to RFA No. 74, which asks whether supervisor Jose supervised Mr. Laffita and provided evaluations of his performance to decision-makers. A finding that a request is compound does not excuse StratAir from providing a complete response; it means StratAir must admit the portions it can and deny or explain the rest. StratAir must supplement its responses to RFA Nos. 3, 25, 60, 73, and 74 with proper admissions, denials, or Rule 36-compliant explanations that do not use the compound or argumentative characterization as a substitute for a substantive answer.

## XIV. Improper Custodian Limitations on Communications Requests

StratAir responds to numerous RFPs seeking communications referencing Plaintiffs, their ages, their race and national origin, and age-related language — including RFP Nos. 34, 37, 38, 40, 41, 42, 43, and 44 — by objecting that the requests are "overbroad" and then unilaterally limiting its promised production to only three named custodians: Jorge Corral, Gisela Barrera, and Armando Portales Viera, and in many instances to a shortened time window of its own choosing.

This approach is improper for two independent reasons. First, the fact that a request encompasses a broad subject area is not a basis for unilaterally substituting a narrower production without agreement or court order. If StratAir contends a request is overbroad, it must state that objection with specificity and explain why the burden is disproportionate — it may not simply self-select a subset of custodians and produce only their documents while withholding everything else. Second, the three-custodian limitation is substantively inadequate. StratAir's own interrogatory responses identify Jose Alverio ("Bori"), Lidier Leon, Wilson Dorado, and supervisor Javier as having participated in or provided input to the termination decisions. Communications from or to these individuals referencing Plaintiffs, their ages, their race and national origin, and age-related language during the relevant period are directly responsive to the requests and cannot be withheld simply because those supervisors were not among the three custodians StratAir chose to include.

For RFP No. 34, StratAir objects to producing "all communications" referencing any Plaintiff by name from November 2023 through February 2024 as overbroad, claiming not every such communication is relevant. Communications referencing each Plaintiff by name among their supervisors and HR personnel during the months immediately preceding and following their termination are squarely within the scope of Rule 26(b)(1) and require no further justification. For RFP No. 40, StratAir objects to producing all communications referencing Plaintiffs' ages as overbroad and "not limited to any relevant time frame." The request itself defines the time frame; StratAir's overbreadth objection to this centrally relevant category of communications should be withdrawn.

StratAir must conduct a full custodial search encompassing, at minimum, Jorge Corral, Gisela Barrera, Armando Portales Viera, Jose Alverio, Lidier Leon, Wilson Dorado, and supervisor Javier, and must produce all non-privileged responsive communications referencing Plaintiffs, their ages, their race and national origin, and age-related language for the period from October 2023 through February 2024, in response to Grant RFP Nos. 34, 37, 38, 40, 41, 42, 43, and 44.

## XV. "Decisional Unit" as Legal Term Objections

StratAir objects to Grant RFPs Nos. 30, 32, and 129 — which seek documents reflecting performance rankings and comparisons of employees considered in the January 2024 RIF selection process, categorizations of those employees as strong or weak performers, and documents defining or describing the scope of employees from which selections were made — on the ground that the term "decisional unit" is "a legal term of art" whose meaning "is determined by the Court." StratAir raised the same objection to Grant RFA No. 8, which asks StratAir to admit that independent contractors, temporary workers, and staffing agency workers who performed work at the Miami location in January 2024 were excluded from the decisional unit for the layoff.

This objection is unpersuasive. The underlying concept — which individuals StratAir actually considered together when making RIF selection decisions — is a straightforward factual inquiry. Plaintiffs are not asking StratAir to make a legal ruling or to endorse any particular legal framework; they are asking StratAir to identify the population of individuals StratAir itself considered when conducting the January 2024 workforce reduction. Whether courts ultimately apply the ADEA's "decisional unit" doctrine to the facts of this case is irrelevant to whether StratAir must disclose the facts of its own decision-making process. StratAir must withdraw this objection and respond fully to Grant RFPs Nos. 30, 32, and 129, and Grant RFA No. 8.

## XVI. Improper Privacy Objections

StratAir deploys privacy objections as a basis for withholding or limiting responsive information across several distinct categories of discovery in both the *Grant* and *Cepero Garcia* matters. In each instance, the proper response to legitimate privacy concerns is a mutually agreed or court-ordered protective order — not unilateral withholding. As the party claiming that privacy concerns justify non-production, StratAir bears the burden of demonstrating that protection is warranted; blanket invocations of privacy without particularized justification do not satisfy that burden.

### A. Comparator Employee Names and Personnel Records

The most pervasive use of privacy objections concerns the identity and personnel records of retained employees and other comparators. Across the RFPs and INTs in both consolidated matters, StratAir repeatedly declines to identify retained employees by name — offering only aggregate data in substitution — on the ground that the names and personal information of non-

party employees "are not relevant to any claim or defense in this action" and that disclosure would "implicate the privacy interests of non-party employees."

In the *Grant* matter, this objection is raised in the responses to Grant RFP Nos. 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 32, 87, and 112, and in the responses to Grant INT Nos. 9, 14, 15, 17, and 23; Laffita INT Nos. 6, 15, and 17; Pinto INT Nos. 6, 12, and 17; Rodriguez Ceruto INT No. 6; and Prado INT Nos. 6 and 16.

In the *Cepero Garcia* matter, StratAir raises the same objection in response to Interrogatory Nos. 7 and 24 and RFP Nos. 8, 9, 12, 23, 33, 34, 38, 39, and 40. In response to Cepero INT No. 7 — which asks for each RIF employee's name, position, hire date, termination date, and whether they had disclosed a disability or requested medical leave within six months before termination — StratAir objects that disclosure would "implicate the privacy rights of non-parties under applicable law, including the ADA's confidentiality provisions, which prohibit the disclosure of medical information obtained through employment-related inquiries," and withholds all employee identities. In response to Cepero INT No. 24 — which asks whether any retained employee had performance issues comparable to or worse than Plaintiff's — StratAir objects that the request "seeks confidential personnel information of non-party employees, the disclosure of which would implicate the privacy rights of those individuals," and provides no comparator identification whatsoever. In response to Cepero RFP No. 8, StratAir conditions even its limited offer of aggregate RIF data on execution of a unilateral confidentiality agreement and objects that "the names of employees at StratAir are not relevant to any claim or defense in this action." In response to Cepero RFP Nos. 9, 23, 33, 34, 38, 39, and 40 — which seek personnel files, performance evaluations, disciplinary records, and attendance records for similarly situated and comparator employees — StratAir invokes the "privacy interests of non-party employees" either to refuse production entirely or to limit any production to anonymous aggregate data. In response to Cepero RFP No. 12, which seeks identifying information for temporary workers and staffing agency personnel performing similar work, StratAir objects that production would require disclosure of "sensitive, confidential personnel documents" of non-party employees.

These privacy objections are legally insufficient to justify non-production in either matter. Comparator employee identity and records are directly relevant and routinely disclosed in employment discrimination cases. The fact that the individuals whose records are sought are non-parties does not render their information undiscoverable; it simply means that appropriate safeguards may be warranted. A properly scoped protective order governing the use and dissemination of employee information is the appropriate mechanism. StratAir has in many of these responses offered to produce "aggregate data" conditioned on execution of a confidentiality agreement of its own drafting. Aggregate, anonymized data is not a substitute for the individual-level comparator information Plaintiffs are entitled to discover, and as addressed in Section XXIII, StratAir may not condition production on Plaintiffs agreeing to confidentiality terms not approved

by the Court. StratAir must withdraw the privacy objections to each of the above requests and produce responsive comparator employee information subject to any reasonable protective order.

**B. Third-Party Medical and Leave Information**

Both consolidated matters are also affected by StratAir's use of privacy objections to block discovery into how it handled FMLA leave requests, medical leave disclosures, and disability accommodation requests by employees other than Plaintiffs.

In the *Grant* matter, RFP No. 81 — requesting documents reflecting other StratAir employees at the Miami warehouse location who were granted FMLA leave in 2023–2024, including the reasons for leave and whether the leave was designated as FMLA — was refused entirely on the ground that production would "implicate the privacy interests and confidential medical information of non-party employees." Similarly, Rodriguez Ceruto INT No. 10 — asking StratAir to identify employees at the Miami location who requested time off for personal or family medical reasons and were not required to provide a doctor's note — was objected to in part on the ground that it "calls for the disclosure of confidential medical information and reasons for time-off requests of non-party employees." Rodriguez Ceruto INT No. 16 — asking StratAir to identify employees who were granted FMLA leave, had leave designated as FMLA leave, or requested time off for family medical reasons from January 2023 through January 2024 — was refused in part because it "calls for the disclosure of confidential medical information of non-party employees," including the "nature of the medical situation" underlying each employee's FMLA leave or time-off request.

In the *Cepero Garcia* matter, StratAir deploys the same category of objection across an even broader range of requests. In response to Interrogatory No. 12 — asking StratAir to identify all employees who requested FMLA leave, disclosed a serious health condition, or requested disability accommodations between January 2023 and the present — StratAir objects that production would "implicate the privacy rights of those individuals under applicable law, including the ADA's confidentiality provisions." In response to Cepero RFP Nos. 18 and 19, which seek FMLA leave request documentation and disability accommodation records for any StratAir employee from January 2023 to the present, StratAir objects that production would "implicate the privacy interests of those individuals and applicable legal requirements for maintaining the confidentiality of such documents." In response to Cepero RFP Nos. 30 and 31, which seek records identifying employees who requested FMLA leave or disclosed serious health conditions and were not terminated in the RIF — along with records of how those requests were processed — StratAir objects that production would "violate the privacy interests of non-party employees and StratAir's obligations under applicable federal and state laws, including the ADA's confidentiality requirements for employee medical information," and characterizes these requests as a "fishing expedition designed to rummage through the confidential medical records of StratAir's workforce." In response to Cepero RFP No. 35, which seeks documents showing non-selected employees' disability or medical status and leave histories, StratAir objects that the request "seeks confidential medical information

regarding the disability or medical condition of non-party employees and their leave histories." In response to Cepero RFP No. 36, which seeks protected characteristic data (including disability status) comparing employees selected for the RIF to those retained, StratAir objects that the request seeks "protected medical and disability information of non-party employees." In response to Cepero RFP No. 26, which seeks records of prior instances in which StratAir terminated an employee who had requested medical leave, disclosed a serious health condition, or sought disability accommodations, StratAir objects that production would implicate "confidential medical information and personnel records of non-party employees."

Whether other employees were granted FMLA leave at the same worksite during the same period — and whether those employees were treated differently than Plaintiffs with respect to leave requests, notice obligations, and documentation requirements — is directly relevant to Plaintiffs' FMLA interference, failure-to-notify, and disparate treatment claims. To the extent FMLA and related privacy regulations impose confidentiality obligations on employer-held medical information, those obligations are the subject of established protective order procedures that courts in employment discrimination cases regularly employ. They do not justify categorical non-production. StratAir must produce responsive documents regarding FMLA designations, FMLA leave grants, and leave-related documentation practices for other employees at the Miami location during the relevant period, subject to a narrowly tailored protective order governing the use and dissemination of third-party medical information.

**C. Non-Party EEOC Charges**

In the *Grant* matter, RFP No. 118 — seeking all EEOC charges filed against Defendant from January 1, 2022, through the present — was partially refused on the ground that producing EEOC charges filed by non-party employees would "implicate the privacy interests of non-party employees." StratAir agreed to produce only the charges filed by Plaintiffs themselves.

In the *Cepero Garcia* matter, StratAir raises a parallel objection in response to RFP No. 25 — which seeks all EEOC charges, discrimination complaints, administrative claims, or lawsuits filed against StratAir in the past five years alleging disability discrimination, FMLA interference or retaliation, or any other form of employment discrimination, including all position statements, responses, settlement agreements, and final determinations. StratAir objects in part that this request seeks documents that are "confidential or protected by the attorney-client privilege and/or the work product doctrine, including position statements, responses, and settlement agreements." To the extent this objection is grounded in the confidentiality of third-party charging parties' information, it fails for the same reason as the *Grant* matter objection: prior EEOC charges by other employees are plainly discoverable in employment discrimination litigation, and any confidentiality concerns are addressed through a protective order. To the extent StratAir separately invokes privilege as to its own internal legal communications reflected in position statements or response documents,

those materials must be identified on a privilege log as required by Rule 26(b)(5)(A); a blanket confidentiality designation is not a substitute for that obligation.

Prior EEOC charges and complaints alleging the similar statutory violations in both matters are plainly relevant to notice, intent, willfulness, and whether StratAir had a practice of engaging in or failing to remedy the conduct at issue. The identity of the charging parties and the substance of their allegations are discoverable in employment discrimination litigation regardless of whether those parties voluntarily filed charges with a federal agency. StratAir must produce all EEOC charges filed against it within the requested time period in both matters, subject to any appropriate protective order.

**D. Non-Party Witness Contact Information and Expert Personal Information**

In response to Prado INT2 No. 1, StratAir objects to disclosing the contact information of persons with relevant factual knowledge on the ground that doing so would "implicate the privacy interests" of non-party individuals, arguing that such information "should not be compelled absent an appropriate protective order and a showing that the information is directly relevant and not obtainable through less intrusive means." In response to Prado INT2 No. 2, StratAir similarly objects to producing the contact information of expert witnesses on privacy grounds, contending that such information "should not be compelled absent a showing that it is not obtainable through the ordinary expert disclosure process."

These privacy objections do not justify withholding the identities or contact information of persons with relevant factual knowledge or of retained testifying experts. The identity and contact information of fact witnesses — including current and former employees with knowledge of the events at issue — is information routinely disclosed in litigation through initial disclosures and interrogatory responses. It is not transformed into protected information by labeling it a privacy concern. As to expert witnesses, Rule 26(a)(2) expressly contemplates disclosure of expert identity and contact information through the expert disclosure process; StratAir's refusal to provide even the names of retained testifying experts cannot be sustained on privacy grounds. StratAir must provide the identity and available contact information for all persons with relevant factual knowledge identified in response to Prado INT2 No. 1, and must identify all retained testifying experts in response to Prado INT2 No. 2, in each case subject to any agreed or court-ordered protective order as appropriate.

**E. Confidential Customer and Business Information**

In addition to the employee privacy objections described above, StratAir invokes confidentiality on behalf of third-party business entities and on the ground that certain financial information is "competitively sensitive" across both consolidated matters.

StratAir objects to Grant RFP Nos. 1 and 2 — which seek documents relating to StratAir's decision to conduct the January 2024 RIF and all documents supporting StratAir's contention that a business need required the workforce reduction — on the ground that such documents include "confidential or proprietary information belonging to StratAir's customer." StratAir raises the same third-party client confidentiality objection to Grant RFP No. 3, which seeks StratAir's financial statements, profit and loss statements, revenue reports, income statements, balance sheets, budgets, forecasts, and operational reports from January 2023 through March 2024, adding further that such documents contain "confidential, proprietary, and competitively sensitive financial information." RFP No. 4, which seeks communications between StratAir and Amazon.com or any other client concerning staffing levels, workload, cargo volume, flight schedules, contract modifications, or service requirements at the Miami warehouse location from October 2023 through March 2024, was refused almost entirely on the ground that it seeks "confidential, proprietary, and competitively sensitive business information, including information that may be subject to contractual confidentiality obligations with third-party clients," and further on the ground that it includes "confidential or proprietary information belonging to StratAir's customer." RFP No. 35, which seeks communications among decision-makers concerning the business justification for, timing of, and financial or operational reasons for the January 2024 layoff, was similarly refused in part on the ground that it seeks "documents that are confidential or proprietary." RFP Nos. 116 and 117, which seek documents sufficient to show StratAir's net worth, revenues, profits, and financial condition, were refused in part on the ground that they seek "confidential, proprietary, and competitively sensitive financial information, including tax returns." Finally, RFP No. 145, which seeks cost comparisons and financial analyses regarding the use of independent contractors or temporary workers versus retaining direct employees, was refused in part on the ground that it seeks "confidential, proprietary, and competitively sensitive financial information."

None of these objections justifies withholding. StratAir's entire nondiscriminatory justification for the January 2024 RIF rests on the assertion that a major customer announced a reduction in future cargo delivery flights, causing an immediate and significant decline in anticipated revenue. Having placed that customer's decision and its financial impact at the center of its defense, StratAir cannot simultaneously invoke the confidentiality of documents evidencing that same decision to shield them from discovery. Plaintiffs are entitled to examine whether the customer's decision actually caused the revenue impact StratAir describes, whether the scope and timing of the RIF are consistent with that impact, and whether StratAir's financial condition supports or undermines the stated business justification. With respect to the communications with Amazon.com and other clients (Grant RFP No. 4), any genuine contractual confidentiality obligations between StratAir and its client do not render those communications undiscoverable — they are an appropriate candidate for a confidentiality designation under a negotiated protective order. The same is true of competitively sensitive financial information sought in Grant RFPs 3, 116, 117, and 145: such information is routinely produced in employment litigation under the protections afforded by a standard protective order. StratAir must withdraw these confidentiality and proprietary

information objections from its responses to Grant RFP Nos. 1, 2, 3, 4, 35, 116, 117, and 145, and produce all responsive materials subject to a mutually agreed or court-ordered protective order.

In response to Cepero RFP No. 7 — which requests all financial documents supporting the business justification for the January 2024 RIF, including profit and loss statements, budget reports, revenue projections, and cost analyses — StratAir objects in part that the request "seeks documents that are confidential or proprietary information belonging to StratAir's customer," apparently referring to the major customer whose decision to reduce cargo delivery flights StratAir contends triggered the RIF. In response to Cepero Interrogatory No. 18 — which asks StratAir to identify any staffing agencies it used between September 2023 and March 2024 and to describe the job functions those workers performed — StratAir objects in part that the request "seeks confidential and proprietary business information regarding StratAir's contractual relationships with third-party staffing agencies."

As with the *Grant* matter, neither invocation justifies withholding. With respect to Cepero RFP No. 7, the purported confidentiality of documents prepared by or for StratAir's customer does not render those documents undiscoverable; it makes them appropriate candidates for a confidentiality designation under a negotiated protective order. The identity of the unnamed major customer and the financial impact of that customer's decision on StratAir's revenue are squarely at issue — StratAir's entire nondiscriminatory justification for the RIF depends on the existence and magnitude of that customer's announced reduction in future cargo flights and resulting decrease in revenue. Plaintiffs are entitled to examine the business and financial record underlying that justification. With respect to Cepero INT No. 18, this argument is further undermined by StratAir's own response, which voluntarily names SNI Companies as the staffing agency it used and describes the nature of the workers' duties. Having identified the agency, StratAir cannot simultaneously invoke business confidentiality to withhold the scope and timing of that engagement. The terms of StratAir's staffing arrangements — what workers were provided, for how long, and to perform what functions — are facts directly relevant to Plaintiffs' pretext theory, and any legitimate confidentiality concerns are addressed through a protective order. StratAir must withdraw both objections and respond fully to Cepero RFP No. 7 and Cepero INT No. 18.

## XVII. <u>Improper Estoppel Reservation and Overbreadth</u>

In response to RFP No. 119 — which seeks all position statements, responses, rebuttals, or submissions made by Defendant to the EEOC regarding any of the Plaintiffs' charges — StratAir agrees to produce its EEOC position statements but inserts a lengthy reservation purporting to disclaim that those statements constitute "judicial admissions or binding concessions" and reserving the right to "assert all available defenses and to present evidence and arguments that may differ from, supplement, or clarify any statements previously made during the EEOC proceedings."

This reservation is not a proper objection to a discovery request; it is an unsolicited legal argument that has no place in a Rule 34 response. Plaintiffs do not request an advisory opinion on the evidentiary use of StratAir's EEOC submissions, and StratAir may not insert self-serving legal disclaimers into discovery responses as a preemptive litigation maneuver. The proper vehicle for arguments about the admissibility or binding effect of prior statements is a motion in limine. StratAir must withdraw this reservation from its response to RFP No. 119 and produce the responsive documents without qualification.

RFPs Nos. 120 and 121 — seeking, respectively, all documents produced by Defendant to the EEOC in connection with its investigation of Plaintiffs' charges, and all correspondence between Defendant and the EEOC regarding Plaintiffs' charges from 2024 through the present — received overbreadth objections and no promise of production. These materials are directly relevant to Plaintiffs' claims, to the factual representations StratAir has made about the January 2024 RIF in an adjudicative forum, and to the consistency between StratAir's administrative and litigation positions. The requests are appropriately bounded by subject matter (Plaintiffs' charges), custodian (StratAir), and time period. StratAir must produce all documents submitted to the EEOC and all correspondence with the EEOC in connection with each Plaintiff's charge of discrimination.

