# Akridge v. Alfa Mut. Ins. Co.

United States Court of Appeals for the Eleventh Circuit

June 21, 2021, Decided

No. 19-10827

**Reporter**
1 F.4th 1271 *; 2021 U.S. App. LEXIS 18334 **; 109 Fed. R. Serv. 3d (Callaghan) 1253; 28 Fla. L. Weekly Fed. C 3063; 2021 WL 2520631

JENNIFER AKRIDGE, Plaintiff - Appellant, versus ALFA MUTUAL INSURANCE COMPANY, Defendant - Appellee.

**Prior History:** [**1] Appeal from the United States District Court for the Middle District of Alabama. D.C. Docket No. 2:17-cv-00372-GMB.

Akridge v. Alfa Mut. Ins. Co., 2019 U.S. Dist. LEXIS 26375 (M.D. Ala., Feb. 20, 2019)
Akridge v. Alfa Mut. Ins. Co., 2019 U.S. Dist. LEXIS 26380, 2019 WL 726435 (M.D. Ala., Feb. 20, 2019)

**Disposition:** VACATED, REVERSED, AND REMANDED.

**Counsel:** For JENNIFER AKRIDGE, Plaintiff - Appellant: Julian Lenwood McPhillips Jr., Chase Elliot Estes, McPhillips Shinbaum, LLP, MONTGOMERY, AL; Tanika LaRosa Lakes Finney, Law Office of Tanika L. Finney, MONTGOMERY, AL; Kyle David Sawyer, K. David Sawyer - Attorney at Law, MONTGOMERY, AL.

For ALFA MUTUAL INSURANCE COMPANY, Defendant - Appellee: Thomas A. Davis, Yvonne N. Maddalena, Jackson Lewis, PC, BIRMINGHAM, AL.

**Judges:** Before WILSON, GRANT, and TJOFLAT, Circuit Judges.

**Opinion by:** WILSON

# Opinion

[*1273] WILSON, Circuit Judge:

This appeal concerns the impermissible curtailment of a civil plaintiff's access to full discovery. Plaintiff-Appellant Jennifer Akridge filed a complaint against her former employer, Defendant-Appellee Alfa Mutual Insurance Company (Alfa), alleging disability discrimination in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12112. Akridge alleged that, although Alfa claims she was terminated because of automation of some of her job responsibilities, she was actually terminated because of the high costs to Alfa in treating her multiple sclerosis (MS). The district court granted summary judgment [**2] to Alfa, finding that Akridge presented insufficient evidence to create a genuine issue of material fact about whether there was an intent to discriminate. This appeal followed. Because we find that Akridge was denied full discovery, we reverse the grant of summary judgment.

**I.**

Jennifer Akridge was hired as an agency clerk in 1989, beginning what would become a 27-year career at Alfa. Two years later, Akridge was promoted to the Auto Underwriting Department, where she would spend the remainder of her time at Alfa. In 1993, after her promotion, Akridge was diagnosed with MS. Akridge was initially hospitalized due to complications arising from her MS. After being released [*1274] from the hospital, she filed for short term disability and was away from work for ten weeks. Consequently, some Alfa executives and members of the Human Resources Department knew of Akridge's diagnosis.

Akridge's diagnosis altered many aspects of her life: her MS causes her to suffer from migraine headaches and prevents her from sitting for long periods of time as her legs will become numb or restless; the numbness and associated mobility issues resulted in Akridge's reliance on a walker upon her return to work; and, to [**3] manage her condition, she now has to take many expensive prescribed medications for the rest of her life as MS has no cure.[1] However, one aspect of Akridge's

---

[1] Akridge affied that her medications cost around $10,000 per month. Due to the high expense, BlueCross BlueShield had to

Page 2 of 5


life remained constant: her work performance.

Despite her diagnosis, Akridge not only continued to perform her necessary job duties, but consistently received positive performance reviews. In fact, two years after her diagnosis, Akridge was selected out of almost 1,000 employees as Alfa's "Employee of the Year." Akridge continued to receive excellent work evaluations and was promoted to a management-level position in the Underwriting Department in 1998. Multiple Alfa employees testified to Akridge's work ethic, her positive work evaluations, and the quality of her work. Tony Bohannon, a co-worker of Akridge's for over 22 years, swore in an affidavit to Akridge's "outstanding" work quality, noting "[w]hat was especially amazing [was] that she received an 'E' (Exceeds expectations) [evaluation] continually for as many as 15-17 years." These positive work reviews continued until Akridge was fired on December 2, 2016. The quality of her work never declined: even in her last evaluation before her termination, Akridge's then-supervisor [**4] Linda Pelt noted that Akridge went "the extra mile to help customers and the people in the field" and "did a great job with all the projects she was assigned." According to Bohannon, "[i]t was rare to see an employee terminated, especially with an 'E' evaluation." However, these positive performance reviews did not stop Alfa from terminating Akridge.

