# *Ala. Aircraft Indus. v. Boeing Co.*

United States District Court for the Northern District of Alabama

February 25, 2016, Decided; February 25, 2016, Filed

CIVIL ACTION NUMBER: 2:11-cv-03577-RDP

**Reporter**
2016 U.S. Dist. LEXIS 193210 *

ALABAMA AIRCRAFT INDUSTRIES, INC., ALABAMA AIRCRAFT INDUSTRIES, INC. - BIRMINGHAM, AND PEMCO AIRCRAFT ENGINEERING SERVICES, INC., Plaintiff, v. THE BOEING COMPANY, BOEING AEROSPACE OPERATIONS, INC. AND BOEING AEROSPACE SUPPORT CENTER, Defendant.

**Subsequent History:** Later proceeding at *Ala. Aircraft Indus. v. Boeing Co., 2016 U.S. Dist. LEXIS 193197 (N.D. Ala., Mar. 25, 2016)*

**Prior History:** *Ala. Aircraft Indus. v. Boeing Co., 2013 U.S. Dist. LEXIS 38176 (N.D. Ala., Mar. 20, 2013)*

**Counsel:** [*1] For Special Master: David J Middlebrooks, LEHR MIDDLEBROOKS & VREELAND PC, Birmingham, AL.

For Alabama Aircraft Industries Inc, Alabama Aircraft Industries Inc Birmingham, Plaintiffs: J Michael Rediker, R Scott Williams, Rebecca A Beers, RUMBERGER KIRK & CALDWELL PC, Birmingham, AL; Meredith Jowers Lees, RUMBERGER KIRK CALDWELL PC, Birmingham, AL; Peter Tepley, RUMBERGER KIRK & CALDWELL, Birmingham, AL; Reginald L Jeter, LAW OFFICE OF CELESTE P ARMSTRONG, Birmingham, AL; Roger A Brown, HASKELL SLAUGHTER YOUNG & REDIKER LLC, Birmingham, AL.

For Pemco Aircraft Engineering Services Inc, Plaintiff: J Michael Rediker, R Scott Williams, Rebecca A Beers, RUMBERGER KIRK & CALDWELL PC, Birmingham, AL; Meredith Jowers Lees, RUMBERGER KIRK CALDWELL PC, Birmingham, AL; Patricia C Diak, Roger A Brown, HASKELL SLAUGHTER YOUNG & REDIKER LLC, Birmingham, AL; Peter Tepley, RUMBERGER KIRK & CALDWELL, Birmingham, AL; Reginald L Jeter, LAW OFFICE OF CELESTE P ARMSTRONG, Birmingham, AL.

For Boeing Company, The, Boeing Aerospace Operations Inc, Boeing Aerospace Support Center, Defendants: Alexia R Brancato, PRO HAC VICE, KIRLAND & ELLIS LLP, Washington, DC; Craig S Primis, Erin C Johnston, John C O'Quinn, Matthew [*2] E Papez, Tia T Trout-Perez, KIRKLAND & ELLIS LLP, Washington, DC; John Thomas Richie, Kevin C Newsom, BRADLEY ARANT BOULT CUMMINGS LLP, Birmingham, AL; Rebecca L Taibleson, PRO HAC VICE, KIRKLAND & ELLIS LLP, Washington, DC; Reed Thomas Warburton, BRADLEY ARANT BOULT CUMMINGS, Birmingham, AL.

**Judges:** David J. Middlebrooks, Special Master.

**Opinion by:** David J. Middlebrooks

## Opinion

**REVISED[1] REPORT AND RECOMMENDATION**

Before the Special Master is Boeing's "Motion to Compel Production of Documents from Kaiser Aircraft in Response to Subpoena and Petition for an Order to Show Cause" (Doc. #158) ("Boeing's Motion"), which was filed on September 17, 2015. Also before the Special Master is non-party Kaiser Aircraft Industries, Inc.'s ("KAII") "Motion to Quash Subpoena and Response to Boeing's Motion to Compel" (Doc. #163) ("KAII's Motion/Response"), which was filed on October 23, 2015. Boeing filed a Reply (Doc. #164) ("Boeing's Reply") on October 30, 2015, rendering the cross-motions fully briefed per the parties' informal agreement (*See* Doc. #160). For the reasons explained below, it is the recommendation of the Special Master that Boeing's Motion be **GRANTED IN PART** and **DENIED IN PART** and that KAII's Motion be **DENIED**.

