# Anderson v. WBMG-42

United States Court of Appeals for the Eleventh Circuit

June 5, 2001, Decided ; June 5, 2001, Filed

No. 99-12796.

**Reporter**

253 F.3d 561 *; 2001 U.S. App. LEXIS 11737 **; 86 Fair Empl. Prac. Cas. (BNA) 217; 81 Empl. Prac. Dec. (CCH) P40,854; 57 Fed. R. Evid. Serv. (Callaghan) 181; 14 Fla. L. Weekly Fed. C 792

Marian ANDERSON, Plaintiff-Appellant, v. WBMG-42, Parker Communications, Inc., et al., Defendants-Appellees.

**Prior History:** [**1] Appeal from the United States District Court for the Northern District of Alabama. D.C. Docket No. 97-02008-CV-P-S. Judge: Sam C. Pointer Jr.

**Disposition:** AFFIRMED.

**Counsel:** For Marian Anderson, Appellant: Leslie Marie Proll, NAACP Legal Defense & Educational Fund, Washington, DC.

For WBMG-42, Appellee: Barry V. Frederick, Johnston, Barton, Proctor & Powell, LLP, Birmingham, AL. For Park Communications, Inc., Media General, Inc., Appellees: M. Jefferson Starling, III, Johnston Barton Proctor & Powell, LLP, Birmingham, AL.

**Judges:** Before BARKETT, HILL and KRAVITCH, Circuit Judges. HILL, Circuit Judge, concurring.

**Opinion by:** BARKETT

## Opinion

[*562] BARKETT, Circuit Judge:

Marian Anderson, an African-American female, appeals from a final judgment following a jury verdict in favor of her former employers, WBMG-Channel 42, Parker Communications, Inc., and Media General, Inc. (collectively "WBMG"), on her claims of employment discrimination and retaliatory discharge on the basis of race. *See* Title VII, *42 U.S.C. § 2000e et seq.*, and *42 U.S.C. § 1981*. Specifically, Anderson claims that Hal Broome, a white male and the general manager of WBMG, terminated her for racially discriminatory reasons. Anderson argues on appeal that the district court's exclusion of testimony that purportedly established Broome's disparate treatment of similarly situated white employees constitutes reversible error. We affirm.

BACKGROUND

Anderson was hired as a news producer on June 24, 1996, by Wilhemina Walker, the news director at WBMG, a local affiliate of [**2] CBS in Birmingham, Alabama. At that time, Walker was the only African-American manager at the station. At trial, Walker testified that Broome instructed her to terminate Anderson on September 12, 1996, less than three months after Anderson was hired. According to Broome, Anderson was terminated due to her "unprofessional behavior," specifically, her insubordinate actions in opposition to [*563] the implementation of workplace team-building strategies that he claimed were intended to boost the station's local television ratings. Anderson testified that she believed Broome's team-building strategies were racially motivated and designed to undermine the authority of Walker. The evidence adduced at trial established that Anderson publicly voiced her opposition to the program in front of Broome at the first team-building meeting and demanded written information regarding Broome's team-building strategies before she would agree to take part in them. She then refused to attend a second team-building meeting, and also failed to provide a list of staff resources requested for this second meeting.

Anderson sought to present evidence at trial of WBMG's racial discrimination through testimony that while [**3] she was terminated for "unprofessional behavior," similarly situated white employees, Evan Lockridge and Tom Allen, likewise guilty of "unprofessional behavior," were not terminated. The proffered testimony pertaining to Evan Lockridge, a newsroom photograher, established that on one occasion Lockridge lost his temper, used profanity, threw a tape and a box, and kicked a trash can in the newsroom. After the incident, Walker verbally reprimanded Lockridge, suspending him

Page 2 of 5


for the remainder of the day. Walker informed Broome that Lockridge had "exploded" in the newsroom, and provided a written report of the incident and his suspension. Lockridge thereafter apologized, offered to resign, and did resign several weeks following the incident.

The evidence relevant to Tom Allen, an executive producer, consisted of Walker's testimony of his insubordination. Walker testified that Allen failed to follow her instructions on several occasions and showed reluctance complying with the "direction [she] wanted the product to go in." Rather, Allen did what Walker's predecessor, who was still employed at the station, directed him to do. Moreover, notwithstanding Walker's instructions to Allen to [**4] leave work at 6:30 p.m. or 7:00 p.m., because his presence interfered with preparations for the ten o'clock news program, he continued to remain at the station. Walker testified that he would "cause some problems … by being there," in order to "manage his wife," an anchor on the ten o'clock news program. Walker claimed that she reprimanded Allen on several occasions by talking to him about her "difficulty with him doing the things in the newsroom that [she] wanted done." Broome testified that he was unaware of Allen's misconduct in the newsroom, although Allen did complain to Broome that Walker would not allow him to perform the responsibilities of his position without interference and offered to resign. Instead, Broome transferred Allen to the production department.

