# Cervenec v. Borden Dairy Co. of Fla., LLC

United States District Court for the Southern District of Florida

October 16, 2015, Decided; October 16, 2015, Entered on Docket

CASE NO. 14-62876-CIV-COHN/SELTZER

**Reporter**
2015 U.S. Dist. LEXIS 194079 *; 2015 WL 13567434

RYAN CERVENEC, Plaintiff, vs. BORDEN DAIRY COMPANY OF FLORIDA, LLC, Defendant.

**Subsequent History:** Motion denied by *Cervenec v. Borden Dairy Co., 2015 U.S. Dist. LEXIS 189001 (S.D. Fla., Dec. 9, 2015)*

**Counsel:** [*1] For Ryan Cervenec, Plaintiff: Roger William Feicht, LEAD ATTORNEY, Gunster, West Palm Beach, FL; Brian M. McPherson, Gunster Yoakley & Stewart, West Palm Beach, FL.

For Borden Dairy Company of Florida, LLC, Defendant: Michael Richard Tricarico, LEAD ATTORNEY, Ogletree Deakins Nash Smoak & Stewart PC, Miami, FL; Gregory Robert Hawran, Kelly Marie Pena, Ogletree, Deakins, Nash, Smoak & Stewart, P.C., Miami, FL.

**Judges:** BARRY S. SELTZER, United States Magistrate Judge.

**Opinion by:** BARRY S. SELTZER

## Opinion

ORDER ON PLAINTIFF'S MOTION TO COMPEL

THIS CAUSE is before the Court on Plaintiff's Motion to Compel (DE 26), Defendant's Response to Plaintiff's Motion to Compel (DE 27), Plaintiff's Reply to Defendant's Response to Plaintiff's Motion to Compel (DE 28), and Defendant's Sur-Reply to Plaintiff's Reply to Defendant's Response to Plaintiff's Motion to Compel Discovery and Motion for Attorneys' Fees and Costs (DE 31). The Court being sufficiently advised, it is hereby ORDERED that Plaintiff's Motion to Compel is GRANTED in part and DENIED in part as set forth below.

Plaintiff Ryan Cervenec brings this action against his former employer, Borden Dairy Company of Florida, LLC ("Borden"), asserting claims for failure to accommodate, [*2] retaliation, and intentional discrimination in violation of the *Americans with Disabilities Act* ("ADA") and the *Florida Civil Rights Act*.

Plaintiff, a 36-year old male, was employed by Defendant as a Route Supervisor in Miami, Florida; his job duties included supervising delivery personnel, insuring proper route coverage, investigating and responding to customer complaints, and maintaining Department of Transportation ("DOT") records. In June 2010, Plaintiff had surgery to remove a brain tumor and was thereafter successfully treated with chemotherapy. Following a period of unpaid leave pursuant to the *Family and Medical Leave Act* ("FMLA"), his physician cleared Plaintiff to return to work in August 2010. Plaintiff subsequently resumed his duties as Route Supervisor for a period of four or five months, allegedly without incident.

Plaintiff claims that although he was rarely required to drive the delivery trucks, Defendant nonetheless required he be re-certified with the DOT after he resumed work. According to Plaintiff, he received his DOT Medical Certification, which was renewed through June 2011. According to Defendant, a Route Supervisor, such as Plaintiff, must hold a Class "A" Commercial [*3] Driver's License ("CDL") and be able to perform all the job functions of a Route Sales Person, which includes driving a commercial delivery vehicle. Defendant states that Route Supervisors regularly drive a commercial delivery vehicle for a number of reasons. Defendant further states that it learned Plaintiff was taking an anti-seizure medication, which made him ineligible to hold a CDL under the Federal Motor Carrier Safety Administration regulations, as well as under Florida law. Defendant claims that holding a CDL and driving a commercial vehicle are essential functions of a Route Supervisor position, a claim that Plaintiff disputes.

In January 2011, Defendant placed Plaintiff on paid administrative leave. Plaintiff alleges that after inexplicably suspending him, Defendant ceased all communications. According to Plaintiff, he requested a reasonable accommodation and repeatedly asked to

Page 2 of 7


return to work, but Defendant ignored his requests. According to Plaintiff, Defendant retaliated against him and did not want to employ him any longer because of his disability.

