# *Classic Soft Trim, Inc. v. Albert*

United States District Court for the Middle District of Florida, Orlando Division

September 21, 2020, Decided; September 21, 2020, Filed

Case No: 6:18-cv-1237-Orl-78GJK

**Reporter**
2020 U.S. Dist. LEXIS 218304 *; 2020 LX 75796

CLASSIC SOFT TRIM, INC. and ROADWIRE LLC, Plaintiffs, v. ROSS ALBERT, KATZKIN LEATHER, INC., CLEARLIGHT PARTNERS, LLC, and CLEARLIGHT PARTNERS MANAGEMENT, LLC, Defendants.

**Prior History:** *Classic Soft Trim, Inc. v. Albert, 2018 U.S. Dist. LEXIS 222657 (M.D. Fla., Dec. 26, 2018)*

**Counsel:** [*1] For Roadwire LLC, Plaintiff: Paul Alexander Quimby, LEAD ATTORNEY, Baker & Hostetler LLP, Orlando, FL; Kevin W. Shaughnessy, LEAD ATTORNEY, Baker & Hostetler LLP, Orlando, FL; Douglas L. Mahaffey, LEAD ATTORNEY, PRO HAC VICE, Mahaffey Law Group P.C., Newport Beach, CA; Meagan Leigh Martin, LEAD ATTORNEY, Baker & Hostetler LLP, Orlando, FL.

For Classic Soft Trim Inc., Plaintiff: Kevin W. Shaughnessy, LEAD ATTORNEY, Baker & Hostetler LLP, Orlando, FL; Douglas L. Mahaffey, LEAD ATTORNEY, PRO HAC VICE, Mahaffey Law Group P.C., Newport Beach, CA; Meagan Leigh Martin, LEAD ATTORNEY, Baker & Hostetler LLP, Orlando, FL; Paul Alexander Quimby, LEAD ATTORNEY, Baker & Hostetler LLP, Orlando, FL.

For Dan McAra, Movant: Suzelle M. Smith, LEAD ATTORNEY, PRO HAC VICE, Howarth & Smith, Los Angeles, CA; Don Howarth, LEAD ATTORNEY, PRO HAC VICE, Howarth & Smith, Los Angeles, CA; Padraic J. Glaspy, LEAD ATTORNEY, PRO HAC VICE, Howarth & Smith, Los Angeles, CA.

For Ross Albert, Defendant: Courtney B. Wilson, LEAD ATTORNEY, Littler Mendelson PC, Miami, FL; Lindsay Alter, LEAD ATTORNEY, Littler Mendelson PC, Miami, FL.

For Ron Leslie, Movant: Don Howarth, LEAD ATTORNEY, PRO HAC VICE, Howarth & Smith, Los Angeles, [*2] CA; Padraic J. Glaspy, LEAD ATTORNEY, PRO HAC VICE, Howarth & Smith, Los Angeles, CA; Suzelle M. Smith, LEAD ATTORNEY, PRO HAC VICE, Howarth & Smith, Los Angeles, CA.

For David Sheffler, Movant: Padraic J. Glaspy, LEAD ATTORNEY, PRO HAC VICE, Howarth & Smith, Los Angeles, CA.

For David Sheffler, Movant: Suzelle M. Smith, LEAD ATTORNEY, PRO HAC VICE, Howarth & Smith, Los Angeles, CA.

For Katzkin Leather Inc., Defendant: Padraic J. Glaspy, LEAD ATTORNEY, PRO HAC VICE, Howarth & Smith, Los Angeles, CA; Suzelle M. Smith, LEAD ATTORNEY, PRO HAC VICE, Howarth & Smith, Los Angeles, CA; Tomas S. Glaspy, LEAD ATTORNEY, PRO HAC VICE, Howarth & Smith, Los Angeles, CA; Lindsay Alter, LEAD ATTORNEY, Littler Mendelson PC, Miami, FL; Courtney B. Wilson, LEAD ATTORNEY, Littler Mendelson PC, Miami, FL; Don Howarth, LEAD ATTORNEY, PRO HAC VICE, Howarth & Smith, Los Angeles, CA.

For David Sheffler, Movant: Don Howarth, LEAD ATTORNEY, PRO HAC VICE, Howarth & Smith, Los Angeles, CA.

