# Clena Invs., Inc. v. XL Specialty Ins. Co.

United States District Court for the Southern District of Florida

September 1, 2011, Decided; September 2, 2011, Entered on Docket

CASE NO. 0:10-CV-62028-COOKE/TURNOFF

**Reporter**
2011 U.S. Dist. LEXIS 163346 *; 2011 LX 67456

CLENA INVESTMENTS, INC., d/b/a SHOPPES OF OAKLAND, Plaintiff, vs. XL SPECIALTY INSURANCE COMPANY, Defendant.

**Prior History:** *Clena Invs., Inc. v. XL Specialty Ins. Co., 2011 U.S. Dist. LEXIS 44163 (S.D. Fla., Apr. 18, 2011)*

**Counsel:** [*1] For Clena Investments, Inc., doing business as Shoppes of Oakland, Plaintiff: Demian Rafael Goldstraj, Goldstraj & Associates LLC, Fort Lauderdale, FL; Howard J. Levine, Miami Beach, FL; Michael Vincent Laurato, Austin & Laurato, P.A., Tampa, FL.

For XL Specialty Insurance Company, Defendant: Jason Arthur Herman, Patricia Anne McLean, Phelps Dunbar, LLP, Tampa, FL; Matthew L. Litsky, Phelps Dunbar, Tampa, FL.

**Judges:** WILLIAM C. TURNOFF, UNITED STATES MAGISTRATE JUDGE.

**Opinion by:** WILLIAM C. TURNOFF

## Opinion

**ORDER ON MOTION TO COMPEL**

**THIS MATTER** is before the Court on Plaintiff Clena Investments, Inc.'s, Motion to Compel Production of Documents. (ECF No. 20). The Court has reviewed the motion, the response (ECF No. 21), the reply (ECF No. 22), the court file, the applicable law, and is otherwise duly advised in the premises.

### Background

Plaintiff Clena Investments, Inc.'s ("Clena"), filed an action against its property insurer, XL Specialty Insurance Company ("XL"), resulting from property damage caused by Hurricane Wilma on October 24, 2005. According to XL, Clena first notified it of the hurricane damage on February 19, 2010, over four years after the occurrence of the alleged damage. Upon receipt of the claim, XL retained [*2] counsel and sent a letter to Clena, dated March 5, 2010, stating that XL was investigating the wind damage claim but that it may not be covered under the insurance policy.

On March 12, 2010, Clena sent XL a Proof of Loss estimating the damage at $224,779.18. On May 11, 2010, Clena sent a letter to XL threatening to sue if XL did not honor the wind damage claim. XL eventually denied Clena's wind damage claim on October 10, 2010. Clena filed the instant suit on September 10, 2010.

### Motion to Compel

Clena served XL with requests for production to which XL timely responded. XL objected to a number of requests, and produced a privilege log a month later invoking the attorney-client privilege and the work-product doctrine. On the same day, Clena filed the instant Motion to Compel. Thereafter, XL submitted an Amended Privilege Log explaining in greater detail what documents were being withheld and why. Clena asserted that XL's objections to Plaintiff's requests for production No.'s 4, 7, 8, 9, 10, 11, 12, 15, 16 and 17 should be overruled, and that XL should be deemed to have waived its claims of privilege due to the untimely service of its privilege log.

### General Law Governing Discovery

*Federal Rule of Civil Procedure 26(b)(1)* provides [*3] that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense. *Fed. R. Civ. P. 26(b)(1)*. Full discovery is strongly favored whenever possible. *Farnsworth v. Procter & Gamble, Co., 758 F.2d 1545, 1547 (11th Cir. 1985)*. If a party objects to a discovery request, the opposing party may move to compel discovery under

Page 2 of 5


Rule 37(a)(3). The Court will compel discovery subject to three limitations: the matter sought must be relevant, not privileged, and not the work product of an attorney. Royal Bahamian Ass'n v. QBE Ins. Corp., 268 F.R.D. 695, 697 (S.D. Fla. 2010).

