UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:25-CV-24505-MOORE/ELFENBEIN

IVAN GRANT,
ALEX LAFFITA ORTIZ,
HENRY PINTO SUMOZA,
EYONNY PRADO DURAN,
LUIS RODRIGUEZ CERUTO, and
LUIS SAME GONZALO,

Plaintiffs,

vs.

STRATAIR AVIATION
SERVICES, LLC,

Defendant.
_______________________________/

**PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

Plaintiffs Ivan Grant, Alex Laffita Ortiz, Henry Pinto Sumoza, Eyonny Prado Duran, Luis Rodriguez Ceruto, and Luis Same Gonzalo, through undersigned counsel and pursuant to Federal Rules of Civil Procedure 15(a)(2) and 16(b)(4) and Local Rule 15.1, move for leave to file the Second Amended Complaint attached as Exhibit "A," and state as follows:

## I. INTRODUCTION

This case arises from StratAir Aviation Services, LLC's ("StratAir") January 2024 reduction in force ("RIF") at its Miami warehouse. Plaintiffs allege that StratAir selected older, more senior workers for termination while keeping younger workers to perform the same warehouse, cargo-handling, and security work. [ECF No. 12 at ¶¶ 48-51]. The proposed amendment adds no new party, cause of action, or damages theory. It clarifies that the workers

StratAir retained, used, and relied on to perform Plaintiffs' work—younger workers and, as to Mr. Grant, non-Black workers—included individuals supplied through a staffing agency, SNI Companies Corp. ("SNI"), whom StratAir jointly employed.

Amendment is necessary because StratAir has used the word "employees" in the Amended Complaint to wall off all discovery concerning SNI and its workers. In response to Plaintiffs' requests for production and interrogatories, StratAir objected that the Amended Complaint "does not mention independent contractors, temporary workers, or staffing agency workers," and that whether such workers were engaged therefore "ha[s] no bearing on Plaintiff's claims." [ECF No. 34-2 at 5; ECF No. 34-5 at 6-7, 12-13, 27-28]. StratAir asserted the same objection to Plaintiffs' subpoena to SNI. [ECF No. 34-6 at 5-7]. At StratAir's urging, the Court sustained those objections without prejudice, denying both the motion to compel SNI's compliance and Plaintiffs' request for StratAir's SNI-related documents, and expressly invited Plaintiffs to "reraise the issue" if they "amend the Complaint to include a theory of liability implicating SNI." [ECF No. 40 at 4-6]. Plaintiffs promptly accepted that invitation.

The workers at issue are not peripheral. SNI represented that responding to Plaintiffs' subpoena—which covered January 1, 2023 through January 1, 2025, the year before and the year after the RIF—would require it to review files for "approximately **1,000 individuals**." [ECF No. 34-6 at 10 (emphasis added)]. StratAir's own witness/manager testified that SNI workers did the same work as direct employees, under the same standards and StratAir supervision, and were routinely converted into direct StratAir hires. Yet StratAir has repeatedly defended the RIF with a statistical analysis of "employees" that excludes every one of those workers.

StratAir has kept that workforce hidden from the start. During the EEOC's investigation, StratAir touted "objective statistics" drawn from a "decisional unit" it defined for itself, refused the EEOC's repeated requests for demographic data on its Miami workforce, accused the agency of "bias" and a "fishing expedition" for asking, and never once disclosed that hundreds of SNI workers were performing the same work alongside the employees it laid off. The EEOC then closed the charges in reliance on those statistics. StratAir now seeks to continue that concealment by invoking the pleadings. Plaintiffs are entitled to plead, and to test in discovery, the full workforce that performed their jobs.

## II. PROCEDURAL AND FACTUAL BACKGROUND

### A. StratAir's Pleading-Based Objections and the Court's September 7, 2026 Order.

The Amended Complaint alleges that StratAir "fired Plaintiffs and other older employees with more seniority, and retained younger employees with less seniority, to perform the same or similar jobs." [ECF No. 12 ¶¶ 51, 86]. The Court's Scheduling Order required motions to amend the pleadings within forty-five days of its entry or of the first responsive pleading. [ECF No. 17]. That deadline expired in early 2026. [*Id.*; *see also Cepero Garcia* ECF No. 16 (February 27, 2026 deadline in consolidated lead case)].

