UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:25-CV-24505-MOORE/ELFENBEIN

IVAN GRANT,
ALEX LAFFITA ORTIZ,
HENRY PINTO SUMOZA,
EYONNY PRADO DURAN,
LUIS RODRIGUEZ CERUTO, and
LUIS SAME GONZALO,

Plaintiffs,

vs.

STRATAIR AVIATION SERVICES, LLC,

Defendant.
_________________________________/

**SECOND AMENDED COMPLAINT**

Plaintiffs, Ivan Grant, Alex Laffita Ortiz, Henry Pinto Sumoza, Eyonny Prado Duran, Luis Rodriguez Ceruto, and Luis Same Gonzalo, through their undersigned counsel, sue Defendant, StratAir Aviation Services, LLC, as follows:

***Introduction***

1. Plaintiffs Ivan Grant, Alex Laffita Ortiz, Henry Pinto Sumoza, Eyonny Prado Duran, Luis Rodriguez Ceruto, and Luis Same Gonzalo, who worked for Defendant StratAir Aviation Services, LLC, filed this lawsuit to obtain recourse for the ways in which they were treated differently and discriminated against.

***Parties, Jurisdiction, and Venue***

2. **Plaintiff, Ivan Grant**, was a resident of Miami-Dade County, Florida, at all times material, and he is *sui juris*.

3. Mr. Grant worked as a "Warehouse Handler" for Defendant.

4. Defendant terminated Mr. Grant's employment on January 16, 2024, when he was 64 years old.

5. The EEOC issued a Notice of Right to Sue to Mr. Grant on July 8, 2025.

6. **Plaintiff, Alex Laffita Ortiz**, was a resident of Miami-Dade County, Florida, at all times material, and he is *sui juris*.

7. Mr. Laffita Ortiz worked as a "Warehouse Handler" for Defendant.

8. Defendant terminated Mr. Laffita Ortiz's employment on January 17, 2024, when he was 50 years old.

**Deleted:** Oritz

9. The EEOC issued a Notice of Right to Sue to Mr. Laffita Ortiz on July 8, 2025.

10. **Plaintiff, Henry Pinto Sumoza**, was a resident of Miami-Dade County, Florida, at all times material, and he is *sui juris*.

11. Mr. Pinto Sumoza worked as a "Security Guard" for Defendant.

12. Defendant terminated Mr. Pinto Sumoza's employment on January 16, 2024, when he was 75 years old.

13. The EEOC issued a Notice of Right to Sue to Mr. Pinto Sumoza on July 8, 2025.

14. **Plaintiff, Eyonny Prado Duran**, was a resident of Miami-Dade County, Florida, at all times material, and he is *sui juris*.

15. Mr. Prado Duran worked as a "Cargo Loader" for Defendant.

16. Defendant terminated Mr. Prado Duran's employment on January 14, 2024, when he was 48 years old.

17. The EEOC issued a Notice of Right to Sue to Mr. Prado Duran on July 8, 2025.

18. **Plaintiff, Luis Rodriguez Ceruto**, was a resident of Miami-Dade County,

Florida, at all times material, and he is *sui juris*.

Deleted: s

19. Mr. Rodriguez Ceruto worked as a "Cargo Handler" for Defendant.

20. Defendant terminated Mr. Rodriguez Ceruto's employment on January 16, 2024, when he was 60 years old.

Deleted: Ceruto Rodriguez

21. The EEOC issued a Notice of Right to Sue to Mr. Rodriguez Ceruto on July 8, 2025.

22. **Plaintiff, Luis Same Gonzalo**, was a resident of Miami-Dade County, Florida, at all times material, and he is *sui juris*.

23. Mr. Same Gonzalo worked as a "Cargo Handler" for Defendant.

24. The EEOC issued a Notice of Right to Sue to Mr. Same Gonzalo on July 8, 2025, when he was 62 years old.

25. **Defendant, StratAir Aviation Services, LLC**, was a resident of Miami-Dade County, Florida, at all times material, and is *sui juris*.

Deleted: he

26. Defendant employed more than 50 people in Miami-Dade and Broward Counties for 20 or more calendar weeks during the time relevant to this action.

27. Defendant was and is responsible for the conduct, acts, and omissions of its officers, managers, supervisors, and employees at all times material to this action.

28. This is an action for damages greater than $100,000, and this Court has jurisdiction over this matter.

29. This Court has original jurisdiction over Plaintiffs' claims that arise under federal law pursuant to 28 U.S.C. §1331 and supplemental/pendent jurisdiction over Plaintiffs' related state law claims pursuant to 28 U.S.C. §1367.

30. Venue is proper pursuant to 28 U.S.C. §1391(b)(ii) because Defendant is a

Delaware limited liability company that maintains multiple offices within this District and because most of the actions complained of occurred within this District.

Deleted: corporation

***Common Factual Background***

31. Defendant describes itself on its website, https://www.stratair.net/about/, as "…a Miami-based freight company specializing in scheduled air freight, charters, ground handling services, and warehousing."

32. Plaintiffs all worked at Defendant's Miami airport location (warehouse).

Deleted: <#>Defendant employed more than 50 people in Miami-Dade and Broward Counties for 20 or more calendar weeks during the time relevant to this action.¶

33. All conditions precedent were performed by Plaintiffs, occurred, or were waived by the Defendant, including through Plaintiffs' dual-filing their Charge(s) of Discrimination with the EEOC and the FCHR.

34. More than 180 days have elapsed since the Plaintiffs filed their Charges of Discrimination, and they filed this Complaint within 90 days of the EEOC's issuance of the Notices of Right to Sue to each Plaintiff.

35. Plaintiffs agreed to pay their counsel a reasonable attorney's fee for all services rendered.

***Defendant's Workforce***

36. Defendant directly employed personnel at its Miami warehouse to perform the duties necessary for the performance of its operations.

37. Defendant had a contract or series of contracts with SNI Companies Corp. ("SNI"), a staffing agency, to provide personnel to supplement Defendant's direct employees.

