UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:25-CV-24505-MOORE/ELFENBEIN

IVAN GRANT,
ALEX LAFFITA ORTIZ,
HENRY PINTO SUMOZA,
EYONNY PRADO DURAN,
LUIS RODRIGUEZ CERUTO,
and LUIS SAME GONZALO,

Plaintiffs,

vs.

STRATAIR AVIATION
SERVICES, LLC,

Defendants.

_______________________________/

**DEFENDANT'S AMENDED RESPONSES TO PLAINTIFFS' FIRST REQUESTS FOR ADMISSIONS**

Defendant, STRATAIR AVIATION SERVICES, LLC. ("StratAir"), by and through its undersigned counsel, hereby responds to Plaintiffs' IVAN GRANT, ALEX LAFFITA ORTIZ, HENRY PINTO SUMOZA, EYONNY PRADA DURAN, LUIS RODRIGUEZ CERUTO, and LUIS SAME GONZALO (collectively, "Plaintiffs") First Requests for Admissions to Defendant under Certificate of Service dated March 18, 2026, by responding as follows:

1) Admit that StratAir did not utilize a written, objective scoring system or rubric to evaluate employees for selection in the January 2024 layoff.

**ANSWER: Admitted that StratAir did not utilize a formal written scoring system or rubric to evaluate employees for selection in the January 2024 layoff. StratAir denies that it was required to use such a system. StratAir's selection process involved multiple levels of review: supervisors provided performance observations based on direct knowledge of employees' work; Gisela Barrera and Armando Portales Viera reviewed this information along with their own observations; and Jorge Corral made the final termination decisions. StratAir made its layoff decisions based on legitimate, non-discriminatory business considerations, including assessments of employees' job performance, skills, and qualifications as observed in the ordinary course of business.**

2) Admit that StratAir did not create written evaluations or scoring sheets for each employee before selecting employees for the January 2024 layoff.

**ANSWER: Admitted.**

3) Admit that decisions about which employees to select for the January 2024 layoff were made based on subjective evaluations by supervisors rather than objective, quantifiable performance metrics.

**ANSWER: Denied.**

4) Admit that StratAir did not conduct a statistical analysis or adverse impact analysis before implementing the January 2024 layoff to determine whether employees age 40 and over would be disproportionately affected.

**ANSWER: Admitted.**

5) Admit that StratAir did not conduct any investigation or analysis to determine whether the January 2024 layoff would have a disparate impact on employees age 40 and over before making the termination decisions.

**ANSWER: Admitted except StratAir denies that any such investigation or analysis was legally required. StratAir made its layoff decisions based on legitimate, non-discriminatory business considerations, including assessments of employees' job performance, skills, and qualifications as observed and documented by supervisors in the ordinary course of business.**

6) Admit that StratAir did not consult with legal counsel or a human resources professional regarding whether the selection criteria or process for the January 2024 layoff complied with the Age Discrimination in Employment Act before implementing the layoff.

**ANSWER: Denied, as it relates to consultation with human resources staff regarding the January 2024 layoff. StratAir objects to this request to the extent that it requires disclosure of attorney-client privileged communications regarding the January 2024 layoff.**

7) Admit that the decision-makers for the January 2024 layoff did not receive training on how to conduct a lawful reduction in force in compliance with age discrimination laws before making the termination decisions.

**ANSWER: Admitted except StratAir denies that any such training was legally required. StratAir made its layoff decisions based on legitimate, non-discriminatory business considerations, including assessments of employees' job performance, skills, and qualifications as observed and documented by supervisors in the ordinary course of business.**

8) Admit that independent contractors, temporary workers, and staffing agency workers who performed warehouse, cargo, or security work at the Miami location in January 2024 were excluded from the decisional unit for the January 2024 layoff.

**ANSWER: Admitted that independent contractors, temporary workers, and staffing agency workers were not part of StratAir's decisional unit because they were not employed by StratAir. StratAir does not employ individual independent contractors; any non-employee personnel performing work at the Miami location were employed by third-party staffing agencies, not StratAir. Denied to the extent the Request implies they were "excluded" from the January 2024 layoff—staffing agency engagements were also reduced during this time period.**

9) Admit that no independent contractor, temporary worker, or staffing agency worker had their contract or engagement terminated as part of the January 2024 reduction in force.

**ANSWER: Denied. Staffing agency engagements were also reduced during this time period.**

10) Admit that at least one independent contractor, temporary worker, or staffing agency worker performed warehouse handling work, cargo handling work, or security work at the Miami location in February 2024.

**ANSWER: Admitted except StratAir does not employ individual independent contractors; any non-employee personnel performing work at the Miami location were employed by third-party staffing agencies, not StratAir. StratAir does not control the ages of workers assigned by staffing agencies and did not direct staffing agencies to assign workers of any particular age. Staffing agency engagements were also reduced during this time period.**

11) Admit that StratAir hired or engaged at least five independent contractors, temporary workers, or staffing agency workers to perform warehouse, cargo, or security work at the Miami location between October 1, 2023 and January 13, 2024.

**ANSWER: StratAir denies that it "hired or engaged" independent contractors, temporary workers, or staffing agency workers as those terms imply an employment relationship. StratAir does not employ individual independent contractors; any non-employee personnel performing work at the Miami location during this period were employed by third-party staffing agencies, not StratAir. StratAir does not control the ages of workers assigned by staffing agencies. Subject to this clarification, StratAir admits that third-party staffing agency workers performed work at the Miami location during this period, a practice that predated and was unrelated to the January 2024 layoff.**

12) Admit that the total number of persons (employees plus independent contractors, temporary workers, and staffing agency workers combined) performing warehouse, cargo, or security work at the Miami location did not decrease by 28 persons following the January 2024 layoff.

