UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:25-CV-24505-MOORE/ELFENBEIN

IVAN GRANT,
ALEX LAFFITA ORTIZ,
HENRY PINTO SUMOZA,
EYONNY PRADO DURAN,
LUIS RODRIGUEZ CERUTO, and
LUIS SAME GONZALO,

Plaintiffs,

vs.

STRATAIR AVIATION
SERVICES, LLC,

Defendant.
_______________________________/

**PLAINTIFFS' NOTICE OF TAKING REMOTE VIDEO DEPOSITION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6)**

TO: ALL COUNSEL LISTED BELOW

PLEASE TAKE NOTICE that, pursuant to Fed. R. Civ. P. 30 and other applicable rules and laws, the undersigned attorney will take the deposition of:

NAME: Defendant, StratAir Aviation Services, LLC's designated corporate representative(s), who shall testify on its behalf regarding the claims and defenses raised in this lawsuit, the general business operations of StratAir Aviation Services, LLC, matters relevant to the pleadings, and the matters described in Exhibit "A" hereto.

DATE AND TIME: Friday, November 13, 2026, beginning at 10:00 a.m.

PLACE: **FAIRLAW FIRM**
135 San Lorenzo Avenue, Suite 770
Coral Gables, FL 33146
***Via Zoom* (See Instructions as Exhibit "B" Hereto)**
**Zoom Information to be Sent Separately**

upon oral examination before Universal Court Reporting, a Notary Public, or any other notary public or officer authorized by law to take depositions in the State of Florida. This deposition is being taken for discovery, use at trial, or such other purposes as are permitted under the Federal Rules of Civil Procedure. The deposition will continue from hour to hour until completed, not to exceed one day of seven (7) hours per designee, and will be video recorded by the same entity before whom the deposition is taken.

PLEASE TAKE FURTHER NOTICE that, pursuant to Fed. R. Civ. P. 30(b)(6), Defendant must designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, to testify regarding the matters set forth in Exhibit "A," and each designee must testify about information known or reasonably available to Defendant.

PLEASE TAKE FURTHER NOTICE that the undersigned may use an AI-assisted note-taking and transcription tool, including Granola.ai, during the deposition. Use of this tool may involve audio recording of the deposition solely for real-time transcription and note-taking, not for the creation of an official deposition record. By appearing for and participating in this deposition without objection, all parties, counsel, and the witness acknowledge and consent to the use of such AI-assisted technology and any associated audio capture for note-taking purposes. Any transcript produced by this AI-assisted technology is for the undersigned counsel's personal use and does not replace, supplant, or supersede the official transcript of the deposition.

PLEASE GOVERN YOURSELF ACCORDINGLY.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by email this 20th day of October 2026 on Roger W. Feicht, Esq., Nalani Alesia Gordon, Esq., and Beatriz M. Miranda, Esq., GUNSTER YOAKLEY & STEWART, P.A., rfeicht@gunster.com, ngordon@gunster.com, bmiranda@gunster.com, 777 South Flagler Drive, Suite 500 East, West Palm Beach, Florida 33401, and 401 East Jackson Street, Suite 1500, Tampa, Florida 33602, as *Counsel for Defendant*.

s/ Patrick Brooks LaRou
Brian H. Pollock, Esq. (174742)
brian@fairlawattorney.com
Patrick Brooks LaRou, Esq. (1039018)
brooks@fairlawattorney.com
FAIRLAW FIRM
135 San Lorenzo Avenue, Suite 770
Coral Gables, Florida 33146
Telephone: (305) 230-4884
*Counsel for Plaintiffs*

**EXHIBIT "A"**

**Definitions and Instructions**

A. "StratAir" means Defendant, StratAir Aviation Services, LLC, and its parents, subsidiaries, affiliates, predecessors, and successors, including Prime Flight or any affiliated entity that acquired or succeeded to StratAir or its Miami operations in or around August 2025.

B. "Worker" means any individual who performed warehouse, cargo-handling, ramp, administrative, or security work at StratAir's Miami location, whether employed directly by StratAir, supplied by SNI Companies Corp. ("SNI") or any other staffing agency, or engaged as a temporary worker or independent contractor.

