UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:25-CV-24505-MOORE/ELFENBEIN

IVAN GRANT,
ALEX LAFFITA ORTIZ,
HENRY PINTO SUMOZA,
EYONNY PRADO DURAN,
LUIS RODRIGUEZ CERUTO, and
LUIS SAME GONZALO,

Plaintiffs,

vs.

STRATAIR AVIATION
SERVICES, LLC,

Defendant.
_________________________________/

**PLAINTIFFS' AMENDED NOTICE OF TAKING REMOTE VIDEO DEPOSITION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6)**

TO: ALL COUNSEL LISTED BELOW

PLEASE TAKE NOTICE that, pursuant to Fed. R. Civ. P. 30 and other applicable rules and laws, the undersigned attorney will take the deposition of:

| | |
|---|---|
| NAME: | Defendant, StratAir Aviation Services, LLC's designated corporate representative(s), who shall testify on its behalf regarding the matters described in Exhibit "A" hereto. |
| DATE AND TIME: | Friday, November 13, 2026, beginning at 10:00 a.m. |
| PLACE: | **FAIRLAW FIRM**<br>135 San Lorenzo Avenue, Suite 770<br>Coral Gables, FL 33146<br>***Via Zoom* (See Instructions as Exhibit "B" Hereto)**<br>**Zoom Information to be Sent Separately** |

upon oral examination before Universal Court Reporting, a Notary Public, or any other notary

public or officer authorized by law to take depositions in the State of Florida. This deposition is being taken for discovery, use at trial, or such other purposes as are permitted under the Federal Rules of Civil Procedure. The deposition will continue from hour to hour until completed, not to exceed one day of seven (7) hours per designee, and will be video recorded by the same entity before whom the deposition is taken.

PLEASE TAKE FURTHER NOTICE that, pursuant to Fed. R. Civ. P. 30(b)(6), Defendant must designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, to testify regarding the matters set forth in Exhibit "A," and each designee must testify about information known or reasonably available to Defendant.

PLEASE TAKE FURTHER NOTICE that the undersigned may use an AI-assisted note-taking and transcription tool, including Granola.ai, during the deposition. Use of this tool may involve audio recording of the deposition solely for real-time transcription and note-taking, not for the creation of an official deposition record. By appearing for and participating in this deposition without objection, all parties, counsel, and the witness acknowledge and consent to the use of such AI-assisted technology and any associated audio capture for note-taking purposes. Any transcript produced by this AI-assisted technology is for the undersigned counsel's personal use and does not replace, supplant, or supersede the official transcript of the deposition.

PLEASE GOVERN YOURSELF ACCORDINGLY.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by email this 9th day of November 2026 on Roger W. Feicht, Esq. and Nalani Alesia Gordon, Esq., GUNSTER YOAKLEY & STEWART, P.A., rfeicht@gunster.com, ngordon@gunster.com, 777 South Flagler Drive, Suite 500 East, West Palm Beach, Florida 33401, as *Counsel for Defendant*.

s/ Patrick Brooks LaRou
Brian H. Pollock, Esq. (174742)
brian@fairlawattorney.com
Patrick Brooks LaRou, Esq. (1039018)
brooks@fairlawattorney.com
FAIRLAW FIRM
135 San Lorenzo Avenue, Suite 770
Coral Gables, Florida 33146
Telephone: (305) 230-4884
*Counsel for Plaintiffs*

**EXHIBIT "A"**

**Definitions and Instructions**

A. "StratAir" means Defendant, StratAir Aviation Services, LLC, and its parents, subsidiaries, affiliates, predecessors, and successors, including Prime Flight or any affiliated entity that acquired or succeeded to StratAir or its Miami operations in or around August 2025.

B. "Worker" means any individual who performed warehouse, cargo-handling, ramp, administrative, or security work at StratAir's Miami location, whether employed directly by StratAir, supplied by SNI Companies Corp. ("SNI") or any other staffing agency, or engaged as a temporary worker or independent contractor.

C. "Relevant Period" means July 1, 2023 through June 30, 2024, unless a topic below specifies a different period.

D. "January 2024 RIF" means the reduction in force, layoff, or headcount reduction at StratAir's Miami location in or around December 2023 and January 2024 through which each Plaintiff's employment was separated.

