# Fuentes v. Classica Cruise Operator Ltd.

United States Court of Appeals for the Eleventh Circuit

May 3, 2022, Filed

No. 20-14639

**Reporter**
32 F.4th 1311 *; 2022 U.S. App. LEXIS 11960 **; 2022 AMC 131; 112 Fed. R. Serv. 3d (Callaghan) 1259; 29 Fla. L. Weekly Fed. C 1065; 2022 WL 1314897

REINIER FUENTES, Plaintiff-Appellant, versus CLASSICA CRUISE OPERATOR LTD, INC., a Foreign Profit Corporation, Defendant-Appellee.

**Prior History:** [**1] Appeal from the United States District Court for the Southern District of Florida. D.C. Docket No. 0:19-cv-60883-KMW.

*Fuentes v. Cruise, 2020 U.S. Dist. LEXIS 213460, 2020 WL 6730826 (S.D. Fla., Nov. 16, 2020)*

**Counsel:** For REINIER FUENTES, Plaintiff - Appellant: Jordan Redavid, Fischer Redavid, PLLC, MIAMI, FL; John Phillip Fischer, Fischer Law Firm, PLLC, FORT LAUDERDALE, FL; Lauren Eve DeFabio Flanagan, Rumberger Kirk & Caldwell, PA, MIAMI, FL.

For CLASSICA CRUISE OPERATOR LTD, INC., a Foreign Profit Corporation, Defendant - Appellee: Michael John Dono, William F. Clair, Jonathan Holmes Dunleavy, Annalisa Gutierrez, Jerry Dean Hamilton, Hamilton Miller & Birthisel LLP, MIAMI FL.

**Judges:** Before JORDAN, JILL PRYOR, and MARCUS, Circuit Judges.

**Opinion by:** JORDAN

## Opinion

[*1315] JORDAN, Circuit Judge:

Under maritime law, a ship owner in "navigable waters owes to all who are on board for purposes not inimical to [its] legitimate interests the duty of exercising reasonable care under the circumstances of each case." *Kermarec v. Compagnie Generale de Transatlantique, 358 U.S. 625, 632, 79 S. Ct. 406, 3 L. Ed. 2d 550 (1959)*. In this case, which arises in a summary judgment posture, a cruise ship passenger and one of his friends assaulted another passenger, Reinier Fuentes, during disembarkation. Our main task, applying *Kermarec* and its progeny, is to determine what duty the cruise line, Classica Cruise Operator Ltd., owed to Mr. Fuentes under [**2] maritime law. *See The Admiral Peoples, 295 U.S. 649, 654, 55 S. Ct. 885, 79 L. Ed. 1633 (1935)* (injury suffered by a passenger when falling from the gangplank during disembarkation "presented a case within the jurisdiction of admiralty"); *Minott v. M/Y BRUNELLO, 891 F.3d 1277, 1283 (11th Cir. 2018)* ("An injury caused by a vessel in navigable waters is a maritime tort.").[1]

I

As this appeal arises from the district court's grant of summary judgment in favor of Classica, our review is de novo, and we view the facts and inferences in Mr. Fuentes' favor. *See Taylor v. Riojas, 141 S. Ct. 52, 53 n.1, 208 L. Ed. 2d 164 (2020)*; *Tolan v. Cotton, 572 U.S. 650, 657, 134 S. Ct. 1861, 188 L. Ed. 2d 895 (2014)*; *Jenkins v. Nell, 26 F.4th 1243, 1249 (11th Cir. 2022)*. Viewed in that light, here is what the record shows.

Mr. Fuentes and his wife were passengers on a two-night cruise aboard the *Grand Classica*, a ship operated by Classica. On the evening of May 12, 2018, they were playing foosball on the ship when they were interrupted by Clynt Hadley, another passenger. According to Mr. Fuentes, Mr. Hadley intentionally bumped into the foosball table and made a comment directed at his wife. Mr. Fuentes did not respond to Mr. Hadley's comment and did not report the encounter to any of Classica's employees.

