2010 WL 11505168
Only the Westlaw citation is currently available.
United States District Court, S.D. Florida.

# Kristy HENDERSON, individually and on behalf of persons similarly situated, Plaintiff, v. HOLIDAY CVS, L.L.C., a Florida limited liability company, et al., Defendants.

CASE NO. 09-80909-CIV-MARRA/JOHNSON
|
Signed 08/11/2010

**Attorneys and Law Firms**

Gregg I. Shavitz, Hal B. Anderson, Shavitz Law Group, Boca Raton, FL, Martin Eric Leach, Feiler & Leach, Coral Gables, FL, for Plaintiff.

Christopher Patrick Hammon, David M. Demaio, Ogletree Deakins Nash Smoak & Stewart PC, Miami, FL, James J. Swartz, Jr., Nancy E. Rafuse, Sandra K. Park, Ashe Rafuse & Hill LLP, Atlanta, GA, for Defendants.

## ORDER

LINNEA R. JOHNSON, UNITED STATES MAGISTRATE JUDGE

***1 THIS CAUSE** is before the Court on Plaintiffs' Motion to Compel Better Production of 7000+ pages of Discovery Produced by Defendants in Response to Plaintiffs' First, Second, Third and Fourth Requests for Production (D.E. #75). For the following reasons said motion is granted in part and denied in part in accordance with the terms herein.

*I BACKGROUND*

This is a class-action lawsuit brought by Plaintiff, Kristy Henderson, on behalf of herself and others similarly situated, against Defendants, Holiday CVS L.L.C., CVS Caremark Corporation, and CVS Pharmacy, Inc., and their respective divisions, subsidiaries, and affiliates, under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"). Plaintiff was an employee of Defendants who worked as a salaried assistant manager for approximately eight months. Plaintiff alleges that she was mis-classified by Defendants as being exempt from the overtime protections of the FLSA because her primary duties as an assistant manager were of a non-exempt nature. Accordingly, Plaintiff alleges that Defendants intentionally and willfully failed to properly pay Plaintiff and similarly situated persons throughout the United States for all overtime hours worked in excess of forty (40) hours within a workweek, in violation of the FLSA.

*II CONTENTIONS OF THE PARTIES*

By this Motion, Plaintiffs seek entry of an order compelling Defendants to provide a better organized and cross-referenced production of the over 7,000 pages of non-privileged documents Defendant produced in response to Plaintiff's First, Second, Third and Fourth Requests for Production. The documents in question were produced in electronic format on diskette and contain over 7000 documents. According to Plaintiffs, although the documents were bates stamped, it's impossible to tell from the production provided which documents are responsive to which Request for Production, e.g. First, Second, Third or Fourth Request for Production, let alone which documents are responsive to each of the specific document requests contained in each of the larger Requests.

Defendants for their part, claim the production satisfies the requirements of Fed.R. Civ. P. 34(b)(2)(E)(I) which, in instances involving voluminous discovery, permits a responding party to produce documents as they are kept in the usual course of business. According to Defendants, the production they've made in this case, which is organized by the subject store and correlates bates stamp ranges to the seven store locations, is accompanied by an index correlating Bates ranges to store numbers, as well as examples of Bates ranges of documents that are responsive to certain of the production requests, is compliant with Rule 34's dictates that the producing party organize the production in such a way so as to allow the requesting party, with reasonable effort, to discern which documents are responsive to which requests. Defendants allege that in an effort to make it easier for Plaintiffs to match the documents to the requests, they even offered during the conferral process to direct Plaintiffs to whichever categories of documents they could not locate, but their offer was declined.

*III DISCUSSION*

***2** Rule 26 of the Federal Rules of Civil Procedure, which governs the discovery process between civil litigants in federal court, provides that as a general rule, parties may


© 2026 Thomson Reuters. No claim to original U.S. Government Works.