## XVIII. <u>Improper Scope Limitations on Promised Document Production</u>

In multiple instances across the Cepero Garcia RFP responses, StratAir promises to produce documents but then narrows the scope of that production in ways that are inconsistent with the requests as written and unsupported by the Federal Rules.

RFP No. 2 requests all documents relating to the decision to terminate Plaintiff's employment, including communications among decision-makers or individuals who influenced the decision. StratAir limits production to communications among only three named individuals — Jorge Corral, Armando Portales Viera, and Gisela Barrera — on the ground that the broader request is "vague and ambiguous" for lacking a time limitation, specific custodian, or specific subject matter. This limitation is improper. The subject matter is specific and unambiguous: the decision to terminate Plaintiff Cepero Garcia's employment. The absence of an explicit custodian list does not render the request unanswerable; StratAir itself identified the relevant participants in responding to Interrogatory Nos. 2 and 3. StratAir must conduct a reasonable custodial search encompassing all individuals who participated in or influenced the termination decision and produce all non-privileged responsive communications — not merely those among three self-selected custodians.

RFP No. 5 requests all FMLA notices provided to Plaintiff at any time during his employment, including eligibility notices, rights and responsibilities notices, designation notices, and any other FMLA-related communications. StratAir limits its search to January 2024 documents only, on the ground that "Plaintiff's Complaint references only allegations regarding requests for time off from 2024." This temporal limitation is improper. The FMLA imposes general notice obligations at the

commencement of employment and at other points throughout the employment relationship, independent of a specific leave request. Whether StratAir provided general FMLA notices to Plaintiff at the time of his hire in or around August 2022 — or at any other point during his employment — is directly relevant to Plaintiff's claim that StratAir failed to inform him of his rights under the statute. StratAir must search for and produce all FMLA notices provided to Plaintiff across the full duration of his employment, from hire through termination in January 2024.

RFP No. 6 requests all documents relating to Plaintiff's cancer diagnosis, including communications among StratAir employees or managers discussing Plaintiff's medical condition, health status, or need for treatment. StratAir limits its production to Plaintif''s own WhatsApp communications to management regarding his "blister or sore (in Spanish)," and objects to all other responsive materials as overbroad and lacking limitation as to custodian, time period, or subject matter. This limitation is improper. Internal communications among StratAir's managers and HR personnel about a specific identified employee's medical condition are core evidence in this case — they bear directly on who knew what about Plaintiff's condition, when they knew it, and whether that knowledge influenced the termination decision. There is nothing overbroad about seeking internal communications discussing one named employee's identified medical situation. StratAir must produce all non-privileged responsive communications concerning Plaintiff's medical condition, not only those that Plaintiff himself initiated.

RFP No. 21 requests all communications among StratAir management, HR personnel, or supervisors mentioning Plaintiff by name or discussing Plaintiff between September 2023 and February 2024 — a defined five-month window encompassing the period from before Plaintiff's cancer disclosure through shortly after his termination. StratAir objects that this request is overbroad because it seeks communications "without limitation as to specific subject matter." This objection lacks merit. The request is already limited to a specific category of custodians (management, HR, and supervisors), a specific named individual (Plaintiff Cepero Garcia), and a specific temporal window. Internal communications mentioning or discussing Plaintiff among management and HR personnel during the months surrounding his cancer disclosure, leave request, and termination are among the most significant documents in this case. StratAir must withdraw this objection and produce all non-privileged responsive communications.

RFP No. 27 requests all organizational charts, reporting structures, and staffing lists for StratAir's Miami location from January 2023 through the present. StratAir limits production to organizational charts and reporting structures from January 2024 only and further conditions that limitation to charts that "list Plaintiff or Plaintiff's position." Both limitations are unjustified. Organizational charts from before and after January 2024 are relevant to understanding StratAir's pre-RIF workforce structure, departmental reporting relationships, and the scope of post-RIF changes. Conditioning production on whether a chart specifically names Plaintiff or his position eliminates documents showing the broader departmental structure — information directly relevant to identifying comparator employees and the positions considered in the selection process. StratAir

must produce all responsive organizational charts and staffing lists for the Miami location for the full period requested.

## XIX. Vagueness and Characterization Objections to Clearly Answerable Requests

StratAir raises vagueness and characterization objections to two RFAs in the *Cepero Garcia* matter that are clearly answerable as presented.

RFA No. 1 asks StratAir to admit that it did not utilize a "written, objective scoring system or rubric" to evaluate employees for selection in the January 2024 RIF. StratAir objects that the terms "written, objective scoring system or rubric" are "vague and ambiguous," and then denies. The terms are not vague. StratAir itself described its selection process in responding to Interrogatory No. 6 as one in which performance, seniority, and operational needs were "weighed holistically," with no single criterion determinative, and admitted in response to RFA No. 24 that it had no written policy or procedure governing employee selection for the RIF at all. In that context, there is nothing unclear about asking whether StratAir used a formal, written, structured scoring mechanism. The vagueness objection appears designed to deny a request whose straightforward answer would be an admission fully consistent with StratAir's own disclosures elsewhere in these responses. StratAir must withdraw the vagueness objection to RFA No. 1 and provide an unqualified admission or denial, supplemented if necessary by a factual explanation as permitted by Rule 36.

RFA No. 15 asks StratAir to admit that it terminated Plaintiff's employment "before responding to his final request for medical leave in January 2024." StratAir "objects to the characterization 'before responding to his final request for medical leave in January 2024'" and then, subject to that objection, denies. A characterization objection of this type is not a recognized basis for refusing to answer under Rule 36. Rule 36 requires an admission, denial, or detailed explanation of why the responding party cannot truthfully do either. To the extent StratAir disputes that Plaintiff's communications constituted a cognizable "request for medical leave," it must say so in a qualified response rather than substituting an objection to the request's phrasing for any substantive response. The temporal sequence between Plaintiff's leave-related communications and his termination is a significant contested fact in this case, and StratAir may not use a labeling dispute to avoid addressing it. StratAir must supplement its response to RFA No. 15 with a proper admission, denial, or Rule 36-compliant explanation that addresses the actual chronology of events.

## XX. "Legal Conclusion" and Inapplicable Legal Framework Objections to Factual Discovery

StratAir raises "legal conclusion" or inapplicable legal framework objections in response to three RFPs in the *Cepero Garcia* matter that seek straightforward factual or documentary information.

RFP No. 38 requests all documents identifying "similarly situated employees" — expressly defined in the request itself as employees "with comparable job duties, qualifications, performance levels, and reporting structures as Plaintiff" — including their employment status as of January 2024 and whether they were selected for the RIF. StratAir objects that "similarly situated employees" is a legal term of art whose meaning is determined by the Court, and that the request improperly asks StratAir to adopt Plaintiff's proposed comparator framework before any such determination has been made. This objection misses the point. Plaintiff has defined the term within the request by reference to objective, verifiable factual criteria: comparable job duties, qualifications, performance levels, and reporting structures. Whether employees meeting those characteristics are ultimately "similarly situated" as a legal matter is a question for another day. What matters now is that documents about employees whose work, qualifications, performance, and reporting structure were comparable to Plaintiff's are plainly discoverable regardless of how courts may ultimately define the comparator universe. StratAir is not being asked to endorse a legal conclusion — it is being asked to produce documents. StratAir must withdraw this objection and produce all responsive materials.

RFP No. 50 requests all documents identifying which positions, departments, job titles, or classifications StratAir considered part of the "decisional unit" when conducting the January 2024 RIF. StratAir objects that "decisional unit" is "a legal term of art under the Older Workers Benefit Protection Act and the Age Discrimination in Employment Act" with "no application to Plaintiff's claims," which allege disability discrimination and FMLA interference. This objection is unpersuasive. The underlying concept — which employees StratAir considered together in making RIF selection decisions — is relevant in any RIF discrimination case regardless of the specific statute at issue. Which employees were pooled together during the reduction-in-force process bears directly on the relevant comparator population, the credibility of StratAir's nondiscriminatory justification, and whether Plaintiff's protected status influenced his selection from within the applicable pool. The fact that Plaintiff does not assert an ADEA claim does not render documents identifying the scope of StratAir's January 2024 decision-making pool irrelevant or undiscoverable under Rule 26(b)(1). StratAir must withdraw this objection and produce documents sufficient to identify which employees were considered in connection with the January 2024 termination decisions.

RFP No. 51 requests all spreadsheets, lists, databases, or other documents showing the pool of employees or workers from which StratAir made selection decisions for the January 2024 RIF. StratAir objects that the request "assumes that StratAir maintained formal spreadsheets, lists, or databases documenting a defined 'pool'" and that the term "pool of employees or workers" is vague and ambiguous. Neither objection is meritorious. The request does not assume that formal documentation exists — it asks for whatever documents, in whatever format, reflect the population of employees considered during the reduction-in-force process. If StratAir did not maintain any documentation of its selection pool, it must say so expressly; it may not raise a vagueness objection as a pretext for avoiding that disclosure. The phrase "pool of employees or workers" is not vague:

in context, it plainly refers to the personnel considered for inclusion in the January 2024 workforce reduction. StratAir must provide a complete response to RFP No. 51, and must do so without conditioning even a limited production on Plaintiff's execution of a confidentiality agreement, for the reasons stated in Section XXIII below.

### XXI. <u>Contradictory Positions on Scoring and Comparative Documentation</u>

StratAir's responses contain a significant internal contradiction regarding comparative employee documentation that must be reconciled before these responses can be taken at face value.

In responding to RFA No. 1 — which asks StratAir to admit that it did not utilize a written, objective scoring system or rubric to evaluate employees for selection in the January 2024 RIF — StratAir objects and denies. By denying, StratAir affirmatively asserts that it did utilize some form of written, objective scoring system or rubric. Yet in responding to RFP No. 32 — which requests all documents comparing Plaintiff to other employees, including any scoring matrices, ranking systems, performance comparisons, or analyses used in selecting employees for the RIF — StratAir states affirmatively that "StratAir did not utilize scoring matrices, ranking systems, written performance comparisons, or similar comparative analyses in connection with the January 2024 RIF, and thus no such documents exist."

These positions cannot be reconciled. If StratAir used a written, objective scoring system (as its denial of RFA No. 1 asserts), responsive documents should exist and must be produced in response to RFP No. 32. If no scoring matrices, ranking systems, or written comparative analyses exist (as StratAir claims in its RFP No. 32 response), then StratAir's denial of RFA No. 1 is incorrect. This internal contradiction is further compounded by StratAir's admission in response to RFA No. 24 that it had no written policy or procedure governing employee selection for the RIF, and its description in Interrogatory No. 6 of the selection process as "holistic" with no single criterion determinative — descriptions that are difficult to square with the existence of a "written, objective scoring system." StratAir must resolve these contradictions in its amended responses: it must either identify and produce the written scoring system or rubric whose existence it asserted by denying RFA No. 1, or it must withdraw that denial and provide an amended admission consistent with its responses elsewhere in these discovery materials.

### XXII. <u>Relevance Objections to RFAs</u>

Rule 36 requires a responding party to admit, deny, or explain why it cannot truthfully admit or deny a request. Relevance alone is not a proper basis for refusing to answer an RFA. Nevertheless, StratAir responded to numerous RFAs with nothing more than a relevance objection and no substantive response.

These objections should be withdrawn from, at minimum:

- ***Grant* matter RFAs**: Nos. 7, 10, 11, 13, 34, 63, 71, 76, 87, 98, 103, 111, and 112.

- ***Cepero Garcia* matter RFAs**: Nos. 26, 28, 29, 31, 34, 35, 36, 39, 40, and 41.

These RFAs concern matters plainly relevant to Plaintiffs' claims, including training, RIF procedures, comparator employees, staffing agency workers, post-RIF staffing, prior complaints, and employees with disciplinary histories. StratAir must supplement all such RFAs with proper admissions, denials, or detailed explanations as required by Rule 36.

## XXIII. <u>Privilege Assertions Without a Privilege Log</u>

StratAir repeatedly invokes attorney-client privilege and/or work product protection — in response to Grant RFP Nos. 39, 60, 96, 106, 107, 108, 109, 110, 119, 122, 124, and 126; Grant RFA No. 6; Prado INT2 Nos. 1 and 2; Cepero INT No. 20; and Cepero RFP No. 28 — but has produced no privilege log. Rule 26(b)(5)(A) requires that when a party withholds documents based on privilege, it must describe the nature of the withheld materials in a manner that enables other parties to assess the privilege claim. Blanket privilege assertions are insufficient. For each withheld document or communication, StratAir must provide a privilege log identifying the nature of the withheld material in a manner sufficient to permit assessment of the privilege claim.

## XXIV. <u>Confidentiality Objections and Unilateral Conditions on Production</u>

Throughout its responses, StratAir conditions production of certain materials on Plaintiffs first executing a confidentiality agreement drafted by StratAir. This unilateral condition should be withdrawn. StratAir may not condition compliance with Rule 34 on Plaintiffs' agreement to confidentiality terms not approved by the Court. If StratAir seeks protection for sensitive information, the proper procedure is to negotiate a mutually agreeable protective order or seek relief under Rule 26(c). Absent a Court order, StratAir must produce all responsive materials without imposing unilateral preconditions. This condition should be withdrawn from, at minimum:

- ***Grant* matter**: RFP Nos. 9, 21, 22, 23, 25, 26, 27, 28, 29, 30, 32, 33, 36, 38, 39, 87, 111, 112, 113, 123, 129, and 132 through 148; and related INT and RFA responses identified above.

- ***Cepero Garcia* matter**: RFP Nos. 8, 9, 18, 19, 23, 26, 30, 31, 33, 34, 35, 36, 38 through 40, and 51; and related INT and RFA responses identified above.

## XXV. <u>Refusal to Identify Witnesses With Relevant Knowledge</u>

In response to interrogatories seeking identification of persons with knowledge relevant to the January 2024 RIF, Plaintiffs' performance, staffing decisions, complaints of discrimination, and

related issues, StratAir largely refused to provide substantive information, relying on objections of vagueness, duplication of Rule 26 disclosures, work product protection, burden, and privacy. These objections are improper.

The phrase "persons with knowledge of facts relevant to any claim or defense" tracks the language of Rule 26(a)(1)(A)(i) verbatim — StratAir cannot credibly claim it is too vague to answer. Rule 26(a)(1)(A)(i) requires disclosure only of witnesses a party "may use to support its claims or defenses"; Prado INT2 No. 1 seeks all persons with relevant knowledge, including those whose knowledge may be adverse to StratAir's position, which is precisely the gap that initial disclosures leave unfilled. While StratAir asserts work product protection over the summary of witness knowledge, whether StratAir has interviewed those witnesses, and trial witness designations, work product protection shields counsel's mental impressions — not the underlying facts known to witnesses. Formal trial witness designations are governed by the scheduling order, but Plaintiffs are entitled during fact discovery to identify witnesses with relevant factual knowledge and the general subject matter of that knowledge.

StratAir must provide a substantive response to Prado INT2 No. 1 identifying knowledgeable witnesses, summarizing the subjects of their knowledge, and providing available contact information, subject to any agreed or Court-ordered protective order.

## XXVI. <u>Refusal to Identify Retained Testifying Experts</u>

StratAir refused entirely to respond to Prado INT2 No. 2, which asks StratAir to identify all expert witnesses it has retained, consulted, or expects to call at trial, relying on objections of prematurity, duplication of Rule 26(a)(2), work product protection for consulting experts, and proportionality.

Plaintiffs acknowledge that full Rule 26(a)(2) expert reports are governed by te Court's scheduling order and do not ask StratAir to front-run that schedule. However, StratAir''s invocation of Rule 26(b)(4)(D) work product protection as a blanket shield for all experts — including testifying ones — is overbroad. Rule 26(b)(4)(D) protects non-testifying consulting experts; it provides no protection whatsoever for retained testifying experts. To the extent StratAir has retained any testifying experts, it must identify them by name and area of expertise, with full Rule 26(a)(2) disclosures to follow the Court's scheduling order.

## XXVII. <u>Requested Relief</u>

To avoid motion practice and a discovery hearing before Magistrate Judge Lett, Plaintiffs request that, by May 13, 2026, StratAir:

1. Immediately produce all documents it has pledged to produce in its RFP responses in both consolidated matters, including in the *Grant* matter all materials referenced in the responses to RFP Nos. 1, 6, 10, 14, 19, 31, 36, 38, 41, 45, 47, 48, 49, 55, 59, 62, 63, 65, 70, 72, 75,

77, 78, 79, 80, 82, 84, 88, 89, 90, 91, 94, 95, 97, 98, 99, 100, 101, 103, 105, 106, 107, 110, 115, 119, and 125, and in the *Cepero Garcia* matter all materials promised in RFP Nos. 1, 2, 3, 4, 5, 6, 7, 15, 16, 17, 22, 23, 28, 50, and 51;

2. Serve complete, verified answers without objection to all nineteen of Plaintiff Same Gonzalo's First Set of Interrogatories, all objections having been waived under Rule 33(b)(4);

3. Withdraw the boilerplate general objections incorporated by reference into its RFP responses in both consolidated matters;

4. Provide complete, substantive responses – without premature or contention-based objections – to: Grant INT Nos. 17 and 19; Laffita INT Nos. 18, 19, and 21; Pinto INT Nos. 8, 9, 15, and 20; Prado INT Nos. 7, 8, and 14; Rodriguez Ceruto INT Nos. 17 and 18; Prado INT2 Nos. 1 and 2; Cepero INT Nos. 13 and 20; Grant RFP Nos. 78, 106, 107, 108, 109, and 110; and Cepero RFP No. 28;

5. Withdraw all improper relevance objections concerning comparator employees, staffing agency workers, temporary workers, independent contractors, and post-RIF workforce information, and provide full responses to all affected requests identified in Sections V and VI above – including, at minimum, Grant INT Nos. 10, 15, 17, 19 (Laffita), 7, 18 (Pinto), 17 (Prado), and 10 (Rodriguez Ceruto); Grant RFP Nos. 9, 10, 11, 12, 13, 21, 22, 23, 25, 26, 27, 28, 29, 30, 32, 33, 36, 38, 39, 87, 109, 111, 112, 113, 123, 129, and 132 through 148; Grant RFAs Nos. 8, 10, 11, 13, 63, 71, 76, 87, 98, 103, and 112; Cepero INT Nos. 7, 8, 12, 17, 18, and 24; Cepero RFP Nos. 8, 9, 11, 12, 13, 18, 19, 23, 24, 26, 30, 31, 32, 33, 34, 35, 36, and 37 through 49; and Cepero RFAs Nos. 26, 28, 29, 31, 34, 35, and 36; and identify all comparator employees by name, with responsive demographic and employment information, subject to any reasonable protective order negotiated between the parties or ordered by the Court;

6. Provide complete supplemental responses to Cepero INT No. 8, Grant INT No. 8, Laffita INT No. 5, Pinto INT No. 5, Prado INT No. 5, and Rodriguez Ceruto INT No. 5, addressing all four prongs of each interrogatory: (a) whether StratAir contends each Plaintiff's position was eliminated and not refilled; (b) whether each Plaintiff's job duties were reassigned and to whom; (c) the identity, age, and start date of any person hired or engaged to perform the same or substantially similar work after January 2024; and (d) whether the total headcount of persons performing warehouse, cargo, or security work at the Miami location decreased, remained the same, or increased following the January 2024 layoff;

7. Produce responsive training, compliance, and RIF procedure materials in response to Grant RFP Nos. 50, 51, 52, 83, and 85; Pinto INT No. 20; Grant RFA No. 7; Cepero INT No. 16; Cepero RFP No. 20; and Cepero RFAs Nos. 7 and 16;

8. Withdraw all confidential customer, proprietary, and competitively sensitive financial information objections, and produce responsive financial statements, business analyses, revenue projections, staffing analyses, client communications, cost comparisons regarding use of non-employee workers, and documents sufficient to establish StratAir's net worth, revenues, profits, and financial condition for tax years 2023, 2024, and 2025, in response to Grant RFP Nos. 1, 2, 3, 4, 35, 116, 117, and 145, and Cepero RFP Nos. 7 and 14; and provide a complete, substantive response to Cepero INT No. 18 identifying the staffing agencies used between September 2023 and March 2024 and the scope, timing, and job functions of their workers' engagement, all subject to any mutually agreed or court-ordered protective order;

9. Supplement responses regarding ADA/FMLA coverage, eligibility, and interactive process issues in response to Cepero RFAs Nos. 5, 6, 7, and 16, and Cepero INT No. 13;

10. Withdraw privacy and relevance objections to prior EEOC charges, discrimination complaints, and related litigation, and produce all responsive materials in response to Grant INT No. 21; Laffita INT Nos. 8 and 9; Grant RFP Nos. 53, 54, 61, and 118; Cepero INT No. 19; Cepero RFAs Nos. 39, 40, and 41; and Cepero RFPs Nos. 25 and 26, subject to any appropriate protective order;