Akridge filed the present suit against Alfa in 2017. In her amended complaint, Akridge alleged that Alfa violated the ADA by subjecting her to disparate treatment based on her disability.[2] According to Akridge, Alfa discriminated against her by terminating her to avoid paying the expensive health insurance costs related to her MS treatment. Alfa answered and denied liability. The parties then consented to have a magistrate judge enter a final judgment in their case. The magistrate judge, in turn, entered a scheduling order directing the parties to complete discovery.

From the outset of discovery, Akridge sought to depose ten Alfa employees, including Scott Forrest, the then-Executive Vice President of Human Resources. Following a series of attempts to depose Forrest, Akridge filed two motions to compel his deposition, which Alfa opposed. [**5] The magistrate judge denied both motions.

In May 2018, Akridge again moved to compel Forrest's deposition, asserting that his testimony was "relevant and necessary." [*1275] Again, Alfa opposed Akridge's motion, noting that Forrest did not have any relevant information about Akridge's termination. In an affidavit, Forrest denied consulting with the individuals who did have relevant and necessary information—Underwriting Department supervisors Tommy Coshatt, Beth Chancey, and Robert Plaster—before Akridge's termination. He further denied having any involvement with the decision. According to Alfa's response to interrogatories, only Coshatt, Chancey, and Plaster (collectively, decisionmakers)[3] "participated in any way, directly or indirectly, in the decision to eliminate [Akridge's] job."

In addition to deposing the decisionmakers, Akridge twice deposed Alfa's corporate representative Susie White, a member of Alfa's Human Resources Department who reported to Forrest. White testified that no one at Alfa knew of any employee's medical costs and that Alfa did not maintain records on such costs. White also testified that Coshatt and Chancey decided to eliminate Akridge's position because, after departmental [**6] restructuring, it was no longer necessary. In making this decision, Coshatt and Chancey considered job-related costs.

Alfa explained, in response to interrogatories, that the termination of Akridge's position resulted from a reorganization and was "due to automation of [Akridge's] job responsibilities and as part of [Alfa's] efforts to reduce costs." While the Alfa reorganization was companywide and the directive to reduce expenses came from the entire senior leadership—including Forrest—Chancey testified that the decision to fire individuals was made at the departmental level. Chancey also stated that she never spoke to Forrest about Akridge or her termination, and that Akridge's medical costs were not taken into consideration because they did not know what those costs were.

---

get annual approval from Alfa to continue covering the medication. Akridge also stated that, in the two-year period prior to her termination, employees were verbally cautioned by Alfa about rising healthcare expenses and were reminded that these expenses affect employees' healthcare premiums.

[2] Akridge also alleged that Alfa failed to provide her with a reasonable accommodation for her disability, in violation of the ADA. The magistrate judge granted Alfa summary judgment on this claim, and Akridge does not challenge that ruling on appeal.

[3] The district court and the parties used the term "decisionmakers" to refer to Coshatt, Chancey, and Plaster. We adopt the same term on appeal.

Page 3 of 5


In her motion, Akridge argued that Forrest's deposition testimony was reasonably calculated to lead to critical and admissible information because, as Executive Vice President of Human Resources, he had broad access to her personal information as well as information regarding Alfa's decision to eliminate her position. In support, Akridge pointed out that Forrest signed her severance papers and was listed as the [**7] "decision" contact on Alfa's BlueCross BlueShield insurance documents and Alfa's *Employee Retirement Income Security Act (ERISA)* employee benefit plan.

After hearing oral argument, the magistrate judge denied Akridge's third motion to compel Forrest's deposition. The judge determined that any information Forrest had was "minimally relevant and, even if relevant, compelling his deposition at this time would be disproportional to the needs of the case." The judge further reasoned that Forrest had not been identified as someone involved in the termination decision.