**I. FINDINGS** [*3] **OF FACT**

1. On February 18, 2015, Boeing served non-party Kaiser Aircraft Industries, Inc. ("KAII") with a subpoena

[1] This filing is a revised filing intended to be in lieu of Doc. #192, filed on February 23, 2016.

Page 2 of 7


("the subpoena"), which, in general, sought information regarding KAII's August 2011 acquisition of Pemco's assets. Doc. #158, Ex. C.

2. Specifically, the subpoena requested eight (8) categories of documents:

> 1. All documents related to your purchase of Pemco, including but not limited to all documents reflecting any evaluations, assessments, or communications concerning the Purchases Price or the Litigation Trust Participation Amount identified in § 3.1 of the Asset Purchase Agreement.
>
> 2. All documents related to the Litigation Trust, including but not limited to its funding, its ownership or any other claimed interests in the Litigation Trust, and any procedures for distribution from the Litigation Trust.
>
> 3. All documents reflecting Pemco's financial value, including but not limited to any valuations of Pemco or any of its assets or operations.
>
> 4. All documents regarding Pemco's financial condition.
>
> 5. All documents reflecting Pemco's financial performance, including but not limited to consolidated financial statements, balance sheets, income statements, Board presentations, and [*4] any other periodic financial reports, assessments, projections or results.
>
> 6. All documents relating to your decision to acquire Pemco, including but not limited to any reports to Kaiser leadership responsible for supervising or reviewing your acquisition of Pemco.
>
> 7. All communications with any third party, including but not limited to investment bankers, restructuring professionals, senior and junior lenders, high yield bond specialists, research analysts, or accountants regarding your acquisition of Pemco.
>
> 8. All documents reflecting the service of any of your present or former officers, directors, employees, or agents as an employee, representative, officer, or director of Pemco.

Doc. #158, Ex. C.

3. KAII responded to the subpoena on March 2, 2015, vigorously objecting to each of Boeing's requests. Doc. #158, Ex. D.

4. Thereafter, throughout the spring, summer, and early fall of 2015, Boeing and KAII squabbled over the particulars of the requested production, namely, what documents were due to be produced and who between them was due to pay for it. Doc. #158, Exs. F, G, H, I, J, K, L, M, N, O, & P.

5. Having not yet received any documents pursuant to the subpoena, Boeing filed its Motion [*5] on September 17, 2015. Doc. #158. The Motion frames KAII's subpoena opposition in a succinct manner, asserting that "KAII maintains two principal objections to producing documents: it demands that Boeing (1) pay more than $100,000 to KAII for producing documents already produced to Plaintiffs for free; [and] (2) excuse KAII from providing a privilege log." Doc. #158 at 5. Boeing itself sets forth three arguments in its Motion: (1) it is generally entitled to subpoena responses from KAII (Doc. #158 at 5-7); (2) shifting the cost of production would be inappropriate given KAII's financial interest in the litigation (Doc. #158 at 7-9); and (3) KAII is required by *Rule 45 of the Federal Rules of Civil Procedure* ("FRCP") to provide a privilege log (Doc. #158 at 9-10).