We review the evidentiary rulings by the district court for an abuse of discretion. *See* *Piamba Cortes v. American Airlines, Inc., 177 F.3d 1272, 1305-06 (11th Cir. 1999)*. We reverse only if the complaining party establishes that the evidentiary ruling resulted in a "substantial prejudicial effect," thus warranting reversal of the jury's verdict. *See id.; see also* *Fed.R.Evid. 103(a)* ("Error [**5] may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected …"); *Fed.R.Civ.P. 61* (An erroneous evidentiary ruling is not subject to reversal unless refusal to take such action is "inconsistent with substantial justice.").

The district court excluded the proffered evidence pertaining to Lockridge and Allen under *Rule 403*. *See* *Fed.R.Evid. 403* ("Although relevant, evidence may be excluded [*564] if its probative value is substantially outweighed by … considerations of undo delay, [or] waste of time …"). Anderson argues on appeal that the district court erred in excluding the evidence because the probative value of the proffered testimony would have provided the necessary support for her claim of racial discrimination and, thus, was not substantially outweighed by time considerations. WBMG, on the other hand, argues that the district court's exclusion of this proffered evidence was proper, but for the wrong reason since, by excluding the evidence under *Rule 403*, the district court erred in finding the evidence relevant in the first instance. WBMG suggests that the district court should have excluded the proffered [**6] evidence as irrelevant under *Rule 402* because the conduct of the co-employees were not the same as Anderson's and because they were not disciplined by the same supervisor. *See* *Fed.R.Evid. 402* (Evidence that is not relevant is not admissible at trial.). Alternatively, WBMG argues that the district court's reason for excluding the evidence under *Rule 403*, that is, although relevant, it was not sufficiently probative to overcome a concern for the waste of judicial time, is correct and should be affirmed.

DISCUSSION

Evidence that similarly situated employees are disciplined more leniently is admissible to support a disparate treatment claim when the plaintiff has established that the co-employees are in fact similarly situated. *See* *Nix v. WLCY Radio/Rahall Communications, 738 F.2d 1181, 1186 (11th Cir.1984)*. Thus, the plaintiff must show that the comparator employees are "involved in or accused of the same or similar conduct" yet are disciplined in a different, more favorable manner. *Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997)*.

In some cases, the determination of whether comparators are similar will be an easier task than in others, [**7] for example, when two employees have violated the identical rule or expressed work policy. That is not the case here. In this case, Anderson was fired for "unprofessional behavior." Both parties agree Anderson was not terminated for the violation of any work rules or specific policy, written or otherwise understood. There is nothing in the record indicating that the term "unprofessional behavior" was defined at the time of Anderson's discharge, and it appears a general definition of "unprofessional behavior" was unavailable because WBMG admits no rules of conduct or employee manuals were available throughout the duration of Anderson's employment. Likewise, no disciplinary procedures were available due to a lack of published employee policies. When the record establishes that no objective criteria was applied in an

employer's decisionmaking process, such as the case here, similarly situated evidence is particularly relevant because inferences of discriminatory motive depend upon the application of subjective criteria. [1]

[**8] [*565] This is especially so when the reason given for the disciplinary action is "unprofessional behavior," which can encompass a wide range of actions. [2] In arguing that the conduct of comparator employees must be the same or nearly identical, WBMG takes the same position rejected by this Court in *Alexander v. Fulton County, 207 F.3d 1303, 1334 (11th Cir. 2000)*. In that case, the employer defendant contended that the trial court had mischaracterized the law by charging the jury that it could find discrimination where "another similarly situated employee" was not treated in a "similar manner":