Plaintiff subsequently received from Defendant's Human Resources Manager a letter dated August 22, 2011 (DE 26-5), noting [*4] that when he was diagnosed with "epilepsy" he became disqualified from being a DOT certified driver and was placed on administrative leave to permit Defendant to evaluate his situation. The letter further informed Plaintiff that while he was on leave Defendant had been implementing a restructuring of its workforce and that in May his position had been eliminated (as were others) as part of that restructuring. The letter purportedly enclosed the job description of positions open at that time; it stated that if none of the open positions was of interest to Plaintiff, Defendant would be terminating his employment effective August 31, 2011.

Plaintiff alleges that he did not receive the description of open positions with the August 22, 2011 letter. When he requested Defendant to identify the open positions for which he was invited to apply, Defendant sent him a job description for a mechanic, which position was not in Plaintiff's field and required DOT certification. According to Plaintiff, he found on the internet at least one open position for which he was qualified. Although he applied for that position, Defendant did not hire him and his employment with Defendant was terminated.

During [*5] the course of discovery, Plaintiff served on Defendant a First Request for Production of Documents and a First Set of Interrogatories, to which Defendant responded, asserting objections. Plaintiff now moves the Court to compel Defendant to produce documents responsive to Request Nos. 3, 4, 9, 11, 15, 18, 19, 20, 21, 36 and 37 and to fully answer Interrogatory Nos. 2 and 6-13. The Court will consider the discovery requests in turn.

REQUESTS FOR PRODUCTION

1. Defendant asserted various objections to Request Nos. 3, 4, 9, 20, and 21. To each of these Requests, however, Defendant stated that "[s]ubjective to and without the foregoing objections," it would produce a list of non-privileged documents. Plaintiff argues because of Defendant's equivocal responses he is unable to determine whether any documents were withheld from production based on the objections. He, therefore, requests that the Court overrule Defendant's objections. Although the practice of objection to a discovery request then providing a substantive response notwithstanding the objection has become commonplace, courts in the Eleventh Circuit have found that "whenever an answer accompanies an objection, the objection is deemed [*6] waived and the answer, if responsive, stands." *Tardif v. People for the Ethical Treatment of Animals, NO. 2:09-cv-537-FtM-29SPC, 2011 U.S. Dist. LEXIS 47132, 2011 WL 1627165, at *2 (M.D. Fla. Apr. 29, 2011)*; see also *Pepperwood of Naples Condominium Ass'n v. Nationwide Mutual Fire Ins. Co., No. 2:10-cv-753-FtM-36SPC, 2011 U.S. Dist. LEXIS 106624, 2011 WL 4382104, at *4-5 (M.D. Fla. Sept. 20, 2011)*; *Mann v. Island Resorts Dev., Inc., No. 3:08cv297/RS/EMT, 2009 U.S. Dist. LEXIS 130436, 2009 WL 6409113, at *3 (N.D. Fla. Feb. 21, 2009)*. As one court in this District has noted, such objections and answer "preserve[ ] nothing and serve[ ] only to waste the time and resources of both the Parties and the Court. Further, such practice leaves the requesting Party uncertain as to whether the question has actually been fully answered or whether only a portion of the question has been answered." *Consumer Elecs. Ass'n v. Compras and Buys Magazine, Inc., No. 08-21085-Civ, 2008 U.S. Dist. LEXIS 80465, 2008 WL 4327253, at *3 (S.D. Fla. Sept. 18, 2008)* (Simonton, M.J.). In determining the sufficiency of Defendant's responses to Plaintiff's discovery requests, the Court will consider only the answer provided and the arguments set forth in Defendant's Response and Sur-Reply in opposition to the instant motion.