**Judges:** GREGORY J. KELLY, UNITED STATES MAGISTRATE JUDGE.

**Opinion by:** GREGORY J. KELLY

## Opinion

### ORDER

This cause came on for consideration without oral argument on the following motion:

> **MOTION: DEFENDANT, ROSS ALBERT'S MOTION TO QUASH SUBPOENAS TO NON-PARTIES AT&T** [*3] **AND SPRINT (Doc. No. 342)**
>
> **FILED: August 7, 2020**
>
> **THEREON** it is **ORDERED** that the motion is **GRANTED in part** and **DENIED in part**.

Page 2 of 4


**I. BACKGROUND**.

On April 5, 2019, a Second Amended Complaint was filed that alleged various claims against Defendants Ross Albert, Katzkin Leather, Inc. ("Katzkin Leather"), Clearlight Partners, LLC ("Clearlight"), and Clearlight Partners Management, LLC ("CPM"). Doc. No. 104. The Second Amended Complaint alleges a broad conspiracy to take over the Florida leather restyling market that began in July 2015 when Katzkin Leather and Clearlight solicited Albert to assist them while he was employed by Plaintiff Classic Soft Trim ("CST"). *Id.* The Second Amended Complaint alleges causes of action against Albert for breach of fiduciary duty/breach of loyalty and violation of the Computer Fraud & Abuse Act based on actions taken both before and after he terminated his employment with CST on March 18, 2016. *See id.* at 20, 33, 69. Upon terminating his employment with CST, Albert became employed by Katzkin Leather. *Id.* The Second Amended Complaint alleges causes of action against Katzkin Leather, Clearlight, and CPM for violation of the *Sherman Act*, violation of *Ohio's* and *Florida's Deceptive [*4] and Unfair Trade Practices Act*, tortious interference, and violation of the *Computer Fraud & Abuse Act* among other things. *Id.* On August 13, 2020, the Court dismissed Clearlight and CPM as Defendants, and dismissed the Sherman Act and deceptive and unfair trade practices claims against Katzkin Leather. Doc. No. 347. Plaintiffs' tort claims against Katzkin Leather remain.

On August 7, 2020, Albert filed a Motion to Quash or Modify Non-Party Subpoenas issued to AT&T and Sprint (the "Motion"). Doc. No. 342. Albert argues that the subpoenas were issued without complying with the notice requirement of *Federal Rule of Civil Procedure 45*, that the disclosure of content is prohibited by the *Stored Communications Act ("SCA")*, that the requested information includes private, confidential and privileged information, and that the subpoenas are overly broad.[1] *Id.*

On August 21, 2020, Plaintiffs filed a response in opposition to the Motion. Doc. No. 353. Plaintiffs argue that Albert waived his objections by not filing timely objections, but provide no additional detail to support this argument.[2] *Id.* The Motion was filed before compliance under the subpoenas was required. *See* Doc. No. 342, 342-1. Plaintiffs argue that Albert has [*5] been compelled to provide the content of text messages to them, so that he can no longer oppose the subpoenas, and that the SCA does not protect third party data. *Id.*

On August 25, 2020, Albert filed a "Notice of Compromise" indicating that he had agreed to obtain and deliver the responsive phone records as required by this Court's order granting Plaintiffs' earlier Motion to Compel thereby mooting the issues raised in the Motion and asking that the carriers deliver the subpoenaed records directly to Albert.[3] Doc. No. 357; *see* Doc. No. 350. On August 26, 2020, Plaintiffs filed a response to the Notice of Compromise contesting that any compromise was reached. Doc. No. 357.

The subpoena to Sprint seeks "[A]ll DOCUMENTS . . . from January 1, 2016 to December 31, 2016, including but not limited to text logs, data logs, and cell site information" related to telephone number 407-466-8294 concerning: 1) incoming or outgoing calls; 2) incoming or outgoing text messages; and 3) any transactional records. Doc. No. 342 at 2. The subpoena to AT&T seeks "[A]ll DOCUMENTS . . . from January 1, 2016 to December 31, 2016, including but not limited to text logs, [*6] data logs, and cell site information" related to telephone numbers 407-466-8294 and 407-748-0132 concerning: 1) incoming or outgoing calls; 2) incoming or outgoing text messages; and 3) any transactional records. *Id.* at 3.