**Attorney-Client Privilege and Work Product Doctrine**

Pursuant to Federal Rule of Evidence 501, a federal court sitting in diversity shall apply the forum state's law when dealing with questions of attorney-client privilege. Florida has established that, in the insurance context, attorney-client privilege only attaches when an attorney performs acts for the insurer in his professional capacity. See Bankers Inc. Co. v. Florida Dept. of Ins. and Treasurer, 755 So. 2d 729 (Fla. 1st DCA 2000) (finding that no attorney-client privilege existed where in-house attorney was only a "conduit" for the insurer, absent evidence that document was prepared in anticipation of litigation). The work product doctrine, on the other hand, is governed by Federal Rule of Civil Procedure 26(b)(3), not Florida law. Rule 26(b)(3) provides that an opposing party may not discover documents or tangible things that are prepared by a party's representative [*4] in anticipation of litigation, unless a "party shows that it has a substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3). Materials that are drafted in the normal course of business are not protected by the work product doctrine. Developers Sur. & Indem. Co. v. Harding Vill., Ltd., No. 06-21267-CIV, 2007 U.S. Dist. LEXIS 49994, 2007 WL 2021939, at *5 (S.D. Fla. Jul. 11, 2007).

The application of the work product doctrine proves difficult in the context of insurance claims because insurance companies investigate claims in the ordinary course of business. Milinazzo v. State Farm Ins. Co., 247 F.R.D. 691, 701 (S.D. Fla. 2007). As such, courts employ the analytical framework set forth in Milinazzo v. State Farm Ins. Co. when considering whether documents created prior to the initiation of litigation are protected. Id. The court applies the rebuttable presumptions that "documents or things prepared before the final decision on an insured's claim are not work product, and that documents produced after the claim's denial are work product. Id. (citing Harper v. Auto-Owners Ins. Co., 138 F.R.D. 655, 662 (S.D. Ind.1991)). The presumption may be overcome "by specific evidentiary proof of objective facts, that a reasonable anticipation of litigation existed when the document was produced." Harper, 138 F.R.D. at 663.

In Milinazzo, the defendant insurance [*5] company attempted to overcome the presumption by reference to a letter from the insured's counsel asking for liability coverage information and threatening suit if the letter was not replied to within thirty days. Milinazzo, 247 F.R.D. at 701. The court rejected the insurance company's argument because the insurance claim was not denied until eight months after the letter was sent and because the defendant did not provide any affidavits regarding what documents it believed were covered as work product. Id.

Analysis

The court must determine at what point XL shifted from merely analyzing a standard insurance claim to preparing documents in reasonable anticipation of litigation. Clena argued that, under the Milinazzo presumption, all documents created prior to the denial of the insurance claim were prepared in the regular scope of business, and are, therefore, discoverable. XL argued that it reasonably anticipated litigation from the moment it received the four-year-old insurance claim as evidenced by the fact that XL retained counsel before replying to Clena's alleged loss.

Complete adherence to the Milinazzo presumption in this case would not be practical. Plaintiff filed suit against XL on September 10, 2010, but [*6] the insurance claim was not formally denied until October 10, 2010. It would be incongruous to conclude that XL did not anticipate litigation after litigation had already commenced. Therefore, the Court must determine when XL could have reasonably anticipated litigation.

Concluding that XL anticipated litigation from the initial receipt of the claim merely because it retained counsel would be likewise impractical. While involvement of an attorney is probative, it is not necessarily dispositive. See Fine v. Bellefonte Underwriters Ins. Co., 91 F.R.D 420, 422 (D.C.N.Y. 1981). Here, although XL retained an attorney, it processed the claim like it would any other and had not yet decided to deny the claim. Litigation could not have been reasonably anticipated at that point.