Plaintiffs served requests for production and interrogatories on March 18, 2026, seeking, among other things, documents identifying the temporary and staffing-agency workers who performed warehouse, cargo, and security work at the Miami location and their start dates, performance, discipline, and attendance. [ECF No. 34-2 at 5; ECF No. 34-5 at 6-7, 27-28]. In StratAir's responses served May 1, 2026 and amended July 21, 2026, StratAir objected that the Amended Complaint "does not mention independent contractors, temporary workers, or staffing

agency workers," so whether such workers were engaged "has no bearing on Plaintiffs' claims." [*Id.* at 6-7, 12-13, 27-28]. When Plaintiffs subpoenaed SNI on June 10, 2026, StratAir objected on June 12, 2026 that its "use of a third-party staffing agency to provide temporary workers" was "not raised anywhere in Plaintiffs' Complaints," and that the pleadings do not allege that staffing-agency workers replaced Plaintiffs, performed the same or similar jobs, or were comparators. [ECF No. 34-6 at 5-7]. SNI separately objected on July 9, 2026. [*Id.* at 10].

Plaintiffs disputed StratAir's position from the outset. In their May 7, 2026 conferral letter, Plaintiffs explained that staffing-agency workers who performed Plaintiffs' work at StratAir's facility, under StratAir's supervision and work rules, should be treated as StratAir's employees under the joint-employer doctrine and are therefore part of "the relevant workforce for comparator and pretext analysis"; that StratAir "cannot defeat relevance by asserting that these individuals were 'not employees' as a categorical matter"; and that "[t]he Federal Rules do not limit discoverable information to categories expressly mentioned in a complaint." [ECF No. 34-7 at 4-5] (citing, *e.g.*, *Peppers v. Cobb Cnty.*, 835 F.3d 1289 (11th Cir. 2016)). Plaintiffs reiterated in their July 14, 2026 conferral letter that they "dispute" StratAir's position that non-employee labor is irrelevant because the Amended Complaint does not focus on non-employee workers. [*Id.* at 34]. Because the Amended Complaint already alleges that StratAir retained younger "employees" to perform Plaintiffs' jobs, [ECF No. 12 ¶¶ 51, 86], and because SNI workers are StratAir's employees under a joint-employer analysis, Plaintiffs understood the operative pleading to encompass them and did not believe amendment was necessary.

Obtaining a ruling on that dispute then took several months for reasons that had nothing to do with any lack of diligence by Plaintiffs. When the dispute arose, this action was consolidated

with *Cepero Garcia v. StratAir Aviation Services, LLC*, No. 1:25-cv-24471-KMW (S.D. Fla.), for all discovery and pretrial purposes, and all discovery filings had to be made in that case. [ECF No. 21]. After approximately five hours of conferral on May 14 and 18, 2026—and StratAir's failure to honor the commitments it made during those conferences—Plaintiffs moved on June 16, 2026 for leave to file a unilateral motion for discovery hearing in the *Cepero Garcia* case. [*Cepero Garcia* ECF No. 34]. Magistrate Judge Lett granted leave and, the same day, ordered StratAir to show cause why sanctions should not be imposed for its failure to comply with the Court's discovery procedures. [*Cepero Garcia* ECF Nos. 35, 36]. On June 23, 2026, Plaintiffs filed their Motion for Discovery Hearing, which squarely presented StratAir's refusal to produce "comparator staffing-agency, contractor, and workforce information." [*Cepero Garcia* ECF No. 40 at 2]. The next day, following settlement of the *Cepero Garcia* plaintiff's claims, Judge Williams de-consolidated the cases and denied all pending motions—including Plaintiffs' Motion for Discovery Hearing—as moot. [*Cepero Garcia* ECF No. 41]. Plaintiffs were required to start over in this action. They moved for a revised scheduling order on July 10, 2026, [ECF No. 24]; served a renewed conferral letter on July 14, 2026, [ECF No. 34-7 at 31-47]; and, after the Court reopened this case and referred outstanding discovery disputes to Magistrate Judge Elfenbein on July 27, 2026, [ECF No. 28], obtained a hearing date and noticed the SNI dispute for hearing on the soonest possible date—August 24, 2026. [ECF Nos. 33, 34].