38. SNI sent approximately 1,000 of its employees to work for Defendant at its Miami warehouse between January 1, 2023, and January 1, 2025.

39. The workers supplied and employed by SNI performed duties necessary for the

performance of Defendant's operations alongside and in conjunction with those directly employed by Defendant, including as Warehouse Handlers and Cargo Handlers.

40. Defendant regularly, routinely, and recurrently relied on the SNI employees to provide personal services to Defendant.

41. The SNI employees who worked for Defendant performed the same or similar warehouse, cargo-handling, cargo-loading, and security work as Plaintiffs and Defendant's other direct employees, at the same facility, on the same shifts, and under the same performance standards.

42. The SNI employees who worked for Defendant at its Miami facility were required to comply with Defendant's policies, procedures, rules, and regulations.

43. SNI did not send or have supervisors or personnel with supervisory authority at Defendant's Miami warehouse.

44. Instead, Defendant's supervisory personnel directly managed, supervised, and controlled the SNI employees in their day-to-day work, gave them instructions and feedback, and reviewed their productivity in the same manner as they did for Defendant's direct employees.

45. Defendant treated the SNI employees the same as Defendant's direct employees in assigning, directing, supervising, and the authority its supervisors exerted over them in the performance of work.

46. Defendant's managers treated the SNI employees as part of the same workforce as Defendant's direct employees and referred to them as "employees."

47. Defendant's managers evaluated the SNI employees and, when necessary or appropriate, had the ability to direct that an SNI employee not continue to provide services for Defendant.

48. Defendant maintained a longstanding practice of converting SNI employees to direct employees of Defendant after they worked approximately 520 hours at Defendant's facility, and Defendant converted at least dozens of SNI employees to direct employees of Defendant through this practice.

49. Defendant retained and exercised sufficient control over the SNI employees, including over their schedules, assignments, supervision, performance standards, productivity review, discipline, retention, and conversion to direct employment, that Defendant shared or co-determined the essential terms and conditions of their employment such that it was the joint employer of the SNI employees.

***The Termination of Plaintiffs' Employment***

50. Defendant terminated the employment of Plaintiffs and other employees in January 2024.

51. Defendant not only determined which of its employees it would terminate, but it also determined in January 2024 that certain SNI employees would no longer provide services to Defendant, effectively terminating their employment with Defendant at that time.

***Defendant's Incomplete Workforce Statistics***

52. In defense of its termination of Plaintiffs' employment to the EEOC and during this lawsuit, Defendant identified a "decisional unit" consisting only of 258 of its direct employees whom it indicated were affected by the layoff that occurred in January 2024.

53. Defendant's "decisional unit" that formed the cornerstone of its statistical analysis did not include the SNI employees, despite their having performed the same or similar work, under the same supervision, and being subject to the same considerations in whether they would continue providing services after January 2024; consequently, the "decisional unit" identified by

Defendant did not accurately or truly reflect the true workforce from which Defendant made its decisions or the statistical impact on the younger vs. older workers.

54. During the EEOC's investigation of Plaintiffs' charges of discrimination that preceded the filing of this lawsuit, Defendant refused to comply with the EEOC's requests for workforce demographic data, did not disclose its use of SNI employees, and did not include the SNI employees as part of the "decisional unit" or statistical analyses based thereon.

55. When it terminated Plaintiffs' employment in January 2024, those who continued providing the same or similar services as Plaintiffs to Defendant as employees and as SNI employees were younger and had less seniority than Plaintiffs.

56. Defendant continued to use younger SNI employees to perform the work Plaintiffs had performed, and continued converting younger SNI employees to direct employees of Defendant.

57. The younger SNI employees whom Defendant retained were similarly situated to Plaintiffs in all material respects, and they are properly included as employees for purposes of this action and as comparators.

**COUNT I – AGE DISCRIMINATION IN VIOLATION OF THE ADEA**
**(ALL PLAINTIFFS)**

Plaintiffs, Ivan Grant, Alex Laffita Ortiz, Henry Pinto Sumoza, Eyonny Prado Duran, Luis Rodriguez Ceruto, and Luis Same Gonzalo, reincorporate and re-allege all preceding paragraphs as though set forth fully herein and further allege as follows:

58. The Age Discrimination in Employment Act, 29 U.S.C. §621, *et seq.* ("ADEA"), makes it unlawful for an employer to, among other things, "discriminate against, any individual because of such individual's age."

Deleted: 261

59. The ADEA applies to employers such as the Defendant, who have 20 or more employees for each working day in 20 or more calendar weeks in the current or preceding year. 29 U.S.C. §630(b).

60. Plaintiffs and the SNI employees were "employees" of the Defendant, as the term is defined at 29 U.S.C. §630(f).

**Deleted:** d

61. Plaintiffs were, at all times material, men 48 and older, and members of a class of persons protected from discrimination in employment because of their ages.

62. The Defendant's business involves the regular and routine receipt of merchandise arriving from outside the State of Florida for which it regularly and routinely receives payment from customers located outside of the State of Florida such that its business is an "industry affecting commerce" as defined by the ADEA. 29 U.S.C. §630(h).

63. In particular, the Defendant provided services to Amazon.com for the receipt, warehousing, and distribution of goods, materials, and products that arrived from outside the State of Florida.

64. Plaintiffs possessed the skills, background, and qualifications necessary to perform the duties of their positions.

65. Plaintiffs performed their work for Defendant satisfactorily, and they were in all respects good employees of Defendant.

66. Defendant discriminated against Plaintiffs by failing to treat them the same or similarly to its younger employees and the younger SNI employees described above because of each Plaintiff's age.

67. Defendant hired some new employees and/or utilized new SNI employees in preparation for the 2023 winter holiday season, most of whom are believed to have been in their

20s or 30s.

68. Defendant's supervisory personnel, including Armando Portales Viera, Jorge [LNU], and Jose [LNU], regularly made ageist comments about StratAir's employees over the age of 40.