**ANSWER: Denied.**

13) Admit that the average age of independent contractors performing warehouse, cargo, or security work at the Miami location in January 2024 was lower than the average age of employees performing the same work.

**ANSWER: Denied. StratAir does not employ individual independent contractors; any non-employee personnel performing work at the Miami location were employed by third-party staffing agencies, not StratAir. StratAir is without knowledge of the ages of any staffing agency workers who performed work at the Miami location and does not track such information.**

14) Admit that StratAir's supervisor Jose (also known as "Bori") participated in selecting employees for termination in the January 2024 layoff.

**ANSWER: Denied.**

15) Admit that Gisela Barrera participated in selecting employees for termination in the January 2024 layoff.

**ANSWER: Admitted.**

16) Admit that Armando Portales Viera participated in or was consulted about selecting employees for termination in the January 2024 layoff.

**ANSWER: Admitted.**

17) Admit that StratAir's supervisor Jose (also known as "Bori") provided input, recommendations, or evaluations of employees that were considered by decision-makers in selecting employees for the January 2024 layoff.

**ANSWER: Admitted that supervisor Jose Alverio provided observations regarding employees' job performance. Supervisor observations were one of several factors considered. Gisela Barrera and Armando Portales Viera reviewed this information along with their own observations and made recommendations to Jorge Corral, who made the final termination decisions. StratAir made its layoff decisions based on legitimate, non-discriminatory business considerations.**

18) Admit that Armando Portales Viera provided input, recommendations, or evaluations of employees that were considered by decision-makers in selecting employees for the January 2024 layoff.

**ANSWER: Admitted.**

19) Admit that Gisela Barrera relied on input, recommendations, or evaluations from José Alverio in selecting employees for the January 2024 layoff.

**ANSWER: Admitted that Jose Alverio and other warehouse supervisors provided observations regarding employees' job performance. Supervisor observations were one of several factors considered. Gisela Barrera and Armando Portales Viera reviewed this information along with their own observations and made recommendations to Jorge Corral, who made the final termination decisions. StratAir made its layoff decisions based on legitimate, non-discriminatory business considerations.**

20) Admit that Gisela Barrera relied on input, recommendations, or evaluations from Armando Portales Viera in selecting employees for the January 2024 layoff.

**ANSWER: Admitted that Armando Portales Viera provided observations and recommendations regarding employees' job performance. Gisela Barrera and Armando Portales Viera reviewed supervisor input along with their own observations and made recommendations to Jorge Corral, who made the final termination decisions. StratAir made its layoff decisions based on legitimate, non-discriminatory business considerations.**

21) Admit that StratAir's supervisor Jose (also known as "Bori") had authority to recommend which employees should be terminated in the January 2024 layoff.

**ANSWER: Denied.**

22) Admit that Armando Portales Viera had authority to recommend which employees should be terminated in the January 2024 layoff.

**ANSWER: Admitted.**

23) Admit that StratAir's supervisor Jose's (also known as "Bori") assessment of an employee's performance was a factor in whether that employee was selected for termination in the January 2024 layoff.

**ANSWER: Admitted that supervisor Jose Alverio provided observations regarding employees' job performance. Supervisor observations were one of several factors considered. Gisela Barrera and Armando Portales Viera reviewed this information along with their own observations and made recommendations to Jorge Corral, who made the final termination decisions. StratAir made its layoff decisions based on legitimate, non-discriminatory business considerations.**

24) Admit that Armando Portales Viera's assessment of an employee's performance was a factor in whether that employee was selected for termination in the January 2024 layoff.

**ANSWER: Admitted that Armando Portales Viera's observations of employees' job performance were one of several factors considered. Gisela Barrera and Armando Portales Viera reviewed supervisor input along with their own observations and**

**made recommendations to Jorge Corral, who made the final termination decisions. StratAir made its layoff decisions based on legitimate, non-discriminatory business considerations.**

25) Admit that Gisela Barrera did not have personal, first-hand knowledge of the day-to-day performance of employees working the day shift and relied on input from day shift supervisors including StratAir's supervisor Jose (also known as "Bori") in selecting day shift employees for termination.

**ANSWER: Denied.**

26) Admit that StratAir did not have a formal, documented decision-making structure that separated the authority to recommend employees for termination from the authority to make final termination decisions in the January 2024 layoff.

**ANSWER: Denied. StratAir denies that a formal, documented decision-making structure" was legally required. StratAir's decision-making process did separate the authority to recommend employees for termination from the authority to make final termination decisions: supervisors provided input, recommendations, and evaluations of employees; Gisela Barrera and Armando Portales Viera reviewed this information along with their own observations and made recommendations; and Jorge Corral made the final termination decisions.**

27) Admit that the individual(s) who directly supervised each employee on a day-to-day basis had significant input into whether that employee was selected for termination in the January 2024 layoff.

**ANSWER: Admitted that Plaintiffs' supervisors provided observations regarding employees' job performance that were considered in the decision-making process for the January 2024 layoff. Supervisor observations were one of several factors considered. Gisela Barrera and Armando Portales Viera reviewed this information along with their own observations and made recommendations to Jorge Corral, who made the final termination decisions. StratAir made its layoff decisions based on legitimate, non-discriminatory business considerations, including assessments of employees' job performance, skills, and qualifications as observed in the ordinary course of business.**

28) Admit that Armando Portales Viera participated in both hiring decisions and termination decisions for employees at the Miami warehouse location.