C. "Relevant Period" means July 1, 2022 through January 31, 2025, unless a topic below specifies a different period.

D. "January 2024 RIF" means the reduction in force, layoff, or headcount reduction at StratAir's Miami location in or around December 2023 and January 2024 through which each Plaintiff's employment was separated.

E. StratAir must prepare each designee to testify about information known or reasonably available to StratAir, including information available from its current and former employees (including, without limitation, Jorge Corral, Gisela Barrera Munoz, Armando Portales Viera, Jose M. Alverio, Javier Rodriguez, Dora Costa, Cynthia Segovia, and Wilson Dorado), from SNI, and from records in the possession, custody, or control of any successor entity. Plaintiffs request that StratAir identify, no later than five (5) business days before the deposition, each designee and the topics on which each designee will testify.

**I. StratAir's Corporate Structure and Business Operations**

1. StratAir's corporate structure, ownership, management hierarchy, and operations at its Miami warehouse and cargo handling facility, including the number of employees, independent contractors, temporary workers, and individuals engaged through staffing agencies, as well as employment organizational reporting relationships, and the roles and responsibilities of such individuals during the period from July 2022 through January 2025.

2. StratAir's business operations, services, and clients, including its relationship with Amazon.com and the nature of freight, warehousing, and ground handling services provided at its Miami location.

3. The acquisition of StratAir, or of its Miami operations, by Prime Flight (or any affiliated entity) in or around August 2025, including the structure and effective date of the transaction; whether the acquiring entity assumed StratAir's liabilities or employment-related obligations; and the current custody and control of StratAir's personnel files, payroll and timekeeping records, email accounts (including accounts on the @stratair.net and

@stratairservices.net domains), company-issued mobile devices, and other business records.

4. StratAir's total workforce size and employee headcount in Miami-Dade County during 2022, 2023, and 2024, including the total number of individuals engaged to perform work for StratAir at any point in each calendar year.

## II. Plaintiffs' Employment

5. Each Plaintiff's employment with StratAir — including Ivan Grant, Alex Laffita Ortiz, Henry Pinto Sumoza, Eyonny Prado Duran, Luis Rodriguez Ceruto, and Luis Same Gonzalo — including hire dates, job titles, essential job duties, work schedules, compensation, benefits, performance history, attendance records, and any discipline or write-ups issued during each Plaintiff's employment.

6. All performance evaluations, employee warning notices, verbal counseling, and written discipline issued to each Plaintiff, as well as the factual basis for each disciplinary action.

7. StratAir's policies and procedures governing the supervision, evaluation, discipline, and termination of individuals performing warehouse and cargo handling duties, including any progressive discipline policies in effect during the relevant period.

8. The identity of all individuals who supervised any Plaintiff at any time during their employment with StratAir, including each such individual's job title, job duties, dates of supervision, and reporting relationship to each Plaintiff, as well as the scope of their supervisory authority, including any involvement in evaluating performance, issuing discipline, approving leave, or making or influencing decisions regarding compensation, scheduling, or termination.

## III. Plaintiff Grant's November 2023 Termination and Reinstatement

9. The circumstances surrounding Ivan Grant's initial termination in or around November 2023, including the stated reason for that termination, the internal complaint of discrimination he made to HR following that termination, the investigation StratAir conducted, and the decision to reinstate him.

10. Ivan Grant's August 2023 leave request to attend his daughter's wedding in Germany, including whether it was approved or denied, by whom, and all documentation relating to that request and StratAir's response.

11. The duration of Ivan Grant's separation from employment following his November 2023 termination, his regular compensation during that period, and any compensation StratAir provided or declined to provide for that period.

## IV. The Termination Decision

12. The identity of all persons who participated in, influenced, or made the decision to

terminate each Plaintiff's employment; the date each decision was made; all reasons considered or relied upon; the sequence of events on or around each termination date; and all documents reviewed by any decision-maker in connection with each termination decision.

13. For each Plaintiff, the first document, list, roster, or communication that identified that Plaintiff for termination or for inclusion in the January 2024 RIF; the identity of the person who first identified that Plaintiff and the date of that identification; and the identity of each person who thereafter reviewed, approved, or modified that Plaintiff's selection.