E. StratAir must prepare each designee to testify about information known or reasonably available to StratAir, including information available from its current and former employees (including, without limitation, Jorge Corral, Gisela Barrera Munoz, Armando Portales Viera, Jose M. Alverio, Javier Rodriguez, Dora Costa, Cynthia Segovia, and Wilson Dorado), from SNI, and from records in the possession, custody, or control of any successor entity. Plaintiffs request that StratAir identify, no later than two (2) business days before the deposition, each designee and the topics on which each designee will testify.

F. Plaintiffs do not ask that any designee memorize the contents of StratAir's document production. Where a topic calls for data or details reflected in documents StratAir has produced, the designee may testify by reference to those documents (identified by Bates number), provided the designee is prepared to explain how the documents were created and maintained, whether they are complete and accurate, and the substance of the topic itself.

**I. Organizational Structure and Plaintiffs' Employment**

1. The organizational structure and management hierarchy of StratAir's Miami location during the Relevant Period, including the identity, job titles, and reporting relationships of the managers, supervisors, and human resources personnel responsible for warehouse and cargo-handling Workers, and the nature of the services StratAir provided at that location, including for Amazon.com.

2. For each Plaintiff: his dates of employment, positions held, and immediate and second-level supervisors; his final rate of pay and benefits at separation; and each performance evaluation, warning, counseling, or other discipline issued to him, including the factual basis for each disciplinary action.

3. StratAir's written and unwritten policies and practices in effect from July 2023 through January 2024 governing attendance, performance evaluation, progressive discipline, termination, reduction-in-force selection, equal employment opportunity, and complaints of discrimination or retaliation, and the training on those policies provided to the managers, supervisors, and human resources personnel described in Topic 1.

## II. Plaintiff Grant's 2023 Leave Request, Termination, and Reinstatement

4. Ivan Grant's August 2023 leave request and StratAir's response; his termination in or around November 2023, including the stated reason, his ensuing internal complaint of discrimination, StratAir's investigation, and the decision to reinstate him; the length of his separation and whether he was compensated for it; and whether his race or national origin was mentioned or considered in connection with any of these events or his selection for the January 2024 RIF.

5. Whether, and when, each person involved in any employment decision affecting Ivan Grant knew that he is Black and from the U.S. Virgin Islands; whether StratAir knew he was the only Black employee, or the only employee from the U.S. Virgin Islands, in his position or on his shift; and any comments by StratAir supervisors, managers, or employees about his race, color, or national origin known to StratAir, and StratAir's response.

## III. The January 2024 Reduction in Force

6. The business reason(s) for the January 2024 RIF, including: the customer flight or cargo-volume reduction on which StratAir relies; when and how StratAir learned of it, and the identity of the Amazon representatives and StratAir personnel who communicated about it between July 2023 and March 2024, with the dates and means of those communications; whether, when, and to what extent flights, cargo volume, and revenue at the Miami location actually declined between July 2023 and June 2024; any financial or staffing analysis prepared in deciding to conduct the RIF; and when the RIF decision was made and who authorized it.

7. The process by which Workers were selected for the January 2024 RIF, including: the selection criteria; any scoring rubric, ranking, or matrix; the definition of the decisional unit; the identity and role of each person who proposed, compiled, reviewed, modified, or approved the selection list(s) (including Jose M. Alverio, Javier Rodriguez, Gisela Barrera Munoz, Armando Portales Viera, Jorge Corral, and Dora Costa); for each Plaintiff, who first identified him for selection, when, and the specific reasons for his selection; whether any final decision-maker reviewed personnel, disciplinary, or attendance records before approving the selections; and the dates on which each Plaintiff was notified and separated.

8. The creation, meaning, and use of the following documents, including who prepared them and when, the meaning of their headings, categories, and markings, any drafts or native files, and who received or relied on them: (a) Jose M. Alverio's December 28, 2023 email titled "LIST FOR POSSIBLE TERMINATION" (SAS-0002); (b) Armando Portales Viera's December 28, 2023 reply (SAS-0001); (c) Gisela Barrera Munoz's December 30,

2023 email titled "ROSTER CON POSIBLES BAJAS POR DEP" and its attachment, "ROSTER WH DICIEMBRE 13.xlsx" (SAS-0003 *et seq.*); and (d) Jorge Corral's May 17, 2024 forwarding of those emails to Dora Costa.