The next morning, after the *Grand Classica* docked, Customs and Border Protection [*1316] stopped the disembarkation process, causing the lobby on Deck 5 to

---

[1] We also address a second issue—whether the district court erred by denying Mr. Fuentes' motion for sanctions based on Classica's alleged failure to prepare its designee for his *Rule 30(b)(6)* deposition.

become crowded. At the time, Mr. Fuentes estimates there were approximately 20 passengers—including [**3] himself and his wife—cueing up in the immigration line waiting to disembark.

Mr. Fuentes noticed Mr. Hadley attempting to cut in front of them. He told Mr. Hadley that he should go to the back of the line and not attempt to "skip" in front of the other passengers. A verbal altercation between Mr. Fuentes and Mr. Hadley then ensued.

Sayyed Azzad Alam, a *Grand Classica* security officer, was standing nearby when the verbal exchange began and radioed the chief of security for help. Mr. Azzad Alam then approached Mr. Fuentes and Mr. Hadley—who were about four to five feet apart—stepped between them and asked that they "calm down." D.E. 48-1 at 112, 116. After Mr. Azzad Alam spoke to Mr. Hadley, he then turned to speak to Mr. Fuentes. At that point, Mr. Hadley "blindsided" Mr. Fuentes by punching him in the face and charging at him. *Id.* at 117; *see id.* at 110, 113. Mr. Fuentes tried to grab Mr. Hadley in a headlock, but Mr. Hadley and one of his friends knocked Mr. Fuentes to the ground, injuring his right elbow in the process. *See id.* at 114, 117-18, 121. The takedown, according to Mr. Fuentes, was a "spur of the moment type of thing." *Id.* at 121.

Customs personnel responded to the scene, [**4] and then two of the ship's security officers, including the chief of security, arrived. *See id.* at 126-28. Police were called, and Mr. Fuentes received first aid. He later underwent surgery and was hospitalized for several days.

In his complaint, Mr. Fuentes alleged that Classica was negligent, and responsible for his injuries, because it failed to (a) reasonably and properly train security personnel; (b) have adequate security measures, including adequate security presence and surveillance cameras; (c) warn him of the danger of being physically assaulted while onboard the vessel; (d) promulgate and enforce policies and procedures designed to prevent passengers from physically assaulting other passengers; and (e) exercise reasonable care under the circumstances. The district court granted sum-mary judgment in favor of Classica, ruling that there was no evidence suggesting that Classica had actual or constructive notice of the risk of harm to someone like Mr. Fuentes.

II

As noted, federal maritime law governs this action because Mr. Fuentes was injured while waiting to disembark the Grand Classica. *See The Admiral Peoples, 295 U.S. at 654*; *Minott, 891 F.3d at 1283*. We therefore dismiss Mr. Fuentes' contention, *see* Appellant's Br. at 25 n.8, that [**5] we are required to apply state law given the diversity of the parties. *See* *Pope & Talbot v. Hawn, 346 U.S. 406, 410-11, 74 S. Ct. 202, 98 L. Ed. 143 (1953)* (rejecting the contention that a maritime tort is controlled by state law when the parties are diverse).

When "analyzing a maritime tort case, we rely on general principles of negligence law." *Chaparro v. Carnival Corp., 693 F.3d 1333, 1336 (11th Cir. 2012)* (internal quotation marks omitted). To prevail on his negligence claims, Mr. Fuentes had to establish that (1) Classica had a duty to protect him from a particular injury; (2) Classica breached that duty; (3) the breach actually and proximately caused his injury; and (4) he suffered actual harm. *See Carroll v. Carnival Corp., 955 F.3d 1260, 1264 (11th Cir. 2020)*. This appeal concerns the duty element, which presents a question of [*1317] law. *See Coumou v. United States, 107 F.3d 290, 295 (5th Cir. 1997)*, *opinion withdrawn and superseded in part on reh'g*, *114 F.3d 64 (5th Cir. 1997)*; *Sutton v. Earles, 26 F.3d 903, 912 n.8 (9th Cir. 1994)*; *Matter of Flowers, 526 F.2d 242, 244 (8th Cir. 1975)*.