"obtain discovery regarding any matter, not privileged that is relevant to the claim or defense of any party...." Fed.R.Civ.P. 26(b)(1). Where the production of documents is voluminous, Rule 34(b)(2)(E)(I) permits a responding party to either "produce documents as they are kept in the usual course of business" *or* to "organize and label them to correspond to the categories in the request." Id. (emphasis added). Thus, based on a plain reading of the Rule, the responding party controls the manner in which the production will occur, and specifically which of the two prescribed methods of production will be employed. Unlimited Resources, Inc. v. Deployed Resources, LLC, 2008 WL 3889595, *2 (M.D. Fla. Aug. 18, 2008). When the producing party selects the alternate method of production, disputes may arise which necessitate a "balancing of Rule 34(b)'s legitimate purpose of easing the burden of production on a producing party while reasonably assuring that a literal application of the rule does not prevent the requesting party from obtaining discoverable documents in a meaningful manner." In re Mentor Obtape Transobturator Sling Products Liability, 2009 WL 152495, *2 (M.D. Ga. January 22, 2009). This is one such dispute.

It is generally recognized that where a party elects to produce documents as they are kept in the usual course of business, Rule 34(b), phrased in the disjunctive, imposes no obligation on the producing party to correlate the documents to the particular requests to which they are responsive. See 8B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2213 (2d ed. 1994)(and cases cited therein). Any other reading of the Rule would be internally inconsistent, in that by requiring a party who opts to produce responsive documents as they are maintained in the usual course of business, to match each document with its corresponding request, reads the word "or" out of the Rule and effectively takes away a party's initial choice to select between the Rules two alternate modes of production. Id.[1]

By the same token, the Court appreciates that while Rule 34(b) allows a party to produce responsive documents as they are kept in the ordinary course of business, it does not explain what it means to produce documents in that manner. In recognition of this fact, many courts have held that it is not enough for a party who produces documents as they are kept in the ordinary course of business to simply invite the requesting party to sift through its file cabinets in an effort to locate those documents that are responsive to its requests, Oklahoma, ex rel. Edmondson, 2007 WL 1498973, *5 (N.D. Okla. May 17, 2007)(and cases cited therein), or to engage in a wholesale "document dump" with an instruction to the requesting party to "go fish." Residential Constructors, LLC v. ACE Property and Cas. Ins. Co., 2006 WL 1582122, *2 (Dist. Nev. June 5, 2006); U.S. Commodities Futures Trading Commission v. American Derivitives Corp., 2007 WL 1020838, *2 (N.D. Ga. March 30, 2007)(and cases cited therein).

***3** Rather, these courts hold that to the extent a party elects to produce responsive documents as they are maintained in the ordinary course of business, it must either direct the responding party to the locations within its files where documents responsive to the specific requests may be found, or provide a key or index to assist the responding party in locating the responsive documents. Alford v. Aaron Rents, Inc., 2010 WL 2765260, *22 (S.D. Ill. May 17, 2010) (given fact the responding party is the party most familiar with its own business records, Rule 34 requires the documents produced as kept in the ordinary course of business to be accompanied by an "indices or other tool" to guide the requesting party; absent such tool the production is akin to a "blanket 'dump' of documents" [and] is deficient."); U.S. Commodities Futures, 2007 WL 1020838, *2 (party producing documents as they are maintained in regular course of business under Rule 34 "has an obligation to organize the documents in such a manner that [the requesting party] may obtain, with reasonable effort, the documents responsive to their requests" which requires producing party "either direct the responding party to the location or locations within its files where documents responsive to each of their specific requests may be found, or provide a key or index to assist the responding party in locating the responsive documents"); Oklahoma, ex rel. Edmondson, 2007 WL 1498973, *4 (N.D. Okla., May 17, 2007)("Defendants do not satisfy their Rule 34 obligations by merely opening their files, and leaving Plaintiff to sift through documents in an effort to locate those that are responsive to its requests. Rather, Defendants are obligated to provide some reasonable assistance to Plaintiff in the location of responsive documents. Thus, Defendants must either direct Plaintiff to the specific location or locations within its files where documents responsive to each of their requests may be found, or provide a key or index to assist Plaintiff in locating the responsive documents"); In re Mentor Obtape Transobturator Sling Products Liability, 2009 WL 152495, *2 (M.D. Ga. Jan. 22, 2009) (party producing records as they are kept in the usual course of business, "has an obligation to organize the documents in such a manner that [the requesting party] may obtain, with reasonable effort, the documents responsive to their requests" which essentially requires the documents be "render[ed] usable by the requesting party";