11. Withdraw the improper "assumes facts" objections identified in Section XII and provide complete, substantive responses to Cepero INT No. 14; Cepero RFP Nos. 4 and 10; Grant RFA No. 121; and Laffita INT Nos. 10, 11, and 20;

12. Supplement Grant RFAs Nos. 3, 25, 60, 73, and 74 with proper, unqualified admissions, denials, or Rule 36-compliant explanations, without reliance on compound or argumentative objections as described in Section XIII above;

13. Conduct a full custodial search encompassing, at minimum, Jorge Corral, Gisela Barrera, Armando Portales Viera, Jose Alverio, Lidier Leon, Wilson Dorado, and supervisor Javier, and produce all non-privileged responsive communications in response to Grant RFP Nos. 34, 37, 38, 40, 41, 42, 43, and 44;

14. Withdraw the "decisional unit as legal term of art" objections to Grant RFP Nos. 30, 32, and 129 and Grant RFA No. 8, and respond fully to each as described in Section XV above;

15. Produce all responsive documents regarding FMLA leave grants, FMLA designations, and leave-related documentation practices for other employees at the Miami location in 2023-2024 in response to Grant RFP No. 81 and Rodriguez Ceruto INT Nos. 10 and 16, subject to a narrowly tailored protective order governing third-party medical information;

16. Withdraw the estoppel reservation from the response to Grant RFP No. 119 and produce the responsive EEOC position statements without qualification; and produce all documents submitted to the EEOC and all correspondence with the EEOC in connection with each Plaintiff's charge of discrimination in response to Grant RFP Nos. 120 and 121;

17. Withdraw the improper scope limitations identified in Section XVIII and provide full, unqualified responses to Cepero RFP Nos. 2, 5, 6, 21, and 27, consistent with those requests as written;

18. Withdraw the vagueness objection to Cepero RFA No. 1 and the characterization objection to Cepero RFA No. 15, and provide proper admissions, denials, or Rule 36-compliant explanations as described in Section XIX above;

19. Withdraw the "legal conclusion" and inapplicable legal framework objections to Cepero RFP Nos. 38, 50, and 51, and produce all responsive documents as described in Section XX above;

20. Resolve the internal contradiction identified in Section XXI by either identifying and producing the written scoring system or rubric whose existence StratAir asserted by denying Cepero RFA No. 1 and responding fully to Cepero RFP No. 32, or withdrawing that denial and providing an amended admission consistent with StratAir's responses elsewhere in these discovery materials;

21. Supplement all RFAs that currently contain only relevance objections - including Grant RFAs Nos. 7, 10, 11, 13, 34, 63, 71, 76, 87, 98, 103, 111, and 112, and Cepero RFAs Nos. 26, 28, 29, 31, 34, 35, 36, 39, 40, and 41 - with proper admissions, denials, or detailed explanations as required by Rule 36;

22. Produce a Rule 26(b)(5)-compliant privilege log for all documents and communications withheld on privilege grounds across all discovery responses, including as to Grant RFP Nos. 39, 60, 96, 106 through 110, 119, 122, 124, and 126; Grant RFA No. 6; Prado INT2 Nos. 1 and 2; Cepero INT No. 20; and Cepero RFP No. 28;

23. Remove all unilateral confidentiality conditions not grounded in a Court order from all responses in both consolidated matters, including at minimum Grant RFP Nos. 9, 21, 22, 23, 25, 26, 27, 28, 29, 30, 32, 33, 36, 38, 39, 87, 111, 112, 113, 123, 129, and 132 through 148, and Cepero RFP Nos. 8, 9, 18, 19, 23, 26, 30, 31, 33, 34, 35, 36, 38 through 40, and

51; and if StratAir seeks protection for sensitive information, file an appropriate motion under Rule 26(c);

24. Provide a substantive response to Prado INT2 No. 1 identifying all persons with relevant factual knowledge, summarizing the subject matter of their knowledge, and providing available contact information, subject to any agreed or court-ordered protective order; and

25. Provide a substantive response to Prado INT2 No. 2 identifying any retained testifying experts by name and area of expertise, with full Rule 26(a)(2) disclosures to follow the Court's scheduling order.

I remain available to meet and confer by telephone or videoconference at your earliest convenience and hope to resolve these disputes without Court intervention. However, if StratAir declines to withdraw its improper objections, provide complete supplemental responses, and produce all responsive documents, Plaintiffs will seek appropriate relief from the Court, including a discovery hearing, an order overruling StratAir's objections, compelling better responses and full document production, and awarding fees and costs under Rule 37.

Very truly yours,



P. Brooks LaRou, Esq.
brooks@fairlawattorney.com

cc: Lisa Musco (LMusco@gunster.com)
Lisa Hagan (LHagan@gunster.com)

FairLaw Firm

135 San Lorenzo Avenue, Suite 770
Coral Gables, Florida 33146

TEL 305.230.4884 FAX 305.230.4844

www.fairlawattorney.com

July 14, 2026

Via Email Only
Roger W. Feicht, Esq.
Nalani Alesia Gordon, Esq.
Gunster, Yoakley & Stewart, P.A.
777 S. Flagler Drive, Suite 500 E.
West Palm Beach, FL 33401
rfeicht@gunster.com
ngordon@gunster.com

**Re:** ***Ivan Grant, et al. v. StratAir Aviation Services, LLC***
**Case No.: 1:25-cv-24505-KMM**
**Continued Conferral Regarding Discovery Responses**

Dear Roger and Nalani:

Following the parties' ongoing discovery conferrals over the past two months and StratAir's service of amended responses to Plaintiffs' First Requests for Admission ("RFA"s) and First Interrogatories ("INT"s), I write to identify the discovery disputes that remain after those conferrals and to summarize the issues requiring further resolution.

At the outset, I appreciate StratAir serving amended responses to Plaintiffs' First RFAs and INTs. StratAir has not, however, served amended responses to Plaintiffs' First Requests for Production ("RFP"s), notwithstanding its agreement during our conferrals to withdraw certain objections while maintaining others. Accordingly, the RFP section below addresses only those objections that remain at issue, as well as the responsive documents StratAir agreed to produce but has not yet produced.

In light of StratAir's amended RFA responses, the issues raised in my May 7, 2026 conferral letter concerning the RFAs have been resolved and no longer require Court intervention. StratAir's amended interrogatory responses likewise resolved many of the issues identified in that letter. Several interrogatory responses, however, remain incomplete or otherwise deficient, and certain amended responses continue to assert objections that Plaintiffs maintain should be withdrawn and which the parties have already addressed during their discovery conferrals. Those remaining deficiencies and objections are addressed below.

## I. RESPONSES TO REQUESTS FOR PRODUCTION

For purposes of our continued conferral, I have grouped the RFPs at issue by subject matter below. This organization is intended to focus the discussion and identify the categories of discovery for which Plaintiffs seek: (1) withdrawal of all objections other than attorney-client privilege and work-product objections; (2) supplemental responses; and (3) production of responsive documents. Several of StratAir's RFP responses state that StratAir "will produce" responsive documents, yet those documents have not been produced. Plaintiffs again request that StratAir complete that production. In addition, several RFP responses assert attorney-client privilege and/or the work-product doctrine as grounds for withholding responsive documents. To the extent StratAir continues to withhold documents on those bases, Plaintiffs again request that StratAir serve a privilege log sufficient to substantiate those claims.

### 1. Boilerplate General Objections

StratAir asserted boilerplate "general objections" to every single Request for Production served by Plaintiffs, claiming: (i) attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, or protection"; (ii) overbreadth, undue burden, irrelevance, and disproportionality; (iii) duplicative; and (iv) obligations imposed beyond those required under the Federal Rules of Civil Procedure, Local Rules, or Court Order. During conferral, StratAir agreed to withdraw these general objections. However, StratAir has not yet served amended RFP responses reflecting that agreement. Plaintiffs again request that StratAir serve amended RFP responses withdrawing the general objections and stating, for each request, whether responsive documents have been produced, will be produced, are being withheld, or do not exist.

### 2. RIF Decision, Business Justification, Selection Criteria, and Decisional Unit

This category includes RFP Nos. 1, 2, 4, 6, 7, 10, 30, 31, 32, 35, 36, 49, 111, 129, 132, 133, and 135. These requests seek documents concerning StratAir's January 2024 layoff/RIF decision, asserted business need, customer or staffing communications, selection criteria, rankings or scoring, decisional unit, performance standards, and application of selection criteria.

StratAir objected on grounds including overbreadth, burden, relevance, confidentiality, vagueness, and its position that Plaintiffs challenge only their selection for termination, not the legitimacy or business necessity of the RIF. During conferral, StratAir maintained its objections to RFP Nos. 1, 2, 4, 10, 30, 31, 32, 35, 36, 111, 129, 132, 133, and 135. StratAir also indicated that it would produce documents responsive to RFP Nos. 1, 6, 7, 10, and 49, but has failed to do so.

Plaintiffs dispute StratAir's objections. The stated basis for the RIF, the decisionmakers, the employees considered, the criteria used, and the application of those criteria are central to Plaintiffs' claims and StratAir's defenses. Plaintiffs again request that StratAir withdraw its

objections, produce all non-privileged responsive documents, and confirm whether any responsive documents are being withheld.

**3. Financial Condition, Revenue, Costs, Insurance, and Punitive Damages-Related Financial Information**

This category includes RFP Nos. 3, 116, 117, and 145. These requests seek financial statements, revenue reports, budgets, forecasts, net worth, punitive-damages financial condition information, and cost comparisons relating to the use of contractors or temporary workers versus retaining employees.

StratAir objected on grounds including confidentiality, proportionality, prematurity, and relevance. During conferral, StratAir refused to withdraw its objections to these RFPs. Plaintiffs continue to dispute those objections. Financial and cost-related documents are relevant to StratAir's asserted business justification for the RIF and to damages issues, including punitive damages where applicable. Plaintiffs again request that StratAir withdraw its objections, produce responsive non-privileged documents, and identify any categories being withheld.

**4. Terminated/Retained Workforce Demographics, Headcount, and Statistical Data**

This category includes RFP Nos. 5, 8, 9, 33, 69, 130, 131, 134, 135, 136, and 141. These requests seek lists, aggregate data, headcount, race/ethnicity, age, hire dates, tenure, national origin, shift, position, and selection-rate information for employees terminated and retained in connection with the January 2024 RIF.

StratAir objected on grounds including overbreadth, burden, non-party privacy, relevance, and proportionality. During conferral, StratAir refused to withdraw these objections. Plaintiffs dispute those objections because demographic, tenure, position, and retention data are directly relevant to Plaintiffs' disparate treatment and disparate impact theories, StratAir's asserted selection criteria, and comparator issues.

At minimum, Plaintiffs request that StratAir produce a complete and usable dataset showing the employees in the relevant decisional group, employees selected for termination, employees retained, each employee's job title or position, hire date or tenure, age or date of birth, race/ethnicity, national origin to the extent maintained, shift, department/location, and selection/retention status.

**5. Hiring, Recruiting, Onboarding, Job Postings, and Backfill/Replacement Hiring**

This category includes RFP Nos. 11, 12, 112, 123, and 146. These requests seek hiring, recruiting, onboarding, job postings, backfill hiring, replacement hiring, and documents showing who performed Plaintiffs' work after termination.

StratAir objected on grounds including overbreadth, relevance, temporal scope, confidentiality, and its position that Plaintiffs' Amended Complaint does not allege post-RIF hiring. During conferral, StratAir refused to withdraw its objections. Plaintiffs dispute those objections. Whether StratAir hired, assigned, retained, transferred, or used other workers to perform the same or substantially similar work after Plaintiffs' terminations bears directly on StratAir's claimed RIF rationale, whether Plaintiffs were replaced, and whether younger or otherwise non-protected comparators were treated more favorably.

Plaintiffs request that StratAir withdraw its objections and produce documents sufficient to show whether, after the RIF, StratAir hired, assigned, retained, or transferred any person to perform work previously performed by Plaintiffs.

**6. Temporary Workers, Independent Contractors, Staffing Agencies, and Non-Employee Labor**

This category includes RFP Nos. 13, 21, 22, 23, 24, 25, 26, 27, 28, 29, 38, 39, 87, 109, 111, 112, 113, 129, 133, 135, 136, 137, 138, 139, 140, 141, 142, 143, 144, 145, 146, 147, and 148. These requests seek information concerning temporary workers, independent contractors, staffing agencies, leased employees, non-employee workers, contractor agreements, invoices, work assignments, job duties, demographic information, and whether non-employees replaced or supplemented Plaintiffs.

StratAir refused to withdraw its objections to these requests. StratAir has also taken the position in its responses that independent contractors, temporary workers, staffing agency workers, and similar non-employee labor are irrelevant because Plaintiffs' Amended Complaint does not focus on non-employee workers. Plaintiffs dispute that position. Documents showing whether StratAir used non-employee labor before, during, or after the January 2024 RIF are relevant to the asserted need for the RIF, whether Plaintiffs' work continued after termination, whether Plaintiffs were replaced or supplemented, and whether StratAir's stated rationale is pretextual.

To the extent StratAir contends that no such workers were used, Plaintiffs request that StratAir serve amended responses confirming that representation by request, identifying the time period covered, and confirming that no responsive documents are being withheld.

**7. Plaintiffs' Personnel Files, Employment Records, Pay, Performance, Discipline, Attendance, and Termination Records**

This category includes RFP Nos. 14, 15, 16, 17, 18, 19, 55, 62, 63, 64, 65, 70, 72, 75, 77, 89, 90, 91, 94, 97, 98, 99, 101, and 105. These requests seek Plaintiffs' personnel files, applications, onboarding records, performance evaluations, discipline, attendance, compensation, termination communications, pay-rate changes, transfers, reinstatement, and documents supporting StratAir's stated performance or discipline reasons.

StratAir indicated that it would produce documents responsive to RFP Nos. 14, 19, 55, 62, 63, 72, 75, 77, 89, 90, 91, 94, 97, 98, 99, 101, and 105. StratAir has produced some personnel-file and employment documents, but the production does not appear complete and StratAir has not served amended responses confirming that production is complete.

Based on Plaintiffs' review of the current production, StratAir appears to have produced only limited personnel-file materials for some Plaintiffs, not complete personnel files for all Plaintiffs. The production appears to include some records for Luis Rodriguez Ceruto, including his December 28, 2023 Employee Warning Notice and related WhatsApp screenshots. The SAS-0001 through SAS-0394 production includes Rodriguez Ceruto's December 28, 2023 Employee Warning Notice and WhatsApp screenshots. The production also appears to include some onboarding or application materials for Luis Same Gonzalo and Eyonny Prado Duran. The SAS-0001 through SAS-0394 production includes Luis Same Gonzalo onboarding/application materials. SAS-0053 through SAS-0056 contain Eyonny Prado Duran's employment application. Plaintiffs have not located any meaningful personnel-file production for Alex Laffita Ortiz or Henry Pinto Sumoza.

This is a significant deficiency because StratAir's amended interrogatory responses now rely on Plaintiff-specific reasons for the RIF selections, including alleged written warnings, unauthorized time off, excessive absenteeism, cargo-unloading inefficiency, negative attitude, unwillingness to listen to feedback, careless behavior, unauthorized overtime, leaving a security post, and other alleged performance issues. StratAir must therefore produce the documents supporting those asserted reasons, or confirm that no additional responsive documents exist.

Plaintiffs specifically request that StratAir complete production of the following categories, to the extent not already produced:

- complete personnel files for each Plaintiff;
- all employment applications, offer letters, onboarding documents, I-9/W-4 documents, policy acknowledgments, badge/access documents, and benefit records maintained in each Plaintiff's personnel file;

- all performance evaluations, reviews, assessments, supervisor notes, performance observations, or other documents reflecting Plaintiffs' job performance;

- all disciplinary records, warnings, counseling records, corrective-action records, write-ups, verbal-warning documentation, incident reports, and documents supporting any alleged discipline;

- all attendance records, time records, time-off requests, leave requests, absence records, schedule records, payroll/timekeeping records, and documents relating to Grant's November 2023 time-off issue and Rodriguez Ceruto's alleged absenteeism;

- all compensation documents, wage records, pay-rate records, benefits records, overtime records, and documents reflecting any pay-rate changes;

- all documents and communications relating to the decision to terminate each Plaintiff, including recommendations, approvals, notices, termination communications, and communications between or involving all StratAir HR, managerial, or supervisory personnel who supplied performance observations;

- all documents supporting StratAir's contentions regarding Grant's warning, unauthorized time off, reinstatement, and cargo-unloading performance;

- all documents supporting StratAir's contentions regarding Pinto's alleged unauthorized overtime, cargo-unloading inefficiency, and alleged security-post issue;

- all documents supporting StratAir's contentions regarding Prado's alleged poor performance and alleged excuses for not performing tasks;

- all documents supporting StratAir's contentions regarding Rodriguez Ceruto's attendance warning, time-off requests, FMLA/leave issues, and alleged attendance deficiency;

- all documents supporting StratAir's contentions regarding Laffita's alleged unsatisfactory performance, negative attitude, unwillingness to listen to feedback, careless behavior, transfers, pay-rate changes, and post-termination email; and

- all documents supporting StratAir's contentions regarding Same's alleged unsatisfactory cargo-unloading performance and any input provided by Javier or other supervisors.

StratAir also asserted duplicative objections to RFP Nos. 15, 16, 17, 18, 64, and 65. Plaintiffs are not seeking duplicative production. However, StratAir should serve amended responses confirming whether all documents responsive to those requests have been produced in response to RFP No. 14 or another specifically identified request, and should identify the Bates ranges where those documents appear.

The remaining dispute in this category also includes RFP No. 70. Plaintiffs again request that StratAir withdraw its objections to RFP No. 70 and produce all responsive documents relating to Grant's warning, including the warning itself, any supporting documentation, communications, witness statements, supervisor notes, and documents showing whether the warning was considered in the January 2024 RIF. To the extent additional documents exist, they should be produced immediately. If no additional responsive documents exist, StratAir should say so in amended responses.

Plaintiffs request that StratAir confirm whether complete personnel files for Grant, Laffita, Pinto, Prado, Rodriguez Ceruto, and Same have been produced, identify the Bates ranges for each Plaintiff's personnel file, and immediately produce any missing personnel-file materials.

**8. Non-Party Personnel Files, Comparator Evaluations, Discipline, Attendance, and Time-Off Records**

This category includes RFP Nos. 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, and 87. These requests seek complete personnel files and personnel records for non-party employees, including performance evaluations, discipline, attendance, time-off, and comparator information.

StratAir objected on grounds including privacy, overbreadth, burden, proportionality, and relevance. During conferral, StratAir refused to withdraw these objections. Plaintiffs again request that StratAir withdraw its objections to these RFPs and produce all responsive documents, or confirm that no additional responsive documents exist.

**9. Communications About Plaintiffs, Age, Race, National Origin, Comments, Supervisors, HR, and Decisionmakers**

This category includes RFP Nos. 34, 37, 38, 40, 41, 42, 43, 44, 45, 46, 95, 100, 103, and 104. These requests seek communications referencing Plaintiffs by name, age-related terms, race, color, national origin, Black employees, Virgin Islands, Puerto Rico, non-Hispanic employees, supervisor comments, and alleged statements about older or younger workers.

StratAir objected on grounds including overbreadth, temporal scope, vagueness, searchability, and relevance. During conferral, StratAir refused to withdraw its objections to RFP Nos. 34, 37, 38, 40, 41, 42, 43, 44, 45, 46, 95, and 104. StratAir indicated that it would produce documents responsive to RFP Nos. 100 and 103, if any exist. Plaintiffs request that StratAir produce the documents it agreed to produce or confirm whether such documents do not exist, and amend its responses accordingly.

Plaintiffs also request that StratAir identify the custodians searched, date ranges used, search terms used, communications platforms searched, and whether any responsive communications are being withheld. Communications about Plaintiffs, alleged age-related comments, race/national-origin

comments, and RIF decisionmaker communications are plainly relevant to Plaintiffs' claims and StratAir's defenses.

**10. Policies, Handbooks, Discrimination/Harassment/Retaliation, RIF, FMLA, and ADA Materials**

This category includes RFP Nos. 47, 48, 49, 50, 51, 52, 79, 83, 84, and 85. These requests seek employee handbooks, anti-discrimination, anti-harassment, anti-retaliation, RIF/layoff, FMLA, ADA, accommodation, and supervisor/manager training materials.

StratAir agreed to produce documents responsive to RFP Nos. 47, 48, 49, and 79. Plaintiffs request that StratAir complete that production and serve amended responses confirming whether all responsive documents have been produced. StratAir refused to withdraw its objections to RFP Nos. 50, 51, 52, 83, and 85, which seek training materials relating to discrimination, employment law, layoffs, FMLA, ADA, and accommodations.