In the following six months—from July 2018 to January 2019—Akridge made nine more attempts to compel Forrest's deposition, all of which were denied. The court determined that Akridge never showed that Forrest had any material knowledge of the circumstances surrounding her termination. However, the court also found that White, as Alfa's corporate representative, could not adequately answer all of Akridge's questions and ordered Alfa to designate a second corporate representative for Akridge to depose on certain limited topics. Akridge again moved to depose Forrest. Meanwhile, Alfa moved for summary judgment, arguing that Akridge [*1276] could not establish a prima facie case of disability [**8] discrimination.

The district court granted Alfa's motion for summary judgment and denied Akridge's renewed motion to compel. The judge concluded that Akridge showed the decisionmakers knew that eliminating her position would eliminate her salary and benefits but that she did not demonstrate that they knew of any employee's medical costs. Therefore, the court reasoned, Akridge failed to show Alfa considered her disability in deciding to eliminate her position. This is Akridge's appeal, which arises out of issues surrounding the discovery process.

**II.**

To defeat a motion for summary judgment, a plaintiff must present affirmative evidence showing a genuine issue of material fact, "even where the evidence is likely to be within the possession of the defendant." *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)*. However, this general rule only holds true so "long as the plaintiff has had a full opportunity to conduct discovery." *Id.; see also Snook v. Tr. Co. of Ga. Bank of Savannah, 859 F.2d 865, 870 (11th Cir. 1988)* ("This court has often noted that summary judgment should not be granted until the party opposing the motion has had an adequate opportunity for discovery.").

We review the district court's efforts to manage discovery for abuse of discretion. *Adkins v. Christie, 488 F.3d 1324, 1330 (11th Cir. 2007)*. A district court abuses its discretion in limiting discovery [**9] when it makes "a clear error of judgment" or applies "an incorrect legal standard." *Id.* While we are mindful that "district courts have broad discretion in fashioning discovery rulings," we also note that this discretion is not absolute: courts "are bound to adhere 'to the liberal spirit of the Federal Rules.'" *Id. at 1331* (alteration adopted). Thus, discovery rulings "are not entirely sacrosanct" and if the district court "fails to adhere to the liberal spirit of the Rules, we must reverse." *Burns v. Thiokol Chem. Corp., 483 F.2d 300, 305 (5th Cir. 1973)*.[4]

The discovery process depends on the parties participating in good faith. With that in mind, we begin our analysis with *Federal Rule of Civil Procedure 26(b)(1)* which sets forth the general scope of discovery: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" *Fed. R. Civ. P. 26(b)(1)*. Relevance in the context of discovery "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351, 98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978)*. And since the Rules "strongly favor full discovery whenever possible," *Republic of Ecuador v. Hinchee, 741 F.3d 1185, 1189 (11th Cir. 2013)*, a civil litigant is generally entitled to "any information sought if it appears reasonably calculated [**10] to lead to the discovery of admissible evidence." *Degen v. United States, 517 U.S. 820, 825-26, 116 S. Ct. 1777, 135 L. Ed. 2d 102 (1996)* (internal quotation mark omitted).

---

[4] All decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981)* (en banc).

Page 4 of 5


Accordingly, information "need not be admissible in evidence to be discoverable." *Fed. R. Civ. P. 26(b)(1)*.

The Supreme Court has stressed on multiple occasions the need to construe the Rules liberally to allow for robust discovery. *See, e.g., Hickman v. [*1277] Taylor, 329 U.S. 495, 506, 67 S. Ct. 385, 91 L. Ed. 451 (1947)* (advising that "the discovery provisions are to be applied as broadly and liberally as possible"); *see also Schlagenhauf v. Holder, 379 U.S. 104, 114, 85 S. Ct. 234, 13 L. Ed. 2d 152 (1964)* (beginning its analysis "with the basic premise 'that the deposition-discovery rules are to be accorded a broad and liberal treatment'"). Because "[m]utual knowledge of all the relevant facts . . . is essential to proper litigation . . . either party may compel the other to disgorge whatever facts he has in his possession." *Hickman, 329 U.S. at 507*. Nevertheless, "discovery, like all matters of procedure, has ultimate and necessary boundaries." *Id.* These limitations necessarily arise when—as Alfa alleges has happened here—"it can be shown that the examination is being conducted in bad faith or in such a manner as to annoy, embarrass or oppress the person subject to the inquiry" or "when the inquiry touches upon the irrelevant or encroaches upon the recognized domains of privilege." *Id. at 507-08*.