6. KAII filed its Motion/Response on October 23, 2015, asking the Court to quash five (5) of the eight (8) subpoena requests and modify the remaining three (3). Doc. #163 at 1. Throughout the Motion/Response, KAII advances the overarching argument that the costs of responding to Boeing's subpoena represent an undue financial burden (Doc. #163 at 5-6); however, it also sets forth specific objections to the subpoena's requests, organizing the eight (8) document requests into [*6] four (4) subject matter categories: (1) "Financial Documents" (Requests 3, 4, & 5)—duplicative of documents already produced by AAI (Doc. #163 at 1-3); (2) "Litigation Trust Documents" (Request 2)—irrelevant (Doc. #163 at 3-4); (3) "Pemco Purchase Documents" (Requests 1, 6, & 7)—overbroad (Doc. #163 at 4); and (4) "Employee Records" (Request 8)—duplicative of documents already produced by AAI and overbroad (Doc. #163 at 4-5).

7. Boeing filed its Reply on October 30, 2015, addressing the specific objections raised by KAII in its Motion/Response. Doc. #164 at 2-6. As in its Motion before, Boeing also used its Reply to assail KAII's positions on shifting production costs and producing a privilege log. Doc. #164 at 7-9.

8. By order dated November 13, 2015, Judge Proctor referred the Motions to the undersigned. Doc. #168.

Page 3 of 7


### II. CONCLUSIONS OF LAW

For the reasons outlined below, it is the undersigned's legal conclusion that KAII should be compelled to respond to Boeing's subpoena, pursuant to the reasonable and equitable framework set forth herein.

#### A. Boeing's Entitlement To Production

It should initially be noted that Boeing is entitled, at least generally, to the documents that it seeks through [*7] its *Rule 45* subpoena. Indeed, "[t]he scope of discovery under *Rule 45* is the same as that under *Rule 26*," *Hood v. Burke County School District, 2016 U.S. Dist. LEXIS 12867, 2016 WL 427102 at *2 (S.D. Ga. February 3, 2016)*, and *Rule 26(b)(1)* permits parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . ." *FRCP 26(b)(1)*.

Here, Boeing seeks documents related to KAII's August 2011 acquisition of Pemco's assets; these documents, in turn, touch on the financial viability of Pemco prior to its acquisition, a subject that is directly relevant to the extent of AAI's alleged damages. As noted by Boeing, its "eight requests are tailored to issues of liability and damages, both of which are directly relevant to the core issues in dispute," and, as such, Boeing is generally entitled to documents that are responsive to such requests.

#### B. KAII's Specific Objections To Production

As noted above, KAII raises specific objections as to each of its four (4) subpoena categories, seeking to quash the requests encompassed by three (3) of the categories (Financial Documents, Litigation Trust Documents, and Employee Records) and limit the requests in the remaining category (Pemco Purchase Documents). None of the objections, however, are so substantial that they relieve [*8] KAII of its basic duty to respond to the requests, a reality that is explained in more detail below.

##### 1. Financial Documents

KAII argues that its responses to Requests 3, 4, and 5 would be duplicative of AAI's prior production, noting that AAI was given access to all of KAII's documents and that "[t]hose documents form the bulk of [AAI's] document production to Boeing." Doc. #163 at 1-3. More specifically, it asserts that "[AAI] produced to Boeing all of the non-privileged financial documents Boeing now demands from KAII pursuant to item numbers 3, 4, and 5 of the subpoena," and, as such, "[t]here is no legitimate reason to require KAII to duplicate the effect and expense of reviewing and reproducing documents that have already been produced and duplicating the privilege log that has already been provided to Boeing." Doc. #163 at 2.

KAII is certainly justified in its concern that—if it were to fully respond to Requests 3, 4, and 5 in their current form—there may be some unnecessary overlap between AAI's production and its own. However, this concern must be balanced with Boeing's legitimate need for documents that speak to AAI's alleged damages. Indeed, Boeing argues that it "cannot verify [*9] that [AAI] produced all documents responsive to the KAII subpoena," because its "requests to KAII were not identical to its requests to [AAI]." Doc. #164 at 3. In support of this argument, Boeing plausibly suggests two potential gaps in AAI's financial document production, writing, "First, Boeing has not located internal KAII documents relating to the decision to enter into the Asset Purchase Agreement whereby KAII acquired Pemco's assets (including this case). Those records would discuss the value of Pemco, and are therefore relevant to the plaintiff's damages claim, yet they have not been produced. Second, Boeing has not seen documents reflecting KAII's ongoing evaluation or monitoring of the value or finances of Pemco." Doc. #164 at 3.