> Defendants claim that the term "similarly situated" is ambiguous, and that this [jury] charge miscasts the governing law of this circuit, which they claim requires the "same or nearly identical conduct." Again, we disagree. Although susceptible to manipulation, the phrase "similarly situated" is the correct term of art in employment discrimination law. Moreover, the law does not require that a "similarly situated" individual be one who has "engaged in the same or nearly identical conduct" as the disciplined plaintiff. Instead, the law only requires "similar" misconduct [**9] from the similarly situated comparator. *Olmstead v. L.C. by Zimring, 527 U.S. 581, 119 S. Ct. 2176, 2193, 144 L. Ed. 2d 540 (1999)* (Kennedy, J., concurring in the judgment) (characterizing the "normal definition of discrimination" as "differential treatment of *similarly situated* groups" (emphasis added)); *Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 258, 101 S. Ct. 1089, 1096, 67 L. Ed. 2d 207 (1981)* ("*McDonnell Douglas* teaches that it is the plaintiff's task to demonstrate that *similarly situated* employees were not treated equally." (emphasis added)); *Osram Sylvania, Inc. v. Teamsters Local Union 528, 87 F.3d 1261, 1265 (11th Cir.1996)* ("Disparate treatment exists when *similarly situated* workers are treated differently even though they have committed similar acts." (emphasis added)); *Jones v. Gerwens, 874 F.2d 1534, 1540 (11th Cir.1989)* (holding that in order to show discriminatory discipline, plaintiff must show either that he did not violate the work rule or "that he engaged in misconduct *similar* to that of a person outside the protected class, and that the disciplinary measures [**10] enforced against him were more severe than those enforced against other persons who engaged in *similar* misconduct" (emphasis added)).

*Alexander, 207 F.3d at 1334-35*. To the extent that "unprofessional behavior" can be understood by the ordinary use of that term, we reject WBMG's position that the proferred evidence in this case was not relevant as comparator evidence because the conduct of Lockridge and Allen was not identical. *See id.*

[**11] We also reject WBMG's position that *Jones v. Gerwens, 874 F.2d 1534, 1541 [*566] (11th Cir. 1989)* and *Jones v. Bessemer Carraway Med. Ctr., 137 F.3d 1306, 1311 (11th Cir. 1998)*, *opinion modified by* *151 F.3d 1321 (1998)*, stand for the proposition that whenever two different supervisors are involved in administering the disciplinary actions, the comparators cannot as a matter of law be similarly situated for Title VII purposes. Because in both *Gerwens* and *Bessemer* this Court found that similarly situated evidence could not be demonstrated, WBMG argues that a plaintiff

[1] The Supreme Court has consistently recognized that disparate treatment potentially results from an employer's practice of committing employment decisions to the subjective discretion of its supervisors. *See* *Watson v. Ft. Worth Bank & Trust, 487 U.S. 977, 988, 101 L. Ed. 2d 827, 108 S. Ct. 2777 (1988)* ("We have consistently used conventional disparate treatment theory, in which proof of intent to discriminate is required, to review [employment] decisions that were based on the exercise of personal judgment or the application of inherently subjective criteria.") (citing *Furnco Constr. Corp. v. Waters, 438 U.S. 567, 57 L. Ed. 2d 957, 98 S. Ct. 2943 (1978)* (hiring decisions based on personal knowledge of candidates and recommendations); *Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 67 L. Ed. 2d 207, 101 S. Ct. 1089 (1981)* (discretionary decision to fire individual who was said not to get along with co-workers); *United Postal Service Bd. of Governors v. Aikens, 460 U.S. 711, 75 L. Ed. 2d 403, 103 S. Ct. 1478 (1983)* (discretionary promotion decision)).

[2] The Supreme Court has observed that "precise equivalence in culpability between employees is not the ultimate question[,]" and, therefore, has directed the emphasis of the fact finder's inquiry to the question of "comparable seriousness." *McDonald v. Santa Fe Trail Transportation Co., 427 U.S. 273, 283 n.11, 49 L. Ed. 2d 493, 96 S. Ct. 2574 (1976)* (Evidence of comparator employees involved in acts of "comparable seriousness [as the plaintiff] … is adequate to plead an inferential case that the employer's reliance on his discharged employee's misconduct as grounds for terminating him was merely a pretext.") (internal quotations and citation omitted).

Page 4 of 5


cannot prevail as a matter of law whenever two different supervisors are involved in disciplining the plaintiff and comparators. Neither of these cases, however, support such a broad assertion. *Bessemer* specifically indicated evidence of different supervisors' involvement in the disciplinary process is not determinative of the question. 137 F.3d at 1312 n.7 ("Different supervisors may have different management styles that -- *while not determinative* -- *could* account for the disparate treatment that employees experience.") (emphasis added). In *Gerwens,* [**12] we said that, under the circumstances there, different supervisors "*may* not be comparable" for the purposes of Title VII analysis. 874 F.2d at 1541 (emphasis added). Our rationale, however, was reflective of the cases upon which we relied:

> *See* Cooper v. City of North Olmsted, 795 F.2d 1265, 1271 (6th Cir.1986) ("Although a change in managers is not a defense to claims of race or sex discrimination, it can suggest a basis other than race or sex for the difference in treatment received by two employees"); Tate v. Weyerhauser[ Co.], 723 F.2d [598] at 605-06 ("Although a change in managers is not a defense to claims of racial discrimination," evidence that one manager is more lenient than another may explain differential application of sanctions to whites under one manager and blacks under another); Lynch v. Dean, 1985 U.S. Dist. LEXIS 15501, 39 Fair Empl. Prac. Cas. (BNA) 338, 345 (M.D.Tenn.1985), rev'd on other grounds, 817 F.2d 380 (6th Cir.1987) ("Proof that workers under [one foreman's] supervision were disciplined more severely than workers under the supervision of other foremen does not aid plaintiff in insisting that [**13] she was the victim of selective enforcement of the rules").

Gerwens, 874 F.2d at 1541.

In this case there was no change in managers. Unlike the plaintiff and proffered comparators in both *Gerwens* and *Bessemer,* the supervision of Lockridge, Allen, and Anderson -- all of the employees in question -- fell within the primary responsibility of one middle manager and the same supervisory chain of command. Anderson has shown that at the time of the alleged misconduct, the comparator employees were stationed in the newsroom and under the immediate supervision of Walker, as news director, and under the general supervision of Broome, as general manager. Disparate treatment analysis "requires that none of the participants in the decision making process be influenced by racial bias." Gerwens, 874 F.2d at 1542 n.13. "Thus the motivations of both the [upper management] and of [middle management] are pertinent." *Id.*

Although relevant, Rule 403 nonetheless permits exclusion when the probative value of the evidence is outweighed by considerations of time. *See* Fed.R.Evid. 403. It is true that Rule 403 should be applied sparingly. *See* United States v. Cross, 928 F.2d 1030, 1048 (11th Cir. 1991); [**14] United States v. Meester, 762 F.2d 867, 875 (11th Cir. 1985). However, under the facts here, we do not find that the district court's exclusion of the evidence resulted in "manifest injustice" or a "substantial prejudicial effect" to Anderson, thus warranting [*567] reversal of the jury's verdict. *See* Piamba Cortes, 177 F.3d at 1305-06.

There is no abuse of discretion where a trial court prevents counsel from embarking on a lengthy examination of matters which have not been developed during discovery. To have permitted a lengthy examination and perhaps lengthier rebuttal encompassing the efficacy of WBMG's management, or Walker's role or ability as a supervisor, would have in effect generated a mini-trial on collateral issues which would not relate to the racial discrimination alleged in Anderson's claim. For example, among other things, the disciplining and firing authority of Walker and Broome had not been made clear, and their respective roles in Anderson's termination had not been fully developed during discovery. Whether Walker, against whom Anderson makes no claim of discriminatory motive, recommended Anderson's termination as WBMG contends, or failed [**15] to recommend the termination of the comparator employees, is unclear from the record. Likewise, it is also unclear whether Walker brought the specifics of Allen's conduct to the attention of Broome, and should have recommended termination pursuant to her role as his immediate manager or as a matter of established supervisory practice at WBMG. [3]

---

[3] The demonstration that a middle manager administers more lenient discipline in the instance of the comparator employees whereas an upper manager recommends the discharge of a plaintiff does not prevent an inference of impermissible motive if either the middle or upper management knew or should have known of the alleged misconduct of the comparators and failed to recommend discharge. *See* Gerwens, 874 F.2d at 1542 n.13. In this case, Anderson only argues that the upper manager, Broome, has administered the discipline in a discriminatory manner and did not attempt to argue that the middle manager, Walker, who possessed knowledge of both Anderson's and the comparators' unprofessionalism, was motivated by racial discrimination.

Page 5 of 5


Consequently, Broome's knowledge of Allen's alleged unprofessionalism was not established directly and there is no evidence from which it can be inferred. Under all the circumstances presented here, we find no abuse of discretion in the district court's ruling under *Rule 403*.

[**16] AFFIRMED.

**Concur by:** HILL

## Concur

HILL, Circuit Judge, concurring:

I concur, with this remark.

The exclusion of the proffered evidence did not, as the opinion makes clear, result in "manifest injustice," or "substantial prejudicial effect," and was not an abuse of discretion. This affirmance is proper.

I doubt that we are required, therefore, to decide whether or not the tendered evidence was comparator evidence. What I view as dicta in our opinion, however, strengthens our holding inasmuch as affirming is ordered assuming the best view of the tendered evidence for the appellant.

End of Document