2. Request No. 3 seeks "[a]ll policies and procedures Borden claims were relevant to Ryan Cervenec and to its decision to terminate his employment." Defendant responds that it has produced all documents substantively [*7] relevant to Plaintiff's termination. It, however, contends that all policies and procedures "relevant to" Plaintiff would encompass a wide variety of policies and procedures ( such as those regulating the temperature of Defendant's trucks and the time constraints relating to delivery of the product) that have nothing to do with the claims and defenses herein. According to Defendant, every policy and procedure governing some aspect of Borden's operations would technically be responsive to this Request. Plaintiff replies that he will accept an amended response confirming "'all policies and procedures Defendant claims were relevant to" suspend or terminate [his] employment' have been produced." Reply at 10 (DE 28). Defendant, however, in its Response has clearly and unequivocally represented that it has produced all

Page 3 of 7


such documents. The Court, therefore, will not require Defendant to amend its response to Request No. 3 or to produce any additional documents responsive to this Request.

3. Request No. 4 seeks "[a]ll expense reimbursement, including mileage reimbursements, for Ryan Cervenec." In response to this Request, Defendant stated "none." In response to the instant Motion, Defendant [*8] states that the documents sought have been produced, rendering this issue moot. Plaintiff replies that Defendant's statement is based on only a search of its "JDE" software, yet Defendant's HR supervisor testified at deposition that the software was not used by the company until 2012 or 2013. According to Plaintiff, he made mileage reimbursement requests via email to his supervisors. He argues that the Court should compel Defendant to locate these documents. In its Sur-Reply, Defendant states during a conferral by counsel in August 2015 Plaintiff's counsel insisted that Defendant should have a record of expense reimbursements. Defendant thereafter conducted a second, further-reaching search and located records of expenses incurred by Plaintiff for travel to work at other Borden facilities. With respect to emails, Defendant represents that all ESI was recovered on September 17, 2015, and produced to Plaintiff, and therefore, any email expense reimbursements would be included in that production. Based on Defendant's Sur-Reply, it appears that Defendant has diligently made searches for documents responsive to Request No. 4 and has now produced to Plaintiff all responsive documents located. [*9] The Court, therefore, concludes that the issue with respect to Request No. 4 is moot.

4. Request No. 9 seeks "[t]he complete employee files for any employee who worked as a route supervisor from January 1, 2009 through August 2011 at the facility where Ryan Cervenec worked." In response to the instant Motion, Defendant states that it has produced to Plaintiff not only the complete personnel files (including the medical files) of all Route Supervisors but also the personnel and medical files of the supervisors of the Route Supervisors. Plaintiff replies that Defendant has failed to produce the personnel file of Route Supervisor Bill Davis. In its Sur-reply, however, Defendant represents that on September 24, 2015, it produced Davis' personnel file and his DOT and medical file (in response to Plaintiff's Third Request for Production). The issue with respect to Request No. 9, therefore, is moot.

5. Request No. 11 seeks "[a]ll documents relating to the alleged reduction-in-force executed by Borden in 2011." Plaintiff has agreed to limit this Request to "[a]ll documents relating to the alleged reduction in force executed by Defendant in 2011 as to (1) Ryan Cervenec's selection in the reduction [*10] in force; (2) the consideration or selection of other Route Supervisors, and (3) the consideration or selection of employees at the Miami facility where Mr. Cervenec worked." Although Defendant contests the relevancy of this Request, in both its Response and its Sur-reply, it clearly and unequivocally represents that it does not possess any documents aside from what has already been produced to Plaintiff. The Court, therefore, deems the issue with Request No. 9 moot.

6. Request Nos. 15, 36, and 37 seek documents relating to communications. More specifically, Request No. 15 seeks "[a]ll communications Borden Dairy had with Ryan Cervenec from April 10 through September 2011." Request No. 37 seeks "[a]ll communications (including but not limited to e-mails) regarding, relating to, or referencing Ryan Cervenec from January 1, 2009 through September 30, 2011." And Request No. 36 seeks "[a]ll communications (including but not limited to e-mails) exchanged with Ryan Cervenec and employees, agents, or representatives or Borden Dairy Company of Florida, LLC from January 1, 2009 through September 30, 2011." The Court finds that these requests are overbroad on their face in that they are not limited [*11] as to subject matter. According to Plaintiff, the communications sought "would likely describe Borden's decision to suspend [him] after he disclosed his brain cancer and requested a reasonable accommodation and Borden's decision to terminate him." Motion at 16 (DE 26). Yet, as worded, responsive documents would include a myriad of subjects having nothing to do with the claims or defenses herein. Moreover, in its Sur-Reply, Defendant has represented that it has produced all non-privileged, responsive documents. The Court accepts Defendants representation. The Court will not require Defendant to produce any additional documents responsive to Request Nos. 15, 36, or 37.