**II. APPLICABLE LAW**.

Under *Federal Rule of Civil Procedure 45*, parties may command non-parties to produce "documents,

[1] Albert's arguments regarding email service and the proper scope of discovery related to his departure from CST have been addressed previously. *See* Doc. No. 350. The Court's order granting Plaintiffs' Motion to Compel that addressed these issues is incorporated herein by reference. *Id.*

[2] Plaintiffs argue that Albert failed to timely object pursuant to *Rule 45(d)(2)(B)*. Doc. No. 353. However, the Motion was filed pursuant to *Rule 45(d)(3)* by Albert, who was not the person compelled to comply with the subpoena. Doc. No. 342. Albert timely filed his Motion prior to the date for compliance provided in the subpoenas, therefore, the Motion was timely filed as required by *Rule 45(d)(3)*. *See Centennial Bank v. ServisFirst Bank, Inc., No. 8:16-cv-88, 2016 U.S. Dist. LEXIS 103213, at *11 (M.D. Fla. Aug. 5, 2016)* (motion to quash filed before date for compliance is timely).

[3] The August 18th Order granted Plaintiffs' Motion to Compel Albert to produce the same phone records sought in the subpoenas. Doc. No. 350.

Page 3 of 4


electronically stored information, or tangible things in that person's possession, custody, or control for inspection, copying, testing, or sampling." *In re: Subpoena Upon NeJame Law, P.A., No. 6:16-MC-8-ORL-41TBS, 2016 U.S. Dist. LEXIS 53538, 2016 WL 1599831, at *3 (M.D. Fla. Apr. 21, 2016)* (citing *Fed. R. Civ. P. 45(a)(1)(A)(iii)*, *(a)(1)(D)*). "The scope of discovery under a *Rule 45* subpoena is the same as the scope of discovery under *Rule 26*." *Woods v. On Baldwin Pond, LLC, No. 6:13-CV-726-ORL-19DAB, 2014 U.S. Dist. LEXIS 194001, 2014 WL 12625078, at *1 (M.D. Fla. Apr. 2, 2014)*. *Rule 26(b)(1)* governs the scope of permissible discovery, stating that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." *Fed. R. Civ. P. 26 (b)(1)*. Moreover, *Rule 26(b)(2)(C)* requires the Court to limit the frequency or extent of discovery if:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity [*7] to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by *Rule 26(b)(1)*.

*Fed. R. Civ. P. 26 (b)(2)(C)*.

"Numerous courts . . . have held that parties have a personal interest in their financial and telephone records sufficient to confer standing to challenge a subpoena directed to a third-party." *Mancuso v. Fla. Metro. Univ., Inc., No. 09-61984-CIV, 2011 U.S. Dist. LEXIS 161770, 2011 WL 310726, at *1 (S.D. Fla. Jan. 28, 2011)*; *Keim v. ADF Midatlantic, LLC, No. 12-80577-CIV, 2016 U.S. Dist. LEXIS 23739, 2016 WL 720967, at *2 (S.D. Fla. Feb. 22, 2016)* (finding that party had standing to challenge subpoena to his telephone carrier). Pursuant to *Rule 45*, a Court may quash a subpoena if it (1) fails to allow a reasonable time to comply; (2) requires a person to comply beyond the geographical limits specified in *Rule 45(c)*; (3) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (4) subjects a person to undue burden. *Fed. R. Civ. P. 45(d)(3)(A)(i)-(iv)*. The party seeking to quash a subpoena bears the burden of establishing at least one of the requirements articulated under *Rule 45(d)(3)*. *Malibu Media, LLC v. Doe, No. 8:14-cv-2351, 2015 U.S. Dist. LEXIS 16641, at *5 (M.D. Fla. Jan. 22, 2015)*.

**III. ANALYSIS**.

Albert has standing to challenge the subpoenas issued to his wireless carriers. *Keim, 2016 U.S. Dist. LEXIS 23739, 2016 WL 720967, at *2*. The information sought from the wireless carriers is relevant and proportional to the case pending against Katzkin Leather [*8] and Albert which alleges that Katzkin Leather, through its employees, worked in concert with Albert to take over the Orlando leather restyling market from CST using a local competitor Classic Designs Automotive. Doc. No. 104. However, the SCA precludes disclosure of any content from text messages or other electronic communications related to the wireless accounts in this instance.