Next, XL pointed to the May 11, 2010 letter, wherein counsel for the insured threatened to file suit if XL failed to provide the coverage. The May l 1, 2010 letter, unlike the letter in Milinazzo, is sufficient for XL to have reasonably anticipated litigation. The letter in Milinazzo

Page 3 of 5


requested information regarding liability coverage and threatened suit if the letter was ignored. *Milinazzo, 247 F.R.D at 701*. Here, the letter went a step further and threatened suit if the claim was denied. Furthermore, viewing the May 11, [*7] 2010 letter in the context that Clena had filed a claim with an estimated value of $224,779.18, over four years after its occurrence, it is reasonable that XL anticipated litigation upon its receipt.

Therefore, the undersigned finds that it was reasonable for XL to have anticipated litigation after receiving the May 11, 2010 letter, rendering work product protection to any documents drafted after that date. The specific requests for production at issue shall be discussed applying this finding.

**Request for Production No. 4**

Request No. 4 asked for "All internal memoranda prepared in connection to the subject claim by the defendant." XL withheld emails among employees at Boulder Claims regarding obtaining a copy of Clena's insurance policy (Bates No.'s 0198 - 0201). XL argued that they were not discoverable because they were not relevant to the terms of the actual policy. Knowing who had access to the insurance policy or how the policy was stored in the computer files would not help Clena prove that XL denied the coverage in bad faith or that XL breached the contract. Additionally, the emails would not lead to the discovery of admissible evidence because XL had already revealed who was involved [*8] in this email correspondence, and Clena was free to depose any of the individuals it felt would have had information regarding the substance of the policy. See *Rossbach v. Rundle, 128 F. Supp. 2d 1348, 1353-54 (S.D. Fla. 2000)* (quoting *Oppenheimer Fund v. Sanders, 437 U.S. 340, 352, 98 S.Ct. 2380, 57 L. Ed. 2d 253(1978)* ("'Discovery of matter 'not reasonably calculated to lead to discovery of admissible evidence' is not within the scope of *Rule 26(b)(1)*'")).

XL also withheld internal emails dated September 8, 2010 (Bates No.'s 0212-0214), discussing the receipt of the Civil Remedy Notice of Insurer Violation ("CRN"), filed by Clena. These emails were drafted after receipt of the May 11, 2010 letter. As such, they are covered by the work product doctrine because XL anticipated litigation at the time it drafted same. Further supporting this conclusion is the fact that, pursuant to *Florida Statute § 624.155*, a plaintiff must obtain a CRN before filing suit against an insurance company.

XL also withheld other internal emails regarding the pending lawsuit all of which were drafted after Clena had filed suit against XL on September 10, 2010 (Bates No.'s 0202-0203, 0204, 0207-0208, 0209-0210, 02011). The earliest of these internal emails was drafted on September 14, 2010. Internal correspondence discussing a pending lawsuit is not discoverable by the opposing party under *Fed. R. Civ. P. 26(b)(3)*.

XL [*9] withheld certain internal memoranda as well (Bates No.'s 0215-0250). The Amended Privilege Log's description of these documents read "[i]nternal notes containing attorney-client communications regarding the Plaintiff's Hurricane Wilma claim and the Civil Remedy Notice of Insurer Violation and lawsuit filed by Plaintiff against XL." (ECF No. 21-4). The notes pertaining to "Plaintiff's Hurricane Wilma" claim are relevant to XL's determination of the underlying insurance claim, and as such, are discoverable under Florida law. *Aircraft Holdings, 929 So. 2d at 581*. The notes pertaining to the CRN and to the pending law suit are not relevant to the underlying insurance claim, but rather to the lawsuit resulting from the insurance claim, and are, therefore, protected by the attorney client privilege. Accordingly, any notes concerning XL's denial of the underlying insurance claim that were drafted before May 11, 2010, must be produced.

**Request for Production No. 7**

Clena requested "[a]ll policy handbooks and policy manuals of Defendant used to evaluate the Plaintiff's claims." XL admitted that its objection to this request was ill-founded because XL did not have any policy handbooks or manuals used in evaluation of Clena's complaint. [*10] Therefore, the Motion is Deemed Moot.