At the August 24, 2026 discovery hearing, the Court denied Plaintiffs' motion to compel SNI's compliance without prejudice, sustained the objections, and stated: "Should Plaintiffs amend the Complaint to include a theory of liability implicating SNI, Plaintiffs may reraise the issue."

[ECF No. 40 at 5-6; *see also id.* at 4 (RFP No. 13 denied without prejudice to renewal upon amendment "implicating SNI")].

Plaintiffs then moved promptly. Plaintiffs first raised with StratAir's counsel, immediately following the August 24, 2026 hearing, whether StratAir would oppose a motion for leave to amend. Plaintiffs followed up by Zoom conference on August 27, 2026, by email on September 16, 2026, and by telephone and email on September 22, 2026. Despite those efforts, StratAir would not state whether it opposed the relief requested until September 22, 2026. Plaintiffs also needed the certified transcripts of Ms. Barrera Munoz's deposition testimony—the testimony on which much of the proposed amendment rests—which Plaintiffs ordered from the court reporter but did not receive until September 18, 2026. Plaintiffs filed this Motion two days after StratAir finally disclosed its position.

**B. <u>SNI Workers were a Large, Integrated Part of StratAir's Miami Workforce.</u>**

The discovery Plaintiffs obtained after the amendment deadline shows that SNI workers were not a separate workforce; they were StratAir's workforce.

<u>*Scale.*</u> SNI stated that complying with the subpoena would require it to "manually identify, review, and download files for approximately 1,000 individuals" supplied to StratAir during the two-year period surrounding the RIF. [ECF No. 34-6 at 10]. By comparison, StratAir alleges that it laid off only twenty-eight employees. [ECF No. 34-3 at 38 (StratAir's Amended Answer to Grant Interrogatory No. 2)]. [redacted]

[redacted]

*Same Work, Same Standards, Same Supervision.* StratAir's assistant manager, Gisela Barrera Munoz, who participated in the decision-making process for the RIF, could not differentiate SNI workers from StratAir's direct employees; she testified that SNI workers performed the same work ("Of course"), that "[t]he performance was always the same, and the standards were always the same," and that SNI workers were under the supervision "of our team." (Ex. C, Munoz Dep. 26:19-28:2). SNI had no supervisors on site; StratAir supervisors reviewed SNI workers' productivity as "part of their duties," and StratAir supervisors gave SNI workers performance instructions "because we were the ones that were speaking to them." (*Id.* at 51:18-52:21; Ex. D, Munoz Cont'd Dep. 33:9-15). When Ms. Barrera Munoz spoke of supporting "employees" to improve their performance, she meant both direct hires and SNI workers: "Of course." (Ex. C, Munoz Dep. 37:11-25).

*A Pipeline Into Direct Employment.* StratAir used SNI warehouse handlers year-round, not merely in peak season. (Ex. D, Munoz Cont'd Dep. 46:22-47:4). Ms. Barrera Munoz testified that, under a practice in place before she arrived, once an SNI worker completed approximately 520 hours, "if payroll would allow for it, we would transition the employees into Stratair," and that she personally saw some sixty to seventy SNI workers become direct StratAir hires—including members of her own leadership team. (*Id.* at 47:13-49:5). In other words, the SNI workers StratAir now calls irrelevant were, at a minimum, StratAir's pool of future direct employees doing the identical job as Plaintiffs.

*SNI Workers Were Part of the RIF Itself.* StratAir admits that "staffing agency engagements were also reduced during this time period" and denies that SNI workers were "excluded" from the January 2024 layoff. (Ex. E, StratAir Amended RFA Responses, RFA Nos. 8-9). [redacted] And Ms. Barrera Munoz testified that during the January reduction, "there were good employees [from SNI], we of course, kept them." (Ex. D, Munoz Cont'd Dep. 46:22-47:1). StratAir thus decided, in the same process [redacted], which SNI workers to keep and which direct employees to fire.