69. Ultimately, Defendant was faced with the decision about whether to terminate employees, and if so, which ones.

70. Defendant based its decision to terminate employees on their age, specifically whether they were older or not, during the period from approximately January 14 to 22, 2024.

71. Defendant terminated the Plaintiffs' employment between January 14-22, 2024, because of their age(s).

72. Defendant retained its younger employees who had less seniority, as well as younger SNI employees, instead of retaining Plaintiffs and its other older employees (and SNI employees) because, all other factors being equal, of their ages.

Deleted:

73. More specifically, the Defendant fired Plaintiffs, other older employees with more seniority, and other older SNI employees with more seniority, and directed SNI to cease sending older SNI employees, and retained younger employees with less seniority and younger SNI employees, to perform the same or similar jobs.

Deleted:

74. Although Defendant's Warehouse Handlers and Cargo Handlers in their 20s and 30s regularly received verbal counseling and discipline, as well as written reprimands/write-ups, from Defendant's supervisory personnel before January 2024, their employment was not terminated and/or they continued to provide services to Defendant through SNI, while the Plaintiffs' employment was terminated, despite not being subjected to the same or similar verbal or written disciplinary measures.

75. In December 2023, Mr. Rodriguez Ceruto heard his supervisors, Armando Portales Viera and Jose [LNU], talking about how StratAir needed to "get rid of the old people and start with new blood."

76. On another occasion in December 2023, Mr. Rodriguez Ceruto overheard Mr. Portales Viera remark, "Guajiro, why don't you go to Leon Medical Center. I'm tired of these old people here."

77. Further cementing that Defendant's decisions were ageist, while Mr. Rodriguez Ceruto was leaving the building with other co-workers after having their employment terminated, he heard Jose [LNU] comment that "we (referring to the older employees who had been fired) should have dyed our hair and our beards (indicating that if we looked younger, we would not have been fired)."

78. Defendant violated the ADEA by engaging in the aforesaid actions because of the Plaintiffs' age(s).

79. The discriminatory actions of Defendant against Plaintiffs, when considered individually or collectively, constitute an adverse employment action because of their age(s) for purposes of ADEA.

80. These actions constitute an ultimate employment decision, altered the compensation, terms, conditions, or privileges of the employment of Plaintiffs, and/or adversely affected their status as employees.

81. As such, the disparate treatment they suffered constitutes an adverse employment action within the meaning of ADEA.

82. Defendant's actions were malicious and demonstrated a reckless indifference to Plaintiffs' rights pursuant to ADEA.

83. The aforementioned acts of commission and omission by Defendant were done willfully, wantonly, and with reckless disregard for the consequences of such actions.

84. Plaintiffs suffered damages in the form of lost income in the past, lost income in the future, lost benefits, lost seniority rights, mental anguish, loss of dignity, and other intangible injuries.

85. As direct and proximate result of the Defendant's unlawful discriminatory conduct in violation of the ADEA, Plaintiffs have suffered, and continue to suffer lost wages and benefits, and emotional distress, for which they are entitled to an award of monetary damages.

86. Plaintiffs also seek liquidated damages equal to their compensatory damages and the recovery of their reasonable attorney's fees and costs of litigation as provided for under the ADEA.

WHEREFORE Plaintiffs, Ivan Grant, Alex Laffita Ortiz, Henry Pinto Sumoza, Eyonny Prado Duran, Luis Rodriguez Ceruto, and Luis Same Gonzalo, demand the entry of a judgment in their favor and against Defendant, StratAir Aviation Services, LLC, after a trial by jury, declaring that the Defendant violated the ADEA, awarding them compensatory damages including the loss of income in the past and in the future, lost benefits, seniority rights, promoting Plaintiffs to the position to which they should be holding, awarding them liquidated damages equal to their compensatory damages, granting them a permanent injunction against Defendant from engaging in discriminatory employment practices on the basis of age and awarding them their taxable costs and attorney's fees.

**<u>COUNT II — VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT</u>**
**(ALL PLAINTIFFS – AGE)**

Plaintiffs, Ivan Grant, Alex Laffita Ortiz, Henry Pinto Sumoza, Eyonny Prado Duran,

Luis Rodriguez Ceruto, and Luis Same Gonzalo, reincorporate and re-allege paragraphs 1 through 57 as though set forth fully herein and further allege as follows:

Deleted: 35

87. The Florida Civil Rights Act of 1992 ("FCRA") makes it unlawful for an employer such as the Defendant to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment because of that individual's age.

Deleted: race

88. Defendant was, at all times material to this action, a "person" and/or an "employer" that was and remains subject to the Florida Civil Rights Act of 1992 by employing more than 15 people for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

89. The FCRA prohibits Defendant from making employment decisions or from taking personnel actions affecting the terms, conditions, and/or privileges of employment based upon age considerations.

90. The FCRA allows a prevailing employee to obtain an order prohibiting Defendant from engaging in its discriminatory practice(s) and providing affirmative relief from the effects of the practice(s), to recover back pay, compensatory damages, damages for mental anguish, loss of dignity, and any other intangible injuries, and punitive damages. Fla. Stat. §760.11(5).

91. Plaintiffs possessed the skills, background, and qualifications necessary to perform the duties of their positions.

92. Plaintiffs performed their work for Defendant satisfactorily, and they were in all respects good employees of Defendant.

93. Plaintiffs were, at all times material, men 48 and older, and members of a class of persons protected from discrimination in employment because of their ages.

94. Defendant discriminated against Plaintiffs by failing to treat them the same or similar to its younger employees, including Defendant's direct employees and the employees who provided services to Defendant through SNI, as a result of their ages (over 40).

95. Defendant hired some new employees and/or utilized new SNI employees in preparation for the 2023 winter holiday season, most of whom are believed to have been in their 20s or 30s.

**Deleted:** <#>Plaintiffs possessed the skills, background, and qualifications necessary to perform the duties of their positions.¶
<#>Plaintiffs performed their work for Defendant satisfactorily, and they were, in all respects, good employees of Defendant.¶
<#>Defendant discriminated against Plaintiffs by failing to treat them the same or similarly to its younger employees because of each Plaintiff's age.¶

96. Defendant's supervisory personnel, including Armando Portales Viera, Jorge [LNU], and Jose [LNU], regularly made ageist comments about StratAir's employees over the age of 40.