**ANSWER: Admitted that Armando Portales Viera participated in hiring decisions and termination decisions related to certain employees at StratAir's Miami warehouse location. Otherwise denied.**

29) Admit that StratAir's supervisor Jose (also known as "Bori") made statements to employees in late 2023 or early 2024 referencing hiring or bringing in younger workers.

**ANSWER: Denied.**

30) Admit that supervisor StratAir's supervisor Jose (also known as "Bori") made statements to employees in late 2023 or early 2024 referencing "new blood" or needing to replace employees with "new blood."

**ANSWER: Denied.**

31) Admit that StratAir's supervisor Jose (also known as "Bori") made statements to employees in December 2023 suggesting that employees should dye their hair or beards.

**ANSWER: Denied.**

32) Admit that StratAir's supervisor Jose (also known as "Bori") made statements to employees referencing bringing in workers from staffing agencies in late 2023 or early 2024.

**ANSWER: Denied.**

33) Admit that the StratAir's employee(s) who made statements including references to "old people," "new blood," "dye your hair," or "younger workers from agencies" in late 2023 or early 2024 were the same persons who participated in selecting employees for the January 2024 layoff or provided input to those who made the final selections.

**ANSWER: Denied.**

34) Admit that at least one StratAir employee under age 40 who had documented performance issues, attendance issues, or disciplinary warnings in 2023 was not selected for termination in the January 2024 layoff.

**ANSWER: Denied. StratAir made its layoff decisions based on legitimate, non-discriminatory business considerations, including assessments of employees' job performance, skills, and qualifications as observed and documented by supervisors in the ordinary course of business.**

35) Admit that StratAir did not provide Plaintiff Ivan Grant with any written performance improvement plan before selecting him for the January 2024layoff.

**ANSWER: Admitted. However, Plaintiff Grant did receive an Employee Warning Notice.**

36) Admit that StratAir did not provide Plaintiff Alex Laffita Ortiz with any written performance improvement plan before selecting him for the January 2024 layoff.

**ANSWER: Admitted.**

37) Admit that StratAir did not provide Plaintiff Henry Pinto Sumoza with any written performance improvement plan before selecting him for the January 2024 layoff.

**ANSWER: Admitted.**

38) Admit that StratAir did not provide Plaintiff Eyonny Prado Duran with any written performance improvement plan before selecting him for the January 2024 layoff.

**ANSWER: Admitted.**

39) Admit that StratAir did not provide Plaintiff Luis Rodriguez Ceruto with any written performance improvement plan before selecting him for the January 2024 layoff.

**ANSWER: Admitted. However, Plaintiff Rodriguez Ceruto did receive an Employee Warning Notice.**

40) Admit that StratAir did not provide Plaintiff Luis Same Gonzalo with any written performance improvement plan before selecting him for the January 2024 layoff.

**ANSWER: Admitted.**

41) Admit that StratAir did not counsel or warn Plaintiff Ivan Grant in writing about alleged performance deficiencies before selecting him for the January 2024 layoff.

**ANSWER: Denied.**

42) Admit that StratAir did not counsel or warn Plaintiff Alex Laffita Ortiz in writing about alleged performance deficiencies before selecting him for the January 2024 layoff.

**ANSWER: Admitted.**

43) Admit that StratAir did not counsel or warn Plaintiff Henry Pinto Sumoza in writing about alleged performance deficiencies before selecting him for the January 2024 layoff.

**ANSWER: Admitted.**

44) Admit that StratAir did not counsel or warn Plaintiff Eyonny Prado Duran in writing about alleged performance deficiencies before selecting him for the January 2024 layoff.

**ANSWER: Admitted.**

45) Admit that StratAir did not counsel or warn Plaintiff Luis Rodriguez Ceruto in writing about alleged performance deficiencies before selecting him for the January 2024 layoff.

**ANSWER: Denied.**

46) Admit that StratAir did not counsel or warn Plaintiff Luis Same Gonzalo in writing about alleged performance deficiencies before selecting him for the January 2024 layoff.

**ANSWER: Admitted.**

47) Admit that StratAir did not provide written documentation of the specific performance deficiencies or reasons for selecting Plaintiff Ivan Grant for termination before the termination decision was made.

**ANSWER: Admitted except StratAir denies that such written documentation was legally required. StratAir made its layoff decisions based on legitimate, non-discriminatory business considerations, including assessments of employees' job performance, skills, and qualifications as observed and documented by supervisors in the ordinary course of business.**

48) Admit that StratAir did not provide written documentation of the specific performance deficiencies or reasons for selecting Plaintiff Alex Laffita Ortiz for termination before the termination decision was made.

**ANSWER: Admitted except StratAir denies that such written documentation was legally required. StratAir made its layoff decisions based on legitimate, non-discriminatory business considerations, including assessments of employees' job performance, skills, and qualifications as observed and documented by supervisors in the ordinary course of business.**

49) Admit that StratAir did not provide written documentation of the specific performance deficiencies or reasons for selecting Plaintiff Henry Pinto Sumoza for termination before the termination decision was made.

**ANSWER: Admitted except StratAir denies that such written documentation was legally required. StratAir made its layoff decisions based on legitimate, non-discriminatory business considerations, including assessments of employees' job performance, skills, and qualifications as observed and documented by supervisors in the ordinary course of business.**

50) Admit that StratAir did not provide written documentation of the specific performance deficiencies or reasons for selecting Plaintiff Eyonny Prado Duran for termination before the termination decision was made.