14. The respective roles of Jose M. Alverio, Javier Rodriguez, Gisela Barrera Munoz, Armando Portales Viera, Jorge Corral, and Dora Costa in proposing, compiling, reviewing, approving, and implementing the list(s) of individuals selected for termination in the January 2024 RIF; whether any person with final approval authority reviewed any personnel file, disciplinary record, attendance record, or other documentation concerning the selected individuals before approving their terminations; and the factual basis for StratAir's interrogatory answers identifying the persons who recommended and made the termination decisions.

## V. StratAir's Alleged Performance Justification for Each Plaintiff's Termination

15. All facts supporting StratAir's contention that any Plaintiff's job performance was "unsatisfactory" or deficient, including the specific tasks or metrics at issue, who measured or observed the alleged deficiencies, when those assessments were made, how they were documented, whether each Plaintiff was informed of any deficiencies before termination, and whether any performance-related documentation was created before the termination decisions were made.

16. The performance, productivity, and attendance standards actually used to evaluate warehouse and cargo-handling Workers during 2023 and January 2024, including container-unloading time standards; the daily rosters, attendance sheets, and handwritten or electronic notes on which supervisors recorded Workers' unloading times, productivity, tardiness, or absences; where those records were maintained; and whether they were retained, discarded, or destroyed.

## VI. The January 2024 Reduction in Force (RIF)

17. The business reason(s) for StratAir's January 2024 RIF, including the identity of the customer(s) that reduced cargo flights, when StratAir first learned of that reduction, the projected financial impact, when the RIF decision was made, and who authorized it.

18. The process by which individuals were selected for inclusion in the January 2024 RIF, including the criteria used; whether any written scoring rubric or matrix was used; the definition and scope of the decisional unit; the identity of all individuals involved in, participating in, influencing, reviewing, or approving the selection process (including StratAir's supervisors, managers, human resources personnel, and any other decision-

makers); the role each such individual played in the process; and the specific factual basis for the selection of each of the individuals who were included.

19. The creation, meaning, and use of the following documents, including who prepared them and when, the meaning of their headings, categories, and markings (including "OLDER STRATAIR," "Strat," "SNI," "Nuevos," "Novatos," "Transfer," and the red highlighting), any drafts or native files, and who received or relied on them: (a) Jose M. Alverio's December 28, 2023 email titled "LIST FOR POSSIBLE TERMINATION" (SAS-0002); (b) Armando Portales Viera's December 28, 2023 reply (SAS-0001); (c) Gisela Barrera Munoz's December 30, 2023 email titled "ROSTER CON POSIBLES BAJAS POR DEP" and its attachment, "ROSTER WH DICIEMBRE 13.xlsx" (SAS-0003 *et seq.*); and (d) Jorge Corral's May 17, 2024 forwarding of those emails to Dora Costa.

20. The ages, positions, seniority, performance histories, disability status, and leave history of all individuals who were selected for the January 2024 RIF and all individuals who were not selected, including all statistical data StratAir compiled regarding the protected characteristics of those individuals.

21. The timing of each terminated individual's notification of the RIF and the actual dates on which each Plaintiff's employment was separated.

22. Whether any individuals terminated in the January 2024 RIF were offered or given the opportunity to be rehired, and the criteria used to make any such determinations.

23. Every other reduction in force, layoff, or post-peak-season headcount reduction at StratAir's Miami location from January 2022 through the present (including any reduction in or around January 2023 and January 2025), including the business reason for each, the number of Workers separated, the selection criteria and process used, the identity of the decision-makers, and the ages of the Workers selected and retained.

**VII. Comparative Treatment in the RIF**

24. For each individual working in the same department as, or performing functions similar to, any Plaintiff who was retained and not selected for the January 2024 RIF: their age, race, national origin, disability status, performance history, disciplinary records, attendance records, seniority, and whether they had requested or taken medical leave within the six months preceding the RIF.