9. The facts on which StratAir relies for any contention that a Plaintiff's job performance was unsatisfactory or deficient, including who observed or measured the deficiency, when, and how it was documented, and whether the Plaintiff was told of it before his termination; the productivity and attendance standards (including container-unloading time standards) actually applied to warehouse and cargo-handling Workers from July 2023 through January 2024; and the rosters, attendance sheets, and supervisor notes on which Workers' unloading times, productivity, or attendance were recorded, including where they were kept and whether they were retained or destroyed.

## IV. Comparators, Replacement, and Other Reductions

10. For each warehouse or cargo-handling Worker at StratAir's Miami location as of December 1, 2023 (whether employed directly by StratAir or supplied by SNI or another staffing agency), and each individual named in SAS-0001 and SAS-0002: age or date of birth, race, national origin, hire date, position, discipline issued from January 2023 through January 2024, whether he or she requested FMLA leave or a disability-related accommodation from July 2023 through January 2024, and whether he or she was selected for, retained after, transferred, or converted in connection with the January 2024 RIF.

11. Whether any Worker (including any Worker supplied by SNI or another staffing agency) performed duties previously performed by any Plaintiff after the January 2024 RIF; the Workers hired, engaged, or converted to direct employment in warehouse or cargo-handling positions at the Miami location from January 2024 through December 2024, including their ages and start dates; whether StratAir considered reducing its use of staffing-agency Workers as an alternative to, or in connection with, the RIF; and whether any Worker separated in the RIF was offered rehire, and on what criteria.

12. Whether StratAir conducted any other reduction in force or post-peak-season headcount reduction at its Miami location in or around January 2023 or January 2025 and, if so, the business reason, the number of Workers separated, and the selection criteria used.

## V. Supervisor Conduct and Discrimination Complaints

13. The alleged statements by Armando Portales Viera and Jose Alverio (a/k/a "Bori") reflecting age-based bias or a preference for younger workers, and StratAir's knowledge of, investigation of, and response to those statements; and the reasons for Portales Viera's and Alverio's separations from StratAir, including any investigation (including by an outside investigator) connected with those separations.

14. Complaints (internal or external, including EEOC or FCHR charges and lawsuits) of age, race, national origin, or disability discrimination, or of FMLA interference or retaliation, made by or on behalf of Workers at StratAir's Miami location from January 1, 2022

through December 31, 2024, StratAir's investigation of each, and the outcome.

## VI. FMLA and ADA

15. Whether StratAir was a covered employer under the FMLA in 2022, 2023, and 2024, and whether Luis Rodriguez Ceruto was an eligible employee when he requested time off, including the number of employees StratAir employed in each calendar workweek of those years and within 75 miles of its Miami worksite; whether and how StratAir counted Workers supplied by SNI or any other staffing agency; and the hours Rodriguez Ceruto worked in the twelve months preceding each of his requests.

16. StratAir's FMLA leave and disability-accommodation policies and procedures in effect during 2023 and January 2024, the persons responsible for administering them and the training those persons received, and StratAir's practices for notifying employees of their FMLA rights.

17. Luis Rodriguez Ceruto's requests for time off in 2023 and January 2024, including the dates requested, each person who acted on each request, and StratAir's response; the communications (including text and WhatsApp messages) between him and his supervisors or human resources about those requests, and StratAir's internal response; whether he was given any FMLA eligibility, rights-and-responsibilities, or designation notice; when and how StratAir first learned of his wife's medical condition, and who knew of it before the RIF selections were made; whether StratAir engaged in any interactive process with him; and whether that knowledge or his requests were discussed or considered in connection with his selection for the January 2024 RIF.

## VII. Communications, Prior Statements, and Affirmative Defenses

18. The existence, dates, participants, platforms (including email, text message, and WhatsApp), custodians, and general subject matter of communications among StratAir managers, supervisors, and human resources personnel from September 2023 through February 2024 concerning any Plaintiff's leave requests, medical condition (or that of a family member), job performance, or selection for termination.

19. Each reason StratAir has stated for each Plaintiff's separation in its EEOC or FCHR position statements, responses to reemployment assistance claims, separation notices, and communications with Plaintiffs; the persons who supplied the facts for those statements; and the data underlying any statistics, workforce analysis, or decisional unit StratAir presented to the EEOC, including which Workers were included or excluded.