**A**

A cruise line like Classica owes its passengers "a 'duty of reasonable care' under the circumstances." *Sorrels v. NCL (Bahamas) Ltd., 796 F.3d 1275, 1279 (11th Cir. 2015)*. Generally speaking, a duty of care exists under maritime law "when injury is foreseeable or when contractual or other relations of the parties impose it. In determining the existence of [a] duty a court must examine and weigh the probability of an accident, the potential extent of the injury, and the cost of adequate precautions." 1 Thomas Schoenbaum, Admiralty and Maritime Law § 5:4 [**6] (6th ed. & 2021 update) (footnotes omitted).

Our cases reflect the same understanding. For example, we have held that "[l]iability [under maritime law] for a failure to warn . . . arises from foreseeability, or the knowledge that particular conduct will create danger." *Daigle v. Point Landing, Inc., 616 F.2d 825, 827 (5th Cir. 1980)*. *See also* 1 Robert Force & Martin J. Norris, The Law of Maritime Personal Injuries § 8:8 (5th ed. & Dec. 2021 update) ("The duty of care includes the duty to anticipate danger that is reasonably foreseeable.");

Restatement (Third) of Torts: Liab. for Physical & Emotional Harm § 7(a) (Am. L. Inst. 2010) ("An actor ordinarily has a duty to exercise reasonable care when the actor's conduct creates a risk of physical harm.").

"In this circuit, the maritime standard of reasonable care usually requires that the cruise [line] have actual or constructive knowledge of the risk-creating condition." Sorrels, 796 F.3d at 1286. Classica's duty and potential liability therefore "'hinge[ ] on whether it knew or should have known' of the dangerous condition." *Carroll, 955 F.3d at 1264* (quoting *Keefe v. Bahama Cruise Line, Inc., 867 F.2d 1318, 1322 (11th Cir. 1989)*. Mr. Fuentes recognizes this, as he acknowledges that "this is a case about notice." Appellant's Br. at 2.[2]

This case involves an attack on one passenger by other passengers. In the context of passenger-on-passenger violence, a cruise line has a duty to warn and/or [**7] protect when it or its employees reasonably apprehend the danger such that the attack was foreseeable. *See, e.g., Colavito v. Gonzales*, 1981 WL 164457, at *4 (S.D. Tex. Feb. 25, 1981) (cited with approval in 1 Schoenbaum, Admiralty and Maritime Law, at § 5:11); Doe v. NCL Bah. Ltd., 2012 U.S. Dist. LEXIS 162654, 2012 WL 5512314, at *4 (S.D. Fla. Nov. 14, 2012); 1 Force & Norris, The Law of Maritime Personal Injuries, at § 9:16 (citing cases). *See also* H.S. ex rel. R.S. v. Carnival Corp., 727 F. App'x 1003, 1006 (11th Cir. 2018) (unpublished) ("Because the proximate cause of H.S.'s injury was an intervening criminal act by 'a fellow passenger,' Carnival could not be liable in negligence unless the 'injury by its nature could have been reasonably anticipated [*1318] or naturally expected to occur or reasonably foreseen in time [for it] to have prevented the injury."); Restatement (Third) of Torts: Physical and Emotional Harm, at § 19 ("The conduct of a defendant can lack reasonable care insofar as it foreseeably combines with or permits the improper conduct of the plaintiff or a third party.").

[2] Based on the Supreme Court's decision in New Jersey Steam-Boat Co. v. Brockett, 121 U.S. 637, 645-46, 7 S. Ct. 1039, 30 L. Ed. 1049 (1887), we have held that where a crewmember assaults a passenger, the Kermarec "reasonable care" standard does not apply, and the owner of the ship is strictly and vicariously liable. *See* Doe v. Celebrity Cruises, Inc., 394 F.3d 891, 908-09, 913 (11th Cir. 2004). Accord 1 Schoenbaum, Admiralty and Maritime Law, at § 5:11 (a vessel owner "is liable without negligence if the injury to a passenger is caused by the intentional misconduct of the crew"). Because Mr. Fuentes was assaulted by fellow passengers, Doe is not applicable and we apply the "reasonable care" standard.