in this regard "merely categorizing the documents produced does not, without some further explanation, satisfy the requirement that they be produced as kept in the usual course of business.")(internal citations omitted). See also Williams v. Taser Intern, Inc., 2006 WL 1835437, *7 (N.D. Ga. June 30, 2006)(party producing documents as kept in regular course of business not required to "organize and label" responsive documents as they relate to each request, but required to organize them "in such a manner that [requesting parties] may obtain, with reasonable effort, the documents responsive to their requests"); Unlimited Resources Inc. v. Deployed Resources, LLC, 2009 WL 1563489, *2 (M.D. Fla. June 3, 2009)(under Rule 34 the producing party has an obligation to organize the documents in such a manner that the requesting party may obtain, with the expenditure of reasonable effort, responsive documents).[2]

This view has been adopted by at least one court in the Southern District of Florida, where it was held that "while Rule 34 does not obligate a producing party to per se organize and label usable documents for the requesting party's convenience, a party exercising Rule 34's option to produce records as they are kept in the usual course of business should 'organize the documents in such a manner that [the requesting party] may obtain, with reasonable effort, the documents responsive to their requests.' " Armor Screen Corp. v. Storm Catcher Inc., 2009 WL 291160, *2 (S.D. Fla. Feb. 5, 2009) (quoting in part Williams, 2006 WL 1835437, at *7). In so ruling, the Armor court warned of Rule 34(b)'s inherent danger of permitting a party to endeavor "to hide a needle in a haystack by mingling responsive documents with large numbers of nonresponsive documents" and spoke in favor of an approach that would strike a balance between Rule 34(b)(2)(E)(i)'s legitimate purpose of alleviating a responding party's burden of production, while reasonably assuring a requesting party's ability to obtain discoverable documents under Rule 26(b)(1). Armor, 2009 WL 291160, *2 (quoting in part Williams v. Taser Intern, Inc., 2006 WL 1835437, *7).

In this Court's view, the approach taken by the court in Armor and shared by the courts in Alford,[3] U.S. Commodities Futures,[4] and Oklahoma, ex rel. Edmondson,[5] to name just a few, of requiring the responding party "to organize the documents in such a manner that the requesting party can reasonably locate which documents are responsive to its specific requests," is the approach best suited to striking the desired balance, and the one the undersigned has elected to adopt herein. Specifically, the Court holds that in those instances where a party elects to produce responsive documents as they are maintained in the ordinary course of business under Rule 34, said party is obligated to choose a manner of production that ensures the requesting party can ascertain, with reasonable effort, what documents are responsive to which requests, which in most instances will require the producing party either direct the responding party to the location or locations within its files where documents responsive to the specific requests may be found, or provide a key, index or other device to assist the responding party in locating the responsive documents.

***4** Applying the above-stated principles to the operative facts herein yields just one possible conclusion, namely, that while Defendants may have made some effort to produce the documents in a manner that ensured the Plaintiffs would be able, with reasonable effort, to locate the documents responsive to their requests, such effort falls far short. The approximately 7000 pages at issue are store-level documents which were generated at and maintained in the seven stores in which Plaintiff Henderson and opt-in Plaintiff Chaudhury worked and are meant to be responsive to four separate Requests for Production. According to Defendants, documents from each store were grouped together and to the greatest extent practical, documents of one type were grouped together within each store grouping. Along with the production, Defendants provided Plaintiffs with an index correlating Bates ranges to store numbers, and provided examples of Bates ranges of documents that were responsive to certain of Plaintiffs' requests. Finally, Defendants claim that during the conferral process, Defendants repeatedly offered to direct Plaintiffs' counsel to whichever categories of documents could not be located, but these offers were declined.