Plaintiffs dispute StratAir's relevance objections. Policies and training materials addressing discrimination, retaliation, RIF procedures, FMLA, ADA, accommodations, and complaint/reporting procedures are relevant to StratAir's knowledge of its obligations, the standards communicated to managers and decisionmakers, and whether StratAir followed its own policies in connection with Plaintiffs' terminations.

**11. Complaints, Grievances, Investigations, Discrimination/Retaliation Reports, and Lawsuit-Related Investigations**

This category includes RFP Nos. 53, 54, 55, 59, 60, 61, 96, and 124. These requests seek complaints or grievances of discrimination, Plaintiff-specific complaints, investigations, internal reports, investigation notes, findings, Laffita's post-termination email and investigation, and lawsuit-related investigations.

StratAir indicated that it would produce Laffita's email to StratAir's President in response to RFP Nos. 55, 59, and 96. Plaintiffs request that StratAir produce that email and any other non-privileged responsive documents, and amend its responses to confirm whether production is complete. StratAir refused to withdraw its objections to RFP Nos. 53, 54, 60, 61, and 124.

Plaintiffs dispute those objections. Complaints of discrimination, retaliation, harassment, unfair treatment, or age-related comments are relevant to notice, motive, intent, pattern/practice evidence, and StratAir's handling of complaints. To the extent StratAir withholds investigation-related materials based on attorney-client privilege or work product, Plaintiffs request a privilege log.

**12. Rodriguez Ceruto FMLA, ADA, Accommodation, Time-Off, Wife's Medical Condition, and Related Comparator Records**

This category includes RFP Nos. 72, 73, 74, 75, 77, 78, 80, 81, 82, 83, 85, 86, and 87. These requests seek documents concerning StratAir's knowledge of Plaintiff Rodriguez Ceruto's wife's cancer diagnosis, his time-off and scheduling requests, accommodation requests, FMLA eligibility, FMLA notices/designations, medical documentation, and comparator leave/time-off records.

StratAir indicated that it would produce documents responsive to RFP Nos. 72, 73, 74, 75, 77, 78, 80, and 82. Plaintiffs again request that StratAir produce those documents and serve amended responses confirming whether production is complete. StratAir refused to withdraw its objections to RFP Nos. 81, 83, 85, 86, and 87.

Plaintiffs dispute those objections. Documents concerning StratAir's knowledge of Rodriguez Ceruto's need for time off, whether FMLA or accommodation obligations were considered, and how StratAir handled comparable time-off or medical-related requests by other employees are directly relevant to Rodriguez Ceruto's FMLA, ADA, retaliation, and associational-disability theories. Plaintiffs again request that StratAir withdraw its objections and produce all responsive documents immediately.

**13. EEOC Charges, Position Statements, EEOC Production, and EEOC Correspondence**

This category includes RFP Nos. 118, 119, 120, and 121. These requests seek EEOC charges filed by Plaintiffs and other employees or former employees of StratAir, position statements, submissions, documents produced to the EEOC, and correspondence between StratAir and the EEOC.

StratAir agreed to produce, and has produced, only Plaintiffs' EEOC charges. During conferral, StratAir stated that it would not withdraw its objections to the remaining portions of these requests or produce the remaining documents sought, including EEOC charges filed by non-parties.

Plaintiffs dispute those objections. Charges filed against StratAir by individuals other than Plaintiffs are discoverable because they may show other complaints of similar discrimination, retaliation, harassment, or related employment practices; StratAir's notice of alleged discriminatory conduct; the identity of potential witnesses or comparators; and whether StratAir has asserted consistent or inconsistent explanations for similar employment decisions. Plaintiffs are not seeking unrelated charges for improper character purposes. Rather, Plaintiffs seek charges within the requested period that concern age discrimination, race/color discrimination, national-origin discrimination, disability discrimination, retaliation, RIF/layoff selection, termination, discipline, leave, accommodation, or related employment practices relevant to the claims and defenses in this case.

Non-privileged EEOC submissions, documents produced to the EEOC, and substantive EEOC correspondence concerning Plaintiffs' charges are likewise relevant to StratAir's factual positions, asserted defenses, and prior statements regarding the events at issue.

**14. Affirmative Defenses, Litigation Defenses, Witness Statements, Rule 26 Disclosures, and Trial Evidence**

This category includes RFP Nos. 106, 107, 108, 109, 110, 122, 125, 126, 127, and 128. These requests seek documents supporting after-acquired evidence, mitigation, exhaustion, same-decision, replacement/protected-class defenses, witness statements, Rule 26 disclosures, documents reviewed for interrogatory responses, documents supporting defenses, and trial exhibits.

During conferral, StratAir agreed to withdraw its objections to RFP Nos. 106, 107, 108, 109, 110, 127, and 128. Plaintiffs request that StratAir serve amended responses reflecting that agreement and produce all non-privileged responsive documents. The remaining disputes concern RFP Nos. 122, 125, and 126.

Plaintiffs request that StratAir withdraw its objections to RFP No. 122 and produce all non-privileged witness statements responsive to the request. Plaintiffs also request that StratAir withdraw its objections to RFP No. 125 and produce all documents identified, referenced, or described in StratAir's Rule 26 disclosures. As to RFP No. 126, Plaintiffs are not seeking attorney mental impressions, but StratAir should produce any non-privileged documents reviewed, consulted, relied upon, or referenced in preparing interrogatory responses to the extent those documents have not already been produced. To the extent StratAir withholds documents based on privilege or work product, Plaintiffs request a privilege log.

## II. INTERROGATORY RESPONSES

StratAir's Amended Interrogatory Responses resolve some of the issues raised in Plaintiffs' prior conferral letter, but several responses remain incomplete, evasive, or improperly limited. Rule 33 requires each interrogatory to be answered separately and fully under oath to the extent it is not objected to. Fed. R. Civ. P. 33(b)(3) requires each interrogatory to be answered "separately and fully in writing under oath." An evasive or incomplete answer is treated as a failure to answer. Fed. R. Civ. P. 37(a)(4) provides that an evasive or incomplete answer must be treated as a failure to answer.

**1. Failure to Provide Specific Facts and "See Response To" Answers**

StratAir continues to provide incomplete responses to interrogatories asking for the factual bases for its asserted reasons for selecting Plaintiffs for termination. Instead of identifying specific incidents, dates, witnesses, supervisors, decisionmaker input, documents reviewed, and documents

supporting its contentions, StratAir often provides generalized RIF language or cross-references earlier responses that do not answer the specific subparts.

This issue includes, at minimum:

- **Grant INT Nos. 5, 6, 13, 16, 18, and 19.** StratAir contends that Mr. Grant received an April 2023 warning, took unauthorized time off, and was selected because of alleged unsatisfactory cargo-unloading performance, but it does not fully identify who raised each reason, the specific facts supporting each reason, all dates, witnesses, documents reviewed, or documents reflecting the decision. StratAir's amended response states that Grant received an Employee Warning Notice, took time off without approval, and was selected because of "unsatisfactory performance in consistently and efficiently unloading cargo." StratAir answered Grant INT No. 16 only by referring to No. 5, answered No. 18 by referring to Nos. 5 and 6, and answered No. 19 by referring to No. 5.

- **Laffita INT Nos. 2, 3, 13, and 21.** StratAir's responses remain incomplete because they do not identify all individuals, documents, and specific incidents related to the asserted reasons for Mr. Laffita's selection. StratAir gives generic RIF explanations and does not identify all witnesses, supervisors, decisionmakers, communications, personnel records, performance records, or other documents supporting its claimed reasons. For INT No. 21, StratAir responds only "See response to No. 3 above," despite being asked to state the facts supporting alleged "unsatisfactory" performance, "negative attitude," unwillingness to listen to feedback, and careless behavior. StratAir should supplement these responses to identify the specific facts, incidents, dates, witnesses, supervisors, decisionmaker input, communications, and documents supporting each asserted reason for Mr. Laffita's selection.

- **Pinto INT Nos. 2, 3, 8, 9, 10, and 15.** StratAir's responses remain incomplete because they do not identify all individuals, documents, and specific incidents related to the asserted reasons for Mr. Pinto's selection. StratAir identifies alleged unauthorized overtime, cargo-unloading inefficiency, and leaving a security post, but does not provide all requested facts, dates, witnesses, supervisors, decisionmaker input, communications, documentation, personnel-file materials, performance records, or other documents supporting those contentions. StratAir also does not fully identify who observed, reported, discussed, considered, or relied on each alleged issue in connection with the RIF decision. StratAir should supplement these responses to identify the specific facts, incidents, dates, witnesses, supervisors, decisionmaker input, communications, and documents supporting each asserted reason for Mr. Pinto's selection.

- **Prado INT Nos. 2, 3, 7, 8, 13, 14, and 18.** StratAir's responses remain incomplete because they do not identify all individuals, documents, and specific incidents related to the asserted reasons for Mr. Prado's selection. StratAir asserts that Mr. Prado was "a

problematic employee with poor performance" and "commonly had an excuse" not to perform tasks, but does not identify all facts, incidents, dates, witnesses, supervisors, decisionmaker input, communications, performance records, personnel-file materials, or other documents supporting those assertions. For INT Nos. 7 and 8, StratAir responds only "See response to No. 2 above," despite being asked for the facts, incidents, witnesses, documents, and documentation status supporting the alleged "problematic employee" and "excuse" contentions. For INT No. 13, StratAir states only that Jose Alverio provided feedback regarding employees' performance to Armando Portales Viera and Gisela Barrera before the January 2024 layoff and that Wilson Dorada was not involved in the selection process. That response is not fully responsive because it does not describe Jose Alverio's specific role in Mr. Prado's selection, when he participated, what he said or recommended regarding Mr. Prado, what information he considered, or what documents reflect his participation, despite the interrogatory expressly requesting that information. For INT No. 18, StratAir admits that supervisors, including Lidier Leon, provided feedback to Armando Portales Viera and Gisela Barrera to assist with the January 2024 layoff selection, but does not state when Lidier was consulted, what he said or recommended about Mr. Prado, what information he considered, whether any documents reflect his role, or what action, if any, he took in response to Mr. Prado's alleged complaint. StratAir should supplement these responses to identify the specific facts, incidents, dates, witnesses, supervisors, decisionmaker input, communications, and documents supporting each asserted reason for Mr. Prado's selection and each supervisor's role in the termination decision.

- **Rodriguez Ceruto INT Nos. 2, 3, 13, 17, and 18.** StratAir's responses remain incomplete because they do not identify all individuals, documents, and specific facts related to Mr. Rodriguez Ceruto's selection for termination, StratAir's knowledge of FMLA notice obligations, or its ADA/FMLA defenses. For INT No. 2, StratAir gives a generic RIF explanation and states only that employees were evaluated based on "relative job performance, disciplinary and attendance history, and the operational needs of the business," without identifying the specific facts, incidents, dates, witnesses, supervisors, decisionmaker input, or documents supporting the reasons Mr. Rodriguez Ceruto was selected. For INT No. 3, StratAir identifies Gisela Barrera, Armando Portales Viera, and Jorge Corral, and states that unnamed "warehouse supervisors" provided performance observations, but does not identify those supervisors, their specific roles, the dates they participated, the information they provided, or the documents they reviewed or created. For INT No. 13, StratAir responds only "See response to Interrogatory No. 12 above," even though INT No. 13 asks whether StratAir provided Mr. Rodriguez Ceruto written notice of his FMLA rights, when and how any notice was provided, who provided it, the documents reflecting it, or, if no notice was provided, why not and what StratAir's FMLA notice policy required. For INT Nos. 17 and 18, StratAir responds only "See response to No. 2 above" and states it will supplement under Rule 26, despite being asked for all facts

and evidence supporting its denial of Mr. Rodriguez Ceruto's ADA associational-disability and FMLA claims. Those responses are not fully responsive because StratAir's general RIF narrative does not identify the facts, witnesses, communications, documents, policies, notices, leave records, attendance records, text messages, or decisionmaker discussions supporting its contention that the termination was unrelated to Mr. Rodriguez Ceruto's wife's condition, his time-off requests, any FMLA rights, or protected activity. StratAir should supplement these responses to identify the specific facts, incidents, dates, witnesses, supervisors, decisionmaker input, communications, policies, leave records, attendance records, warnings, and documents supporting each asserted reason for Mr. Rodriguez Ceruto's selection and each ADA/FMLA defense.

- **Same INT Nos. 2, 4, 8, 9, 11, 13, and 18.** StratAir asserts that Mr. Same's cargo-unloading performance was unsatisfactory, but does not identify specific incidents, dates, witnesses, documents, or the factual basis for the alleged performance deficiency. Same INT No. 8 asks for facts, incidents, dates, witnesses, documentation, counseling/warnings, and documents supporting alleged unsatisfactory job performance, but StratAir responds by referring to INT No. 4. StratAir states supervisor Javier provided input regarding employees' performance before the January 2024 layoff, but does not describe the substance, timing, influence, or documents reflecting Javier's input.

Plaintiffs request that StratAir supplement these responses to fully respond to each interrogatory, identifying, for each Plaintiff, the specific facts, incidents, dates, witnesses, supervisors, decisionmaker input, documents reviewed, and documents supporting each stated reason for selection.

**2. Incomplete Response to Prado Second INT No. 1**

StratAir's response to Prado Second INT No. 1 remains incomplete. That interrogatory asks StratAir to identify all non-attorney witnesses with knowledge of facts relevant to any claim or defense, including the January 2024 layoff, the decision to terminate any Plaintiff, supervisor statements regarding age, contractor or temporary-worker hiring, discrimination complaints, and Plaintiffs' work performance. It also asks StratAir to provide each witness's contact information, summarize the facts known by each witness, state whether StratAir interviewed or obtained a statement from the witness, state whether StratAir expects to call the witness at trial, and identify relevant documents in the witness's possession, custody, or control.

StratAir identifies only Gisela Barrera, Armando Portales Viera, and Jorge Corral as the individuals with the "most direct knowledge" of Mr. Prado's claims, but the interrogatory asks for all persons with relevant knowledge, not only the three individuals StratAir characterizes as having the most direct knowledge. StratAir's own response confirms that other witnesses exist because it states that "supervisors provided performance observations based on direct knowledge of employees' work," but it does not identify those supervisors, summarize their knowledge, provide

their contact information, state whether they were interviewed or provided statements, or identify relevant documents in their possession, custody, or control. StratAir states that supervisors provided performance observations based on direct knowledge of employees' work and that Barrera and Portales Viera reviewed that information along with their own observations before making recommendations.

Plaintiffs request that StratAir supplement Prado Second INT No. 1 to identify all non-attorney persons with relevant knowledge, including all direct supervisors and employees who provided performance observations or other input regarding any Plaintiff's selection for the January 2024 layoff; provide each person's available contact information; summarize the subjects of each person's knowledge; state whether StratAir interviewed or obtained a statement from each person; state whether StratAir expects to call each person at trial; identify relevant documents in each person's possession, custody, or control; and confirm whether any responsive information is being withheld based on privilege, work product, or any other objection.

**3. Improper Privacy and Personal-Information Objections to Comparator and Nonparty Information**

StratAir continues to withhold relevant comparator and workforce information based on nonparty privacy, personal-information, burden, and proportionality objections. StratAir objected to Grant INT No. 14 because it sought personal information of nonparty employees and information before the RIF period. StratAir objected to Prado INT No. 16 because it sought detailed personal information of nonparty employees and pre-RIF information. StratAir objected to Laffita INT No. 15 on similar nonparty personal-information and pre-RIF relevance grounds.

Grant INT No. 17 presents the same issue in the context of comparator discipline and performance information. StratAir relies on Mr. Grant's alleged April 2023 warning, November 2023 unauthorized time off, and alleged unsatisfactory cargo-unloading performance as reasons for selecting him in the January 2024 RIF, but refuses to identify retained employees with similar discipline, attendance, or performance issues. StratAir objected that responding to INT No. 17 would require a manual review of hundreds of personnel files and an individualized assessment of whether warnings involved "same or similar" conduct or performance issues. Plaintiffs are not seeking a companywide review untethered to the RIF. Plaintiffs are willing to narrow Grant INT No. 17 to employees in the Miami warehouse/cargo handling workforce who were considered in the January 2024 RIF and who had documented warnings, discipline, attendance issues, unauthorized absence/time-off issues, or cargo-unloading performance issues during the relevant period but were retained.

Plaintiffs are not seeking disclosure of unnecessary private information. Plaintiffs seek comparator identities and relevant employment information subject to the confidentiality order, including the retained employee's name, age, race/ethnicity, national origin to the extent maintained, position, supervisor, nature and date of the discipline or performance issue, and the reason the employee

was retained. StratAir should supplement its answers to provide the requested comparator and workforce information subject to confidentiality protections rather than withholding it wholesale.

**4. Complaints, Charges, or Allegations of Discrimination**

Despite our prior conferrals on Grant INT No. 21 and Laffita INT No. 8, StratAir's responses to remain deficient. Grant INT No. 21 asks StratAir to identify complaints, charges, or allegations of race discrimination or national-origin discrimination made by any employee or former employee against StratAir from January 2022 through the present, including the complainant's name, date, allegations, outcome, and corrective action. Laffita INT No. 8 similarly asks StratAir to identify complaints, charges, or allegations of age discrimination made by any employee or former employee against StratAir or any of its supervisors or managers from January 2022 through the present, including the complainant's name, date, accused individuals, allegations, outcome/resolution, and corrective action.

StratAir objected to both interrogatories on the same grounds: that they seek information about complaints by other employees involving different decisionmakers, different supervisors, different departments, and distinct factual circumstances from the January 2024 RIF, and that the marginal relevance of unrelated complaints is outweighed by the burden of compiling information for a three-year period across all locations.

Plaintiffs dispute those objections. Mr. Grant asserts race and national-origin discrimination claims, and Mr. Laffita asserts age discrimination claims. StratAir denies discriminatory motive while asserting legitimate, non-discriminatory reasons for the challenged terminations. Complaints, charges, or allegations of race, national-origin, or age discrimination may identify witnesses, reveal notice to StratAir, show prior similar complaints, bear on motive or intent, and test whether StratAir handled similar complaints consistently.

To address StratAir's burden and scope objections, Plaintiffs are willing to narrow these interrogatories. For Grant INT No. 21, Plaintiffs seek complaints, charges, or allegations from January 2022 through the present that concern race discrimination, color discrimination, national-origin discrimination, retaliation for opposing such discrimination, discriminatory discipline, discriminatory termination, discriminatory layoff/RIF selection, or discriminatory treatment in the Miami location, cargo/warehouse/security workforce, or involving any of the same decisionmakers, supervisors, HR personnel, or managers involved in the January 2024 RIF. For Laffita INT No. 8, Plaintiffs seek complaints, charges, or allegations from January 2022 through the present that concern age discrimination, age-related comments, retaliation for opposing age discrimination, discriminatory discipline, discriminatory termination, discriminatory layoff/RIF selection, replacement of older workers by younger workers, or discriminatory treatment in the Miami location, cargo/warehouse/security workforce, or involving any of the same decisionmakers, supervisors, HR personnel, or managers involved in the January 2024 RIF.

Plaintiffs are not seeking unrelated complaints from different locations or departments with no connection to the claims or defenses in this case. Plaintiffs request that StratAir supplement its responses to Grant INT No. 21 and Laffita INT No. 8 for these narrowed categories by identifying the complainant, date, nature of the complaint or charge, protected category involved, accused individual or decisionmaker implicated, outcome, corrective action, and any non-privileged documents reflecting the complaint, investigation, outcome, or corrective action. To the extent StratAir contends responsive information is being withheld based on privilege, work product, privacy, confidentiality, or any other objection, StratAir should state that clearly and provide a privilege log where required.

**5. Training on Age Discrimination, RIFs, and Documentation Requirements**

Despite our prior conferral on this issue, StratAir's response to Pinto INT No. 20 remains deficient. Pinto INT No. 20 asks StratAir to identify all training provided to supervisors or managers at the Miami location from January 2022 through January 2024 regarding age discrimination, the ADEA, how to conduct a RIF in compliance with employment laws, or documentation requirements for employment decisions, including the date, trainer, attendees, and training materials. StratAir objected that the interrogatory is not proportional, that no law requires specialized age-discrimination or RIF training as a prerequisite to lawful employment decisions, that the existence or nonexistence of such training is not probative of discriminatory intent, and that the request seeks training records for supervisors and managers who had no involvement in the employment decisions at issue.