**III**

Because the [**11] discovery sought by Akridge—the deposition of Scott Forrest—does not cross any of these "ultimate and necessary boundaries," we find that the district court committed a clear error of judgment when it impermissibly curtailed her access to discoverable information. *See id. at 507*.

In opposing the deposition of Scott Forrest, Alfa argues that Akridge has not shown that Forrest has any information touching on the issues related to this case, that his deposition would be unduly burdensome, and that it is being pursued as part of a "fishing expedition." We are not convinced.

To support her claim, Akridge sought information pertaining to her termination, the cost-saving measures Alfa put in place, whether her healthcare costs were taken into consideration, and whether other employees at Alfa had similar healthcare costs. Chancey testified that "[i]t's a savings when you eliminate a job that has a salary like [Akridge's]" and agreed that "when you eliminate a job, you eliminate not only the salary but any of the benefits that go with the job." It stands to reason that if a company terminates an employee in an effort to "cut costs," *someone* at that company must have access to information on how costly [**12] an employee is—including pay *and* benefits. And "benefits" necessarily includes employer-provided healthcare. For Akridge, that includes many high-cost medications that she needs to treat her MS. In total, these medications cost approximately ten thousand dollars each month.

As the Executive Vice President of Human Resources, the "Decision Maker" for Alfa's ERISA employee benefit plan, and the "Decision" contact for Alfa's BlueCross BlueShield insurance plan, we find it difficult to believe that Forrest had no information touching on Akridge's medical expenses and termination. The roles that Forrest held at Alfa—and the corresponding access to medical insurance information they entail—are relevant and thus sufficient to make his testimony discoverable. *See Oppenheimer Fund, Inc., 437 U.S. at 351* (defining relevance). And if Forrest truly has no such information, we see no reason why he cannot make himself available for questioning and say as much in a deposition.[5]

[*1278] The factors that would make deposing Forrest "burdensome"—according to Alfa—are the very same ones that make his testimony relevant and important to Akridge's case. Forrest was in a position of authority, the decision maker or decision contact for both of Alfa's health [**13] insurance plans, and a member of the senior management team who made the ultimate decision to reduce costs. We do not doubt that, as an Executive Vice President, Forrest is an individual with a busy work schedule whose time is valued by Alfa. However, "[d]iscovery is not a one-way proposition," and issues—especially those involving claims of discrimination—"cannot be resolved by a doctrine of favoring one class of litigants over another." *Schlagenhauf, 379 U.S. at 113* (internal quotation marks omitted). Further, any burden this deposition would pose is outweighed by the benefit of obtaining a full and

---

[5] Nor are we convinced that Forrest's affidavit is sufficient here. Courts have noted that "[t]he deposition of a witness will usually be more reliable than his affidavit, since the deponent was either cross-examined by opposing counsel, or at least available to opposing counsel for cross-examination." *Perma Rsch. & Dev. Co. v. Singer Co., 410 F.2d 572, 578 (2d Cir. 1969)*. "Affidavits, on the other hand, are usually drafted by counsel, whose familiarity with summary judgment procedure may render an affidavit less credible." *Jiminez v. All Am. Rathskeller, Inc., 503 F.3d 247, 253 (3d Cir. 2007)*.

Page 5 of 5


accurate understanding of the facts in the pursuit of a just result. *See* *Bell v. Swift & Co., 283 F.2d 407, 409 (5th Cir. 1960)* ("The [discovery] rules are in the interest of the administration of justice and transcend in importance mere inconvenience to a party litigant.").

Finally, we are also not persuaded by Alfa's claim that Akridge's attempts to depose Forrest were part of a fishing expedition. Akridge sought to depose Forrest from the outset of discovery. She abided by the limitations imposed on her regarding the number and length of depositions but was nevertheless repeatedly thwarted in her effort to get answers to her questions. "No longer can the time-honored [**14] cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case. Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Hickman, 329 U.S. at 507* (footnote omitted).

Because Alfa did not demonstrate a burden or abuse of process sufficient to justify such limitations on discovery, and especially in light of the relevant nature of the information sought by Akridge, we conclude that the court committed a clear error of judgment by denying Akridge the opportunity to depose Forrest.

**IV**.

Because the district court abused its discretion in limiting discovery, we **vacate** the grant of summary judgment, **reverse** the district court's denial of Akridge's motion to compel the deposition of Forrest, and remand with instructions that the district court permit Akridge to depose Forrest.

**VACATED, REVERSED, AND REMANDED.**

---

End of Document