Given these competing interests (and as part of an overarching production framework), the undersigned has developed an information exchange protocol to facilitate the avoidance of duplicative production. It is the intention of the undersigned that this protocol—which is explained in the "Production Framework" section below—will allow Boeing to obtain the "Financial Documents" to which it is entitled, while burdening KAII as little as possible.

##### 2. Litigation [*10] Trust Documents

KAII argues that the documents sought by Request 2 *(i.e.*, "documents concerning the funding of and payments by the Litigation Trust") "[are] not relevant to any claim or defense and [are] not admissible in this case," but "instead [represent] an effort to re-litigate the validity of the Litigation Trust." Doc. #163 at 3. This is

Page 4 of 7


simply not the case.

Indeed, Boeing has articulated numerous ways in which the documents sought by Request 2 may prove relevant to the claims at issue in this suit:

> • Documents showing the purchasers, owners, and participants in the trust may lead to the discovery of persons having relevant information about the underlying events in this case and identify potential witnesses.
>
> • The procedures for distributing proceeds can help identify the real parties in interest, as well as identify people with knowledge about [AAI's] claimed damages.
>
> • The funding of the Litigation Trust may reveal information about [AAI's] damages.
>
> • More generally, the Litigation Trust is both a source of documents discussing this case and a likely repository of relevant information. Boeing is entitled to seek that information, even if it does not know in advance exactly what [*11] information is in the trust's control.

Doc. #164 at 4 (citing Doc. #158, Ex. M at 2). Granted, Boeing cannot guarantee that the Litigation Trust Documents will prove relevant, but such uncertainty does not justify quashing the underlying request. In light of the potential relevance of the "Litigation Trust Documents," KAII should be compelled to produce all such documents in its possession, subject to the production framework detailed below.

**3. Pemco Purchase Documents**

KAII asserts that Requests 1, 6, and 7, which seek "all documents" and "all communications" related to KAII's August 2011 acquisition of Pemco's assets, are "needlessly overbroad," and suggests instead that such Requests "be modified to limit the production to non-privileged documents and communications that KAII *reviewed prior* to entering into the Asset Purchase Agreement." Doc. #163 at 4 (emphasis added). Boeing points out the exclusionary result of KAII's suggestion, noting that it would exclude "documents that were *created* by KAII, *available* to KAII (but not "reviewed"), or *reviewed after* the Asset Purchase Agreement was executed" and arguing that "[s]uch documents are just as relevant to the case and are within the [*12] proper scope of discovery and the requests." Doc. #164 at 5.

Because KAII has provided no supporting rationale for why such documents should be shielded from production (and none is remotely apparent), it should be compelled to produce all documents in its possession that are responsive to Requests 1, 6, and 7, in accordance with the production framework laid out below.

**4. Employee Records**

KAII contends that AAI, pursuant to an agreement with Boeing, has already produced the employee files of all relevant current and former employees, rendering Request 8 duplicative. Doc. #163 at 4. KAII also argues that Request 8 is overbroad, framing it as seeking "all personnel and payroll records of the current and former employees, officers and directors of the Plaintiff and all of its former parent and subsidiary entities. The Court is advised that such a request includes tens of thousands of former employees going back to 1951." Doc. #163 at 4.

It would be an understatement to say that KAII has badly mischaracterized Request 8: the request clearly seeks the employee records of only those persons who worked for both KAII and Pemco. As noted by Boeing, the request is inherently limited, because "KAII [*13] was not formed until 2011," an undisputed fact that effectively discredits KAII's suggestion that Request 8 encompasses "tens of thousands of former employees." Doc. #164 at 8. Additionally, regardless of the veracity of KAII's assertion regarding AAI's prior production,[2] KAII previously agreed to provide substantially similar information to Boeing (Doc. #158, Ex. L at 5), leaving it without an excuse to continue to resist or delay the framework-based production of any responsive documents that it possesses.