7. Request No. 18 seeks production of "[a]ll documents Borden relies on to establish that it needed to reduce its workforce in 2011." Defendant objected to this Request on various grounds, including that the need for the reduction-in-force has no bearing on any claims or defenses herein and that the Request is not calculated to lead to the discovery of admissible evidence. According to Plaintiff, Defendant's termination letter indicating that his position had been eliminated as part

of a restructuring of the work force [*12] places the reduction-in-force at issue and, therefore, this Request is relevant. Although the reduction-in-force may or not be pertinent to some aspects of this case, the Court does not find that Defendant's financial and/or strategic reasons for a company-wide reduction-in-force (resulting in the termination of hundreds of employees) is relevant or that the Request is likely to lead to admissible evidence. Accordingly, the Court will not require Defendant to produce documents responsive to Request No. 18.

8. Request No. 19 seeks "Borden's audited financial documents for the years 2010, 2011 and 2012." Plaintiff argues that the financial documents sought are relevant to his claim for punitive damages. See Shores of Panama Resort Cmty. Ass'n v. Halberthal, No. 5:14-cv-294-RH-GRJ, 2015 U.S. Dist. LEXIS 70396, 2015 WL 3466127, at *1 (N.D. Fla. June 1, 2015) ("Where there is a claim for punitive damages a defendant's financial condition becomes relevant because the wealth of the defendant is a factor for consideration in determining the reasonableness of a punitive award."); Gottwald v. Producers Group I, LLC, No. 12-81297-CIV, 2013 U.S. Dist. LEXIS 59452, 2013 WL 1776154, at *3 (S.D. Fla. Apr. 25, 2013) (Matthewman, M.J.) ("[I]t is clear that financial worth is relevant to a claim of punitive damages.").