The SCA generally prohibits "'providers' of communication services from divulging private communications to certain entities and/or individuals." *Quon v. Arch Wireless Operating Co., Inc., 529 F.3d 892, 900 (9th Cir. 2008)*. Wireless carriers such as AT&T and Sprint must comply with the rules applicable to electronic communication services under the SCA and "shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service," *18 U.S.C. § 2702(a)(1)*, unless one of the specifically enumerated exceptions in *18 U.S.C. § 2702(b)* apply. *Mintz v. Mark Bartelstein & Assocs., 885 F. Supp. 2d 987, 991 (C.D. Cal. 2012)*. The relevant exceptions include: 1) disclosure of the contents of a communication "to an addressee or intended recipient of such communication or an agent of such addressee or intended recipient"; and 2) disclosure of the contents of a communication "with the lawful consent of the originator or an addressee or intended recipient of such [*9] communication." *Id. § 2702(b)(1)* and *(2)*. "The SCA does not contain an exception for civil discovery subpoenas." *Mintz, 885 F. Supp. 2d at 991*; *Hawn v. Vitas Hospice Servs. LLC, No. 1:19-cv-220, 2020 U.S. Dist. LEXIS 160166, at *10 (S.D. Ohio Sept. 2, 2020)*. While this means that a provider may not disclose the content of electronic communications pursuant to a civil subpoena unless one of the exceptions enumerated in *§ 2702* applies, a provider may disclose subscriber information and other metadata from an account.[4] *Mintz, 885 F. Supp. 2d at 994*.

---

[4] Metadata associated with electronic communications are not considered to be content protected by the SCA. *Chevron Corp. v. Donziger, No. 12-mc-80237, 2013 U.S. Dist. LEXIS 119622, 2013 WL 4536808, at *6 (N.D. Cal. Aug. 22, 2013)*;

Page 4 of 4


Further, the SCA does not prevent Plaintiffs from obtaining content by serving a request for production of documents pursuant to *Federal Rule of Civil Procedure 34* on Albert. *Id.* (citing *Juror Number One v. Superior Court, 206 Cal. App. 4th 854, 865, 142 Cal. Rptr. 3d 151 (2012)* (holding that although the SCA prohibited the court from ordering Facebook to produce copies of a juror's wall postings, the court could order the juror to request the wall postings from Facebook directly)).

Here, documents reflecting the content of Albert's text messages are within his control because he has "the legal right to obtain [these] documents on demand" from AT&T and Sprint. *See id.* And, in fact, this Court has issued an order compelling Albert to produce that content. Doc. No. 350. As such, the Court will modify the subpoenas to reflect that no content within [*10] any of the electronic communications may be disclosed.[5] *See Haw. Reg'l Council of Carpenters v. Yoshimura, No. 16-00198, 2017 U.S. Dist. LEXIS 22733, at *9-10 (D. Haw. Feb. 17, 2017)* (modifying subpoenas to exclude the content of any text messages).

**IV. CONCLUSION**.

Based on the forgoing, it is **ORDERED** the Motion (Doc. No. 342) is **GRANTED in part** and **DENIED in part** as follows:

1. The subpoenas to AT&T and Sprint are modified to exclude the content of any electronic communications; and

2. In all other respects, the Motion is **DENIED**.

**DONE** and **ORDERED** in Orlando, Florida, on September 21, 2020.

/s/ Gregory J. Kelly

GREGORY J. KELLY

UNITED STATES MAGISTRATE JUDGE

---

*see 18 U.S.C. § 2702(c)(6)* (an electronic communication service provider "may divulge a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications . . .) . . . to any person other than a government entity."). This allowance includes a subscriber's name, address, records of session times and durations, telephone or instrument number, or other subscriber number or identity. *Sys. Prods. & Solutions v. Scramlin, No. 13-cv-14947, 2014 U.S. Dist. LEXIS 109389, at *24-25 (E.D. Mich. Aug. 8, 2014)*.

[5] This modification eliminates any concerns Albert may have regarding marital communications as there will be no disclosure of any information "privately disclosed between husband and wife in the confidence of the marital relationship" as the privilege "generally applies only to utterances, not acts." *Michael K. Sheils Trust v. Kuhn, No. 6:08-cv-1704, 2010 U.S. Dist. LEXIS 150053, at *5-6 (M.D. Fla. Feb. 26, 2010)* (quoting *U.S. v. Abram, 171 F. App'x 304, 309-10 (11th Cir. 2006)* (citing *Trammel v. United States, 445 U.S. 40, 50-51, 100 S. Ct. 906, 63 L. Ed. 2d 186 (1980))*. Instead, Albert may raise any martial communication privilege concerns in his own disclosure of his text messages and other content in his phone records. *See* Doc. No. 350.

---

End of Document