**Request for Production No. 8**

Clena requested "[a]ll reports prepared by Defendant in connection with subject claim." The only document XL withheld was an internal litigation summary report created by Sheri Mitchell of Boulder Claims (Bates No. 0205-0206). The Privilege Log did not contain the date when this report was drafted. If the report was drafted after May 11, 2010, then it would be protected by the work product doctrine. If, however, the report was drafted prior to that date, it must be disclosed to Clena. Therefore, XL shall file a second amended privilege log indicating the date the internal litigation summary report was drafted. See 1550 Brickell Ass'ns v. QBE Ins. Co.,

Page 4 of 5


No. 07-22283-CIV, 2008 WL 4279543, at *1 (S.D. Fla. Sept. 15, 2008) (allowing defendant a second opportunity to add detail to its privilege log).

**Request for Production No. 9**

Clena requested "[a]ll reports prepared by non-Defendant contractors retained by Defendant to perform work in connection to subject claim." XL withheld six reports prepared by an independent adjuster, Robert Lunogo. As discussed *supra*, XL began drafting documents in reasonable anticipation of litigation after receipt of the May 11,2010 letter. Two of the [*11] adjuster's reports were drafted prior to that date: Bates No, 0305-0307, dated March 12, 2010, and Bates No. 0308-0309, dated April 11, 2010. These reports must be disclosed to Clena because they were drafted in the regular scope of business, before XL reasonably anticipated litigation. The remaining four adjusters' reports were drafted after XL already anticipated litigation and are protected from disclosure by the work product doctrine.

XL also withheld a report sent from XL's counsel's law firm, Phelps Dunbar, to Boulder Claims. XL's Privilege Log entry for this report is devoid of detail. Therefore, XL shall amend the Amended Privilege Log to support its assertion of attorney client privilege with sufficient detail for documents bearing Bates No. 00316-0319. See 1550 Brickell Ass'ns, 2008 WL 4279543, at *1.

**Request for Production No.'s 10, 11 12, 15, 16, 17**

With respect to the remaining requests, XL claimed that it did not withhold any additional documents in connection therewith.

**Privilege Log**

Whenever documents are withheld from an opposing party, either because of the work product doctrine or the attorney-client privilege, the withholding party must provide a privilege log. *Federal Rule of Civil Procedure 26(b)(5)* provides that the privilege log "must describe the [*12] nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected will enable other parties to assess the claim." *Fed. R. Civ. P. 26(b)(5)*. While the Court of Appeals for the Eleventh Circuit has not ruled on how long a delay in the production of the privilege log results in a waiver of the privilege, District Courts in the Eleventh Circuit have applied the holistic analysis set forth by the Ninth Circuit in *Burlington N. and Sante Fe Ry. Co. v. U.S. Dist. Court for the Dist. of Mont., 408 F.3d 1142, 1149 (9th Cir. 2005)*, in determining same. *Universal City Dev. Partners, Ltd. v. Ride & Show Eng'g, Inc., 230 F.R.D. 688, 695 (M.D. Fla. 2005)*. The factors considered by the Burlington court in determining whether failure to timely submit a privilege log results in a waiver of the privilege include:

> The degree to which the objection or assertion of privilege enables the litigant seeking discovery and the court to evaluate whether each of the withheld documents is privileged (where providing particulars typically contained in a privilege log is presumptively sufficient and boilerplate objections are presumptively insufficient); the timeliness of the objection and accompanying information about the withheld documents (where service within 30 days, as a default guideline, is sufficient); the magnitude of the document [*13] production; and other particular circumstances of the litigation that make responding to discovery unusually easy (the fact that many of the same documents were the subject of discovery in an earlier action) or unusually hard.

*Burlington, 408 F.3d at 1149*.