**C. StratAir Concealed its Workforce from the EEOC while Touting Statistics that Exclude It.**

StratAir has made age statistics the centerpiece of its defense. Its September 27, 2024 position statement submitted to the EEOC asserted that "[o]ver seventy percent (70%) of the employees selected for the layoff were 45 years old or younger," which it said "proves that StratAir did not intentionally select the older employees." (Ex. F, EEOC Investigative File, Charge No. 510-2024-10746 ("EEOC File") at 145). StratAir then offered what it called "objective statistics" from its human resources department: "[o]f the 258 employees within the decisional unit," 11 of 109 employees age forty or older (approximately 10.1%) and 17 of 149 employees under forty (approximately 11.41%) were selected, so the layoff supposedly "impacted workers 40 years old or older at a lower rate than younger workers." (*Id.* at 152, 158, 164). StratAir repeated that claim on May 23, 2025. (*Id.* at 115).

At the same time, StratAir refused to allow anyone to test those numbers. In December 2024, Plaintiffs' counsel asked the EEOC to obtain the name, age, national origin, tenure, and RIF outcome of every person who worked as a warehouse handler in Miami, explaining that StratAir's

position statement "provides skewed information." (*Id.* at 49). On January 29, 2025, the EEOC requested basic demographic and employment information for StratAir's Miami workforce, and later narrowed the request to calendar year 2024 and the location where the Charging Parties worked. (*Id.* at 153-54). StratAir refused. It produced data only for the Charging Parties and objected that information for its "over 400 employees" was overbroad and irrelevant. (*Id.* at 152). The investigator reported that "[a] request was submitted for a list of employees but it was not provided," and issued a pre-subpoena letter. (*Id.* at 55, 151). StratAir answered with a letter under the heading "The EEOC Has Demonstrated Bias Favoring Charging Parties," accusing the agency of a "fishing expedition," of "working towards an alternative agenda" rather than "performing a neutral investigation," and again refusing to produce the workforce data—while insisting that its own human resources data was "the only source of comprehensive information." (*Id.* at 156-60). StratAir closed its submissions by asking the EEOC to "refrain from engaging on a 'fishing expedition' at the behest of Charging Parties." (*Id.* at 115).

What StratAir never told the EEOC is that its Miami warehouse was staffed in substantial part by SNI workers performing the same work as Plaintiffs. SNI appears nowhere in StratAir's submissions. (*See generally id.*). StratAir's accusation that the EEOC ignored the federal "four-fifths" rule rested on the Uniform Guidelines on Employee Selection Procedures—which, by their terms, "do not apply to responsibilities under the Age Discrimination in Employment Act." 29 C.F.R. § 1607.2(D); *see* EEOC File at 158-59. Relying on StratAir's incomplete figures, the EEOC closed the charges, finding that the "[e]vidence shows protected age and non-protected age were nearly laid off at the same percentage rate." (EEOC File at 11; *see also id.* at 5-6).

This course of conduct—promoting statistics built on a workforce StratAir defined for itself, refusing to disclose the underlying data, attacking the neutrality of the agency that asked for it, and omitting any mention of the hundreds of SNI workers who filled its warehouse—supports a strong inference that StratAir deliberately concealed the true composition of its workforce. StratAir has continued that effort here by objecting that SNI workers fall outside the pleadings. StratAir admits it "does not track" the ages of SNI workers, (Ex. E, RFA No. 13), so the only source of that information is SNI—the very discovery StratAir has persistently attempted to block. Unless Plaintiffs may plead the SNI workforce and obtain those records, neither Plaintiffs nor the Court can evaluate the statistics StratAir has repeatedly proffered.

## III. ARGUMENT

### A. Legal Standard.

Because this Motion follows the Scheduling Order's amendment deadline, Plaintiffs must first show good cause under Rule 16(b)(4), and the Court then considers whether amendment is proper under Rule 15(a). *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418-19 (11th Cir. 1998). Rule 16's good cause standard turns on diligence: it "precludes modification unless the schedule cannot be met despite the diligence of the party seeking the extension." *Id.* at 1418 (quotation omitted). Good cause exists when "evidence supporting the proposed amendment would not have been discovered in the exercise of reasonable diligence until after the amendment deadline passed." *Havana Docks Corp. v. MSC Cruises SA Co.*, 455 F. Supp. 3d 1355, 1364 (S.D. Fla. 2020) (quoting *Donahay v. Palm Beach Tours & Transp., Inc.*, 243 F.R.D. 697, 699 (S.D. Fla. 2007)).