97. Ultimately, Defendant was faced with the decision about whether to terminate employees, and if so, which ones.

98. Defendant based its decision to terminate employees on their age, specifically whether they were older or not, during the period from approximately January 14 to 22, 2024.

99. Defendant terminated the Plaintiffs' employment between January 14-22, 2024, because of their age(s).

100. Defendant retained its younger employees who had less seniority, as well as younger SNI employees, instead of retaining Plaintiffs and its other older employees (and SNI employees) because, all other factors being equal, of their ages.

101. More specifically, the Defendant fired Plaintiffs, other older employees with more seniority, and other older SNI employees with more seniority, and directed SNI to cease sending older SNI employees, and retained younger employees with less seniority and younger SNI employees, to perform the same or similar jobs.

102. Although Defendant's Warehouse Handlers and Cargo Handlers in their 20s and

30s regularly received verbal counseling and discipline, as well as written reprimands/write-ups, from Defendant's supervisory personnel before January 2024, their employment was not terminated and/or they continued to provide services to Defendant through SNI, while the Plaintiffs' employment was terminated, despite not being subjected to the same or similar verbal or written disciplinary measures.

103. In December 2023, Mr. Rodriguez Ceruto heard his supervisors, Armando Portales Viera and Jose [LNU], talking about how StratAir needed to "get rid of the old people and start with new blood."

104. On another occasion in December 2023, Mr. Rodriguez Ceruto overheard Mr. Portales Viera remark, "Guajiro, why don't you go to Leon Medical Center. I'm tired of these old people here."

105. Further cementing that Defendant's decisions were ageist, while Mr. Rodriguez Ceruto was leaving the building with other co-workers after having their employment terminated, he heard Jose [LNU] comment that "we (referring to the older employees who had been fired) should have dyed our hair and our beards (indicating that if we looked younger, we would not have been fired)."

106. Defendant engaged in one or more prohibited "discriminatory practice", as the term is defined by Fla. Stat. §760.02(4) and by §760.10(1), by engaging in the aforesaid actions, which Chapter 760, Florida Statutes, prohibited.

**Deleted:** <#>Defendant retained its younger employees who had less seniority instead of retaining Plaintiffs and its other older employees because, all other factors being equal, of their ages. ¶
<#>More specifically, the Defendant fired Plaintiffs and other older employees with more seniority, and retained younger employees with less seniority, to perform the same or similar jobs.¶

107. The discriminatory actions of Defendant against Plaintiffs, when considered individually or collectively, constitute an adverse employment action because of their age(s) for purposes of FCRA.

108. These actions constitute an ultimate employment decision, altered the

compensation, terms, conditions, or privileges of the employment of Plaintiffs, and/or adversely affected their status as employees.

109. As such, the disparate treatment they suffered constitutes an adverse employment action within the meaning of FCRA.

110. Defendant's actions were malicious and demonstrated a reckless indifference to Plaintiffs' rights pursuant to FCRA.

111. The aforementioned acts of commission and omission by Defendant were done willfully, wantonly, and with reckless disregard for the consequences of such actions.

112. Plaintiffs suffered damages in the form of lost income in the past, lost income in the future, lost benefits, lost seniority rights, mental anguish, loss of dignity, and other intangible injuries.

113. Pursuant to the FCRA, Plaintiffs are entitled to recover their attorneys' fees and costs from Defendant, in addition to damages and punitive damages.

WHEREFORE Plaintiffs, Ivan Grant, Alex Laffita Ortiz, Henry Pinto Sumoza, Eyonny Prado Duran, Luis Rodriguez Ceruto, and Luis Same Gonzalo, demand the entry of a judgment in their favor and against Defendant, StratAir Aviation Services, LLC, after a trial by jury, declaring that the Defendant violated the FCRA, awarding them compensatory damages including the loss of income in the past and in the future, lost benefits, seniority rights, for mental anguish, loss of dignity, other intangible injuries, for punitive damages, granting them a permanent injunction against Defendant from engaging in discriminatory employment practices on the basis of age, promoting Plaintiffs to the position to which they should be holding, and awarding them their taxable costs and attorneys' fees.

**COUNT III – VIOLATION OF 42 U.S.C. §1981**
**(IVAN GRANT – RACE DISCRIMINATION)**

Plaintiff, Ivan Grant, reincorporates and re-alleges paragraphs 1 through 5 and 25 through 54 as though set forth fully herein and further alleges as follows:

Deleted: 35

114. The Reconstruction Era Civil Rights Act of 1866, 42 U.S.C. §1981 ("Section 1981"), makes it unlawful to discriminate against an employee because of race:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. §1981.

115. Mr. Grant possessed the skills, background, and qualifications necessary to perform the duties of his position.

116. Mr. Grant performed his work for Defendant satisfactorily, and he was in all respects a good employee of Defendant.

117. Defendant discriminated against Mr. Grant by failing to treat him the same or similar to its non-Black employees, including Defendant's direct employees and the SNI employees who provided services to Defendant, as a result of his race.

118. Defendant was faced with the decision about whether to terminate employees, and if so, which ones.

119. Defendant considered race – in particular, whether they were Black or not – when deciding which employees to terminate between December 2023 and January 2024.

Deleted: 2025

120. Defendant terminated the employment of Mr. Grant on January 16, 2024.

121. Defendant fired Mr. Grant and retained its non-Black employees and non-Black

SNI employees who had less seniority to continue the performance of the work at the location at which he was assigned to work, whether in a same or similar position, instead of terminating those non-Black employees with less seniority.

Deleted: in

122. Upon information and belief, the SNI employees whom Defendant retained, and continued to use after January 2024 to perform the work Mr. Grant had performed, were predominantly non-Black.