**ANSWER: Admitted except StratAir denies that such written documentation was legally required. StratAir made its layoff decisions based on legitimate, non-discriminatory business considerations, including assessments of employees' job performance, skills, and qualifications as observed and documented by supervisors in the ordinary course of business.**

51) Admit that StratAir did not provide written documentation of the specific performance deficiencies or reasons for selecting Plaintiff Luis Rodriguez Ceruto for termination before the termination decision was made.

**ANSWER: Admitted except StratAir denies that such written documentation was legally required. StratAir made its layoff decisions based on legitimate, non-discriminatory business considerations, including assessments of employees' job**

**performance, skills, and qualifications as observed and documented by supervisors in the ordinary course of business.**

52) Admit that StratAir did not provide written documentation of the specific performance deficiencies or reasons for selecting Plaintiff Luis Same Gonzalo for termination before the termination decision was made.

**ANSWER: Admitted except StratAir denies that such written documentation was legally required. StratAir made its layoff decisions based on legitimate, non-discriminatory business considerations, including assessments of employees' job performance, skills, and qualifications as observed and documented by supervisors in the ordinary course of business.**

53) Admit that Plaintiff Ivan Grant was one of only two Black employees selected for termination in the January 2024 layoff.

**ANSWER: Admitted.**

54) Admit that Plaintiff Ivan Grant was terminated by StratAir in November 2023 and subsequently reinstated in November or December 2023.

**ANSWER: Admitted.**

55) Admit that Plaintiff Ivan Grant's November 2023 termination and reinstatement were discussed by decision-makers in connection with the decision to terminate him in January 2024.

**ANSWER: Admitted.**

56) Admit that in November 2023, Plaintiff Ivan Grant complained to StratAir regarding discrimination.

**ANSWER: Denied.**

57) Admit that at least one employee under age 40 who received written discipline in 2023 was not selected for termination in the January 2024 layoff.

**ANSWER: Denied.**

58) Admit that at least one non-Black Hispanic employee who had less seniority than Plaintiff Ivan Grant and performed the same or similar work was retained following the January 2024 layoff.

**ANSWER: Admitted.**

59) Admit that Gisela Barrera made the decision to select Plaintiff Ivan Grant for termination in the January 2024 layoff.

**ANSWER: Admitted that Gisela Barrera was one of the decision-makers that selected Plaintiff Ivan Grant for termination in the January 2024 layoff. Otherwise denied.**

60) Admit that Gisela Barrera's decision to select Plaintiff Ivan Grant for termination was based in part on input or evaluations provided by supervisors Jose (also known as "Bori") or Armando Portales Viera.

**ANSWER: Admitted that Gisela Barrera considered observations regarding Plaintiff Ivan Grant's job performance, including observations from supervisors Jose (also known as "Bori") and Armando Portales Viera. Supervisor observations were one of several factors considered. Gisela Barrera and Armando Portales Viera reviewed this information along with their own observations and made recommendations to Jorge Corral, who made the final termination decisions. StratAir made its layoff decisions based on legitimate, non-discriminatory business considerations, including assessments of employees' job performance, skills, and qualifications as observed in the ordinary course of business.**

61) Admit that Armando Portales Viera participated in the decision to hire Plaintiff Ivan Grant in 2022.

**ANSWER: Admitted.**

62) Admit that Armando Portales Viera participated in the decision to terminate Plaintiff Ivan Grant in January 2024.

**ANSWER: Admitted.**

63) Admit that at least one employee or independent contractor under age 40 was hired or engaged to perform warehouse or cargo work at the Miami location between October 2023 and March 2024.

**ANSWER: StratAir does not employ individual independent contractors; any non-employee personnel performing work at the Miami location were employed by third-party staffing agencies, not StratAir. StratAir does not control the ages of workers assigned by staffing agencies. As to employees, StratAir admits that it hired employees to perform warehouse or cargo work at the Miami location between October 2023 and March 2024. Employees over age 40 were also hired during this period, including Plaintiff Ivan Grant who was reinstated to employment. StratAir denies that the hiring of any particular employee is relevant to Plaintiffs' claims. Plaintiffs allege that "Defendant fired Plaintiffs and other older employees with more seniority, and retained younger employees with less seniority, to perform the same or similar jobs."** ***See*** **Amended Complaint, Paragraphs 51, 86. StratAir made its hiring and layoff decisions based on legitimate, non-discriminatory business considerations, including assessments of employees' job performance, skills, and qualifications.**

64) Admit that Plaintiff Ivan Grant was the only Black employee working the night shift at StratAir's Miami warehouse location in November 2023 through January 2024.

**ANSWER: Denied.**

65) Admit that Plaintiff Alex Laffita Ortiz was transferred from inside warehouse work to outside cargo work in 2023.

**ANSWER: Admitted that Plaintiff Laffita Ortiz requested to work on the cargo ramp outside. Otherwise denied.**

66) Admit that Plaintiff Alex Laffita Ortiz was later transferred back from outside cargo work to inside warehouse work in 2023.

**ANSWER: Admitted that Plaintiff Laffita Ortiz was asked to return to the warehouse because his performance on the cargo ramp was unsatisfactory. Otherwise denied.**

67) Admit that Mr. Laffita Ortiz's hourly pay rate changed as a result of one or both of these transfers described in Requests No. 65 and 66 above.

**ANSWER: Admitted that Plaintiff Laffita Ortiz was paid $1 more per hour than his regular pay while working on the cargo ramp. Otherwise denied.**

68) Admit that a supervisor or manager represented to Plaintiff Alex Laffita Ortiz that his position was "permanent" in late 2023.