25. All individuals under the age of 40 who held the same or similar positions as Plaintiffs, who received verbal warnings or written discipline prior to the January 2024 RIF, and who were nonetheless retained rather than selected for the layoff.

26. The employment status following the January 2024 RIF of each individual identified in the December 28, 2023 emails of Jose Alverio and Armando Portales Viera — including Francisco Rodriguez Noris, Alexander (Alejandro) Nunez, Eliomar Perez, Angel Cisneros, Yunier Avila, Heriberto Gonzalez, Bernes Rosier, Poussel Arne, Ernesto Lopez Quinones,

and Francisco Lopez — including each individual's date of birth or age as of January 2024, hire date, and position, and whether each was terminated, retained, transferred, or converted to another position or classification, the date of any separation, and the reasons for StratAir's decision as to each.

27. StratAir's hiring or engagement of new individuals to perform work at its Miami location in the months preceding the January 2024 RIF, including the ages, positions, and start dates of all persons who began working for StratAir during 2023—whether classified as employees, independent contractors, temporary workers, or individuals supplied through any staffing agency—and whether any such individuals were retained or continued performing work for StratAir after the RIF while more senior Plaintiffs were terminated.

### VIII. Post-RIF Staffing and Replacement of Eliminated Duties

28. Whether any duties previously performed by any Plaintiff were subsequently performed by any other worker — whether a StratAir employee, temporary worker, independent contractor, or staffing agency personnel — after the January 2024 RIF; StratAir's use of staffing agencies and independent contractors at its Miami location from January 2023 through January 2025; and any decisions regarding hiring and/or engagement of workers made after the RIF for positions performing substantially similar functions to those held by any Plaintiff.

### IX. Discriminatory Statements and Conduct

29. All statements alleged by Plaintiffs to have been made by supervisors Armando Portales Viera and Jose Alverio (a/k/a "Bori") that reflect or concern age-based bias, animus toward older employees, or a preference for younger workers, including StratAir's knowledge of, investigation into, and response to such alleged statements.

30. The employment status, dates of employment, job titles, and job duties of all individuals who supervised any Plaintiff, as well as all human resources personnel employed by or acting on behalf of StratAir during the relevant period, including any complaints made against such individuals, any investigations conducted, any discipline imposed, and the circumstances surrounding any suspension, termination, or separation of those individuals, including whether any such actions occurred after, and the extent to which they were related to, the filing of any Plaintiff's charge(s) of discrimination, including the reasons for the separations of Armando Portales Viera and Jose Alverio and any investigation (including by any outside investigator) conducted in connection with those separations.

31. All complaints of age, race, national origin, disability discrimination, or FMLA retaliation made by any individual performing work for StratAir at its Miami location from 2021 through 2025, all investigations StratAir conducted in response, and the outcome of each.

### X. Race and National Origin Discrimination

32. The race and national origin of the Workers who worked with Ivan Grant, or in the same

or similar position as Ivan Grant, at StratAir's Miami location from November 2023 through January 2024, as reflected in StratAir's EEO-1 data or other records or as known to StratAir; and, for each such Worker, his or her seniority and whether he or she was selected for, or retained in, the January 2024 RIF.

33. Whether, and when, each supervisor, manager, or human resources employee involved in any employment decision affecting Ivan Grant knew that he was Black and from the U.S. Virgin Islands, and whether StratAir knew he was the only Black employee, or the only employee from the U.S. Virgin Islands, on any shift he worked or in his position.

34. Any comments or statements by StratAir supervisors, managers, or employees about Ivan Grant's race, color, or national origin, and StratAir's knowledge of and response to any such comments.

35. Whether Ivan Grant's race or national origin was mentioned or considered in connection with his August 2023 leave request, his November 2023 termination and reinstatement, or his selection for the January 2024 RIF.

**XI. FMLA Policies, Compliance, and Administration**

36. StratAir's policies and procedures for identifying, processing, and administering FMLA leave during the relevant period; who at StratAir was responsible for FMLA compliance; the training those individuals received; and StratAir's general practices for notifying employees of their FMLA rights.

37. Whether StratAir provided any Plaintiff — including Luis Rodriguez Ceruto — with an FMLA eligibility notice, rights-and-responsibilities notice, or designation notice, and the circumstances under which any such notices were or were not issued.