20. The factual basis for StratAir's contentions that: (a) Plaintiffs' positions were eliminated in a reduction in force required for financial reasons (Affirmative Defenses 5 and 31), including the identity of each position eliminated; (b) StratAir would have taken the same action absent any impermissible motivating factor (Affirmative Defense 12), no Plaintiff was replaced by a person outside his protected class (Affirmative Defense 14), and no Plaintiff was treated less favorably than any similarly situated employee (Affirmative Defense 18);

(c) StratAir exercised reasonable care to prevent and correct discriminatory conduct (Affirmative Defense 1), and any supervisor who discriminated or retaliated acted outside the scope of his or her agency (Affirmative Defense 19); (d) after-acquired evidence bars or limits relief (Affirmative Defense 2), including the alleged misconduct, when and how StratAir learned of it, and the policy under which it would have resulted in discharge; (e) Luis Rodriguez Ceruto engaged in intervening misconduct (Affirmative Defense 27) and received all requested time off (Affirmative Defense 26); (f) StratAir acted in good faith and did not act willfully (Affirmative Defense 11), including any steps taken before the RIF to ensure the selection process complied with the ADEA, Title VII, the ADA, the FMLA, and the FCRA; and (g) any Plaintiff failed to mitigate his damages or any offset applies.

## VIII. Records and Staffing-Agency Workers

21. StratAir's retention policies for personnel, leave, human resources communications, and payroll records; when any litigation hold was issued in connection with Plaintiffs' EEOC charges or this lawsuit, to whom, and what it covered; whether the documents and electronically stored information of Jorge Corral, Gisela Barrera Munoz, Armando Portales Viera, Jose M. Alverio, Javier Rodriguez, Dora Costa, Cynthia Segovia, and Wilson Dorado (including company-issued mobile devices, text and WhatsApp messages, email, and native spreadsheet files) were preserved or were deleted, lost, or overwritten, including in connection with any device replacement, employee separation, or the August 2025 Prime Flight transaction; the current custody of StratAir's personnel, payroll, timekeeping, and email records following that transaction; and the custodians and data sources searched in responding to Plaintiffs' Requests for Production.

22. StratAir's relationship with SNI and any other staffing agency that supplied warehouse or cargo-handling Workers to its Miami location during the Relevant Period, including the governing contract terms; the number of Workers supplied each month; who recruited, selected, trained, scheduled, supervised, disciplined, and removed those Workers; whether they performed the same duties as StratAir's direct employees under the same supervisors; and StratAir's conversion of such Workers to direct employment.

**EXHIBIT "B"**

1. The deponent must not use a virtual background during the Zoom deposition.

2. The deponent must comply with any request by a participant to show the environment where the deposition is taking place by using the camera on the device used by the witness for the deposition.

3. All deposition participants shall appear remotely unless the witness requests that the witness's counsel be present in the same physical location as the witness. The witness shall provide written notice to the participants no less than 5 business days before the deposition of the witness's intent to have his or her counsel present in the same physical location during the deposition. Upon such notice, any participant may attend the deposition in person or remotely, or reschedule the deposition to occur at the office of FairLaw Firm, 135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146. If the witness and the witness's counsel are in the same room, the witness and counsel must use two video cameras on two different devices and mute one of those devices to allow only one microphone to be used at a time. One video camera shall show the witness, and one video camera shall show the witness's counsel.

4. While testifying in the deposition, the witness shall not engage in any private communication, including but not limited to text messages, electronic mail, or the chat feature in the video conferencing system, while on the record, whether or not a question is pending. Nothing in this paragraph prohibits counsel for the deponent from conferring with the witness during a break in the deposition, in a "breakout room" or otherwise, nor does it prohibit counsel from communicating with each other by any means during the deposition, or otherwise prevent counsel for the deponent from conferring with the deponent as permitted by the applicable rules of court.

5. The deponent must not turn off his or her microphone while on the record. While on the record, the deponent shall close all documents, emails, browsers, programs, and applications on his or her computer or other device, other than the virtual video conference platform being used to take the deposition. While on the record, the witness should turn off all electronic devices capable of communication and Internet access other than the ones being used to connect to the remote deposition.