Before reviewing the evidence as to notice, we address Mr. Fuentes' framing of the foreseeability inquiry. Mr. Fuentes argues that the district court erred in viewing "the alleged harm" as physical altercations during the disembarkation of cruise ships. *See* Appellant's Br. at 9. As he sees things, Classica had a duty to warn about or prevent Mr. Hadley's [**8] "foreseeable attack" because it knows that verbal disputes between passengers—no matter the circumstances in which they occur—can lead to physical altercations. *See id.* at 9, 11, 18, 22.

Assuming that Mr. Fuentes is correct that, as a behavioral and social matter, verbal disagreements can turn into physical confrontations, the foreseeability analysis that he advocates is described at too high a level of generality and ignores too many variables. Cruise ships carry hundreds (and sometimes thousands) of passengers on each voyage, and those persons physically congregate and interact with each other in countless numbers of ways during the trip (at dinner, at poolside, at shows, at the bar, at the casino, at the shops, at excursions, at the nightclub, etc.). Because a cruise line is not "an insurer" of its passengers' safety, *see Keefe*, 867 at 1322, the foreseeability determination must have some connection to the events that gave rise to the negligence claim. After all, a cruise line's duty is to protect its passengers "from a *particular* injury." *Chaparro, 693 F.3d at 1336* (emphasis added). As one district court has put it, a plaintiff in a maritime tort case "cannot avoid summary judgment on some generalized theory [**9] of foreseeability that is divorced from the particular events in question." Weiner v. Carnival Cruise Lines, 2012 U.S. Dist. LEXIS 151395, 2012 WL 5199604, at *4 (S.D. Fla. Oct. 22, 2012). See also Restatement (Third) of Torts: Physical and Emotional Harm, at § 7(a), comment j ("The extent of foreseeable risk depends on the specific facts of the case and cannot be usefully assessed for a category of cases.").

Take K.T. v. Royal Caribbean Cruises, Ltd., 931 F.3d 1041, 1043 (11th Cir. 2019), which involved a maritime negligence claim against a cruise line by a minor who was sexually assaulted by other passengers. In addressing the issue of notice at the motion to dismiss stage, we focused on incidents involving the same type of harm suffered by the plaintiff and held that the allegations in the complaint were "enough to establish that the danger of sexual assault in general and of sexual assault on minors in particular was foreseeable, and indeed was known" to the cruise line. *See* id. at 1044.

Page 4 of 8


A similar case is *Chaparro, 693 F.3d at 1335-37*, where the claim was that a cruise line failed to warn passengers of dangers at Coki Beach in St. Thomas, one of the ship's ports of call. Shots were fired during a gang member's funeral, and a passenger who was on the way back to the ship after visiting Coki Beach was killed by gunfire. *See id. at 1335*. After holding that a cruise line has a duty to warn passengers of known dangers at ports of call, we [**10] explained that the complaint was sufficient to state a plausible claim for negligent failure to warn because it alleged that the cruise line generally knew of gang violence and public shootings in St. Thomas; knew of Coki Beach's reputation for drug sales, theft, and gang violence; knew or should have known about the gang member's funeral [*1319] taking place near Coki Beach; encouraged passengers to visit Coki Beach; and failed to warn passengers of the dangers there. *See id. at 1337*.

**B**

"Actual notice exists when the defendant knows about the dangerous condition[.]" *Newbauer v. Carnival Corp., 26 F.4th 931, 935 (11th Cir. 2022)*. Mr. Fuentes argues that Classica had actual notice that Mr. Hadley was going to attack him because it "had multiple security officers present during the several-minutes long verbal dispute . . . but failed to timely intervene" and because it hired a security company, G4S, to help with crowd control. *See* Appellant's Br. at 9, 13. These assertions fail for a few reasons.