At first glance it would appear that Defendants took some pains to organize the documents in a way that would make sense to Plaintiffs and in a way that would enable Plaintiffs to match the documents provided with Plaintiffs' specific requests. Upon closer examination of the operative facts and circumstances, however, the Court is forced to arrive at the opposite conclusion. Yes it's true, as Defendants contend, that Plaintiffs do not take issue with the core facts as stated by Defendants. Thus, Plaintiffs do not assert the documents provided by Defendants were not actually produced as they were maintained in the ordinary course of business; do not assert that Defendants engaged in any bad faith action designed to delay or otherwise prevent complete production; do not assert they were not provided an index correlating bates ranges to store numbers; and, finally, do not dispute

the allegation that Defendants offered and Plaintiffs declined their proffer of assistance in locating documents responsive to particular requests.

Again, at first glance, impressive. Closer examination, however, reveals that missing from this recitation of facts is an indication that Plaintiffs were provided with information from which they could ascertain, with reasonable effort, which documents are responsive to which requests. As such, Defendants' production fails the basic standard that Plaintiff be able to ascertain to which requests the documents are responsive. Armor, 2009 WL 291160, *2; U.S. Commodities Futures, 2007 WL 1020838 at *2. The fact remains that by producing a diskette with over 7,000 pages of documents responsive to four different requests, based upon a method of production that organizes groups of documents by the particular store, rather than by the actual requests, Defendants have failed to comply with Rule 34(b)'s dictates that the requesting party be provided with the requisite information they need to match the documents provided to the specific requests for production propounded.

Plaintiffs are correct when they note that merely categorizing the documents and supplying an index, does not, without some further explanation, satisfy the requirement that the method of production provide the requesting party with information from which they can reasonably ascertain which documents are responsive to which requests. In Re Mentor Obtape Transobturator, 2009 WL 152495, *5 (M.D. Ga. Jan. 22, 2009)("Merely categorizing the documents produced does not, without some further explanation, satisfy the requirement that they be produced as kept in the usual course of business," just as "the mere presence of an index does not, standing alone, make the documents reasonably usable to a requesting party who has no familiarity with the producing party's index or method of organization"). The diskette that Defendants produced contains over 7000 pages of documents responsive to requests contained in four separate Requests for Production. The method of production selected by Defendants organizes groups of documents by the particular store, rather than by the actual requests. By grouping the documents in this way, Defendants likely minimized the burden attendant to such production. Unfortunately, by grouping the documents in this way, Defendants have also minimized the usefulness any such categorization could have provided. It's simply impossible for Plaintiffs to determine from the mode of production selected, which documents are responsive to which requests. Given this fact, the production in question has failed the basic litmus test governing Rule 34(b) production which requires the production provide the requesting party with the requisite information they need to match the documents to their requests.

***5** Notwithstanding the foregoing, the Court does not view Defendants' production as anything approaching a "document dump" as alleged by Plaintiffs so as to justify an order compelling Defendants to match specific documents with specific document requests. What we have before us is production by Defendants of a relatively large, discreet number of responsive documents organized by store and category of document, an index to facilitate Plaintiffs' review, and an offer for additional assistance along the way. This is a far cry from an invitation to roam through a disorganized mass of documents with no index for guidance as described in Edmondson, 2007 WL 1498973, *5. Nor can Defendants' production reasonably be likened to the sort of wholesale "document dump" with an instruction to Plaintiffs to "go fish" disapproved of in Residential Constructors and U.S. Commodities Futures Trading.[6]