Plaintiffs dispute those objections. Plaintiffs do not contend that the absence of training automatically establishes liability. However, training on age discrimination, RIF procedures, and documentation requirements is relevant to StratAir's knowledge of its legal obligations, the standards communicated to managers and supervisors, whether decisionmakers were instructed on how to conduct and document a lawful RIF, and whether StratAir followed any applicable procedures in selecting Plaintiffs for termination. This is particularly relevant because StratAir asserts that the January 2024 RIF was based on a holistic evaluation of job performance, skills, qualifications, disciplinary history, attendance history, and operational needs, while also admitting there was no formal written scoring system, no written evaluations or scoring sheets, and no written documentation of the specific reasons for selecting Plaintiffs before the termination decisions were made.

To address StratAir's proportionality objection, Plaintiffs are willing to narrow Pinto INT No. 20 to training provided from January 2022 through January 2024 to the managers, supervisors, HR personnel, and decisionmakers involved in the January 2024 RIF, including Gisela Barrera, Armando Portales Viera, Jorge Corral, Jose Alverio, Lidier Leon, Javier, Wilson Dorada, and any HR personnel involved in the RIF or termination decisions. Plaintiffs request that StratAir supplement its response to identify any training on age discrimination, ADEA compliance, RIF/layoff procedures, selection criteria, documentation of performance or discipline,

employment-law compliance, FMLA/ADA obligations, anti-discrimination, anti-retaliation, or complaint-handling provided to those individuals during the relevant period.

For each responsive training, StratAir should identify the date, trainer, attendees, subject matter, and training materials. If StratAir contends that no responsive training exists, it should amend its response to state that clearly for the narrowed group and confirm whether any responsive documents are being withheld based on any objection.

## III. CONCLUSION

Plaintiffs remain willing to continue conferring in a good-faith effort to narrow or resolve the remaining discovery disputes. Nevertheless, because the parties have already extensively conferred regarding the RFP responses and the interrogatory objections that StratAir continues to maintain, Plaintiffs intend to proceed with requesting a discovery hearing on those remaining disputes.

To promote judicial economy and avoid the need for a second discovery hearing, Plaintiffs also intend to present the deficiencies identified above in StratAir's amended interrogatory responses at the same hearing. Should StratAir elect to further supplement its responses or withdraw any remaining objections before the hearing, Plaintiffs remain available to confer and will work in good faith to narrow the issues requiring the Court's intervention.

Very truly yours,



P. Brooks LaRou, Esq.
brooks@fairlawattorney.com

cc: Lisa Musco (LMusco@gunster.com)
Lisa Hagan (LHagan@gunster.com)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:25-CV-24505-MOORE/ELFENBEIN

IVAN GRANT,
ALEX LAFFITA ORTIZ,
HENRY PINTO SUMOZA,
EYONNY PRADO DURAN,
LUIS RODRIGUEZ CERUTO, and
LUIS SAME GONZALO,

Plaintiffs,

vs.

STRATAIR AVIATION SERVICES, LLC,

Defendant.
_____________________________________/

## AMENDED COMPLAINT

Plaintiffs, Ivan Grant, Alex Laffita Ortiz, Henry Pinto Sumoza, Eyonny Prado Duran, Luis Rodriguez Ceruto, and Luis Same Gonzalo, through their undersigned counsel, sue Defendant, StratAir Aviation Services, LLC, as follows:

*Introduction*

1. Plaintiffs Ivan Grant, Alex Laffita Ortiz, Henry Pinto Sumoza, Eyonny Prado Duran, Luis Rodriguez Ceruto, and Luis Same Gonzalo, who worked for Defendant StratAir Aviation Services, LLC, filed this lawsuit to obtain recourse for the ways in which they were treated differently and discriminated against.

*Parties, Jurisdiction, and Venue*



135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884 FAX 305.230.4844
*www.fairlawattorney.com*

2. Plaintiff, Ivan Grant, was a resident of Miami-Dade County, Florida, at all times material, and he is sui juris.

3. Mr. Grant worked as a "Warehouse Handler" for Defendant.

4. Defendant terminated Mr. Grant's employment on January 16, 2024, when he was 64 years old.

5. The EEOC issued a Notice of Right to Sue to Mr. Grant on July 8, 2025.

6. Plaintiff, Alex Laffita Ortiz, was a resident of Miami-Dade County, Florida, at all times material, and he is sui juris.

7. Mr. Laffita Ortiz worked as a "Warehouse Handler" for Defendant.

8. Defendant terminated Mr. Laffita Oritz's employment on January 17, 2024, when he was 50 years old.

9. The EEOC issued a Notice of Right to Sue to Mr. Laffita Ortiz on July 8, 2025.

10. Plaintiff, Henry Pinto Sumoza, was a resident of Miami-Dade County, Florida, at all times material, and he is sui juris.

11. Mr. Pinto Sumoza worked as a "Security Guard" for Defendant.

12. Defendant terminated Mr. Pinto Sumoza's employment on January 16, 2024, when he was 75 years old.

13. The EEOC issued a Notice of Right to Sue to Mr. Pinto Sumoza on July 8, 2025.

14. Plaintiff, Eyonny Prado Duran, was a resident of Miami-Dade County, Florida, at all times material, and he is sui juris.

15. Mr. Prado Duran worked as a "Cargo Loader" for Defendant.



135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884 FAX 305.230.4844
www.fairlawattorney.com

16. Defendant terminated Mr. Prado Duran's employment on January 14, 2024, when he was 48 years old.

17. The EEOC issued a Notice of Right to Sue to Mr. Prado Duran on July 8, 2025.

18. Plaintiff, Luis Rodriguez Ceruto, was a resident of Miami-Dade County, Florida, at all times material, and he is sui juris s.

19. Mr. Rodriguez Ceruto worked as a "Cargo Handler" for Defendant.

20. Defendant terminated Mr. Ceruto Rodriguez's employment on January 16, 2024, when he was 60 years old.

21. The EEOC issued a Notice of Right to Sue to Mr. Rodriguez Ceruto on July 8, 2025.

22. Plaintiff, Luis Same Gonzalo, was a resident of Miami-Dade County, Florida, at all times material, and he is sui juris.

23. Mr. Same Gonzalo worked as a "Cargo Handler" for Defendant.

24. The EEOC issued a Notice of Right to Sue to Mr. Same Gonzalo on July 8, 2025, when he was 62 years old.

25. Defendant, StratAir Aviation Services, LLC, was a resident of Miami-Dade County, Florida, at all times material, and he is sui juris.

26. Defendant was and is responsible for the conduct, acts, and omissions of its officers, managers, supervisors, and employees at all times material to this action.

27. This is an action for damages greater than $100,000, and this Court has jurisdiction over this matter.



135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884 FAX 305.230.4844
www.fairlawattorney.com

28. This Court has original jurisdiction over Plaintiffs' claims that arise under federal law pursuant to 28 U.S.C. §1331 and supplemental/pendent jurisdiction over Plaintiffs' related state law claims pursuant to 28 U.S.C. §1367.

29. Venue is proper pursuant to 28 U.S.C. §1391(b)(ii) because Defendant is a Delaware corporation that maintains multiple offices within this District and because most of the actions complained of occurred within this District.

*Common Factual Background*

30. Defendant describes itself on its website, https://www.stratair.net/about/, as "…a Miami-based freight company specializing in scheduled air freight, charters, ground handling services, and warehousing."

31. Defendant employed more than 50 people in Miami-Dade and Broward Counties for 20 or more calendar weeks during the time relevant to this action.

32. Plaintiffs all worked at Defendant's Miami airport location (warehouse).

33. All conditions precedent were performed by Plaintiffs, occurred, or were waived by the Defendant, including through Plaintiffs' dual-filing their Charge(s) of Discrimination with the EEOC and the FCHR.

34. More than 180 days have elapsed since the Plaintiffs filed their Charges of Discrimination, and they filed this Complaint within 90 days of the EEOC's issuance of the Notices of Right to Sue to each Plaintiff.

35. Plaintiffs agreed to pay their counsel a reasonable attorney's fee for all services rendered.



135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884 FAX 305.230.4844
*www.fairlawattorney.com*

COUNT I – AGE DISCRIMINATION IN VIOLATION OF THE ADEA
(ALL PLAINTIFFS)

Plaintiffs, Ivan Grant, Alex Laffita Ortiz, Henry Pinto Sumoza, Eyonny Prado Duran, Luis Rodriguez Ceruto, and Luis Same Gonzalo, reincorporate and re-allege all preceding paragraphs as though set forth fully herein and further allege as follows:

36. The Age Discrimination in Employment Act, 29 U.S.C. §261, et seq. ("ADEA"), makes it unlawful for an employer to, among other things, "discriminate against, any individual because of such individual's age."

37. The ADEA applies to employers such as the Defendant, who have 20 or more employees for each working day in 20 or more calendar weeks in the current or preceding year. 29 U.S.C. §630(b).

38. Plaintiffs were "employees" of the Defendant, as the term is defined at 29 U.S.C. §630(f).d

39. Plaintiffs were, at all times material, men 48 and older, and members of a class of persons protected from discrimination in employment because of their ages.

40. The Defendant's business involves the regular and routine receipt of merchandise arriving from outside the State of Florida for which it regularly and routinely receives payment from customers located outside of the State of Florida such that its business is an "industry affecting commerce" as defined by the ADEA. 29 U.S.C. §630(h).

41. In particular, the Defendant provided services to Amazon.com for the receipt, warehousing, and distribution of goods, materials, and products that arrived from outside the State



135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884 FAX 305.230.4844
*www.fairlawattorney.com*

of Florida.

42. Plaintiffs possessed the skills, background, and qualifications necessary to perform the duties of their positions.

43. Plaintiffs performed their work for Defendant satisfactorily, and they were in all respects good employees of Defendant.

44. Defendant discriminated against Plaintiffs by failing to treat them the same or similarly to its younger employees because of each Plaintiff's age.

45. Defendant hired some new employees in preparation for the 2023 winter holiday season, most of whom are believed to have been in their 20s or 30s.

46. Defendant's supervisory personnel, including Armando Portales Viera, Jorge [LNU], and Jose [LNU], regularly made ageist comments about StratAir's employees over the age of 40.

47. Ultimately, Defendant was faced with the decision about whether to terminate employees, and if so, which ones.

48. Defendant based its decision to terminate employees on their age, specifically whether they were older or not, during the period from approximately January 14 to 22, 2024.

49. Defendant terminated the Plaintiffs' employment between January 14-22, 2024, because of their age(s).

50. Defendant retained its younger employees who had less seniority instead of retaining Plaintiffs and its other older employees because, all other factors being equal, of their ages.



135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884 FAX 305.230.4844
www.fairlawattorney.com

51. More specifically, the Defendant fired Plaintiffs and other older employees with more seniority, and retained younger employees with less seniority, to perform the same or similar jobs.

52. Although Defendant's Warehouse Handlers and Cargo Handlers in their 20s and 30s regularly received verbal counseling and discipline, as well as written reprimands/write-ups, from Defendant's supervisory personnel before January 2024, their employment was not terminated, while the Plaintiffs' employment was terminated, despite not being subjected to the same or similar verbal or written disciplinary measures.

53. In December 2023, Mr. Rodriguez Ceruto heard his supervisors, Armando Portales Viera and Jose [LNU], talking about how StratAir needed to "get rid of the old people and start with new blood."

54. On another occasion in December 2023, Mr. Rodriguez Ceruto overheard Mr. Portales Viera remark, "Guajiro, why don't you go to Leon Medical Center. I'm tired of these old people here."

55. Further cementing that Defendant's decisions were ageist, while Mr. Rodriguez Ceruto was leaving the building with other co-workers after having their employment terminated, he heard Jose [LNU] comment that "we (referring to the older employees who had been fired) should have dyed our hair and our beards (indicating that if we looked younger, we would not have been fired)."

56. Defendant violated the ADEA by engaging in the aforesaid actions because of the Plaintiffs' age(s).



135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884 FAX 305.230.4844
*www.fairlawattorney.com*

57. The discriminatory actions of Defendant against Plaintiffs, when considered individually or collectively, constitute an adverse employment action because of their age(s) for purposes of ADEA.

58. These actions constitute an ultimate employment decision, altered the compensation, terms, conditions, or privileges of the employment of Plaintiffs, and/or adversely affected their status as employees.

59. As such, the disparate treatment they suffered constitutes an adverse employment action within the meaning of ADEA.

60. Defendant's actions were malicious and demonstrated a reckless indifference to Plaintiffs' rights pursuant to ADEA.

61. The aforementioned acts of commission and omission by Defendant were done willfully, wantonly, and with reckless disregard for the consequences of such actions.

62. Plaintiffs suffered damages in the form of lost income in the past, lost income in the future, lost benefits, lost seniority rights, mental anguish, loss of dignity, and other intangible injuries.

63. As direct and proximate result of the Defendant's unlawful discriminatory conduct in violation of the ADEA, Plaintiffs have suffered, and continue to suffer lost wages and benefits, and emotional distress, for which they are entitled to an award of monetary damages.

64. Plaintiffs also seek liquidated damages equal to their compensatory damages and the recovery of their reasonable attorney's fees and costs of litigation as provided for under the ADEA.



135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884 FAX 305.230.4844
*www.fairlawattorney.com*

WHEREFORE Plaintiffs, Ivan Grant, Alex Laffita Ortiz, Henry Pinto Sumoza, Eyonny Prado Duran, Luis Rodriguez Ceruto, and Luis Same Gonzalo, demand the entry of a judgment in their favor and against Defendant, StratAir Aviation Services, LLC, after a trial by jury, declaring that the Defendant violated the ADEA, awarding them compensatory damages including the loss of income in the past and in the future, lost benefits, seniority rights, promoting Plaintiffs to the position to which they should be holding, awarding them liquidated damages equal to their compensatory damages, granting them a permanent injunction against Defendant from engaging in discriminatory employment practices on the basis of age and awarding them their taxable costs and attorney's fees.

## COUNT II — VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT
## (ALL PLAINTIFFS – AGE)

Plaintiffs, Ivan Grant, Alex Laffita Ortiz, Henry Pinto Sumoza, Eyonny Prado Duran, Luis Rodriguez Ceruto, and Luis Same Gonzalo, reincorporate and re-allege paragraphs 1 through 35 as though set forth fully herein and further allege as follows:

65. The Florida Civil Rights Act of 1992 ("FCRA") makes it unlawful for an employer such as the Defendant to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment because of that individual's race.

66. Defendant was, at all times material to this action, a "person" and/or an "employer" that was and remains subject to the Florida Civil Rights Act of 1992 by employing more than 15 people for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.



135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884 FAX 305.230.4844
*www.fairlawattorney.com*

67. The FCRA prohibits Defendant from making employment decisions or from taking personnel actions affecting the terms, conditions, and/or privileges of employment based upon age considerations.

68. The FCRA allows a prevailing employee to obtain an order prohibiting Defendant from engaging in its discriminatory practice(s) and providing affirmative relief from the effects of the practice(s), to recover back pay, compensatory damages, damages for mental anguish, loss of dignity, and any other intangible injuries, and punitive damages. Fla. Stat. §760.11(5).

69. Plaintiffs possessed the skills, background, and qualifications necessary to perform the duties of their positions.

70. Plaintiffs performed their work for Defendant satisfactorily, and they were in all respects good employees of Defendant.

71. Plaintiffs were, at all times material, men 48 and older, and members of a class of persons protected from discrimination in employment because of their ages.

72. Defendant discriminated against Plaintiffs by failing to treat them the same or similar to its younger employees as a result of their ages (over 40).

73. Plaintiffs possessed the skills, background, and qualifications necessary to perform the duties of their positions.

74. Plaintiffs performed their work for Defendant satisfactorily, and they were, in all respects, good employees of Defendant.

75. Defendant discriminated against Plaintiffs by failing to treat them the same or similarly to its younger employees because of each Plaintiff's age.



135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884 FAX 305.230.4844
*www.fairlawattorney.com*

76. Defendant hired some new employees in preparation for the 2023 winter holiday season, most of whom are believed to have been in their 20s or 30s.

77. Defendant's supervisory personnel, including Armando Portales Viera, Jorge [LNU], and Jose [LNU], regularly made ageist comments about StratAir's employees over the age of 40.

78. Ultimately, Defendant was faced with the decision about whether to terminate employees, and if so, which ones.

79. Defendant based its decision to terminate employees on their age, specifically whether they were older or not, during the period from approximately January 14 to 22, 2024.

80. Defendant terminated the Plaintiffs' employment between January 14-22, 2024, because of their age(s).

81. Although Defendant's Warehouse Handlers and Cargo Handlers in their 20s and 30s regularly received verbal counseling and discipline, as well as written reprimands/write-ups, from Defendant's supervisory personnel before January 2024, their employment was not terminated, while the Plaintiffs' employment was terminated, despite not being subjected to the same or similar verbal or written disciplinary measures.

82. In December 2023, Mr. Rodriguez Ceruto heard his supervisors, Armando Portales Viera and Jose [LNU], talking about how StratAir needed to "get rid of the old people and start with new blood."

83. On another occasion in December 2023, Mr. Rodriguez Ceruto overheard Mr. Portales Viera remark, "Guajiro, why don't you go to Leon Medical Center. I'm tired of these old



135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884 FAX 305.230.4844
www.fairlawattorney.com

people here."

84. Further cementing that Defendant's decisions were ageist, while Mr. Rodriguez Ceruto was leaving the building with other co-workers after having their employment terminated, he heard Jose [LNU] comment that "we (referring to the older employees who had been fired) should have dyed our hair and our beards (indicating that if we looked younger, we would not have been fired)."

85. Defendant retained its younger employees who had less seniority instead of retaining Plaintiffs and its other older employees because, all other factors being equal, of their ages.

86. More specifically, the Defendant fired Plaintiffs and other older employees with more seniority, and retained younger employees with less seniority, to perform the same or similar jobs.

87. Defendant engaged in one or more prohibited "discriminatory practice", as the term is defined by Fla. Stat. §760.02(4) and by §760.10(1), by engaging in the aforesaid actions, which Chapter 760, Florida Statutes, prohibited.

88. The discriminatory actions of Defendant against Plaintiffs, when considered individually or collectively, constitute an adverse employment action because of their age(s) for purposes of FCRA.

89. These actions constitute an ultimate employment decision, altered the compensation, terms, conditions, or privileges of the employment of Plaintiffs, and/or adversely affected their status as employees.



135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884 FAX 305.230.4844
*www.fairlawattorney.com*

Case 1:25-cv-24505-KMW Document 1 Entered on FLSD Docket 09/29/2025 Page 13 of 32

90. As such, the disparate treatment they suffered constitutes an adverse employment action within the meaning of FCRA.

91. Defendant's actions were malicious and demonstrated a reckless indifference to Plaintiffs' rights pursuant to FCRA.

92. The aforementioned acts of commission and omission by Defendant were done willfully, wantonly, and with reckless disregard for the consequences of such actions.

93. Plaintiffs suffered damages in the form of lost income in the past, lost income in the future, lost benefits, lost seniority rights, mental anguish, loss of dignity, and other intangible injuries.

94. Pursuant to the FCRA, Plaintiffs are entitled to recover their attorneys' fees and costs from Defendant, in addition to damages and punitive damages.

WHEREFORE Plaintiffs, Ivan Grant, Alex Laffita Ortiz, Henry Pinto Sumoza, Eyonny Prado Duran, Luis Rodriguez Ceruto, and Luis Same Gonzalo, demand the entry of a judgment in their favor and against Defendant, StratAir Aviation Services, LLC, after a trial by jury, declaring that the Defendant violated the FCRA, awarding them compensatory damages including the loss of income in the past and in the future, lost benefits, seniority rights, for mental anguish, loss of dignity, other intangible injuries, for punitive damages, granting them a permanent injunction against Defendant from engaging in discriminatory employment practices on the basis of age, promoting Plaintiffs to the position to which they should be holding, and awarding them their taxable costs and attorneys' fees.



135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884 FAX 305.230.4844
*www.fairlawattorney.com*

COUNT III – VIOLATION OF 42 U.S.C. §1981
(IVAN GRANT – RACE DISCRIMINATION)

Plaintiff, Ivan Grant, reincorporates and re-alleges paragraphs 1 through 5 and 25 through 35 as though set forth fully herein and further alleges as follows:

95. The Reconstruction Era Civil Rights Act of 1866, 42 U.S.C. §1981 ("Section 1981"), makes it unlawful to discriminate against an employee because of race:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. §1981.

96. Mr. Grant possessed the skills, background, and qualifications necessary to perform the duties of his position.

97. Mr. Grant performed his work for Defendant satisfactorily, and he was in all respects a good employee of Defendant.

98. Defendant discriminated against Mr. Grant by failing to treat him the same or similar to its non-Black employees as a result of his race.

99. Defendant was faced with the decision about whether to terminate employees, and if so, which ones.

100. Defendant considered race – in particular, whether they were Black or not – when deciding which employees to terminate between December 2023 and January 2025.