**C. Responsibility For Production Costs**

In addition to the specific objections detailed in its Response, KAII has long opposed Boeing's subpoena on the basis that the resulting costs of production constitute an "undue financial burden,"[3] in violation of Rule 45(d)(2)(B)(ii), which establishes that a court "*must*

[2] KAII's assertion is unaccompanied by any sort of citation or attachment.

[3] KAII estimates that the cost of "compliance with the unmodified subpoena will be at least $124,000.00." Doc. #163 at 5 (citing Doc. #158, Ex. J).

Page 5 of 7


protect a person who is neither a party nor a party's officer from significant expense resulting from compliance." FRCP 45(d)(2)(B)(ii) (emphasis added). Boeing, in contrast, argues that KAII—regardless of its non-party status—is too involved in the case to justify the use of the cost-shifting mechanism, noting, among other things, that "KAII has both agreed to fund this case for AAI and has a 90% stake in any recovery." [*14] Doc. #158 at 7.

Although "[t]he presumption under the Federal Rules of Civil Procedure is that the producing party bears the costs of complying with a discovery request," KAII is correct in its assertion that courts have a mandatory duty under Rule 45 to protect non-parties from burdensome compliance expenses. D'Onofrio v. SFX Sports Group, Inc., 254 F.R.D. 129, 134 (D.D.C. 2008). However, Rule 45's provision for "protection from significant expense does not mean that the requesting party necessarily must bear the entire cost of compliance . . . A non-party can be required to bear some or all of its expenses where the equities of a particular case demand it." In re Honeywell Intern., Inc. Securities Litigation, 230 F.R.D. 293, 302-03 (S.D.N.Y. 2003) (internal citations omitted). Indeed, courts typically use the following three-factor balancing test to evaluate the equities involved in shifting subpoena compliance costs from the non-party to the issuing party: "(1) whether the non-party actually has an interest in the outcome of the case, (2) whether the non-party can more readily bear the costs than the requesting party, and (3) whether the litigation is of public importance." *See, e.g.,* Behrend v. Comcast Corp., 248 F.R.D. 84, 86 (D. Mass. 2008) (citing In re Exxon Valdez, 142 F.R.D. 380, 383 (D.D.C. 1992)).

An interested non-party is an entity that does not have an actionable right at issue in the litigation, but has a significant, underlying connection to the case [*15] and, typically, some sort of financial or reputational stake in the litigation's outcome. The undersigned has found no articulable legal standards for determining whether a non-party is interested, but the relevant case law is instructive. In re Exxon, 142 F.R.D. at 383-84 (non-party trade association was found to have an "actual interest in the outcome of [the] litigation" where twenty-nine percent (29%) of its income was derived from dues paid by the defendants); In re Honeywell, 230 F.R.D. at 303 (court determined that non-party accounting firm was "not a classic disinterested non-party," because it served as the defendant's primary financial auditor during the period relevant to the litigation); Behrend, 248 F.R.D. at 87 (non-party was found to have an interest in the litigation where its transaction with the defendant was one of the bases of the antitrust claims at issue); Wells Fargo Bank, N.A. v. Konover, 259 F.R.D. 206, 207 (D. Conn. 2009) (court concluded that non-party's sharing of corporate officers with the defendants, as well as its financial stake in an underlying transaction, rendered it interested, writing, "[The non-party] is not the classic disinterested party subject to a subpoena from a party to a lawsuit to which it has no connection, such as, for example, a non-party bank served with a subpoena requesting all bank records [*16] of defendants in a RICO action"); Bell Inc. v. GE Lighting, LLC, 2014 U.S. Dist. LEXIS 56170, 2014 WL 1630754 at *13 (W.D. Va. April 23, 2014) (non-party deemed interested where it was intimately involved in the underlying events); United States v. Cardinal Growth, L.P., 2015 U.S. Dist. LEXIS 22577, 2015 WL 850230 at *3 (N.D. Ill. Feb. 23, 2015) (court held that non-party law firm was "not a typical disinterested non-party," as it had served as defendant's primary transactional firm for over a decade); Cornell v. Columbus McKinnon Corporation, 2015 U.S. Dist. LEXIS 105450, 2015 WL 4747260 at *3-5 (N.D. Cal. Aug. 11, 2015) (non-party employer was found to be interested where it had an outstanding workers' compensation lien against any recovery by plaintiff employee).