Defendant does not dispute that its financial [*13] documents are relevant to a punitive damages claim; rather, it argues that the production of such documents is premature in that "there has been no evidentiary proof substantiating the viability of any of Plaintiff's causes of action to date, much less entitlement to punitive damages at this time." Response at 16 (DE 27). Defendant does not cite any binding authority to support its argument. The Eleventh Circuit has held that the pleading rules of Federal Rule of Civil Procedure 8(a)(3) preempt Florida Statute § 768.72's requirement that a plaintiff must obtain leave of court before pleading a claim for punitive damages. Cohen v. Office Depot, Inc., 184 F.3d 1292, 1299 (11th Cir. 1999), vacated in part, 204 F.3d 1069 (11th Cir. 1999). Significantly, however, the Eleventh Circuit, has left open the question of whether the federal rules similarly preempt § 768.72's discovery component, which states that "[n]o discovery of financial worth shall proceed until after the pleading concerning punitive damages is permitted." Fla. Stat. § 768.72. After Cohen, a few courts have required a showing of a reasonable basis to support a punitive damages claim before permitting financial discovery (citing § 768.72), however, they have not explained why the discovery component of the state statute should apply in federal court when the pleading component does not. See, e.g., [*14] Haaf v. Flagler Constr. Co., No. 10-62321-Civ, 2011 U.S. Dist. LEXIS 52198, 2011 WL 1871159, at *1-3 (S.D. Fla. May 16, 2011); Royal Marco Point I Condo Ass'n v. QBE Ins. Corp., No. 3:07 CV 16, 2010 U.S. Dist. LEXIS 75216, 2010 WL 2609367, at *1-3 (M.D. Fla. June 30, 2010). Other courts have ruled (in cases asserting both federal and state claims and even in diversity cases asserting only state claims) that financial documents relevant to a punitive damages claim are discoverable without a showing for the basis of that claim. See Halberthal, 2015 U.S. Dist. LEXIS 70396, 2015 WL 3466127, at *1 (documents relating to defendant's financial condition fall "within the scope of permissible discovery under Rule 26"); Hite v. Hill Dermaceuticals, Inc., No. 8:12-cv-2277-T-33AEP, 2013 U.S. Dist. LEXIS 179703, 2013 WL 6799334, at *4-5 (M.D. Fla. Dec. 23, 2013) (in case asserting discrimination claims under both federal and state law, court found magistrate judge's ruling permitting production of financial worth discovery not clearly erroneous or contrary to law, discussing Fla. Stat. § 768.72); Gottwald, 2013 U.S. Dist. LEXIS 59452, 2013 WL 1776154, at *3 (in case asserting both federal and state claims, court rejected argument that discovery of financial worth discovery was premature and that the plaintiff was required to make an evidentiary showing before obtaining such discovery, ruling that Fla. Stat. § 768.72's restriction on financial worth discovery must yield to the liberal discovery standards of Rule 26); EEOC v. Ruskin, No. 2:11-cv-158-FtM-36Spc, 2011 U.S. Dist. LEXIS 94681, 2011 WL 3715067, at *3 (M.D. Fla. Aug. 24, 2011) ("This Court has previously held in the context of a claim under [*15] the ADA, that if plaintiff has pled punitive damages in the complaint, defendant's financial worth may be reasonably calculated to support plaintiff's claim for punitive damages and may be obtained during the course of discovery.") (citing Soliday v. 7-Eleven, Inc., No. 2:09-cv-807-FtM-29SPC, 2010 U.S. Dist. LEXIS 122517, 2010 WL 4537903, at *2 (M.D. Fla. Nov. 3, 2010)); Marlborough Holdings Group, Ltd. v. Pliske Marine, Inc., No. 08-62075-Civ, 2010 U.S. Dist. LEXIS 113483, 2010 WL 4054262, at *1-2 (S.D. Fla. Oct. 15, 2010) (Garber, M.J.) (finding that Cohen's ruling that a federal plaintiff need not seek leave of court before asserting a punitive damages claim renders Fla. Stat. § 768.72's discovery component inapplicable by its own terms to financial worth discovery in federal court); Ward v. Estaleiro Itajai S/A, 541 F. Supp. 2d 1344, 1345-1360 (S.D. Fla. 2008) (Zloch, J.) (ruling that Fla. Stat. § 768.72's discovery limitation conflicts with the scope of discovery mandated

Page 5 of 7


by Rule 26 and, therefore, should not be applied in a federal diversity action). This Court agrees that a showing (evidentiary or otherwise) for the basis of a punitive damages claim is not required before discoverying a defendant's relevant financial documents.

Defendant additionally argues that Request No. 19 is overly broad because it seeks financial documents for multiple years (2010, 2011, and 2012). It offers to produce its most recent audited financial statements 30 days prior to trial, [*16] relying on Williams v. South Lubes, Inc., No. 1:12-cv-180-SPM-GRJ, 2012 U.S. Dist. LEXIS 178227, 2012 WL 6135170, at *1-2 (N.D. Fla. Dec. 3, 2012). In Williams, a case alleging retaliation under 42 U.S.C. § 1981, the plaintiff sought production of the defendant's financial documents in the early stages of discovery. Considering the defendant's argument that such discovery was premature and the plaintiff's representation that he did not intend to call any expert witness to testify concerning the defendant's net worth, the Williams Court found it "appropriate to delay the production until after addition discovery on the merits of the case [had] occurred and closer to the time of trial." 2012 U.S. Dist. LEXIS 178227, [WL] at *2. Upon the plaintiff's counsel representation that 30 days prior to trial would be sufficient to review the documents sought, the court ordered the defendant to produce its financial documents at that time.