Applying the Burlington analysis, an Eleventh Circuit District Court held that an eight-month delay in submitting a privilege log did not result in a waiver of the privilege. *Knights Armament Co. v. Optical Sys. Tech., Inc., No. 07-cv-1323-Orl, 2009 U.S. Dist. LEXIS 14271, 2009 WL 331608, at *7 (M.D. Fla. Feb. 10, 2009)*. While the Knights court noted that the lead attorney usually practiced in the Fifth Circuit and was not fully aware of the local rules, the court remarked that local counsel knew, or should have known, that a privilege log was due within thirty days of the opposing party's request for documents. Id. Notwithstanding the eight-month delay, the court declined to impose the "extreme sanction" of waiver of the privilege. Id.

XL served its original Privilege Log a month after it responded to Clena's requests for production. Shortly thereafter, it served an Amended Privilege Log on May 9, 2011, about six weeks past the deadline to respond to the requests for production.

The first factor of the Burlington test calls for the court to [*14] assess the degree to which the assertion of privilege enables the court to evaluate whether the withheld document is privileged. Id. XL's Amended

Page 5 of 5


Privilege Log contains sufficient detail regarding most of the entries providing the documents' recipients, date, and general context. *Fed. R. Civ. P. 26(b)(5)*. With respect to the Internal Litigation Summary Report prepared by Sheri Mitchel (Bates No. 0205-0206), XL shall file a second amended Privilege Log to provide a date for when the report was initially drafted. See 1550 Brickell Ass'ns, 2008 WL 4279543, at *1. With respect to the October 7, 2010 report from Phelps Dunbar to Boulder Claims (Bates No. 0316-0319), XL shall supply specific content matter regarding the nature of the report being withheld. See Id. XL shall have ten (10) days to provide the Court with the above information. Failure to comply shall be deemed as a waiver of any applicable privilege.

Next, the Burlington test considers the timeliness of the objection and the accompanying information about the withheld documents. *Burlington, 408 F.3d, at 1149*. XL made its objections to the requests in a timely manner and eventually submitted an amended privilege log. The six-week delay seems negligible when compared to the eight-month delay that was deemed insufficient to [*15] constitute a waiver in Knights. See *Knights, 2009 U.S. Dist. LEXIS 14271, 2009 WL 331608 at *7*. The undersigned finds that the harsh sanction of waiver of privilege is not appropriate under the circumstances of this case. See *Tyne v. Time Warner Entm't Co., 212 F.R.D. 596, 600 (M.D. Fla. 2002)* (finding the sanction of disclosure too harsh for not complying with privilege log requirements).

Finally, the Burlington test requires examination of any particular circumstances of the litigation that makes responding to discovery unusually easy or unusually hard. *Burlington, 408 F.3d, at 1149*. The circumstances of the present case do not present any unusual discovery problems. The withheld documents were neither especially difficult to obtain nor remarkably easy to produce. As such, the Court concludes that XL's six-week delay in submitting its privilege log does not result in a waiver of the privileges sought.

Applying the Burlington factors, the Court finds that XL did not waive its privilege claims as a result of the delayed service of the privilege log.

### Conclusion

In light of the foregoing, it is hereby **ORDERED AND ADJUDGED** that Clena's Motion to Compel (ECF No. 20) is **Granted-in-part and Denied-in-part**. XL shall produce the following within ten (10) days from the date of this Order:

All documents previously withheld under the work product doctrine [*16] that were created before May 11, 2010;

All documents pertaining to the final decision of CLENA's insurance claim drafted before May 11, 2010, regardless of whether it contains communication between attorney and client

A second amended Privilege Log explaining with sufficient detail the documents bearing Bates No.'s 0205-0206 and 0316-0319.

**DONE AND ORDERED** in Chambers in Miami, Florida, this 1 day of Sept. 2011.

/s/ William C. Turnoff

**WILLIAM C. TURNOFF**

**UNITED STATES MAGISTRATE JUDGE**

---

End of Document