Once good cause is shown, Rule 15(a)(2) directs that leave be "freely given when justice so requires." *Foman v. Davis*, 371 U.S. 178, 182 (1962). "If the underlying facts or circumstances relied

upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Id.* Absent undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice, or futility, leave should be granted. *Id.* In this Circuit, "unless a substantial reason exists to deny leave to amend, the discretion of the district court is not broad enough to permit denial." *Shipner v. E. Air Lines, Inc.*, 868 F.2d 401, 407 (11th Cir. 1989).

**B. <u>Good Cause Exists Because Plaintiffs Acted Diligently and the Need to Amend Arose After the Deadline.</u>**

This case is the opposite of *Sosa*, where the plaintiff delayed written discovery and depositions and sought to add a theory based on information available before suit was filed. 133 F.3d at 1419. Plaintiffs served targeted discovery on staffing-agency workers, asserted their joint-employer position in conferral, subpoenaed SNI, twice sought a discovery hearing, deposed StratAir's RIF decision-makers, and litigated the issue to a ruling. During Plaintiffs' depositions, StratAir itself questioned Plaintiffs about their relationships with and knowledge of individuals working through SNI. The facts and rulings that make amendment necessary all post-date the amendment deadline:

> May 1 and July 21, 2026 — StratAir first objects that staffing-agency discovery is irrelevant because the Amended Complaint does not mention such workers. [ECF No. 34-5 at 6-7, 12-13, 27-28].
>
> May 7 and July 14, 2026 — Plaintiffs' conferral letters maintain that staffing-agency workers are considered StratAir's employees under a joint-employer theory and are relevant comparators, and that StratAir's pleading-based objection is unfounded. [ECF No. 34-7 at 4-5, 34].
>
> June 12 and July 9, 2026 — StratAir and SNI object to the SNI subpoena; SNI discloses that approximately 1,000 individuals worked for StratAir through SNI during the subpoena period. [ECF No. 34-6 at 5-7, 10].
>
> June 16–24, 2026 — Plaintiffs seek and obtain leave to file a unilateral motion for discovery hearing in the consolidated *Cepero Garcia* action and file it; the motion is

denied as moot when the cases are de-consolidated. [*Cepero Garcia* ECF Nos. 34, 36, 40, 41].

July 10–August 19, 2026 — Plaintiffs restart the process in this action; the Court reopens the case, refers discovery disputes, and sets the August 24, 2026 hearing. [ECF Nos. 24, 28, 33, 34].

July 30 and August 6, 2026 — Ms. Barrera Munoz testifies that SNI workers performed the same work under StratAir's supervision, were kept during the January 2024 reduction, and were routinely converted to direct hires. (Exs. C, D).

September 7, 2026 — The Court sustains the SNI objections without prejudice and invites amendment. [ECF No. 40 at 5-6].

August 24–September 22, 2026 — Plaintiffs confer with StratAir regarding this Motion at the hearing, by Zoom (August 27), by email (September 16), and by telephone and email (September 22); Plaintiffs receive the Barrera Munoz transcripts on September 18; StratAir states its position on September 22.

Plaintiffs filed this Motion sixteen days after the Court's Order, five days after receiving the deposition transcripts on which it relies, and two days after StratAir finally disclosed its position on the relief requested. Where, as here, new allegations rest on information the opposing party did not disclose "until well after the deadline for amended pleadings," the "late amendment was not caused by a lack of due diligence." *Hayes Healthcare Servs., LLC v. Meacham*, 331 F.R.D. 441, 443 (S.D. Fla. 2019). And until StratAir invoked the word "employees" as a basis to withhold discovery, there was no reason to believe the Amended Complaint's allegation that StratAir retained younger workers "to perform the same or similar jobs" excluded workers StratAir itself scheduled, supervised, and evaluated side-by-side with Plaintiffs. Nor did Plaintiffs sit on their rights by pressing a good-faith reading of their pleading: they consistently maintained that SNI workers **are** StratAir's employees under a joint-employer theory and thus already within the Amended Complaint, [ECF No. 34-7 at 4-5, 34], and they sought leave promptly once the Court ruled otherwise. The months between StratAir's objection and that ruling are attributable to

consolidation, StratAir's conferral failures (which drew an order to show cause), and de-consolidation—not to Plaintiffs. [*Cepero Garcia* ECF Nos. 35, 41]. Plaintiffs, moreover, sought StratAir's workforce demographics as early as December 2024, and StratAir refused to provide them even when the EEOC asked. (Ex. F, EEOC File at 49, 55, 152, 156-60). The need for amendment arose from StratAir's objection and the Court's ruling on it—not from any lack of diligence by Plaintiffs.