123. As such, the termination of Mr. Grant's employment because of his race and/or national origin constitutes an adverse employment action because of race for purposes of Section 1981, for which Section 1981 provides legal recourse.

Deleted: within the meaning of constitutes an adverse employment actions …

124. These actions constitute an ultimate employment decision, altered the compensation, terms, conditions, or privileges of the employment of Mr. Grant and/or adversely affected his status as an employee.

125. Defendant's actions were malicious and demonstrated a reckless indifference to the rights of Mr. Grant.

126. The aforementioned acts of commission and omission by Defendant were done willfully, wantonly, and with reckless disregard for the consequences of such actions.

127. Mr. Grant suffered damages in the form of lost income in the past, lost income in the future, lost benefits, lost seniority rights, mental anguish, loss of dignity, and other intangible injuries.

128. Pursuant to Section 1981, Mr. Grant is entitled to recover his attorney's fees and costs from Defendant, in addition to damages and punitive damages.

WHEREFORE Plaintiff, Ivan Grant, demands the entry of a judgment in his favor and against Defendant, StratAir Aviation Services, LLC, after a trial by jury, declaring that the

Defendant violated 42 U.S.C. §1981, awarding him compensatory damages including the loss of income in the past and in the future, lost benefits, seniority rights, for mental anguish, loss of dignity, other intangible injuries, for punitive damages, granting him a permanent injunction against Defendant from engaging in discriminatory employment practices on the basis of race, promoting Plaintiff to the position to which he should be holding, and awarding him taxable costs and attorney's fees.

**COUNT IV – VIOLATION(S) OF TITLE VII**
**(IVAN GRANT – DISCRIMINATION)**

Plaintiff, Ivan Grant, reincorporates and re-alleges paragraphs 1 through 5 and 25 through 54 as though set forth fully herein and further alleges as follows:

Deleted: 35

129. Defendant was at all times material the "employer" of Plaintiff, Ivan Grant, as the term is defined by the Civil Rights Act, 42 U.S.C. § 2000e(b).

Deleted: 1

130. Plaintiff, Ivan Grant, was at all times material an "employee" of Defendant, as the term is defined by the Civil Rights Act, 42 U.S.C. § 2000e(f).

131. Title VII of the Civil Rights Act provides as follows:

**(a)Employer practices**

It shall be an unlawful employment practice for an employer—

> **(1)** to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
>
> **(2)** to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S. Code § 2000e–2.

132. Mr. Grant is a dark-skinned Black man whose parents are from the Virgin Islands and who was born in Puerto Rico.

133. Mr. Grant possessed the skills, background, and qualifications necessary to perform the duties of his position.

134. Mr. Grant performed his work for Defendant satisfactorily, and he was in all respects a good employee of Defendant.

135. Defendant discriminated against Mr. Grant by failing to treat him the same or similarly to its non-Black employees, including Defendant's direct employees and the SNI employees who provided services to Defendant, as a result of his race and/or national origin.

136. Ultimately, Defendant was faced with the decision about whether to terminate employees, and if so, which ones.

137. Defendant based its decision to terminate employees on their race, in particular, whether they were Black (or seemed Hispanic) or not, in deciding who to terminate in January 2024.

138. Defendant retained its non-Black and Hispanic employees and non-Black SNI employees who had less seniority and who were performing the same or similar work, terminating Mr. Grant's employment instead.

**Deleted:** , and who had less seniority

139. More specifically, Defendant fired Mr. Grant and utilized its non-Black (Hispanic) employees who had less seniority in order to continue the performance of the work at the location at which he was assigned to work.

140. Upon information and belief, the SNI employees whom Defendant retained, and continued to use after January 2024 to perform the work Mr. Grant had performed, were predominantly non-Black.

141. The discriminatory actions of Defendant against Mr. Grant constitute an adverse employment action because of his race and/or national origin for purposes of Title VII of the Civil Rights Act.

142. These actions constitute an ultimate employment decision, altered the compensation, terms, conditions, or privileges of the employment of Mr. Grant and/or adversely affected his status as an employee.

143. As such, the termination of Mr. Grant's employment because of his race and/or national origin constitutes an adverse employment action within the meaning of Title VII of the Civil Rights Act.

144. Defendant's actions were malicious and demonstrated a reckless indifference to the rights of Mr. Grant pursuant to Title VII of the Civil Rights Act.

145. The aforementioned acts of commission and omission by Defendant were done willfully, wantonly, and with reckless disregard for the consequences of such actions.

146. Mr. Grant suffered damages in the form of lost income in the past, lost income in the future, lost benefits, lost seniority rights, mental anguish, loss of dignity, and other intangible injuries.

147. Pursuant to Title VII of the Civil Rights Act, Mr. Grant is entitled to recover his attorney's fees and costs from Defendant, in addition to damages and punitive damages.

WHEREFORE Plaintiff, Ivan Grant, demands the entry of a judgment in his favor and against Defendant, StratAir Aviation Services, LLC, after a trial by jury, declaring that Defendant violated Title VII of the Civil Rights Act in discriminating against him because of his race, awarding him compensatory damages including the loss of income in the past and in the future, lost benefits, seniority rights, for mental anguish, loss of dignity, other intangible injuries,

for punitive damages, granting him a permanent injunction against Defendant from engaging in discriminatory employment practices on the basis of race, promoting Plaintiffs to the position to which he should be holding, and awarding him taxable costs and attorney's fees.

**COUNT V – VIOLATION(S) OF THE FCRA**
**(IVAN GRANT – DISCRIMINATION)**

Plaintiff, Ivan Grant, reincorporates and re-alleges paragraphs 1 through 5 and 25 through 54 as though set forth fully herein and further alleges as follows:

Deleted: 35

148. The Florida Civil Rights Act of 1992 ("FCRA") makes it unlawful for an employer such as the Defendant to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment because of that individual's race.

149. Defendant was, at all times material to this action, a "person" and/or an "employer" that was and remains subject to the Florida Civil Rights Act of 1992 by employing more than 15 people for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

150. The FCRA prohibits Defendant from making employment decisions or from taking personnel actions affecting the terms, conditions, and/or privileges of employment based upon race considerations.