**ANSWER: Denied.**

69) Admit that Plaintiff Alex Laffita Ortiz sent an email to StratAir's President after his termination raising concerns about his termination.

**ANSWER: Admitted.**

70) Admit that StratAir did not conduct an investigation in response to Plaintiff Alex Laffita Ortiz's email to StratAir's President.

**ANSWER: Denied. Plaintiff Alex Laffita Ortiz's email to StratAir's President was sent after his termination, not during his employment. StratAir's President forwarded the email to Human Resources, and Human Resources responded internally to the concerns raised. StratAir had already made its layoff decisions based on legitimate, non-discriminatory business considerations, including assessments of employees' job performance, skills, and qualifications, and the January 2024 layoff included employees of different ages and backgrounds.**

71) Admit that at least one employee under age 40 performed inside warehouse work at StratAir's Miami location in February 2024.

**ANSWER: Denied. StratAir did not use the term or distinction "inside warehouse work" and cannot admit or deny a request based on an undefined term. StratAir denies that the ages of employees performing warehouse work after the January 2024 layoff is relevant to Plaintiffs' claims. Plaintiffs allege that "Defendant fired Plaintiffs and other older employees with more seniority, and retained younger employees with less seniority, to perform the same or similar jobs."** ***See*** **Amended Complaint, Paragraphs 51, 86. StratAir made its layoff decisions based on legitimate, non-discriminatory business considerations, including assessments of employees' job performance, skills, and qualifications.**

72) Admit that Plaintiff Alex Laffita Ortiz trained or assisted in training at least one younger or newly hired employee or independent contractor who performed work for StratAir in late 2023.

**ANSWER: Denied.**

73) Admit that at least one employee or independent contractor performing work for StratAir whom Plaintiff Alex Laffita Ortiz trained in late 2023 was retained following the January 2024 layoff while Mr. Laffita was terminated.

**ANSWER: Denied. As stated in response to Request No. 72, StratAir denies that Plaintiff Laffita Ortiz trained or assisted in training any employee or independent contractor. StratAir made its layoff decisions based on legitimate, non-discriminatory business considerations, including assessments of employees' job performance, skills, and qualifications.**

74) Admit that individual named Jose (also known as "Bori") supervised Mr. Laffita Ortiz during his employment and provided evaluations or assessments of his performance to decision-makers.

**ANSWER: Admitted that Jose (also known as "Bori") supervised Mr. Laffita Ortiz during his employment and provided observations regarding employees' job performance. Supervisor observations were one of several factors considered. Gisela Barrera and Armando Portales Viera reviewed this information along with their own observations and made recommendations to Jorge Corral, who made the final termination decisions. StratAir made its layoff decisions based on legitimate, non-discriminatory business considerations, including assessments of employees' job performance, skills, and qualifications as observed in the ordinary course of business.**

75) Admit that Gisela Barrera made the decision to select Plaintiff Alex Laffita Ortiz for termination in the January 2024 layoff based at least in part on supervisor Jose's (also known as "Bori") input or recommendations.

**ANSWER: Denied.**

76) Admit that at least one independent contractor, temporary worker, or staffing agency worker was assigned to perform inside warehouse work (the same work Plaintiff Alex Laffita performed) after his termination in January 2024.

**ANSWER: Denied. StratAir did not use the term or distinction "inside warehouse work" and cannot admit or deny a request based on an undefined term. StratAir does not employ individual independent contractors; any non-employee personnel performing work at the Miami location were employed by third-party staffing agencies, not StratAir. StratAir denies that whether non-employees performed work similar to Plaintiff Laffita Ortiz's after the January 2024 layoff is relevant to his claims. Plaintiff Laffita Ortiz alleged that "Defendant fired Plaintiffs and other older employees with more seniority, and retained younger employees with less seniority, to perform the same or similar jobs."** ***See*** **Amended Complaint, Paragraphs 51, 86. StratAir made its layoff decisions based on legitimate, non-discriminatory business considerations, including assessments of employees' job performance, skills, and qualifications.**

77) Admit that the transfers Plaintiff Alex Laffita experienced between inside and outside work in 2023 were considered or discussed in connection with the decision to terminate him in January 2024.

**ANSWER: Denied. StratAir did not use the terms or distinction "inside and outside work" and cannot admit or deny a request based on undefined terms. StratAir made its layoff decisions based on legitimate, non-discriminatory business considerations, including assessments of employees' job performance, skills, and qualifications as observed and documented by supervisors in the ordinary course of business.**

78) Admit that Plaintiff Henry Pinto Sumoza was 75 years old when his employment was terminated in January 2024.

**ANSWER: Admitted.**

79) Admit that Plaintiff Henry Pinto Sumoza complained to at least one supervisor, manager, or HR representative of StratAir that he believed he was being terminated because of his age.

**ANSWER: Denied.**

80) Admit that StratAir did not conduct any investigation in response to Plaintiff Henry Pinto Sumoza's complaint that he believed he was being terminated because of his age.

**ANSWER: Denied. StratAir denies that Plaintiff Pinto Sumoza made a complaint to StratAir. StratAir made its layoff decisions based on legitimate, non-discriminatory business considerations, including assessments of employees' job performance, skills, and qualifications as observed and documented by supervisors in the ordinary course of business.**

81) Admit that the allegation that Plaintiff Henry Pinto Sumoza suffered performance deficiencies was not documented in writing in Mr. Pinto's personnel file before he was selected for the January 2024 layoff.

**ANSWER: Admitted.**

82) Admit that Armando Portales Viera participated in the decision to hire Plaintiff Henry Pinto Sumoza in 2022.