38. All StratAir employees who requested FMLA leave, disclosed a serious health condition, or requested a disability-related accommodation from January 2023 to the present; whether each request was granted; and whether any such employee was included in or excluded from the January 2024 RIF.

39. The existence, substance, dates, participants, and custodians of all communications, including text messages, WhatsApp messages, and emails, between Luis Rodriguez Ceruto and his supervisors or HR regarding his requests for time off, and StratAir's internal response(s) to each request.

40. Whether StratAir was a covered employer under the FMLA during 2022, 2023, and 2024, including the number of employees StratAir employed for each working day during each calendar workweek of those years; the number of employees StratAir employed within 75 miles of its Miami worksite when Luis Rodriguez Ceruto requested time off; whether StratAir counted Workers jointly employed with SNI or any other staffing agency in making those determinations; and StratAir's determination (or failure to determine) whether it was subject to FMLA obligations.

41. The dates of Luis Rodriguez Ceruto's employment, and the number of hours he worked for StratAir during the twelve-month period preceding each of his requests for time off in 2023 and January 2024, including all timekeeping and payroll records reflecting those hours.

### XII. ADA Policies, Reasonable Accommodation, and the Interactive Process

42. StratAir's policies and procedures regarding disability accommodation and the interactive process during the relevant period; who at StratAir was responsible for handling accommodation requests and how those individuals were trained; whether StratAir engaged in any interactive process with Luis Rodriguez Ceruto or any other Plaintiff; and all disability accommodation requests made by StratAir employees from January 2023 to the present and how each was handled.

43. StratAir's knowledge of the medical condition of Luis Rodriguez Ceruto's wife, including when and how StratAir (or any of its supervisors, managers, or human resources personnel) first learned of that condition; the identity of each person who had such knowledge before the January 2024 RIF selection decisions were made; and whether that knowledge, or his related requests for time off, were discussed or considered in connection with his selection for the January 2024 RIF.

### XIII. HR Policies, Employee Handbook, and Anti-Discrimination Procedures

44. StratAir's employee handbook(s) and written HR policies in effect during each Plaintiff's employment, including EEO, anti-discrimination, anti-retaliation, attendance, medical leave, progressive discipline, and RIF selection procedures, and StratAir's practices regarding implementation and enforcement of those policies, including any training provided to supervisors.

### XIV. Communications Regarding Plaintiffs

45. The existence, substance, dates, participants, and custodians of all communications — oral and written, including emails, text messages, and messages on WhatsApp or any other messaging platform — among StratAir management, supervisors, and/or HR personnel regarding any Plaintiff's medical condition, leave requests, job performance, or termination from September 2023 through February 2024.

### XV. Prior EEOC Charges and Employment Discrimination Claims

46. All EEOC charges, discrimination complaints, administrative claims, or lawsuits filed against StratAir in the past five years alleging disability discrimination, FMLA interference or retaliation, age discrimination, race or national origin discrimination, or any other form of employment discrimination, including the charges filed by Plaintiffs, and StratAir's responses thereto.

47. Every reason StratAir has stated, in any forum, for the separation of each Plaintiff,

including in StratAir's position statement(s) and other submissions to the EEOC or FCHR, its responses to any claim for reemployment assistance (unemployment) benefits, separation notices, and communications with Plaintiffs; the identity of the persons who supplied the factual information for each such statement; and the data underlying any statistics, workforce analysis, or "decisional unit" StratAir presented to the EEOC, including how that decisional unit was defined and which Workers were included in or excluded from it.

### XVI. Financial Condition and Business Justification for the RIF

48. StratAir's financial condition in the year preceding the January 2024 RIF, including revenue, budgets, profit-and-loss data, headcount projections, and all documents presented to management or ownership regarding the financial necessity of the workforce reduction; any cost-comparison analyses conducted between direct employees and contractors; and all financial projections or analyses relating to the anticipated impact of any reduction in Amazon cargo delivery flights.