First, although the presence of a security officer (or an outside security company) during disembarkation connotes some awareness of the need to maintain order, a verbal dispute does not provide actual notice that a physical assault is to follow. *See, e.g., Amy v. Carnival Corp., 961 F.3d 1303 (11th Cir. 2020)* (deciding whether [**11] the record contained evidence from which a reasonable jury could conclude that Carnival knew or should have known that children could climb or pass through the Deck 14 guard rail). Verbal disputes occur every day in various walks of life, but thankfully they do not always lead to violent altercations. See *Restatement (Third) of Torts: Physical and Emotional Harm, at § 19, comment f* ("In many situations, the possibility of criminal misconduct is so slight that an actor is not negligent for failing to take the possibility into account.").

Second, contrary to Mr. Fuentes' claim, the security officer who was at Deck 5 intervened before the assault. He separated Mr. Fuentes and Mr. Hadley, told the men to calm down, and called for additional help. As Mr. Fuentes himself acknowledged, he was "blind-sided" by Mr. Hadley's punch, and the attack was a "spur of the moment type of thing." D.E. 48-1 at 116-121. Under the circumstances, Classica could not have foreseen the assault on Mr. Fuentes. *See Colavito*, 1981 WL 164457, at *2-*3.

Third, there is no evidence suggesting that Classica had reason to believe that Mr. Hadley posed a specific danger to Mr. Fuentes or any other passenger. Neither Mr. Fuentes nor Mr. Hadley reported their encounter [**12] at the foosball table the previous night to Classica.

In sum, Mr. Fuentes has not presented sufficient evidence to create an issue of fact as to whether Classica had actual notice that Mr. Hadley or other passengers would attack him during disembarkation.

**C**

Mr. Fuentes also contends that Classica had constructive notice of a dangerous or risk-creating condition. Constructive notice may be established through evidence of previous similar incidents or the cruise line's prior warnings regarding the specific danger. *See, e.g., Sorrels, 796 F.3d at 1288-1289* (holding that testimony the ship's employees would post a warning sign on the pool deck after it rained was enough to create an issue of material fact as to whether there was notice that the deck was slippery when wet).

The most important aspect of the summary judgment record, in our view, is that there is not a single documented violent altercation between passengers during disembarkation aboard the *Grand Classica* or any of Classica's other cruise ships. Indeed, the only incident in the record of passenger-on-passenger violence aboard any ship in the Classica fleet (under any circumstances) involved a domestic dispute between a husband and wife inside of a [*1320] private [**13] stateroom cabin. This single incident, which is different in kind from the assault on Mr. Fuentes, did not constitute constructive notice to Classica about the likelihood of physical altercations during disembarkation.

Based on the deposition testimony of Classica's chief of security, it is reasonable to infer that some disputes had occurred on prior voyages during disembarkation. Mr. Fuentes argues that it is also reasonable to infer that

these disputes were physical alter-cations, but the excerpt he relies on does not support that contention. Here is the excerpt:

> Q: Is there anything that you yourself or your staff that you wish were done differently to prevent the physical assault of Mr. Fuentes?
>
> [ . . . ]
>
> THE WITNESS: It was a daily routine. And as I said, it is cruse ship, people are disembarking on the line. And when there was a small argument, the security staff went and did what they are to do. They separated and removed the — they deescalated the matter.

D.E. 48-3 at 116. Mr. Fuentes says that the phrase "when there was" indicates that physical altercations between passengers were a regular occurrence. See Appellant's Br. at 16. We disagree, for the question posed to the chief [**14] security officer was about the attack on Mr. Fuentes, and not about attacks against other passengers on different occasions. And insofar as the chief security officer explained that "things happen" during disembarkation, see D.E. 48-3 at 116, there is no indication that "things" referred to physical violence between passengers. And no fair inference to that effect can be drawn from that single ambiguous statement.

Mr. Fuentes also points to prior incidents involving aggressive, intoxicated male passengers on another Classica ship. *See* Appellant's Br. at 9. Those incidents, however, did not escalate into physical violence, and therefore did not provide constructive notice.