Accordingly, the Court does not deem the circumstances warrant an order compelling Defendants to go through each of the documents produced and prepare an index specifying as to each document, which request it is responsive to. This is not a case where the responding party indiscriminately produced a large quantity of documents in an undifferentiated mass and offered the requesting party no guidance in their use. Instead, Defendants went to some trouble to organize the documents, prepare an index, provide examples, and offer guidance in locating specific responsive documents, all in an attempt to comply with their burden of rendering the production usable. To impose such a burden on Defendants would not be in keeping with the Court's goal of balancing Rule 34(b)'s legitimate purpose of easing the burden of production on a producing party while reasonably assuring that a literal application of the rule does not prevent the requesting party from obtaining discoverable documents in a meaningful manner. Accordingly, the Court orders Defendants to supplement the production provided Plaintiffs in such a manner that Plaintiffs may ascertain, with reasonable effort, what documents are responsive to which requests. In this regard Defendants are ordered to either direct Plaintiffs to the location or locations within its files where documents responsive to the specific requests may be found, or provide a key, index or other device to assist Plaintiffs in locating the responsive documents. Such supplemental production shall be provided to Plaintiffs within fifteen (15) days from the date hereof.

Defendants' related argument—that identifying documents pertaining to their affirmative defenses somehow violates the attorney-client privilege and/or work product doctrine—is unavailing. As Plaintiffs correctly observe, the instant Motion concerns non-privileged documents Defendants already have agreed to produce. Thus, privilege is not an issue and to the extent Defendants are attempting to raise the issue now for the first time, the Court finds it has been waived. Defendants are hereby put on notice that the supplemental production they are ordered to provide by virtue of the within Order, must include guidance to Plaintiffs on how best to locate the documents responsive to the subject requests, including those requests pertaining to Defendants' affirmative defenses.

In accordance with the above and foregoing, it is hereby

**ORDERED AND ADJUDGED** that Plaintiffs' Motion to Compel Better Production of 7000+ pages of Discovery Produced by Defendants in Response to Plaintiffs' First, Second, Third and Fourth Requests for Production (D.E. #75) is **GRANTED IN PART AND DENIED IN PART IN ACCORDANCE WITH THE TERMS OF THE WITHIN ORDER**.

**DONE AND ORDERED** this August 11, 2010, in Chambers, at West Palm Beach, Florida.

**All Citations**

Not Reported in Fed. Supp., 2010 WL 11505168

Footnotes

1 Wright & Miller has more to say on the subject. According to the authors of this section of the treatise, to impose on the producing party the further obligation of segregating the requested materials according to the requests would “impose a difficult and usually unnecessary additional burden on the producing party. The categories are devised by the propounding party and often overlap or are elastic, so that the producing party might be compelled to decide which best suits each item in order to consign it to the proper batch. Such an undertaking would usually not serve any substantial purpose, and it could become quite burdensome if considerable numbers of documents were involved. Moreover, by requiring rearrangement, and the disassembling of the producing party's files, insisting on this manner of production invites claims of the very sort of “hiding” of materials that gave rise to the 1980 amendment.” 8B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2213 (2d ed. 1994).

2 These same courts hold that it is only if the filing system utilized was so disorganized as to prevent the requesting party from making a meaningful review of the requested documents or if the responding party had been “overly generous” in identifying responsive documents so as to unduly burden the requesting party in its search of those documents, will the court compel the responding party to match documents to specific requests. See, e.g., Williams v. Taser Intern, Inc., 2006 WL 1835437 at *7; U.S. Commodities Futures, 2007 WL 1020838 at *2; Unlimited Resources, 2009 WL 1563489 at *2 (M.D. Fla. June 3, 2009).

3 Alford, 2010 WL 2765260 at *22.

4 U.S. Commodities Futures, 2007 WL 1020838 at *2.

5 Oklahoma, ex rel. Edmondson, 2007 WL 1498973 at *4.

6 Residential Constructors, 2006 WL 1582122 at *2; U.S. Commodities Futures Trading Commission, 2007 WL 1020838 at *2.

End of Document

© 2026 Thomson Reuters. No claim to original U.S. Government Works.