101. Defendant terminated the employment of Mr. Grant on January 16, 2024.



135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884 FAX 305.230.4844
www.fairlawattorney.com

102. Defendant fired Mr. Grant and retained its non-Black employees who had less seniority in to continue the performance of the work at the location at which he was assigned to work, whether in a same or similar position, instead of terminating those non-Black employees with less seniority.

103. As such, the termination of Mr. Grant's employment because of his race and/or national origin constitutes an adverse employment action within the meaning of constitutes an adverse employment actions because of race for purposes of Section 1981, for which Section 1981 provides legal recourse.

104. These actions constitute an ultimate employment decision, altered the compensation, terms, conditions, or privileges of the employment of Mr. Grant and/or adversely affected his status as an employee.

105. Defendant's actions were malicious and demonstrated a reckless indifference to the rights of Mr. Grant.

106. The aforementioned acts of commission and omission by Defendant were done willfully, wantonly, and with reckless disregard for the consequences of such actions.

107. Mr. Grant suffered damages in the form of lost income in the past, lost income in the future, lost benefits, lost seniority rights, mental anguish, loss of dignity, and other intangible injuries.

108. Pursuant to Section 1981, Mr. Grant is entitled to recover his attorney's fees and costs from Defendant, in addition to damages and punitive damages.



135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884 FAX 305.230.4844
*www.fairlawattorney.com*

WHEREFORE Plaintiff, Ivan Grant, demands the entry of a judgment in his favor and against Defendant, StratAir Aviation Services, LLC, after a trial by jury, declaring that the Defendant violated 42 U.S.C. §1981, awarding him compensatory damages including the loss of income in the past and in the future, lost benefits, seniority rights, for mental anguish, loss of dignity, other intangible injuries, for punitive damages, granting him a permanent injunction against Defendant from engaging in discriminatory employment practices on the basis of race, promoting Plaintiff to the position to which he should be holding, and awarding him taxable costs and attorney's fees.

COUNT IV – VIOLATION(S) OF TITLE VII
(IVAN GRANT – DISCRIMINATION)

Plaintiff, Ivan Grant, reincorporates and re-alleges paragraphs 1 through 5 and 25 through 35 as though set forth fully herein and further alleges as follows:

109. Defendant was at all times material the "employer" of Plaintiff, Ivan Grant, as the term is defined by the Civil Rights Act, 42 U.S.C. § 2000e(1).

110. Plaintiff, Ivan Grant, was at all times material an "employee" of Defendant, as the term is defined by the Civil Rights Act, 42 U.S.C. § 2000e(f).

111. Title VII of the Civil Rights Act provides as follows:

(a)Employer practices

It shall be an unlawful employment practice for an employer—

> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or



135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884 FAX 305.230.4844
www.fairlawattorney.com

Case 1:25-cv-24505-KMW Document 1-1 Entered on FLSD Docket 09/30/2025 Page 17 of 32

> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S. Code § 2000e–2.

112. Mr. Grant is a dark-skinned Black man whose parents are from the Virgin Islands and who was born in Puerto Rico.

113. Mr. Grant possessed the skills, background, and qualifications necessary to perform the duties of his position.

114. Mr. Grant performed his work for Defendant satisfactorily, and he was in all respects a good employee of Defendant.

115. Defendant discriminated against Mr. Grant by failing to treat him the same or similarly to its non-Black employees as a result of his race and/or national origin.

116. Ultimately, Defendant was faced with the decision about whether to terminate employees, and if so, which ones.

117. Defendant based its decision to terminate employees on their race, in particular, whether they were Black (or seemed Hispanic) or not, in deciding who to terminate in January 2024.

118. Defendant retained its non-Black and Hispanic employees who had less seniority and who were performing the same or similar work, and who had less seniority, terminating Mr. Grant's employment instead.

119. More specifically, Defendant fired Mr. Grant and utilized its non-Black (Hispanic)



135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884 FAX 305.230.4844
www.fairlawattorney.com

Case 1:25-cv-24505-KWM Document 1-1 Entered on FLSD Docket 10/01/2025 Page 18 of 32

employees who had less seniority in order to continue the performance of the work at the location at which he was assigned to work.

120. The discriminatory actions of Defendant against Mr. Grant constitute an adverse employment action because of his race and/or national origin for purposes of Title VII of the Civil Rights Act.

121. These actions constitute an ultimate employment decision, altered the compensation, terms, conditions, or privileges of the employment of Mr. Grant and/or adversely affected his status as an employee.

122. As such, the termination of Mr. Grant's employment because of his race and/or national origin constitutes an adverse employment action within the meaning of Title VII of the Civil Rights Act.

123. Defendant's actions were malicious and demonstrated a reckless indifference to the rights of Mr. Grant pursuant to Title VII of the Civil Rights Act.

124. The aforementioned acts of commission and omission by Defendant were done willfully, wantonly, and with reckless disregard for the consequences of such actions.

125. Mr. Grant suffered damages in the form of lost income in the past, lost income in the future, lost benefits, lost seniority rights, mental anguish, loss of dignity, and other intangible injuries.

126. Pursuant to Title VII of the Civil Rights Act, Mr. Grant is entitled to recover his attorney's fees and costs from Defendant, in addition to damages and punitive damages.



135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884 FAX 305.230.4844
*www.fairlawattorney.com*

WHEREFORE Plaintiff, Ivan Grant, demands the entry of a judgment in his favor and against Defendant, StratAir Aviation Services, LLC, after a trial by jury, declaring that Defendant violated Title VII of the Civil Rights Act in discriminating against him because of his race, awarding him compensatory damages including the loss of income in the past and in the future, lost benefits, seniority rights, for mental anguish, loss of dignity, other intangible injuries, for punitive damages, granting him a permanent injunction against Defendant from engaging in discriminatory employment practices on the basis of race, promoting Plaintiffs to the position to which he should be holding, and awarding him taxable costs and attorney's fees.

COUNT V – VIOLATION(S) OF THE FCRA
(IVAN GRANT – DISCRIMINATION)

Plaintiff, Ivan Grant, reincorporates and re-alleges paragraphs 1 through 5 and 25 through 35 as though set forth fully herein and further alleges as follows:

127. The Florida Civil Rights Act of 1992 ("FCRA") makes it unlawful for an employer such as the Defendant to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment because of that individual's race.

128. Defendant was, at all times material to this action, a "person" and/or an "employer" that was and remains subject to the Florida Civil Rights Act of 1992 by employing more than 15 people for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

129. The FCRA prohibits Defendant from making employment decisions or from taking personnel actions affecting the terms, conditions, and/or privileges of employment based upon race



135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884 FAX 305.230.4844
*www.fairlawattorney.com*

Case 1:25-cv-24505-KMW Document 1-2 Entered on FLSD Docket 10/01/2025 Page 20 of 32

considerations.

130. The FCRA allows a prevailing employee to obtain an order prohibiting Defendant from engaging in its discriminatory practice(s) and providing affirmative relief from the effects of the practice(s), to recover back pay, compensatory damages, damages for mental anguish, loss of dignity, and any other intangible injuries, and punitive damages. Fla. Stat. §760.11(5).

131. Mr. Grant is a dark-skinned Black man whose parents are from the Virgin Islands and who was born in Puerto Rico.

132. Mr. Grant possessed the skills, background, and qualifications necessary to perform the duties of his position.

133. Mr. Grant performed his work for Defendant satisfactorily, and he was in all respects a good employee of Defendant.

134. Defendant discriminated against Mr. Grant by failing to treat him the same or similarly to its non-Black employees as a result of his race and/or national origin.

135. Ultimately, Defendant was faced with the decision about whether to terminate employees, and if so, which ones.

136. Defendant based its decision to terminate employees on their race and/or national origin, in particular, whether they were Black or not, in deciding who to terminate in January 2024.

137. Defendant retained its non-Black (Hispanic) employees who had less seniority and who were performing the same or similar work, and who had less seniority, terminating Mr. Grant's employment instead.

138. More specifically, Defendant fired Mr. Grant and utilized its non-Black (Hispanic)

Case 1:25-cv-24505-KMW Document 1-1 Entered on FLSD Docket 09/29/2025 Page 21 of 32

employees who had less seniority in order to continue the performance of the work at the location at which he was assigned to work because of their race and/or national origin.

139. These actions constitute an ultimate employment decision, altered the compensation, terms, conditions, or privileges of the employment of Mr. Grant, and/or adversely affected his status as an employee.

140. As such, the termination of Mr. Grant's employment because of his race and/or national origin constitutes an adverse employment action within the meaning of the Florida Civil Rights Act.

141. Defendant's actions were malicious and demonstrated a reckless indifference to the rights of Mr. Grant pursuant to the FCRA.

142. The aforementioned acts of commission and omission by Defendant were done willfully, wantonly, and with reckless disregard for the consequences of such actions.

143. Mr. Grant suffered damages in the form of lost income in the past, lost income in the future, lost benefits, lost seniority rights, mental anguish, loss of dignity, and other intangible injuries.

144. Pursuant to the FCRA, Mr. Grant is entitled to recover his attorney's fees and costs from Defendant, in addition to damages and punitive damages.

WHEREFORE Plaintiff, Ivan Grant, demands the entry of a judgment in his favor and against Defendant, StratAir Aviation Services, LLC, after a trial by jury, declaring that Defendant violated the Florida Civil Rights Act by discriminating against him because of his race, awarding him compensatory damages including the loss of income in the past and in the future, lost benefits,



135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884 FAX 305.230.4844
www.fairlawattorney.com

seniority rights, for mental anguish, loss of dignity, other intangible injuries, for punitive damages, granting him a permanent injunction against Defendant from engaging in discriminatory employment practices on the basis of race, promoting Plaintiffs to the position to which he should be holding, and awarding him taxable costs and attorney's fees.

COUNT VI – VIOLATION(S) OF THE ADA
(LUIS RODRIGUEZ CERUTO)

Plaintiff, Luis Rodriguez Ceruto, reincorporates and re-alleges paragraphs 1, 18 through 21, and 25 through 35 as though set forth fully herein and further alleges as follows:

145. Title I of the ADA prohibits an employer from discriminating against "a qualified individual on the basis of disability." 42 U.S.C. § 12112(a).

146. The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of [an] individual; ... or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1).

147. By definition, a "major life activity" includes the following activities:

(1) In general. Major life activities include, but are not limited to:

> (i) Caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting, reaching, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, interacting with others, and working; and
>
> (ii) The operation of a major bodily function, including functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions. The operation of a major bodily function includes the operation of an individual organ within a body system.
>
> (2) In determining other examples of major life activities, the term "major" shall not be



135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884 FAX 305.230.4844
www.fairlawattorney.com

Case 1:25-cv-24505-KMW Document 1-7 Entered on FLSD Docket 10/03/2025 Page 23 of 32

> interpreted strictly to create a demanding standard for disability. ADAAA section 2(b)(4) (Findings and Purposes). Whether an activity is a "major life activity" is not determined by reference to whether it is of "central importance to daily life."

29 C.F.R. §1630.2(i).

148. The ADA extends the prohibition against discrimination to protect employees associated with disabled family members. 42 U.S.C. § 12112(b)(4).

149. Mr. Rodriguez Ceruto's wife has one or more impairment(s) that substantially limit(s) one or more major life activities due to the nature of her cancer.

150. Mr. Rodriguez Ceruto's wife's cancer substantially limits one or more "major life activities."

151. Mr. Rodriguez Ceruto's wife's cancer diagnosis qualifies as a "disability" under the ADA. See, e.g., 29 C.F.R. § 1630.2(j)(3)(iii).

152. Mr. Rodriguez Ceruto was, because of his association with and responsibilities to his wife, a member of a class of persons protected from discrimination in employment under Title I of the ADA at all times material.

153. The Defendant treated Mr. Rodriguez Ceruto differently after learning that his wife had cancer and that he needed to help her with her care and treatment.

154. In response to Mr. Rodriguez Ceruto's request for reasonable accommodations (of time off from work in advance of each appointment he needed to take/accompany his wife), the Defendant imposed additional requirements on him that were not required of other employees, such as requiring him to provide a doctor's note to take time off from work.

155. After refusing to allow him to miss work to accompany his wife to her medical



135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884 FAX 305.230.4844
www.fairlawattorney.com

Case 1:25-cv-24505-KMW Document 34-7 Entered on FLSD Docket 01/29/2026 Page 71 of 107

appointments because "there was too much work," the Defendant terminated Mr. Rodriguez Ceruto's employment because of his requests for time off and the needs of his disabled wife, which required Mr. Rodriguez Ceruto to take time off to accompany his wife in receiving medical care and treatment (for her cancer).

156. Defendant discriminated against Mr. Rodriguez Ceruto "on account of" his association with his disabled wife.

157. Defendant violated the ADA when it treated Mr. Rodriguez Ceruto differently and then refused to accommodate his requests for a reasonable accommodation (time off from work) and then fired him because of his wife's disability.

158. Defendant's acts of omission and/or of commission as aforesaid violated the ADA, which prohibits discrimination against persons who are disabled, who have a record of disability, or who are regarded as disabled.

159. As a direct and proximate result of Defendant's intentional discrimination as described above, Mr. Rodriguez Ceruto suffered economic losses, including the loss of wages and benefits, seniority, pension, vacation, and sick leave benefits. In addition, his reputation was harmed, and he suffered mental anguish as a direct and proximate result of Defendant's conduct.

160. Defendant's actions have caused and will continue to cause Mr. Rodriguez Ceruto to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, all in an amount to be established at trial.

161. Defendant's actions were undertaken intentionally, willfully, and maliciously with respect to, or with reckless disregard for, Mr. Rodriguez Ceruto's federally protected rights, and



135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884 FAX 305.230.4844
*www.fairlawattorney.com*

he is therefore entitled to punitive damages.

WHEREFORE Plaintiff, Luis Rodriguez Ceruto, demand the entry of a judgment in his favor and against Defendant, StratAir Aviation Services, LLC, after trial by jury, for compensatory damages, including for damages to his reputation, emotional distress damages, mental anguish, to be placed in the position he would be in, but for the unlawful discrimination, through either reinstatement or lost past and future wages and employment-related benefits, the grant of injunctive relief prohibiting StratAir Aviation Services, LLC, from discriminating against him, punitive damages, his attorney's fees, costs, and all interest allowed by law, and such other relief as the Court deems just and proper.

## COUNT VIII – INTERFERENCE WITH FMLA RIGHTS
## (LUIS CERUTO RODRIGUEZ)

Plaintiff, Luis Rodriguez Ceruto, reincorporates and re-alleges paragraphs 1, 18 through 21, and 25 through 35as though set forth fully herein and further alleges as follows:

162. Mr. Rodriguez Ceruto worked more than 1250 hours in each relevant 12-month period, making him eligible for leave under the FMLA.

163. Mr. Rodriguez Ceruto informed Defendant that he would need to miss work to accompany his wife to obtain medical care following and related to her cancer diagnosis.

164. Mr. Rodriguez Ceruto notified Defendant of his need to take intermittent leaves of absence and that the reason for his need to take these leaves of absence was to accompany his wife to receive medical care and treatment following and as related to her cancer diagnosis, either upon or shortly after learning of the need to take leave.



135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884 FAX 305.230.4844
www.fairlawattorney.com

165. Mr. Rodriguez Ceruto also notified Defendant that he needed to take these leaves of absence to accompany his wife to her medical appointments as her primary caregiver.

166. By informing Defendant of his need to miss work due to his wife's serious health condition(s), Mr. Rodriguez Ceruto was entitled to receive the protected medical leave required by the FMLA.

167. Mr. Rodriguez Ceruto's wife's cancer qualified as a "serious health condition" under the FMLA because her cancer diagnosis required continuing treatment from her health care providers, involving multiple appointments with health care providers, and/or required him to miss work to accompany her on multiple days. See 29 C.F.R. §§825.113, 825.115.

168. Defendant interfered with Mr. Rodriguez Ceruto's ability to take intermittent and/or extended FMLA leave by not notifying him of his right to obtain protected leave, by not permitting him to take leave to accompany his wife to the appointments with her healthcare providers treating her for her cancer, by not designating his leave as FMLA-covered even though the reason qualified, by asking for medical documentation beyond what is permitted by law (i.e., not limiting its request to certification of her treatment and schedule), by making it difficult for him to take time off from work to accompany her to her medical appointments, and in other ways. But see 29 U.S.C. §2615.

169. By interfering with the protected leave Mr. Rodriguez Ceruto was entitled to take under the FMLA, as above, and penalizing him for being absent as a factor in terminating his employment, Defendant violated the FMLA.

170. Defendant lacked a reasonable or good faith basis for interfering with Mr. Rodriguez Ceruto's entitlement to take FMLA leave.



135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884 FAX 305.230.4844
www.fairlawattorney.com

Case 1:25-cv-24505-KMW Document 34-7 Entered on FLSD Docket 10/28/2026 Page 74 of 107

171. As a direct and proximate result of Defendant's interference with the protected leave to which Mr. Rodriguez Ceruto was entitled under the FMLA, he suffered damages, including lost wages and benefits, liquidated damages, attorney's fees, and costs.

WHEREFORE Plaintiff, Luis Rodriguez Ceruto, demands the entry of a judgment in his favor and against Defendant, StratAir Aviation Services, LLC, after trial by jury, for actual compensatory damages, front pay, back pay, loss of benefits, loss of earning capacity, liquidated damages, his attorneys' fees under the FMLA, costs, and all interest allowed by law, and such other relief as the Court deems just and proper.

## COUNT IX – FAILURE TO NOTIFY OF FMLA RIGHTS
## (LUIS CERUTO RODRIGUEZ)

Plaintiff, Luis Rodriguez Ceruto, reincorporates and re-alleges paragraphs 1, 18 through 21, and 25 through 35 as though set forth fully herein and further alleges as follows:

172. Mr. Rodriguez Ceruto worked more than 1250 hours in each relevant 12-month period, making him eligible for leave under the FMLA.

173. Mr. Rodriguez Ceruto informed Defendant that he would need to miss work to accompany his wife to obtain medical care following and related to her cancer diagnosis.

174. Mr. Rodriguez Ceruto notified Defendant of his need to take intermittent leaves of absence and that the reason for his need to take these leaves of absence was to accompany his wife to receive medical care and treatment following and as related to her cancer diagnosis, either upon or shortly after learning of the need to take leave.

175. Mr. Rodriguez Ceruto also notified Defendant that he needed to take these leaves



135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884 FAX 305.230.4844
www.fairlawattorney.com

Case 1:25-cv-24505-KMW Document 12-1 Entered on FLSD Docket 10/03/2025 Page 28 of 32

of absence to accompany his wife to her medical appointments as her primary caregiver.

176. By informing Defendant of his need to miss work due to his wife's serious health condition(s), Mr. Rodriguez Ceruto was entitled to receive the protected medical leave required by the FMLA.

177. Mr. Rodriguez Ceruto's wife's cancer qualified as a "serious health condition" under the FMLA because her cancer diagnosis required continuing treatment from her health care providers, involving multiple appointments with health care providers, and/or required him to miss work to accompany her on multiple days. See 29 C.F.R. §§825.113, 825.115.

178. Despite its knowledge of Mr. Rodriguez Ceruto's qualifying event for FMLA, Defendant failed to (a) provide him with notice that the leave he requested would qualify as protected leave under the FMLA, (b) notify him of his right to take FMLA leave, and (c) provide him with any paperwork concerning his FMLA rights. See 29 C.F.R. §825.300.

179. Defendant also failed to notify Mr. Rodriguez Ceruto that he could take extended or intermittent FMLA leave FMLA. See 29 C.F.R. §825.300.

180. Instead of providing Mr. Rodriguez Ceruto with a written FMLA notice of his rights under the FMLA, or any FMLA-related paperwork, Defendant attempted to avoid Mr. Rodriguez Ceruto finding out that he had certain rights under the FMLA. But see 29 U.S.C. §2615.

181. Defendant lacked a reasonable or good faith basis for failing to notify Mr. Rodriguez Ceruto of his rights under the FMLA leave.

182. After initially permitting him to miss work for specific hours, Defendant refused to permit him to continue to miss work on other occasions, intermittently, to accompany his wife to



135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884 FAX 305.230.4844
www.fairlawattorney.com

her medical appointments because "there was too much work."

183. Mr. Rodriguez Cepero was unaware that he was entitled to miss work to accompany his wife to her medical appointments because the Defendant did not notify him of his rights afforded by the FMLA or that he could not be retaliated against for requesting time off for reasons permitted by the FMLA.

184. As a direct and proximate result of Defendant's failure to notify Mr. Rodriguez Ceruto of his rights under the FMLA, he suffered damages, including lost wages and benefits, liquidated damages, attorney's fees, and costs.