Given this judicial guidance, it is not difficult for the undersigned to conclude that KAII is an interested non-party; indeed, it is responsible for funding the litigation trust; it stands to receive an overwhelming percentage of any recovery the litigation trust is able to obtain; and its corporate officers—namely, Doris Sewell and Randy Shealy—appear to have been intimately involved in the conduct of the litigation.

However, this conclusion does not end our cost-shifting inquiry, as another balancing factor—KAII's financial ability to bear the costs of compliance—remains to be considered.[4] As with the matter of "interest," there does not seem to be a consensus standard for determining a non-party's financial ability to comply with a Rule 45 subpoena, but it is clear [*17] from both the Rule and related case law that the non-party must make some

---

[4] Neither party has suggested that the third and final balancing factor ("whether the litigation is of public importance") is applicable, and the undersigned is unaware of any circumstances that would make it so. (Of course, it is of great public importance that the American defense program be administered in a fair, efficient, and cost-effective manner; however, such concerns are only tangentially invoked by the present litigation.)

Page 6 of 7


showing of undue burden that goes beyond just bare assertions. For instance, in regard to electronically stored information (which constitutes the bulk of what is at issue here), Rule 45(e)(1)(D) provides, "The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding *must show* that the information is not reasonably accessible because of undue burden or cost." FRCP 45(e)(1)(D) (emphasis added). In other words, Rule 45 vests non-parties with an affirmative duty to demonstrate the undue burden or cost of accessing electronically stored information.

Likewise, courts addressing the issue emphasize the need for specificity in a non-party's showing of "undue burden." *Garcia v. E.J. Amusements of New Hampshire, Inc., 89 F.Supp.3d 211, 215-16 (D. Mass. 2015)* ("[The non-party] did not submit any affidavits specifically outlining the number of hours it would take to comply with the magistrate judge's order. Nor does the transcript contain any information to support a claim of undue burden. Rather, [the non-party] only made conclusory statements [*18] regarding the burdens of producing a privilege log."); *In re New England Compounding Pharm. Inc. Prod. Liab. Litig., 2013 U.S. Dist. LEXIS 161652, 2013 WL 6058483 at *6 (D. Mass. Nov. 13, 2013)* ("[A] party cannot rely on the mere assertion that compliance would be burdensome and onerous without showing the manner and extent of the burden and the injurious consequences of insisting upon compliance."); *Assoc. of Am. Physicians and Surgeons, Inc. v. Clinton, 837 F. Supp. 454, 458 n.2 (D.D.C. 1993)* ("Defendants' burdensome argument is categorically rejected. The court does not accept such arguments without specific estimates of staff hours need to comply, and defendants submitted no such estimates.").

Although it cannot be said that the undersigned enjoys a complete picture of KAII's financial status, KAII has attempted, with impressive specificity, to demonstrate its financial inability to comply with Boeing's subpoena. By letters dated December 18, 2015 and January 15, 2016, counsel for KAII responded to questions from the undersigned about KAII's ability to comply, providing a recent KAII balance sheet that speaks to the entity's overall financial state, as well as a detailed estimate of compliance expenses. These submissions are enough to satisfy the undersigned that complying with Boeing's subpoena would amount to a significant, if not undue, financial burden for KAII.