Here, Plaintiff has not indicated whether he intends to call any financial expert at trial; he, however, states that he needs the documents sought to question Defendant's corporate representative at deposition about the company's financial condition. More significantly, this case is in the later stage of discovery, unlike Williams. The Court does not find that any further delay in producing Defendant's [*17] financial documents is warranted or appropriate. Nor does the Court find that a discovery request for three years of financial documents is necessarily overbroad. See Ruskin, 2011 U.S. Dist. LEXIS 94681, 2011 WL 3715067, at *4 (finding that discovery request for three years of financial information not overbroad or unduly burdensome); Soliday, 2010 U.S. Dist. LEXIS 122517, 2010 WL 4537903, at *3 (finding a three-year period for financial documents to be reasonable and "well within the sound discretion of the court"). The Court, however, is concerned about the years for which Plaintiff seeks financial documents - 2010, 2011, and 2012 - given that "only current financial documents are relevant to a claim for punitive damages." Lane v. Capital Acquisitions, 242 F.R.D. 667, 669 (S.D. Fla. 2005) (quoting Fieldturf Int'l v. Triexe Management Group, Inc., No. 03 C 3512, 2004 U.S. Dist. LEXIS 6676, 2004 WL 866494, at * 3 (N.D. Ill. Apr. 16, 2004)); Hite, 2013 U.S. Dist. LEXIS 179703, 2013 WL 6799334, at *5; Soliday, 2010 U.S. Dist. LEXIS 122517, 2010 WL 4537903, at *3 (same); Audiotext Commc'ns Network, Inc. v. U.S. Telecom, Inc., No. 94-2395-GTV, 1995 U.S. Dist. LEXIS 15416, 1995 WL 625962, at *4 (D. Kan. Oct. 5, 1995) (finding only current information of party's net worth or financial condition relevant to issue of punitive damages). Plaintiff has proffered no explanation for seeking financial documents nearly four to six years old (by the time of trial). The Court, therefore, will require Defendant to produce only financial documents for the most recent three years. Accordingly, on or before October 23, 2015, Defendant shall produce all audited financial documents for 2013, 2014, and, if available, 2015 [*18] (to the present only).

9. Request No. 20 seeks "[a]ll documents Borden relied on when it suspended Mr. Cervenec in January 2010." In its motion, Plaintiff does not identify any deficiency in Defendant's response to this Request other than he could not ascertain whether Defendant had withheld any documents on the basis of its objections because of its "subject to and without" language. In its Response to the instant Motion, Defendant states that it "has identified and produced every document directly relied on to determine whether or not to suspend Plaintiff's employment. . . ." Response at 16 (DE 27). Plaintiff replies that the Request asks for all documents Defendant relied on, "not only those that Defendant's counsel has unilaterally determined were 'directly relied upon.'" Reply at 12 (DE 28). The Court finds that Defendant's response is sufficient and will not require it to produce any additional documents responsive to Request No. 20.

10. Request No. 21 seeks "[a]ll documents listed as "documents, date compilations, and tangible things presently in the possession custody, or control of Defendant and that Defendant presently believes they may use to support their claims or defenses [*19] in this action" in Defendant's Initial Disclosures served on May 14, 2015." In its Response, Defendant indicates that it has produced all responsive documents with the exception of electronic data (which it was having trouble obtaining from its server in Mexico). In its Sur-Reply, Defendant represents (in relation to another Request) that it has already produced all ESI to Plaintiff. Accordingly, the Court finds the issue with respect to Request No. 21 is moot.