**C. <u>The Rule 15(a) Factors Favor Amendment, and StratAir will Suffer No Undue Prejudice.</u>**

There is no undue delay, bad faith, or dilatory motive, and this is Plaintiffs' first request to amend to address this issue. Nor can StratAir claim surprise. It has answered written discovery about staffing-agency workers, [redacted] admitted that SNI engagements were reduced during the RIF, opposed the SNI subpoena, defended depositions in which its witness testified about SNI workers, questioned the Plaintiffs about staffing-agency workers, and argued the issue at the August 24, 2026 hearing. [ECF No. 34-5 at 6-7, 12-13, 27-28; ECF No. 34-6 at 5-7; ECF No. 40]; (Exs. B, C, D, E). The amendment involves the same RIF, the same decision-makers, the same facility, the same work, and the same claims.

The only "prejudice" is that StratAir may have to produce, and SNI may have to comply with, discovery that StratAir has resisted on a pleading technicality. That is the reason for amendment, not a reason to deny it. Increased discovery burden does not outweigh the interest in allowing a plaintiff "an opportunity to test [their] claim on the merits." *Hayes Healthcare*, 331 F.R.D. at 443 (quoting *Foman*, 371 U.S. at 182). Any scheduling concerns can be addressed through tailored discovery, and Plaintiffs will confer with StratAir and SNI to narrow the SNI subpoena to the Miami warehouse positions and the period surrounding the RIF.

**D. <u>The Amendment is Not Futile because SNI Workers are Relevant Comparators and Replacement Workers</u>.**

Amendment is futile only "when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant." *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007). An employment-discrimination complaint "need not allege facts sufficient to make out a classic *McDonnell Douglas* prima facie case," because that framework "is an evidentiary standard, not a pleading requirement." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1246 (11th Cir. 2015). The proposed allegations easily meet the plausibility standard, and the governing substantive law confirms their relevance.

First, the comparator inquiry turns on substance, not labels. A valid comparator must be "similarly situated in all material respects," which ordinarily means the comparator engaged in the same basic conduct, was subject to the same employment policy, guideline, or rule, and was "ordinarily (although not invariably)" under the jurisdiction of the same supervisor. *Lewis v. City of Union City*, 918 F.3d 1213, 1218, 1227-28 (11th Cir. 2019) (en banc). Nothing in that test turns on whose payroll the comparator is on. Likewise, whether a worker is an "employee" for purposes of federal anti-discrimination law depends on "the economic realities of the work relationship," with the putative employer's "right to control" the work as "the most important factor"—not on the label the parties use. *Cobb v. Sun Papers, Inc.*, 673 F.2d 337, 340-41 (11th Cir. 1982). In the RIF context, "[j]ob labels, while instructive, are not determinative; it is job content that matters." *Israel v. Sonic-Montgomery FLM, Inc.*, 231 F. Supp. 2d 1156, 1161 (M.D. Ala. 2002) (citing *Watkins v. Sverdrup Tech., Inc.*, 153 F.3d 1308, 1315-16 (11th Cir. 1998)). The same is true of replacement: a RIF plaintiff "may demonstrate that he was replaced by showing that, after his termination, some of his

former responsibilities were delegated to another employee." *Mazzeo v. Color Resolutions Int'l, LLC*, 746 F.3d 1264, 1271 (11th Cir. 2014).