151. The FCRA allows a prevailing employee to obtain an order prohibiting Defendant from engaging in its discriminatory practice(s) and providing affirmative relief from the effects of the practice(s), to recover back pay, compensatory damages, damages for mental anguish, loss of dignity, and any other intangible injuries, and punitive damages. Fla. Stat. §760.11(5).

152. Mr. Grant is a dark-skinned Black man whose parents are from the Virgin Islands

and who was born in Puerto Rico.

153. Mr. Grant possessed the skills, background, and qualifications necessary to perform the duties of his position.

154. Mr. Grant performed his work for Defendant satisfactorily, and he was in all respects a good employee of Defendant.

155. Defendant discriminated against Mr. Grant by failing to treat him the same or similarly to its non-Black employees, including Defendant's direct employees and the SNI employees who provided services to Defendant, as a result of his race and/or national origin.

156. Ultimately, Defendant was faced with the decision about whether to terminate employees, and if so, which ones.

157. Defendant based its decision to terminate employees on their race and/or national origin, in particular, whether they were Black or not, in deciding who to terminate in January 2024.

158. Defendant retained its non-Black (Hispanic) employees and non-Black SNI employees who had less seniority and who were performing the same or similar work, terminating Mr. Grant's employment instead.

**Deleted:** , and who had less seniority

159. More specifically, Defendant fired Mr. Grant and utilized its non-Black (Hispanic) employees who had less seniority in order to continue the performance of the work at the location at which he was assigned to work because of their race and/or national origin.

160. Upon information and belief, the SNI employees whom Defendant retained, and continued to use after January 2024 to perform the work Mr. Grant had performed, were predominantly non-Black.

161. These actions constitute an ultimate employment decision, altered the

compensation, terms, conditions, or privileges of the employment of Mr. Grant, and/or adversely affected his status as an employee.

162. As such, the termination of Mr. Grant's employment because of his race and/or national origin constitutes an adverse employment action within the meaning of the Florida Civil Rights Act.

163. Defendant's actions were malicious and demonstrated a reckless indifference to the rights of Mr. Grant pursuant to the FCRA.

164. The aforementioned acts of commission and omission by Defendant were done willfully, wantonly, and with reckless disregard for the consequences of such actions.

165. Mr. Grant suffered damages in the form of lost income in the past, lost income in the future, lost benefits, lost seniority rights, mental anguish, loss of dignity, and other intangible injuries.

166. Pursuant to the FCRA, Mr. Grant is entitled to recover his attorney's fees and costs from Defendant, in addition to damages and punitive damages.

WHEREFORE Plaintiff, Ivan Grant, demands the entry of a judgment in his favor and against Defendant, StratAir Aviation Services, LLC, after a trial by jury, declaring that Defendant violated the Florida Civil Rights Act by discriminating against him because of his race, awarding him compensatory damages including the loss of income in the past and in the future, lost benefits, seniority rights, for mental anguish, loss of dignity, other intangible injuries, for punitive damages, granting him a permanent injunction against Defendant from engaging in discriminatory employment practices on the basis of race, promoting Plaintiffs to the position to which he should be holding, and awarding him taxable costs and attorney's fees.

**COUNT VI – VIOLATION(S) OF THE ADA**
**(LUIS RODRIGUEZ CERUTO)**

Plaintiff, Luis Rodriguez Ceruto, reincorporates and re-alleges paragraphs 1, 18 through 21, and 25 through 35 as though set forth fully herein and further alleges as follows:

167. Title I of the ADA prohibits an employer from discriminating against "a qualified individual on the basis of disability." 42 U.S.C. § 12112(a).

168. The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of [an] individual; ... or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1).

169. By definition, a "major life activity" includes the following activities:

(1) In general. Major life activities include, but are not limited to:

> (i) Caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting, reaching, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, interacting with others, and working; and
>
> (ii) The operation of a major bodily function, including functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions. The operation of a major bodily function includes the operation of an individual organ within a body system.
>
> (2) In determining other examples of major life activities, the term "major" shall not be interpreted strictly to create a demanding standard for disability. ADAAA section 2(b)(4) (Findings and Purposes). Whether an activity is a "major life activity" is not determined by reference to whether it is of "central importance to daily life."

29 C.F.R. §1630.2(i).

170. The ADA extends the prohibition against discrimination to protect employees associated with disabled family members. 42 U.S.C. § 12112(b)(4).

171. Mr. Rodriguez Ceruto's wife has one or more impairment(s) that substantially

limit(s) one or more major life activities due to the nature of her cancer.

172. Mr. Rodriguez Ceruto's wife's cancer substantially limits one or more "major life activities."

173. Mr. Rodriguez Ceruto's wife's cancer diagnosis qualifies as a "disability" under the ADA. *See, e.g.*, 29 C.F.R. § 1630.2(j)(3)(iii).

174. Mr. Rodriguez Ceruto was, because of his association with and responsibilities to his wife, a member of a class of persons protected from discrimination in employment under Title I of the ADA at all times material.

175. The Defendant treated Mr. Rodriguez Ceruto differently after learning that his wife had cancer and that he needed to help her with her care and treatment.

176. In response to Mr. Rodriguez Ceruto's request for reasonable accommodations (of time off from work in advance of each appointment he needed to take/accompany his wife), the Defendant imposed additional requirements on him that were not required of other employees, such as requiring him to provide a doctor's note to take time off from work.

177. After refusing to allow him to miss work to accompany his wife to her medical appointments because "there was too much work," the Defendant terminated Mr. Rodriguez Ceruto's employment because of his requests for time off and the needs of his disabled wife, which required Mr. Rodriguez Ceruto to take time off to accompany his wife in receiving medical care and treatment (for her cancer).

178. Defendant discriminated against Mr. Rodriguez Ceruto "on account of" his association with his disabled wife.

179. Defendant violated the ADA when it treated Mr. Rodriguez Ceruto differently and then refused to accommodate his requests for a reasonable accommodation (time off from

work) and then fired him because of his wife's disability.