**ANSWER: Admitted.**

83) Admit that Armando Portales Viera participated in the decision to terminate Plaintiff Henry Pinto Sumoza in January 2024.

**ANSWER: Admitted.**

84) Admit that at least one security guard under age 40 was retained at the Miami location following the January 2024 layoff.

**ANSWER: Denied.**

85) Admit that an employee of StratAir named Jose (also known as "Bori") supervised Mr. Pinto Sumoza during his employment.

**ANSWER: Admitted.**

86) Admit that StratAir's supervisor Jose (also known as "Bori") provided input or recommendations regarding Plaintiff Henry Pinto Sumoza to StratAir's decisionmakers for the January 2024 layoff.

**ANSWER: Admitted that supervisor Jose (also known as "Bori") provided observations regarding Plaintiff Henry Pinto Sumoza's job performance. Supervisor observations were one of several factors considered. Gisela Barrera and Armando Portales Viera reviewed this information along with their own observations and made recommendations to Jorge Corral, who made the final termination decisions. StratAir made its layoff decisions based on legitimate, non-discriminatory business considerations.**

87) Admit that at least one independent contractor, temporary worker, or staffing agency worker was assigned to perform security work (the same work Plaintiff Henry Pinto Sumoza performed) after his termination in January 2024.

**ANSWER: Denied. StratAir does not employ individual independent contractors; any non-employee personnel performing work at the Miami location were employed by third-party staffing agencies, not StratAir. StratAir denies that whether non-employees performed security work similar to Plaintiff Pinto Sumoza's after the January 2024 layoff is relevant to his claims. Plaintiff Pinto Sumoza alleged that "Defendant fired Plaintiffs and other older employees with more seniority, and retained younger employees with less seniority, to perform the same or similar jobs."** ***See*** **Amended Complaint,**

**Paragraphs 51, 86. StratAir made its layoff decisions based on legitimate, non-discriminatory business considerations, including assessments of employees' job performance, skills, and qualifications.**

88) Admit that Plaintiff Henry Pinto Sumoza's age (75 years old) was discussed or mentioned by any StratAir decisionmaker or supervisor in connection with his January 2024 termination.

**ANSWER: Denied.**

89) Admit that the physical demands of Plaintiff Henry Pinto Sumoza position(s) or his ability to meet those demands were considered or discussed by StratAir in connection with the decision to terminate him in January 2024.

**ANSWER: Denied. StratAir did not consider or discuss "physical demands" or Plaintiff Henry Pinto Sumoza's "ability to meet those demands" as such. StratAir considered Plaintiff Henry Pinto Sumoza's performance with respect to his essential duties of unloading cargo from flights and loading it into trucks within the expected timeframes in connection with the decision to terminate him in the January 2024 layoff. StratAir made its layoff decisions based on legitimate, non-discriminatory business considerations, including assessments of employees' job performance, skills, and qualifications as observed and documented by supervisors in the ordinary course of business.**

90) Admit that at least one warehouse worker or security guard who had documented performance issues similar to those alleged regarding Plaintiff Henry Pinto Sumoza was retained following the January 2024 layoff.

**ANSWER: Denied.**

91) Admit that StratAir did not offer Plaintiff Henry Pinto Sumoza any alternative position or accommodation before terminating his employment in January 2024.

**ANSWER: Admitted that Plaintiff Pinto Sumoza was not offered any alternative position in January 2024. StratAir denies that Plaintiff Pinto Sumoza requested or required an accommodation, and no such allegation has been made. StratAir made its layoff decisions based on legitimate, non-discriminatory business considerations, including assessments of employees' job performance, skills, and qualifications as observed and documented by supervisors in the ordinary course of business.**

92) Admit that StratAir's supervisors Jose (also known as "Bori") and Wilson Dorado informed Plaintiff Eyonny Prado Duran that his employment was being terminated.

**ANSWER: Admitted, except that StratAir clarifies that Wilson Dorada had a non-supervisory position within StratAir's Human Resources Department.**

93) Admit that StratAir's supervisors Jose (also known as "Bori") participated in the decision to terminate Plaintiff Eyonny Prado Duran's employment.

**ANSWER: Admitted that StratAir supervisor Jose provided observations regarding Plaintiff Eyonny Prado Duran's job performance. Supervisor observations were one of several factors considered. Gisela Barrera and Armando Portales Viera reviewed this information along with their own observations and made recommendations to Jorge Corral, who made the final termination decisions. StratAir made its layoff decisions based on legitimate, non-discriminatory business considerations.**

94) Admit that Plaintiff Eyonny Prado Duran complained to supervisor Lidier on or about January 14, 2024 that StratAir appeared to be targeting older employees for termination.

**ANSWER: Denied.**

95) Admit that when Plaintiff Eyonny Prado Duran asked supervisor Lidier why he was being terminated, Lidier stated that the termination decision was made by supervisor Jose (also known as "Bori") and Wilson Dorado.

**ANSWER: StratAir is without knowledge of Lidier Leon's statement and therefore denies.**

96) Admit that no investigation was conducted by StratAir in response to Plaintiff Eyonny Prado Duran's complaint about age discrimination.

**ANSWER: Denied. StratAir denies that Plaintiff Eyonny Prado Duran made a complaint about age discrimination to StratAir. StratAir made its layoff decisions based on legitimate, non-discriminatory business considerations, including assessments of employees' job performance, skills, and qualifications as observed and documented by supervisors in the ordinary course of business.**

97) Admit that Plaintiff Eyonny Prado Duran provided training or assistance to at least one newly hired or younger employee or independent contractor of StratAir in late 2023.