49. The existence, substance, dates, participants, and custodians of all communications between StratAir and Amazon.com (or any Amazon entity) from January 2023 through March 2024 regarding anticipated reduction in cargo delivery flights, any contract modifications, volume projections, staffing requirements, and any instructions or guidance from Amazon regarding StratAir's workforce levels, including the identity of all Amazon representatives with whom StratAir communicated (including Jolanda Cunningham, Joe Henson, and members of Amazon's Performance Engineering and vendor-management teams); all quarterly MOP meetings and other meetings (including meetings held via Amazon Chime) at which flight schedules, cargo volume, or headcount were discussed; and the form of all such communications (email, text, WhatsApp, or otherwise).

50. The total number of cargo delivery flights serviced by StratAir and the total work volume handled at its Miami facility, on a month-by-month basis from July 2022 through January 2025, including the total number of flights serviced and work volume; StratAir's total revenues on a month-by-month basis during the same period; and all documents, records, or reports reflecting flight schedules, cargo throughput, staffing levels, and financial performance during that time.

51. Any actual reduction in cargo delivery flights and work volume experienced by StratAir from Amazon or any other customer from July 2022 through January 2025, including month-by-month flight data, cargo volume metrics, and revenue figures; the dates on which any actual reduction in flights or work volume first occurred; whether any reduction in flights or work volume had already occurred prior to the January 2024 RIF; and any documents, reports, or financial records reflecting actual (as opposed to projected) changes in StratAir's revenues, workload, or staffing needs during that period.

### XVII. StratAir's Affirmative Defenses

52. The factual and evidentiary basis for each affirmative defense raised by StratAir in its Answer to the Complaint, Amended Complaint, or Second Amended Complaint, and all

documents and witnesses supporting each such defense.

53. The factual basis for StratAir's contentions that Plaintiffs' positions were "eliminated" as part of a reduction in force required "due to financial reasons" (Affirmative Defenses 5 and 31), including the identity of each position eliminated and whether any Worker performed the duties of any such position after the January 2024 RIF.

54. The factual basis for StratAir's contentions that it would have taken the same action absent any impermissible motivating factor (Affirmative Defense 12), that no Plaintiff was replaced by a person outside his protected class (Affirmative Defense 14), and that no Plaintiff was treated less favorably than any similarly situated employee (Affirmative Defense 18).

55. The factual basis for StratAir's contentions that it exercised reasonable care to prevent and promptly correct discriminatory conduct (Affirmative Defense 1) and that any supervisor who discriminated or retaliated against Plaintiffs acted outside the scope of his or her agency (Affirmative Defense 19).

56. The factual basis for StratAir's after-acquired evidence defense (Affirmative Defense 2), including the identity of any alleged misconduct, when and how StratAir learned of it, and any policy or practice under which such misconduct would have resulted in discharge.

57. The factual basis for StratAir's contentions that Luis Rodriguez Ceruto engaged in "intervening misconduct" (Affirmative Defense 27) and that he "received all requested time off" (Affirmative Defense 26), including each of his requests for time off, the dates requested, StratAir's response, and the identity of each person who acted on each request.

58. The factual basis for StratAir's contention that it acted in good faith and that any violation was not willful (Affirmative Defense 11), including any steps StratAir took before the January 2024 RIF to ensure that the selection process complied with the ADEA, Title VII, the ADA, the FMLA, and the FCRA.

## XVIII. Damages and Mitigation

59. Each Plaintiff's final rate of pay, benefits (including 401(k), health, dental, and vision), seniority, and any other compensation at the time of their respective terminations.

60. StratAir's computation of any claimed offset or set-off against any Plaintiff's damages, including any contention that a Plaintiff failed to mitigate damages, and the factual basis and evidence supporting any such contention.

## XIX. Insurance

61. StratAir's insurance coverage applicable to these matters, including the carrier, policy numbers, applicable policy limits, and any reservation of rights issued in connection with this litigation.

## XX. Document Retention and Preservation

62. StratAir's document retention policies and record-keeping practices for personnel files, leave records, HR communications, and payroll data; any litigation hold implemented in connection with this lawsuit or the EEOC charges filed by any Plaintiff, including when any such hold was put in place, what categories of documents were preserved, and the identity of all document custodians.