Mr. Fuentes cites to *Carideo v. Whet Travel, Inc., 2018 U.S. Dist. LEXIS 48219, 2018 WL 1461678 (S.D. Fla. March 23, 2018)*, which also involved an assault by some passengers against another. In that case, the district court ruled that the plaintiff "barely" survived a motion for summary judgment with respect to notice on his claim that the cruise line was negligent due to a lack of preparation for, and deterrence of, attacks in general. *See* *2018 U.S. Dist. LEXIS 48219, [WL] at *8, *12*. The salient facts in *Carideo* were, however, very different: the voyage was a three-day groove/electronic music cruise catering to 2,200 young adults; the cruise line advertised [**15] and served large amounts of alcohol (it had bar stations all over the ship, sold buckets of beer, and promoted discounts on multiple-beer purchases); there was evidence of five prior passenger-on-passenger assaults on the cruise line's ships in the previous three years; and the cruise line's director of security testified in another case about repeated demands for more security officers aboard ships. *See* *2018 U.S. Dist. LEXIS 48219, [WL] at *3, *7*. Without passing on the correctness of *Carideo*, we believe it is factually distinguishable.

**D**

Mr. Fuentes contends that the district court improperly disregarded certain opinions of his expert, Kim Peterson. *See* Appellant's Br. at 14. As relevant here, Mr. Peterson stated in his report that Classica "failed to follow the ship's usual and customary protocol for passenger debarkation, i.e., passengers queue-up to ap-proach the gangway guard station via two stateroom passageways directly outside the debarkation gangway guard station," which "clearly was intended to avoid the potential [*1321] for a chaotic and threatening environment." D.E. 48-9 at 8.[3]

Whatever its merit, this opinion by Mr. Petersen did not address the issue of notice, which as Mr. Fuentes acknowledges is the critical question on appeal. [**16] It went, instead, to whether Classica was actively negligent—and created a dangerous condition—by failing to follow its own disembarkation procedures (a theory Mr. Fuentes has not pursued on appeal). To the extent that the district court may have erred by dismissing or ignoring Mr. Petersen's opinion, any such error was harmless. *Cf.* *Colan v. Mesa Petroleum Co., 951 F.2d 1512, 1518 (9th Cir. 1991)* ("Because our review is independent, any error committed by the district court in weighing the evidence, discerning inferences from disputed facts, and in determining credibility . . . was harmless.").

**III**

Mr. Fuentes asserts that Grant Plummer, Classica's corporate representative, was not adequately prepared for his *Rule 30(b)(6)* deposition on two topics—prior incidents of "aggressive behavior" on ships in Classica's fleet over the past three years, and how many security officers were present on Deck 5 when the as-sault occurred. He argues that the magistrate judge and the district court erred in denying his motion for sanctions,

---

[3] Mr. Peterson's opinion does not appear to take into account that Customs and Border Protection stopped the disembarkation process on the morning of the incident, causing Deck 5 to become crowded. *See* D.E. 48-3 at 81.

Page 6 of 8


which requested attorney's fees and sought to bind Classica to the answers given by Mr. Plummer during his deposition. He adds that, to make matters worse, after the *Rule 30(b)(6)* deposition Classica provided a security log indicating that multiple security [**17] officers were present, and Mr. Plummer submitted a declaration addressing whether there had been any incidents of passenger-on-passenger violence on Classica's ships. The district court, he says, considered these submissions in its summary judgment order. *See* Appellant's Br. at 19-26.

**A**

We review a district court's order denying a motion for sanctions for abuse of discretion. *See Beck v. Prupis, 162 F.3d 1090, 1100 (11th Cir. 1998)*. This standard gives the district court a "range of choice . . . so long as that choice does not constitute a clear error of judgment." *United States v. Frazier, 387 F.3d 1244, 1259 (11th Cir. 2004)* (en banc) (internal quotation marks and citation omitted). In other words, a district court has "broad, yet not unbridled, discretion" in deciding whether to impose evidentiary sanctions. *Citronelle-Mobile Gathering, Inc. v. Watkins, 943 F.2d 1297, 1305 (11th Cir. 1991)* (internal quotation Marks omitted).