WHEREFORE Plaintiff, Luis Rodriguez Ceruto, demands the entry of a judgment in his favor and against Defendant, StratAir Aviation Services, LLC, after trial by jury, for actual compensatory damages, front pay, back pay, loss of benefits, loss of earning capacity, liquidated damages, his attorneys' fees under the FMLA, costs, and all interest allowed by law, and such other relief as the Court deems just and proper.

## COUNT X – UNLAWFUL FMLA RETALIATION
## (LUIS CERUTO RODRIGUEZ)

Plaintiff, Luis Ceruto Rodriguez, reincorporates and re-alleges paragraphs 1, 18 through 21, and 25 through 35as though set forth fully herein and further alleges as follows:

185. Mr. Rodriguez Ceruto worked more than 1250 hours in each relevant 12-month period, making him eligible for leave under the FMLA.

186. Mr. Rodriguez Ceruto informed Defendant that he would need to miss work to accompany his wife to obtain medical care following and related to her cancer diagnosis.



135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884 FAX 305.230.4844
www.fairlawattorney.com

187. Mr. Rodriguez Ceruto notified Defendant of his need to take intermittent leaves of absence and that the reason for his need to take these leaves of absence was to accompany his wife to receive medical care and treatment following and as related to her cancer diagnosis, either upon or shortly after learning of the need to take leave.

188. Mr. Rodriguez Ceruto also notified Defendant that he needed to take these leaves of absence to accompany his wife to her medical appointments as her primary caregiver.

189. By informing Defendant of his need to miss work due to his wife's serious health condition(s), Mr. Rodriguez Ceruto was entitled to receive the protected medical leave required by the FMLA.

190. Mr. Rodriguez Ceruto's wife's cancer qualified as a "serious health condition" under the FMLA because her cancer diagnosis required continuing treatment from her health care providers, involving multiple appointments with health care providers, and/or required him to miss work to accompany her on multiple days. See 29 C.F.R. §§825.113, 825.115.

191. After Defendant provided Mr. Rodriguez Ceruto with a brief leave to undergo surgery, Defendant retaliated against Mr. Rodriguez Ceruto by failing to provide him with additional medical leave (that did not exceed the equivalent of 12 workweeks), by increasing his workload, and terminating his employment because he requested medical leave. But see 29 U.S.C. §2615.

192. Defendant lacked a reasonable or good faith basis for retaliating against Mr. Rodriguez Ceruto for requesting or taking any leave of absence to which he was entitled under the FMLA.



135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884 FAX 305.230.4844
*www.fairlawattorney.com*

193. As a direct and proximate result of Defendant's retaliatory conduct, Mr. Rodriguez Ceruto suffered damages, including lost wages and benefits, liquidated damages, attorney's fees, and costs.

WHEREFORE Plaintiff, Luis Rodriguez Ceruto, demands the entry of a judgment in his favor and against Defendant, StratAir Aviation Services, LLC, after trial by jury, for actual compensatory damages, front pay, back pay, loss of benefits, loss of earning capacity, to be placed in the position he would be in but for the unlawful discrimination, through either reinstatement or lost past and future wages and employment-related benefits, liquidated damages, his attorneys' fees under the FMLA, costs, and all interest allowed by law, and such other relief as the Court deems just and proper.



135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884 FAX 305.230.4844
*www.fairlawattorney.com*

Case 1:25-cv-24505-KMM Document 1-7 Entered on FLSD Docket 10/29/2026 Page 79 of

DEMAND FOR JURY TRIAL

Plaintiffs, Ivan Grant, Alex Laffita Ortiz, Henry Pinto Sumoza, Eyonny Prado Duran, Luis Rodriguez Ceruto, and Luis Same Gonzalo, demand a trial by jury of all issues so triable.

Dated this 23rd day of October 2025.

s/Brian H. Pollock, Esq.
Brian H. Pollock, Esq. (174742)
brian@fairlawattorney.com
FAIRLAW FIRM
135 San Lorenzo Avenue
Suite 770
Coral Gables, FL 33146
Tel: 305.230.4884
Counsel for Plaintiffs

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 1:25-cv-24505**

IVAN GRANT,
ALEX LAFFITA ORTIZ,
HENRY PINTO SUMOZA,
EYONNY PRADO DURAN,
LUIS RODRIGUEZ CERUTO, and
LUIS SAME GONZALO

Plaintiffs,

v.

STRATAIR AVIATION SERVICES, LLC,

Defendant.
_______________________________________/

**DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES**
**TO PLAINTIFFS' AMENDED COMPLAINT**

Defendant, StratAir Aviation Services, LLC ("StratAir"), by and through its undersigned counsel, files its answer to Plaintiffs' Amended Complaint.

***Introduction***

1. Defendant denies the allegations contained in Paragraph 1 of Plaintiffs' Amended Complaint, except to admit that Plaintiffs worked for StratAir.

***Parties, Jurisdiction, and Venue***

2. Defendant is without knowledge of the allegations in Paragraph 2 of Plaintiffs' Amended Complaint; and therefore, denies the allegations.

3. Defendant admits the allegations contained in Paragraph 3 of Plaintiffs' Amended Complaint.

4. Defendant admits the allegations contained in Paragraph 4 of Plaintiffs' Amended Complaint.

Document 14 Entered on FLSD Docket 10/15/2025 Page 2 of 28

5. Defendant admits that the EEOC issued a Determination and Notice of Rights on July 8, 2025, which made no findings on the merits.

6. Defendant is without knowledge of the allegations in Paragraph 6 of Plaintiffs' Amended Complaint; and therefore, denies the allegations.

7. Defendant admits the allegations contained in Paragraph 7 of Plaintiffs' Amended Complaint.

8. Defendant admits the allegations contained in Paragraph 8 of Plaintiffs' Amended Complaint.

9. Defendant admits that the EEOC issued a Determination and Notice of Rights on July 8, 2025, which made no findings on the merits.

10. Defendant is without knowledge of the allegations in Paragraph 10 of Plaintiffs' Amended Complaint; and therefore, denies the allegations.

11. Defendant admits the allegations contained in Paragraph 11 of Plaintiffs' Amended Complaint.

12. Defendant admits the allegations contained in Paragraph 12 of Plaintiffs' Amended Complaint.

13. Defendant admits that the EEOC issued a Determination and Notice of Rights on July 8, 2025, which made no findings on the merits.

14. Defendant is without knowledge of the allegations in Paragraph 14 of Plaintiffs' Amended Complaint; and therefore, denies the allegations.

15. Defendant admits the allegations contained in Paragraph 15 of Plaintiffs' Amended Complaint.

16. Defendant admits the allegations contained in Paragraph 16 of Plaintiffs' Amended Complaint.

17. Defendant admits that the EEOC issued a Determination and Notice of Rights on July 8, 2025, which made no findings on the merits.

18. Defendant is without knowledge of the allegations in Paragraph 18 of Plaintiffs' Amended Complaint; and therefore, denies the allegations.

19. Defendant admits the allegations contained in Paragraph 19 of Plaintiffs' Amended Complaint.

20. Defendant admits the allegations contained in Paragraph 20 of Plaintiffs' Amended Complaint.

21. Defendant admits that the EEOC issued a Determination and Notice of Rights on July 8, 2025, which made no findings on the merits.

22. Defendant is without knowledge of the allegations in Paragraph 22 of Plaintiffs' Amended Complaint; and therefore, denies the allegations.

23. Defendant admits the allegations contained in Paragraph 23 of Plaintiffs' Amended Complaint.

24. Defendant admits that the EEOC issued a Determination and Notice of Rights on July 8, 2025, which made no findings on the merits.

25. Defendant is without knowledge of the allegations in Paragraph 25 of Plaintiffs' Amended Complaint; and therefore, denies the allegations.

26. Paragraph 26 is a legal conclusion to which no response is required. To the extent a response is required, Defendant denies same.

27. Defendant denies the allegations contained in Paragraph 27 of Plaintiffs' Amended Complaint, except to admit that this Court has jurisdiction.

28. Defendant denies the allegations contained in Paragraph 28 of Plaintiffs' Amended Complaint, except to admit that Plaintiff purports to bring federal claims and the Court may have jurisdiction over some of Plaintiffs' purported state law claims.

29. Denied, except to admit that venue is proper.

***Common Factual Background***

30. Defendant admits the allegations contained in Paragraph 30 of Plaintiffs' Amended Complaint.

31. Denied, except to admit that Defendant employed more than 50 people in Miami-Dade County for 20 or more calendar weeks during certain time periods.

32. Defendant admits the allegations contained in Paragraph 32 of Plaintiffs' Amended Complaint.

33. Defendant denies the allegations contained in Paragraph 33 of Plaintiffs' Amended Complaint.

34. Defendant denies the allegations contained in Paragraph 34 of Plaintiffs' Amended Complaint, except to admit that Plaintiffs filed their Charges of Discrimination and filed this lawsuit within 90 days of issuance of the Determination and Notice of Rights Letter.

35. Defendant is without knowledge of the allegations in Paragraph 35 of Plaintiffs' Amended Complaint; and therefore, denies the allegations.

**COUNT I - AGE DISCRIMINATION IN VIOLATION OF THE ADEA**
**(ALL PLAINTIFFS)**

Defendant incorporates its responses to the preceding paragraphs as if fully set forth herein.

36. Paragraph 36 is a legal conclusion to which no response is required. To the extent a response is required, Defendant denies same.

37. Paragraph 37 is a legal conclusion to which no response is required. To the extent a response is required, Defendant denies same.

38. Paragraph 38 is a legal conclusion to which no response is required. To the extent a response is required, Defendant denies same.

39. Defendant denies the allegations contained in Paragraph 39 of Plaintiffs' Amended Complaint, except to admit that Plaintiffs were over 40 at the time of the layoff.

40. Paragraph 40 is a legal conclusion to which no response is required. To the extent a response is required, Defendant admits that it regularly receives merchandise arriving from outside of Florida and payment from customers outside of Florida.

41. Defendant admits the allegations contained in Paragraph 41 of Plaintiffs' Amended Complaint.

42. Defendant denies the allegations contained in Paragraph 42 of Plaintiffs' Amended Complaint.

43. Defendant denies the allegations contained in Paragraph 43 of Plaintiffs' Amended Complaint.

44. Defendant denies the allegations contained in Paragraph 44 of Plaintiffs' Amended Complaint.

45. Defendant admits it hired employees in 2023, but denies the remaining allegations contained in Paragraph 45 of Plaintiffs' Amended Complaint.

46. Defendant denies the allegations contained in Paragraph 46 of Plaintiffs' Amended Complaint.

47. Defendant admits that business need required a layoff of its employees in early 2024.

48. Defendant denies the allegations contained in Paragraph 48 of Plaintiffs' Amended Complaint.

49. Defendant denies the allegations contained in Paragraph 49 of Plaintiffs' Amended Complaint.

50. Defendant denies the allegations contained in Paragraph 50 of Plaintiffs' Amended Complaint.

51. Defendant denies the allegations contained in Paragraph 51 of Plaintiffs' Amended Complaint.

52. Defendant denies the allegations contained in Paragraph 52 of Plaintiffs' Amended Complaint.

53. Defendant denies the allegations contained in Paragraph 53 of Plaintiffs' Amended Complaint.

54. Defendant denies the allegations contained in Paragraph 54 of Plaintiffs' Amended Complaint.

55. Defendant denies the allegations contained in Paragraph 55 of Plaintiffs' Amended Complaint.

56. Defendant denies the allegations contained in Paragraph 56 of Plaintiffs' Amended Complaint.

57. Defendant denies the allegations contained in Paragraph 57 of Plaintiffs' Amended Complaint.

58. Paragraph 58 is a legal conclusion to which no response is required. To the extent a response is required, Defendant denies same.

59. Defendant denies the allegations contained in Paragraph 59 of Plaintiffs' Amended Complaint.

60. Defendant denies the allegations contained in Paragraph 60 of Plaintiffs' Amended Complaint.

61. Defendant denies the allegations contained in Paragraph 61 of Plaintiffs' Amended Complaint.

62. Defendant denies the allegations contained in Paragraph 62 of Plaintiffs' Amended Complaint.

63. Defendant denies the allegations contained in Paragraph 63 of Plaintiffs' Amended Complaint.

64. Defendant denies the allegations contained in Paragraph 64 of Plaintiffs' Amended Complaint.

In response to the unnumbered WHEREFORE clause following Paragraph 64 of the Amended Complaint, Defendant denies that any case or controversary exists so as to entitle Plaintiffs to any relief sought in this clause. Defendant respectfully requests the Court: (a) dismiss the Amended Complaint with prejudice; (b) deny the demands and prayer for relief; (c) award Defendant its costs and attorneys' fees incurred in defense of this action; (d) grant such other and further relief as the Court deems just and proper.

**COUNT II - VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT (ALL PLAINTIFFS-AGE)**

Defendant incorporates its responses to paragraphs 1 through 35 as if fully set forth herein.

65. Paragraph 65 is a legal conclusion to which no response is required. To the extent a response is required, Defendant denies same.

66. Paragraph 66 is a legal conclusion to which no response is required. To the extent a response is required, Defendant denies the allegations, except to admit it employed more than 15 people for each working day in each of 20 or more calendar weeks in the year Plaintiffs were laid off.

67. Paragraph 67 is a legal conclusion to which no response is required. To the extent a response is required, Defendant denies same.

68. Paragraph 68 is a legal conclusion to which no response is required. To the extent a response is required, Defendant denies same.

69. Defendant denies the allegations contained in Paragraph 69 of Plaintiffs' Amended Complaint.

70. Defendant denies the allegations contained in Paragraph 70 of Plaintiffs' Amended Complaint.

71. Defendant denies the allegations contained in Paragraph 71 of Plaintiffs' Amended Complaint, except to admit that Plaintiffs were over age 40 at the time of the layoff.

72. Defendant denies the allegations contained in Paragraph 72 of Plaintiffs' Amended Complaint.

73. Defendant denies the allegations contained in Paragraph 73 of Plaintiffs' Amended Complaint.

74. Defendant denies the allegations contained in Paragraph 74 of Plaintiffs' Amended Complaint.

75. Defendant denies the allegations contained in Paragraph 75 of Plaintiffs' Amended Complaint.

76. Defendant denies the allegations contained in Paragraph 76 of Plaintiffs' Amended Complaint.

77. Defendant denies the allegations contained in Paragraph 77 of Plaintiffs' Amended Complaint.

78. Defendant admits the allegations contained in Paragraph 78 of Plaintiffs' Amended Complaint.

79. Defendant denies the allegations contained in Paragraph 79 of Plaintiffs' Amended Complaint.

80. Defendant denies the allegations contained in Paragraph 80 of Plaintiffs' Amended Complaint.

81. Defendant denies the allegations contained in Paragraph 81 of Plaintiffs' Amended Complaint.

82. Defendant denies the allegations contained in Paragraph 82 of Plaintiffs' Amended Complaint.

83. Defendant denies the allegations contained in Paragraph 83 of Plaintiffs' Amended Complaint.

84. Defendant denies the allegations contained in Paragraph 84 of Plaintiffs' Amended Complaint.

85. Defendant denies the allegations contained in Paragraph 85 of Plaintiffs' Amended Complaint.

86. Defendant denies the allegations contained in Paragraph 86 of Plaintiffs' Amended Complaint.

87. Defendant denies the allegations contained in Paragraph 87 of Plaintiffs' Amended Complaint.

88. Defendant denies the allegations contained in Paragraph 88 of Plaintiffs' Amended Complaint.

89. Defendant denies the allegations contained in Paragraph 89 of Plaintiffs' Amended Complaint.

90. Defendant denies the allegations contained in Paragraph 90 of Plaintiffs' Amended Complaint.

91. Defendant denies the allegations contained in Paragraph 91 of Plaintiffs' Amended Complaint.

92. Defendant denies the allegations contained in Paragraph 92 of Plaintiffs' Amended Complaint.

93. Defendant denies the allegations contained in Paragraph 93 of Plaintiffs' Amended Complaint.

94. Defendant denies the allegations contained in Paragraph 94 of Plaintiffs' Amended Complaint.

In response to the unnumbered WHEREFORE clause following Paragraph 94 of the Amended Complaint, Defendant denies that any case/controversary exists so as to entitle Plaintiffs to any relief sought in this clause. Defendant respectfully requests the Court: (a) dismiss the Amended Complaint with prejudice; (b) deny the demands and prayer for relief; (c) award

Case 1:25-cv-24505-KMM Document 134-7 Entered on FLSD Docket 11/05/2025 Page 11 of 28

Defendant its costs and attorneys' fees incurred in defense of this action; (d) grant such other and further relief as the Court deems just and proper.

**COUNT III - VIOLATION OF 42 U.S.C. §1981**
**(IVAN GRANT - RACE DISCRIMINATION)**

Defendant incorporates its responses to Paragraphs 1 through 5 and 25 through 35 as if fully set forth herein.

95. Paragraph 95 is a legal conclusion to which no response is required. To the extent a response is required, Defendant denies same.

96. Defendant denies the allegations contained in Paragraph 96 of Plaintiffs' Amended Complaint.

97. Defendant denies the allegations contained in Paragraph 97 of Plaintiffs' Amended Complaint.

98. Defendant denies the allegations contained in Paragraph 98 of Plaintiffs' Amended Complaint.

99. Defendant admits that business need required a layoff of employees in early 2024.

100. Defendant denies the allegations contained in Paragraph 100 of Plaintiffs' Amended Complaint.

101. Defendant admits the allegations contained in Paragraph 101 of Plaintiffs' Amended Complaint.

102. Defendant denies the allegations contained in Paragraph 102 of Plaintiffs' Amended Complaint.

103. Defendant denies the allegations contained in Paragraph 103 of Plaintiffs' Amended Complaint.

104. Defendant denies the allegations contained in Paragraph 104 of Plaintiffs' Amended Complaint.

105. Defendant denies the allegations contained in Paragraph 105 of Plaintiffs' Amended Complaint.

106. Defendant denies the allegations contained in Paragraph 106 of Plaintiffs' Amended Complaint.

107. Defendant denies the allegations contained in Paragraph 107 of Plaintiffs' Amended Complaint.

108. Defendant denies the allegations contained in Paragraph 108 of Plaintiffs' Amended Complaint.

In response to the unnumbered WHEREFORE clause following Paragraph 108 of the Amended Complaint, Defendant denies that any case/controversary exists so as to entitle Plaintiffs to any relief sought in this clause. Defendant respectfully requests the Court: (a) dismiss the Amended Complaint with prejudice; (b) deny the demands and prayer for relief; (c) award Defendant its costs and attorneys' fees incurred in defense of this action; (d) grant such other and further relief as the Court deems just and proper.

**COUNT IV - VIOLATION(S) OF TITLE VII**
**(IVAN GRANT - DISCRIMINATION)**

Defendant incorporates its responses to Paragraphs 1 through 5 and 25 through 35 as if fully set forth herein.

109. Paragraph 109 is a legal conclusion to which no response is required. To the extent a response is required, Defendant denies same.

110. Paragraph 110 is a legal conclusion to which no response is required. To the extent a response is required, Defendant denies same.

111. Paragraph 111 is a legal conclusion to which no response is required. To the extent a response is required, Defendant denies same.

112. Defendant is without knowledge of the allegations in Paragraph 112 of Plaintiffs' Amended Complaint; and therefore, denies the allegations.

113. Defendant denies the allegations contained in Paragraph 113 of Plaintiffs' Amended Complaint.

114. Defendant denies the allegations contained in Paragraph 114 of Plaintiffs' Amended Complaint.

115. Defendant denies the allegations contained in Paragraph 115 of Plaintiffs' Amended Complaint.

116. Defendant admits that business need required a layoff of employees in early 2024.

117. Defendant denies the allegations contained in Paragraph 117 of Plaintiffs' Amended Complaint.

118. Defendant denies the allegations contained in Paragraph 118 of Plaintiffs' Amended Complaint.

119. Defendant denies the allegations contained in Paragraph 119 of Plaintiffs' Amended Complaint.

120. Defendant denies the allegations contained in Paragraph 120 of Plaintiffs' Amended Complaint.

121. Defendant denies the allegations contained in Paragraph 121 of Plaintiffs' Amended Complaint.

122. Defendant denies the allegations contained in Paragraph 122 of Plaintiffs' Amended Complaint.

123. Defendant denies the allegations contained in Paragraph 123 of Plaintiffs' Amended Complaint.

124. Defendant denies the allegations contained in Paragraph 124 of Plaintiffs' Amended Complaint.

125. Defendant denies the allegations contained in Paragraph 125 of Plaintiffs' Amended Complaint.

126. Defendant denies the allegations contained in Paragraph 126 of Plaintiffs' Amended Complaint.

In response to the unnumbered WHEREFORE clause following Paragraph 126 of the Amended Complaint, Defendant denies that any case/controversary exists so as to entitle Plaintiffs to any relief sought in this clause. Defendant respectfully requests the Court: (a) dismiss the Amended Complaint with prejudice; (b) deny the demands and prayer for relief; (c) award Defendant its costs and attorneys' fees incurred in defense of this action; (d) grant such other and further relief as the Court deems just and proper.