Because KAII clearly has an interest in the [*19] case, but, at the same time, may be burdened by the costs of subpoena compliance, the undersigned concludes that the parties should share in the costs of production, as detailed in the "Production Framework" section below.

**D. Production Framework**

In the interest of fairly apportioning the costs of subpoena compliance, while also ensuring that Boeing receives the documents to which it is entitled, the undersigned has developed the following production framework.

Under this framework, KAII may initially choose one of two routes: (1) it may turn over its servers and other records to Boeing for inspection (subject, of course, to a clawback agreement), satisfying its subpoena obligations and making Boeing solely responsible for any search and retrieval costs; (2) it may proceed with production on its own.

If KAII proceeds with production on its own, the apportionment of costs should be as follows:

(1) Employee Records: KAII previously indicated its willingness to produce similar information it's likely that the records are readily identifiable and retrievable. As such, KAII should be fully responsible for the cost of finding and producing such records.

(2) Litigation Trust Documents: As hinted [*20] at above, this category of documents is perhaps the least relevant of those sought by Boeing. As such, Boeing should be responsible for two-thirds of any search or production costs, a division of expenses that seems particularly appropriate in light of Rule 26's emphasis on proportionality.

(3) Financial Documents & Pemco Purchase Documents: As noted repeatedly above, KAII has taken the position—particularly with respect to the Financial Documents—that any documents responsive to Boeing's requests were already included in AAI's production.[5]

If true, this position is persuasive, weighing in favor of

---

[5] AAI, too, has represented that KAII does not possess any previously-unproduced documents. *See, e.g.*, February 19, 2016 Hearing Transcript at 78 (Ms. Lees, Counsel for AAI—"I think we have said this before, Kaiser has produced any new documents that AAI does not have . . .").

Page 7 of 7


not requiring KAII to produce documents responsive to these categories; however, in order for it to have any practical force, Boeing must be given the opportunity to test it.

As such, the undersigned concludes that KAII—in collaboration with AAI—should initially provide Boeing with the following information (along with good-faith certifications as to its authenticity):

- A detailed accounting of KAII's records and AAI's search of the same, with a particular focus on the specific document categories in question (*i.e.*, Financial Documents and Pemco Purchase Documents). This accounting should [*21] include all available quantitative and descriptive information regarding: (a) the document categories as a whole; (2) the documents from these categories that AAI obtained as a result of its search; and (c) the documents from these categories that AAI did not obtain in its search.

- Any and all information regarding the methods used by AAI to search KAII's records.

It is the undersigned's conclusion that KAII should be responsible for all costs associated with compiling and substantiating such information.

One of two scenarios will result from the information exchange described above:

(1) The information provided will indicate that KAII possesses potentially responsive documents that were not previously processed by AAI. If this is the case, KAII should be responsible for two-thirds of the cost of identifying, retrieving, and producing such documents.

(2) The information provided will indicate that KAII does not possess any potentially responsive documents that were not previously processed. If this is the case, Boeing may accept the information as accurate and require no further production efforts from KAII. On the other hand, Boeing may continue to assert that additional responsive documents [*22] exist and require KAII to examine its records anew for such documents. If the resulting search process fails to reveal any new documents (in keeping with the initial information compiled by KAII), Boeing should be responsible for two-thirds of the search costs. However, if the search turns up new, responsive documents, the cost breakdown should be reversed, with KAII being responsible for the two-thirds of the search and production costs associated with such documents.

### III. RECOMMENDATIONS

For the reasons outlined above, the undersigned makes the following recommendations to the Court:

- Boeing's Motion should be **GRANTED IN PART** and **DENIED IN PART**. KAII should be compelled to respond to Boeing's subpoena in accordance with the framework described in Section II(D) above.

- KAII's Motion should be **DENIED**.

Respectfully Submitted,

/s/ David J. Middlebrooks

David J. Middlebrooks ASB-8553-D58D

Special Master

---

**End of Document**