INTERROGATORIES

1. Interrogatory No. 2 asks Defendant to "identify all other individuals who were terminated as a part of the reduction-in-force that you claim resulted in Mr. Cervenec's termination." For each individual identified, the Interrogatory additionally asks Defendant to "provide their full name, address, telephone number, job title, term of service, location of employment, the name of their supervisor(s), and all of the reasons why they were selected to be a part of the reduction-in-force." Defendant asserted various objections and then responded "Notwithstanding the foregoing objection, Defendant refers Plaintiff to its responsive document bearing Bates No. 508-510, reflecting the reorganization terminations during [*20] the timeframe relevant to this dispute."[1] According to Plaintiff, "Borden's purported 'restructuring' that resulted in the elimination of [his] position (but not the termination of others in the route supervisor position who were not disabled) is relevant to the claims and defenses in this litigation" and "[w]hether Borden's 'restructuring' was simply a convenient excuse for Human Resources' decision to terminate [him] because of his disability . . . is relevant. . ." Motion at 4-5 (DE 26). Plaintiff additionally argues that whether Defendant terminated other employees for discriminatory reasons is relevant to his punitive damages claim. Defendant counters that the information sought is not relevant for several reasons: "(i) Plaintiff's position was eliminated not because he was a poor performer relative to others retained, but because he was medically and legally unqualified to drive a commercial vehicle; (ii) Plaintiff was not terminated as a result of the reduction-in-force, as he remained on the payroll for an additional four (4) months; and (iii) only one other person in Plaintiff's job classification had his job eliminated in the reduction-in-force." With respect to Plaintiff's [*21] argument that whether other employees were terminated for discriminatory reasons, Defendant correctly notes that this is not a "pattern and practice" case. According to Defendant, it terminated nearly 70 employees in 2012, and it terminated nearly 200 employees during the larger two-year reorganization, which employees were identified on the document produced to Plaintiff. Defendant states that in addition to identifying the former employees by name, for each employee the list identifies the job title, location of employment, the date of termination, reason for the termination, and the specific organization level for which each was designated to work. Although the list does not include personal contact information, Defendant states that it does not maintain such information for its former employees and that it would be unduly burdensome to locate the information.

Plaintiff replies that the following language of Defendant's termination letter creates fact issues as to the reasons for his termination and makes the reduction-in-force relevant:

> At the same time, we have been implementing a restructuring of our workforce, effecting a leaner staffing model and in some cases eliminating layers [*22] of supervision deemed unnecessary. Some restructuring has also been necessitated by the circumstances of individual accounts. . . . [I]n May your specific position (**as were others**) was eliminated.

Reply at 6 (DE 28) (emphasis in original). In its Sur-Reply, Defendant emphasizes that whether or not there had been a reduction-in-force, Plaintiff would still have been terminated because he was unable then and now to drive a commercial vehicle because of his use of anti-seizure medication, as expressly required by his job description.

The Court concludes that if the information sought were at all relevant, it would be so only with with respect to other individuals who held the same (or similar) position to Defendant and who were also terminated during the restructuring of the Defendant's workforce during the relevant time period. Accordingly, on or before October 23, 2015, Defendant shall fully and completely answer Interrogatory No. 2, limiting its response to Route Supervisors who were terminated during the restructuring during the relevant time period and providing the last known address and contact information for each such former employee.

2. Interrogatory Nos. 6-13 seek information [*23] regarding Defendant's affirmative defenses; they also seek the name of the individuals with the most knowledge of facts supporting each affirmative defense. Although Defendant provided information responsive to these Interrogatories, it failed to provide the individual's names. According to Plaintiff, however, Defendant's counsel agreed to amend its answers, but as of the time of the filing of the instant motion, Defendant had not yet done so. Although Plaintiff states that he has no reason to believe that Defendant's counsel will not honor the agreement, he raises the issue "in an abundance of caution." Neither party has addressed the issue further.

[1] Plaintiff has attached this document (DE 26-6) to his Motion.

Page 7 of 7


Accordingly, if Defendant has not yet amended its answers to Interrogatory Nos. 6-13, it shall do so by October 23, 2015.

As a final matter, the Court notes that in its Sur-Reply Defendant requests that it be awarded the attorney's fees and costs it incurred in preparing its Response and Sur-Reply in opposition to Plaintiff's Motion to Compel. Defendant cites no authority supporting its request. *Federal Rule of Civil Procedure 37*, however, provides that where, as here, a court grants in part and denies in part a discovery motion, the court "may apportion the reasonable [*24] expenses for the motion." Here, however, the Court finds that it is appropriate for the parties to bear their own respective attorney's fees and costs incurred in connection with the instant Motion to Compel. Accordingly, Defendant's Motion for Attorney's Fees and Costs (DE 31) is DENIED.

DONE AND ORDERED in Fort Lauderdale, Florida, this 16th day of October 2015.

/s/ Barry S. Seltzer

BARRY S. SELTZER

United States Magistrate Judge

---

**End of Document**