Applying these principles, a court in this Circuit recently rejected the very argument StratAir makes here. In *Weir v. Crawford & Co.*, the plaintiff's comparator had been placed with the defendant through an outside recruiting firm, was paid by that firm, and was classified as an independent contractor. No. 1:22-CV-4781-JPB-JSA, 2024 U.S. Dist. LEXIS 221364, at 34-36 (N.D. Ga. Dec. 5, 2024). The court held that the evidence "could suggest that this distinction was simply the result of [the comparator] being hired through a recruiting service," and that "for all material, substantive purposes" he "was responsible to and controlled by Defendant as if he was an employee": he shared the plaintiff's title, was subject to the same employment rules, worked under the same supervisor, and was bound by the defendant's policies. *Id.* at 35. The plaintiff's evidence therefore "satisfie[d] the comparator prong" under *Lewis*, and the court recommended denying summary judgment on her discrimination claim. *Id.* at 34. Other courts likewise refuse to disqualify a comparator based on temporary status alone where the comparator held the plaintiff's job. *See Dudhi v. Temple Health Oaks Lung Ctr.*, 2019 U.S. Dist. LEXIS 17171, at 11-12 (E.D. Pa. Feb. 4, 2019) (declining to find, "at this stage," that comparator's "temporary status accounts for the disparate treatment" where the comparator held the same position as the plaintiff).

The record here is stronger than in *Weir*. By StratAir's own witness's account, SNI workers did the same job as Plaintiffs, under the same performance standards, at the same facility, on the same shifts, under the same StratAir supervisors who evaluated their productivity and directed their work—and StratAir decided, [redacted] which SNI workers to keep. (Ex. B at SAS-0006, SAS-0008; Ex. C, Munoz Dep. 26:19-28:2, 51:18-52:21; Ex. D, Munoz Cont'd Dep.

33:9-15, 46:22-47:1). Whether SNI's payroll issued their paychecks does not make them materially different for purposes of evaluating whom StratAir kept, and whom it discarded, when it "reduced" the workforce performing that job.

Second, SNI workers were StratAir's employees for purposes of this analysis. The Eleventh Circuit recognizes that a company that contracts with a separate entity for labor is nonetheless a joint employer when it "has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer," such that the two entities "share or co-determine those matters governing the essential terms and conditions of employment." *Virgo v. Riviera Beach Assocs., Ltd.*, 30 F.3d 1350, 1359-60 (11th Cir. 1994) (quotation omitted). Courts in this Circuit apply that principle to staffing arrangements: "[a] business that utilizes staffing agencies may be deemed a joint employer of the staffing agency's employees." *Jackson v. Fannie Mae*, 181 F. Supp. 3d 1044, 1054 (N.D. Ga. 2016) (citing *Butler v. Drive Auto. Indus. of Am., Inc.*, 793 F.3d 404, 410 (4th Cir. 2015) (applying the joint employer doctrine in a Title VII case)). StratAir [redacted] supervised and evaluated their day-to-day work, [redacted] and routinely converted SNI workers into direct hires. (Ex. B; Ex. C, Munoz Dep. 26:19-28:2, 51:18-52:21; Ex. D, Munoz Cont'd Dep. 46:22-49:5). Those facts plausibly show that StratAir jointly employed the SNI workers—placing them in the same workforce from which StratAir selected Plaintiffs for termination and chose whom to retain, and therefore within the pool of comparators and replacements. They also supply the "theory of liability implicating SNI" the Court identified. [ECF No. 40 at 4, 6].

Third, evidence that StratAir kept younger SNI workers to do Plaintiffs' work bears directly on discriminatory intent and pretext. In a RIF case, a plaintiff may establish a prima facie case with "evidence by which a fact finder could reasonably conclude that the employer intended to discriminate on the basis of age in reaching that decision." *Jameson v. Arrow Co.*, 75 F.3d 1528, 1531-32 (11th Cir. 1996). StratAir justifies the RIF by claiming it was overstaffed after a customer reduced cargo flights and that it selected employees based on performance, discipline, attendance, and operational needs. [ECF No. 34-3 at 38-39 (StratAir's Amended Answers to Grant Interrogatory Nos. 2-3)]. If StratAir continued to use younger SNI workers—and to convert them into direct hires—to perform the same work while terminating older direct employees, that evidence undercuts the claimed overstaffing, shows who actually absorbed Plaintiffs' work, and tests whether StratAir applied its selection criteria to the entire workforce performing that work or only to the older direct employees it chose to remove.