180. Defendant's acts of omission and/or of commission as aforesaid violated the ADA, which prohibits discrimination against persons who are disabled, who have a record of disability, or who are regarded as disabled.

181. As a direct and proximate result of Defendant's intentional discrimination as described above, Mr. Rodriguez Ceruto suffered economic losses, including the loss of wages and benefits, seniority, pension, vacation, and sick leave benefits. In addition, his reputation was harmed, and he suffered mental anguish as a direct and proximate result of Defendant's conduct.

182. Defendant's actions have caused and will continue to cause Mr. Rodriguez Ceruto to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, all in an amount to be established at trial.

183. Defendant's actions were undertaken intentionally, willfully, and maliciously with respect to, or with reckless disregard for, Mr. Rodriguez Ceruto's federally protected rights, and he is therefore entitled to punitive damages.

WHEREFORE Plaintiff, Luis Rodriguez Ceruto, demand the entry of a judgment in his favor and against Defendant, StratAir Aviation Services, LLC, after trial by jury, for compensatory damages, including for damages to his reputation, emotional distress damages, mental anguish, to be placed in the position he would be in, but for the unlawful discrimination, through either reinstatement or lost past and future wages and employment-related benefits, the grant of injunctive relief prohibiting StratAir Aviation Services, LLC, from discriminating against him, punitive damages, his attorney's fees, costs, and all interest allowed by law, and such other relief as the Court deems just and proper.

**Deleted:** **COUNT VIII – INTERFERENCE WITH FMLA RIGHTS**
**(LUIS CERUTO RODRIGUEZ)**

**COUNT VII – INTERFERENCE WITH FMLA RIGHTS**
**(LUIS RODRIGUEZ CERUTO)**

Plaintiff, Luis Rodriguez Ceruto, reincorporates and re-alleges paragraphs 1, 18 through 21, and 25 through 35 as though set forth fully herein and further alleges as follows:

Deleted: 35as

184. Mr. Rodriguez Ceruto worked more than 1250 hours in each relevant 12-month period, making him eligible for leave under the FMLA.

185. Mr. Rodriguez Ceruto informed Defendant that he would need to miss work to accompany his wife to obtain medical care following and related to her cancer diagnosis.

186. Mr. Rodriguez Ceruto notified Defendant of his need to take intermittent leaves of absence and that the reason for his need to take these leaves of absence was to accompany his wife to receive medical care and treatment following and as related to her cancer diagnosis, either upon or shortly after learning of the need to take leave.

187. Mr. Rodriguez Ceruto also notified Defendant that he needed to take these leaves of absence to accompany his wife to her medical appointments as her primary caregiver.

188. By informing Defendant of his need to miss work due to his wife's serious health condition(s), Mr. Rodriguez Ceruto was entitled to receive the protected medical leave required by the FMLA.

189. Mr. Rodriguez Ceruto's wife's cancer qualified as a "serious health condition" under the FMLA because her cancer diagnosis required continuing treatment from her health care providers, involving multiple appointments with health care providers, and/or required him to miss work to accompany her on multiple days. *See* 29 C.F.R. §§825.113, 825.115.

190. Defendant interfered with Mr. Rodriguez Ceruto's ability to take intermittent and/or extended FMLA leave by not notifying him of his right to obtain protected leave, by not

permitting him to take leave to accompany his wife to the appointments with her healthcare providers treating her for her cancer, by not designating his leave as FMLA-covered even though the reason qualified, by asking for medical documentation beyond what is permitted by law (i.e., not limiting its request to certification of her treatment and schedule), by making it difficult for him to take time off from work to accompany her to her medical appointments, and in other ways. *But see* 29 U.S.C. §2615.

191. By interfering with the protected leave Mr. Rodriguez Ceruto was entitled to take under the FMLA, as above, and penalizing him for being absent as a factor in terminating his employment, Defendant violated the FMLA.

192. Defendant lacked a reasonable or good faith basis for interfering with Mr. Rodriguez Ceruto's entitlement to take FMLA leave.

193. As a direct and proximate result of Defendant's interference with the protected leave to which Mr. Rodriguez Ceruto was entitled under the FMLA, he suffered damages, including lost wages and benefits, liquidated damages, attorney's fees, and costs.

WHEREFORE Plaintiff, Luis Rodriguez Ceruto, demands the entry of a judgment in his favor and against Defendant, StratAir Aviation Services, LLC, after trial by jury, for actual compensatory damages, front pay, back pay, loss of benefits, loss of earning capacity, liquidated damages, his attorneys' fees under the FMLA, costs, and all interest allowed by law, and such other relief as the Court deems just and proper.

**COUNT VIII – FAILURE TO NOTIFY OF FMLA RIGHTS**
**(LUIS RODRIGUEZ CERUTO)**

Deleted: IX

Deleted: CERUTO RODRIGUEZ

Plaintiff, Luis Rodriguez Ceruto, reincorporates and re-alleges paragraphs 1, 18 through 21, and 25 through 35 as though set forth fully herein and further alleges as follows:

194. Mr. Rodriguez Ceruto worked more than 1250 hours in each relevant 12-month period, making him eligible for leave under the FMLA.

195. Mr. Rodriguez Ceruto informed Defendant that he would need to miss work to accompany his wife to obtain medical care following and related to her cancer diagnosis.

196. Mr. Rodriguez Ceruto notified Defendant of his need to take intermittent leaves of absence and that the reason for his need to take these leaves of absence was to accompany his wife to receive medical care and treatment following and as related to her cancer diagnosis, either upon or shortly after learning of the need to take leave.

197. Mr. Rodriguez Ceruto also notified Defendant that he needed to take these leaves of absence to accompany his wife to her medical appointments as her primary caregiver.

198. By informing Defendant of his need to miss work due to his wife's serious health condition(s), Mr. Rodriguez Ceruto was entitled to receive the protected medical leave required by the FMLA.