**ANSWER: Denied.**

98) Admit that at least one employee or independent contractor of StratAir whom Plaintiff Eyonny Prado Duran trained in late 2023 was retained following the January 2024 layoff while Mr. Prado was terminated.

**ANSWER: Denied. StratAir denies that Plaintiff Eyonny Prado Duran trained any employee or staffing agency worker. StratAir does not employ individual independent contractors; any non-employee personnel performing work at the Miami location were employed by third-party staffing agencies, not StratAir. StratAir made its layoff decisions based on legitimate, non-discriminatory business considerations, including assessments of employees' job performance, skills, and qualifications as observed and documented by supervisors in the ordinary course of business.**

99) Admit that the allegations that Plaintiff Eyonny Prado Duran was a "problematic employee" or made "excuses" were not documented in writing in Mr. Prado's personnel file before he was selected for the January 2024 layoff.

**ANSWER: Admitted.**

100) Admit that at least one warehouse handler or cargo handler who had documented attendance or performance issues similar to or more serious than any alleged issues regarding Mr. Prado was retained following the January 2024 layoff.

**ANSWER: Denied.**

101) Admit that Wilson Dorado participated in the decision to terminate Plaintiff Eyonny Prado Duran.

**ANSWER: Denied.**

102) Admit that Plaintiff Eyonny Prado's complaint about age discrimination was considered or discussed by StratAir in connection with the decision not to reverse or rescind his termination.

**ANSWER: Denied. StratAir denies that Plaintiff Eyonny Prado Duran made a complaint about age discrimination to StratAir. StratAir made its layoff decisions based on legitimate, non-discriminatory business considerations, including assessments of employees' job performance, skills, and qualifications as observed and documented by supervisors in the ordinary course of business.**

103) Admit that at least one independent contractor, temporary worker, or staffing agency worker was assigned to perform warehouse or cargo handling work on the same shift Plaintiff Eyonny Prado Duran worked after his termination in January 2024.

**ANSWER: Denied. StratAir does not employ individual independent contractors; any non-employee personnel performing work at the Miami location were employed by third-party staffing agencies, not StratAir. StratAir denies that whether non-employees performed warehouse or cargo handling work similar to Plaintiff Prado Duran's after the January 2024 layoff is relevant to his claims. Plaintiff Prado Duran alleged that "Defendant fired Plaintiffs and other older employees with more seniority, and retained younger employees with less seniority, to perform the same or similar jobs." *See* Amended Complaint, Paragraphs 51, 86. StratAir made its layoff decisions based on legitimate, non-discriminatory business considerations, including assessments of employees' job performance, skills, and qualifications.**

104) Admit that supervisor Lidier participated in employment decisions at the Miami warehouse location or was consulted aboutthe January 2024 layoff decisions.

**ANSWER: Admitted that Lidier Leon was consulted regarding certain employees at the Miami warehouse location prior to the January 2024 layoff decision. Supervisor observations were one of several factors considered. Gisela Barrera and**

**Armando Portales Viera reviewed this information along with their own observations and made recommendations to Jorge Corral, who made the final termination decisions. Otherwise denied.**

105) Admit that Gisela Barrera made the decision that Plaintiff Luis Same Gonzalo should be terminated.

**ANSWER: Admitted that Gisela Barrera and Armando Portales Viera considered observations from warehouse supervisors along with their own observations and made recommendations to Jorge Corral, who made the final termination decisions. Supervisor observations were one of several factors considered. StratAir made its layoff decisions based on legitimate, non-discriminatory business considerations.**

106) Admit that StratAir's supervisor Javier communicated Gisela Barrera's decision to terminate Plaintiff Luis Same Gonzalo to Mr. Same Gonzalo.

**ANSWER: Admitted.**

107) Admit that StratAir's supervisor Javier conducted an "investigation" into Plaintiff Luis Same Gonzalo's work performance or conduct before his termination.

**ANSWER: Admitted that supervisors including Javier were consulted regarding employees' work performance. Otherwise denied.**

108) Admit that Plaintiff Luis Same Gonzalo spoke with StratAir's human resources personnel following his termination notification and raised concerns about age discrimination.

**ANSWER: Denied.**

109) Admit that Gisela Barrera played a role in the decision to terminate Plaintiff Luis Same Gonzalo.

**ANSWER: Admitted.**

110) Admit that StratAir's supervisor Javier reported to Gisela Barrera about Mr. Same Gonzalo before his termination.

**ANSWER: Admitted that supervisor Javier provided observations regarding Mr. Same Gonzalo's job performance to Gisela Barrera. Supervisor observations were one of several factors considered. Gisela Barrera and Armando Portales Viera reviewed this information along with their own observations and made recommendations to Jorge Corral, who made the final termination decisions. StratAir made its layoff decisions based on legitimate, non-discriminatory business considerations.**

111) Admit that at least one warehouse handler or security guard under age 40 who had performance or conduct issues was retained following the January 2024 layoff.

**ANSWER: Denied. StratAir made its layoff decisions based on legitimate, non-discriminatory business considerations, including assessments of employees' job performance, skills, and qualifications as observed and documented by supervisors in the ordinary course of business.**

112) Admit that at least one independent contractor, temporary worker, or staffing agency worker was assigned to perform warehouse handling work or security work (the same work Plaintiff Luis Same Gonzalo performed in both positions) after his termination in January 2024.