63. The preservation of documents and electronically stored information of Jorge Corral, Gisela Barrera Munoz, Armando Portales Viera, Jose M. Alverio, Javier Rodriguez, Dora Costa, Cynthia Segovia, and Wilson Dorado, including company-issued and personal mobile devices, text and WhatsApp messages, personal email accounts used for StratAir business, and native spreadsheet files; whether and when each was instructed to preserve documents; and whether any such information was deleted, lost, overwritten, or not preserved, including in connection with any device replacement, employee separation, or the August 2025 Prime Flight transaction.

## XXI. Discovery Responses and Document Collection

64. The factual basis for StratAir's responses to Plaintiffs' Interrogatories and Requests for Admission, including all facts, witnesses, and documents supporting any denial, qualification, or affirmative contention.

65. All documents produced by StratAir in this action, including their authenticity, the circumstances of their creation and maintenance, and their contents.

66. The process by which StratAir identified, collected, and searched for documents responsive to Plaintiffs' Requests for Production, including the identity of all custodians whose files were searched, the data sources reviewed, the methods used to conduct the search, and the steps taken to ensure the completeness of StratAir's document production, as well as the non-privileged process by which information was gathered and provided for the preparation of StratAir's written discovery responses.

## XXII. SNI Companies Corp. and Other Staffing-Agency Workers

67. StratAir's relationship with SNI and any other staffing agency that supplied Workers to StratAir's Miami location during the Relevant Period, including all contracts, statements of work, rate schedules, and invoices; the number of Workers supplied by SNI or any other staffing agency on a monthly basis; and the positions, shifts, and work areas to which those Workers were assigned.

68. The extent to which StratAir controlled the work of Workers supplied by SNI or any other staffing agency, including who recruited, interviewed, selected, onboarded, credentialed, trained, scheduled, supervised, evaluated, disciplined, and removed or terminated them; whether they performed the same or similar duties as StratAir's direct employees, under the same standards and supervisors; and StratAir's practice of converting such Workers to

direct StratAir employment, including the number, names, and dates of such conversions.

69. Whether StratAir considered reducing or eliminating its use of Workers supplied by SNI or any other staffing agency as an alternative to, or in connection with, the January 2024 RIF; the identity, ages, and positions of any such Workers whose assignments ended in connection with the January 2024 RIF; and the identity, ages, and positions of any such Workers who continued performing work at StratAir's Miami location after the January 2024 RIF.

**EXHIBIT "B"**

1. The deponent must not use a virtual background during the Zoom deposition.

2. The deponent must comply with any request by a participant to show the environment where the deposition is taking place by using the camera on the device used by the witness for the deposition.

3. All deposition participants shall appear remotely unless the witness requests that the witness's counsel be present in the same physical location as the witness. The witness shall provide written notice to the participants no less than 5 business days before the deposition of the witness's intent to have his or her counsel present in the same physical location during the deposition. Upon such notice, any participant may attend the deposition in person or remotely, or reschedule the deposition to occur at the office of FairLaw Firm, 135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146. If the witness and the witness's counsel are in the same room, the witness and counsel must use two video cameras on two different devices and mute one of those devices to allow only one microphone to be used at a time. One video camera shall show the witness, and one video camera shall show the witness's counsel.

4. While testifying in the deposition, the witness shall not engage in any private communication, including but not limited to text messages, electronic mail, or the chat feature in the video conferencing system, while on the record, whether or not a question is pending. Nothing in this paragraph prohibits counsel for the deponent from conferring with the witness during a break in the deposition, in a "breakout room" or otherwise, nor does it prohibit counsel from communicating with each other by any means during the deposition, or otherwise prevent counsel for the deponent from conferring with the deponent as permitted by the applicable rules of court.

5. The deponent must not turn off his or her microphone while on the record. While on the record, the deponent shall close all documents, emails, browsers, programs, and applications on his or her computer or other device, other than the virtual video conference platform being used to take the deposition. While on the record, the witness should turn off all electronic devices capable of communication and Internet access other than the ones being used to connect to the remote deposition.