*Rule 30(b)(6)* allows a party to depose a corporation. The rule requires that party, "[i]n its notice or subpoena[,]" to "describe with reasonable particularity the matters for examination." *Fed. R. Civ. P. 30(b)(6)*. Once properly noticed, the corporation must designate a person (or persons) "who consent to testify on its behalf" and "may set out the matters on which each person will testify." *Id.* During the deposition, the designee is required to "testify about information known or reasonably [**18] available to the [corporation]." *Id.*

The corporation's duty to prepare a *Rule 30(b)(6)* witness extends, "beyond matters personally known to [the] designee," to all information reasonably available to the corporation, "whether from [*1322] documents, past employees, or other sources." *Brazos River Auth. v. GE Ionics, Inc., 469 F.3d 416, 433 (5th Cir. 2006)*; *Kartagener v. Carnival Corp., 380 F. Supp. 3d 1290, 1294 (S.D. Fla. 2019)*. If the designee is not able to answer questions regarding the subject matter he was designated to testify about, the corporation has failed to satisfy its obligation to prepare the designee and may be subject to sanctions. *See Black Horse Lane Ass'n, L.P. v. Dow Chem. Corp., 228 F.3d 275, 304 (3d Cir. 2000)*.

But a *Rule 30(b)(6)* deposition is not a memory test, and "[a]bsolute perfection is not required of a . . . witness." *QBE Ins. Corp. v. Jorda Enters., Inc., 277 F.R.D. 676, 691 (S.D. Fla. 2012)*. Accordingly, the "fact that a designee could not answer every question on a certain topic does not necessarily mean that the corporation failed to comply with its obligation[s]." *Id. See also Dapron v. Spire, Inc., 329 F.R.D. 223, 227 (E.D. Mo. 2019)* (explaining that a "deposing party may not demand that a corporate designee be prepared to speak with encyclopedic authority").

**B**

We start with Mr. Plummer's testimony about how many security officers were at Deck 5 when Mr. Fuentes was assaulted. The district court, by affirming the magistrate judge's order denying sanctions, essentially concluded that Mr. Plummer's testimony, though imprecise, was not so [**19] inconsistent with the incident log discovered and produced after his deposition that it rose to the level of sanctionable failure to prepare under *Rule 30(b)(6)*. *See* D.E. 74 at 11; D.E. 88 at 2.

Mr. Fuentes argues that Mr. Plummer was not adequately prepared because he answered that Classica was "unaware" whether any of its security officers were present when the heated verbal exchange with Mr. Hadley began. See Appellant's Br. at 22. But the deposition transcript tells a different story:

> Q: So[,] the incident report indicates that there was no employee present in the area attempting to defuse the situation.
>
> A: What I remember is that security got involved.
>
> Q: Okay.
>
> A: Security was there[,] and they tried to get involved, and then they had to contact the — the police, shoreside authorities to come on.
>
> [ . . . ]
>
> Q: -- do you even know in this lobby where people congregate whether or not there was [sic] even employees in the area?
>
> A: As I've already stated, there were multiple employees in the area.

Q: How do you know that?

A: How I know that [sic], because we have a whole process that we follow.

Q: How do you know the process was being followed?

A: We have reports of the crew members that it was being followed. [**20]

D.E. 48-5 at 40-42.

Mr. Plummer's statements do not differ substantively from the account that appears in the incident report produced by Classica after the *Rule 30(b)(6)* deposition. In that report, Mr. Azzad Alam—the security officer who initially intervened in the scuffle—wrote that Mr. Fuentes and Mr. Hadley "were using abusive language, [and] before the matter get heat up [sic] [he] intervene[d] and tr[ied] to separate [them.]" D.E. 43-1. Mr. Azzad Alam also wrote that he called for the chief of security to assist him and that "he arrived [on] the scene immediately and tr[ied] to pacify [*1323] the guest, but . . . Mr. Hadley . . . gave a punch [sic] to guest . . . Mr. Fuentes[.]" *Id.* Mr. Plummer's statements on Clas-sica's behalf, however sparse, do not contradict this telling. At the very least, there was no abuse of discretion in ruling that Mr. Plummer's testimony on this point was not sanctionable failure under *Rule 30(b)(6)*.