**COUNT V - VIOLATION(S) OF THE FCRA**
**(IVAN GRANT - DISCRIMINATION)**

Defendant incorporates its responses to Paragraphs 1 through 5 and 25 through 35 as if fully set forth herein.

127. Paragraph 127 is a legal conclusion to which no response is required. To the extent a response is required, Defendant denies same.

128. Paragraph 128 is a legal conclusion to which no response is required. To the extent a response is required, Defendant denies except to admit it employed 15 or more people for each working day in each of 20 or more calendar weeks in the calendar year preceding the layoff that Plaintiffs were selected for.

Case 1:25-cv-24505-KWM Document 31-1 Entered on FLSD Docket 10/29/2025 Page 15 of 28

129. Paragraph 129 is a legal conclusion to which no response is required. To the extent a response is required, Defendant denies the allegations contained in Paragraph 129.

130. Paragraph 130 is a legal conclusion to which no response is required. To the extent a response is required, Defendant denies same.

131. Defendant is without knowledge of the allegations in Paragraph 131 of Plaintiffs' Amended Complaint; and therefore, denies the allegations.

132. Defendant denies the allegations contained in Paragraph 132 of Plaintiffs' Amended Complaint.

133. Defendant denies the allegations contained in Paragraph 133 of Plaintiffs' Amended Complaint.

134. Defendant denies the allegations contained in Paragraph 134 of Plaintiffs' Amended Complaint.

135. Defendant admits business need required a layoff of employees in early 2024.

136. Defendant denies the allegations contained in Paragraph 136 of Plaintiffs' Amended Complaint.

137. Defendant denies the allegations contained in Paragraph 137 of Plaintiffs' Amended Complaint.

138. Defendant denies the allegations contained in Paragraph 138 of Plaintiffs' Amended Complaint.

139. Defendant denies the allegations contained in Paragraph 139 of Plaintiffs' Amended Complaint.

140. Defendant denies the allegations contained in Paragraph 140 of Plaintiffs' Amended Complaint.

Case 1:25-cv-24505-KMM Document 31-1 Entered on FLSD Docket 10/29/2025 Page 16 of 28

141. Defendant denies the allegations contained in Paragraph 141 of Plaintiffs' Amended Complaint.

142. Defendant denies the allegations contained in Paragraph 142 of Plaintiffs' Amended Complaint.

143. Defendant denies the allegations contained in Paragraph 143 of Plaintiffs' Amended Complaint.

144. Defendant denies the allegations contained in Paragraph 144 of Plaintiffs' Amended Complaint.

In response to the unnumbered WHEREFORE clause following Paragraph 144 of the Amended Complaint, Defendant denies that any case/controversary exists so as to entitle Plaintiffs to any relief sought in this clause. Defendant respectfully requests the Court: (a) dismiss the Amended Complaint with prejudice; (b) deny the demands and prayer for relief; (c) award Defendant its costs and attorneys' fees incurred in defense of this action; (d) grant such other and further relief as the Court deems just and proper.

**COUNT VI - VIOLATION(S) OF THE ADA**
**(LUIS RODRIGUEZ CERUTO)**

Defendant incorporates its responses to Paragraphs 1, 18 through 21 and 25 through 35 as if fully set forth herein.

145. Paragraph 145 is a legal conclusion to which no response is required. To the extent a response is required, Defendant denies same.

146. Paragraph 146 is a legal conclusion to which no response is required. To the extent a response is required, Defendant denies same.

147. Paragraph 147 is a legal conclusion to which no response is required. To the extent a response is required, Defendant denies same.

148. Paragraph 148 is a legal conclusion to which no response is required. To the extent a response is required, Defendant denies same.

149. Defendant is without knowledge of the allegations in Paragraph 149 of Plaintiffs' Amended Complaint; and therefore, denies the allegations.

150. Defendant is without knowledge of the allegations in Paragraph 150 of Plaintiffs' Amended Complaint; and therefore, denies the allegations.

151. Paragraph 151 is a legal conclusion to which no response is required. To the extent a response is required, Defendant is without sufficient knowledge and therefore denies same.

152. Paragraph 152 is a legal conclusion to which no response is required. To the extent a response is required, Defendant is without sufficient knowledge and therefore denies same.

153. Defendant denies the allegations contained in Paragraph 153 of Plaintiffs' Amended Complaint.

154. Defendant denies the allegations contained in Paragraph 154 of Plaintiffs' Amended Complaint.

155. Defendant denies the allegations contained in Paragraph 155 of Plaintiffs' Amended Complaint.

156. Defendant denies the allegations contained in Paragraph 156 of Plaintiffs' Amended Complaint.

157. Defendant denies the allegations contained in Paragraph 157 of Plaintiffs' Amended Complaint.

158. Defendant denies the allegations contained in Paragraph 158 of Plaintiffs' Amended Complaint.

159. Defendant denies the allegations contained in Paragraph 159 of Plaintiffs' Amended Complaint.

160. Defendant denies the allegations contained in Paragraph 160 of Plaintiffs' Amended Complaint.

161. Defendant denies the allegations contained in Paragraph 161 of Plaintiffs' Amended Complaint.

In response to the unnumbered WHEREFORE clause following Paragraph 161 of the Amended Complaint, Defendant denies that any case/controversary exists so as to entitle Plaintiffs to any relief sought in this clause. Defendant respectfully requests the Court: (a) dismiss the Amended Complaint with prejudice; (b) deny the demands and prayer for relief; (c) award Defendant its costs and attorneys' fees incurred in defense of this action; (d) grant such other and further relief as the Court deems just and proper.

**COUNT VIII - INTERFERENCE WITH FMLA RIGHTS**
**(LUIS CERUTO RODRIGUEZ)**

Defendant incorporates its responses to Paragraphs 1, 18-21 and 25-35 as if fully set forth herein.

162. Defendant denies the allegations contained in Paragraph 162 of Plaintiffs' Amended Complaint, except to admit that Plaintiff Rodriguez Ceruto worked more than 1250 hours in the year preceding the layoff.

163. Denied, except to admit that Plaintiff Rodriguez Ceruto requested time off work due to his wife's medical condition and Defendant provided Plaintiff with the requested time off.

164. Denied, except to admit that Plaintiff Rodriguez Ceruto requested time off work due to his wife's medical condition and Defendant provided Plaintiff with the requested time off.

Case 1:25-cv-24505-KMW Document 31-7 Entered on FLSD Docket 10/29/2025 Page 19 of 28

165. Denied, except to admit that Plaintiff Rodriguez Ceruto requested time off work due to his wife's medical condition and Defendant provided Plaintiff with the requested time off.

166. Defendant denies the allegations contained in Paragraph 166 of Plaintiffs' Amended Complaint.

167. Defendant is without knowledge of the allegations in Paragraph 167 of Plaintiffs' Amended Complaint; and therefore, denies the allegations.

168. Defendant denies the allegations contained in Paragraph 168 of Plaintiffs' Amended Complaint.

169. Defendant denies the allegations contained in Paragraph 169 of Plaintiffs' Amended Complaint.

170. Defendant denies the allegations contained in Paragraph 170 of Plaintiffs' Amended Complaint.

171. Defendant denies the allegations contained in Paragraph 171 of Plaintiffs' Amended Complaint.

In response to the unnumbered WHEREFORE clause following Paragraph 171 of the Amended Complaint, Defendant denies that any case/controversary exists so as to entitle Plaintiffs to any relief sought in this clause. Defendant respectfully requests the Court: (a) dismiss the Amended Complaint with prejudice; (b) deny the demands and prayer for relief; (c) award Defendant its costs and attorneys' fees incurred in defense of this action; (d) grant such other and further relief as the Court deems just and proper.

**COUNT IX - FAILURE TO NOTIFY OF FMLA RIGHTS**
**(LUIS CERUTO RODRIGUEZ)**

Defendant incorporates its responses to Paragraphs 1, 18-21, and 25-35 as if fully set forth fully herein.

172. Defendant denies the allegations contained in Paragraph 172 of Plaintiffs' Amended Complaint, except to admit that Plaintiff Rodriguez Ceruto worked more than 1250 hours in the year preceding the layoff.

173. Denied, except to admit that Plaintiff Rodriguez Ceruto requested time off work due to his wife's medical condition and Defendant provided Plaintiff with the requested time off.

174. Denied, except to admit that Plaintiff Rodriguez Ceruto requested time off work due to his wife's medical condition and Defendant provided Plaintiff with the requested time off.

175. Denied, except to admit that Plaintiff Rodriguez Ceruto requested time off work due to his wife's medical condition and Defendant provided Plaintiff with the requested time off.

176. Defendant denies the allegations contained in Paragraph 176 of Plaintiffs' Amended Complaint.

177. Defendant is without knowledge of the allegations in Paragraph 177 of Plaintiffs' Amended Complaint; and therefore, denies the allegations.

178. Defendant denies the allegations contained in Paragraph 178 of Plaintiffs' Amended Complaint.

179. Defendant denies the allegations contained in Paragraph 179 of Plaintiffs' Amended Complaint.

180. Defendant denies the allegations contained in Paragraph 180 of Plaintiffs' Amended Complaint.

181. Defendant denies the allegations contained in Paragraph 181 of Plaintiffs' Amended Complaint.

182. Defendant denies the allegations contained in Paragraph 182 of Plaintiffs' Amended Complaint.

183. Defendant denies the allegations contained in Paragraph 183 of Plaintiffs' Amended Complaint.

184. Defendant denies the allegations contained in Paragraph 184 of Plaintiffs' Amended Complaint.

In response to the unnumbered WHEREFORE clause following Paragraph 184 of the Amended Complaint, Defendant denies that any case/controversary exists so as to entitle Plaintiffs to any relief sought in this clause. Defendant respectfully requests the Court: (a) dismiss the Amended Complaint with prejudice; (b) deny the demands and prayer for relief; (c) award Defendant its costs and attorneys' fees incurred in defense of this action; (d) grant such other and further relief as the Court deems just and proper.

**COUNT X- UNLAWFUL FMLA RETALIATION**
**(LUIS CERUTO RODRIGUEZ)**

Defendant incorporates its responses to Paragraphs 1, 18-21, and 25-35 as if fully set forth herein.

185. Defendant denies the allegations contained in Paragraph 185 of Plaintiffs' Amended Complaint, except to admit that Plaintiff Rodriguez Ceruto worked more than 1250 hours in the year preceding the layoff.

186. Defendant denies the allegations contained in Paragraph 186 of Plaintiffs' Amended Complaint.

187. Defendant denies the allegations contained in Paragraph 187 of Plaintiffs' Amended Complaint.

188. Defendant denies the allegations contained in Paragraph 188 of Plaintiffs' Amended Complaint.

189. Defendant denies the allegations contained in Paragraph 189 of Plaintiffs' Amended Complaint.

190. Defendant is without knowledge of the allegations in Paragraph 190 of Plaintiffs' Amended Complaint; and therefore, denies the allegations.

191. Defendant denies the allegations contained in Paragraph 191 of Plaintiffs' Amended Complaint.

192. Defendant denies the allegations contained in Paragraph 192 of Plaintiffs' Amended Complaint.

193. Defendant denies the allegations contained in Paragraph 193 of Plaintiffs' Amended Complaint.

In response to the unnumbered WHEREFORE clause following Paragraph 193 of the Amended Complaint, Defendant denies that any case/controversary exists so as to entitle Plaintiffs to any relief sought in this clause. Defendant respectfully requests the Court: (a) dismiss the Amended Complaint with prejudice; (b) deny the demands and prayer for relief; (c) award Defendant its costs and attorneys' fees incurred in defense of this action; (d) grant such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Defendant denies that any case or controversy exists as it pertains to it so as to entitle Plaintiff to a trial by jury.

**GENERAL DENIAL**

Defendant denies each and every allegation of fact, conclusion of law, or other matter contained in the Complaint that has not been expressly admitted in this pleading.

## AFFIRMATIVE DEFENSES

1. At all material times, StratAir had anti-discrimination and anti-retaliation policies that were comprehensive, well known to employees, enforced, and that provide alternate avenues for redress. Pursuant to the policies, Plaintiffs were required to notify their employer of any complaint regarding discrimination. Plaintiffs had knowledge of these policies, however, Plaintiffs failed to reasonably and timely notify StratAir of any race, age, national origin, disability or other discrimination. StratAir exercised reasonable care to prevent and promptly correct any alleged discriminatory, retaliatory, or other unlawful behavior. To the extent any of the Plaintiffs failed to complain to their employer about the alleged discrimination, their respective claims are barred due to Plaintiffs' failures to take advantage of the preventive and corrective opportunities provided by StratAir to otherwise avoid harm.

2. Plaintiffs' respective claims are barred and/or limited by the after-acquired evidence doctrine to the extent that discovery shows any of Plaintiffs engaged in misconduct prior to, during, after or in connection with their employment, that otherwise would have resulted in their discharge, if such conduct were then known to StratAir.

3. Plaintiffs' respective claims fail to the extent that any Plaintiff has failed in any respect to mitigate or minimize their alleged damages.

4. Defendant is entitled to a set-off against Plaintiffs' respective claims for damages in the amount(s) that Plaintiffs did or could have earned through reasonable efforts.

5. Plaintiffs' retaliation and discrimination claims fail because any actions undertaken with regard to Plaintiffs and their employment, including their terminations, were taken for lawful and legitimate, non-retaliatory and non-discriminatory business reasons. Defendant was required, due to financial reasons, to eliminate certain positions. Plaintiffs' positions were

eliminated as part of a reduction in force. Plaintiffs were not terminated because of any alleged need for leave or Plaintiffs' purported status in any protected class under Florida or federal law.

6. Plaintiffs' Amended Complaint, in whole or in part, fails to state a claim against Defendant upon which relief can be granted.

7. Plaintiffs' claims are barred, in whole or in part, to the extent that any Plaintiff failed to satisfy jurisdictional prerequisites, and other conditions precedent, to bringing this suit.

8. Plaintiffs' claims are barred and/or limited to the extent their damages result from their own actions.

9. Plaintiffs' claims are barred, in whole or in part, by the doctrine of unclean hands.

10. Plaintiffs' claims are barred, in whole or in part, by the doctrine of setoff to the extent that any Plaintiff received any compensation from third parties, including (but not limited to) unemployment benefits or subsequent employers.

11. Plaintiffs' claims are barred to the extent Defendant has, at all times, engaged in good faith efforts to comply with applicable law, and with reasonable belief that it was so complying, and any action by Defendant was not willful, malicious, or reckless and, consequently, Defendant is not liable for liquidated or punitive damages.

12. Plaintiffs are not entitled to relief because Defendant can demonstrate that it would have taken the same action(s) with regard to the Plaintiffs in the absence of any impermissible motivating factor (the existence of which Defendant denies).

13. Plaintiffs' claims fail to the extent any Plaintiff failed to exhaust their administrative remedies.

14. Plaintiffs' claims fail, in whole or in part, to the extent that any Plaintiff was not replaced by any person outside of their purported protected classes.

15. To the extent that any Plaintiff is entitled to recover any damages (which Defendant denies), the remedies available for recovery are limited to only the remedies set forth in the applicable law(s).

16. Plaintiffs' claims are barred to the extent they exceed the scope of the Plaintiffs' charges of discrimination.

17. Even if Plaintiffs could prove the matters or things they allege, all of which are denied, Plaintiffs' damages for alleged emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, are barred in their entirety or subject to apportionment to the extent such damages were caused, in whole or in part, by sources other than the alleged actions of Defendant.

18. Plaintiffs' claims for discrimination fail because Plaintiffs cannot establish that they were treated less favorably than any similarly situated employee.

19. Plaintiffs' claims fail, either in whole or in part, because, to the extent Plaintiffs' supervisor(s) discriminated or retaliated against Plaintiffs based on any protected characteristic (which Defendant denies), the supervisor(s) would have been acting outside the scope and course of his/her agency and was not operating pursuant to his/her duties to the company. StratAir prohibits discrimination and retaliation against employees.

20. Plaintiff Rodriguez Ceruto's alleged disability discrimination claim fails to the extent that Defendant could not have discriminated against Plaintiff for any alleged disability of which Defendant was not aware.

21. Plaintiff Rodriguez Ceruto's disability discrimination claim fails to the extent that Plaintiff cannot establish that he was subjected to unlawful discrimination because of his wife's disability.

22. To the extent that Plaintiff Rodriguez Ceruto's wife's medical condition(s) fail to constitute a disability or serious health condition, Plaintiff's disability and FMLA claims fail.

23. Plaintiff Rodriguez Ceruto's FMLA claims fail because he was not eligible for FMLA leave and, to the extent that Plaintiff was eligible for FMLA leave (which Defendant denies), he did not comply with the FMLA's employee notice requirements. To the extent that Plaintiff did not notify Defendant of his need for FMLA leave or request FMLA leave from Defendant, his FMLA claims are barred.

24. Plaintiff Rodriguez Ceruto received all benefits to which he was entitled, and any alleged adverse action was unrelated to FMLA or ADA rights.

25. Even if a technical FMLA violation occurred (which Defendant denies), Plaintiff Rodriguez Ceruto suffered no prejudice or compensable harm proximately caused by any alleged FMLA violation. Any claim for relief is barred for lack of actual damages, as required for FMLA interference and notice claims.

26. Plaintiff Rodriguez Ceruto's FMLA retaliation claim is barred to the extent that Defendant could not have retaliated against Plaintiff for any alleged exercise of FMLA rights of which Defendant was not aware. To the extent that Plaintiff Rodriguez Ceruto did not notify Defendant of any specific need for FMLA leave, his claims are barred. In addition, when Plaintiff Rodriguez Ceruto requested time off, he received all requested time off.

27. Plaintiff Rodriguez Ceruto's retaliation claim fails to the extent that Plaintiff engaged in intervening misconduct following his exercise of any protected rights.

28. Plaintiff Rodriguez Ceruto's alleged claim for retaliation fails because Plaintiff cannot establish that his purported protected status or his alleged request or need for FMLA leave were the "but for" cause of his termination.

29. Plaintiff Rodriguez Ceruto fails to state a claim for retaliation upon which relief may be granted to the extent that Plaintiff did not engage in any protected activity under the FMLA by taking or requesting FMLA leave.

30. To the extent that the Court finds in Plaintiffs' favor on the age discrimination claims (Counts I and II), Plaintiffs cannot recover both liquidated damages under the ADEA and punitive damages under the FCRA.

31. Plaintiffs' requests for equitable relief should be denied because equitable relief is unwarranted and/or infeasible based on the lack of an ongoing violation and the elimination of the Plaintiffs' positions.

32. To the extent that Defendant was not required by law to accommodate Plaintiff Rodriguez Ceruto based on a relative's disability, Plaintiff's claim relating to failure to accommodate alleged in Paragraphs 154, 155, and 157 fail as a matter of law.

33. Plaintiffs' request for front pay is limited to damages that are not speculative, excessive, or inappropriate under applicable law. Defendant denies that Plaintiffs are entitled to any damages whatsoever.

34. To the extent that the Court awards Plaintiffs any damages, Plaintiffs may not recover under multiple statutes or laws for the same injury.

Defendant reserves the right to amend any current affirmative defenses or add additional defenses which become known during the course of discovery. By raising the above affirmative defenses, Defendant is not conceding or admitting that Defendant bears the burden of proof regarding these particular issues at trial.

WHEREFORE, Defendant, StratAir Aviation Services, LLC, respectfully requests entry of judgment on its affirmative defenses in its favor against Plaintiff, an award of attorneys' fees, costs, and expenses, and such other relief that this Court deems just and equitable.

Dated: November 5, 2025

Respectfully submitted,

GUNSTER, YOAKLEY & STEWART, P.A.

/s/ *Nalani Alesia Gordon*
Roger W. Feicht
Florida Bar. No. 84982
rfeicht@gunster.com
eservice@gunster.com
lhagan@gunster.com
Nalani Alesia Gordon
Florida Bar No. 1010976
ngordon@gunster.com
lmusco@gunster.com
777 South Flagler Drive, Suite 500 East
West Palm Beach, FL 33401
Telephone: (561) 655-1980
Facsimile: (561) 655-5677
*Counsel for Defendant*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 5, 2025, I electronically filed the foregoing document using the CM/ECF system, which will automatically send e-mail notification of such filing to all counsel of record.

**BRIAN H. POLLOCK, ESQ.**
FAIRLAW FIRM
135 San Lorenzo Avenue
Suite 770
Coral Gables, Florida 33146
brian@fairlawattorney.com
*Counsel for Plaintiffs*

*/s/ Nalani Alesia Gordon*
Nalani Alesia Gordon