Fourth, StratAir cannot rely on statistics drawn from a truncated workforce while blocking discovery into the rest of it. Statistics "come in infinite variety," and "their usefulness depends on all of the surrounding facts and circumstances." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 340 (1977). A meaningful statistical comparison must use the proper population. *See Hazelwood Sch. Dist. v. United States*, 433 U.S. 299, 308 (1977). "Statistics without any analytical foundation are 'virtually meaningless.'" *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1089 (11th Cir. 2004) (quoting *Evans v. McClain of Ga., Inc.*, 131 F.3d 957, 963 (11th Cir. 1997)). StratAir's analysis counts twenty-eight laid-off employees while ignoring a staffing-agency workforce numbering in the hundreds that performed the same work, was supervised by the same managers, and was itself reduced or retained in the same RIF. Worse, StratAir built that analysis on a "decisional unit" it defined for

itself, refused to disclose the underlying workforce data to the EEOC, and never mentioned the SNI workforce at all. (Ex. F, EEOC File at 152, 156-60). A party that selectively discloses favorable statistics while withholding the data needed to test them cannot invoke the pleadings to keep that data hidden. Plaintiffs are entitled to plead, and to discover, the facts needed to test that analysis.

## IV. THE PROPOSED AMENDMENT

The proposed Second Amended Complaint (Ex. A) alleges, among other things, that:

1. SNI-supplied workers performed the same or similar warehouse, cargo-handling, cargo-loading, and security work as Plaintiffs at StratAir's Miami facility, under StratAir's policies and performance standards, and under the direction, supervision, and productivity review of StratAir supervisors and managers (Ex. A ¶¶ 37–46);
2. StratAir used SNI as a pipeline for direct hiring, converting SNI workers to direct StratAir employees after approximately 520 hours (*id.* ¶¶ 48, 56);
3. StratAir retained and exercised sufficient control over the SNI workers' schedules, assignments, supervision, performance standards, discipline, retention, and conversion to be their joint employer (*id.* ¶¶ 47–49);
4. StratAir made RIF decisions regarding SNI workers and direct employees in the same process, and retained and continued to use younger SNI workers to perform Plaintiffs' work while terminating older direct employees (*id.* ¶¶ 50–51, 55–57, 66, 72–73, 94, 100–01);
5. StratAir's statistical justification for the RIF excludes SNI workers, whose presence StratAir never disclosed to the EEOC, and therefore does not reflect the true workforce from which StratAir made its RIF decisions (*id.* ¶¶ 52–54); and

6. As to Plaintiff Grant's race discrimination claims, the non-Black workers StratAir retained to perform his work included SNI workers (*id.* ¶¶ 117, 121–22, 135, 138, 140, 155, 158, 160).

Consistent with Local Rule 15.1, the proposed Second Amended Complaint is attached in full as Exhibit A, and a redlined version comparing it to the operative Amended Complaint [ECF No. 12] is attached as Exhibit A-1.

## V. CONCLUSION

Plaintiffs respectfully request that the Court grant this Motion, deem the Second Amended Complaint attached as Exhibit A filed as of the date of the Court's Order (or direct Plaintiffs to file it within three days), permit Plaintiffs to reraise the SNI subpoena and RFP No. 13 as contemplated by the Court's September 7, 2026 Order, and grant any further relief the Court deems just and proper.

## CERTIFICATE OF CONFERRAL

Pursuant to Local Rule 7.1(a)(3), undersigned counsel certifies that counsel for Plaintiffs conferred with counsel for Defendant in a good-faith effort to resolve the issues raised in this Motion in person at the August 24, 2026 discovery hearing, by Zoom conference on August 27, 2026, by email on September 16, 2026, and by telephone and email on September 22, 2026. On September 22, 2026, Defendant advised that it opposes the relief requested.

Respectfully submitted this 24th day of September 2026,

s/ Patrick Brooks LaRou
Brian H. Pollock, Esq. (174742)
brian@fairlawattorney.com
Patrick Brooks LaRou, Esq. (1039018)
brooks@fairlawattorney.com
FAIRLAW FIRM
135 San Lorenzo Avenue, Suite 770
Coral Gables, Florida 33146
Telephone: (305) 230-4884
*Counsel for Plaintiffs*