199. Mr. Rodriguez Ceruto's wife's cancer qualified as a "serious health condition" under the FMLA because her cancer diagnosis required continuing treatment from her health care providers, involving multiple appointments with health care providers, and/or required him to miss work to accompany her on multiple days. *See* 29 C.F.R. §§825.113, 825.115.

200. Despite its knowledge of Mr. Rodriguez Ceruto's qualifying event for FMLA, Defendant failed to (a) provide him with notice that the leave he requested would qualify as protected leave under the FMLA, (b) notify him of his right to take FMLA leave, and (c) provide him with any paperwork concerning his FMLA rights. *See* 29 C.F.R. §825.300.

201. Defendant also failed to notify Mr. Rodriguez Ceruto that he could take extended or intermittent FMLA leave FMLA. *See* 29 C.F.R. §825.300.

202. Instead of providing Mr. Rodriguez Ceruto with a written FMLA notice of his rights under the FMLA, or any FMLA-related paperwork, Defendant attempted to avoid Mr. Rodriguez Ceruto finding out that he had certain rights under the FMLA. *But see* 29 U.S.C. §2615.

203. Defendant lacked a reasonable or good faith basis for failing to notify Mr. Rodriguez Ceruto of his rights under the FMLA leave.

204. After initially permitting him to miss work for specific hours, Defendant refused to permit him to continue to miss work on other occasions, intermittently, to accompany his wife to her medical appointments because "there was too much work."

205. Mr. Rodriguez Ceruto was unaware that he was entitled to miss work to accompany his wife to her medical appointments because the Defendant did not notify him of his rights afforded by the FMLA or that he could not be retaliated against for requesting time off for reasons permitted by the FMLA.

206. As a direct and proximate result of Defendant's failure to notify Mr. Rodriguez Ceruto of his rights under the FMLA, he suffered damages, including lost wages and benefits, liquidated damages, attorney's fees, and costs.

WHEREFORE Plaintiff, Luis Rodriguez Ceruto, demands the entry of a judgment in his favor and against Defendant, StratAir Aviation Services, LLC, after trial by jury, for actual compensatory damages, front pay, back pay, loss of benefits, loss of earning capacity, liquidated damages, his attorneys' fees under the FMLA, costs, and all interest allowed by law, and such other relief as the Court deems just and proper.

**COUNT IX – UNLAWFUL FMLA RETALIATION**
**(LUIS RODRIGUEZ CERUTO)**

Deleted: Cepero

Deleted: X

Deleted: CERUTO RODRIGUEZ

Plaintiff, Luis Rodriguez Ceruto, reincorporates and re-alleges paragraphs 1, 18 through 21, and 25 through 35 as though set forth fully herein and further alleges as follows:

Deleted: Ceruto Rodriguez

Deleted: 35as

207. Mr. Rodriguez Ceruto worked more than 1250 hours in each relevant 12-month period, making him eligible for leave under the FMLA.

208. Mr. Rodriguez Ceruto informed Defendant that he would need to miss work to accompany his wife to obtain medical care following and related to her cancer diagnosis.

209. Mr. Rodriguez Ceruto notified Defendant of his need to take intermittent leaves of absence and that the reason for his need to take these leaves of absence was to accompany his wife to receive medical care and treatment following and as related to her cancer diagnosis, either upon or shortly after learning of the need to take leave.

210. Mr. Rodriguez Ceruto also notified Defendant that he needed to take these leaves of absence to accompany his wife to her medical appointments as her primary caregiver.

211. By informing Defendant of his need to miss work due to his wife's serious health condition(s), Mr. Rodriguez Ceruto was entitled to receive the protected medical leave required by the FMLA.

212. Mr. Rodriguez Ceruto's wife's cancer qualified as a "serious health condition" under the FMLA because her cancer diagnosis required continuing treatment from her health care providers, involving multiple appointments with health care providers, and/or required him to miss work to accompany her on multiple days. *See* 29 C.F.R. §§825.113, 825.115.

213. After Defendant provided Mr. Rodriguez Ceruto with a brief leave to undergo surgery, Defendant retaliated against Mr. Rodriguez Ceruto by failing to provide him with additional medical leave (that did not exceed the equivalent of 12 workweeks), by increasing his workload, and terminating his employment because he requested medical leave. *But see* 29 U.S.C.

§2615.

214. Defendant lacked a reasonable or good faith basis for retaliating against Mr. Rodriguez Ceruto for requesting or taking any leave of absence to which he was entitled under the FMLA.

215. As a direct and proximate result of Defendant's retaliatory conduct, Mr. Rodriguez Ceruto suffered damages, including lost wages and benefits, liquidated damages, attorney's fees, and costs.

WHEREFORE Plaintiff, Luis Rodriguez Ceruto, demands the entry of a judgment in his favor and against Defendant, StratAir Aviation Services, LLC, after trial by jury, for actual compensatory damages, front pay, back pay, loss of benefits, loss of earning capacity, to be placed in the position he would be in but for the unlawful discrimination, through either reinstatement or lost past and future wages and employment-related benefits, liquidated damages, his attorneys' fees under the FMLA, costs, and all interest allowed by law, and such other relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs, Ivan Grant, Alex Laffita Ortiz, Henry Pinto Sumoza, Eyonny Prado Duran, Luis Rodriguez Ceruto, and Luis Same Gonzalo, demand a trial by jury of all issues so triable.

Dated this 24th day of September 2026.

s/ Patrick Brooks LaRou
Brian H. Pollock, Esq. (174742)
brian@fairlawattorney.com
Patrick Brooks LaRou (1039018)
brooks@fairlawattorney.com
FAIRLAW FIRM
135 San Lorenzo Avenue, Suite 770
Coral Gables, Florida 33146
Telephone: (305) 230-4884

Deleted: ¶
Deleted: 23rd
Deleted: October 2025
Deleted: Brian H. Pollock, Esq.
Deleted: Suite 770
Deleted: Coral Gables, FL 33146

*Counsel for Plaintiffs*

Deleted: Tel: 305.230.4884