**ANSWER: Denied. StratAir does not employ individual independent contractors; any non-employee personnel performing work at the Miami location were employed by third-party staffing agencies, not StratAir. StratAir denies that whether non-employees performed warehouse handling work or security work similar to Plaintiff Same Gonzalo's after the January 2024 layoff is relevant to his claims. Plaintiff Same Gonzalo alleged that "Defendant fired Plaintiffs and other older employees with more seniority, and retained younger employees with less seniority, to perform the same or similar jobs."** ***See*** **Amended Complaint, Paragraphs 51, 86. StratAir made its layoff decisions based on legitimate, non-discriminatory business considerations, including assessments of employees' job performance, skills, and qualifications.**

113) Admit that the Plaintiff Luis Same Gonzalo's transfer from Security Guard to Warehouse Handler was undertaken as preparation for or in anticipation of Mr. Same's eventual termination.

**ANSWER: Denied.**

114) Admit that Plaintiff Luis Rodriguez Ceruto requested time off from work in late 2023 to accompany his wife to medical appointments.

**ANSWER: Denied.**

115) Admit that Plaintiff Luis Rodriguez Ceruto's wife was had cancer in 2023.

**ANSWER: StratAir is without knowledge and therefore denies.**

116) Admit that StratAir was aware of Mr. Rodriguez Ceruto's wife's cancer diagnosis before terminating his employment in January 2024.

**ANSWER: Denied.**

117) Admit that StratAir's supervisor Jose (also known as "Bori") was aware of Plaintiff Luis Rodriguez Ceruto's requests for time off to assist his wife with medical appointments related to her cancer diagnosis.

**ANSWER: Denied.**

118) Admit that Armando Portales Viera was aware of Mr. Rodriguez Ceruto's requests for time off to assist his wife with medical appointments related to her cancer diagnosis.

**ANSWER: Denied.**

119) Admit that Plaintiff Luis Rodriguez Ceruto worked more than 1,250 hours in the 12 months preceding January 2024.

**ANSWER: Admitted.**

120) Admit that StratAir employed 50 or more employees for 20 or more workweeks in the 12 months preceding January 2024.

**ANSWER: Admitted.**

121) Admit that StratAir did not provide Plaintiff Luis Rodriguez Ceruto with written notice of his eligibility for FMLA leave in 2023 or early 2024.

**ANSWER: Denied. StratAir denies that Plaintiff Rodriguez Ceruto was eligible for FMLA leave in 2023 or early 2024 or requested FMLA leave in 2023 or early 2024.**

122) Admit that StratAir did not designate any of Plaintiff Luis Rodriguez Ceruto's absences in late 2023 or early 2024 as FMLA-qualifying leave.

**ANSWER: Admitted. Plaintiff Luis Rodriguez Ceruto did not request FMLA leave and received all time off he requested.**

123) Admit that StratAir required Plaintiff Luis Rodriguez Ceruto to provide a doctor's note or medical documentation for at least one request for time off in late 2023 or early 2024.

**ANSWER: Denied.**

124) Admit that at least one employee of StratAir under age 40 requested time off for personal or family reasons in late 2023 or early 2024 and was not required to provide a doctor's note.

**ANSWER: Denied. StratAir denies that whether one employee under age 40 requested time off for personal or family reasons and was not required to provide a doctor's note is relevant to Plaintiffs' claims.**

125) Admit that Plaintiff Luis Rodriguez Ceruto's requests for time off or his absences were discussed by StratAir's decisionmakers before his termination.

**ANSWER: Denied.**

126) Admit that a StratAir supervisor told Plaintiff Luis Rodriguez Ceruto that he would not be permitted to take time off work to assist his wife with medical appointments related to her cancer diagnosis because there was "too much work."

**ANSWER: Denied.**

127) Admit that Plaintiff Luis Rodriguez Ceruto was not provided with any FMLA forms, notices, or paperwork despite requesting time off for his wife's serious health condition.

**ANSWER: Denied.**

128) Admit that StratAir did not provide Plaintiff Luis Rodriguez Ceruto with the U.S. Department of Labor's FMLA poster or any written notice of his FMLA rights during his employment.

**ANSWER: Denied.**

129) Admit that StratAir did not consider whether Plaintiff Luis Rodriguez Ceruto's absences or time-off requests qualified for FMLA protection before terminating him.

**ANSWER: Denied.**

130) Admit that StratAir's supervisors Jose (also known as "Bori") and Armando Portales Viera discussed Mr. Rodriguez Ceruto's requests for time off in connection with the decision to select him for termination.

**ANSWER: Denied.**

131) Admit that Plaintiff Luis Rodriguez Ceruto's wife's medical condition and his requests for time off were factors considered in selecting him for the January 2024 layoff.

**ANSWER: Denied.**

Dated: July 1, 2026

**Nalani Alesia Gordon**
Roger W. Feicht (Florida Bar No. 84982)
rfeicht@gunster.com
lhagan@gunster.com
Nalani Alesia Gordon (Florida Bar No. 1010976)
ngordon@gunster.com;
lmusco@gunster.com
GUNSTER YOAKLEY & STEWART, P.A.
777 S. Flagler Drive, Suite 500 East
West Palm Beach, FL 33401
Telephone: 561-655-1980
Counsel for Defendant

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 1, 2026, a true and correct copy of the foregoing has been furnished by electronic mail to all parties on the Service List below.

**BRIAN H. POLLOCK, ESQ.**
brian@fairlawattorney.com
**P. BROOKS LAROU, ESQ.**
brooks@fairlawattorney.com
FAIRLAW FIRM
135 San Lorenzo Avenue
Suite 770
Coral Gables, Florida 33146
Counsel for Plaintiffs

*/s/ Nalani Alesia Gordon*
Nalani Alesia Gordon

ACTIVE:39957782.1