## C

That leaves Mr. Plummer's testimony about eight prior incidents of "aggressive behavior" on Classica's ships. Mr. Plummer said that he had no knowledge as to seven of those incidents involving passengers on other Classica ships, and Mr. Fuentes focuses on his lack of information about an [**21] incident on May 11, 2018. This incident, according to Mr. Plummer's subsequent declaration, involved the domestic dispute between a husband and wife in their stateroom that turned into a physical altercation. *See* D.E. 36-2 at 2.

The district court, again affirming the magistrate judge's order, concluded that Mr. Plummer's testimony, when viewed in the context of the extensive deposition as a whole, was a lapse of preparation that did not rise to the level of sanctionable conduct. See D.E. 74 at 10; D.E. 88 at 2. Again, we perceive no abuse of discretion.

As the magistrate judge explained, Mr. Plummer's inability to answer questions regarding an exhibit listing prior incidents of "aggressive behavior" on Classica ships was not sanctionable because Mr. Fuentes only listed "prior physical assaults" as an area of inquiry on the notice of deposition. *See* *King v. Pratt & Whitney, 161 F.R.D. 475, 476 (S.D. Fla. 1995)* (holding that a corporate designee is not obligated to answer questions outside of the scope of noticed areas of examination), *aff'd sub nom., King v. Pratt & Whitney, 213 F.3d 646 (11th Cir. 2000)*. The incidents listed on the exhibit, except the one discussed below, involved conflicts that did not rise to the level of physical assaults.

With respect to the sole incident listed in the exhibit [**22] that involved a "physical assault"—the domestic dispute between a husband and wife in their stateroom—Mr. Plummer did not know the details during his deposition and only provided specifics in his subsequent declaration. The magistrate judge and the district court could have sanctioned Classica for that failure, but under the abuse of discretion standard, their refusal to do so does not constitute reversible error. *Cf.* *Lebron v. Royal Caribbean Cruises, Ltd., 2018 U.S. Dist. LEXIS 151439, 2018 WL 4258269, at *9 (S.D. Fla. Sept. 6, 2018)* ("[T]he occasional 'I don't know' in the context of [a] massively broad deposition does not itself reveal a *Rule 30(b)(6)* violation, if the witness otherwise took reasonable steps to prepare.").

As one leading treatise has put it, disputes about compliance with *Rule 30(b)(6)* are seldom clear cut: "More often, there is considerable room for disagreement about whether [*Rule 30(b)(6)*'s] requirements have been satisfied, and what remedy should be employed if they have not been satisfied." 8A Charles Alan Wright, Arthur R. Miller & Richard Marcus, Federal Practice and Procedure § 2103 (3d ed. & April 2021 update). That is the case here. The range of choice afforded by the abuse of discretion standard calls for affirmance of the denial of Mr. Fuentes' motion for sanctions.[4]

---

[4] As noted, Mr. Fuentes takes issue with the fact that Classica filed a postdeposition declaration by Mr. Plummer in support of its motion for summary judgment. In that declaration, as set out in the text, Mr. Plummer provided details concerning the physical altercation that he could not recall during the deposition (the one between the husband and wife). The magistrate judge correctly observed, however, that nothing in the record suggests that Mr. Plummer's declaration regarding the details of that incident is inaccurate. If Mr. Fuentes doubted the veracity of Mr. Plummer's declaration, or felt prejudiced by it, he was not without recourse. He could have sought permission to redepose Mr. Plummer or another Classica designee as to that incident under *Rule 30(b)(6)*,

Page 8 of 8


[*1324] **V**

We affirm the grant of summary judgment [**23] in favor of Classica and the denial of Mr. Fuentes' motion for sanctions.

**AFFIRMED.**

---

End of Document

---

maybe even at Classica's expense, and that remedy would have been appropriate under the circumstances. He also could have moved to strike the declaration as improper. But he did not seek either option, and as a result, it was permissible for the district court to rely on the declaration in its order granting summary judgment.